RECEIVED

RECEIVED

2007 SEP 13  P 4: 56

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION**

SEP 1 3 2007

CLERK
U.S. DISTRICT COURT
MIDDLE DIST. OF ALA.

| | |
|---|---|
| **PHILLIP THOMPSON,** | ) |
| **Plaintiff,** | ) |
| | ) |
| | ) |
| **v.** | ) |
| | ) |
| **MERCK & CO., INC., a foreign or** | ) |
| **Domestic Corporation, DAVID SPARKMAN,** | ) |
| **KATHERINE HOLMES, LORI LOVETT,** | ) |
| **SCOTT BARTLETT, CORAL HARPER,** | ) |
| **MELISSA SANTIAGO, HENRY MITCHAM,** | ) |
| **JERRY PHARR, JASON DELK, CHARLES** | ) |
| **HENDERSON, JAMES HOUSTON, JULIE** | ) |
| **MELTON, JULIE HODGES, MELISSA** | ) |
| **BAUER, NATASHA** | ) |
| **WALKER-MCGLOTHAM,** | ) |
| **RANDY WELLS, and the Defendants A,** | ) |
| **B, C, D, E, X & Z whether singular or** | ) |
| **plural, being those persons, firms or** | ) |
| **entities who or which proximately** | ) |
| **caused or contributed to the Plaintiff's** | ) |
| **and Plaintiff's decedent's other harm** | ) |
| **and the other damages as complained** | ) |
| **of herein whose true names are** | ) |
| **unknown to the Plaintiff but will be** | ) |
| **added by amendment when correctly** | ) |
| **ascertained,** | ) |
| | ) |
| **Defendants.** | ) |

**CASE NUMBER:** 3:07-CV-827-MEF

**Removed from the
Circuit Court of
Randolph County, Alabama
(CV-2007-000119)**

**<u>NOTICE OF REMOVAL</u>**

TO:    The United States District Court for the Middle District of Alabama:

PLEASE TAKE NOTICE that Merck & Co., Inc. ("Merck"), pursuant to 28 U.S.C.

§1441, hereby removes this action from the Circuit Court of Randolph County, Alabama, to the

United States District Court for the Middle District of Alabama, and respectfully states to this

Court as follows:

1.    This action involves allegations regarding the prescription drug Vioxx®.  On February 16, 2005, the Judicial Panel on Multidistrict Litigation issued an order transferring 148 Vioxx products liability cases to the United States District Court for the Eastern District of Louisiana (Fallon, J.) for coordinated pretrial proceedings under 28 U.S.C. § 1407.  Merck intends to promptly seek the transfer of this action to that multidistrict litigation, *In re Vioxx Products Liability Litigation,* MDL No. 1657, and files contemporaneously herewith a motion to stay pending MDL transfer.

2.    On September 21, 2006, Plaintiffs, Clifford Bailey, Clifford Black, Wesley Calhoun, Curtis Deason, Ruth Graves, Mickey Grizzard, Jimmy Perry, Herbert Stanley Sikes, and Phillip Thompson ("Plaintiffs") collectively commenced a civil action ("the *Bailey* Action") against Merck, current and former Merck employees Natasha Walker-McGlothan, David Sparkman, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Hodges-Melton, Melissa Santiago-Bauer, and Randy Walls (collectively, the "professional representatives"), and fictitious defendants by filing a complaint (the "Complaint") in the Circuit Court of Randolph County, Alabama, bearing Civil Action No. CV-06-145.

3.    On or about October 5, 2006, Merck was served with a copy of Plaintiffs' Complaint.  Upon information and belief, Defendants Natasha Walker-McGlothan, Katherine Holmes, Lori Lovett, David Sparkman, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Scott Bartlett, Charles Henderson, Julie Hodges-Melton, Randy Walls, and Melissa Santiago-Bauer, have not been served with a copy of the summons and complaint.

4.    On October 30, 2006, Merck removed the *Bailey* Action to this Court arguing that the professional representatives were fraudulently joined.  On December 13, the case was

remanded to the Circuit Court of Randolph County, Alabama.

5.      After remand to state court, Plaintiff Phillip Thompson (through counsel) disclosed the identity of the physician who had prescribed Vioxx for him. See Plaintiff Profile Form, attached hereto as **Exhibit A**.[1] This information was not provided in the Complaint nor disclosed to Merck before remand.

6.      Merck thereafter investigated whether any of the named professional representatives made any representations to Plaintiff Phillip Thompson's prescribing physician as alleged in the Complaint. Merck's investigation revealed that, contrary to the allegations in Plaintiff Phillip Thompson's Complaint, only six of the named professional representatives had any contact with his prescribing physician concerning Vioxx. *See* Professional Representative Call Notes, attached hereto as **Exhibit B**. More importantly, *all* of these professional representatives are residents of the State of Georgia. *See* Declaration of Susan J. Brunstetter, attached hereto as **Exhibit C**.

7.      Thereafter, Merck moved the state court to sever the claims of the plaintiffs into eight separate actions on the ground that plaintiffs were misjoined in the *Bailey* Action in violation of Alabama Rule of Civil Procedure 20(a). On August 26, 2007, the state court granted Merck's motion to sever and thereafter ordered the formation of eight separate actions. See Orders, attached hereto as **Exhibit D** and **Exhibit E**.

8.      For the reasons described below, this Court has jurisdiction over Plaintiff Phillip Thompson's state court action pursuant to 28 U.S.C. § 1332 because it is a civil action in which the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest, and it

---

[1] In order to streamline written discovery, the parties agreed that the plaintiffs could submit information concerning their Vioxx usage and alleged injuries through "plaintiff profile forms" in lieu of interrogatory responses.

involves citizens of different states.

## I.    MERCK HAS SATISFIED THE PROCEDURAL REQUIREMENTS FOR REMOVAL.

9.    This Notice of Removal is timely filed pursuant to 28 U.S.C. § 1441(b), because it is filed within thirty days of the creation of this action through the state court order severing the *Bailey* action.  Moreover, this removal is filed within one year of the initial filing of the Complaint in the *Bailey* Action.

10.    The United States District Court for the Middle District of Alabama (Eastern Division) embraces the county in which this state court action is now pending.  Therefore, this Court is a proper venue for this action pursuant to 28 U.S.C. §§81 & 1441(a).

11.    Merck need not obtain the consent of the sales representative defendants because, as set out more fully below, they are fraudulently joined in this action in order to defeat removal. *See Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 815 (5th Cir. 1993); *Polyplastics, Inc. v. Transconex, Inc.*, 713 F.2d 875, 877 (1st Cir. 1983); *Alexander v. UDV N. Am., Inc.*, 78 F. Supp. 2d 614, 617 n. 4 (E.D. Mich. 1999) (citing *Balazik v. County of Dauphin*, 44 F.3d 209, 213 n.4 (3d Cir. 1995)).

12.    Pursuant to 28 U.S.C. § 1446(a), a copy of the state court file, including all process, pleadings, and orders served upon the Defendants in the *Bailey* Action is attached as **Exhibit F**, and a copy of the state court file in this case, post-severance, is attached as **Exhibit G**.  Pursuant to 28 U.S.C. § 1446(d), a copy of the Notice of Removal is being served upon counsel for Plaintiff and a copy is being filed with the clerk of the state court in which the action is currently pending.  A copy of Merck's filing in state court is attached hereto as **Exhibit H**.

## II.    REMOVAL IS PROPER BECAUSE THIS COURT HAS SUBJECT MATTER JURISDICTION PURSUANT TO 28 U.S.C. §§ 1332 AND 1441.

### A.    The Amount in Controversy Requirement Is Satisfied.

13.    It is apparent from the face of the Complaint that the Plaintiff seeks recovery of an amount in excess of $75,000, exclusive of costs and interest.  Since the Complaint seeks an unspecified amount of damages, Merck must only show that "the amount in controversy more likely than not exceeds the jurisdictional requirement." *See Owens v. Life Ins. Co. of Georgia*, 289 F. Supp. 2d 1319, 1327 (M.D. Ala. 2003) (*quoting Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1357 (11th Cir. 1996)).

14.    In this case, Plaintiff alleges that he suffered an adverse cardiovascular event as a result of his ingestion of Vioxx. *See* Plaintiff Profile Form, Exhibit A.  Moreover, the Complaint seeks unspecified compensatory and punitive damages for the injuries allegedly caused by Vioxx. *See* Complaint at ¶¶68, 69, 73, 137.

15.    Alabama juries in product liability cases routinely render verdicts in excess of $75,000 exclusive of interest and costs.  *See* **Exhibit I**.  Further, Alabama appellate courts have upheld verdicts in excess of $75,000 in such cases.  *Id.*

16.    In circumstances similar to this case, federal courts around the country have ruled that actions alleging personal injuries caused by Vioxx meet the amount-in-controversy threshold.  *See, e.g., Morgan v. Merck & Co.*, No. 3:03cv435WS, slip op. at 2 (S.D. Miss. Mar. 29, 2004); *Benavidez v. Merck & Co.*, No. L-03-134, slip op. at 1 (S.D. Tex. Apr. 6, 2004); *Stubblefield v. Merck & Co.*, Civ. No. H-02-3139, slip op. at 1 (S.D. Tex. Oct. 8, 2002); *Zeedyk v. Merck & Co.*, No. 02-C-4203, slip op. at 1 (N.D. Ill. August 30, 2002); *Abrusley v. Merck & Co.*, No. 02-0196, slip op. at 2 n.2 (W.D. La. June 18, 2002); *Jones v. Merck & Co.*, Civ. No. 02-

00186, slip op. at 2 (D. Haw. June 5, 2002).  These courts all were presented with complaints seeking damages for injuries caused by Vioxx, and all found that the requirements for federal diversity jurisdiction, including the amount in controversy, were satisfied.

**B.      There is Complete Diversity of Citizenship.**

17.     There is complete diversity as between Plaintiff and Merck, the only properly joined defendant.

18.     Plaintiff is a citizen of Alabama.  *See* Plaintiff Profile Form, Exhibit A.

19.     Merck is, and was at the time this suit was commenced, a corporation organized under the laws of the State of New Jersey with its principal place of business in New Jersey and, therefore, is a citizen of New Jersey for purposes of determining diversity.    28 U.S.C. § 1332(c)(1).

20.     The Complaint includes a number of fictitious defendants, whose citizenship is ignored for removal purposes.  28 U.S.C. § 1441(a).

21.     Plaintiff names fourteen professional representatives as defendants.[2]    *See* Complaint ¶¶ 2, 8 and 9.  However, these Defendants are fraudulently joined and, therefore, their citizenship must be ignored for removal purposes.  *See, e.g., Tapscott v. MS Dealer Serv. Corp.,* 77 F.3d 1353, 1360 (11th Cir. 1996), *abrogated on other grounds, Cohen v. Office Depot*, 204 F.3d 1069 (11th Cir. 2000).

22.     Unfortunately, the fraudulent joinder of pharmaceutical employees has become a common tactic in pharmaceutical litigation to attempt to defeat diversity and thwart defendants'

---

[2] The Complaint erroneously identifies Julie Hodges-Melton and Melissa Santiago-Bauer by both surnames.

right to defend claims against them in Federal Courts. This is especially true in Alabama (and, in particular, lawsuits concerning Vioxx) where identically drafted complaints are brought against the same pharmaceutical employees. *See Legg v. Wyeth*, 428 F.3d 1317, 1325 (11th Cir. 2005) (noting the common strategy of plaintiffs in pharmaceutical cases to name local professional representatives to thwart removal). Indeed, two separate MDL courts have found, applying Alabama law in the context of claims based on prescription medications, that plaintiffs cannot pursue claims against professional representatives and that their joinder does not defeat diversity. *See, e.g., In re Rezulin Products Liability Litigation*, 133 F. Supp. 2d 272, 287 (S.D. N.Y. 2001) ("*Rezulin I*"); *In re Baycol Products Litigation*, MDL 1431, Order dated March 26, 2004, attached hereto as **Exhibit J**. *See also Fowler v. Pharmacia & Upjohn et al.*, CV-04-PT-712-M, Order dated June 24, 2004, attached hereto as **Exhibit K** (denying motion to remand, citing *In re Rezulin* and *In re Baycol* opinions discussed herein). Even the 11th Circuit has recently recognized the general inability of plaintiffs in pharmaceutical cases to state claims against professional representatives. *See Legg v. Wyeth*, 428 F.3d 1317, 1325 (11th Cir. 2005).

23.    A defendant is fraudulently joined when there is no "reasonable basis for predicting" that a state court might impose liability on the resident defendant. *Crowe v. Coleman*, 113 F.3d 1536, 1542 (11th Cir. 1997); *accord Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (recognizing that a "reasonable" basis to predict that plaintiff could prevail on the claims against an in-state defendant requires more than a "theoretical" possibility). Such a "reasonable basis" must be based on facts in evidence and cannot be "merely theoretical." *Legg v. Wyeth,* 428 F.3d 1317, 1325 at n.5 (11th Cir. 2005). *See also Bloodsworth v. Smith & Nephew*, 2005 WL 3470337, at *4 (M.D. Ala. Dec. 19, 2005)(discussing *Legg*). When the defendant presents affidavits that are not disputed by the

plaintiff, "the court cannot then resolve the facts in the Plaintiffs' favor based solely on the unsupported allegations in the Plaintiffs' complaint." *Legg*, 428 F.3d at 1321. The Court must not, "*in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts.*" *Id.* at 1323 (quoting *Badon v. RJR Nabisco, Inc.*, 224 F.3d 382, 393-94 (5th Cir. 2000)) (emphasis in original).

24.    The evidence demonstrates that, of the professional representative defendants named, only representatives residing in Georgia had any contact with the Plaintiff's prescribing physician concerning Vioxx, thus there is no basis on which Plaintiff could prevail against the other professional representatives. *See Stern v. Wyeth*, Case No. 02-80620-CIV-MARRA (S.D. Fla. Jan. 22, 2003) (denying plaintiff's motion to remand where affidavit of employee defendant demonstrated that there was no factual basis for liability); *In re Rezulin Products Liab. Litig.*, 133 F. Supp. 2d 272, 282 (S.D.N.Y. 2001) (denying motion to remand where affidavit of pharmaceutical representative established that the named employee did not have contact with plaintiff or physicians).

25.    In the face of the evidence put forth in support of this Petition, the allegations in Plaintiff's Complaint cannot defeat removal. *See Sierminski v. Transouth Financial Corp.*, 216 F. 3d 945, 948 (11th Cir. 2000) (holding that federal court's considering propriety of removal on diversity grounds are not limited to reviewing the allegations of the complaint and affirming denial of motion to remand); *TKI Inc. v. Nichols Research Corp.*, 191 F. Supp. 2d 1307 (M.D. Ala. 2002) (relying on deposition testimony to find in-state defendants fraudulently joined); *Goins v. Merck & Co.*, Case No. 4:03 CV-70-1 (M.D. Ga. Sept. 9, 2003) (relying on affidavits to find in-state pharmaceutical representatives fraudulently joined); *Bloodsworth v. Smith & Nephew*, 2005 WL 3470337, at *5 (M.D. Ala. Dec. 19, 2005).

26.    Aside from the Plaintiff's inability to present countervailing evidence, there is no reasonable basis for predicting that a state court might impose liability on *any* of the professional representative defendants because the Complaint on its face fails to state a claim against the professional representatives upon which relief can be granted. First and foremost, most all of the Complaint allegations are broad, collective, and conclusory claims against "the Defendants" and lump each of the individual professional representatives together and with Merck. For example, in Count I, Plaintiff alleges that the "Vioxx manufactured and/or supplied by *defendants* was also defective…" [Compl., ¶ 64]. In Count II, Plaintiff alleges that "*defendants* [had a duty] to use reasonable care in the manufacturing, creating, designing, testing, labeling, sterilizing, packaging, supplying, marketing, selling, advertising, warning and otherwise distributing Vioxx." [Compl., ¶ 71]. None of these allegations, or any other allegations in the Complaint, specify any alleged specific, individual misconduct or tortious acts committed by the professional representatives. Indeed, Plaintiff seems uncertain as to whether the professional representatives are even responsible for the alleged wrongful conduct as shown by the Plaintiff's generalized statement in the fraud and misrepresentation claims that "the Defendants" made false representations, without making any attempt to distinguish or specify what one employee did or represented compared to another. The fact that no attempt is made to distinguish or separate the alleged conduct between the professional representatives in this case underscores the point that the professional representative defendants are named solely for the purpose of defeating diversity jurisdiction.

27.    Vague, uncertain and boiler-plate assertions are not sufficient to state a factual basis for any claim against any of the professional representatives. *See, e.g., Tillman v. RJ Reynolds Tobacco,* 253 F.3d 1302, 1305 (11th Cir. 2001) (non-diverse employee defendants

fraudulently joined "where plaintiff failed to tie these defendants to the underlying allegations of the complaint"); *Banger ex rel. Freeman v. Magnolia Nursing Home, L.P.*, 234 F. Supp. 2d 633, 637-38 (S.D. Miss. 2002) (collective, conclusory and generic allegations of wrongdoing on the part of all defendants are insufficient to show that individual defendant was not fraudulently joined) (citing *Badon v. RJR Nabisco, Inc.*, 224 F.3d 382, 392-93 (5th Cir. 2000)); *In re Rezulin Prods. Liab. Litig.*, 168 F. Supp. 2d 136, 140 (S.D.N.Y. 2001) ("*Rezulin II*") (pharmaceutical representatives fraudulently joined due to general collective allegations regarding "defendants"); *Lyons v. American Tobacco Co.*, No. Civ. A. 96-0881-BH-S, 1997 WL 809677, at *5 (S.D. Ala. Sept. 30, 1997) (holding that there is "no better admission of fraudulent joinder of [the resident defendants]" than the failure of the plaintiff "to set forth any specific factual allegations" against them).

28.    Furthermore, there is no reasonable basis to predict that Plaintiff will prevail on any of the claims against any of the professional representative defendants because Plaintiff cannot allege that the individual defendants actually personally participated in any wrongdoing as applicable to the Plaintiff. *See, e.g., Stern v. Wyeth*, No. 02-80620-CIV-MARRA, at 6 (S.D. Fla. Jan. 22, 2003) (denying plaintiff's motion to remand where plaintiff failed to allege "personal involvement" by an employee defendant in the alleged tortious conduct of the corporate defendant employer); *Kimmons*, 844 F. Supp. at 740 (defendant fraudulently joined were no allegations of personal participation were made); *Bloodsworth v. Smith & Nephew*, 2005 WL 3470337, at *11 (M.D. Ala. Dec. 19, 2005) (discussing *In re Rezulin* and the necessity of showing personal participation by the sales representative in the alleged fraud); *Anderson v. Merck & Co., Inc.*, 417 F.Supp.2d 842 (E.D. Ky. 2006) (denying remand because plaintiffs failed to allege a causal connection between the plaintiffs' injuries and the sales representative).

29.    Plaintiff's fraud and fraudulent misrepresentation claim (Count IX) is deficient because Plaintiff has not specifically alleged that the professional representative defendants, independently from Merck, made a misrepresentation directly to the Plaintiff or the applicable prescribing physician.  A claim for misrepresentation and fraud requires, at a minimum, the identification of a particular misstatement by each defendant and to whom each misstatement was made.  *See, e.g., Bloodsworth v. Smith & Nephew*, 2005 WL 3470337, at *10 to *11 (M.D. Ala. Dec. 19, 2005); *Atlantic Nat. Bank of Florida v. Vest*, 480 So. 2d 1328, 1331 (Fla. 2d DCA 1985) (holding that in order to allege a viable cause of action for negligent misrepresentation, plaintiff must allege, among other things, that there was a misrepresentation of a material fact).

30.    The fraud and fraudulent misrepresentation claim (Count IX) is also deficient because Plaintiff has failed to plead the claims with the particularity required by the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 9(b); *see also Wakeland v. Brown & Williamson Tobacco Corp.*, 996 F. Supp. 1213, 1221 (S.D. Ala. 1998) (failure to allege particular facts supporting claims against defendants violated Rule 9(b) and resulted in finding of fraudulent joinder); *Bloodsworth v. Smith & Nephew*, 2005 WL 3470337, at *10 to *11 (M.D. Ala. Dec. 19, 2005); *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001); *Durham v. Bus. Mgmt. Assoc.*, 847 F.2d 1505, 1512 (11th Cir. 1988); *Rezulin I*, 133 F. Supp. 2d at 183-84 (finding in-state defendants fraudulently joined due to plaintiff's failure to plead fraud claims with particularity).  An order denying remand in another Vioxx case explains why such claims in this case fail.  *See Hernandez v. Merck & Co., Inc., et. al*, Case No. 6:05-CV-00221-ORL-31-KRS (Order dated May 3, 2005, denying plaintiffs' motion to remand and dismissing two Merck professional representatives as defendants).  *See* **Exhibit L**.  Judge Presnell of the Middle

11

District of Florida held that the claims against the professional representatives in the *Hernandez* case were totally lacking in merit. According to the Court:

> Plaintiff has failed to allege what specific misrepresentations either Ortega or Kilkelly made to Dr. Lou or to the Plaintiff; the allegation that certain statements referred to in a warning letter to Merck were made to 'the plaintiff and/or plaintiff's prescribing physician' is clearly deficient. Nor does the Plaintiff allege who made particular misrepresentations, when and where those misrepresentations were made, or how each misrepresentation was false or misleading.

*Id.* at 10 n.12; *see also Merced-Torres v. Merck & Co., Inc.*, Case No. 6:05-CV-449-ORL-19DAB (Judge Fawsett's order denying plaintiffs' motion to remand). Because the fraud claims against the professional representative defendants suffer from the same deficiencies as those in *Hernandez* and *Merced-Torres*, these claims must be rejected by this Court.

31.    Plaintiff's allegations in Count IX of the Complaint do not meet the specificity requirements of the Federal Rules of Civil Procedure, nor do they even approach the level where they would prevent this from being an obvious case of fraudulent joinder. The allegations in Count IX make reference to literature drafted by and provided by Merck, but do not state any specifics as to whom the professional representative defendants allegedly made misrepresentations, what specifically was stated or passed on, when and where such misrepresentations were allegedly made or any other details. Plaintiff references specimen literature and letters in the Complaint, but does not allege where and when such literature or letters were provided by the professional representative defendants to the Plaintiff or the applicable prescribing physicians.

32.    Further, regardless of the lack of specificity of the claims against these professional representative defendants, Plaintiff cannot sustain the other alleged claims against the professional representative defendants as a matter of law. Count I (Alabama Extended Manufacturers Liability Doctrine) does not state a viable claim for relief because the professional

representative defendants are not "sellers" as contemplated by the AEMLD. *Ala. Code* § 6-5-501 (1975) (defining "original seller" as "[a]ny person, firm, corporation . . . or other legal or business entity, which in the course of business or as an incident to business, sells or otherwise distributes a manufactured product (a) prior to or (b) at the time the manufactured product is first put to use by any person or business entity who did not acquire the manufactured product for either resale or other distribution in its unused condition or for incorporation as a component part in a manufactured product which is to be sold or otherwise distributed in its unused condition"); *see also Turner v. Azalea Box Co.*, 508 So. 2d 253, 254 (Ala. 1987) ("the plaintiff must prove that the defendant manufactured and/or sold the allegedly defective product") (citing *Atkins v. Am. Motors Corp.*, 335 So. 2d 134 (Ala. 1976)); *Bloodsworth v. Smith & Nephew*, 2005 WL 3470337, at *17 to *22 (M.D. Ala. Dec. 19, 2005); *Southern v. Pfizer, Inc.*, 471 F. Supp. 2d 1207, 1217 (N.D. Ala. 2006) ("the court finds that the parameters of Alabama law are sufficiently established so as to lead to the conclusion that there is no reasonable possibility for concluding that, under the specific facts of this case, an Alabama state court would find [a sales representative] liable under the AEMLD"). The professional representative defendants did not participate in the design, manufacture or testing of the product at issue. Pursuant to Alabama law, these employees are not "sellers" of the product at issue. *See Bowman v. Coleman Co.*, No. 96-0448-P-C (S.D. Ala. Sept. 3, 1996). In addition, the AEMLD has not been extended to hold individual employees of sellers or manufacturers personally liable for defective products. *In re Baycol Products Litigation*, MDL 1431, Order dated March 26, 2004); *Galactic Employer Servs. v. McDorman*, 800 So. 2d 434 (Ala. 2003) (noting that a corporate officer or employee must have direct, personal participation in the challenged corporate activity to be held personally liable); *Ex parte Charles Bell Pontiac-Buick-Cadillac-GMC, Inc.*, 496 So. 2d 774 (Ala. 1986)

(same). Further, any claim asserting a duty to warn is barred by the learned intermediary doctrine. *See Stone v. Smith, Kline & French Laboratories*, 447 So. 2d 1301 (Ala. 1984); *Morguson v. 3M Company*, 857 So. 2d 796, 801-02, n. 1 (Ala. 2003).

33. Counts II and III (negligence and wantonness and negligence per se) must also be brought against "sellers" under Alabama law. In products liability actions premised on a negligence or wantonness theory, "[t]he defendant must be either the manufacturer or seller of the injury-producing article." *Norton Co. v. Harrelson,* 176 So. 2d 18, 20 (Ala. 1965). There is no liability under these two causes of action where a defendant is merely the employee of a manufacturer or seller. *See, e.g., Galactic Employer Servs. v. McDorman*, 800 So. 2d 434 (Ala. 2003) (noting that a corporate officer or employee must have direct, personal participation in the challenged corporate activity to be held personally liable); *Ex parte Charles Bell Pontiac-Buick-Cadillac-GMC, Inc.,* 496 So. 2d 774 (Ala. 1986) (same); *Bloodsworth v. Smith & Nephew*, 2005 WL 3470337, at *17 to *22 (M.D. Ala. Dec. 19, 2005); *Southern v. Pfizer, Inc.*, 471 F. Supp. 2d 1207, 1219 (N.D. Ala. 2006). Further, any claim asserting a duty to warn is barred by the learned intermediary doctrine. *See Stone v. Smith, Kline & French Laboratories*, 447 So. 2d 1301 (Ala. 1984); *Morguson v. 3M Company*, 857 So. 2d 796, 801-02, n. 1 (Ala. 2003).

34. Count IV (unjust enrichment) fails for the same reasons as Counts I, II and III, namely that the professional representative defendants did not sell, design or market Vioxx to the Plaintiff or his prescribing physician and therefore the Plaintiff cannot show that the professional representative defendants hold money which in equity and good conscious belongs to the Plaintiff. *See Hancock-Hazlett General Constr. Co. v. Trane*, 499 So. 2d 1385, 1387 (Ala. 1986); *Southern v. Pfizer, Inc.*, 471 F. Supp. 2d 1207, 1219-20 (N.D. Ala. 2006).

35.   Further, Counts V and VI (breach of express and implied warranty) fail against the professional representative defendants because Alabama's adoption of the U.C.C. requires that the accused party be a "seller" to be liable for breach of warranty.  *See Ala. Code* §7-2-103(1)(d) (defining "seller" as "a person who sells or contracts to sell goods"); *see also Ala. Code* §§7-2-313, 7-2-314 & 7-2-315 (both express and implied warranty claims refer to the creation of warranties by the "seller"); *Wellcraft Marine v. Zarzour*, 577 So. 2d 414 (Ala. 1990) (noting that Alabama statutes defining the warranties of merchantability and fitness for a particular purpose both apply to the "seller"); *Bloodsworth v. Smith & Nephew*, 2005 WL 3470337, at *7 (M.D. Ala. Dec. 19, 2005) (concluding that there can be no breach of warranty claims against a professional representative because professional representatives are not "sellers" of goods); *Southern v. Pfizer, Inc.*, 471 F. Supp. 2d 1207, 1219 (N.D. Ala. 2006) ("[sales representatives] are not 'sellers' of Neurontin; rather, they are agents of the 'seller.'  Accordingly, under Alabama law, [plaintiff] cannot maintain a breach of warranty claim against [the sales representatives].").

36.   Count VII (Corporate Responsibility) does not apply to the professional representative defendants, and Count VIII (Civil Conspiracy) fails to state claim because there are no viable underlying claims against the professional representative defendants that could support a claim for civil conspiracy.  *See, e.g., Avis Rent a Car v. Heilman*, 876 So. 2d 1111, 1124 (Ala. 2003); *Southern v. Pfizer, Inc.*, 471 F. Supp. 2d 1207, 1220-21 (N.D. Ala. 2006).

37.   The fraud and fraudulent misrepresentation claim (Count IX) fails against the professional representative defendants because the sales representatives did not owe plaintiffs a duty to warn of the potential dangers of Vioxx independent of Merck's duty to warn.  Rather, under the learned intermediary doctrine, the ***manufacturer owes the doctor*** a duty to warn.  *See Stone v. Smith, Kline & French Laboratories*, 447 So. 2d 1301 (Ala. 1984); *Morguson v. 3M*

15

*Company*, 857 So. 2d 796, 801-02, n. 1 (Ala. 2003). Courts have recognized in similar cases that sales representatives are fraudulently joined for this very reason. *See, e.g., Southern v. Pfizer, Inc.*, 471 F. Supp. 2d 1207, 1221 (N.D. Ala. 2006) (concluding sales representatives were fraudulently joined and that plaintiff's claims for fraudulent misrepresentation could not be maintained against the sales representatives because sales representatives do not owe a duty to warn); *Johnson v. Parke-Davis*, 114 F. Supp. 2d 522, 524-25 (S.D. Miss. 2000) ("Plaintiffs have cited no authority for the proposition that the sales representatives, as opposed to the manufacturer, had any duty to warn."); *In re Diet Drugs*, 220 F. Supp. 2d at 425 (finding that sales representatives were fraudulently joined in a suit against the pharmaceutical manufacturer on various grounds, including application of the learned intermediary doctrine); *Walker v. Medtronic, Inc.*, No. 1:03CV74-D-D, 2003 WL 21517997, at *3 (N.D. Miss. June 4, 2003) ("Under the learned intermediary doctrine, any duty to warn a physician about the dangers of a medical device is placed upon the device's manufacturer; the sales representative selling the device is under no duty to warn patients (or potential future patients, assuming they could even be identified) concerning the device.").

    In short, the only professional representatives who may have made representations concerning Vioxx to the Plaintiff's prescribing physician reside in Georgia. In light of this reality, and because there is no reasonable basis for predicting that Plaintiff could prevail on any of the claims against the professional representative defendants, their citizenship should be ignored for the purpose of determining the propriety of removal, and this Court therefore has diversity jurisdiction over this matter.

WHEREFORE, Defendant Merck respectfully removes this action from the Circuit Court of Randolph County, Alabama to this Court, pursuant to 28 U.S.C. § 1441.

_____
Ben C. Wilson
One of the Attorneys for Defendant,
Merck & Co., Inc.

OF COUNSEL:
Robert C. "Mike" Brock
F. Chadwick Morriss
Ben C. Wilson
RUSHTON, STAKELY, JOHNSTON, & GARRETT, P.A.
Post Office Box 270
Montgomery, Alabama 36101-0270
Telephone: (334) 206-3100
Facsimile: (334) 262-6277
rcb@rsjg.com
fcm@rsjg.com
bcw@rsjg.com

## CERTIFICATE OF SERVICE

I hereby certify that I have served the above and foregoing document upon all interested parties by placing a copy of same in the United States Mail, postage prepaid and properly addressed on this the _13th_ day of September 2007, as follows:

Thomas J. Knight
HUBBARD & KNIGHT
P.O. Drawer 1850
1125 Noble Street
Anniston, Alabama 36202

Steven R. Morris
P.O. Box 814
Wedowee, Alabama 36278-0814

_____
OF COUNSEL

17

## PLAINTIFF PROFILE FORM FOR PHILLIP THOMPSON

### I. CASE INFORMATION

A.    Name of person completing this form: Phillip Charles Thompson

B.    If you are completing this questionnaire in a representative capacity (e.g., on behalf of the estate of a deceased person or a minor), please complete the following:

   1. Social Security number:

   2. Maiden Or Other Names Used or By Which You Have Been Known:

   3. Address:

   4. State which individual or estate you are representing, and in what capacity you are representing the individual or estate?

   5. If you were appointed as a representative by a court, state the:

   6. What is your relationship to deceased or represented person or person claimed to be injured?

   7. If you represent a decedent's estate, state the date of death of the decedent and the address of the place where the decedent died:

C.    Claim Information

       1. Are you claiming that you have or may develop bodily injury as a result of taking VIOXX?    Yes __X__    No _____

   If "yes,"
       a. What is your understanding of the bodily injury you claim resulted from your use of VIOXX?  Myocardial Infarction

       b. When do you claim this injury occurred?   July 12, 2004

       c. Who diagnosed the condition? Dr. Shakil Ahmed

       d. Did you ever suffer this type of injury prior to the date set forth in answer to the prior question? Yes _____    No __X__



*If "yes,"* when and who diagnosed the condition at that time?

    e. Do you claim that that your use of VIOXX® worsened a condition that you already had or had in the past? Yes _____   No _____

*If "yes,"* set forth the injury or condition; whether or not you had already recovered from that injury or condition before you took VIOXX; and the date of recovery, if any.

D.    Are you claiming mental and/or emotional damages as a consequence of VIOXX? Yes _____   No __X____

*If "yes,"* for each provider (including but not limited to primary care physician, psychiatrist, psychologist, counselor) from whom have sought treatment for psychological, psychiatric or emotional problems during the last ten (10) years, state:
a. Name and address of each person who treated you:
b. To your understanding, condition for which treated:
c. When treated:
d. Medications prescribed or recommended by provider:

II.PERSONAL INFORMATION OF THE PERSON WHO USED VIOXX

A.    Name: Phillip Charles Thompason

B.    Maiden or other names used or by which you have been known:

C.    Social Security Number: 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

D.    Address: 79 County Road 58, Wedowee, Alabama 36278

E.    Identify each address at which you have resided during the last ten (10) years, and list when you started and stopped living at each one: Same as above.

F.    Driver's License Number and State Issuing License: AL 3480079

G.    Date of Place and Birth: October 11, 1956

H.    Sex: Male __X__    Female_____

I.    Identify the highest level of education (high school, college, university or other educational institution) you have attended (even if not completed), the dates of attendance, courses of study pursued, and diplomas or degrees awarded: High school diploma

J.    Employment Information.

1. Current employer:
Name: Wedowee Utilities Board
Address: Wedowee, AL
Dates of Employment: 31 years in March
Occupation/Job Duties: Gas Superintendent

2. List the following for each employer you have had in the last ten (10) years:
None.

3. Are you making a wage loss claim for either your present or previous
employment? Yes _____    No __X___
If "yes," state your annual income at the time of the injury alleged in
Section I©):

K.    Military Service Information: Have you ever served in the military, including the
military reserve or national guard? Yes _____    No __X___

If "yes," were you ever rejected or discharged from military service for any
reason relating to your physical, psychiatric or emotional condition?
Yes _____    No _____

L.    Insurance / Claim Information:

1. Have you ever filed a worker's compensation and/or social security disability
(SSI or SSD) claim? Yes _____    No __X___

If "yes," to the best of your knowledge please state:
    a. Year claim was filed:
    b. Nature of disability:
    c. Approximate period of disability:

2. Have you ever been out of work for more than thirty (30) days for reasons
related to your health (other than pregnancy)? Yes _____    No _____

If "yes," set forth when and the reason.

3. Have you ever filed a lawsuit or made a claim, other than in the present suit,
relating to any bodily injury? Yes __X___    No _____

If "yes," state to the best of your knowledge the court in which such action was
filed, case name and/or names of adverse parties, and a brief description for the
claims asserted.
I was in an auto accident in 1980.  I was a passenger in a vehicle.

M.    As an adult, have you been convicted of, or plead guilty to, a felony and/or crime of fraud or dishonesty? Yes \_\_\_\_\_    No \_\_X\_\_\_

    *If "yes,"* set forth where, when and the felony and/or crime.

## III. FAMILY INFORMATION

A.    List for each marriage the name of your spouse; spouse's date of birth (for your current spouse only); spouse's occupation; date of marriage; date the marriage ended, if applicable; and how the marriage ended (e.g., divorce, annulment, death):

    Name: Debra Denise Thompson
    Married: October, 1997
    Occupation: Clerk at Wedowee Citgo

B.    Has your spouse filed a loss of consortium claim in this action?
    Yes \_\_\_\_\_    No \_\_X\_\_\_

C.    To the best of your knowledge did any child, parent, sibling, or grandparent of yours suffer from any type of cardiovascular disease including but not limited to: heart attack, abnormal rhythm, arteriosclerosis (hardening or the arteries), murmur, coronary artery disease, congestive heart failure, enlarged heart, leaking valves or prolapse, heart block, congenital heart abnormality, Scarlet Fever, Rheumatic Fever, atrial fibrillation, stroke?
    Yes \_\_\_X\_\_    No _____    Don't Know _____

    *If "yes,"* identify each such person below and provide the information requested.

    Name: Mother, Hazel Thompson
    Current Age (or Age at Death): 84
    Type of Problem: Heart attack
    If Applicable, Cause of Death:.

D.    If applicable, for each of your children, list his/her name, age and address:
    No Children.

E.    If you are claiming the wrongful death of a family member, list any and all heirs of the decedent. No.

## IV. VIOXX PRESCRIPTION INFORMATION

A.    Who prescribed VIOXX for you?  Dr. Michael Robinson, Wedowee, Alabama

B.    On which dates did you begin to take, and stop taking, VIOXX?
Started: 5-27-04
Stopped: 9-21-04

C.    Did you take VIOXX continuously during that period?
Yes __X___      No _____      Don't Recall _____

D.    To your understanding, for what condition were you prescribed VIOXX?
Problems with leg and hip pain and inflammation from wreck in 1980.

E.    Did you renew your prescription for VIOXX?
Yes __X___      No _____      Don't Recall____

F.    If you received any samples of VIOXX, state who provided them, what dosage,
how much and when they were provided: None.

G.    Which form of VIOXXÒ did you take (check all that apply)?
_____ 12.5 mg Tablet (round, cream, MRK 74)
_____ 12.5 mg Oral Suspension
___X__ 25 mg Tablet (round, yellow, MRK 110)
_____ 25 mg Oral Suspension
_____ 50 mg Tablet (round, orange, MRK 114)

H.    How many times per day did you take VIOXX?  Once.

I.    Did you request that any doctor or clinic provide you with VIOXX or a
prescription for VIOXX? Yes _____  No __X___  Don't Recall _____

J.    Instructions or Warnings:

1. Did you receive any written or oral information about VIOXX before you took
it?  Yes _____  No _____     Don't Recall __X___

2. Did you receive any written or oral information about VIOXX while you took
it? Yes _____   No _____  Don't Recall __X___

3. If "yes,"
a. When did you receive that information?
b. From whom did you receive it?
c. What information did you receive?

K.    What over-the-counter pain relief medications, if any, were you taking at the same time you were taking VIOXX?  Advil, occasionally.

V. MEDICAL BACKGROUND

A.    Height: 5'11'

B.    Current Weight: 220

Weight at the time of the injury, illness, or disability described in Section I©):
Not available.

C.    Smoking/Tobacco Use History: *Check the answer and fill in the blanks applicable to your history of smoking and/or tobacco use.*

_____  Never smoked cigarettes/cigars/pipe tobacco or used chewing tobacco/snuff.
_____ Past smoker of cigarettes/cigars/pipe tobacco or used chewing tobacco/snuff.
          a. Date on which smoking/tobacco use ceased:
          b. Amount smoked or used: on average_____ per day for _____ years.
__X___Current smoker of cigarettes/cigars/pipe tobacco or user of chewing
          tobacco/snuff.
Amount smoked or used: on average 1 pack per day for 10 years.
____ Smoked different amounts at different times.

D.    Drinking History. Do you now drink or have you in the past drank alcohol (beer, wine, whiskey, etc.)? Yes __X____    No _____

If "*yes," fill in the appropriate blank* with the number of drinks that represents your average alcohol consumption during the period you were taking VIOXX up to the time that you sustained the injuries alleged in the complaint:
          _____ drinks per week,
          ____1____ drinks per month,
          _____ drinks per year, *or*
          Other (describe):

E.    Illicit Drugs. Have you ever used (even one time) any illicit drugs of any kind within one (1) year before, or any time after, you first experienced your alleged VIOXX- related injury?" Yes _____    No __X___    Don't Recall _____

*If "yes",* identify each substance and state when you first and last used it.

F.    Please indicate to the best of your knowledge whether you have ever received any of the following treatments or diagnostic procedures:

1. Cardiovascular surgeries, including, but not limited to, the following, and specify or what condition the surgery was performed: open heart/bypass surgery, pacemaker implantation, vascular surgery, IVC filter placement, carotid (neck artery) surgery, lung resection, intestinal surgery:
Surgery: Stint placement, July 2004,

2. Treatments/interventions for heart attack, angina (chest pain), or lung ailments:
Treatment/Intervention: Normal hospital course.

3. To your knowledge, have you had any of the following tests performed: chest Xray, CT scan, MRI, angiogram, EKG, echocardiogram, TEE (trans-esophageal echo), bleeding scan, endoscopy, lung bronchoscopy, carotid duplex/ultrasound, MRI/MRA of the head/neck, angiogram of the head/neck, CT scan of the head, bubble/microbubble study, or Holter monitor?
Yes __X___     No _____     Don't Recall _____

*If "yes,"* answer the following:
Diagnostic Test When Treating: Chest X-Ray, EKG, Cardiac Catherization, Coronary arteiograms, left ventriculogram, cardiac fluoroscopy, 3 diagnostic catheters, Coronary Angiography, 10-19-04, 7-10-04, 9-07-05, 7-13-04, 10-21-04, 9-08-04
Physician: Dr. R. Daniel
Hospital Reason: Myocardial Infarction

## VI. DOCUMENTS

Please indicate if any of the following documents and things are currently in your possession, custody, or control, or in the possession, custody, or control of your lawyers by checking *"yes"* or *"no."* Where you have indicated *"yes,"* please attach the documents and things to your responses to this profile form.

A.     Records of physicians, hospitals, pharmacies, and other healthcare providers identified in response to this profile form.     Yes __X___     No _____

B.     Decedent's death certificate (if applicable).     Yes _____     No __X___

C.     Report of autopsy of decedent (if applicable).     Yes _____     No __X___

## VII. LIST OF MEDICAL PROVIDERS AND OTHER SOURCES OF INFORMATION

*List the name and address of each of the following:*

A.      Your current family and/or primary care physician:

      Dr. Mike Robinson
      209 Main Street
      Wedowee, Alabama

B.      To the best of your ability, identify each of your primary care physicians for the last ten (10) years:

      Dr. Mike Robinson
      209 Main Street
      Wedowee, Alabama

C.      Each hospital, clinic, or healthcare facility where you have received inpatient treatment or been admitted as a patient during the last ten (10) years.

      Wedowee Hospital
      Highway 431
      Wedowee, AL 36278

      East Alabama Medical Center
      2000 Pepperell Parkway
      Opelika, AL 36801-5452

D.      Each hospital, clinic, or healthcare facility where you have received outpatient treatment (including treatment in an emergency room) during the last ten (10) years.
      None.

E.      Each physician or healthcare provider from whom you have received treatment in the last ten (10) years.

      Dr. Tony Bolton
      401 Hillyer Robinson
      Anniston, Alabama 36207

      Dr. Robert Grubbe
      912 Snow Street
      Oxford, Alabama 36203

F.    Each pharmacy that has dispensed medication to you in the last ten (10) years.

H&M Drugs
105 North Main Street
Wedowee, AL 36278

G.    If you have submitted a claim for social security disability benefits in the last ten (10) years, state the name and address of the office that is most likely to have records concerning your claim.  None.

H.    If you have submitted a claim for worker's compensation, state the name and address of the entity that is most likely to have records concerning your claim. None.

## CERTIFICATION

I declare under penalty of perjury subject to 28 U.S.C. § 1746 that all of the information provided in this Profile Form is true and correct to the best of my knowledge, that I have completed the List of Medical Providers and Other Sources of Information appended hereto, which is true and correct to the best of my knowledge, that I have supplied all the documents requested in part VI of this declaration, to the extent that such documents are in my possession, custody, or control, or in the possession, custody, or control of my lawyers, and that I have supplied the authorizations attached to this declaration.

_____
Signature

2/19/07
Date

Phillip Charles Thompson
Print Name

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA
BAILEY, et als., v MERCK & CO. INC., et als.
Case Number: 3:06 cv 00979
AUTHORIZATION FOR RELEASE OF RECORDS (To be signed by plaintiffs *not*
making a claim for lost wages or earnings or earning capacity.)

Name: Phillip Thompson
Date of Birth: 10-11-1956
Social Security Number: 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

I hereby authorize _____ to release all
existing records and information in its possession regarding the above-named person's
employment and education (with the exception of W-4 and W-2 forms) to the law firm of
**HUGHES HUBBARD & REED LLP**, 101 Hudson Street, Suite 3601, Jersey City, New
Jersey 07302, and/or to the law firm of **RUSHTON, STAKLEY, JOHNSTON &
GARRETT, P.A.**, Post Office Box 270, Montgomery, Alabama 36101-0270,
and/or to the law firm of _____
_____ and/or their designated agents ("Receiving Parties").
These records shall be used or disclosed solely in connection with the currently pending
VIOXX® litigation involving the person named above. This authorization shall cease to be
effective as of the date on which the above-named person's VIOXX® litigation concludes.
I understand that this authorization includes the above-named person's complete
employment personnel file with the exception of W-4 and W-2 forms (including attendance
reports, performance reports, medical reports, workers' compensation claims), and also includes
all other records relating to employment, past and present, all records related to claims for
disability, and all educational records (including those relating to courses taken, degrees
obtained, and attendance records). This listing is not meant to be exclusive.
Any photostatic copy of this document shall have the same authority as the original, and
may be substituted in its place.

Copies of these materials are to be provided at the expense of Hughes Hubbard & Reed LLP or

_____

Dated this 28th day of February, 2007.

*Phillip Thompson*
Phillip Thompson

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA
BAILEY, et als., v MERCK & CO. INC., et als.
Case Number: 3:06 cv 00979

AUTHORIZATION FOR RELEASE OF MEDICAL RECORDS PURSUANT TO
45 C.F.R. § 164.508 (HIPAA)

Name: Phillip Thompson
Date of Birth: 10-11-1956
Social Security Number: 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

I hereby authorize _____ to release all existing medical records regarding the above-named person's medical care, treatment, physical condition, and/or medical expenses to the law firm of **HUGHES HUBBARD & REED LLP, 101 Hudson Street, Suite 3601, Jersey City, New Jersey 07302,** and/or to the law firm of **RUSHTON, STAKLEY, JOHNSTON & GARRETT, P.A., Post Office Box 270, Montgomery, Alabama 36101-0270,** and/or to the law firm of _____ _____ and/or their designated agents ("Receiving Parties"). These records shall be used or disclosed solely in connection with the currently pending VIOXX® litigation involving the person named above. This authorization shall cease to be effective as of the date on which the above-named person's VIOXX® litigation concludes. The Receiving Parties shall return or destroy the protected health information (including all copies made) at the end of the above-named person's litigation or proceeding.

I understand that the health information being used/disclosed may include information relating to the diagnosis and treatment of Human Immunodeficiency Virus (HIV), Acquired Immune Deficiency Syndrome (AIDS), sexually transmitted disease and drug and alcohol disorders.

This authorization also may include x-ray reports, CT scan reports, MRI scans, EEGs, EKGs, sonograms, arteriograms, discharge summaries, photographs, surgery consent forms, admission and discharge records, operation records, doctor and nurses notes (excluding psychotherapy notes maintained separately from the individual's medical record that document or analyze the contents of conversation during a private counseling session or a group, joint, or family counseling session by referring to something other than medication prescription and monitoring, counseling session start and stop times, the modalities and frequencies of treatment furnished, results of clinical tests, and any summary of the following items: diagnosis, functional status, the treatment plan, symptoms, prognosis and progress), prescriptions, medical bills, invoices, histories, diagnoses, narratives, and any correspondence/memoranda and billing information. It also includes, to the extent such records currently exist and are in your possession, insurance records, including Medicare/Medicaid and other public assistance claims, applications, statements, eligibility material, claims or claim disputes, resolutions and payments,

medical records provided as evidence of services provided, and any other documents or things

pertaining to services furnished under Title XVII of the Social Security Act or other forms of public assistance (federal, state, local, etc.). This listing is not meant to be exclusive. This will further authorize you to provide updated medical records, x-rays, reports or copies thereof to the above attorney until the conclusion of the litigation. I understand that I have the right to revoke in writing my consent to this disclosure at any time, except to the extent that the above-named facility or provider already has taken action in reliance upon this authorization, or if this authorization was obtained as a condition of obtaining insurance coverage. I further understand that the above-named facility or provider cannot condition the provision of treatment, payment, enrollment in a health plan or eligibility for benefits on my provision of this authorization. I further understand that information disclosed pursuant to this authorization may be subject to redisclosure by the recipient to its clients, agents, employees, consultants, experts, the court, and others deemed necessary by the recipient to assist in this litigation and may no longer be protected by HIPAA. I further reserve the right to request the return or redaction of sensitive or embarrassing information, not germane to the litigation, that is disclosed to the Receiving Parties.

Any photostatic copy of this document shall have the same authority as the original, and may be substituted in its place. Copies of these materials are to be provided at the expense of Hughes Hubbard & Reed LLP or _____.

Dated this 28th day of February 2007.

Phillip Thompson

Confidential - Subject to Protective Order    MRK-UPF2310351

| LEGAL_ID | Proprietary | CUSTOMER | CALL_DT | REP | CURR_REP_NAME | WIN |
|---|---|---|---|---|---|---|
| 1121849 | | ROBINSON, MIKE | 1999/06/29 | SPARKMAN, DAVID | SPARKMAN, DAVID | 10079811 |
| 1121849 | | ROBINSON, MIKE | 2004/02/05 | SPARKMAN, DAVID | SPARKMAN, DAVID | 10079811 |
| 1121849 | | ROBINSON, MIKE | 2003/10/23 | SPARKMAN, DAVID | SPARKMAN, DAVID | 10079811 |
| 1121849 | | ROBINSON, MIKE | 2003/10/02 | SPARKMAN, DAVID | SPARKMAN, DAVID | 10079811 |
| 1121849 | | ROBINSON, MIKE | 2002/10/08 | SPARKMAN, DAVID | SPARKMAN, DAVID | 10079811 |
| 1121849 | | ROBINSON, MIKE | 2002/04/05 | SPARKMAN, DAVID | SPARKMAN, DAVID | 10079811 |
| 1121849 | | ROBINSON, MIKE | 2001/03/22 | SPARKMAN, DAVID | SPARKMAN, DAVID | 10079811 |
| 1121849 | | ROBINSON, MIKE | 2000/11/15 | SPARKMAN, DAVID | SPARKMAN, DAVID | 10079811 |
| 1121849 | | ROBINSON, MIKE | 2000/07/14 | SPARKMAN, DAVID | SPARKMAN, DAVID | 10079811 |
| 1121849 | | ROBINSON, MIKE | 2000/06/22 | SPARKMAN, DAVID | SPARKMAN, DAVID | 10079811 |
| 1121849 | | ROBINSON, MIKE | 2000/01/04 | SPARKMAN, DAVID | SPARKMAN, DAVID | 10079811 |
| 1121849 | | ROBINSON, MIKE | 2001/03/13 | LOVETT, LORI | SPARKMAN, DAVID | 10079811 |
| 1121849 | | ROBINSON, MIKE | 2000/04/11 | LOVETT, LORI | LOVETT, LORI | 10093831 |
| 1121849 | | ROBINSON, MIKE | 2001/11/01 | LOVETT, LORI | LOVETT, LORI | 10093831 |
| 1121849 | | ROBINSON, MIKE | 2001/06/27 | LOVETT, LORI | LOVETT, LORI | 10093831 |
| 1121849 | | ROBINSON, MIKE | 2001/06/07 | LOVETT, LORI | LOVETT, LORI | 10093831 |
| 1121849 | | ROBINSON, MIKE | 2001/12/11 | BARTLETT, SCOTT | LOVETT, LORI | 10093831 |
| 1121849 | | ROBINSON, MIKE | 2001/11/13 | BARTLETT, SCOTT | BARTLETT, SCOTT | 10107292 |
| 1121849 | | ROBINSON, MIKE | 2001/11/01 | BARTLETT, SCOTT | BARTLETT, SCOTT | 10107292 |
| 1121849 | | ROBINSON, MIKE | 2001/09/12 | HARPER, CORAL | BARTLETT, SCOTT | 10107292 |
| 1121849 | | ROBINSON, MIKE | 2001/04/25 | HARPER, CORAL | HARPER, CORAL | 10271172 |
| 1121849 | | ROBINSON, MIKE | 2001/03/13 | HARPER, CORAL | HARPER, CORAL | 10271172 |
| 1121849 | | ROBINSON, MIKE | 2001/02/20 | HARPER, CORAL | HARPER, CORAL | 10271172 |
| 1121849 | | ROBINSON, MIKE | 2002/03/27 | SANTIAGO, MELISSA | BAUER, MELISSA | 10065256 |
| 1121849 | | ROBINSON, MIKE | 2001/08/02 | HENDERSON, CHARLES | HENDERSON, CHARLES | 10119078 |
| 1121849 | | ROBINSON, MIKE | 2002/09/27 | HENDERSON, CHARLES | HENDERSON, CHARLES | 10119078 |
| 1121849 | | ROBINSON, MIKE | 2002/08/06 | HENDERSON, CHARLES | HENDERSON, CHARLES | 10119078 |
| 1121849 | | ROBINSON, MIKE | 2002/01/18 | HENDERSON, CHARLES | HENDERSON, CHARLES | 10119078 |
| 1121849 | | ROBINSON, MIKE | 2001/12/06 | HENDERSON, CHARLES | HENDERSON, CHARLES | 10119078 |

EXHIBIT
B.
Blumberg No. 5119

Confidential - Subject to Protective Order

MRK/MPF231035

| LEGAL_ID | 2 Proprieta | CUSTOMER | CALL_DT | REP | CURR_REP_NAME | WIN |
|---|---|---|---|---|---|---|
| 1121849 | | ROBINSON, MIKE | 2001/10/24 | HENDERSON, CHARLES | HENDERSON, CHARLES | 10119078 |
| 1121849 | | ROBINSON, MIKE | 2001/09/24 | HENDERSON, CHARLES | HENDERSON, CHARLES | 10119078 |

## IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| **PHILLIP THOMPSON,** | * |
| | * |
| | * |
| **Plaintiff,** | * |
| **v.** | * |
| | * |
| **MERCK & CO., INC., a foreign or** | * **CASE NUMBER: CV-** |
| **domestic Corporation, DAVID** | * |
| **SPARKMAN, KATHERINE HOLMES,** | * |
| **LORI LOVETT, SCOTT BARTLETT,** | * |
| **CORAL HARPER, MELISSA SANTIAGO,** | * |
| **HENRY MITCHAM, JERRY PHARR,** | * |
| **JASON DELK, CHARLES HENDERSON,** | * |
| **JAMES HOUSTON, JULIE MELTON,** | * |
| **JULIE HODGES, and MELISSA** | * |
| **BAUER, NATASHA WALKER-** | * |
| **MCGLOTHAN, RANDY WALLS, and the** | * |
| **Defendants A, B, C, D, E, X & Z whether** | * |
| **singular or plural, being those persons,** | * |
| **firms or entities who or which** | * **Removed from the** |
| **proximately caused or contributed to the** | * **Circuit Court of** |
| **Plaintiff's personal injury and Plaintiff's** | * **Randolph County, Alabama** |
| **other harm and the other** | * **(CV-06-145)** |
| **damages as complained of herein whose** | * |
| **true names are unknown to the Plaintiffs** | * |
| **but will be added by amendment when** | * |
| **correctly ascertained,** | * |
| | * |
| **Defendants.** | * |
| | * |
| | * |
| | * |
| | * |

## DECLARATION OF SUSAN J. BRUNSTETTER

I, Susan J. Brunstetter, declare as follows:

1.      My name is Susan J. Brunstetter.  I am over twenty-one years of

age and I have personal knowledge of the truth of the matters stated herein.  If called

EXHIBIT
C.
Blumberg No. 5119

upon to testify to facts set forth herein, I could and would do so truthfully and competently.

2.    I am a Senior Analyst ("Senior Analyst") in the Enterprise Systems and Services department of Merck & Co., Inc. ("Merck") and work in Merck's West Point, Pennsylvania office. In my capacity as Senior Analyst, I have direct personal knowledge of the records that Merck maintains in the regular course of its business.

3.    In my capacity as Senior Analyst, I have become familiar with and have direct personal knowledge regarding the employment records of the Professional Representatives of Merck.

4.    I have reviewed records that Merck maintains in the ordinary course of its business on current Professional Representatives Coral Harper, Charles Henderson, Henry Mitcham, Melissa Santiago-Bauer, and David Sparkman.

5.    Merck's business records reflect that these current Professional Representatives reside in the State of Georgia.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 30, 2007.

Susan J. Brunstetter

2

ELECTRONICALLY FILED
8/26/2007 10:10 PM
CV-2006-000145.00
CIRCUIT COURT OF
RANDOLPH COUNTY, ALABAMA
CHRIS MAY, CLERK

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

| | | |
|---|---|---|
| CLIFFORD BAILEY, et al, | * | |
| | * | |
| Plaintiff | * | |
| | * | |
| v. | * | CASE NO. DR-06-145 |
| | * | |
| MERCK & CO., INC., et al, | * | |
| | * | |
| Defendant | * | |

## ORDER

This matter came before the Court on the Defendant, Merck's Motion to Severe. After consideration of the oral arguments, briefs and reading of cases on point, the court makes the following findings of fact and ruling. First, in the litigation at hand, the court is considering whether the joinder of the plaintiffs is proper under Rule 20 of the Rules of Civil Procedure. In order to be proper, Rule 20 requires that the cause of action arise out of the same transaction, occurrence, or series of transactions or occurrences for all plaintiffs. In this case there is no question that the plaintiffs' injuries did not arise out of the same or even similar transactions or occurrences. The court considered the following in making this determination:

1. None of the patients were prescribed Vioxx by the same physician.

2. The plaintiffs took different doses of the medication.

3. The plaintiff's took the medication for different durations.

4. The plaintiff's were in various states of health prior to and during the ingestion of Vioxx.

1



5. The plaintiff's allegedly suffered widely different affects from the ingestion of Vioxx.

6. The plaintiff's allege that Vioxx failed to warn the physicians and the consumers of the dangers of taking Vioxx; however, different warnings, oral and written, were given during the time periods covered by the different plaintiffs. The Patient Package Insert was modified during the periods that the different plaintiffs began taking Vioxx.

For these reasons, the court feels that a joinder of these numerous plaintiffs is improper. The court will look at consolidating some of these plaintiffs pursuant to Rule 42 after further discovery. However, at this time it is **ORDERED, ADJUDGED and DECREED** as follows:

That defendant, Merck & Co., Inc.'s motion to severe is granted. This matter shall proceed as eight different causes of action with each plaintiff proceeding separately.

Done this the 26th day of August, 2007.

/s/ Steve R. Perryman
STEVE R. PERRYMAN
Circuit Judge

2

ELECTRONICALLY FILED
9/5/2007 11:22 AM
CV-2006-000145.00
CIRCUIT COURT OF
RANDOLPH COUNTY, ALABAMA
CHRIS MAY, CLERK

## IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, et al,                  )
                                         )
    Plaintiffs,                      )
                                         )
v.                                       )     CASE NUMBER: CV-2006-145
                                         )
MERCK & CO., INC., et al,                )
                                         )
    Defendants.                      )

## ORDER

By previous order of August 26, 2007, this Court granted the motion to sever filed by Defendant Merck & Co., Inc. In furtherance of that ruling, this Court hereby orders the Clerk of Court to create seven new case files. The claims of Plaintiff Clifford Bailey only shall remain pending under the case number referenced above (CV-2006-145).

The respective claims of each of the seven remaining plaintiffs shall each be assigned a new civil action number by the clerk. A copy of the original complaint shall be included in each of the seven newly-created court files, a copy of Defendant's Answer, and a copy of the Court's order of August 26, 2007 and this order shall also be included in each of the case files.

The clerk is further authorized to issue notices seeking the remittance of applicable filing fees as may be warranted.

DONE AND ORDERED this 5th day of September, 2007

                                      **/s/ Steve Perryman**
                                      Circuit Judge

cc:
Thomas J. Knight                    Steven R. Morris
P.O. Drawer 1850                    P.O. Box 814
Anniston, AL 36202                  Wedowee, AL 36278-0814

F. Chadwick Morriss
Ben C. Wilson
Post Office Box 270
Montgomery, Alabama 36101-0270


EXHIBIT
E.

ELECTRONICALLY FILED
8/26/2007 10:10 PM
CV-2006-000145.00
CIRCUIT COURT OF
RANDOLPH COUNTY, ALABAMA
CHRIS MAY, CLERK

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, et al,                    *
                                           *
         Plaintiff                         *
                                           *
v.                                         *        CASE NO. CV-06-145
                                           *        STATE OF ALABAMA
MERCK & CO., INC., et al,                  *        RANDOLPH COUNTY
                                           *           I, Chris May, Clerk of the Circuit Court of Randolph Co
         Defendant                         *        Alabama, do hereby certify that above and foregoing is a tru
                                                    correct copy of CV 06-145
                                                    as the same appears of record and on file in my office
                                                    Witness my hand and seal, this 10th
                                                    Sept                     2007          , 2

                                                    Chris May
                         __ORDER__                  Clerk of the Circuit Court of Randolph County, A

        This matter came before the Court on the Defendant, Merck's Motion to Severe.

After consideration of the oral arguments, briefs and reading of cases on point, the court

makes the following findings of fact and ruling.  First, in the litigation at hand, the court

is considering whether the joinder of the plaintiffs is proper under Rule 20 of the Rules of

Civil Procedure.  In order to be proper, Rule 20 requires that the cause of action arise out

of the same transaction, occurrence, or series of transactions or occurrences for all

plaintiffs.  In this case there is no question that the plaintiffs' injuries did not arise out of

the same or even similar transactions or occurrences.  The court considered the following

in making this determination:

        1. None of the patients were prescribed Vioxx by the same physician.

        2. The plaintiffs took different doses of the medication.

        3. The plaintiff's took the medication for different durations.

        4. The plaintiff's were in various states of health prior to and during the ingestion

        of Vioxx.



EXHIBIT
E.

1

5. The plaintiff's allegedly suffered widely different affects from the ingestion of

Vioxx.

6. The plaintiff's allege that Vioxx failed to warn the physicians and the

consumers of the dangers of taking Vioxx; however, different warnings, oral and

written, were given during the time periods covered by the different plaintiffs.

The Patient Package Insert was modified during the periods that the different

plaintiffs began taking Vioxx.

For these reasons, the court feels that a joinder of these numerous

plaintiffs is improper. The court will look at consolidating some of these

plaintiffs pursuant to Rule 42 after further discovery. However, at this time it is

**ORDERED, ADJUDGED and DECREED** as follows:

That defendant, Merck & Co., Inc.'s motion to severe is granted. This matter

shall proceed as eight different causes of action with each plaintiff proceeding

separately.

Done this the 26th day of August, 2007.

*/s/ Steve R. Perryman*
STEVE R. PERRYMAN
Circuit Judge

ELECTRONICALLY FILED
8/9/2007 11:46 AM
CV-2006-000145.00
CIRCUIT COURT OF
RANDOLPH COUNTY, ALABAMA
CHRIS MAY, CLERK

## IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

|                         |   |                              |
|-------------------------|---|------------------------------|
| BAILEY CLIFFORD         | ) |                              |
| BLACK CLIFFORD          | ) |                              |
| CALHOUN WESLEY          | ) |                              |
| DEASON CURTIS           | ) |                              |
| ET. AL.                 | ) |                              |
| Plaintiffs              | ) |                              |
|                         | ) |                              |
| v.                      | ) | Case No.: CV-2006-000145.00  |
|                         | ) |                              |
| MERCK & CO INC          | ) |                              |
| BARTLETT SCOTT          | ) |                              |
| BAUER MELISSA           | ) |                              |
| DELK JASON              | ) |                              |
| ET. AL.                 | ) |                              |
| Defendants              | ) |                              |

## ORDER

All pending motions, including Defendants' Motion to Sever, are hereby re-set for oral argument on **August 23, 2007**, 9:00 a.m. at the Randolph County Courthouse.Any brief in response or opposition to a motion now pending must be filed with the Court and served upon opposing counsel no later than August 16, 2007.A submission in reply, if any, must be filed and served upon opposing counsel no later than August 21, 2007

DONE this 9th day of August, 2007

/s STEVEN R PERRYMAN
_____

CIRCUIT JUDGE



**Filed In Office**

AUG 27 007

CHRIS MAY
Clerk of Circuit Court



**AlaFile E-Notice**

56-CV-2006-000145.00

Judge: ASSIGNED JUDGE

To: SPARKMAN DAVID          (PRO SE)
545 ROCKY FORD ROAD
HARTSELLE, AL 35640

---

# NOTICE OF ELECTRONIC FILING

---

### IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

The following matter was FILED on 8/9/2007 11:46:22 AM

Notice Date:        8/9/2007 11:46:22 AM

*Possible Contact:*

*256-773-7284*
*father of a*
*David Sparkman*
*Ronald*

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov

*This David Sparkman*
*has never been*
*employed and/or*
*associated with*
*Merch + Co.*

CV06-145                    9.5.07

This is the 3rd time
I have returned info.
to you. I am not
Katherine Holmes &
the enclosed info
does not pertain
to me.

**Filed In Office**

SEP 0 5 2007

CHRIS MAY
Clerk of Circuit Court

K Holmes



**AlaFile E-Notice**

56-CV-2006-000145.00

Judge: STEVEN RICHARD PERRYMAN

To:  BROCK MIKE
     rcb@rsjg.com

---

# NOTICE OF COURT ACTION

---

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

**CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL**
**56-CV-2006-000145.00**

A court action was entered in the above case on 8/26/2007 10:10:07 PM

**D001 MERCK & CO INC**

**MOTION TO SEVER**

[Attorney: WILSON BENJAMIN COLLIER]

| | |
|---|---|
| Disposition: | GRANTED |
| Judge: | SRP |
| Notice Date: | 8/26/2007 10:10:07 PM |

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

Judge: STEVEN RICHARD PERRYMAN

To:  GARRETT RICHARD B
    rbg@rsjg.com

---

# NOTICE OF COURT ACTION

---

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

**CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL**
**56-CV-2006-000145.00**

A court action was entered in the above case on 8/26/2007 10:10:07 PM

**D001 MERCK & CO INC**
**MOTION TO SEVER**

[Attorney: WILSON BENJAMIN COLLIER]

Disposition:     GRANTED
Judge:           SRP

Notice Date:     8/26/2007 10:10:07 PM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

Judge: STEVEN RICHARD PERRYMAN

To:  HOBBS RALPH N
rnh@hhpclaw.com

---

# NOTICE OF COURT ACTION

---

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

A court action was entered in the above case on 8/26/2007 10:10:07 PM

**D001 MERCK & CO INC**

**MOTION TO SEVER**

[Attorney: WILSON BENJAMIN COLLIER]

Disposition:     GRANTED
Judge:           SRP

Notice Date:     8/26/2007 10:10:07 PM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

Judge: STEVEN RICHARD PERRYMAN

To:  KNIGHT THOMAS J
     hubbardknight@msn.com

# NOTICE OF COURT ACTION

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

A court action was entered in the above case on 8/26/2007 10:10:07 PM

**D001 MERCK & CO INC**

**MOTION TO SEVER**

[Attorney: WILSON BENJAMIN COLLIER]

Disposition:    GRANTED
Judge:          SRP

Notice Date:    8/26/2007 10:10:07 PM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

Judge: STEVEN RICHARD PERRYMAN

To: MORRISS F CHADWICK
    fcm@rsjg.com

# NOTICE OF COURT ACTION

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

A court action was entered in the above case on 8/26/2007 10:10:07 PM

D001 MERCK & CO INC
MOTION TO SEVER

[Attorney: WILSON BENJAMIN COLLIER]

Disposition:    GRANTED
Judge:          SRP

Notice Date:    8/26/2007 10:10:07 PM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

Judge: STEVEN RICHARD PERRYMAN

To:  WILSON BENJAMIN COLLIER
     bcw@rsjg.com

---

# NOTICE OF COURT ACTION

---

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

**CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL**
**56-CV-2006-000145.00**

A court action was entered in the above case on 8/26/2007 10:10:07 PM

**D001 MERCK & CO INC**
**MOTION TO SEVER**

[Attorney: WILSON BENJAMIN COLLIER]

Disposition:     GRANTED
Judge:           SRP

Notice Date:     8/26/2007 10:10:07 PM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

Judge: STEVEN RICHARD PERRYMAN

To:  BAUER MELISSA            (PRO SE)

, AL 0

# NOTICE OF COURT ACTION

### IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

### CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
### 56-CV-2006-000145.00

A court action was entered in the above case on 8/26/2007 10:10:07 PM

**D001 MERCK & CO INC**
**MOTION TO SEVER**
[Attorney: WILSON BENJAMIN COLLIER]

Disposition:     GRANTED
Judge:           SRP

Notice Date:     8/26/2007 10:10:07 PM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

Judge: STEVEN RICHARD PERRYMAN

To: HARPER CORAL            (PRO SE)

, AL 0

# NOTICE OF COURT ACTION

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

A court action was entered in the above case on 8/26/2007 10:10:07 PM

**D001 MERCK & CO INC**

**MOTION TO SEVER**

[Attorney: WILSON BENJAMIN COLLIER]

Disposition:     GRANTED
Judge:           SRP

Notice Date:     8/26/2007 10:10:07 PM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

Judge: STEVEN RICHARD PERRYMAN

To:  HENDERSON CHARLES        (PRO SE)

, AL 0

---

# NOTICE OF COURT ACTION

---

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

A court action was entered in the above case on 8/26/2007 10:10:07 PM

D001 MERCK & CO INC
MOTION TO SEVER

[Attorney: WILSON BENJAMIN COLLIER]

Disposition:     GRANTED
Judge:           SRP

Notice Date:     8/26/2007 10:10:07 PM

CHRIS MAY
CIRCUIT COURT CLERK
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

Judge: STEVEN RICHARD PERRYMAN

To:  HODGES JULIE          (PRO SE)

, AL 0

---

# NOTICE OF COURT ACTION

---

### IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

### CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
### 56-CV-2006-000145.00

A court action was entered in the above case on 8/26/2007 10:10:07 PM

### D001 MERCK & CO INC
### MOTION TO SEVER

[Attorney: WILSON BENJAMIN COLLIER]

Disposition:    GRANTED
Judge:          SRP

Notice Date:    8/26/2007 10:10:07 PM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

Judge: STEVEN RICHARD PERRYMAN

To: HOLMES KATHERINE          (PRO SE)

, AL 0

---

# NOTICE OF COURT ACTION

---

### IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

### CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
### 56-CV-2006-000145.00

A court action was entered in the above case on 8/26/2007 10:10:07 PM

### D001 MERCK & CO INC
### MOTION TO SEVER

[Attorney: WILSON BENJAMIN COLLIER]

| | |
|---|---|
| Disposition: | GRANTED |
| Judge: | SRP |

Notice Date:    8/26/2007 10:10:07 PM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

Judge: STEVEN RICHARD PERRYMAN

To:  HOUSTON JAMES          (PRO SE)

, AL 0

---

# NOTICE OF COURT ACTION

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

A court action was entered in the above case on 8/26/2007 10:10:07 PM

**D001 MERCK & CO INC**

**MOTION TO SEVER**

[Attorney: WILSON BENJAMIN COLLIER]

Disposition:     GRANTED
Judge:           SRP

Notice Date:     8/26/2007 10:10:07 PM

CHRIS MAY
CIRCUIT COURT CLERK
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

Judge: STEVEN RICHARD PERRYMAN

To: LOVETT LORI          (PRO SE)

, AL 3

# NOTICE OF COURT ACTION

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

A court action was entered in the above case on 8/26/2007 10:10:07 PM

D001 MERCK & CO INC

MOTION TO SEVER

[Attorney: WILSON BENJAMIN COLLIER]

| | |
|---|---|
| Disposition: | GRANTED |
| Judge: | SRP |
| Notice Date: | 8/26/2007 10:10:07 PM |

CHRIS MAY
CIRCUIT COURT CLERK
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

Judge: STEVEN RICHARD PERRYMAN

To: MELTON JULIE          (PRO SE)

, AL 0

---

# NOTICE OF COURT ACTION

---

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

A court action was entered in the above case on 8/26/2007 10:10:07 PM

**D001 MERCK & CO INC**

**MOTION TO SEVER**

[Attorney: WILSON BENJAMIN COLLIER]

| | |
|---|---|
| Disposition: | GRANTED |
| Judge: | SRP |
| Notice Date: | 8/26/2007 10:10:07 PM |

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

Judge: STEVEN RICHARD PERRYMAN

To:  PHARR JERRY          (PRO SE)

, AL 0

---

# NOTICE OF COURT ACTION

---

### IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

### CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
### 56-CV-2006-000145.00

A court action was entered in the above case on 8/26/2007 10:10:07 PM

### D001 MERCK & CO INC
### MOTION TO SEVER

[Attorney: WILSON BENJAMIN COLLIER]

Disposition:       GRANTED
Judge:             SRP

Notice Date:       8/26/2007 10:10:07 PM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

Judge: STEVEN RICHARD PERRYMAN

To: SANTIAGO MELISSA          (PRO SE)

M, AL 0

---

# NOTICE OF COURT ACTION

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

A court action was entered in the above case on 8/26/2007 10:10:07 PM

D001 MERCK & CO INC

MOTION TO SEVER

[Attorney: WILSON BENJAMIN COLLIER]

| | |
|---|---|
| Disposition: | GRANTED |
| Judge: | SRP |
| Notice Date: | 8/26/2007 10:10:07 PM |

CHRIS MAY
CIRCUIT COURT CLERK
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

Judge: STEVEN RICHARD PERRYMAN

To: SPARKMAN DAVID          (PRO SE)

, AL 0

---

# NOTICE OF COURT ACTION

---

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

A court action was entered in the above case on 8/26/2007 10:10:07 PM

D001 MERCK & CO INC

MOTION TO SEVER

[Attorney: WILSON BENJAMIN COLLIER]

Disposition:      GRANTED
Judge:            SRP

Notice Date:      8/26/2007 10:10:07 PM

CHRIS MAY
CIRCUIT COURT CLERK
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

Judge: STEVEN RICHARD PERRYMAN

To:  WALLS RANDY          (PRO SE)

, AL 0

---

# NOTICE OF COURT ACTION

---

### IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

### CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
### 56-CV-2006-000145.00

A court action was entered in the above case on 8/26/2007 10:10:07 PM

**D001 MERCK & CO INC**

**MOTION TO SEVER**

[Attorney: WILSON BENJAMIN COLLIER]

| | |
|---|---|
| Disposition: | GRANTED |
| Judge: | SRP |
| Notice Date: | 8/26/2007 10:10:07 PM |

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

Judge: STEVEN RICHARD PERRYMAN

To:  HUBBARD JAMES S
1125 NOBLE STREET
ANNISTON, AL 36201

---

# NOTICE OF COURT ACTION

---

### IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

### CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
### 56-CV-2006-000145.00

A court action was entered in the above case on 8/26/2007 10:10:07 PM

**D001 MERCK & CO INC**

**MOTION TO SEVER**

[Attorney: WILSON BENJAMIN COLLIER]

| | |
|---|---|
| Disposition: | GRANTED |
| Judge: | SRP |
| Notice Date: | 8/26/2007 10:10:07 PM |

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

Judge: STEVEN RICHARD PERRYMAN

To:  MORRIS STEVEN ROBERT
     596 1ST AVENUE SE
     P. O. BOX 814
     WEDOWEE, AL 36278

# NOTICE OF COURT ACTION

### IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

### CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
### 56-CV-2006-000145.00

A court action was entered in the above case on 8/26/2007 10:10:07 PM

**D001 MERCK & CO INC**

**MOTION TO SEVER**

[Attorney: WILSON BENJAMIN COLLIER]

Disposition:     GRANTED
Judge:           SRP

Notice Date:     8/26/2007 10:10:07 PM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

Judge: STEVEN RICHARD PERRYMAN

To:  WALKER-MCGLOTHAN NATASHA    (PRO SE)
3122 HIGHLAND LAKES RD
BIRMINGHAM, AL 35242

---

# NOTICE OF COURT ACTION

---

### IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

### CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
### 56-CV-2006-000145.00

A court action was entered in the above case on 8/26/2007 10:10:07 PM

### D001 MERCK & CO INC

### MOTION TO SEVER

[Attorney: WILSON BENJAMIN COLLIER]

Disposition:     GRANTED
Judge:          SRP

Notice Date:     8/26/2007 10:10:07 PM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

Judge: STEVEN RICHARD PERRYMAN

To:  MITCHAM HENRY          (PRO SE)
1919 MCDOWLING DR SE
HUNTSVILLE, AL 35803

# NOTICE OF COURT ACTION

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

A court action was entered in the above case on 8/26/2007 10:10:07 PM

**D001 MERCK & CO INC**

**MOTION TO SEVER**

[Attorney: WILSON BENJAMIN COLLIER]

Disposition:      GRANTED
Judge:            SRP

Notice Date:      8/26/2007 10:10:07 PM

CHRIS MAY
CIRCUIT COURT CLERK
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

Judge: STEVEN RICHARD PERRYMAN

To: BARTLETT SCOTT          (PRO SE)
3255 CO RD 747
CULLMAN, AL 35058

---

# NOTICE OF COURT ACTION

---

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

A court action was entered in the above case on 8/26/2007 10:10:07 PM

D001 MERCK & CO INC

MOTION TO SEVER

[Attorney: WILSON BENJAMIN COLLIER]

Disposition:     GRANTED
Judge:           SRP

Notice Date:     8/26/2007 10:10:07 PM

CHRIS MAY
CIRCUIT COURT CLERK
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov

ELECTRONICALLY FILED
8/23/2007 8:35 AM
CV-2006-000145.00
CIRCUIT COURT OF
RANDOLPH COUNTY, ALABAMA
CHRIS MAY, CLERK

IN THE CIRCUIT COURT OF
RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET AL.,                    )
                                            )
        Plaintiffs,                         )
                                            )
v.                                          )    CASE NUMBER: CV-2006-145
                                            )
MERCK & CO., INC., a foreign or             )
Domestic Corporation, ET AL.,               )
                                            )
        Defendants.                         )

## MERCK & CO., INC.'S AMENDED CROSS-NOTICE OF *DE BENE ESSE* TRIAL PRESERVATION DEPOSITION OF DR. ALISE REICIN

PLEASE TAKE NOTICE that the deposition *de bene esse* of **Alise Reicin, M.D.** has been rescheduled and will be held on **November 14 & 15, 2007**, beginning at **9:30 a.m. Eastern Time**, at the offices of **Hughes, Hubbard & Reed, LLP, One Battery Park Plaza, New York, New York, 10004**. The deposition will be taken before a notary public, certified court reporter, or other officer authorized by law to administer oaths for the purpose of discovery or for use as evidence, or for both purposes in connection with this action, and may be used at trial. You are invited to attend and participate.

This cross-notice is issued pursuant to Pretrial Order No. 9 in *In re VIOXX Products Liability Litigation,* MDL Docket No. 1657 (United States District Court for the Eastern District of Louisiana). Pursuant to Pretrial Order No. 9, Defendant requests that Plaintiff identify three (3) days before the deposition, the attorney(s) who may examine the deponent. The call-in number is 719-955-2414, and the participant passcode is 202-434-5400.

/s/ R. Austin Huffaker, Jr.
One of the Attorneys for Defendant,
Merck & Co., Inc.

OF COUNSEL:

RUSHTON, STAKELY,
        JOHNSTON, & GARRETT, P.A.
Post Office Box 270
Montgomery, Alabama 36101-0270
Telephone: (334) 206-3100
Facsimile: (334) 262-6277

**CERTIFICATE OF SERVICE**

     I hereby certify that I have electronically filed and served through CMECF and United States Mail a copy of the foregoing upon:

James S. Hubbard
Thomas J. Knight
HUBBARD & KNIGHT
1125 Noble Street
Anniston, Alabama 36201

on this the 22nd day of August, 2007.

                                      /s/ R. Austin Huffaker, Jr.
                                      OF COUNSEL



**AlaFile E-Notice**

56-CV-2006-000145.00

To:  ROBERT HUFFAKER
     rah2@rsjg.com

---

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

**CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL**
**56-CV-2006-000145.00**

The following discovery was FILED on 8/23/2007 8:35:28 AM

Notice Date:     8/23/2007 8:35:28 AM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

To:  BARTLETT SCOTT          (PRO SE)
     3255 CO RD 747
     CULLMAN, AL 35058

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

The following discovery was FILED on 8/23/2007 8:35:28 AM

Notice Date:     8/23/2007 8:35:28 AM

CHRIS MAY
CIRCUIT COURT CLERK
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

To:  BAUER MELISSA          (PRO SE)

, AL 0

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

The following discovery was FILED on 8/23/2007 8:35:28 AM

Notice Date:    8/23/2007 8:35:28 AM

CHRIS MAY
CIRCUIT COURT CLERK
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

To:  HARPER CORAL          (PRO SE)

, AL 0

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

The following discovery was FILED on 8/23/2007 8:35:28 AM

Notice Date:     8/23/2007 8:35:28 AM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

To:  HENDERSON CHARLES        (PRO SE)

, AL 0

---

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

The following discovery was FILED on 8/23/2007 8:35:28 AM

Notice Date:      8/23/2007 8:35:28 AM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

To:  HODGES JULIE          (PRO SE)

, AL 0

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

The following discovery was FILED on 8/23/2007 8:35:28 AM

Notice Date:      8/23/2007 8:35:28 AM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

To: HOLMES KATHERINE          (PRO SE)

, AL 0

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

The following discovery was FILED on 8/23/2007 8:35:28 AM

Notice Date:     8/23/2007 8:35:28 AM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

To:  HOUSTON JAMES          (PRO SE)

     , AL 0

---

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

The following discovery was FILED on 8/23/2007 8:35:28 AM

Notice Date:     8/23/2007 8:35:28 AM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

To: LOVETT LORI        (PRO SE)

, AL 3

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

The following discovery was FILED on 8/23/2007 8:35:28 AM

Notice Date:    8/23/2007 8:35:28 AM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

To:  MELTON JULIE          (PRO SE)
     5309 AVE S
     BIRMINGHAM, AL 35212

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

The following discovery was FILED on 8/23/2007 8:35:28 AM

Notice Date:     8/23/2007 8:35:28 AM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

To:  MITCHAM HENRY          (PRO SE)
     1919 MCDOWLING DR SE
     HUNTSVILLE, AL 35803

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

The following discovery was FILED on 8/23/2007 8:35:28 AM

Notice Date:     8/23/2007 8:35:28 AM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

To: PHARR JERRY            (PRO SE)

, AL 0

---

# NOTICE OF ELECTRONIC FILING

---

### IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

### CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
### 56-CV-2006-000145.00

The following discovery was FILED on 8/23/2007 8:35:28 AM

Notice Date:      8/23/2007 8:35:28 AM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

To:  SANTIAGO MELISSA          (PRO SE)

M, AL 0

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

The following discovery was FILED on 8/23/2007 8:35:28 AM

Notice Date:     8/23/2007 8:35:28 AM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

To:  SPARKMAN DAVID        (PRO SE)
     545 ROCKY FORD ROAD
     HARTSELLE, AL 35640

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

The following discovery was FILED on 8/23/2007 8:35:28 AM

Notice Date:    8/23/2007 8:35:28 AM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

To:  WALKER-MCGLOTHAN NATASHA    (PRO SE)
3122 HIGHLAND LAKES RD
BIRMINGHAM, AL 35242

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

The following discovery was FILED on 8/23/2007 8:35:28 AM

Notice Date:     8/23/2007 8:35:28 AM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

To:  WALLS RANDY          (PRO SE)

, AL 0

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

The following discovery was FILED on 8/23/2007 8:35:28 AM

Notice Date:     8/23/2007 8:35:28 AM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

To:  HUBBARD JAMES S
     1125 NOBLE STREET
     ANNISTON, AL 36201

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

The following discovery was FILED on 8/23/2007 8:35:28 AM

Notice Date:     8/23/2007 8:35:28 AM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

To:  BROCK MIKE
rcb@rsjg.com

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

The following discovery was FILED on 8/23/2007 8:35:28 AM

Notice Date:      8/23/2007 8:35:28 AM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

To:  GARRETT RICHARD B
rbg@rsjg.com

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

The following discovery was FILED on 8/23/2007 8:35:28 AM

Notice Date:     8/23/2007 8:35:28 AM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

To:  KNIGHT THOMAS J
    hubbardknight@msn.com

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

The following discovery was FILED on 8/23/2007 8:35:28 AM

Notice Date:      8/23/2007 8:35:28 AM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

To:  MORRISS F CHADWICK
     fcm@rsjg.com

---

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

The following discovery was FILED on 8/23/2007 8:35:28 AM

Notice Date:      8/23/2007 8:35:28 AM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

To:  WILSON BENJAMIN COLLIER
     bcw@rsjg.com

# NOTICE OF ELECTRONIC FILING

### IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

### CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
### 56-CV-2006-000145.00

The following discovery was FILED on 8/23/2007 8:35:28 AM

Notice Date:     8/23/2007 8:35:28 AM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov

ELECTRONICALLY FILED
8/16/2007 3:06 PM
CV-2006-000145.00
CIRCUIT COURT OF
RANDOLPH COUNTY, ALABAMA
CHRIS MAY, CLERK

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

| | | |
|---|---|---|
| CLIFFORD BAILEY, et al. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CASE NUMBER: CV-06-145 |
| | ) | |
| MERCK & CO., INC., et al. | ) | |
| | ) | |
| Defendants. | ) | |

## RESPONSE AND BRIEF IN OPPOSITION TO MOTION TO SEVER

The Plaintiffs oppose the Motion to Sever in this civil action and show the Court that the Motion is due to be denied on the following grounds:

Defendants argue that this case should be severed into individual cases for each plaintiff. Plaintiffs suggest that the purpose of this Motion is, in fact, to delay, complicate, and make the litigation more expensive and troublesome. There is certainly no basis for such an action under applicable law. As we will show below, two Alabama Supreme Court cases show exactly how to handle the present matter, and that this Motion to Sever should be denied, notwithstanding what *some* of the courts in *other* states or districts may have thought on the issue.

Defendants admit in their Motion that the issue is governed by the joinder rules of the Alabama Rules of Civil Procedure. As admitted by the defendants, these rules allow consolidation of claims and joinder of claims and parties if there are "common issues of law or fact" and they are "arising out of the same transaction, occurrence, or series of transactions or occurrences". Obviously, there are numerous common issues of law and fact in this case common to each of the Plaintiffs' claims against the defendants. It is the same drug in question. It is the same misconduct of the same defendants which is to be reviewed by the jury. It is the same drug development history. It is the same type of harm inflicted on the plaintiffs by the

same drug.    Rule 20 clearly allows joinder of these parties.

Defendants point out that joinder is appropriate where the plaintiffs present claims "arising out of the same transaction, occurrence, or series of transactions or occurrences...."[1]. How are we to interpret this requirement? "[L]anguage in a number of decisions suggests that the courts are inclined to find that claims arise out of the same transaction or occurrence when the likelihood of overlapping proof and duplication in testimony indicates that separate trials would result in delay, inconvenience, and added expense to the parties and to the court." 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* §§ 1653. Cited with approval in *Ex parte Flexible Products Co.,* 915 So.2d 34, at 53 (Ala.2005). As in all Vioxx trials, certainly, the first week or two of trial will be all the same evidence. If the case is broken down, then that same evidence will be rehashed again and again, trial by trial in a massive and unnecessary presentation of overlapping proof and duplication in testimony. This clearly shows that separate trials would result in delay, inconvenience, and added expense to the parties and to the court. Why would the defendants even want such an added burden?

The Committee Comments to Rule 20 say that the Rule "is intended to promote trial convenience, prevent a multiplicity of suits, and expedite the final determination of litigation by inclusion in one suit of all parties directly interested in the controversy."

To try the cases separately, one by one, would require numerous trials in each of which the same evidence would be rehashed. Most of the time of trial in each of the severed claims would involve precisely the same evidence by precisely the same witnesses and precisely the

---

[1] "'Transaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship. *Mosley v. Gen. Motors Corp.,* 497 F.2d 1330, 1333 (8th Cir.1974) (citation and internal quotation marks omitted)" *Ex parte Flexible Products Co.,* 915 So.2d 34, at 53 (Ala.2005).

same documents as to liability. The development and history of Vioxx, its chemical properties, warnings that were given by Merck to the medical profession are uniform, and the evidence will be the same on what those warnings should have been instead. What signs and adverse events came to Defendants' attention and their response to those, including the infamous "Dodgeball" program where Merck devised training to its sales representatives on how to "dodge" questions about the mounting safety hazards of Vioxx are common issues. Defendants' product was unreasonably dangerous and defective (obviously it was – it has now been pulled from the market, but Defendants will still take trial time to try to show Vioxx wasn't unreasonably dangerous); and what Defendants knew and when they knew it are the main issues in these trials. The transaction or occurrence of the Vioxx story is common to all of these claims. In fact, only on the damages issues are there any differences in the claims.

What Merck is really trying to do, by this Motion to Sever is not to sever at all. This is a tactical move by Merck. In fact what Merck wants to do is *not* break the case up into smaller pieces, but actually *combine* it into a huge consolidated case–the federal MDL. Merck has already had one "bite at the apple" of removal in this case. The federal judge in Montgomery remanded the case finding that there was no federal jurisdiction. Merck now wants another "bite at the apple" which it will attempt if the Motion to Sever is granted. There is no doubt but that what Merck will do, as it has done it other similar cases. If the Motion to Sever is granted, Merck will say each case is now a new case. It will then file new removals to federal court. If it is successful (or if motions to remand are not quickly granted) the case will <u>automatically</u> be transferred off to the distant MDL.

Of great interest to the current topic is Merck's own Motion to Stay which was filed in

3

this same case while Merck had it removed in the federal court. A copy of this, motion is attached as an exhibit to the present Response. In the Motion that Merck filed there, Merck vigorously supported the <u>consolidation</u> of all Vioxx cases nationwide. Merck quoted with approval the finding by a federal MDL judge that putting all of the Plaintiffs together "is necessary in order to eliminate duplicative discovery, avoid inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary." (Merck motion, p. 2).

In other words, the whole idea of severing is simply a sham. Merck has already won the right to have <u>federal</u> cases consolidated into one massive proceeding. That is what it wants to do at these cases and makes no secret of that. It is hard to believe that Merck would come to this Court and say the cases should be broken down into each individual Plaintiff, and then turn around and try to get them all put in with thousands and thousands of others in the MDL, but that is exactly what it is going to do if it succeeds here. This Court should not countenance such tactics.

Defendants' argument in favor of severing these cases is completely unsupported by Alabama law. Perhaps that is why they concentrate on rulings from other states in their Motion. In any event, it has long been held, in Alabama, that joinder is proper where, as the rules hold, there are common questions of law and fact to be tried. See for example, *Ex parte Rudolph*, 515 So.2d 704 (Ala.1987); *Ex parte Jenkins*, 510 So.2d 232 (Ala.1987); *Ex parte Turpin Vise Insurance Agency*, 705 So.2d 368 (Ala.1997)*; Ex parte Flexible Products Co., supra* and *Ex parte Monsanto*, 794 So.2d 350 (Ala.2001).

In *Ex parte Monsanto* the Supreme Court dealt with a much more extreme joinder than what we have in the present case. As the Court stated in the opinion: "There are approximately

4

2,714 plaintiffs in the three cases, and each of them asserts a toxic-tort claim against Monsanto
Company and other defendants..."...."Monsanto petitions for a writ of mandamus directing the
circuit court...to sever all of the plaintiffs' separate claims and to try each of the 2,714 claims
separately..." 794 So.2d 350, at 351 (Ala.2001). After analyzing the same type of argument now
made by Merck here, the Supreme Court held: " we find no basis for issuing a writ of mandamus
directing the trial court to sever all of the plaintiffs' claims and to try each of them separately."
794 So.2d 350, at 357 (Ala.2001). There is no basis shown by Merck to do that here either.

The *Monsanto* litigation found its way back to the Supreme Court more than once. The
trial plan of the *non-severed* claims had a liability phase, and then separate damage trials (before
the same jury) for case-specific damages, plaintiff-by-plaintiff. Two years later in *Ex parte
Monsanto Co.,* 862 So.2d 595, at 611 (Ala.2003), the Supreme Court noted the trial court's
comments that: "Other than creating a huge obstruction for the Plaintiffs in this case, this Court
cannot understand why Monsanto would logically object to the above-mentioned trial plan. If the
jury finds in favor of Monsanto after the liability phase, the case is over."

Defendants show just how specious their own argument is by their allegations of
"differences" between the plaintiffs' claims. Different doses don't make for different enough
circumstances to warrant a severance. It is, in this light, ridiculous for them to claim that there
are "no common questions of law or fact" or that there is not a common transaction or
occurrence. In *Ex parte Monsanto* case and *Ex parte Flexible Products* plaintiffs were subjected
to different exposures and "doses", and had varying illness patterns which resulted.

The *Ex parte Monsanto* case and *Ex parte Flexible Products* give the current views of our
Supreme Court on how to handle a "mass tort" litigation where a product has caused injuries to
numerous people. There are plenty of procedural mechanisms for handling any potential
problems with multiple plaintiffs. Common issues trials, and separate damage trials were the

5

answer allowed by the high Court, for example, in *Ex parte Monsanto*.

If the principles argued by Merck in its Motion were valid Alabama law, there is no way that *Ex parte Monsanto* and *Ex parte Flexible Products* could have been decided as they were. It is quite normal to have joinder of multiple plaintiffs allowed in action against a defendant. It is not abnormal to have the more extreme circumstance of joinder against different defendants. See, e.g., *Moore v. Comfed Sav. Bank*, 908 F.2d 834, 839 (11th Cir.1990) (plaintiffs alleged that the defendants took part in a similar scheme that was maintained either by conspiracy or contract; joinder was proper where connections between parties arose out of a series of transactions initiated by defendant Land Bank); *City of New York v. Joseph L. Balkan, Inc.*, 656 F.Supp. 536, 549 (E.D.N.Y.1987) (City alleged systemic corruption of City's sewer inspectors and various contractors in violation of Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(c); motion to sever filed by one contractor was denied); *Mack v. J.C. Penney Co.*, 108 F.R.D. 30, 31 (S.D.Ga.1985) (joinder of multiple plaintiffs allowed in action against J.C. Penney alleging a pervasive policy of employment discrimination in one store). See also *United States v. All Funds on Deposit in Any Accounts Maintained at Merrill Lynch, Pierce, Fenner & Smith*, 801 F.Supp. 984, 995 (E.D.N.Y.1992), citing *City of New York v. Joseph L. Balkan, Inc.* (joinder of numerous defendants permitted because complaint alleged that property belonging to each defendant had been forfeited to the government because of defendant's participation in illegal drug-sales conspiracy).

*Flexible Products* also tells us to "See also *Jamison v. Purdue Pharma Co.*, 251 F.Supp.2d 1315 (S.D.Miss.2003); and *Advamtel, LLC v. AT & T Corp.*, 105 F.Supp.2d 507 (E.D.Va.2000)(noting generally that the 'transaction or occurrence' test rule is designed to permit

6

all reasonably related claims for relief by or against different parties to be tried in single proceeding)."
*Ex parte Flexible Products Co.*, supra 915 So.2d at 53.   Nothing in *Ex parte Novartis*
*Pharmaceuticals Corp.*, 2007 WL 1576114 (Ala.2007) changes that principle of law.  The
*Novartis* court was very specific about the holding of that case: "We hold, therefore, that the
State's joinder of the 73 companies was improper because *coincidental, but not coordinated,*
*business transactions* giving rise to separate economic losses do not constitute a series of
transactions as contemplated by Rule 20."(emphasis added).  In the case at bar, the business
transactions giving rise to Plaintiffs' losses were not only coordinated, they were *the very same*
*transactions.*    As our high court has noted, all reasonably related claims for relief by or against
different parties to be tried in single proceeding.

   The *Ex parte Monsanto* case and *Ex parte Flexible Products* give the rule of law of our
Supreme Court on multiple plaintiff product liability cases.  Accordingly the Motion to Sever
should be denied.

<div style="text-align:right">

*/s/ Thomas J. Knight*
Thomas J. Knight
Attorney for Plaintiffs

</div>

HUBBARDS & KNIGHT
P.O. Drawer 1850
Anniston, Alabama 36202
(256) 237-9586

<div style="text-align:right">

*/s/ Steve R. Morris*
Steve R. Morris
Attorney for Plaintiffs
P.O. Box 814
Wedowee, Alabama 36278
(256) 357-9211

</div>

7

## CERTIFICATE OF SERVICE

I hereby certify that on August 16, 2007, I electronically filed the forgoing with the Clerk of Court using the CM/EMF system which will send notification of such filing to the following:

Mr. Ben C. Wilson
F. Chadwick Morriss
Mr. Richard B. Garrett
Mr. Robert C. Brock
RUSHTON, STAKELY, JOHNSTON & GARRETT, P.A.
184 Commerce Street
Post Office Box 270
Montgomery, Alabama 36104

*/s/ Thomas J. Knight*
Thomas J. Knight
Attorney for Plaintiffs

ELECTRONICALLY FILED
8/16/2007 3:06 PM
CV-2006-000145.00
CIRCUIT COURT OF
RANDOLPH COUNTY, ALABAMA
CHRIS MAY, CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### EASTERN DIVISION

| | |
|---|---|
| CLIFFORD BAILEY, CLIFFORD BLACK, WESLEY CALHOUN, CURTIS DEASON, RUTH GRAVES, MICKEY GRIZZARD, JIMMY PERRY, HERBERT STANLEY SIKES, and PHILLIP THOMPSON, | ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) CASE NUMBER: 3:06-cv-979-MHT ) |
| MERCK & CO., INC., a foreign or Domestic Corporation, et al., | ) ) ) |
| Defendants. | ) ) |

## RESPONSE TO SHOW CAUSE ORDER / MOTION TO STAY PENDING DECISION ON TRANSFER BY THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

### INTRODUCTION

In response to this Court's show cause order of November 1, 2006 (Doc. 20), Defendant Merck & Co., Inc. ("Merck") moves this Court to stay all proceedings in this action pending its likely transfer to *In re VIOXX Prods. Liab. Litig.* MDL No. 1657, the Multidistrict Litigation ("MDL") proceeding that has been established in the Eastern District of Louisiana to coordinate all product liability cases involving alleged health risks from VIOXX® (hereinafter the "VIOXX® product liability cases") (*See* February 16, 2005 Transfer Order attached hereto as Exhibit A).

Merck promptly intends to provide notice to the Judicial Panel on Multidistrict Litigation (the "MDL Panel") pursuant to Rule 7.5 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation ("R.P.J.P.M.L.") of the pendency of this "tag-along" action. Merck expects a conditional transfer order to be issued shortly thereafter.

Pending the transfer of this case to the Eastern District of Louisiana, a stay of proceedings is necessary and appropriate to achieve the judicial economies that underlie 28 U.S.C. § 1407. Absent a stay, this Court will expend judicial resources supervising pre-trial proceedings and making rulings in a case over which it will likely soon lose jurisdiction and will probably never see again. Moreover, without a stay, Merck would be significantly and unfairly prejudiced because it would have to duplicate discovery and legal briefing in jurisdictions around the country.

## I. BACKGROUND

### A.    MDL-1657

On February 16, 2005 the MDL Panel issued a transfer order, establishing MDL Proceeding No. 1657, *In re VIOXX Products Liability Litigation.* The Transfer Order directed that the 148 cases subject to original motions be transferred and coordinated for pretrial proceedings in the U.S. District Court for the Eastern District of Louisiana, before the Honorable Eldon E. Fallon. (*See* **Ex. A.**) In the Transfer Order, the Panel expressly held that the VIOXX® product liability cases have overlapping questions of fact:

> On the basis of the papers filed and hearing session held, the Panel finds that the actions in this litigation involve common questions of fact, and that centralization under Section 1407 in the Eastern District of Louisiana will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. All actions focus on the alleged increased health risks (including heart attack and/or stroke) when taking Vioxx, an anti-inflammatory drug, and whether Merck knew of these increased risks and failed to disclose them to the medical community and consumers. Centralization under Section 1407 is necessary in order to eliminate duplicative discovery, avoid inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary.

(*Id.* at 2.)

The MDL Panel also held that the "nearly 300 potentially related actions pending in multiple federal districts . . . will be treated as potential tag-along actions." (*Id.* at n. 1.) There

are now processes in place for transferring related cases to Judge Fallon's Court quickly and efficiently. Merck's counsel updates the Panel twice a week in writing of newly-filed and related cases as well as developments in cases still under Panel consideration. The MDL Panel has been issuing conditional transfer orders transferring hundreds of additional related cases to Judge Fallon based on the information in these tag-along letters.

Pursuant to the reporting procedures mentioned above, Merck will provide notice of this action to the Panel in its next letter to the MDL Panel. Merck expects a conditional transfer order to be issued by the MDL Panel in this action no later than two weeks from the Panel's receipt of such notice. Assuming Plaintiff does not object within the 15-day period set forth in J.P.M.L. Rule 7.4(c), the transfer order will be filed in Judge Fallon's court upon expiration of Plaintiff's period to object, and the case will be transferred for coordinated pretrial proceedings, in all likelihood within 45 days from today.[1]

### B.    The Instant Action

On or about September 21, 2006, Plaintiffs commenced this action against Merck by filing a Complaint in the Circuit Court of Randolph County bearing Case Number CV-06-145. On October 3, 2006, James Houston, a Merck sales representative and a defendant, was served with a copy of the Complaint. On October 5, 2006, Merck was served with a copy of Plaintiffs' Complaint. On October 30, 2006, Merck removed the action to this Court based on diversity

---

[1].  In the event Plaintiff objects to transfer to the MDL court, there is a separate procedure for filing objections to the transfer with the MDL Panel. The issue whether the case should be transferred would be set for the next available Panel hearing session. Given the overlapping factual issues this case appears to have with those already in the MDL proceedings, any opposition would almost certainly be futile. In fact, on June 20, 2005 the MDL Panel considered a wide range of arguments made by plaintiffs to the transfer of 34 of the 321 cases listed on Conditional Transfer Order No. 1 and No. 2, and rejected them all. (*See* June 20, 2005 Transfer Order (attached hereto as **Exhibit B**). The Panel ordered these cases transferred to Judge Fallon's court because it would best "serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation." (*Id.* at 1.)

3

jurisdiction under 28 U.S.C. § 1332 and filed an Answer and jury demand. There is no dispute that this case involves the same factual inquiries that the Panel notes were present in the Vioxx product liability cases generally, thereby warranting coordinated pre-trial proceedings in the Eastern District of Louisiana. Specifically, it is clear from the face of the Complaint that this case, like the other Vioxx product liability cases, focuses on the alleged increased health risks (including heart attack and stroke) when taking Vioxx, an anti-inflammatory drug, and whether Merck knew of these increased risks and failed to disclose them to the medical community and consumers. For example, Plaintiffs allege that "The Vioxx manufactured and/or supplied by defendants was also defective due to inadequate warning or instruction because the manufacturers and suppliers knew or should have known that the products created an unreasonable risk of harm to consumers and the defendants failed to adequately warn of said risks." (Compl., ¶ 64).

## II. ARGUMENT

Guided by the "policies of justice and efficiency," this Court should exercise its discretion to stay all further proceedings here pending transfer of this case to MDL-1657. *Boudreaux v. Metropolitan Life Ins. Co.,* No. 95-138, 1995 WL 83788, at *1 (E.D. La. Feb. 24, 1995). The power to stay is well established and particularly apt here. It is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.,* 299 U.S 248, 254 (1936). Where, as here, the MDL Panel has already decided that coordination is appropriate, and has designated a venue for the coordinated proceedings, a stay is particularly appropriate pending conditional transfer to those proceedings. *See New Mexico State Inv. Council v. Alexander,* 317 B.R. 440, 446 (D. N.M. 2004); *Mathern v. Wyeth,* No. Civ.A. 04-

2116, 2004 WL 1922028, at *1 (E.D. La. Aug. 25, 2004); *Knearem v. Bayer Corp.*, Civil Action 02-2096-CM, 2002 WL 1173551, at *1 (D. Kan. May 7, 2002); *Jackson ex rel. Jackson v. Johnson & Johnson, Inc.*, No. 01-2113 DA, 2001 WL 34048067, at *6 (W.D. Tenn. Apr. 3, 2001).

When deciding whether to issue a stay pending the MDL Panel's decision on transfer of an individual action, courts look at (1) considerations of judicial economy and (2) avoidance of conflicting rulings. *Mathern*, 2004 WL 1922028, at *1. As described below, consideration of both of these factors favor granting a stay of this action. The overwhelming majority of courts to have considered the issue have agreed: literally hundreds of VIOXX® cases have been stayed by courts around the country pending MDL coordination. These decisions in other VIOXX® cases make clear the necessity of a stay here. For example, in *Denny v. Merck & Co., Inc.*, No. 04-cv-00526, slip op. (S.D. Tex. Dec. 6, 2004), the Southern District of Texas court stayed all proceedings over plaintiffs' objection, holding that "[t]he power to stay all proceedings is well established and particularly apt here." *Id.* at 2. The court observed there that "[i]t would not be efficient for this Court to invest its limited time and resources in this claim, only for it to be transferred to MDL. Moreover, both sides will benefit by having a court familiar with the complex issues that arise in pharmaceutical claims." *Id.*

A.     **Judicial economy mandates a stay**

Because of the overlapping factual issues and similar legal theories that exist in the VIOXX® cases currently pending in federal court, including this civil action, much work would be needlessly duplicated if pretrial proceedings and discovery continues to go forward on a parallel track with MDL-1657. Moreover, if this Court were not to issue a stay, it would be issuing rulings that would likely be reconsidered after this case is transferred to Judge Fallon's

court. As the court in *U.S. Bank, Nat'l Ass'n v. Royal Indem. Co.*, No. Civ. A 3:02-CV-0853-P, 2002 WL 31114069, at * 2 (N.D. Tex. Sept. 23, 2002), noted in granting defendant's motion for a stay, "[i]f the MDL motion is granted, all of the Court's time, energy, and acquired knowledge regarding the action and its pretrial procedures will be wasted." 2002 WL 31114069, at *2. *See also Fontanilles v. Merck & Co., Inc.*, No. 04-22799-CIV-HUCK (S.D. Fla. Dec. 14, 2004), slip op. at 2 ("Judicial consistency, economy and uniformity among similar VIOXX cases would be served by deferring resolution of the remand issue at this time"); *Falick v. Merck & Co., Inc.*, No. 04-3006 (E.D. La. Jan. 3, 2005), slip op. at 2 ("Considering the multitude of cases currently stayed due to the pending MDL coordination, the Court finds that staying the proceedings will serve the interests of judicial economy."). The Court should not expend its limited resources "familiarizing itself with the intricacies of a case that would be heard [for pre-trial purposes] by another judge." *See Rivers v. The Walt Disney Co.*, 980 F. Supp. 1358, 1360 (C.D. Cal. 1997). Indeed, Judge Fallon has already issued orders anticipating the transfer of cases such as this; those orders will immediately apply upon transfer of the case to his court. *See, e.g., In re VIOXX® Products Liab. Litig.*, Pretrial Order No. 1 (Exhibit C at 1-2) ("This order . . . will also apply to any 'tag-along actions' later filed in, removed to, or transferred to, this Court.").

The Court should also refrain from holding additional status conferences or issuing additional discovery orders because "any efforts on behalf of this Court concerning case management will most likely have to be replicated by the judge that is assigned to handle the consolidated litigation." *Rivers*, 980 F. Supp. at 1360-61. Moreover, MDL courts regularly decide *Daubert* and dispositive motions before they return a case to the transferor court. *See, e.g., In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531 (S.D.N.Y. 2004) (excluding plaintiffs' causation and regulatory experts under *Daubert*); *In re Propulsid Prods. Liab. Litig.*, 261 F.

Supp. 2d 603 (E.D. La. 2003) (granting defendant pharmaceutical manufacturer's motion for summary judgment). In fact, it is unlikely that this Court will encounter this case again once it is transferred to an MDL; as a 2004 report from the Administrative Office of the United States Courts revealed, fewer than 10% of the cases that have been resolved through MDL treatment since Congress enacted the MDL statute were ever transferred back to the original transferor district. Accordingly, a stay will conserve judicial resources.

In addition to the waste of judicial resources inherent in proceeding with this action prior to inevitable MDL transfer of this case to MDL-1657, Merck would be substantially prejudiced by duplicative discovery and motion practice if a stay were not put in place. *See American Seafood, Inc. v. Magnolia Processing*, Civ. A. Nos. 92-1030, 92-1086, 1992 WL 102762, at *2 (E.D. Pa. May 7, 1992) ("The duplicative motion practice and discovery proceedings demonstrate that judicial economy and prejudice to the defendants weigh heavily in favor of a stay"). Plaintiffs across the country will surely notice the same set of Merck employees and former employees for deposition. Without a stay, the risk exists that Merck will have to produce these witnesses multiple times in different jurisdictions.

A stay will not, however, unduly prejudice Plaintiffs in this action. First, any delay that Plaintiffs may experience will be minimal, and the prejudice to Merck would far outstrip any harm to Plaintiffs. *See Arthur-Magna v. Del-Val Financial Corp.*, No. CIV.A. No. 90-4378, 1991 WL 13725, at *1 (D. N.J. Feb. 1, 1991) (even if a temporary stay can be characterized as a delay prejudicial to plaintiffs, there are considerations of judicial economy and hardship to defendants that are compelling enough to warrant such a delay). Indeed, all of the parties – including Plaintiffs here – will benefit through increased efficiency and coordinated pretrial case management and, as such, any potential delay is outweighed by the potential efficiencies

available in a coordinated MDL proceeding.    Second, this action is not on the eve of trial. Discovery has not yet begun.  Because Plaintiffs have expended limited resources to date, they will not be prejudiced by a limited delay.  This Court should therefore stay all proceedings in this civil action pending a determination on the transfer of this case to MDL-1657.

**B.**    **Without a stay, there is a risk of conflicting rulings between this court and the MDL court.**

To avoid the risk of inconsistent substantive legal rulings, pretrial proceedings in this civil action and other actions should proceed in an orderly, coordinated fashion, as directed by the single court selected by the MDL Panel to coordinate these cases. *See Mathern*, 2004 WL 1922028, at * 1 ("a stay of this case pending transfer to the MDL will promote judicial efficiency and avoid conflicting rulings"); *Knearem*, 2002 WL 1173551, at * 1 ("Granting a stay of this litigation avoids the possibility of inconsistent pretrial rulings."); *Shannon v. Merck & Co., Inc.*, No. 2:03CV105-D-B, slip op. (N.D. Miss. Nov. 29, 2004) ("the court finds that because the issues involved in this matter are likely to be similar to other potentially transferred VIOXX cases, the policies of efficiency and consistency of pretrial rulings will be furthered by the this Court staying these proceedings.").    Accordingly, the Court should stay these proceedings to ensure the efficient and consistent resolution of pertinent legal issues before the MDL judge.

## CONCLUSION

For the foregoing reasons, Merck respectfully requests that this Court grant its motion to stay all proceedings in this case pending transfer to the MDL proceeding pending in the Eastern District of Louisiana.

/s/ Ben C. Wilson
BEN C. WILSON
Attorney for Defendant

OF COUNSEL:
Robert C. "Mike" Brock
F. Chadwick Morriss
Ben C. Wilson
Richard B. Garrett
RUSHTON, STAKELY, JOHNSTON, & GARRETT, P.A.
Post Office Box 270
Montgomery, Alabama 36101-0270
Telephone: (334) 206-3100
Facsimile: (334) 262-6277

## CERTIFICATE OF SERVICE

I hereby certify that on October 7, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

James S. Hubbard
Thomas J. Knight
HUBBARD & KNIGHT
1125 Noble Street
Anniston, Alabama 36201

*/s/ Ben C. Wilson* _____



ELECTRONICALLY FILED
8/21/2007 5:50 PM
CV-2006-000145.00
CIRCUIT COURT OF
RANDOLPH COUNTY, ALABAMA
CHRIS MAY, CLERK

## IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, et al.        *
                               *
    Plaintiff,              *
                               *
v.                             *        CASE NO. CV-06-145
                               *
MERCK & CO., INC., et al.      *
                               *
    Defendants.             *

## MERCK'S SUBMISSION IN REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR SEVERANCE OF CLAIMS OF THE PLAINTIFFS

    COMES NOW, Defendant Merck & Co, Inc. ("Merck"), and offers the following submission in reply to Plaintiffs' Response and Opposition to its previously-filed Motion to Sever:

    1.    Plaintiffs misapprehend the legal basis of Merck's motion to sever. As is clear from Merck's motion, the joinder of these eight Plaintiffs into a single action violates Rule 20 of the Alabama Rules of Procedure. Therefore, Merck seeks the immediate severance of these claims in light of this misjoinder.

    2.    The principal cases cited by Plaintiffs, Ex parte Monsanto Company, 794 So.2d 350 (Ala. 2001), and Ex parte Flexible Products Company, 915 So.2d 34 (Ala. 2005), in no way support a conclusion that severance is prohibited. Plaintiffs erroneously suggest that Monsanto and Flexible Products authorized similar joinders of plaintiffs in product liability cases and that these cases should therefore serve as a template for this Court. In reality, the issue before the Supreme Court in Monsanto and Flexible Products was whether the respective trial courts had abused their discretion by *consolidating* (under Rule 42) for case management purposes what were originally separate cases involving a total of over 1,000 plaintiffs apiece.

3.      In fact, the analysis of what constitutes a permissible joinder of plaintiffs under Rule 20 is wholly distinct from what circumstances may allow for consolidation under Rule 42. Rule 42 authorizes consolidation of actions that involve "a common question of law or fact." See Ala. R. Civ. P. 42(a). Conversely, in Flexible Products, the court drew a distinction between consolidation and permissive joinder. The court observed that *"[p]ermissive joinder of parties, governed by Rule 20, Ala. R. Civ. P., implicates different requirements than consolidation under Rule 42, most notably that joinder is appropriate only where the plaintiffs present claims "arising out of the same transaction, occurrence, or series of transactions or occurrences. . . ."* See Flexible Products, 916 So.2d at 43 (emphasis added).

4. Merck has established that the claims of the eight Plaintiffs in this case do not arise out of the same transaction, occurrence, or series of transactions or occurrences. Rather, these claims are related only to the extent that they allege injury over the use of a prescription medication manufactured and marketed by Merck. As previously noted, these Plaintiffs were prescribed different dosages of Vioxx for different reasons over different periods of time. Plaintiffs' medical histories vary widely, and none of the Plaintiffs received Vioxx from the same health care provider. Finally, the alleged injuries occurred at different times, and the Plaintiffs were treated by different physicians and medical facilities. See Plaintiff Profile Forms, Exhibits B-H to Motion. Under these circumstances, the law is clear that the joinder of these Plaintiffs violates Rule 20, and Merck is therefore entitled to an order severing these claims.

/s/ Ben C. Wilson
ROBERT C. (MIKE) BROCK
F. CHADWICK MORRISS
BEN C. WILSON
Attorneys for Defendants

OF COUNSEL:
Rushton, Stakely, Johnston, & Garrett, P.A.
184 Commerce Street
Montgomery, Alabama 36104
(334)206-3100 (t)
(334)831-0481 (f)

## CERTIFICATE OF SERVICE

I do hereby certify that I have filed the foregoing motion through the Alafile electronic filing service, which will serve the following counsel of record, on this the 21st day of August 2007:

James S. Hubbard
Thomas J. Knight
HUBBARD & KNIGHT
Post Office Drawer 1850
Anniston, Alabama 36202

/s/ Ben C. Wilson
OF COUNSEL

3

ELECTRONICALLY FILED
8/22/2007 1:37 PM
CV-2006-000145.00
CIRCUIT COURT OF
RANDOLPH COUNTY, ALABAMA
CHRIS MAY, CLERK

## IN THE CIRCUIT COURT OF
## RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET AL.,                )
                                        )
    Plaintiffs,                         )
                                        )
v.                                      )    **CASE NUMBER: CV-2006-145**
                                        )
MERCK & CO., INC., a foreign or         )
Domestic Corporation, ET AL.,           )
                                        )
    Defendants.                         )

### MERCK & CO., INC.'S NOTICE OF CANCELLATION OF
### CROSS-NOTICE DEPOSITION OF DR. ALISE REICIN

PLEASE TAKE NOTICE that the deposition of **Alise Reicin, M.D.,** which was scheduled

for August 29 & 30, 2007, at the offices of Hughes, Hubbard & Reed, LLP, One Battery Park

Plaza, New York, New York, 10004, has been cancelled.   Merck will notify you when this

deposition has been rescheduled.

                             /s/ R. Austin Huffaker, Jr.
                             One of the Attorneys for Defendant,
                             Merck & Co., Inc.

OF COUNSEL:

RUSHTON, STAKELY,
      JOHNSTON, & GARRETT, P.A.
Post Office Box 270
Montgomery, Alabama 36101-0270
Telephone:  (334) 206-3100
Facsimile: (334) 262-6277

**CERTIFICATE OF SERVICE**

     I hereby certify that I have electronically filed and served through CMECF a copy of the foregoing upon:

James S. Hubbard
Thomas J. Knight
HUBBARD & KNIGHT
1125 Noble Street
Anniston, Alabama  36201

on this the 22nd day of August, 2007.

                                 /s/ R. Austin Huffaker, Jr._____
                                 OF COUNSEL



**AlaFile E-Notice**

56-CV-2006-000145.00

To:  ROBERT HUFFAKER
     rah2@rsjg.com

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

The following discovery was FILED on 8/22/2007 1:37:42 PM

Notice Date:      8/22/2007 1:37:42 PM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

To: BARTLETT SCOTT          (PRO SE)
    3255 CO RD 747
    CULLMAN, AL 35058

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

The following discovery was FILED on 8/22/2007 1:37:42 PM

Notice Date:     8/22/2007 1:37:42 PM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

To:  BAUER MELISSA          (PRO SE)

, AL 0

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
**56-CV-2006-000145.00**

The following discovery was FILED on 8/22/2007 1:37:42 PM

Notice Date:      8/22/2007 1:37:42 PM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

To:  HARPER CORAL          (PRO SE)

, AL 0

# NOTICE OF ELECTRONIC FILING

### IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

### CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
### 56-CV-2006-000145.00

The following discovery was FILED on 8/22/2007 1:37:42 PM

Notice Date:     8/22/2007 1:37:42 PM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

To: HENDERSON CHARLES          (PRO SE)

, AL 0

---

# NOTICE OF ELECTRONIC FILING

---

### IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

### CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
### 56-CV-2006-000145.00

The following discovery was FILED on 8/22/2007 1:37:42 PM

Notice Date:        8/22/2007 1:37:42 PM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

To:  HODGES JULIE          (PRO SE)

, AL 0

# NOTICE OF ELECTRONIC FILING

### IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

### CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
### 56-CV-2006-000145.00

The following discovery was FILED on 8/22/2007 1:37:42 PM

Notice Date:      8/22/2007 1:37:42 PM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

To: HOLMES KATHERINE          (PRO SE)

, AL 0

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

The following discovery was FILED on 8/22/2007 1:37:42 PM

Notice Date:       8/22/2007 1:37:42 PM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

To:  HOUSTON JAMES          (PRO SE)

, AL 0

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

The following discovery was FILED on 8/22/2007 1:37:42 PM

Notice Date:        8/22/2007 1:37:42 PM

**CHRIS MAY
CIRCUIT COURT CLERK
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278**

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

To:  LOVETT LORI          (PRO SE)

, AL 3

---

# NOTICE OF ELECTRONIC FILING

---

### IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

### CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
### 56-CV-2006-000145.00

The following discovery was FILED on 8/22/2007 1:37:42 PM

Notice Date:     8/22/2007 1:37:42 PM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

To:  MELTON JULIE           (PRO SE)
5309 AVE S
BIRMINGHAM, AL 35212

---

# NOTICE OF ELECTRONIC FILING

---

### IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

### CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
### 56-CV-2006-000145.00

The following discovery was FILED on 8/22/2007 1:37:42 PM

Notice Date:     8/22/2007 1:37:42 PM

CHRIS MAY
CIRCUIT COURT CLERK
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

To:  MITCHAM HENRY          (PRO SE)
     1919 MCDOWLING DR SE
     HUNTSVILLE, AL 35803

---

# NOTICE OF ELECTRONIC FILING

---

### IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

### CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
### 56-CV-2006-000145.00

The following discovery was FILED on 8/22/2007 1:37:42 PM

Notice Date:     8/22/2007 1:37:42 PM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

To:  PHARR JERRY          (PRO SE)

, AL 0

# NOTICE OF ELECTRONIC FILING

### IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

### CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
### 56-CV-2006-000145.00

The following discovery was FILED on 8/22/2007 1:37:42 PM

Notice Date:     8/22/2007 1:37:42 PM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

To: SANTIAGO MELISSA          (PRO SE)

M, AL 0

---

# NOTICE OF ELECTRONIC FILING

---

### IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

### CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
### 56-CV-2006-000145.00

The following discovery was FILED on 8/22/2007 1:37:42 PM

Notice Date:     8/22/2007 1:37:42 PM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

To:   SPARKMAN DAVID          (PRO SE)
      545 ROCKY FORD ROAD
      HARTSELLE, AL 35640

# NOTICE OF ELECTRONIC FILING

### IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

**CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL**
**56-CV-2006-000145.00**

The following discovery was FILED on 8/22/2007 1:37:42 PM

Notice Date:     8/22/2007 1:37:42 PM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

To:  WALKER-MCGLOTHAN NATASHA    (PRO SE)
3122 HIGHLAND LAKES RD
BIRMINGHAM, AL 35242

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

The following discovery was FILED on 8/22/2007 1:37:42 PM

Notice Date:        8/22/2007 1:37:42 PM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

To: WALLS RANDY          (PRO SE)

, AL 0

---

# NOTICE OF ELECTRONIC FILING

---

### IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

### CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
### 56-CV-2006-000145.00

The following discovery was FILED on 8/22/2007 1:37:42 PM

Notice Date:     8/22/2007 1:37:42 PM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

To:  HUBBARD JAMES S
     1125 NOBLE STREET
     ANNISTON, AL 36201

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

The following discovery was FILED on 8/22/2007 1:37:42 PM

Notice Date:    8/22/2007 1:37:42 PM

CHRIS MAY
CIRCUIT COURT CLERK
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

To: BROCK MIKE
rcb@rsjg.com

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

The following discovery was FILED on 8/22/2007 1:37:42 PM

Notice Date:     8/22/2007 1:37:42 PM

CHRIS MAY
CIRCUIT COURT CLERK
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

To:  GARRETT RICHARD B
    rbg@rsjg.com

# NOTICE OF ELECTRONIC FILING

### IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

### CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
### 56-CV-2006-000145.00

The following discovery was FILED on 8/22/2007 1:37:42 PM

Notice Date:     8/22/2007 1:37:42 PM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

To:  KNIGHT THOMAS J
hubbardknight@msn.com

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

The following discovery was FILED on 8/22/2007 1:37:42 PM

Notice Date:    8/22/2007 1:37:42 PM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

To:  MORRISS F CHADWICK
     fcm@rsjg.com

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

The following discovery was FILED on 8/22/2007 1:37:42 PM

Notice Date:     8/22/2007 1:37:42 PM

CHRIS MAY
CIRCUIT COURT CLERK
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

To:  WILSON BENJAMIN COLLIER
bcw@rsjg.com

# NOTICE OF ELECTRONIC FILING

### IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

### CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
### 56-CV-2006-000145.00

The following discovery was FILED on 8/22/2007 1:37:42 PM

Notice Date:      8/22/2007 1:37:42 PM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

Judge: ASSIGNED JUDGE

To:  BROCK MIKE
     rcb@rsjg.com

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

The following matter was FILED on 8/9/2007 11:46:22 AM

Notice Date:        8/9/2007 11:46:22 AM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

Judge: ASSIGNED JUDGE

To:  GARRETT RICHARD B
     rbg@rsjg.com

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

The following matter was FILED on 8/9/2007 11:46:22 AM

Notice Date:      8/9/2007 11:46:22 AM

CHRIS MAY
CIRCUIT COURT CLERK
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

Judge: ASSIGNED JUDGE

To:  KNIGHT THOMAS J
hubbardknight@msn.com

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

The following matter was FILED on 8/9/2007 11:46:22 AM

Notice Date:     8/9/2007 11:46:22 AM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

Judge: ASSIGNED JUDGE

To:  MORRISS F CHADWICK
fcm@rsjg.com

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

The following matter was FILED on 8/9/2007 11:46:22 AM

Notice Date:      8/9/2007 11:46:22 AM

CHRIS MAY
CIRCUIT COURT CLERK
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

Judge: ASSIGNED JUDGE

To:  WILSON BENJAMIN COLLIER
     bcw@rsjg.com

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

The following matter was FILED on 8/9/2007 11:46:22 AM

Notice Date:     8/9/2007 11:46:22 AM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

Judge: ASSIGNED JUDGE

To:  WALLS RANDY          (PRO SE)

, AL 0

---

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

The following matter was FILED on 8/9/2007 11:46:22 AM

Notice Date:    8/9/2007 11:46:22 AM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov

ELECTRONICALLY FILED
8/9/2007 11:46 AM
CV-2006-000145.00
CIRCUIT COURT OF
RANDOLPH COUNTY, ALABAMA
CHRIS MAY, CLERK

## IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

| | | |
|---|---|---|
| BAILEY CLIFFORD | ) | |
| BLACK CLIFFORD | ) | |
| CALHOUN WESLEY | ) | |
| DEASON CURTIS | ) | |
| ET. AL. | ) | |
|       Plaintiffs | ) | |
| | ) | |
| v. | ) | **Case No.:** CV-2006-000145.00 |
| | ) | |
| MERCK & CO INC | ) | |
| BARTLETT SCOTT | ) | |
| BAUER MELISSA | ) | |
| DELK JASON | ) | |
| ET. AL. | ) | |
|       Defendants | ) | |

## ORDER

All pending motions, including Defendants' Motion to Sever, are hereby re-set for oral argument on **August 23, 2007**, 9:00 a.m. at the Randolph County Courthouse.Any brief in response or opposition to a motion now pending must be filed with the Court and served upon opposing counsel no later than August 16, 2007.A submission in reply, if any, must be filed and served upon opposing counsel no later than August 21, 2007

DONE this 9th day of August, 2007

/s STEVEN R PERRYMAN
_____

CIRCUIT JUDGE



**AlaFile E-Notice**

56-CV-2006-000145.00
Judge: ASSIGNED JUDGE

To:  SANTIAGO MELISSA       (PRO SE)
223 VINEYARD LANE
BIRMINGHAM, AL 35242

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

The following matter was FILED on 8/9/2007 11:46:22 AM

Notice Date:      8/9/2007 11:46:22 AM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov

ELECTRONICALLY FILED
8/9/2007 11:46 AM
CV-2006-000145.00
CIRCUIT COURT OF
RANDOLPH COUNTY, ALABAMA
CHRIS MAY, CLERK

## IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

| | | |
|---|---|---|
| BAILEY CLIFFORD | ) | |
| BLACK CLIFFORD | ) | |
| CALHOUN WESLEY | ) | |
| DEASON CURTIS | ) | |
| ET. AL. | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | Case No.:  CV-2006-000145.00 |
| | ) | |
| MERCK & CO INC | ) | |
| BARTLETT SCOTT | ) | |
| BAUER MELISSA | ) | |
| DELK JASON | ) | |
| ET. AL. | ) | |
| Defendants | ) | |

## ORDER

All pending motions, including Defendants' Motion to Sever, are hereby re-set for oral argument on **August 23, 2007**, 9:00 a.m. at the Randolph County Courthouse.Any brief in response or opposition to a motion now pending must be filed with the Court and served upon opposing counsel no later than August 16, 2007.A submission in reply, if any, must be filed and served upon opposing counsel no later than August 21, 2007
DONE this 9th day of August, 2007

/s STEVEN R PERRYMAN
_____

CIRCUIT JUDGE



**AlaFile E-Notice**

56-CV-2006-000145.00

Judge: ASSIGNED JUDGE

To:  MITCHAM HENRY          (PRO SE)
1919 MCDOWLING DR SE
HUNTSVILLE, AL 35803

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

The following matter was FILED on 8/9/2007 11:46:22 AM

Notice Date:      8/9/2007 11:46:22 AM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

BAILEY CLIFFORD )
BLACK CLIFFORD )
CALHOUN WESLEY )
DEASON CURTIS )
ET. AL. )
             Plaintiffs )
)
        v. ) Case No.:  CV-2006-000145.00
)
MERCK & CO INC )
BARTLETT SCOTT )
BAUER MELISSA )
DELK JASON )
ET. AL. )
         Defendants )

## ORDER

All pending motions, including Defendants' Motion to Sever, are hereby re-set for oral argument on **August 23, 2007**, 9:00 a.m. at the Randolph County Courthouse.Any brief in response or opposition to a motion now pending must be filed with the Court and served upon opposing counsel no later than August 16, 2007.A submission in reply, if any, must be filed and served upon opposing counsel no later than August 21, 2007
DONE this 9th day of August, 2007

                     /s STEVEN R PERRYMAN

                     CIRCUIT JUDGE



**AlaFile E-Notice**

56-CV-2006-000145.00

Judge: ASSIGNED JUDGE

To:  MELTON JULIE          (PRO SE)
5309 AVE S
BIRMINGHAM, AL 35212

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

The following matter was FILED on 8/9/2007 11:46:22 AM

Notice Date:     8/9/2007 11:46:22 AM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov

ELECTRONICALLY FILED
8/9/2007 11:46 AM
CV-2006-000145.00
CIRCUIT COURT OF
RANDOLPH COUNTY, ALABAMA
CHRIS MAY, CLERK

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

BAILEY CLIFFORD          )
BLACK CLIFFORD           )
CALHOUN WESLEY           )
DEASON CURTIS            )
ET. AL.                  )
                         )
         Plaintiffs      )
                         )
    v.                   )       Case No.:  CV-2006-000145.00
                         )
MERCK & CO INC           )
BARTLETT SCOTT           )
BAUER MELISSA            )
DELK JASON               )
ET. AL.                  )
                         )
         Defendants      )

## ORDER

All pending motions, including Defendants' Motion to Sever, are hereby re-set for oral argument on **August 23, 2007,** 9:00 a.m. at the Randolph County Courthouse. Any brief in response or opposition to a motion now pending must be filed with the Court and served upon opposing counsel no later than August 16, 2007. A submission in reply, if any, must be filed and served upon opposing counsel no later than August 21, 2007

DONE this 9th day of August, 2007

                                        /s STEVEN R PERRYMAN
                                        _____
                                        CIRCUIT JUDGE



**AlaFile E-Notice**

56-CV-2006-000145.00

Judge: ASSIGNED JUDGE

To: HOUSTON JAMES          (PRO SE)

, AL 0

---

# NOTICE OF ELECTRONIC FILING

---

### IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

### CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
### 56-CV-2006-000145.00

The following matter was FILED on 8/9/2007 11:46:22 AM

Notice Date:      8/9/2007 11:46:22 AM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



ELECTRONICALLY FILED
8/9/2007 11:46 AM
CV-2006-000145.00
CIRCUIT COURT OF
RANDOLPH COUNTY, ALABAMA
CHRIS MAY, CLERK

## IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

| | | |
|---|---|---|
| BAILEY CLIFFORD | ) | |
| BLACK CLIFFORD | ) | |
| CALHOUN WESLEY | ) | |
| DEASON CURTIS | ) | |
| ET. AL. | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | Case No.: CV-2006-000145.00 |
| | ) | |
| MERCK & CO INC | ) | |
| BARTLETT SCOTT | ) | |
| BAUER MELISSA | ) | |
| DELK JASON | ) | |
| ET. AL. | ) | |
| Defendants | ) | |

## ORDER

All pending motions, including Defendants' Motion to Sever, are hereby re-set for oral argument on **August 23, 2007**, 9:00 a.m. at the Randolph County Courthouse. Any brief in response or opposition to a motion now pending must be filed with the Court and served upon opposing counsel no later than August 16, 2007. A submission in reply, if any, must be filed and served upon opposing counsel no later than August 21, 2007
DONE this 9th day of August, 2007

/s STEVEN R PERRYMAN
_____

CIRCUIT JUDGE



**AlaFile E-Notice**

56-CV-2006-000145.00
Judge: ASSIGNED JUDGE

To:  HODGES JULIE          (PRO SE)

, AL 0

---

# NOTICE OF ELECTRONIC FILING

---

### IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

### CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
### 56-CV-2006-000145.00

The following matter was FILED on 8/9/2007 11:46:22 AM

Notice Date:     8/9/2007 11:46:22 AM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov

ELECTRONICALLY FILED
8/9/2007 11:46 AM
CV-2006-000145.00
CIRCUIT COURT OF
RANDOLPH COUNTY, ALABAMA
CHRIS MAY, CLERK

## IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

| | | |
|---|---|---|
| BAILEY CLIFFORD | ) | |
| BLACK CLIFFORD | ) | |
| CALHOUN WESLEY | ) | |
| DEASON CURTIS | ) | |
| ET. AL. | ) | |
|     Plaintiffs | ) | |
| | ) | |
| v. | ) | **Case No.:** CV-2006-000145.00 |
| | ) | |
| MERCK & CO INC | ) | |
| BARTLETT SCOTT | ) | |
| BAUER MELISSA | ) | |
| DELK JASON | ) | |
| ET. AL. | ) | |
|     Defendants | ) | |

## <u>ORDER</u>

All pending motions, including Defendants' Motion to Sever, are hereby re-set for oral argument on **August 23, 2007**, 9:00 a.m. at the Randolph County Courthouse. Any brief in response or opposition to a motion now pending must be filed with the Court and served upon opposing counsel no later than August 16, 2007. A submission in reply, if any, must be filed and served upon opposing counsel no later than August 21, 2007
DONE this 9th day of August, 2007

/s STEVEN R PERRYMAN

CIRCUIT JUDGE



**AlaFile E-Notice**

56-CV-2006-000145.00

Judge: ASSIGNED JUDGE

To: HENDERSON CHARLES          (PRO SE)
2101 31 AVE N
BIRMINGHAM, AL 35207

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

The following matter was FILED on 8/9/2007 11:46:22 AM

Notice Date:       8/9/2007 11:46:22 AM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



ELECTRONICALLY FILED
8/9/2007 11:46 AM
CV-2006-000145.00
CIRCUIT COURT OF
RANDOLPH COUNTY, ALABAMA
CHRIS MAY, CLERK

### IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

| | | |
|---|---|---|
| BAILEY CLIFFORD | ) | |
| BLACK CLIFFORD | ) | |
| CALHOUN WESLEY | ) | |
| DEASON CURTIS | ) | |
| ET. AL. | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | **Case No.:** CV-2006-000145.00 |
| | ) | |
| MERCK & CO INC | ) | |
| BARTLETT SCOTT | ) | |
| BAUER MELISSA | ) | |
| DELK JASON | ) | |
| ET. AL. | ) | |
| Defendants | ) | |

### ORDER

All pending motions, including Defendants' Motion to Sever, are hereby re-set for oral argument on **August 23, 2007**, 9:00 a.m. at the Randolph County Courthouse. Any brief in response or opposition to a motion now pending must be filed with the Court and served upon opposing counsel no later than August 16, 2007. A submission in reply, if any, must be filed and served upon opposing counsel no later than August 21, 2007
DONE this 9th day of August, 2007

/s STEVEN R PERRYMAN
_____

CIRCUIT JUDGE



**AlaFile E-Notice**

56-CV-2006-000145.00

Judge: ASSIGNED JUDGE

To:  HARPER CORAL          (PRO SE)
220 63 ST S
BIRMINGHAM, AL 35212

---

# NOTICE OF ELECTRONIC FILING

---

### IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

**CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL**
**56-CV-2006-000145.00**

The following matter was FILED on 8/9/2007 11:46:22 AM

Notice Date:     8/9/2007 11:46:22 AM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov

ELECTRONICALLY FILED
8/9/2007 11:46 AM
CV-2006-000145.00
CIRCUIT COURT OF
RANDOLPH COUNTY, ALABAMA
CHRIS MAY, CLERK

## IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

| | | |
|---|---|---|
| BAILEY CLIFFORD | ) | |
| BLACK CLIFFORD | ) | |
| CALHOUN WESLEY | ) | |
| DEASON CURTIS | ) | |
| ET. AL. | ) | |
|             Plaintiffs | ) | |
| | ) | |
| v. | ) | **Case No.:** CV-2006-000145.00 |
| | ) | |
| MERCK & CO INC | ) | |
| BARTLETT SCOTT | ) | |
| BAUER MELISSA | ) | |
| DELK JASON | ) | |
| ET. AL. | ) | |
|             Defendants | ) | |

## ORDER

All pending motions, including Defendants' Motion to Sever, are hereby re-set for oral argument on **August 23, 2007**, 9:00 a.m. at the Randolph County Courthouse. Any brief in response or opposition to a motion now pending must be filed with the Court and served upon opposing counsel no later than August 16, 2007. A submission in reply, if any, must be filed and served upon opposing counsel no later than August 21, 2007

DONE this 9th day of August, 2007

/s STEVEN R PERRYMAN
_____

CIRCUIT JUDGE



**AlaFile E-Notice**

56-CV-2006-000145.00

Judge: ASSIGNED JUDGE

To: BAUER MELISSA          (PRO SE)
512 CLAY STREET
ALBERTVILLE, AL 35950

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

The following matter was FILED on 8/9/2007 11:46:22 AM

Notice Date:     8/9/2007 11:46:22 AM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov

ELECTRONICALLY FILED
8/9/2007 11:46 AM
CV-2006-000145.00
CIRCUIT COURT OF
RANDOLPH COUNTY, ALABAMA
CHRIS MAY, CLERK

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

| | | |
|---|---|---|
| BAILEY CLIFFORD | ) | |
| BLACK CLIFFORD | ) | |
| CALHOUN WESLEY | ) | |
| DEASON CURTIS | ) | |
| ET. AL. | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | Case No.: CV-2006-000145.00 |
| | ) | |
| MERCK & CO INC | ) | |
| BARTLETT SCOTT | ) | |
| BAUER MELISSA | ) | |
| DELK JASON | ) | |
| ET. AL. | ) | |
| Defendants | ) | |

## ORDER

All pending motions, including Defendants' Motion to Sever, are hereby re-set for oral argument on **August 23, 2007**, 9:00 a.m. at the Randolph County Courthouse. Any brief in response or opposition to a motion now pending must be filed with the Court and served upon opposing counsel no later than August 16, 2007. A submission in reply, if any, must be filed and served upon opposing counsel no later than August 21, 2007
DONE this 9th day of August, 2007

/s STEVEN R PERRYMAN
_____

CIRCUIT JUDGE

## Cindy Whaley

**From:** Chris May
**Sent:** Monday, July 23, 2007 9:28 AM
**To:** Cindy Whaley
**Subject:** FW: Incorrect Randy Walls

D017

**From:** Randy Walls [mailto:rtcr9221@bellsouth.net]
**Sent:** Tuesday, July 17, 2007 10:46 PM
**To:** Chris May
**Subject:** Incorrect Randy Walls

Dear Chris,

Concerning the CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL. This is the second time I have received Electronic Filing notices in the mail from you. My wife called back in March of 2007 and thought we had this cleared up. I am Randall Clay Walls. (D.O.B. - 12/13/1962). I have received another Randy Walls' mail before, but not court papers. Someone needs to check into the Randy Walls that you are looking for because, apparently, he is not receiving his notices. I have heard he lives in the Argo, Springville, Odenville area. He is some type of cabinet installer. Please take care of this matter as soon as possible. Thanks! Randall Clay Walls

# ROBERT H. BROGDEN
### ATTORNEY AT LAW
164 EAST COLLEGE STREET
OZARK, ALABAMA
36360-1969

ALSO LICENSED IN FLORIDA

MAILING ADDRESS:
P. O. DRAWER 1007
ZIP 36361-1007

-------

TELEPHONE (334) 774-5171
FAX         (334) 774-7318

July 30, 2007

Mr. Thomas J. Knight
Attorney at Law
Post Office Drawer 36202
Anniston, Alabama 36202

COPY

**RE:** *Bailey, Black, Calhoun, Deason, Graves, Grizzard, Perry, Sikes & Thompson vs. Merck & Co., Inc., and James Houston, et als. Circuit Court of Randolph County, Alabama Case No. CV-2006-145*



Dear Mr. Knight:

I had previously discussed with your office that the James Houston who you have served in Dale County, Alabama, has never worked for Merck & Company, nor had anything to do with Merck & Company or your lawsuit. I don't remember who I discussed this with but they told me that they would take care of this and yet James Houston continues to receive notice of proceedings in this matter.

Please take care of this and, if you need further information, we will be glad to provide the same. Thank you.

Sincerely yours,

Robert H. Brogden

**Filed in Office**

RHB/dl

xc:   Mr. Chris May
      Randolph County Clerk
      Courthouse Square
      Wedowee, AL 36278

JUL 31 2007

CHRIS MAY
Clerk of Circuit Court

July 23, 2007


Cindy,

I spoke to you on the phone, Monday, July 23, 2007, at 9:50 ET, about receiving a Notice of Electronic Filing for the case of Clifford Bailey, ET. AL. VS Merch & Co., INC ET. AL (56-CV-2006-000145.00). I explained I'm not the Melissa Santiago listed in the suit. I have enclosed the letter we spoke about for you to put in the file I received from Hubbard & Knight, April 4, 2007, stating I'm not the person they sued. My old address the letters are being sent to is 223 Vineyard Ln., Birmingham, AL 35242. My current address, where the letters are being forwarded too, is 3840 Estates Path, Cumming, GA 30040. If you have any further questions, please contact me at 678-513-9325.

Thank you for your help in this matter,

*Melissa B Santiago*

Melissa Santiago

**Filed in Office**

JUL 2 7 2007

CHRIS MAY
Clerk of Circuit Court

LAW OFFICES
**HUBBARD & KNIGHT**
POST OFFICE DRAWER 1850
1125 NOBLE STREET
ANNISTON, ALABAMA

THOMAS J. KNIGHT

TELEPHONE (256) 237-9586
FACSIMILE  (256) 237-9594

April 4, 2007

Ms. Melissa Santiago
3840 Estates Path
Cumming, GA 30040

Dear Ms. Santiago:

    We have been pursuing a defendant named Melissa Santiago who was a sales representative for Merck & Co., a multinational pharmaceutical company.  I understand from our telephone conversation that you never worked for Merck & Co., and that you are not the person we sued.  The correct Melissa Santiago has a lawyer who has filed a response for her in this litigation, and the case is proceeding with her as a party.

    Since you are not the same person, then you may disregard the summons and complaint that was served on you.

Very truly yours,

Thomas J.  Knight

TJK/ktm

**Filed in Office**

JUL 2 7 2007

CHRIS MAY
Clerk of Circuit Court

## IN THE CIRCUIT COURT OF
## RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, CLIFFORD BLACK,   )
WESLEY CALHOUN, CURTIS DEASON,     )
RUTH GRAVES, MICKEY GRIZZARD,      )
JIMMY PERRY, HERBERT STANLEY       )
SIKES, and PHILLIP THOMPSON,       )
                                   )
    Plaintiffs,             )
                                   )
v.                                 )     CASE NUMBER: CV-2006-145
                                   )
MERCK & CO., INC., a foreign or    )
Domestic Corporation, DAVID SPARKMAN, )
KATHERINE HOLMES, LORI LOVETT,     )
SCOTT BARTLETT, CORAL HARPER,      )
MELISSA SANTIAGO, HENRY MITCHAM,   )
JERRY PHARR, JASON DELK, CHARLES   )
HENDERSON, JAMES HOUSTON, JULIE    )
MELTON, JULIE HODGES, MELISSA      )
BAUER, NATASHA WALKER-             )
MCGLOTHAM, RANDY WELLS, and        )
the Defendants A, B, C, D, E, X & Z )
whether singular or plural, being those )
persons, firms or entities who or which )
proximately caused or contributed to the )
Plaintiff's and Plaintiff's decedent's )
other harm and the other damages as )
complained of herein whose true names are )
unknown to the Plaintiff but will be )
added by amendment when correctly )
ascertained,                       )
                                   )
    Defendants.             )

**Filed in Office**

JUL 26 2007

CHRIS MAY
Clerk of Circuit Court

## MERCK & CO., INC.'S CROSS-NOTICE OF *DE BENE ESSE* TRIAL PRESERVATION DEPOSITION OF DR. ELIAV BARR

    PLEASE TAKE NOTICE that the deposition *de bene esse* of **Eliav Barr, M.D.** will be

held on **September 24 & 25, 2007**, beginning at **9:30 a.m. Eastern Time**, at the offices of

**Dechert LLP, Cira Center, 2929 Arch Street, Philadelphia, PA 19104**. The deposition will

be taken before a notary public, certified court reporter, or other officer authorized by law to

administer oaths for the purpose of discovery or for use as evidence, or for both purposes in connection with this action, and may be used at trial. You are invited to attend and participate.

This cross-notice is issued pursuant to Pretrial Order No. 9 in *In re VIOXX Products Liability Litigation*, MDL Docket No. 1657 (United States District Court for the Eastern District of Louisiana). Pursuant to Pretrial Order No. 9, Defendant requests that Plaintiff identify three (3) days before the deposition, the attorney(s) who may examine the deponent. The call-in number is 719-955-2414, and the participant passcode is 202-434-5400.

Dated: July 24, 2007.

_____
One of the Attorneys for Defendant,
Merck & Co., Inc.

OF COUNSEL:

RUSHTON, STAKELY,
    JOHNSTON, & GARRETT, P.A.
Post Office Box 270
Montgomery, Alabama 36101-0270
Telephone: (334) 206-3100
Facsimile: (334) 262-6277

## CERTIFICATE OF SERVICE

I hereby certify that I have served the above and foregoing document upon all interested parties by placing a copy of same in the United States Mail, postage prepaid and properly addressed on this the 24th day of July, 2007, as follows:

James S. Hubbard
Thomas J. Knight
HUBBARD & KNIGHT
1125 Noble Street
Anniston, Alabama 36201

_____
OF COUNSEL

## IN THE CIRCUIT COURT OF
## RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, CLIFFORD BLACK, )
WESLEY CALHOUN, CURTIS DEASON, )
RUTH GRAVES, MICKEY GRIZZARD, )
JIMMY PERRY, HERBERT STANLEY )
SIKES, and PHILLIP THOMPSON, )
                                  )
     **Plaintiffs,** )
                                    )
**v.** )   **CASE NUMBER: CV-2006-145**
                                    )
MERCK & CO., INC., a foreign or )
Domestic Corporation, DAVID SPARKMAN, )
KATHERINE HOLMES, LORI LOVETT, )
SCOTT BARTLETT, CORAL HARPER, )
MELISSA SANTIAGO, HENRY MITCHAM, )
JERRY PHARR, JASON DELK, CHARLES )
HENDERSON, JAMES HOUSTON, JULIE )
MELTON, JULIE HODGES, MELISSA )
BAUER, NATASHA WALKER- )
MCGLOTHAM, RANDY WELLS, and )
the Defendants A; B, C, D, E, X & Z )
whether singular or plural, being those )
persons, firms or entities who or which )
proximately caused or contributed to the )
Plaintiff's and Plaintiff's decedent's )
other harm and the other damages as )
complained of herein whose true names are )
unknown to the Plaintiff but will be )
added by amendment when correctly )
ascertained, )
                                    )
     **Defendants.** )

**Filed In Office**

JUL 2 6 2007

CHRIS MAY
Clerk of Circuit Court

## MERCK & CO., INC.'S CROSS-NOTICE OF *DE BENE ESSE* TRIAL PRESERVATION DEPOSITION OF DR. BRIGGS MORRISON

PLEASE TAKE NOTICE that the deposition *de bene esse* of **Briggs Morrison, M.D.**

will be held on **September 5 & 6, 2007**, beginning at **9:30 a.m. Eastern Time**, at the offices of

**Hughes, Hubbard & Reed, LLP, One Battery Park Plaza, New York, New York, 10004.**

The deposition will be taken before a notary public, certified court reporter, or other officer

authorized by law to administer oaths for the purpose of discovery or for use as evidence, or for both purposes in connection with this action, and may be used at trial. You are invited to attend and participate.

This cross-notice is issued pursuant to Pretrial Order No. 9 in *In re VIOXX Products Liability Litigation,* MDL Docket No. 1657 (United States District Court for the Eastern District of Louisiana). Pursuant to Pretrial Order No. 9, Defendant requests that Plaintiff identify three (3) days before the deposition, the attorney(s) who may examine the deponent. The call-in number is 719-955-2414, and the participant passcode is 202-434-5400.

Dated: July 24, 2007.

_____
One of the Attorneys for Defendant,
Merck & Co., Inc.

OF COUNSEL:

RUSHTON, STAKELY,
    JOHNSTON, & GARRETT, P.A.
Post Office Box 270
Montgomery, Alabama 36101-0270
Telephone: (334) 206-3100
Facsimile: (334) 262-6277

## CERTIFICATE OF SERVICE

I hereby certify that I have served the above and foregoing document upon all interested parties by placing a copy of same in the United States Mail, postage prepaid and properly addressed on this the 24th day of July, 2007, as follows:

James S. Hubbard
Thomas J. Knight
HUBBARD & KNIGHT
1125 Noble Street
Anniston, Alabama 36201

_____
OF COUNSEL

IN THE CIRCUIT COURT OF
RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, CLIFFORD BLACK,       )
WESLEY CALHOUN, CURTIS DEASON,         )
RUTH GRAVES, MICKEY GRIZZARD,          )
JIMMY PERRY, HERBERT STANLEY           )
SIKES, and PHILLIP THOMPSON,           )
                                        )
       Plaintiffs,                      )
                                        )
v.                                      )    CASE NUMBER: CV-2006-145
                                        )
MERCK & CO., INC., a foreign or         )
Domestic Corporation, DAVID SPARKMAN,   )
KATHERINE HOLMES, LORI LOVETT,          )
SCOTT BARTLETT, CORAL HARPER,           )
MELISSA SANTIAGO, HENRY MITCHAM,        )
JERRY PHARR, JASON DELK, CHARLES        )
HENDERSON, JAMES HOUSTON, JULIE         )
MELTON, JULIE HODGES, MELISSA           )
BAUER, NATASHA WALKER-                  )
MCGLOTHAM, RANDY WELLS, and             )
the Defendants A, B, C, D, E, X & Z     )
whether singular or plural, being those )
persons, firms or entities who or which )
proximately caused or contributed to the )
Plaintiff's and Plaintiff's decedent's  )
other harm and the other damages as     )
complained of herein whose true names are )
unknown to the Plaintiff but will be    )
added by amendment when correctly       )
ascertained,                            )
                                        )
       Defendants.                      )

Filed in Office

JUL 26 2007

CHRIS MAY
Clerk of Circuit Court

## MERCK & CO., INC.,'S CROSS-NOTICE OF *DE BENE ESSE* TRIAL PRESERVATION DEPOSITION OF DR. ALISE REICINE

PLEASE TAKE NOTICE that the deposition *de bene esse* of **Alise Reicine, M.D.** will be

held on **August 29 & 30, 2007**, beginning **at 9:30 a.m. Eastern Time**, at the offices of **Hughes,**

**Hubbard & Reed, LLP,** One Battery Park Plaza, New York, New York, 10004.    The

deposition will be taken before a notary public, certified court reporter, or other officer authorized by law to administer oaths for the purpose of discovery or for use as evidence, or for both purposes in connection with this action, and may be used at trial. You are invited to attend and participate.

This cross-notice is issued pursuant to Pretrial Order No. 9 in *In re VIOXX Products Liability Litigation,* MDL Docket No. 1657 (United States District Court for the Eastern District of Louisiana). Pursuant to Pretrial Order No. 9, Defendant requests that Plaintiff identify three (3) days before the deposition, the attorney(s) who may examine the deponent. The call-in number is 719-955-2414, and the participant passcode is 202-434-5400.

Dated: July 24, 2007.

_____
One of the Attorneys for Defendant,
Merck & Co., Inc.

OF COUNSEL:

RUSHTON, STAKELY,
    JOHNSTON, & GARRETT, P.A.
Post Office Box 270
Montgomery, Alabama 36101-0270
Telephone: (334) 206-3100
Facsimile: (334) 262-6277

## CERTIFICATE OF SERVICE

I hereby certify that I have served the above and foregoing document upon all interested parties by placing a copy of same in the United States Mail, postage prepaid and properly addressed on this the 24th day of July, 2007, as follows:

James S. Hubbard
Thomas J. Knight
HUBBARD & KNIGHT
1125 Noble Street
Anniston, Alabama 36201

_____
OF COUNSEL

IN THE CIRCUIT COURT OF
RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, CLIFFORD BLACK, )
WESLEY CALHOUN, CURTIS DEASON, )
RUTH GRAVES, MICKEY GRIZZARD, )
JIMMY PERRY, HERBERT STANLEY )
SIKES, and PHILLIP THOMPSON, )
 )
  Plaintiffs, )
 )
v. )  **CASE NUMBER: CV-2006-145**
 )
MERCK & CO., INC., a foreign or )
Domestic Corporation, DAVID SPARKMAN, )
KATHERINE HOLMES, LORI LOVETT, )
SCOTT BARTLETT, CORAL HARPER, )
MELISSA SANTIAGO, HENRY MITCHAM, )
JERRY PHARR, JASON DELK, CHARLES )
HENDERSON, JAMES HOUSTON, JULIE )
MELTON, JULIE HODGES, MELISSA )
BAUER, NATASHA WALKER- )
MCGLOTHAM, RANDY WELLS, and )
the Defendants A, B, C, D, E, X & Z )
whether singular or plural, being those )
persons, firms or entities who or which )
proximately caused or contributed to the )
Plaintiff's and Plaintiff's decedent's )
other harm and the other damages as )
complained of herein whose true names are )
unknown to the Plaintiff but will be )
added by amendment when correctly )
ascertained, )
 )
  Defendants. )

Filed in Office

JUL 26 2007

CHRIS MAY
Clerk of Circuit Court

## MERCK & CO., INC.'S CROSS-NOTICE
## DEPOSITION OF GILBERT BLOCK, M.D.

PLEASE TAKE NOTICE that the deposition of Gilbert Block, M.D. will be held on

**August 7, 2007**, beginning at **9:00 a.m. Eastern Time**, at the offices of **Dechert LLP, Cira**

**Center, 2929 Arch Street, Philadelphia, PA 19104** (in the New Jersey coordinated

proceedings).  The deposition will be by a certified court reporter and may be used at trial. The

call-in number for participation by telephone is 1-719-955-2414, and the participant pass code is

202 434 5400.  You are invited to attend and participate.

Dated:  July 24, 2007.

One of the Attorneys for Defendant,
Merck & Co., Inc.

OF COUNSEL:

RUSHTON, STAKELY,
    JOHNSTON, & GARRETT, P.A.
Post Office Box 270
Montgomery, Alabama 36101-0270
Telephone:  (334) 206-3100
Facsimile: (334) 262-6277

## CERTIFICATE OF SERVICE

I hereby certify that I have served the above and foregoing document upon all interested
parties by placing a copy of same in the United States Mail, postage prepaid and properly
addressed on this the 24th day of July, 2007, as follows:

James S. Hubbard
Thomas J. Knight
HUBBARD & KNIGHT
1125 Noble Street
Anniston, Alabama  36201

OF COUNSEL



ELECTRONICALLY FILED
7/17/2007 4:57 PM
CV-2006-000145.00
CIRCUIT COURT OF
RANDOLPH COUNTY, ALABAMA
CHRIS MAY, CLERK

## IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

| | | |
|---|---|---|
| **CLIFFORD BAILEY, et al.** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Cause No.: CV-06-145** |
| | ) | |
| | ) | |
| **MERCK & COMPANY, INC., *et al.*** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

### RESPONSES AND OBJECTIONS OF DEFENDANT JASON DELK TO PLAINTIFFS' REQUEST FOR PRODUCTION

Defendant Jason Delk, by and through his attorneys, responds and objects to Plaintiffs' Request for Production (the "Requests") as follows:

### GENERAL OBJECTIONS

1.     Mr. Delk objects to these Requests to the extent they are vague, ambiguous, argumentative, unreasonably cumulative or duplicative, overly broad, unduly burdensome or oppressive, or seek information or documents that are not relevant to the claims or defenses of any party or to the subject matter involved in this action, nor reasonably calculated to lead to the discovery of admissible evidence.

2.     Mr. Delk objects to these Requests to the extent they seek information or documents that are protected from discovery by the attorney-client privilege, the work product doctrine, or that are otherwise immune or protected from disclosure. Mr. Delk does not intend to waive any applicable protections or privileges through the supplying of information or production of documents in response to these Requests; on the contrary, Mr. Delk specifically intends to preserve any and all applicable protections or privileges.

3.     Mr. Delk objects to these Requests to the extent they seek personnel files, self-evaluations, evaluations by others, documents regarding promotions, financial disclosures or other information such as his social security number, computer passwords, home telephone numbers and other private information, on the grounds that disclosure would invade the privacy rights of the affected individuals, including Mr. Delk, and are not relevant to the claims or defenses of any party or to the subject matter involved in this action.

4.     Mr. Delk objects to these Requests to the extent they seek documents relating to a drug other than Vioxx.

5    Mr. Delk objects to these Requests to the extent they purport to impose obligations upon him beyond those imposed by the Alabama Rules of Civil Procedure and/or court orders entered in this case

6.    Mr. Delk objects to these Requests to the extent they seek information or documents outside of his possession, custody or control.

## RESPONSE TO INDIVIDUAL REQUEST FOR PRODUCTION

Mr. Delk incorporates his General Objections into the responses that follow.  Any specific objections set forth in the responses are in addition to those objections and, unless otherwise specified, Mr. Delk's responses are limited in accordance with each of his objections.

## REQUEST FOR PRODUCTION NO. 1:

All records of Alabama Vioxx sales representatives which records are available to the said witness and/or to the Defendants, which would show:

a.    attendance by sales representative[*sic*] at any Vioxx related meeting, function, or event,

b.    expense accounts, travel records, and similar records for such sales representative during the times when the sales representatives were detailing Vioxx,

c.    records concerning program materials or other such items utilized at any time in connection with Vioxx promotion, detaining[*sic*], or information providing,

d.    call notes,

e.    other records including handwritten notes, memos, email, faxes, or other preserved matter of any kind or description which in anyway shows, reveals, discloses, relates to communications to and in connection with Alabama Vioxx detailmen or sales representative, or between them and any physician or physicians group or representatives doing business in Alabama.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 1:

Mr. Delk objects to this Request on the grounds that it seeks information or documents outside of his possession, custody or control; on the grounds that it is overly broad, vague and ambiguous; on the grounds that it seeks documents or information that are neither relevant to the claims or defenses of any party or to the subject matter involved in this action nor reasonably calculated to lead to the discovery of admissible evidence; and on the ground that it fails to

- 2 -

identify with reasonable particularity the documents sought to be produced (particularly with respect to the phrases "[a]ll records of Alabama Vioxx sales representatives," "available to the said witness and/or to the Defendants," "attendance by sales representative[*sic*]," "the times when the sales representatives were detailing Vioxx," "program materials or other such items utilized at any time in connection with Vioxx promotion, detaining[*sic*], or information providing," and "other records including handwritten notes, memos, email, faxes, or other preserved matter of any kind or description which in anyway shows, reveals, discloses, relates to communications to and in connection with Alabama Vioxx detailmen or sales representative, or between them and any physician or physicians group or representatives doing business in Alabama"). Mr. Delk objects further to this Request on the grounds that it is argumentative, particularly with respect to the terms "sales representatives," "detailing," and "detailmen."

Subject to and without waiving his objections, Mr. Delk states, in response to subparts (c) and (d) of this Request, that he is informed and believes that Merck & Co., Inc. has produced or will produce responsive documents, and respectfully refers Plaintiffs to those documents.

## REQUEST FOR PRODUCTION NO. 2:

**All records of persons who would have any of the above records if the Defendants do not produce the same and all records showing the custodian of the above described records.**

## RESPONSE TO REQUEST FOR PRODUCTION NO. 2:

Mr. Delk objects to the Request on the ground that it is not comprehensible as written. Mr. Delk objects further to this Request on the grounds that it seeks information or documents outside of his possession, custody or control; on the grounds that it is overly broad and unduly burdensome; and on the grounds that it seeks documents or information that are neither relevant

- 3 -

to the claims or defenses of any party or to the subject matter involved in this action nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving his objections, and to the extent he is able to understand this Request, Mr. Delk refers Plaintiffs to his response to Request for Production No. 1, *supra*, and to the documents referred to therein.

**REQUEST FOR PRODUCTION NO. 3:**

**The location, address and service information as to each of the sales representative Defendants named in this civil action.**

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

Mr. Delk objects to the Request on the ground that it improperly calls for a legal conclusion, particularly with respect to the phrase "service information," and on the grounds that it is vague and ambiguous, particularly with respect to the term "location." Mr. Delk objects further to this Request on the grounds that it seeks information or documents outside of his possession, custody or control; on the grounds that it is overly broad and unduly burdensome; and on the grounds that it seeks documents or information that are neither relevant to the claims or defenses of any party or to the subject matter involved in this action nor reasonably calculated to lead to the discovery of admissible evidence. Mr. Delk objects further to this Request on the grounds that it is argumentative, particularly with respect to the term "sales representative."

**REQUEST FOR PRODUCTION NO. 4:**

**All records pertaining to such sales representative Defendants including all W2, W1099, and other tax-related records which may or might show any address or location for said parties, all employee records of or pertaining to said employees, former employees or sales representative, especially those showing any contact information, relatives' names, addresses, telephone numbers, or other contact information, last know[sic] addresses of all sales representative Defendants, meeting lists, sites, locations, whereat any such sales representative Defendants have or are in the future to attend any meetings, events, locations, sales calls, or other similar matters which show where said sales representatives**

have been at work, or will be in the future, and any other records, document, or other item containing information concerning the whereabouts, at anytime, or any said sales representative Defendants.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 4:

Mr. Delk objects to the Request on the ground that it is not comprehensible as written. Mr. Delk objects further to this Request on the grounds that it seeks information or documents outside of his possession, custody or control; on the grounds that it is vague, ambiguous, and calls for speculation (particularly with respect to the phrases "records which may or might show," "have or are in the future to attend," and "have been at work, or will be in the future"); and on the grounds that it is argumentative, particularly with respect to the term "sales representative." Mr. Delk objects further to this Request on the grounds that it is compound, overly broad, unduly burdensome, and seeks documents or information that are neither relevant to the claims or defenses of any party or to the subject matter involved in this action nor reasonably calculated to lead to the discovery of admissible evidence. Mr. Delk objects further to this Request to the extent it seeks confidential data, on the grounds that the discovery sought would violate the privacy interests of the affected individuals.

## REQUEST FOR PRODUCTION NO. 5:

Any other matter pertaining to such sales representative Defendants, mentioning or naming them, or showing any such place or location for said sales representative Defendants at any time.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 5:

Mr. Delk objects to the Request on the ground that it is not comprehensible as written. Mr. Delk objects further to this Request on the grounds that it is vague and ambiguous, particularly with respect to the term "matter" and the phrases "such sales representative Defendants" and "showing any such place or location"; on the grounds that it seeks information

or documents outside of his possession, custody or control; and on the grounds that it is argumentative, particularly with respect to the term "sales representative." Mr. Delk objects further to this Request on the grounds that it is overly broad, unduly burdensome, and seeks documents or information that are neither relevant to the claims or defenses of any party or to the subject matter involved in this action nor reasonably calculated to lead to the discovery of admissible evidence.

*/s/ Ben C. Wilson*
ROBERT C. (MIKE) BROCK
F. CHADWICK MORRISS
BEN C. WILSON
Attorneys for Defendants

OF COUNSEL:
Rushton, Stakely, Johnston, & Garrett, P.A.
184 Commerce Street
Montgomery, Alabama 36104
(334)206-3100 (t)
(334)481-0831 (f)

## CERTIFICATE OF SERVICE

I do hereby certify that I have filed the foregoing document through the Alafile electronic filing service, which will serve the following counsel of record, on this the 17th day of July 2007:

James S. Hubbard
Thomas J. Knight
HUBBARD & KNIGHT
Post Office Drawer 1850
Anniston, Alabama 36202

*/s/ Ben C. Wilson*
OF COUNSEL

- 6 -

ELECTRONICALLY FILED
7/17/2007 4:57 PM
CV-2006-000145.00
CIRCUIT COURT OF
RANDOLPH COUNTY, ALABAMA
CHRIS MAY, CLERK

### IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

| | | |
|---|---|---|
| **CLIFFORD BAILEY, et al.** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **CASE NO. CV-06-145** |
| **MERCK & CO., INC., et al.** | * | |
| **Defendants.** | * | |

### NOTICE OF FILING DISCOVERY

TO:    Hon. Kim S. Benefield
       Circuit Clerk of Randolph County
       P.O. Box 328
       1 Main Street
       Weedowee, Alabama 36278-0328

Please take notice that Defendants, in the above-styled case have served the following

discovery document upon counsel for the parties:

1.    Responses and Objections of Defendant Jason Delk to Plaintiffs' Request for

Production.


                              /s/ Ben C. Wilson
                              ROBERT C. (MIKE) BROCK
                              F. CHADWICK MORRISS
                              BEN C. WILSON
                              Attorneys for Defendants

OF COUNSEL:
Rushton, Stakely, Johnston, & Garrett, P.A.
184 Commerce Street
Montgomery, Alabama 36104
(334)206-3100 (t)
(334)481-0831 (f)

<u>CERTIFICATE OF SERVICE</u>

I do hereby certify that I have filed the foregoing document through the Alafile electronic filing service, which will serve the following counsel of record, on this the 17th day of July 2007:

James S. Hubbard
Thomas J. Knight
HUBBARD & KNIGHT
Post Office Drawer 1850
Anniston, Alabama 36202

*/s/ Ben C. Wilson*
OF COUNSEL



**AlaFile E-Notice**

56-CV-2006-000145.00

To:  BENJAMIN WILSON
     bcw@rsjg.com

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

The following discovery was FILED on 7/17/2007 4:57:22 PM

Notice Date:    7/17/2007 4:57:22 PM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

To:  BARTLETT SCOTT          (PRO SE)
     3255 CO RD 747
     CULLMAN, AL 35058

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

The following discovery was FILED on 7/17/2007 4:57:22 PM

Notice Date:      7/17/2007 4:57:22 PM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

To:  BAUER MELISSA          (PRO SE)
512 CLAY STREET
ALBERTVILLE, AL 35950

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

The following discovery was FILED on 7/17/2007 4:57:22 PM

Notice Date:     7/17/2007 4:57:22 PM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
**RANDOLPH COUNTY, ALABAMA**
**COURTHOUSE SQUARE**
**WEDOWEE, AL 36278**

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

To:  DELK JASON          (PRO SE)
     1609 BENT RIVER CIRCLE
     VESTAVIA HILLS, AL 35216

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

The following discovery was FILED on 7/17/2007 4:57:22 PM

Notice Date:      7/17/2007 4:57:22 PM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

To:  HARPER CORAL          (PRO SE)
     220 63 ST S
     BIRMINGHAM, AL 35212

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

The following discovery was FILED on 7/17/2007 4:57:22 PM

Notice Date:      7/17/2007 4:57:22 PM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

To: HENDERSON CHARLES          (PRO SE)
2101 31 AVE N
BIRMINGHAM, AL 35207

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

The following discovery was FILED on 7/17/2007 4:57:22 PM

Notice Date:      7/17/2007 4:57:22 PM

CHRIS MAY
CIRCUIT COURT CLERK
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

To:  HODGES JULIE          (PRO SE)
14019 MARIELLEN RD SW
HUNTSVILLE, AL 35803

# NOTICE OF ELECTRONIC FILING

### IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

**CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL**
**56-CV-2006-000145.00**

The following discovery was FILED on 7/17/2007 4:57:22 PM

Notice Date:      7/17/2007 4:57:22 PM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
**RANDOLPH COUNTY, ALABAMA**
**COURTHOUSE SQUARE**
**WEDOWEE, AL 36278**

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

To: HOLMES KATHERINE          (PRO SE)
2481 SAVOY STREET
HOOVER, AL 35226

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

The following discovery was FILED on 7/17/2007 4:57:22 PM

Notice Date:     7/17/2007 4:57:22 PM

CHRIS MAY
CIRCUIT COURT CLERK
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

To:  HOUSTON JAMES          (PRO SE)
     286 WESLEY DR
     OZARK, AL 36360

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

The following discovery was FILED on 7/17/2007 4:57:22 PM

Notice Date:      7/17/2007 4:57:22 PM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

To:  LOVETT LORI            (PRO SE)
     5612 5 TERRY ST
     BIRMINGHAM, AL 35212

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

The following discovery was FILED on 7/17/2007 4:57:22 PM

Notice Date:     7/17/2007 4:57:22 PM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

To: MELTON JULIE            (PRO SE)
5309 AVE S
BIRMINGHAM, AL 35212

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

The following discovery was FILED on 7/17/2007 4:57:22 PM

Notice Date:      7/17/2007 4:57:22 PM

CHRIS MAY
CIRCUIT COURT CLERK
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

To:  MITCHAM HENRY          (PRO SE)
1919 MCDOWLING DR SE
HUNTSVILLE, AL 35803

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

The following discovery was FILED on 7/17/2007 4:57:22 PM

Notice Date:      7/17/2007 4:57:22 PM

CHRIS MAY
CIRCUIT COURT CLERK
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

To: PHARR JERRY          (PRO SE)
4705 AUGUSTA DR
EIGHT MILE, AL 36613

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

The following discovery was FILED on 7/17/2007 4:57:22 PM

Notice Date:        7/17/2007 4:57:22 PM

CHRIS MAY
CIRCUIT COURT CLERK
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

To:  SANTIAGO MELISSA          (PRO SE)
     223 VINEYARD LANE
     BIRMINGHAM, AL 35242

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

The following discovery was FILED on 7/17/2007 4:57:22 PM

Notice Date:      7/17/2007 4:57:22 PM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

To:  SPARKMAN DAVID        (PRO SE)
     545 ROCKY FORD ROAD
     HARTSELLE, AL 35640

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

The following discovery was FILED on 7/17/2007 4:57:22 PM

Notice Date:     7/17/2007 4:57:22 PM

CHRIS MAY
CIRCUIT COURT CLERK
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

To:  WALKER-MCGLOTHAN NATASHA     (PRO SE)
3122 HIGHLAND LAKES RD
BIRMINGHAM, AL 35242

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

The following discovery was FILED on 7/17/2007 4:57:22 PM

Notice Date:     7/17/2007 4:57:22 PM

CHRIS MAY
CIRCUIT COURT CLERK
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

To: WALLS RANDY          (PRO SE)
7620 MACK HICKS RD
CLAY, AL 35048

# NOTICE OF ELECTRONIC FILING

### IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

### CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
### 56-CV-2006-000145.00

The following discovery was FILED on 7/17/2007 4:57:22 PM

Notice Date:      7/17/2007 4:57:22 PM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

To:  HUBBARD JAMES S
     1125 NOBLE STREET
     ANNISTON, AL 36201

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

The following discovery was FILED on 7/17/2007 4:57:22 PM

Notice Date:      7/17/2007 4:57:22 PM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

To:  GARRETT RICHARD B
     rbg@rsjg.com

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

The following discovery was FILED on 7/17/2007 4:57:22 PM

Notice Date:     7/17/2007 4:57:22 PM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

To:  KNIGHT THOMAS J
     hubbardknight@msn.com

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

The following discovery was FILED on 7/17/2007 4:57:22 PM

Notice Date:      7/17/2007 4:57:22 PM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov

ELECTRONICALLY FILED
7/12/2007 8:44 AM
CV-2006-000145.00
CIRCUIT COURT OF
RANDOLPH COUNTY, ALABAMA
CHRIS MAY, CLERK

## IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

| | | |
|---|---|---|
| **CLIFFORD BAILEY, et al.** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CASE NUMBER: <u>CV-06-145</u>** |
| | ) | |
| **MERCK & CO., INC., et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MOTION TO RE-SET FOR HEARING</u><br><u>ON A DIFFERENT DATE</u>

_____Now come the Plaintiffs through their undersigned Attorneys and, due to an unavoidable conflict, move that the Court re-set the Defendants' Motion to Sever, and also to re-set the Plaintiffs' Motion to Compel, and the Plaintiffs' Motion to Strike the Motion to Sever, all for a later date after July 26, 2007, and in support of this Motion show the Court as follows:

1.      Plaintiffs' counsel are involved in a jury trial set for August 13, 2007, in the Circuit Court of St. Clair County, Alabama.  At the request of the undersigned, that Court specially set a hearing on their Motion for Summary Judgment in the St. Clair County case, and the Court set the same for July 26, 2007, at 9:00 a.m., the same time this Honorable Court has set the present case for hearing on the Motion to Sever.

2.      It would be more efficient to have all of the pending motions set together at the same time, and the undersigned would request that this Court set the motions in this case all for the same time at a later date.  Further, the present case is not set for trial, but the St. Clair County case is set for trial only a couple weeks after the 26th and it would not be feasible to move the St. Clair County hearing again.

3.      The Plaintiffs, through their counsel, would request that this Honorable Court re-set all of the pending motions in this case for the next Motion Docket of this Court in Randolph County.  \_

--/S/--Thomas J. Knight-----
Attorney for Plaintiffs

HUBBARD & KNIGHT
1125 Noble Street
Post Office Box 1850
Anniston, Alabama 36202
(256) 237-9586

--/S/-- Steve R. Morris-----
Attorney for Plaintiffs

Steve R. Morris
Morris Law
Post Office Box 814
Wedowee, Alabama 36278

## CERTIFICATE OF SERVICE

I do hereby certify that on this the 11th day of July, 2007, that I have filed the forgoing motion through the Alafile Electronic Filing Service, which will serve the following counsel of record.

Mr. Ben C. Wilson
Mr. Richard B. Garrett
Mr. Robert C. Brock
RUSHTON, STAKELY, JOHNSTON & GARRETT, P.A.
184 Commerce Street
Post Office Box 270
Montgomery, Alabama 36104

--/S/--Thomas J. Knight-----
Attorney for Plaintiffs

| **STATE OF ALABAMA** Unified Judicial System | Revised 2/14/05 | Case |
|---|---|---|
| 56-RANDOLPH | ☐ District Court ☑ Circuit Court | CV200 |

ELECTRONICALLY FILED
7/12/2007 8:34 AM
CV-2006-000145.00
CIRCUIT COURT OF
RANDOLPH COUNTY, ALABAMA
CHRIS MAY, CLERK

| CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL | **CIVIL MOTION COVER SHEET** Name of Filing Party: C001 - BAILEY CLIFFORD |
|---|---|

| *Name, Address, and Telephone No. of Attorney or Party. If Not Represented.* THOMAS KNIGHT 1125 NOBLE STREET ANNISTON, AL 36201 *Attorney Bar No.:* KNI009 | ☐ Oral Arguments Requested |
|---|---|

## TYPE OF MOTION

**Motions Requiring Fee**

☐ Default Judgment ($50.00)

☐ Joinder in Other Party's Dispositive Motion (i.e. Summary Judgment, Judgment on the Pleadings, or other Dispositive Motion not pursuant to Rule 12(b)) ($50.00)

☐ Judgment on the Pleadings ($50.00)

☐ Motion to Dismiss, or in the Alternative Summary Judgment($50.00)

☐ Renewed Dispositive Motion(Summary Judgment, Judgment on the Pleadings, or other Dispositive Motion not pursuant to Rule 12(b)) ($50.00)

☐ Summary Judgment pursuant to Rule 56($50.00)

☐ Other _____

pursuant to Rule _____ ($50.00)

*Motion fees are enumerated in §12-19-71(a). Fees pursuant to Local Act are not included. Please contact the Clerk of the Court regarding applicable local fees.

☐ Local Court Costs $ _____

**Motions Not Requiring Fee**

☐ Add Party
☐ Amend
☐ Change of Venue/Transfer
☐ Compel
☐ Consolidation
☑ Continue
☐ Deposition
☐ Designate a Mediator
☐ Judgment as a Matter of Law (during Trial)
☐ Disburse Funds
☐ Extension of Time
☐ In Limine
☐ Joinder
☐ More Definite Statement
☐ Motion to Dismiss pursuant to Rule 12(b)
☐ New Trial
☐ Objection of Exemptions Claimed
☐ Pendente Lite
☐ Plaintiff's Motion to Dismiss
☐ Preliminary Injunction
☐ Protective Order
☐ Quash
☐ Release from Stay of Execution
☐ Sanctions
☐ Sever
☐ Special Practice in Alabama
☐ Stay
☐ Strike
☐ Supplement to Pending Motion
☐ Vacate or Modify
☐ Withdraw
☐ Other
pursuant to Rule _____ (Subject to Filing Fee)

| Check here if you have filed or are filing contemporaneously with this motion an Affidavit of Substantial Hardship ☐ | Date: 7/12/2007 8:32:55 AM | Signature of Attorney or Party: /s THOMAS KNIGHT |
|---|---|---|

*This Cover Sheet must be completed and submitted to the Clerk of Court upon the filing of any motion. Each motion should contain a separate Cover Sheet.
**Motions titled 'Motion to Dismiss' that are not pursuant to Rule 12(b) and are in fact Motions for Summary Judgments are subject to filing fee.



ELECTRONICALLY FILED
7/10/2007 2:31 PM
CV-2006-000145.00
CIRCUIT COURT OF
RANDOLPH COUNTY, ALABAMA
CHRIS MAY, CLERK

**IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA**

| | |
|---|---|
| BAILEY CLIFFORD | ) |
| BLACK CLIFFORD | ) |
| CALHOUN WESLEY | ) |
| DEASON CURTIS | ) |
| GRAVES RUTH | ) |
| GRIZZARD MICKEY | ) |
| PERRY JIMMY | ) |
| SIKES HERBERT STANLEY | ) |
| THOMPSON PHILLIP | ) |
|                     Plaintiffs | ) |
| | ) |
|           v. | )      **Case No.:**  CV-2006-000145.00 |
| | ) |
| MERCK & CO INC | ) |
| BARTLETT SCOTT | ) |
| BAUER MELISSA | ) |
| DELK JASON | ) |
| HARPER CORAL | ) |
| HENDERSON CHARLES | ) |
| HODGES JULIE | ) |
| HOLMES KATHERINE | ) |
| HOUSTON JAMES | ) |
| LOVETT LORI | ) |
| MELTON JULIE | ) |
| MITCHAM HENRY | ) |
| PHARR JERRY | ) |
| SANTIAGO MELISSA | ) |
| SPARKMAN DAVID | ) |
| WALKER-MCGLOTHAN NATASHA | ) |
| WALLS RANDY | ) |
|                 Defendants | ) |

<u>**ORDER**</u>

A Hearing on Defendant's Motion for Severance of Claims of the Plaintiff's is scheduled before this court at 9:00 a.m. on Thursday, July 26, 2007.

DONE this 10th day of July, 2007

/s STEVEN R PERRYMAN

CIRCUIT JUDGE



**AlaFile E-Notice**

56-CV-2006-000145.00

Judge: ASSIGNED JUDGE

To: WALLS RANDY    (PRO SE)
7620 MACK HICKS RD
CLAY, AL 35048

# NOTICE OF ELECTRONIC FILING

### IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

#### CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
#### 56-CV-2006-000145.00

The following matter was FILED on 7/10/2007 12:51:02 PM

Notice Date:    7/10/2007 12:51:02 PM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

Judge: ASSIGNED JUDGE

To:  WALKER-MCGLOTHAN NATASHA    (PRO SE)
3122 HIGHLAND LAKES RD
BIRMINGHAM, AL 35242

# NOTICE OF ELECTRONIC FILING

### IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

### CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
### 56-CV-2006-000145.00

The following matter was FILED on 7/10/2007 12:51:02 PM

Notice Date:      7/10/2007 12:51:02 PM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

Judge: ASSIGNED JUDGE

To: SPARKMAN DAVID        (PRO SE)
545 ROCKY FORD ROAD
HARTSELLE, AL 35640

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

The following matter was FILED on 7/10/2007 12:51:02 PM

Notice Date:     7/10/2007 12:51:02 PM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00
Judge: ASSIGNED JUDGE

To:  SANTIAGO MELISSA          (PRO SE)
     223 VINEYARD LANE
     BIRMINGHAM, AL 35242

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

The following matter was FILED on 7/10/2007 12:51:02 PM

Notice Date:     7/10/2007 12:51:02 PM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

Judge: ASSIGNED JUDGE

To:  PHARR JERRY            (PRO SE)
     4705 AUGUSTA DR
     EIGHT MILE, AL 36613

# NOTICE OF ELECTRONIC FILING

### IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

### CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
### 56-CV-2006-000145.00

The following matter was FILED on 7/10/2007 12:51:02 PM

Notice Date:     7/10/2007 12:51:02 PM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

Judge: ASSIGNED JUDGE

To:  MITCHAM HENRY          (PRO SE)
1919 MCDOWLING DR SE
HUNTSVILLE, AL 35803

---

# NOTICE OF ELECTRONIC FILING

---

### IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

### CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
### 56-CV-2006-000145.00

The following matter was FILED on 7/10/2007 12:51:02 PM

Notice Date:     7/10/2007 12:51:02 PM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

Judge: ASSIGNED JUDGE

To:  MELTON JULIE            (PRO SE)
     5309 AVE S
     BIRMINGHAM, AL 35212

---

# NOTICE OF ELECTRONIC FILING

### IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

**CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL**
**56-CV-2006-000145.00**

The following matter was FILED on 7/10/2007 12:51:02 PM

Notice Date:      7/10/2007 12:51:02 PM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



## AlaFile E-Notice

56-CV-2006-000145.00

Judge: ASSIGNED JUDGE

To:  LOVETT LORI          (PRO SE)
     5612 5 TERRY ST
     BIRMINGHAM, AL 35212

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

The following matter was FILED on 7/10/2007 12:51:02 PM

Notice Date:     7/10/2007 12:51:02 PM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

Judge: ASSIGNED JUDGE

To: HOUSTON JAMES          (PRO SE)
286 WESLEY DR
OZARK, AL 36360

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

The following matter was FILED on 7/10/2007 12:51:02 PM

Notice Date:       7/10/2007 12:51:02 PM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

Judge: ASSIGNED JUDGE

To:  HOLMES KATHERINE          (PRO SE)
     2481 SAVOY STREET
     HOOVER, AL 35226

# NOTICE OF ELECTRONIC FILING

### IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

### CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
### 56-CV-2006-000145.00

The following matter was FILED on 7/10/2007 12:51:02 PM

Notice Date:     7/10/2007 12:51:02 PM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

Judge: ASSIGNED JUDGE

To:  HODGES JULIE          (PRO SE)
     14019 MARIELLEN RD SW
     HUNTSVILLE, AL 35803

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

The following matter was FILED on 7/10/2007 12:51:02 PM

Notice Date:     7/10/2007 12:51:02 PM

CHRIS MAY
CIRCUIT COURT CLERK
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

Judge: ASSIGNED JUDGE

To:  HENDERSON CHARLES          (PRO SE)
     2101 31 AVE N
     BIRMINGHAM, AL 35207

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

The following matter was FILED on 7/10/2007 12:51:02 PM

Notice Date:      7/10/2007 12:51:02 PM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

Judge: ASSIGNED JUDGE

To:  HARPER CORAL          (PRO SE)
220 63 ST S
BIRMINGHAM, AL 35212

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

The following matter was FILED on 7/10/2007 12:51:02 PM

Notice Date:      7/10/2007 12:51:02 PM

CHRIS MAY
CIRCUIT COURT CLERK
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

Judge: ASSIGNED JUDGE

To:  DELK JASON          (PRO SE)
1609 BENT RIVER CIRCLE
VESTAVIA HILLS, AL 35216

---

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

The following matter was FILED on 7/10/2007 12:51:02 PM

Notice Date:     7/10/2007 12:51:02 PM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

Judge: ASSIGNED JUDGE

To:  BAUER MELISSA          (PRO SE)
512 CLAY STREET
ALBERTVILLE, AL 35950

# NOTICE OF ELECTRONIC FILING

### IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

The following matter was FILED on 7/10/2007 12:51:02 PM

Notice Date:     7/10/2007 12:51:02 PM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

Judge: ASSIGNED JUDGE

To:  BARTLETT SCOTT          (PRO SE)
     3255 CO RD 747
     ANNISTON, AL 36202

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

The following matter was FILED on 7/10/2007 12:51:02 PM

Notice Date:     7/10/2007 12:51:02 PM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

Judge: ASSIGNED JUDGE

To: WALLS RANDY          (PRO SE)
7620 MACK HICKS RD
CLAY, AL 35048

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

The following matter was FILED on 7/10/2007 2:31:12 PM

Notice Date:     7/10/2007 2:31:12 PM

CHRIS MAY
CIRCUIT COURT CLERK
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

Judge: ASSIGNED JUDGE

To:  WALKER-MCGLOTHAN NATASHA    (PRO SE)
3122 HIGHLAND LAKES RD
BIRMINGHAM, AL 35242

# NOTICE OF ELECTRONIC FILING

### IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

### CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
### 56-CV-2006-000145.00

The following matter was FILED on 7/10/2007 2:31:12 PM

Notice Date:      7/10/2007 2:31:12 PM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00
Judge: ASSIGNED JUDGE

To:  SPARKMAN DAVID        (PRO SE)
     545 ROCKY FORD ROAD
     HARTSELLE, AL 35640

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

The following matter was FILED on 7/10/2007 2:31:12 PM

Notice Date:     7/10/2007 2:31:12 PM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

Judge: ASSIGNED JUDGE

To:  SANTIAGO MELISSA          (PRO SE)
223 VINEYARD LANE
BIRMINGHAM, AL 35242

# NOTICE OF ELECTRONIC FILING

### IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

### CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
### 56-CV-2006-000145.00

The following matter was FILED on 7/10/2007 2:31:12 PM

Notice Date:     7/10/2007 2:31:12 PM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

Judge: ASSIGNED JUDGE

To:  PHARR JERRY          (PRO SE)
     4705 AUGUSTA DR
     EIGHT MILE, AL 36613

# NOTICE OF ELECTRONIC FILING

### IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

### CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
### 56-CV-2006-000145.00

The following matter was FILED on 7/10/2007 2:31:12 PM

Notice Date:      7/10/2007 2:31:12 PM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

Judge: ASSIGNED JUDGE

To:  MITCHAM HENRY          (PRO SE)
1919 MCDOWLING DR SE
HUNTSVILLE, AL 35803

---

# NOTICE OF ELECTRONIC FILING

---

### IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

#### CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
#### 56-CV-2006-000145.00

The following matter was FILED on 7/10/2007 2:31:12 PM

Notice Date:     7/10/2007 2:31:12 PM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

Judge: ASSIGNED JUDGE

To:  MELTON JULIE          (PRO SE)
     5309 AVE S
     BIRMINGHAM, AL 35212

---

# NOTICE OF ELECTRONIC FILING

---

### IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

**CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL**
**56-CV-2006-000145.00**

The following matter was FILED on 7/10/2007 2:31:12 PM

Notice Date:     7/10/2007 2:31:12 PM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

Judge: ASSIGNED JUDGE

To:  LOVETT LORI        (PRO SE)
5612 5 TERRY ST
BIRMINGHAM, AL 35212

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

The following matter was FILED on 7/10/2007 2:31:12 PM

Notice Date:      7/10/2007 2:31:12 PM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00
Judge: ASSIGNED JUDGE

To:  HOUSTON JAMES          (PRO SE)
286 WESLEY DR
OZARK, AL 36360

# NOTICE OF ELECTRONIC FILING

### IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

### CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
### 56-CV-2006-000145.00

The following matter was FILED on 7/10/2007 2:31:12 PM

Notice Date:       7/10/2007 2:31:12 PM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

Judge: ASSIGNED JUDGE

To:  HOLMES KATHERINE        (PRO SE)
     2481 SAVOY STREET
     HOOVER, AL 35226

# NOTICE OF ELECTRONIC FILING

### IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

**CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL**
**56-CV-2006-000145.00**

The following matter was FILED on 7/10/2007 2:31:12 PM

Notice Date:      7/10/2007 2:31:12 PM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

Judge: ASSIGNED JUDGE

To:  HODGES JULIE          (PRO SE)
14019 MARIELLEN RD SW
HUNTSVILLE, AL 35803

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

The following matter was FILED on 7/10/2007 2:31:12 PM

Notice Date:      7/10/2007 2:31:12 PM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

Judge: ASSIGNED JUDGE

To:  HENDERSON CHARLES          (PRO SE)
2101 31 AVE N
BIRMINGHAM, AL 35207

# NOTICE OF ELECTRONIC FILING

### IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

### CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
### 56-CV-2006-000145.00

The following matter was FILED on 7/10/2007 2:31:12 PM

Notice Date:     7/10/2007 2:31:12 PM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

Judge: ASSIGNED JUDGE

To:  HARPER CORAL          (PRO SE)
     220 63 ST S
     BIRMINGHAM, AL 35212

---

# NOTICE OF ELECTRONIC FILING

---

### IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

**CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL**
**56-CV-2006-000145.00**

The following matter was FILED on 7/10/2007 2:31:12 PM

Notice Date:     7/10/2007 2:31:12 PM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

Judge: ASSIGNED JUDGE

To:  DELK JASON          (PRO SE)
     1609 BENT RIVER CIRCLE
     VESTAVIA HILLS, AL 35216

# NOTICE OF ELECTRONIC FILING

### IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

**CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL**
**56-CV-2006-000145.00**

The following matter was FILED on 7/10/2007 2:31:12 PM

Notice Date:    7/10/2007 2:31:12 PM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

Judge: ASSIGNED JUDGE

To:  BAUER MELISSA          (PRO SE)
512 CLAY STREET
ALBERTVILLE, AL 35950

---

# NOTICE OF ELECTRONIC FILING

---

### IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

### CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
### 56-CV-2006-000145.00

The following matter was FILED on 7/10/2007 2:31:12 PM

Notice Date:     7/10/2007 2:31:12 PM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



**AlaFile E-Notice**

56-CV-2006-000145.00

Judge: ASSIGNED JUDGE

To:  BARTLETT SCOTT            (PRO SE)
     3255 CO RD 747
     ANNISTON, AL 36202

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
56-CV-2006-000145.00

The following matter was FILED on 7/10/2007 2:31:12 PM

Notice Date:    7/10/2007 2:31:12 PM

**CHRIS MAY**
**CIRCUIT COURT CLERK**
RANDOLPH COUNTY, ALABAMA
COURTHOUSE SQUARE
WEDOWEE, AL 36278

256-357-4551
chris.may@alacourt.gov



ELECTRONICALLY FILED
7/10/2007 12:51 PM
CV-2006-000145.00
CIRCUIT COURT OF
RANDOLPH COUNTY, ALABAMA
CHRIS MAY, CLERK

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

| | |
|---|---|
| BAILEY CLIFFORD | ) |
| BLACK CLIFFORD | ) |
| CALHOUN WESLEY | ) |
| DEASON CURTIS | ) |
| GRAVES RUTH | ) |
| GRIZZARD MICKEY | ) |
| PERRY JIMMY | ) |
| SIKES HERBERT STANLEY | ) |
| THOMPSON PHILLIP | ) |
|      Plaintiffs | ) |
| | ) |
| v. | )   **Case No.:** CV-2006-000145.00 |
| | ) |
| MERCK & CO INC | ) |
| BARTLETT SCOTT | ) |
| BAUER MELISSA | ) |
| DELK JASON | ) |
| HARPER CORAL | ) |
| HENDERSON CHARLES | ) |
| HODGES JULIE | ) |
| HOLMES KATHERINE | ) |
| HOUSTON JAMES | ) |
| LOVETT LORI | ) |
| MELTON JULIE | ) |
| MITCHAM HENRY | ) |
| PHARR JERRY | ) |
| SANTIAGO MELISSA | ) |
| SPARKMAN DAVID | ) |
| WALKER-MCGLOTHAN NATASHA | ) |
| WALLS RANDY | ) |
|      Defendants | ) |

## ORDER

WHEREAS, certain documents and information have been and may be sought, produced or exhibited by and among the parties to the above-styled proceeding (the "Action") which relate to the parties' confidential and proprietary information that may be subject to protection under

the Alabama Rules of Civil Procedure, and

WHEREAS, the parties have provided and will provide a significant amount of discovery materials in this Action and the parties agree that a protective order will facilitate a timely and efficient discovery process;

IT IS HEREBY STIPULATED AND AGREED, AND FOR GOOD CAUSE SHOWN, ORDERED THAT:

Scope

1. This Protective Order shall govern all documents, the information contained therein, and all other information produced or disclosed during this Action whether revealed in a document, deposition, other testimony, discovery response or otherwise, by any party in this Action (the "Supplying Party") to any other party or parties (the "Receiving Party").

2. Third parties who so elect may avail themselves of, and agree to be bound by, the terms and conditions of this Protective Order and thereby become a Supplying Party for purposes of this Protective Order.

3. The entry of this Protective Order does not prevent any party from seeking a further order of this Court pursuant to the Alabama Rules of Civil Procedure.

4. Nothing herein shall be construed to affect in any manner the admissibility at trial or any other court proceeding of any document, testimony, or other evidence.

Confidential Information

5. "Confidential Information" as used herein means any information that the Supplying Party believes in good faith constitutes, reflects, discloses, or contains information subject to protection under the Alabama Rules of Civil Procedure, whether it is a document, information contained in a document, information revealed during a deposition or other testimony, information revealed in an interrogatory response, or information otherwise revealed. In designating discovery materials as Confidential Information, the Supplying Party shall do so consistent with the rulings of the Court.

6. Specific documents and discovery responses produced by a Supplying Party shall, if appropriate, be designated as Confidential Information by marking the pages of the document that contain Confidential Information as follows: "CONFIDENTIAL -- SUBJECT TO PROTECTIVE ORDER". Except as provided in paragraphs 8 and 21, documents that do not bear the foregoing designation are not Confidential Information as that term is used in this Order.

7.Any material produced or provided in this Action for inspection is to be treated by the ReceivingParty as ConfidentialInformationpending the copying and delivery of any copies of the same by the Supplying Party to the Receiving Party.

8.Informationdisclosed at a deposition taken in connection with this Action may be designated as Confidential Information by:

(a)designatingon the record during the taking of the deposition that the deposition, or some part of it, constitutes Confidential Information; or

(b)designatingthe portions of the transcript in a letter to be served on the court reporter and opposing counsel within thirty (30) calendar days of the Supplying Party's receipt of the transcript of a deposition.The Court reporter will indicate the portions designated as confidentialand segregate them as appropriate.Designationsof transcripts will apply to audio, video, or other recordings of the testimony.Thecourt reporter shall clearly mark any transcript released prior to the expiration of the 30-day period as "Confidential-Subjectto Further ConfidentialityReview." Such transcripts will be treated as ConfidentialInformationuntil the expiration of the 30-day period.If the Supplying Party does not serve a designation letter withinthe 30-day period, then the entire transcript will be deemed not to contain Confidential Information.

9.A party in this Action may designate as Confidential Information any document or informationproduced by or testimony given by any other person or entity that the party reasonably believes qualifies as such party's Confidential Information pursuant to this Protective Order.

<u>Permissible Disclosure of Confidential Information</u>

10.Subject to Paragraph 13, the Receiving Party may show and deliver Confidential Information to the following people:

(a)counsel for the ReceivingParty and Merck in-house counsel, and the attorneys, paralegals, stenographic, and clerical staff employed by such counsel;

(b)with respect to any ConfidentialInformationproduced by any plaintiffor third party with respect to plaintiff,any employee of the ReceivingParty to whom it is necessary to disclose such informationfor the purpose of assistingin, or consultingwith respect to, the preparation of this Action;

(c)stenographic employees and court reporters recording or transcribing testimony in this Action;

(d)the Court, any Special Master appointed by the Court, and any members of their staffs to whom it is necessary to disclose the information;

(e)any outside consultant or expert whether formally retained or not if the Receiving Party

signs the certification described in paragraph 12;

(f)any attorney for claimants in other pendingU.S.litigationalleging personal injury or economic loss arising from the alleged use, purchase, or payment of VIOXX® (or attorneys for claimants in any other pending litigationas the parties may mutuallyagree or the Court directs) for use in this or such other action, provided that the proposed recipient is:(i) already operating under a stipulatedProtective Order or (ii) agrees to be bound by this Order and signs the certification described in paragraph 12;

(g)any physicianwho treated a plaintiffor any other third party for whom there is a litigation need to disclose the information if the Receiving Party signs the certification described in paragraph 12; and

(h)any physician who treated a plaintiff for whom there is a litigation need to show Confidential Information that refuses to sign the certification described in paragraph 12, provided that the physician is advised, in writing, that, pursuant to this Order, such physician (1) may not make copies of any of the documents, (2) may not disclose the informationbeyond the parties involved in the litigation,and (3) must return the documents to counsel for the Receiving Party after the litigation need for the documents has past.

11.The Receiving Party may show Confidential Information to any witness during a deposition.ConfidentialInformationshall not lose its Confidentialstatus through such use, and counsel shall exercise their best efforts and take all steps reasonably required to protect its confidentialityduring such use.If, after a deposition is noticed, the SupplyingParty objects to Confidential Information being shown to that witness, the Supplying party shall attempt to confer with counsel to resolve the issue.If counsel are unable to resolve the issue themselves, counsel may seek an order from the Court prohibiting or limiting such disclosure.

12.Where indicated in this Order, each putative recipient of ConfidentialInformationshall be provided with a copy of this Protective Order, which he or she shall read.Upon reading this Protective Order, such person shall sign a Certification,in the form annexed hereto as Exhibit A, acknowledging that he or she has read this Protective Order and shall abide by its terms.These certifications are strictly confidential.Counselfor each party shall maintain the certificationswithout giving copies to the other side.The parties expressly agree, and it is hereby ordered that, except in the event of a violationof this order, they will make no attempt to seek copies of the certificationsor to determine the identitiesof persons signingthem.If the Court finds that any disclosure is necessary to investigate a violation of this Order, the disclosure will be limited to outside counsel only and outside counsel shall not disclose any informationto their clients that could tend to identify any certificationsignatory unless and until there is specific evidence that a particular signatory may have violated the Order, in which case limited disclosure may be made with respect to that signatory.Personswho come into contact with ConfidentialInformationfor clerical or administrativepurposes, and who do not retain copies or extracts thereof, are not required to execute Certifications.

13.Before disclosing Confidential Information to any person who is, independent of this litigation,a current director, officer, employee of, or counsel for a pharmaceutical company other than Merck that is marketing or has in development a selective COX-2 inhibitor, or a consultant, other than an occasional consultant, who is currently consultingabout a selective

COX -2 inhibitor, the party wishing to make such disclosure shall give at least ten (10) days' advance notice in writing to the counsel who designated such information as confidential, stating the names and addresses of the person(s) to whom the disclosure will be made. If, within the ten day period, a motion is filed objecting to the proposed disclosure, the designated document or item shall not be disclosed unless and until ten days have elapsed after the appeal period from a Court order denying the motion. Alternatively the party wishing to make such disclosure may provide the counsel who designated such information as confidential with information concerning the proposed recipient that does not identify the proposed recipient but is sufficient to permit an informed decision to be made with respect to any potential objection. If there is no consent to the disclosure within ten (10) days, the party wishing to make the disclosure may submit the information to the Court for a determination of whether the disclosure may be made. The objecting party will have opportunities to (1) request that the Court direct the party wishing to make disclosure to produce additional information about the proposed recipient and (2) submit such papers and argument as it may feel necessary to allow the Court to make an informed decision. Because only the party seeking to make the disclosure may know who the proposed recipient is, it is the responsibility of the party seeking to make the disclosure to determine prior to making any disclosure whether the proposed recipient is a person described in this paragraph.

Use of Confidential Information

14. The Receiving Party shall use confidential information only in connection with this Action or an action in which the Receiving Party is permitted by this Order to use Confidential Information.

15. Notwithstanding any other provisions hereof, nothing herein shall restrict any party's counsel from rendering advice to its clients with respect to this Action and, in the course thereof, relying upon Confidential Information, provided that in rendering such advice, counsel shall not disclose any other party's Confidential Information other than in a manner provided for in this Protective Order.

16. Nothing contained in this Protective Order shall preclude any party from using its own Confidential Information in any manner it sees fit, without prior consent of any party or the Court.

Protection of Confidential Information

17. Counsel shall take all reasonable and necessary steps to assure the security of any Confidential Information and will limit access to Confidential Information to those persons authorized by this Order.

18. Any party that is served with a subpoena or other notice compelling the production of discovery materials produced by another party must immediately give written notice of such subpoena or other notice to the original Supplying Party. Upon receiving such notice, the

original Supplying Party shall bear the burden of opposing, if it deems appropriate, the subpoena on grounds of confidentiality.

19. If a Receiving Party learns of any unauthorized disclosure of Confidential Information, the party shall immediately upon learning of such disclosure inform the Supplying Party of all pertinent facts relating to such disclosure and shall make all reasonable efforts to prevent disclosure by each unauthorized person who received such information.

20. Upon the conclusion of any attorney's last case in this proceeding (or such other case in which the Receiving Party is permitted by this order to use Confidential Information), including any appeals related thereto, at the written request and option of the Supplying Party, all discovery materials produced by the Supplying Party and any and all copies, summaries, notes, compilations (electronic or otherwise), and memoranda related thereto, shall be returned within thirty (30) calendar days to the Supplying Party, provided, however, that counsel may retain their privileged communications, work product, certifications pursuant to paragraph 12, and all court-filed documents even though they contain discovery materials produced by the Supplying Party, but such retained privileged communications and work product and court-filed documents shall remain subject to the terms of this Protective Order. At the written request of the Supplying Party, any person or entity having custody or control of recordings, notes, memoranda, summaries or other written materials, and all copies thereof, relating to or containing discovery materials produced by the Supplying Party shall deliver to the Supplying Party an affidavit certifying that reasonable efforts have been made to assure that all such discovery materials produced by the Supplying Party and any copies thereof, any and all records, notes, memoranda, summaries, or other written material regarding the discovery materials produced by the Supplying Party (except for privileged communications, work product and court-filed documents as stated above) have been delivered to the Supplying Party in accordance with the terms of this Protective Order.

<u>Changes in Designation of Information</u>

21. Any Supplying Party may designate as Confidential Information or withdraw a Confidential Information designation from any material that it has produced; provided, however, that such redesignation shall be effective only as of the date of such redesignation. Such redesignation shall be accomplished by notifying counsel for each party in writing of such redesignation and simultaneously producing a re-designated copy of such material.

22. Any party may object to the propriety of the designation (or redesignation) of specific material as Confidential Information by serving a written objection upon the Supplying Party's counsel. The Supplying Party or its counsel shall thereafter, within ten (10) calendar days, respond (by hand delivery or facsimile transmission) to such objection in writing by either: (i) agreeing to remove the designation; or (ii) stating the reasons for such designation. If the

Objecting Party and the Supplying Party are subsequently unable to agree upon the terms and conditions of disclosure for the material(s) in issue, the document will have its designation removed unless within thirty (30) days after written notice that the parties' negotiations are ended, the Supplying Party moves the Court for an order upholding the designation. On such a motion, the Supplying Party shall have the burden of proving that the material is Confidential Information. The material(s) in issue shall continue to be treated in the manner as designated by the Supplying Party until the Court orders otherwise.

<u>Filing Papers In Court Records</u>

23. The parties will use the following procedure for submitting to the Court papers consisting of, relating to, containing, incorporating, reflecting, describing, or attaching Confidential Information:

(a) For discovery-related motions, any memorandum of law, certification, or exhibit annexed thereto that contains Confidential Information shall be filed in a sealed envelope, labeled with the case name, case number, the motion to which the documents relate, and a listing of the titles of the documents in the envelope (such titles not to reveal Confidential Information). The parties will file the sealed envelope with the Clerk's office. The Clerk shall not open the envelope except upon instruction from the Court.

(b) For pretrial nondiscovery-related motions, the parties shall address the treatment and filing protocol for Confidential Information during the appropriate conference with the Court.

24. When submitting Confidential Information pursuant to the previous paragraph, the submitting party shall submit only those pages of the deposition transcript, document, or other matter containing Confidential Information that are cited, referred to, or specifically relied on by the submitting party. The submitting party shall not submit or lodge the entirety, or other portions, of the deposition transcript, document, or other matter containing Confidential Information.

<u>Miscellaneous Provisions</u>

25. It is expressly understood by and between the parties that in producing Confidential Information in this litigation, the parties shall be relying upon the terms and conditions of this Protective Order.

26. By written agreement of the parties, or upon motion and order of the Court, the terms of this Protective Order may be amended or modified. This Protective Order shall continue in force until amended or superseded by express order of the Court, and shall survive any final judgment or settlement in this Action.

27. Notwithstanding any other provision in the order, nothing in this Order shall affect or modify Merck's ability to review plaintiffs' information and report information to regulatory

agencies.

DONE this 10th day of July, 2007

/s STEVEN R PERRYMAN
_____

CIRCUIT JUDGE

**Filed in Office**

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

JUN 20 2007

CHRIS MAY
Clerk of Circuit Court

| | |
|---|---|
| CLIFFORD BAILEY, et al. | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | )    **CASE NUMBER: CV-06-145** |
| | ) |
| MERCK & CO., INC., et al. | ) |
| | ) |
|     Defendants. | ) |

## CERTIFICATE OF DISCOVERY

Please take notice that the following discovery was served on the 14th day of June, 2007:

1.    Plaintiff's Request for Production to Defendants David Sparkman, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Melissa Bauer, Natasha Walker-McGlothan, and Randy Walls

Thomas J. Knight
Attorney for Plaintiff

Hubbard & Knight
1125 Noble Street
Post Office Box 1850
Anniston, Alabama 36202
(256) 237-9586

Of Counsel:
Steve Morris
Post Office Box 814
Wedowee, Alabama 36278
(256) 357-9211

## CERTIFICATE OF SERVICE

I do hereby certify that I have this the 14th day of June, 2007, served a copy of the above and foregoing on all counsel of record as listed below by United States Mail, postage prepaid, and properly addressed.

Mr. F. Chadwick Morriss
Mr. Richard B. Garrett
Mr. Robert C. Brock
RUSHTON, STAKELY, JOHNSTON & GARRETT, P.A.
184 Commerce Street
Post Office Box 270
Montgomery, Alabama 36104

Thomas J. Knight
Attorney for Plaintiff

ELECTRONICALLY FILED
6/15/2007 4:24 PM
CV-2006-000145.00
CIRCUIT COURT OF
RANDOLPH COUNTY, ALABAMA
CHRIS MAY, CLERK

## IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

| | | |
|---|---|---|
| CLIFFORD BAILEY, et al. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CASE NUMBER: CV-06-145 |
| | ) | |
| MERCK & CO., INC., et al. | ) | |
| | ) | |
| Defendants. | ) | |

### MOTION TO STRIKE

Now come the Plaintiffs and move to strike the "Motion for Severance of Claims of the Plaintiffs" file by Defendants on June 14, 2007 and in support of this Motion to Strike to show the Court as follows:

1.    The "Motion for Severance of Claims of the Plaintiffs" should be stricken on grounds that the Defendants have failed to make discovery, information that would be important relevant to the "Motion for Severance of Claims of the Plaintiffs" would be presented by Defendants' proper performance of their discovery obligations, that the Defendants have acted improperly and in a dilatory manner, not complying with their obligations under the Alabama Rules of Civil Procedure, and that the Motion should be stricken until such time as the Defendants have complied with their discovery obligations in this civil action and their previous agreements.

2.    In 2006, the Plaintiff served a Notice of Deposition with a Request for Production on the Defendants.  The Defendants did not appear or present nor designate witnesses for the deposition and did not produce documents.

3.    Plaintiffs, through their counsel, made numerous efforts to resolve the discovery dispute with the Defendants without success.  After repeated efforts to resolve the discovery

dispute and get some performance by Defendants of their discovery obligations, the Plaintiffs filed their Motion to Compel Discovery on January 18, 2007, which Motion appears of record in this civil action.  An effort was then made by the undersigned to try, again, to resolve the discovery disputes, again without success.

4.    A hearing was set on the motion and the parties argued the motion to the court on April 4, 2007.  The Defendants agreed to resolve all the essential issues in the discovery dispute, in a conference taking place before the Court had to rule on the subject motion and the parties reported to the court that they could settle the matter.

5.    A true copy of the letter from counsel for the Defendants confirming the essential terms of the settlement of the Motion to Compel is attached hereto and made apart hereof as Exhibit A.

6.    After this agreement was made, time went by with no performance of the agreement, and eventually Defendants announced that they would not do the things set forth in the attached letter from their counsel.  An effort was then made to try to, again, resolve the discovery disputes and further promises of information production were made by Defendants.

7.    To date, Defendants have completely failed to make discovery, to comply with any of the agreements or promises they made as to discovery, and there has been an utter failure to produce the necessary information on the part of Defendants.  The Defendants were supposed to be working on some sort of response; but now it appears that the time taken to get this material together was occupied, instead, by the Defendants preparing and filing a 156 page "Motion for Severance of Claims of the Plaintiffs" which appears of record in this civil action, filed June 14, 2007.  The Plaintiffs were shocked to receive such a motion instead of any discovery being made by Defendants or any other indication as to the repeated requests by the Plaintiffs to get the

agreed-upon discovery from Defendants.

8.    Various remedies are available to the court for failure to make discovery.  At minimum, the court is requested to strike the "Motion for Severance of Claims of the Plaintiffs" until such time as the Defendants have complied with their discovery obligations, agreements, and duties under the Alabama Rules of Civil Procedures to make discovery.


/s/Steve R.Morris
Steve R. Morris
Attorney for Plaintiffs
Post Office Box 814
Wedowee, Alabama 36278


/s/Thomas J. Knight
Thomas J. Knight
Attorney for Plaintiffs
1125 Noble Street
Anniston, Alabama 36202


## CERTIFICATE OF SERVICE

I do hereby certify that I have filed the foregoing motion through the Alafile electronic filing service, which will serve the following counsel of record, on this the 15th day of June 2007:

Mr. F. Chadwick Morriss
Mr. Ben C. Wilson
RUSHTON, STAKELY, JOHNSTON & GARRETT, P.A.
184 Commerce Street
Post Office Box 270
Montgomery, Alabama 36104


/s/Thomas J. Knight
Thomas J. Knight
Attorney for Plaintiffs

APR-05-2007 THU 03:29 PM                                    FAX NO.

ELECTRONICALLY FILED
6/15/2007 4:24 PM
CV-2006-000143.00
CIRCUIT COURT OF
RANDOLPH COUNTY, ALABAMA
CHRIS MAY, CLERK

LAW OFFICES

## RUSHTON, STAKELY, JOHNSTON & GARRETT

### A PROFESSIONAL ASSOCIATION

Charles A. Stakely
I. Theodore Jackson, Jr.
James W. Garrett, Jr.
Robert A. Huffaker
Thomas H. Keene
Richard B. Garrett
Jeffrey W. Blitz
Dennis R. Bailey
Ronald G. Davenport
Fred W. Tyson
Robert C. Brock
P. Chadwick Morriss
T. Kent Garrett
Frank T. Stakely
William S. Haynes
Helen Crump Wells
Paul M. James, Jr.
Chris S. Simmons

184 COMMERCE STREET
MONTGOMERY, ALABAMA 36104

Mailing Address:
Post Office Box 270
Montgomery, Alabama  36101-0270

Telephone (334) 206-3100
Facsimile (334) 262-6277
Website: www.rsjg.com

Writer's Direct Telephone (334) 206-3245
Writer's Direct Facsimile (334) 481-0811

Robert C. Ward, Jr.
Bowdy J. Brown
Daniel L. Lindsey, Jr.
Patrick M. Shegon
Benjamin C. Wilson
L. Peyton Chapman, III
William J. Eskridge
Alan T. Hargrove, Jr.
R. Austin Huffaker, Jr.
Richard L. McBride, Jr.
R. Mac Freeman, Jr.
James R. Dickens, Jr.
R. Brett Garrett
Bethany L. Bolger
C. Zackery Moore
T. Chad Sexton, Jr.

OF COUNSEL:
Jesse M. Williams, III

April 5, 2007

Thomas J. Knight, Esquire
HUBBARD & KNIGHT
Post Office Drawer 1850
Anniston, Alabama 36202

Re:    *Clifford Bailey v. Merck & Company*
       *Rule 30(b)(6) deposition and production*
       *of documents*

Dear Tim:

From my notes, the following is my understanding of our agreement in regard to the above matters. If the below is consistent with your understanding as well, we can put this into order form for the judge's signature.

First, Merck will put up a Rule 30(b)(6) witness for deposition at a mutually convenient time and date on or before May 31st.

In regard to document production, Merck will produce the following documents prior to the deposition. (I am going by the list which begins on the first page of your Deposition Notice, since that is where my notes are, instead of the one that begins on the third page.)

(1)    (a)    Lists showing attendance at Vioxx-related meetings, functions or events by sales representatives who called on plaintiffs' prescribing physicians.

       (b)    These documents will not be produced initially, but may be produced on a sales representative-specific basis if there is evidence that a

April 5, 2007
Page 2

        representative is not being candid about attendance at meetings.

(c)    These items will be produced as they pertain to sales representatives who called on plaintiffs' prescribing physicians.

(d)    These documents will be produced in regard to the sales representatives who called on plaintiffs' prescribing physicians.

(e)    These documents, to the extent they were turned in to Merck, and as they pertain to sales representatives who called on plaintiffs' prescribing physicians will be produced. You advised that what you are seeking here would be handwritten notes, etc. which are the equivalent of the computerized call notes, to the extent that these exist.

(2)    Merck will provide the address or last known address, and telephone numbers, if available, of the unserved individual defendants in this case. Merck will also provide any emergency contact information that it has in regard to the unserved defendants.

(3)    Merck will provide the information set out in No. (2) above.

Please advise as to whether the above comports with your understanding of our agreement and, if so, whether you want to put this into order form or if you want me to do.

                    Sincerely,


                    Richard B. Garrett

RBG:rsj



ELECTRONICALLY FILED
6/13/2007 1:41 PM
CV-2006-000145.00
CIRCUIT COURT OF
RANDOLPH COUNTY, ALABAMA
CHRIS MAY, CLERK

## IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

| | | |
|---|---|---|
| **CLIFFORD BAILEY, et al.** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **v.** | * | **CASE NO. CV-06-145** |
| | * | |
| **MERCK & CO., INC., et al.** | * | |
| | * | |
| **Defendants.** | * | |

### MOTION FOR SEVERANCE OF CLAIMS OF THE PLAINTIFFS

COMES NOW, Defendant Merck & Co, Inc. ("Merck"), and pursuant to Alabama Rule of Civil Procedure 21, respectfully moves this Court for severance of the claims of the various Plaintiffs. As grounds for this Motion, Merck states as follows:

1.      Eight plaintiffs in this case, Clifford Bailey, Clifford Black, Mickey Grizzard, Jimmy Perry, Wesley Calhoun, Phillip Thompson, Ruth Graves, and Herbert Sikes, have filed suit against Merck and several individuals each of whom is alleged to have been employed by Merck as a professional sales representative. See Complaint, Exhibit A. Plaintiffs' claims are based upon their alleged use of Vioxx®, a prescription medication marketed by Merck until it was voluntarily withdrawn from the market in September 2004. See id.

2.      The joinder of these Plaintiffs and their associated claims into a single action violates Rule 20 of the Alabama Rules of Civil Procedure. Rule 20 provides in part as follows:

> (a) Permissive Joinder: All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action.

See Ala. R. Civ. P. 20(a).

3.      In order to join these Plaintiffs (or these Defendants) into a single action, <u>both</u> requirements of Rule 20 must be satisfied, <u>i.e.</u>, Plaintiffs must assert a "right to relief . . . arising out of *the same transaction, occurrence, or series of transactions or occurrences*" <u>and</u> their claims must present a common question of law or fact. <u>See id.</u> (emphasis added); <u>see also Ex parte Novartis</u>, 2007 Ala. LEXIS 101 at *7 (2007). "Misjoinder of parties occurs when a party fails to satisfy the conditions for permissive joinder under Rule 20(a)." <u>See In re Rezulin Products Liability Litigation</u>, 168 F. Supp. 2d 136, 145 (S.D.N.Y. 2001). The Alabama Supreme Court has instructed that "there is no absolute rule for determining what constitutes a 'series of transactions or occurrences' [under Rule 20]." <u>See Novartis</u>, 2007 Ala. LEXIS 101 at *7 (2007) (internal citations omitted). Instead, the issue is resolved on a case-by-case basis and rests largely within the discretion of the trial court. <u>See id.</u>

4.      Although Alabama appellate courts have applied Rule 20 in multi-plaintiff misjoinder contexts, <u>see, e.g.</u>, <u>Ex parte Alfa Life Insurance Corp.</u>, 923 So.2d 272 (Ala. 2005), they have not yet applied the rule in the specific context presented in this case. Federal courts, however, have consistently held – under Fed. R. Civ. P. 20, *which is identical to* ARCP 20 in relevant portion -- that pharmaceutical claims *do not satisfy joinder requirements.*[1]   For example, in <u>In re Rezulin Products Liability Litigation</u>, 168 F. Supp. 2d 136 (S.D.N.Y. 2001), the court analyzed the joinder of several plaintiffs in a product liability case involving claims over the use of Rezulin, a prescription medication. In concluding that the multi-plaintiff joinder was prohibited by Rule 20, the court observed as follows:

> Unlike cases involving a pure product defect, toxic tort cases raise more complicated issues of causation and exposure. This is not . . . a situation with an identical product defect allegedly causing identical results . . . which in turn

---

[1] <u>See Novartis</u>, 2007 Ala. LEXIS 101 at *7 n.2 (observing that "[f]ederal cases construing the Federal Rules of Civil Procedure are persuasive authority in construing the Alabama Rules of Civil Procedure, which were patterned after the Federal Rules of Civil Procedure").

2

caused different injuries depending on the circumstances of the particular accident.

The plaintiffs in [this case] allege a defect (or defects) the precise contours of which are unknown and which may have caused different results – not merely different injuries – in patients depending on such variables as exposure to the drug, the patient's physical state at the time of taking the drug, and a host of other known and unknown factors that must be considered at trial with respect to each individual plaintiff.

[The plaintiffs] do not allege that they received Rezulin from the same source or that they were exposed to Rezulin for similar periods of time. As in Simmons[v. Wyeth Laboratories, Inc.], they do not allege injuries specific to each of them so as to allow the Court to determine how many plaintiffs, if any, share injuries in common. Joinder "of several plaintiffs who have no connection to each other in no way promotes trial convenience or expedites the adjudication of asserted claims." For these reasons, [the] plaintiffs in [this case] are misjoined.

See Rezulin, 168 F. Supp. 2d at 146 quoting In re Diet Drugs Litig., 1999 U.S. Dist. LEXIS 11414 at (E.D. Pa. 1999) (concluding that "the claims of plaintiffs who have not purchased or received diet drugs from an identical source, such as a physician, hospital, or diet center, did not satisfy the transaction or occurrence requirement"); see also In re Orthopedic Bone Screw Products Liab. Litigation, 1995 U.S. Dist. LEXIS 10138 at **1-2 ("[J]oinder based on the belief that the same occurrence or transaction [requirement] is satisfied by the fact that claimants have the same or similar device of a defendant manufacturer implanted in or about their spine is . . . not a proper joinder."); Simmons v. Wyeth Laboratories, Inc., 1996 U.S. Dist. LEXIS 15950 (E.D. Pa. 1996) (joinder of plaintiffs alleging injury from use of contraceptive device was improper under Rule 20); Graziose v. American Home Products Corp., 202 F.R.D. 638, 640 (D. Nev. 2001) (concluding that multiple plaintiffs' claims of injury from PPA usage did not arise out of the same transaction or series of transactions where usage occurred at different times and where medications were obtained from different sources).[2]

---

[2]    State courts to address this issue have been in accord. In Janssen Pharmaceutica, Inc. v. Armond, 866 So. 2d at 1096, the Mississippi Supreme Court held that 56 plaintiffs who alleged injuries after taking the prescription

3

5.      Similarly, the federal judge overseeing the diet drugs multi-district litigation (MDL-1203) ordered the severance of numerous multi-plaintiff cases on the grounds that they failed to comport with the requirements of Rule 20 and impeded the administration of the litigation.  In doing so, the court observed the plaintiffs' claims were related only to the extent that they alleged injury over the use of diet drugs manufactured and marketed by the defendant(s).  Under such circumstances, "the grouping of such claims in a single action does not satisfy the transaction or occurrence requirement of Rule 20." See In re Diet Drugs Litig., 2004 U.S. Dist. LEXIS 9435 at *6 (E.D. Pa. 2004).[3]

6.      Vioxx cases are no different.  In McNaughton v. Merck, 2004 U.S. Dist. LEXIS 30287 (S.D.N.Y.), for example, the plaintiff sought to add by amendment 64 additional plaintiffs who allegedly suffered adverse health consequences from their alleged use of Vioxx.  The plaintiff argued that all of the proposed plaintiffs took Vioxx, were all improperly warned of the alleged dangers of the medication, and all suffered serious injuries as a result.  In rejecting plaintiffs' attempt to join together numerous individuals who had allegedly suffered injuries from taking Vioxx, the McNaughton court held: "[t]he mere existence of common questions of law or fact does not satisfy the same transaction or occurrence requirement." Id. at 3 (citing In re

---

drug Propulsid improperly joined their claims because the plaintiffs "ha[d] different medical histories; allege[d] different injuries at different times; ingested different amounts of Propulsid over different periods of time; [and] received different advice from 42 different doctors who, in turn, received different information about the risks associated with the medication via six different warning labels utilized during the time covered by the lawsuit, and who each had his or her own reasons to prescribe Propulsid for the patients." Id. at 1096.  Those differences meant that "a joint trial would require 56 different fact situations, 56 sets of medical histories, and 56 sets of witnesses and testimony, all in addition to addressing the myriad causation and other products liability issues.  Instead of fostering efficiency, such a trial would unavoidably confuse the jury and irretrievably prejudice the defendants." Id. at 1098.

[3]      See also In re Diet Drugs Litig., 2004 U.S. Dist. LEXIS 9431 (E.D. Pa. 2004); 2004 U.S. Dist. LEXIS 9432 (E.D. Pa. 2004); 2004 U.S. Dist. LEXIS 9433 (E.D. Pa. 2004); 2004 U.S. Dist. LEXIS 9434 (E.D. Pa. 2004); 2004 U.S. Dist. LEXIS 11326 (E.D. Pa. 2004); 2004 U.S. Dist. LEXIS 11327 (E.D. Pa. 2004); 2004 U.S. Dist. LEXIS 11328 (E.D. Pa. 2004); 2004 U.S. Dist. LEXIS 11329 (E.D. Pa. 2004); 2004 U.S. Dist. LEXIS 18399 (E.D. Pa. 2004).  These and other multi-plaintiff cases were severed pursuant to pretrial order 3370, where "to resolve misjoinder issues and to facilitate the efficient administration of actions" the court ordered the severance of all multi-plaintiff cases in the In re Diet Drugs multi-district litigation.

<u>Asbestos II Consol. Pretrial</u>, Nos. 86 C 1739, 89 C 452, 1989 WL 56181, at *1 (N.D. Ill. May 10, 1989)). To the contrary, the court found, plaintiffs' allegations that they "took Vioxx," were "improperly warned of the alleged dangers," and "suffered serious medical ills as a result" were insufficient to establish that their claims arose from the same transaction or occurrence. <u>Id</u>. Further, "variables such as exposure to the drug and the patient's physical state at the time of ingestion were issues relating to each specific individual." <u>Id</u>. at 4 n.2. For this reason, the court noted, a majority of "drug liability cases have held that related factual or legal issues, such as a similar injury caused by the same drug, are insufficient for Rule 20 joinder purposes." <u>Id</u>. at 3-4. <u>See also Graziose</u>, 202 F.R.D. at 641 (severing case involving diet drugs: "This case should be six separate cases. They will each involve separate discovery, separate claims, separate damages, separate defendants, separate medicine, separate physical conditions and history, and . . . separate witnesses.").

7.    The same concerns preclude joinder of plaintiffs' claims here. Plaintiffs were prescribed different dosages of Vioxx by different doctors for different conditions. They have different medical histories and susceptibilities to cardiovascular diseases. They took Vioxx *at* different times and *for* different periods of time. They allege different injuries for which they received different treatment by different doctors. Thus, it is abundantly clear that the claims of these Plaintiffs do not arise out of the same transaction, occurrence, or series of transactions or occurrences, and do not necessarily involve common questions of law or fact. To the contrary, each Plaintiff's claim differs in material and essential respects from the claims of other Plaintiffs.

8.    For example, Plaintiffs were all prescribed Vioxx at different times by different physicians. Plaintiff Herbert Sikes claims to have taken Vioxx over the course of six weeks in the spring of 2000 (before the VIGOR study), while Plaintiff Philip Thompson claims to have

first taken the medication in May of 2004. See Plaintiff Profile Forms, Exhibits H and I. Plaintiffs Mickey Grizzard and Wesley Calhoun claim they took 50mg tablets once per day, Plaintiffs Clifford Bailey and James Perry claim they took 25mg tablets twice a day, and the other four plaintiffs claim they took 25mg tablets once per day. See Plaintiff Profile Forms, Exhibits B-I hereto. Plaintiff Ruth Graves acknowledges gaps in her ingestion history, while the others claim consistent usage. See Plaintiff Profile Forms, Exhibits B-I hereto.

9.    Moreover, Plaintiffs' medical histories and personal habits vary. To begin with, they had different cardiovascular risk factors. Plaintiffs Herbert Sikes, James Perry, Phillip Thompson, and Mickey Grizzard have acknowledged family medical histories that include various cardiovascular diseases and events (e.g., heart attacks, congestive heart failure). Some Plaintiffs have never used tobacco products, some formerly did so, and some currently do. See Plaintiff Profile Forms, Exhibits B-I hereto. Some Plaintiffs claim that their use of Vioxx worsened pre-existing conditions, while others deny that. See Plaintiff Profile Forms, Exhibits B-I hereto. Several, but not all, have applied for and received social security disability benefits in account of various maladies. See Plaintiff Profile Forms, Exhibits B-I hereto. Wesley Calhoun has suffered from diabetes for 40 years, while Clifford Black has acknowledged pre-existing "heart problems," stroke, rheumatoid arthritis, and high blood pressure. See Plaintiff Profile Forms, Exhibits D and C.

10.    Perhaps most significantly, none of the Plaintiffs received Vioxx from the same health care provider. See Plaintiff Profile Forms, Exhibits B-I hereto. Existence of similar facts in pharmaceutical product liability litigation has factored strongly in favor of severance of multi-plaintiff cases. See, e.g., Rezulin, Diet Drugs, Bone Screw, Simmons; Graziose, McNaughton, supra.

6

11.    Moreover, Plaintiffs provide varying and dissimilar allegations as to the adverse events they allegedly suffered as a consequence of Vioxx usage.  <u>See</u> Plaintiff Profile Forms, Exhibits B-I (specifically Section I).  For example, Plaintiff Clifford Black claims that the medication caused him to suffer a stroke, while Ruth Graves alleges congestive heart failure, Clifford Bailey points to two heart catheterizations, and several others claim heart attacks.  <u>See</u> Plaintiff Profile Forms, Exhibits B-I (specifically Section I).  These adverse events occurred at different times, and the Plaintiffs were diagnosed and treated by different physicians and at different medical facilities.  <u>See</u> Plaintiff Profile Forms, Exhibits B-I.

12.    In addition to the dissimilarities in medical backgrounds, experiences with Vioxx, and alleged injuries, Plaintiffs' claim that the Defendants failed to warn physicians and consumers and indeed misrepresented certain health risks allegedly associated with Vioxx usage. <u>See</u> Complaint, ¶¶64, 72, 78-83, 88-89, 92-94.  Yet Plaintiffs claim differing degrees of exposure to written and oral information about Vioxx both before and during the time they allegedly used the medication.  <u>See</u> Plaintiff Profile Forms, Exhibits B-I (specifically Section 4).  Multi-plaintiff joinder has been specifically disallowed under similar circumstances:

> The questions of law and fact involved in each claim is [sic] also different.  The damages involved different people with different sets of facts.  The purchases, the use, the need, the motivation, the knowledge of the parties, the alleged reliance, apparently the exact nature of the injuries or damages, the potential for contributing factors, the relationships between spouses, are all questions peculiar to each claim.

> While there are potentially common issues of whether PPA is present, and whether it had an effect on the person who took the medication, or was the cause of some adverse reaction, these are not sufficiently common to warrant joinder.

>          . . .

> The only concrete similarity among the various Plaintiffs are [sic] that they (or their spouse) took a medicine containing PPA as an active ingredient, and they allegedly suffered an injury.  This is insufficient to justify joinder of these Plaintiffs and their claims.

7

See <u>Graziose</u>, 202 F.R.D. at 640.

13.    Notably, the question of improper joinder is not merely a procedural technicality — it raises serious questions of due process.  Because product liability cases involve highly individualized facts about each plaintiff's alleged exposure, warnings history and injury, it is simply impossible for juries to keep the facts straight and render a fair verdict as to each plaintiff. See <u>Lowe v. Norfolk & Western Ry. Co.</u>, 124 Ill. App. 3d 80, 105 (1984) (risk of confusion was too great to allow cases to be tried to one jury in dioxin litigation where "there were at least four legal theories of liability; there were at least three occasions upon which exposure could have occurred; there were 47 different possible reactions to exposure; and 47 different possible sets of consequences").  As a result, there is a high likelihood of both evidence spillover – <u>i.e.</u>, jurors would consider evidence that is only admissible as to one plaintiff in assessing the claims brought by the remaining plaintiffs – as well as a danger that plaintiffs will strengthen the facts of each plaintiff's claims by presenting a composite picture to the jury rather than three individual cases that stand and fall on their own merits.  See <u>Broussard v. Meineke Disc. Muffler Shops, Inc.</u>, 155 F.3d 331, 345 (4th Cir. 1998) (rejecting class action that would force defendants to "defend against a fictional composite"); <u>Armond v. Janssen Pharmaceutica</u>, 866 So.2d 1092, 1101 (Miss. 2004) (joinder is prejudicial because "the potential is that the collective evidence will be applied to all defendants"); <u>In re Ethyl Corp.</u>, 975 S.W.2d 606, 610 (Tex. 1998) ("A trial court has no discretion to deny separate trials when an injustice will result").  For this reason too, Plaintiffs' claims should be severed

8

14.     For the foregoing reasons, Merck respectfully urges this Court to enter an order severing the Plaintiffs' claims into eight separate actions as contemplated by Rule 21.

/s/ Ben C. Wilson
ROBERT C. (MIKE) BROCK
F. CHADWICK MORRISS
BEN C. WILSON
Attorneys for Defendants

OF COUNSEL:
Rushton, Stakely, Johnston, & Garrett, P.A.
184 Commerce Street
Montgomery, Alabama 36104
(334)206-3100 (t)
(334)831-0481 (f)

## CERTIFICATE OF SERVICE

I do hereby certify that I have filed the foregoing motion through the Alafile electronic filing service, which will serve the following counsel of record, on this the 14th day of June 2007:

James S. Hubbard
Thomas J. Knight
HUBBARD & KNIGHT
Post Office Drawer 1850
Anniston, Alabama 36202

/s/ Ben C. Wilson
OF COUNSEL



WCS&R

OCT 06 2006

RECEIVED

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, CLIFFORD BLACK,    )
WESLEY CALHOUN, CURTIS DEASON,    )
RUTH GRAVES, MICKEY GRIZZARD,    )
JIMMY PERRY, HERBERT STANLEY    )
SIKES and PHILLIP THOMPSON    )
)
  Plaintiffs,    )
)
vs.    )  CASE NUMBER: CV-06-145
)
MERCK & CO., INC., a foreign or    )
domestic Corporation, DAVID    )
SPARKMAN, KATHERINE HOLMES,    )
LORI LOVETT, SCOTT BARTLETT,    )
CORAL HARPER, MELISSA SANTIAGO,    )
HENRY MITCHAM, JERRY PHARR,    )
JASON DELK, CHARLES HENDERSON,    )
JAMES HOUSTON, JULIE MELTON,    )
JULIE HODGES, and MELISSA    )
BAUER, NATASHA WALKER-    )
MCGLOTHAN , RANDY WALLS, and the    )
defendants A, B, C, D, E, X & Z whether    )
singular or plural, being those persons,    )
firms or entities who or which    )
proximately caused or contributed to the)
Plaintiff's personal injury and Plaintiff's    )
other harm and the other    )
damages as complained of herein whose)
true names are unknown to the Plaintiffs)
but will be added by amendment when    )
correctly ascertained,    )
)
  Defendants.    )

Filed in Office

SEP 21 2006

KIM S. BENEFIELD
Clerk of Circuit Court

## <u>COMPLAINT</u>

  **NOW COME** the Plaintiffs, Clifford Bailey, Clifford Black, Wesley Calhoun,

Curtis Deason, Ruth Graves, Mickey Grizzard, Jimmy Perry, Herbert Stanley Sikes, and

Phillip Thompson, and state their claims for relief against defendants Merck & Co., Inc., a

Corporation (hereinafter generally referred to as Merck), Merck Corporation, a trade name

Exhibit A

M007C85110

or division of Merck & Co., Inc. David Sparkman, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Melissa Bauer, Natasha Walker-McGlothan, Randy Walls, and against defendants A, B, C, D, E and F, and X and Z, whether singular or plural, being those persons, firms or entities who or which proximately caused or contributed to the Plaintiff's personal injuries and the other damages as complained of herein whose true names are unknown to the Plaintiffs but will be added by amendment when correctly ascertained, with the claims being as follows:

## GENERAL AND JURISDICTIONAL ALLEGATIONS

1.      Plaintiffs, Clifford Bailey, Clifford Black, Wesley Calhoun, Curtis Deason, Ruth Graves, Mickey Grizzard, Jimmy Perry, Herbert Stanley Sikes, and Phillip Thompson, are resident citizens of the State of Alabama and of Randolph County. Defendants were severally the marketer, promoter, seller, manufacturer, distributor and entity which did manufacture, create, design, test, label, package, distribute, supply, market, sell, advertise, fail to warn, and otherwise handle and distribute the product, Vioxx. Each defendant does business in Alabama and in Randolph County, and at all times relevant each sold in Alabama and in Randolph County, the aforementioned drug, or is otherwise subject to this Court's jurisdiction. The defendants do business by agent in this state and county and have caused tortious injury in this state and county by manufacturing and selling a dangerous and defective product. Each defendant, acting directly or by agent, is legally responsible to Plaintiffs as a consequence of that defendants' (A) transacting any business in this state, (B) contracting to supply services or goods in this state, (C) causing tortious injury or

2

M007C65111

damage by an act or omission in this state, (D) causing tortious injury or damage in this state by an act or omission outside this state and the defendant regularly does or solicits business, or engages in any other persistent course of conduct or derives substantial revenue from goods used or consumed or services rendered in this state, (E) causing injury or damage in this state to a person by breach of warranty expressly or impliedly made in the sale of goods outside this state when the defendant might reasonably have expected such other person to use, consume, or be affected by the goods in this state, and the defendant also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state, and otherwise had or has some minimum contacts with this state and, under the circumstances, it is fair and reasonable to require the defendant to come to this state to defend an action. The amount in controversy in this civil action exceeds the jurisdictional minimum for the Circuit Courts. This Court has jurisdiction hereof both as to the subject matter and in personam.

2.     Plaintiffs brings this action to recover damages for personal injuries, restitution, refunds, and/or for equitable and declaratory relief against defendants Merck & Co., Inc., a Foreign Corporation, Merck Corporation, a trade name or division of Merck & Co., Inc., and Merck Pharmaceutical Division, a Division of Merck Corporation, (collectively referred to herein as, "Merck" or "defendants"), which developed, tested, designed, marketed, distributed, promoted and sold Vioxx. The defendants David Sparkman, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Melissa Bauer, Natasha Walker-McGlothan, and Randy Walls are,

3

M007C85112

or have been employees of defendant, Merck and are persons who are liable to Plaintiffs and whose conduct is described in detail elsewhere in this Complaint. These defendants are resident citizens of Alabama. These defendants, and other persons whose true names are unknown to the Plaintiffs, set about to sell and market Vioxx throughout the state of Alabama and in such a manner that their conduct was a substantial proximate cause of the injuries suffered by Plaintiffs Clifford Bailey, Clifford Black, Wesley Calhoun, Curtis Deason, Ruth Graves, Mickey Grizzard, Jimmy Perry, Herbert Stanley Sikes, and Phillip Thompson. Defendants A, B, C, D, E, F, X and Z, whether singular or plural, are those persons, firms or entities who or which proximately caused or contributed to the Plaintiffs' damages as complained of herein whose true names are unknown to the Plaintiffs but will be added by amendment when correctly ascertained. As used in this Complaint, the general word "defendants" includes, incorporates, and is defined to mean, not only the named defendants, but also defendants A, B, C, D, E, F, X and Z, being those persons, firms or entities who or which proximately caused or contributed to the Plaintiffs' personal injuries and the other damages as complained of herein whose true names are unknown to the Plaintiffs but will be added by amendment when correctly ascertained.

3.     Vioxx has been associated with heart attacks, strokes and deaths, including cases of fatal cardiovascular events.  Vioxx was recalled and removed from the market because it was unreasonably dangerous and defective.

4.     Excess deaths and cardiovascular events, hypertension, edema, kidney damage, aseptic meningitis, and slow healing of bone fractures are also associated with Vioxx.

5.     The relief sought in this action are actions by the court to (1) provide

4

MO07C85113

damages for Plaintiffs' personal injuries, (2) reimburse monies paid for the recalled product, (3) otherwise compensate Plaintiffs, a consumer of Vioxx who has suffered the injuries described elsewhere in this Complaint, (4) to provide other benefits to which the Plaintiffs are entitled under the laws of the State of Alabama, and (5) the other relief sought in this Complaint.

## PARTIES TO THIS CIVIL ACTION

### PARTY Plaintiffs

6.      Plaintiffs, Clifford Bailey, Clifford Black, Wesley Calhoun, Curtis Deason, Ruth Graves, Mickey Grizzard, Jimmy Perry, Herbert Stanley Sikes, and Phillip Thompson, are resident citizens of the State of Alabama and of Randolph County.    Plaintiffs are residents of this county who prescribed, purchased and used Vioxx.  Plaintiffs, Clifford Bailey, Clifford Black, Wesley Calhoun, Curtis Deason, Ruth Graves, Mickey Grizzard, Jimmy Perry, Herbert Stanley Sikes, and Phillip Thompson, were prescribed and ingested Vioxx regularly after being prescribed the said drug by his physician.  Plaintiffs suffered personal injuries as a proximate result of the effects of his ingestion of Vioxx.  Plaintiffs experienced symptoms of Vioxx-induced cardiovascular events, suffered personal injury from the product defect in Vioxx and were at increased risk for developing further complications from such condition all as a proximate result of his ingestion of Vioxx.

7.      Plaintiffs, Clifford Bailey, Clifford Black, Wesley Calhoun, Curtis Deason, Ruth Graves, Mickey Grizzard, Jimmy Perry, Herbert Stanley Sikes, and Phillip Thompson were prescribed and  consumed the product at the direction of their physicians in the State

5

M007C85114

of Alabama and in Randolph County.

**PARTIES DEFENDANT**

8.     Defendant, Merck & Co., Inc., is a corporation headquartered and with its principal place of business in Whitehouse Station, New Jersey. Merck & Co., Inc. manufactures, marketed and distributed Vioxx throughout the world, including Alabama. Defendants, David Sparkman, Natasha Walker-McGlothan, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Melissa Bauer, Natasha Walker-McGlothan, and Randy Walls, are persons employed by or associated with defendant, Merck, who are, with other Merck employees, the persons guilty of the conduct, the acts and omissions, specifically described and set forth in detail in this Complaint.

9.     On information and belief defendants David Sparkman, Natasha Walker-McGlothan, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Natasha Walker-McGlothan, Randy Walls, and Melissa Bauer, are resident citizens of the State of Alabama.

10.     Defendant, X is a corporation or other entity organized under the laws of the state of Alabama and having its principal place of business in the state of Alabama. This entity was or acted in concert with the defendants and is otherwise liable to Plaintiffs as described herein.

11.     Defendant, Z is a corporation or other entity organized under the laws of a state other than Alabama and having its principal place of business in a state other than Alabama. This entity was or acted in concert with the defendants and is otherwise liable

M007C85115

to Plaintiffs as described herein.

12.    At all times relevant hereto, defendants, including defendants A, B, C, D, E, F, X and Z whose true names are unknown to the Plaintiffs but will be added by amendment when correctly ascertained, were engaged in the business of developing, designing, marketing, distributing, promoting, testing, providing warnings concerning, labeling and/or selling the pharmaceutical Vioxx. On information and belief, defendants Merck Pharmaceutical Division and Merck Corporation otherwise were in control of the development, design, assembly, manufacture, warnings concerning, marketing and with others, the sale of Vioxx. As used in this Complaint, the general word "defendants" includes, incorporates, and is defined to mean, not only the named defendants, but also defendants A, B, C, D, E, F, X and Z, being those persons, firms or entities who or which proximately caused or contributed to the Plaintiff's personal injuries and the other damages as complained of herein whose true names are unknown to the Plaintiffs but will be added by amendment when correctly ascertained.

## JURISDICTION AND VENUE

13.    This Court has general subject matter jurisdiction and in personal jurisdiction on grounds as shown above.

14.    Venue is proper in this county in that the substantial relevant facts occurred in this county.

## FACTUAL ALLEGATIONS

15. Vioxx is the brand name of Rofecoxib, one of the classes of drugs called "Cox-II

M007C85116

inhibitors," which are supposed to work to reduce inflammation and pain by providing analgesic and anti-inflammatory benefits to persons with, among other conditions, arthritis, and muscle pain.

16.   Vioxx has effects on prostaglandins at inflammatory sites, and on prostacyclin, vasodilators and  inhibitors of platelet aggregation.

17.    Vioxx, manufactured by Merck & Co., has a demonstrated risk that is or was misrepresented by Merck and benefits that were exaggerated and oversold to the public and physicians through an aggressive marketing campaign, while risks were purposefully hidden. Merck has profited tremendously from its misconduct described in this Complaint. Merck has been, with regard to Vioxx, over-promoting drugs that are far more expensive than older versions, but no better at relieving pain, while containing unreasonable risks of harm.

18.    When Vioxx (Rofecoxib) and Celebrex (Celecoxib), a new kind of pain medication known as Cox-2 inhibitors, were introduced in 1999, manufacturers and their supporters hailed them as a kind of "super-aspirin" that lacked the stomach-injuring side effects of the older non steroidal anti-inflammatory drugs (NSAIDs). But valid questions soon arose about the efficacy and safety of Cox-2 drugs. Celebrex is discussed herein because of the chemical similarity, and the notice to Merck provided by Celebrex events. Pharmacia Corporation makes Celebrex, which it describes as "a major advance in the treatment of the debilitating diseases osteoarthritis and rheumatoid arthritis, because of its efficacy and excellent gastrointestinal safety profile."

19.    The drugs, approved to treat arthritis, menstrual pain and "acute" pain in adults, have been heavily marketed to both doctors and consumers: Merck as to Vioxx,

8

M007C85117

which ran ads featuring former Olympic figure skater Dorothy Hamill, and spent over $160 million on consumer advertising in 2000; Celebrex spent almost $80 million, according to AdWatch, the health policy arm of the Henry Kaiser Family Foundation. The campaigns worked: In 2001, Vioxx, the 13th most prescribed drug in the United States, had worldwide sales of $2.6 billion.

20.     Older NSAIDs, such as ibuprofen, Naproxen and Diclofenac, work by inhibiting the two types of cyclooxygenase enzyme, one of which causes inflammation and thus pain. The Cox-1 enzyme, however, helps maintain the muscle surface of the gastrointestinal (GI) tract, so suppressing the enzyme can increase perforations, ulcers and bleeding. Vioxx, Celebrex and Bextra (Valdecoxib, introduced by G.D. Searle & Co. in 2001) suppress only the second enzyme, supposedly leaving the first alone to protect the GI tract.

21.     Merck's Vioxx Gastrointestinal Outcomes Research Study (VIGOR), performed from January 6, 1999 through March 17, 2000, involved about 8,000 participants and assessed only the drug's effects on the stomach; the company ordered no end-point analyses for effects on the cardiovascular system.

22.     The objectives of the VIGOR study were to (1) "determine the relative risk of confirmed PUB (Perforation, Ulcers, Bleeding) in patients taking 50mg of Vioxx daily compared to patients in the group taking Naproxen 1000mg/day," and (2) "study the safety and tolerability of Vioxx in patients with rheumatoid arthritis."

23.     The VIGOR data revealed that: (a) patients on Vioxx were five times more likely to suffer a heart attack as compared to patients on Naproxen; and (b) patients on Vioxx were 2.3 times more likely to suffer serious cardiovascular disease (including heart

M007C85118

attacks, ischemic stroke, unstable angina and sudden unexplained death) as compared to patients on Naproxen.

24.     The study concluded that Vioxx takers had a lower rate of GI distress than those taking naproxen. The researchers noted, "the incidence of myocardial infarction was lower among patients in the naproxen group than among those in the Rofecoxib group," but found "the overall mortality rate and the rate of death from cardiovascular causes were similar in the two groups." They drew conclusions only about clinical upper gastrointestinal events, bleeding and ulcers. Stroke is caused by Vioxx with the same mechanism as myocardial infarction.

25.  On March 27, 2000, Merck issued a press release stating that Vioxx caused fewer digestive tract problems than Naproxen.  The press release further stated that the VIGOR results did not show that Vioxx caused cardiovascular problems, but that Naproxen protected against them.

26.     After the VIGOR results were released, the FDA said Merck had minimized the fourfold to fivefold increase in heart attacks among study participants taking Vioxx compared with those taking Naproxen. It found the company's explanation that Vioxx did not increase the risk of heart attacks, but instead, Naproxen protected those taking it from heart attacks because the drug can thin the blood, like aspirin unacceptable. In a September 2001 warning letter to Merck, the FDA wrote, "You fail to disclose that your explanation is hypothetical, has not been demonstrated by substantial evidence, and that there is another reasonable explanation: that Vioxx may have pro-thrombotic properties."

27.     While Vioxx and Celebrex have been marketed as safer than traditional NSAIDs because of their stomach-protecting propensity, reports of serious side effects

10

M007C85119

have now emerged. The defendants knew the salient facts concerning their drug long before the discovery of dangers by outside researchers, but ignored or concealed risks and dangers and continued to misrepresent the safety (or lack of safety) of Vioxx. In June 2000, a research team led by A. Whelton noted in a presentation to the European United League Against Rheumatism (EULAR), of which Merck is a member and corporate sponsor, that Vioxx use resulted in a statistically significant increase in hypertension, myocardial infarction, and stroke. Not only did Merck do nothing to further accurately publish these studies, or warn consumers, but in August 2000, it denied the results with respect to hypertension in the official publication of the American Pharmaceutical Association, "Pharmacy Today." The medical journal,"The Lancet," published a study associating Vioxx with kidney failure, and other studies have associated both Vioxx and Celebrex with heart problems, kidney damage, aseptic meningitis and slow healing of bone fractures.

28.    A metastudy by the Cleveland Clinic published in the Journal of the American Medical Association analyzed data from two major studies funded by the drug companies and two smaller ones, all for cardiovascular risks. (Debabrata Mukherjee et al., Risk of Cardiovascular Events Associated with Selective Cox-2 Inhibitors, 286 JAMA 954 (2001).) It found that neither Pharmacia/Pfizer nor Merck had identified and studied cardiovascular risks for their products. The annualized heart attack rates for patients taking Vioxx or Celebrex, the researchers found, were "significantly higher" than those in a group taking placebos. "The available data raise a cautionary flag about the risk of cardiovascular events with Cox-2 inhibitors," they concluded. Defendants set about to discredit and deny these studies.

11

M007C85120

29.    The FDA, which lists Vioxx and Celebrex information on the "Hot Topics" section of its Web site, required both drugs to carry the same stomach-upset and bleeding warnings ibuprofen and Naproxen had when the agency approved them in 1999.

30.    After the CLASS results, the FDA found that Celebrex is just as likely to cause ulcers as older NSAIDs and is no better at reducing pain or inflammation than ibuprofen. In June 2002, it mandated a new label for the drug, one without any claim that it is safer for the stomach than other NSAIDs.

31.    Because of information provided by Merck, the agency did allow Merck to change its Vioxx label to claim it has a lower risk than older NSAIDs of causing ulcers, gastrointestinal bleeding and other digestive-tract complications.

32.    As early as November 1999, an FDA memo stated that the board monitoring the VIGOR study was concerned about "excess deaths and cardiovascular events experienced in Group A [Vioxx group] compared to Group B [Naproxen]." In March 2002, the FDA reported that five people taking Vioxx had aseptic meningitis, an inflammation of membranes on the brain and spine. In April 2002, after the agency warned Merck that it had misrepresented the drug's safety and minimized potentially serious cardiovascular complications found in VIGOR, it required the company to include a warning of cardiovascular risks on the Vioxx label.

33.    The new warnings contained information long held by Merck, but consistent with later pattern and practice, concealed from consumers and their physicians. The new warnings included:

34.    "In VIGOR, a study in 8076 patients (mean age 58; VIOXX n=4047, Naproxen n=4029) with a median duration of exposure of 9 months, the risk of developing a serious

12

M007C85121

cardiovascular thrombotic event was significantly higher in patients treated with VIOXX 50 mg once daily (n=45) as compared to patients treated with Naproxen 500 mg twice daily (n=19)." ...

35.    "In a placebo-controlled database derived from 2 studies with a total 2142 elderly patients (mean age 75; VIOXX n=1067, placebo n=1075 with a median duration of exposure of approximately 14 months, the number of patients with serious cardiovascular thrombotic events was 21 vs. 35 for patients treated with VIOXX (Rofecoxib tablets and oral suspension) 25 mg once daily versus placebo, respectively. In these same 2 placebo-controlled studies, mortality due to cardiovascular thrombotic events was 8 vs. 3 for VIOXX versus placebo, respectively."

36.    Merck has repeatedly blamed its customers' cardiovascular events on underlying conditions, to avoid blaming Vioxx. The prestigious New England Journal of Medicine later stated in regard to "the implications of these observations with respect to selective cyclooxygenase-2 inhibitors": "...thrombosis would be expected to occur in patients who are already at increased risk because of other underlying conditions" and "In the VIGOR trial... The rates of nonfatal myocardial infarction, nonfatal stroke, and death from any vascular event were higher in the Rofecoxib group than in the naproxen group (0.8 percent vs. 0.4 percent, P<0.05). This difference was largely due to a difference in the incidence of myocardial infarction (0.4 percent in the Rofecoxib group vs. 0.1 percent in the naproxen group, P<0.01). In contrast, in the CLASS trial, in which 21 percent of the patients took aspirin, there was no significant difference the treatment groups in the incidence of major cardiovascular events." NEJM Volume 345:433-442 August 9, 2001 Number 6.

13

M007C85122

37.     In 2002 and 2003, unknown to Plaintiffs and their doctors, Merck refused requests from the American Heart Association the National Stroke Association and the Arthritis Foundation that it conduct additional safety studies, claiming that Vioxx was safe and that it did not plan to conduct any such study.

38.     On October 30, 2003, an article in The Wall Street Journal, unknown to Plaintiffs or their doctors, reported that another study sponsored by Merck, and presented at the annual meeting of the American College of Rheumatology, confirmed an increased risk of heart attacks in patients taking Vioxx. According to the Wall Street Journal, within the first 30 days of taking Vioxx, the risk of a heart attack was increased by 30% as compared to Celebrex. This study looked at the records of 54,475 Medicare patients, all of whom were over 65, and was described by the eminent Dr. Eric Topol as "the best study to date."

39.     In 2003, unknown to Plaintiffs and their doctors, Dr. Jerry Avorn, a Divisional Director at Brigham and Women's Hospital in Boston and colleague Dr. Daniel H. Solomon reported in a Merck-financed study based on a survey of patient records, that Vioxx, even at some moderate dosages, increased cardiovascular risks.

40.     Merck disputed the findings of the Avorn-Solomon study, and the name of the Merck epidemiologist who had contributed to the study was removed from the report before it was published in a medical journal.

41.     From January through June, 2004, Merck spent an estimated $45 million on Vioxx advertising.

42.     In May 2004, the results of a study funded by the Canadian government were published in "The Lancet." The study reviewed data from 1.3 million elderly patients

14

M007C85123

(66 and older) taking Vioxx, Celebrex, a common arthritis pain pill (NSAID) or no medication. The records from approximately 130,000 persons randomly reviewed from the population base found that persons taking Vioxx had an 80% increase in hospital admissions for congestive heart failure within one year of taking Vioxx when compared to persons taking NSAIDS.

43.     On August 25, 2004, still unknown to Plaintiffs and thier doctors, Dr. David Graham, Associate Director for Science in the FDA's Office of Drug Safety, presented results of a database analysis of 1.4 million patients that showed Vioxx users are more likely to suffer a heart attack or sudden cardiac death than those taking Celebrex or an older NSAID.

44.     Despite the foregoing, on August 26, 2004, Merck continued to represent to physicians and consumers that Vioxx was safe, and that any cardiovascular and/or cardiothrombotic side effects were not associated with the drug. Merck stated in a press release that "Merck stands behind the efficacy, overall safety and cardiovascular safety of Vioxx."

45.     On September 30, 2004, Merck finally withdrew Vioxx from the market after basically admitting to additional information from its own studies that study participants taking Vioxx after 18 months had twice as high a risk of cardiovascular events as the placebo group.

46.     Defendants, David Sparkman, Natasha Walker-McGlothan, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Natasha Walker-McGlothan, Randy Walls, and Melissa Bauer, being the professional

15

M007C85124

staff of Merck for the sales of Merck's products in the state of Alabama were aware of all of the facts, points and details relevant to the dangers of Vioxx. Knowing these facts, the defendants had a duty to inform, immediately, the doctors to whom they had given samples or otherwise sold Vioxx or promoted Vioxx to such doctors and other persons, of the important facts described in this complaint. This duty was fully applicable to the said defendants, David Sparkman, Natasha Walker-McGlothan, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Natasha Walker-McGlothan, Randy Walls, and Melissa Bauer, and their employer, Merck, prior to the time that the Plaintiffs' use of Vioxx. The said defendants David Sparkman, Natasha Walker-McGlothan, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Natasha Walker-McGlothan, Randy Walls, and Melissa Bauer, and defendant Merck, had a full duty, obligation, and responsibility, to advise and warn, and to disclose that the facts that they had previously provided were no longer true or correct.

47.    The said defendants, David Sparkman, Natasha Walker-McGlothan, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Natasha Walker-McGlothan, Randy Walls, and Melissa Bauer, and their employer, Merck, were both negligent and wanton in their failure to perform their duties and obligations under applicable law to advise all customers of Merck taking Vioxx directly or through their physicians of the dangers now known and disclosed, but said defendants and each and every one of them failed in his said duty imposed by law. The said defendants,

16

M007C85125

David Sparkman, Natasha Walker-McGlothan, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Natasha Walker-McGlothan, Randy Walls, and Melissa Bauer, and their employer, Merck, failed to exercise ordinary and reasonable care in the performance of their job functions and duties.

48.    The said defendants David Sparkman, Natasha Walker-McGlothan, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Natasha Walker-McGlothan, Randy Walls, and Melissa Bauer,  and their employer, Merck, knew the foregoing true facts concerning Vioxx, prior to their representations concerning the safety and efficacy of Vioxx, but nevertheless, continued to represent that the product was safe and effective. The true facts, as indicated above, were that the said drug, Vioxx, was unreasonably unsafe and unreasonably dangerous, but the said individual defendants and their employer, Merck, willfully misrepresented the facts to physicians and others in the state of Alabama with the plan, design and intent to market the dangerous and defective drug notwithstanding the knowledge of the dangers and defects, this conduct constitutes actionable fraud and deceit, and these misrepresentations were relied upon by the medical community, physicians, the public and the Plaintiffs to the detriment of the Plaintiffs in particular, and the customers of Merck, receiving Vioxx in general. The actions of defendants and others combined and concurred to constitute a conspiracy for which they are civilly liable.

49.    The acts and omissions of the defendants as described in this Complaint constitute fraudulent suppression of material facts sufficient to toll the running of any and all statutes of limitation, notice provisions, or other similar laws or requirements.  Further,

M007C85126

the pendency of class actions describing and designating persons in the class including and occupied by the Plaintiffs herein, constitutes sufficient commencement of an action to toll the statutes of limitations and other notice provisions under applicable law.

50.     The defendants, David Sparkman, Natasha Walker-McGlothan, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Natasha Walker-McGlothan, Randy Walls, and Melissa Bauer, and their employer, Merck, misrepresented material facts, and fraudulently suppressed material facts, including but not limited to those detailed in this complaint, to the medical community in general, the Alabama physicians, and the Plaintiffs' treating physicians in particular, with regard to the safety and effectiveness of the drug, Vioxx, which material misrepresentations and fraudulent suppressions, proximately caused the injuries, losses, and damages specified elsewhere in this complaint.   The defendants, David Sparkman, Natasha Walker-McGlothan, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Natasha Walker-McGlothan, Randy Walls, and Melissa Bauer, and their employer, Merck, , personally visited and otherwise called on Plaintiffs' prescribing physicians, and conspired and combined among themselves and with others, to cause the Plaintiffs' prescribing physicians to believe that Vioxx was safe and effective, when in fact it was not safe or effective to sufficiently outweigh the unreasonable risks of harm posed by Vioxx and the said defendants otherwise committed actionable fraud, misrepresentation, and fraudulent suppression which proximately caused the injuries to the Plaintiffs described elsewhere herein.  Plaintiffs did not know, and could not have known, that Vioxx was unsafe or that it had caused their injuries and damages, until after not

18

M007C85127

earlier than September 30, 2004. Then data was released November 13, 2005, at the *American Heart Association* conference in Dallas, Texas, that was a study of 58,000 patients, which showed that heart disease patients taking 25 mg of Vioxx per day were five times as likely to die as patients not taking the drug. Defendants continued to conceal, suppress and secrete, important, relevant and crucial material information held by them and not by others.

51.    While today Merck warns of "heart attacks and similar serious events have been reported in patients taking Vioxx" at the time this information was hidden and concealed, and representations were made by the defendants that indicated that the product was, instead, safe and effective.

52.    As a result of the reliance by Plaintiffs, the medical community, and the public generally on the representations and statements of the defendants, including the individual defendants herein and Merck, the Plaintiffs took and consumed Vioxx. As a proximate result and consequence of his ingestion of Vioxx and as a direct and proximate consequence and result of the acts and omissions of the defendants including the individual defendants as described herein, Plaintiffs were injured.

53.    Merck was well aware of the Pharmacia-sponsored Celebrex Long-Acting Safety Study (CLASS), also involving about 8,000 arthritis sufferers, compared that drug to the older NSAIDs ibuprofen and diclofenac to determine whether it was less harmful to the stomach. In a JAMA article in 2000, the researchers published data accumulated over six months and concluded that Celebrex caused fewer ulcers than the older drugs. (Fred E. Silverstein et al., Gastrointestinal Toxicity with Celecoxib vs. Nonsteroidal Anti-inflammatory Drugs for Osteoarthritis and Rheumatoid Arthritis: The CLASS Study: A Randomized Controlled Trial, 284 JAMA 1247 (2000). However, researchers at that point

19

M007C85128

had 12 months of data that, when analyzed as a whole, showed no significant difference.

54.    The FDA said the CLASS study "did not show a safety advantage in upper gastrointestinal events for Celebrex compared to either ibuprofen or diclofenac." Because some of the study participants were also taking aspirin, which does affect the stomach, some analysts say the results may have been skewed. The company maintained that among those not taking aspirin, the rate of ulcers was lower in Celebrex takers. Again, Celebrex is relevant to this case because of the knowledge and notice provided to Merck and its defendant-employees.

55.    In a June 2002 editorial, the British Medical Journal said the Celebrex study misled consumers with "overoptimistic" data. It said the study was "seriously biased" because the complete results "clearly contradict[ed] the published conclusions" and showed a similar number of stomach complications in all patients, whether they took Celebrex or the older pain relievers.

56.    It has been reported that a substantial number of deaths worldwide have been associated with Vioxx.

57.    Plaintiffs seek, in addition to damages for personal injury, refunds of and restitution for monies paid as a result of their purchase of Vioxx, as well as all other ascertainable economic loss that occurred as a result of defendants' wrongful and improper conduct in connection with the manufacture, marketing, distribution, testing, promotion, labeling and/or selling of Vioxx. Plaintiffs therefore seek to have the defendants return the monies unlawfully and inappropriately acquired by them as a result of their sale of Vioxx.

58.    Plaintiffs seek to have defendants fully disclose and account for, and effect the accumulation and analysis of relevant medical information on Vioxx, including, but not

20

M007C85129

limited to, the results of all appropriate diagnostic tests performed as part of a medical research and for medical information concerning all persons as gathered, maintained and analyzed, and for medical research concerning the incidence, prevalence, natural course and history, diagnosis and treatment of Vioxx-induced personal injuries, and all this should be disclosed to Plaintiffs in this litigation.

## PLAINTIFFS' CLAIMS FOR RELIEF
## COUNT I

### PRODUCTS LIABILITY UNDER AEMLD AND STRICT LIABILITY PURSUANT TO §402A OF THE RESTATEMENT (SECOND) OF TORTS

59.    Plaintiffs incorporate by reference and re-alleges, as if fully set forth herein, each and every allegation contained in the other paragraphs of this Complaint, wherever contained.

60.    Defendants are manufacturers and/or suppliers of Vioxx and each had an opportunity to inspect the product which was superior to the knowledge or opportunity of the consumer's herein. The defendants were engaged in the business of manufacturing, creating, designing, testing, labeling, sterilizing, packaging, supplying, marketing, selling, advertising, warning and otherwise distributing Vioxx in interstate commerce, which they sold and distributed throughout the world, including the State of Alabama, to Plaintiffs.

61.    The Vioxx product supplied, distributed and manufactured by Merck, and A,

21

M007C85130

B, C, D and E and placed in the stream of commerce by defendants, and others were defective and unreasonably dangerous in design, manufacture and/or formulation in that, when it left the hands of the defendants as manufacturer and/or suppliers, the foreseeable risks exceeded the benefits associated with the design or formulation and they were unreasonably dangerous and defective. Plaintiffs show that they suffered injuries and damages as a result of the sale by defendants who sold the product in defective condition unreasonably dangerous to the ultimate consumer, and all the sellers were engaged in the business of selling such product and product was expected to and did reach the user or consumer without substantial change in the condition in which it is sold. The Plaintiffs were using Vioxx in a manner for which it was intended or in a reasonably foreseeable manner.

62.    Vioxx was expected to and did reach the Plaintiffs without substantial change in its condition as manufactured, created, designed, tested, labeled, sterilized, packaged, supplied, marketed, sold, advertised, undertook to warn, and otherwise distributed.

63.    The Vioxx manufactured by Merck, and/or A, B, C, D and E and supplied by them was defective in manufacture, design or formulation, in that, when it left the hands of the manufacturer and/or suppliers, it was unreasonably dangerous, in that it not meet the reasonable expectations of the ordinary consumer as to safety, and was more dangerous than an ordinary consumer would expect and more dangerous than other pain relievers. The Plaintiffs show  that the product was unreasonably dangerous when it left the defendants' control, that it was substantially unaltered when the Plaintiffs used it, and that it proximately caused the Plaintiffs' injuries. The Plaintiffs were not aware of, and in the exercise of reasonable caution could not have discovered, the dangerous nature of Vioxx.

64.    The Vioxx manufactured and/or supplied by defendants was also defective

22

M007C85131

due to inadequate warning or instruction because the manufacturers and suppliers knew or should have known that the products created an unreasonable risk of harm to consumers and the defendants failed to adequately warn of said risks. The defendants' Vioxx caused increased risks of excess deaths and cardiovascular events, as well as kidney damage, aseptic meningitis, and slow healing of bone fractures upon consumption, and therefore constitute a product unreasonably dangerous for normal use due to their defective design, defective manufacture, and the defendants misrepresentations and inadequate facts disclosed to the Plaintiffs and their doctors. The Vioxx manufactured and/or supplied by defendants was defective due to inadequate care in marketing and post-marketing warnings or instruction because, after the defendants knew or should have known of the risk of injury from Vioxx and/or combination use of these drugs, they failed to provide adequate warnings to users or consumers of the product and continued to promote the product.

65.    As a direct and proximate result of defendants' manufacturing, creating, designing, testing, labeling, sterilizing, packaging, supplying, marketing, selling, advertising, warning, and otherwise distributing Vioxx in interstate commerce, Plaintiffs have suffered the injuries described elsewhere in this Complaint and was at an increased risk of and did in fact suffer by developing and suffering a cardiovascular event and has suffered damages and Plaintiffs are entitled to compensatory and punitive damages in an amount just and proper under law for personal injuries and other recoverable damages.

66.    The defendants, therefore, are liable to the Plaintiffs. The conduct of Merck and A, B, C, D and E was gross, willful, wanton, oppressive, intentional, burdensome, and otherwise such as to justify the imposition of punitive damages under Alabama law. Additionally, defendants' conduct was so outrageous as to constitute ill will, bad motive and

M007C8S132

reckless indifference to the interests of the consumers. The Plaintiffs, therefore, are entitled to punitive damages. All of the defendants are liable to Plaintiffs jointly and severally for all general, special and other relief to which the Plaintiffs are entitled by law. As a consequence of the producing cause and as a legal result of the dangerous and defective condition of Vioxx as sold, developed, designed, marketed, manufactured and/or supplied by defendants, and as a direct and legal result of the tort, AEMLD violation, negligence and wantonness, carelessness, other wrongdoing and action(s) of defendants described herein:

67.    Plaintiffs were injured in their health, strength and activity and suffered injuries to body and mind;

68.    Plaintiffs have sustained economic loss, loss of earnings and diminution or loss of earning capacity, the exact amount of which is presently unknown;

69.    Plaintiffs required reasonable and necessary health care, attention and services and did incur medical, health, incidental and related expenses. As a direct and proximate result of defendants' manufacturing, creating, designing, testing, labeling, sterilizing, packaging, supplying, marketing, selling, advertising, warning, and otherwise distributing Vioxx in interstate commerce, Plaintiffs have suffered the injuries described elsewhere in this Complaint and Plaintiffs have suffered damages and are entitled to recover compensatory and punitive damages in an amount just and proper under law for personal injuries and other recoverable damages.

## COUNT II

### NEGLIGENCE AND WANTONNESS

70.    Plaintiffs incorporate by reference and reallege, as if fully set forth herein, each and every allegation contained in the other paragraphs of this Complaint, wherever

M007C85133

contained.

71.    It was the duty of the defendants to use reasonable care in the manufacturing, creating, designing, testing, labeling, sterilizing, packaging, supplying, marketing, selling, advertising, warning and otherwise distributing Vioxx.

72.    Contrary to their duty, the said defendants were guilty of one or more of the following careless, negligent and wanton acts and/or omissions:

Said defendants failed adequately and properly to test, study and inspect Vioxx so as to ascertain whether or not it was safe and proper for the purpose for which it was designed, manufactured and sold;

Failed to utilize and/or implement a reasonably safe design in the manufacture of Vioxx;

Failed to manufacture Vioxx in a reasonably safe condition for which it was intended;

Failed to adequately and properly warn Plaintiffs purchasing Vioxx of the risks of complications when used in a manner for which it was intended;

Failed to adequately and properly warn Plaintiffs purchasing Vioxx of the risks of diseases when used in a manner for which it was intended;

Failed to adequately and properly label Vioxx so as to warn the Plaintiffs of the risks of complications;

Failed to adequately and properly label Vioxx so as to fairly and sufficiently warn the Plaintiffs of the risks of excess deaths and cardiovascular events as well as kidney damage, aseptic meningitis, and slow healing of bone fractures;

Manufactured Vioxx which constituted a hazard to health;

Manufactured Vioxx which caused adverse side effects;

M007C65134

Sold and pushed Vioxx and handed out samples thereof while misrepresenting through word, deed, actions, distributing printed and other materials, all of the most important information concerning the dangers of Vioxx including especially the danger posed of sudden cardiovascular death; and were otherwise careless, negligent and wanton.

73.     As a direct and proximate result of defendants' manufacturing, creating, designing, testing, labeling, sterilizing, packaging, supplying, marketing, selling, advertising, warning, and otherwise distributing Vioxx in interstate commerce, Plaintiffs have suffered the injuries described elsewhere in this Complaint and Plaintiffs have suffered damages and are entitled to recover compensatory and punitive damages in an amount just and proper under law for personal injury and other recoverable damages.

## COUNT III

### NEGLIGENCE PER SE

74.     Plaintiffs incorporate by reference and reallege, as if fully set forth herein, each and every allegation contained in the other paragraphs of this Complaint, wherever contained.

75.     Defendants Merck, David Sparkman, Natasha Walker-McGlothan, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Natasha Walker-McGlothan, Randy Walls, and Melissa Bauer, and the fictitious defendants, had an obligation not to violate the law in the manufacture, design, formulation, compounding, testing, production, processing, assembly, inspection, research, distribution, marketing, labeling, packaging, preparation for use, sale and warning of the risks and dangers of Vioxx.

M007C85135

76.    Defendants, Merck, David Sparkman, Natasha Walker-McGlothan, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Natasha Walker-McGlothan, Randy Walls, and Melissa Bauer, and the fictitious defendants, violated Alabama Code §20-1-26, §20-1-27, and §8-19-5, et seq., related amendments and codes and regulations provided there under, and other applicable laws, statutes and regulations. No action is brought herein for violation of federal statutes, but claim is made for violation of the foregoing and any other state's applicable laws.

77.    Plaintiffs, as purchaser and consumer of Vioxx, are within the class of persons the state statutes and regulations described above are designed to protect and Plaintiffs' injuries are the type of harm these statutes are designed to prevent.

78.    The defendants, Merck, David Sparkman, Natasha Walker-McGlothan, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Natasha Walker-McGlothan, Randy Walls, and Melissa Bauer, and the fictitious defendants made false and fraudulent misrepresentations to physicians, Plaintiffs, and the general public that Vioxx is or was safe, effective, fit for its use as designated, and that it's components are not hazardous to the health of users all in violation of Alabama Code § 20-1-26 and 20-1-27 and other applicable law. defendants' acts constitute a breach of duty subjecting defendants to civil liability for all damages arising therefrom, under theories of negligence per se. Alabama Code §20-1-27 states that "No person shall engage in any of the following activities within this state:(1) Manufacture for sale herein, have in his or his possession with intent to sell, offer or expose for sale, sell, or deliver any article of food or drugs which is adulterated or misbranded within the meaning of this division."

27

M007C85136

79.    Said defendants failed to meet the standard of care set by the following statutes and regulations, which were intended for benefit of individuals such as Plaintiffs, making defendants negligent per se:

80.    The defendants made false and fraudulent misrepresentations to physicians, Plaintiffs, and the general public that Vioxx is or was safe, effective, fit for its use as designated, and that it's components are not hazardous to the health of users all in violation of Alabama Code § 20-1-26 and 20-1-27 and other applicable law;

81.    The labeling did bear or contain statements, designs or devices regarding the curative or therapeutic effect of Vioxx which were false or fraudulent and which concealed, in that they failed to provide adequate warnings of, severe and disabling medical side effects and conditions including, without limitations, cardiovascular events, hypertension and edema, as well as kidney damage, aseptic meningitis, and slow healing of bone fractures, excess deaths and adverse events and other adverse medical conditions as soon as there was reasonable evidence of their association with the drug;

82.    There was misleading and inadequate information for patients for the safe and effective use of defendants' drug in that a drug shall be deemed misbranded "if its package or label shall bear or contain any statement, design or device regarding the curative or therapeutic effect of such article or of any of the ingredients or substances contained therein which is false or fraudulent"; and

83.    There was misleading and inadequate information regarding special care to be exercised by the doctor for safe and effective use of defendants' drug, and the drug was therefore, misbranded.

84.    As a proximate result of the defendants' violations of the statutes described

M007C85137

above, Plaintiffs suffered injuries and personal injuries and damages as alleged herein.

## COUNT IV

### UNJUST ENRICHMENT

85.    Plaintiffs incorporate by reference and reallege, as if fully set forth herein, each and every allegation contained in the other paragraphs of this Complaint, wherever contained.

86.    As the intended and expected result of their conscious wrongdoing, defendants have profited and benefitted from the purchase of Vioxx by the Plaintiffs, to wit: (a) defendants have voluntarily accepted and retained these profits and benefits, derived from the Plaintiffs, with full knowledge and awareness that, as a result of defendants' fraud and other conscious and intentional wrongdoing, Plaintiffs were not receiving a product of the quality, nature, or fitness that had been represented by defendants or that Plaintiffs, as a reasonable consumer, expected.  (b) By virtue of the conscious wrongdoing alleged in this Complaint, defendants have been unjustly enriched at the expense of the Plaintiffs, who are entitled to in equity, and hereby seeks, the restitution of defendants' wrongful profits, revenue, and benefits, to the extent, and in the amount, deemed appropriate by the jury; and such other relief as the jury deems just and proper to remedy the defendants' unjust enrichment.

## COUNT V

### BREACH OF EXPRESS WARRANTY

87.    Plaintiffs incorporate by reference and re-allege, as if fully set forth herein, each and every allegation contained in the other paragraphs of this Complaint, wherever contained.

88.    Defendants expressly warranted to Plaintiffs, by and through statements

M007C85138

made by defendants or their authorized agents or sales representative, orally and in publications, package inserts and other written materials intended for physicians, medical patients and the general public, that Vioxx was safe, effective, fit and proper for its intended use.

89.    In using Vioxx, Plaintiffs relied on the skill, judgment, representations and foregoing express warranties of the defendants. Said warranties and representations were false in that the aforementioned product was not safe and was unfit for the uses for which it was intended.

90.    As a direct and proximate result of defendants breaches of warranties, Plaintiffs have suffered the injuries described elsewhere in this Complaint and Plaintiffs were at an increased risk of and did, in fact, suffer by developing cardiovascular events and has suffered damages for which Plaintiffs are entitled to recover from defendants in an amount just and proper under law for personal injury and other recoverable damages.

## COUNT VI

### BREACH OF IMPLIED WARRANTY

91.    Plaintiffs incorporate by reference and re-allege, as if fully set forth herein, each and every allegation contained in the other paragraphs of this Complaint, wherever contained.

92.    Prior to the time that Vioxx was used by Plaintiffs, defendants impliedly warranted to Plaintiffs that Vioxx was of merchantable quality and safe and fit for the use for which it was intended.

93.    Plaintiffs were unskilled in the subject of pharmacology or the research, design and manufacture of Vioxx and reasonably relied entirely on the skill, judgment and implied warranty of the defendants in using Vioxx.

M007/85139

94.     Vioxx was neither safe for its intended use nor of merchantable quality, as warranted by defendants, in that it had dangerous propensities when put to its intended use and would cause severe injuries and death to the user.

95.     As a direct and proximate result of defendants' breaches of warranties, Plaintiffs have suffered the injuries described elsewhere in this Complaint and Plaintiffs were at an increased risk of and did, in fact, suffer by developing cardiovascular events and have suffered damages for which Plaintiffs are entitled to recover from defendants in an amount just and proper under law for personal injuries and other recoverable damages.

## COUNT VII

### CORPORATE RESPONSIBILITY:
### JOINT VENTURES, PARENT/SUBSIDIARIES,
### AND/OR SUCCESSOR CORPORATION

96.     Plaintiffs incorporate by reference and re-allege, as if fully set forth herein, each and every allegation contained in the other paragraphs of this Complaint, wherever contained.

97.     As a result of their control or participation in various joint ventures, parent/subsidiary relationships and/or successor corporations, defendants are liable to the Plaintiffs.

98.     As a result of their negligent and wanton supervision and actual supervision of various joint ventures, parent/subsidiary relationships and/or successor corporations, defendants are liable to Plaintiffs.

99.     As a result of the existence or invalidity of various indemnification agreements, defendants are liable to Plaintiffs.

M007C85140

100.    Defendants are liable to Plaintiffs, as alter egos of their joint ventures, parent/subsidiary relationships and/or successor corporations.

## COUNT VIII

### CIVIL CONSPIRACY

101.    Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth here and further allege as follows:

102.    Defendants, Merck, David Sparkman, Natasha Walker-McGlothan, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Natasha Walker-McGlothan, Randy Walls, and Melissa Bauer, and fictitious defendants combined and conspired to do those acts complained of in Count I through Count IX, as a result of which the Plaintiffs have suffered harm, damages and injuries as previously described.

## COUNT IX

### FRAUD AND DECEIT

103.    Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth here and further allege as follows:

104.    Merck and the sales representative defendants made material misrepresentations of fact to the medical community, the Plaintiffs, the public generally, the governmental entities charged with the protection of the public from unsafe drugs, and to opinion leaders in the medical profession, intentionally in some cases and often with the specific intention of deceiving all these for monetary gain to the defendants, and in some cases negligently and wantonly, and even in rare cases, innocently, in all instances, with the intent and purpose to advance the sales of the dangerous drug Vioxx. The defendants

M007C85141

further suppressed material facts as to which they were under a duty to communicate to all of the above persons and entities. The misrepresentation and suppression was, in each case, of material and important facts essential for the health and safety of the public and of Plaintiffs in particular. As a result of the misrepresentations, deceit, and suppression by the defendants as set forth previously in this Complaint and as set forth below, these parties, and Plaintiffs were deceived and defrauded, and as a direct and proximate result of the said deceit, fraud, misrepresentation, and fraudulent suppression the Plaintiffs suffered the harm and injury as set forth in this Complaint.

105.    By the time Merck voluntarily withdrew the anti-inflammatory drug Vioxx from the market in September 2004, more than 100 million prescriptions had been dispensed in the United States. Yet the vast majority of these prescriptions were written by physicians after Merck and the Sales Representative defendants knew that evidence of Vioxx's risks had already surfaced. Even as evidence mounted in defendants' hands that use of Vioxx was associated with heart attacks and strokes, physicians continued to prescribe Vioxx to millions of patients. The reason is the fraudulent scheme perpetrated by the defendants. A major part of the explanation may be found by examining the strategies that Merck and its sales representatives used to market Vioxx to physicians. Based on Merck documents, Merck sent over 3,000 highly trained representatives, including the individual defendants herein, into doctors' offices and hospitals armed with misleading information about Vioxx's health risks. The documents indicate that Merck instructed these representatives to show physicians a pamphlet indicating that Vioxx might be 8 to 11 times safer than other anti-inflammatory drugs, prohibited the representatives from discussing contrary studies (including those financed by Merck) that showed increased risks from Vioxx, and launched special marketing programs — named "Project XXceleration" and "Project Offense" and

M007C85142

"Dodgeball"— to overcome the cardiovascular "obstacle" to increased sales.

106.    On information and belief, Plaintiffs aver that while some sales representatives eventually refused to continue with this course of conduct, other representatives, including the individual defendants herein, continued with the misrepresentations and fraudulent concealment, notwithstanding knowledge of the falsity and of the dangers to patients. The Sales Representative defendants were provided two types of materials relevant to drug safety and effectiveness: "approved" and "background" materials. The "approved" items were to be aggressively used in pushing Vioxx because they were things like medical journal articles favorable to Merck. On the other hand, the "background" materials also contained things unfavorable to Vioxx, and the Sales Representative defendants suppressed this information from the prescribing doctors as Merck requested.

107.    The documents reveal that Merck exhaustively trained its representatives on how to persuade doctors to prescribe Vioxx and other Merck products. No interaction with physicians appears to have been too insignificant for instruction. Merck representatives were taught how long to shake physicians' hands (three seconds), how to eat their bread when dining with physicians ("one small bite size piece at a time"), and how to use "verbal and non-verbal" cues when addressing a physician to "subconsciously raise... his/her level of trust." Merck instructed its representatives on the various personality types of doctors (including "technical," "supportive and expressive") and recommended targeted sales techniques for each type. And Merck rewarded its sales force with thousands of dollars in cash bonuses for meeting sales goals.

108.    The company assigned individual doctors a "Merck potential" and graded them on how often they prescribed Merck products. The Sales Representative defendants

M007C85143

were also involved in the Merck scheme to communicate misinformation about Vioxx to what defendants called "thought leaders" in the medical community. By this device, defendants could sell more Vioxx even to those doctors to whom they did not or could not speak directly or in detail. The "thought leaders" were to influence the medical community to push more Vioxx, despite the dangers, since they could "influence colleagues through peer-to-peer relationships." To help them do this, the Sales Representative defendants used Merck-paid honoraria (money) to these "thought leaders" to influence the medical community to favor Vioxx and to prescribe it notwithstanding the dangers.

109.    The documents describe in detail how Merck used this highly trained sales force to respond to reports of Vioxx's safety risks. The first public indication that Vioxx posed a heightened risk of heart attack and stroke came in March 2000, when Merck's VIGOR study showed a five-fold increase in the risks of heart attacks in patients on Vioxx compared to patients on Naproxen. This study was followed by cautionary discussions of the cardiovascular risks of Vioxx at a meeting of an advisory committee to the Food and Drug Administration in February 2001, in a New York Times article in May 2001, and in a paper in the Journal of the American Medical Association in August 2001.

110.    After each of these developments, Merck sent bulletins or special messages to its sales force, directing them to use highly questionable information to assuage any physician concerns.

111.    For example, the Merck documents show:

After Merck's VIGOR study reported increased heart attack risks, Merck directed its sales force to show physicians a "Cardiovascular Card" that made it appear that Vioxx could be 8 to 11 times safer than other anti-inflammatory drugs. This card omitted any reference to the VIGOR findings

M007C85144

and was based on data FDA considered to be inappropriate for a safety analysis.

After the FDA advisory committee voted that physicians should be informed about the risks found in the VIGOR study, Merck sent a bulletin to its sales force that advised: "DO NOT INITIATE DISCUSSIONS ON THE FDA ARTHRITIS COMMITTEE … OR THE RESULTS OF THE … VIGOR STUDY." If physicians asked about the VIGOR study, Merck representatives were directed to respond, "I cannot discuss the study with you." After the New York Times reported on the cardiovascular dangers of Vioxx, Merck instructed its field staff to tell physicians that patients on other anti-inflammatory medications were eight times more likely to die from cardiovascular causes than patients on Vioxx. The Merck bulletin told its sales force to show physicians the Cardiovascular Card and state: "Doctor, as you can see, Cardiovascular Mortality as reported in over 6,000 patients was Vioxx .1 vs. NSAIDS .8 vs. Placebo 0."

112.    After extensive negotiations, FDA and Merck agreed on a label change for Vioxx in April 2002, that mentioned the cardiovascular findings from the VIGOR study. The final label included the statement that the significance of these findings were "unknown." According to the documents, Merck instructed its representatives to emphasize this statement on new labels to counter physician safety concerns. Merck documents show that in fact the cardiovascular risks were actually well-known, but suppressed, by defendants.

113.    Merck and other drug companies maintain publicly that their representatives play a vital role in the health care system by educating physicians about new drugs and ongoing research. But the Merck documents reveal another side to company marketing

M007C65145

efforts. The documents show that Merck trained its representatives to capitalize subtly on every interaction with physicians to promote Merck products. When concerns about Vioxx's safety arose, Merck used this highly trained force to present a misleading picture to physicians about the drug's cardiovascular risks. Merck's and the Sales Representatives' promotional efforts explain in large part why Vioxx sales remained strong even as the evidence of the drug's dangers mounted. Prescribing doctors were massively misled.

114.   The Sales Representative defendants represented to the Plaintiffs' prescribing physicians false and misleading information concerning the drug Vioxx. The defendants, pursuant to the defendants' "Dodgeball" program and other plans to misrepresent the safety of Vioxx, communicated that the drug was safe for the cardiovascular system, and did not increase the risk stroke or heart attack. The Plaintiffs' physicians did prescribe the subject drug to the Plaintiffs, as a result of, and in reliance upon, the misrepresentations by the defendants' including the Sales Representative defendants who made direct communications to the physician. The physicians made determinations concerning the use of this medication based on false and fraudulent information provided by the defendants including the Sales Representative defendants, and did not act in their proper role as a learned professional in that physicians were given wrongful, false, incomplete, misleading and wrong information by the defendants, including the Sales Representative defendant.

115.   The negligence and wantonness of the defendants, including the Sales Representative defendants, was the proximate cause of the injuries and death suffered by Plaintiffs. Because the Plaintiffs' physicians were prevented from exercising and operating in their full role as learned professionals, because of missed information given to them by defendants, they were deprived of the full and adequate information needed to act in a

M007C85146

learned manner in deciding and determining how to prescribe pain relieving medication to the Plaintiffs, with the proximate result and consequence that the physicians did in fact prescribe the dangerous and deadly drug, Vioxx, to Plaintiffs, causing their injuries.

116.    The Plaintiffs suffered personal injuries as a direct and proximate result and consequence of the wrongful acts and omissions of each of the defendants. The Plaintiffs would not have been prescribed the subject drug, Vioxx, by his physician, if the physician had not been given wrongful and incorrect information by the defendants including the Sales Representative defendants.

117.    If defendants had not engaged in this conduct, consumers, such as the Plaintiffs, would have switched from Vioxx to safer products or refrained wholly from its efficacy.

118.    From approximately 1999 through the date of Plaintiffs injuries defendants engaged in a scheme of marketing, distributing and/or selling Vioxx under the guise that it was safe and efficacious for persons such as the Plaintiffs.

119.    Plaintiffs allege that the marketing strategies, including without limitation the detail and sampling programs and direct-to-consumer advertising, used by Merck, targeted consumers like the Plaintiffs to induce them to purchase and use Vioxx. defendants distributed, manufactured and marketed Vioxx, in a manner designed to convince and their physicians to rely on the marketing, advertisements and product information propounded by defendant.

120.    On September 30, 2004, Merck voluntarily removed Vioxx from all markets in the United States.

121.    The sales representative defendants negligently, recklessly, intentionally and fraudulently made material representations that Vioxx was safe and effective. The sales

M007C85147

representative defendants represented Vioxx as safe so that the general consuming public, including Plaintiffs and their physicians, would rely upon said representations when purchasing the product. The sales representative defendants also suppressed the cardiovascular risks from prescribing physicians, and consumers such as the Plaintiffs, even though they had knowledge of the risks.

122.    Merck trained its sales representatives, through programs such as the "Vioxx Obstacle Dodge Ball Program," the "Obstacle Response Guide for Vioxx," and "Top Ten Obstacle Handlers" to misstate, conceal, and misrepresent the truly dangerous nature of Vioxx to prescribing physicians. The sales representative defendants applied, utilized and put into practice each of these programs with the doctors in question.

123.    These programs were specifically designed and promulgated by Merck to mislead prescribing physicians about the safety of Vioxx.

124.    These programs were specifically designed and promulgated by Merck to mislead prescribing physicians about the life threatening side effects, including myocardial infarction and stroke, of Vioxx.

125.    Merck trained its sales representative force, including the sales representative defendants, to utilize its "Dodge Ball" and "Obstacle Avoidance" programs during the sales representatives' interactions with or "calls" upon prescribing physicians, and defendants put them into full effect with the subject doctors.

126.    These programs were utilized by sales representatives, including the sales representative defendants to "dodge" relevant safety questions by physicians to who promoted and or sold Vioxx. Indeed, these programs provide specific responses and representations that are to be made by Merck sales representatives to physicians during the sales calls or in response to physician questions. These Merck mandated responses

M007C85148

misrepresented the safety of Vioxx.

127.    The Vioxx Obstacle Dodge Ball Program identifies and categorizes physician safety questions as "obstacles" to Merck's sales force. The "Dodge Ball" program specifically instructs sales representatives, including the sales representative defendants, to "dodge" these physicians' safety related questions/obstacles. Indeed, the last few pages of the "Dodge Ball" instruction manual simply state "DODGE," "DODGE," and "DODGE." The safety questions to be "dodged" by sales representatives, including the sales representative defendants, include, inter alia, questions such as, "I am concerned about the cardiovascular effects of Vioxx," and "The competition has been in my office telling me that the incidence of heart attacks is greater with Vioxx than with Celebrex."

128.    Additional sales representative guidelines provide specific answers to physician questions/obstacles (such as those noted above) that were to be recited by sales representatives, including the sales representative defendants. The top three "obstacles" listed on the sales guidelines are physician safety questions involving Vioxx related "Cardiovascular Events." Sales representative, including the sales representative defendants, are thereafter provided with specific misrepresentations to make to the concerned physicians about the safety of Vioxx. For example, bulletins from Merck to its sales representatives state, "in response to recent published reports about Vioxx on May 1, 2000, we provided you with an approved verbal response to use to address customers' questions around the incidence rate of MI's [myocardial infarctions] on patients taking Vioxx..." (Bulletin for Vioxx: New PIRs Relative to Vioxx GI Outcomes Research Study). Sales representatives, including the sales representative defendants, were therefore required to misrepresent that Vioxx does not increase the rate of myocardial infarctions when compared with NSAID's. This misrepresentation is false and inaccurate, yet was

40

intentionally, knowingly, recklessly, wantonly and/or negligently made to treating physicians, including each Plaintiffs' prescribing physicians, by the individually named sales representatives. In an instructional video used to train sales representatives, an actress playing "an obstacle" to Vioxx sales says, "I'm afraid Vioxx causes M.I.'s" - a reference to myocardial infarctions, or heart attacks. In response, an actress playing a Merck sales representative says, "That's not true." This was wrong, Vioxx causes M.I.'s. The mechanism of Vioxx-induced heart attack and stroke is the same – vasoconstriction and blood-clot creation.

129.    Merck's sales representatives, specifically the sales representative defendants, utilized the misrepresentations contained in the obstacle avoidance programs to mislead each Plaintiffs' treating physicians concerning the safety of Vioxx and the occurrence of life threatening side effects, such as strokes and myocardial infarctions, from the usage of Vioxx.

130.    Merck and the individually named sales representatives further misrepresented the safety of Vioxx to prescribing physicians by providing written literature to the doctors that contained false statements about Vioxx's safety. Such literature would be forwarded to the physician who posed questions/obstacles to the sales representatives after the sales representatives had concluded their meeting with the physician, entitled "In Response To Your Questions" (follow-up literature that misrepresents Vioxx's cardiovascular safety) and "In Response To Your Questions: Cardiovascular System", which also misrepresents the risks associated with Vioxx.

131.    Sales representatives, including the sales representative defendants, were also ordered to send follow-up letters to physicians with whom they met who had posed questions/obstacles. These letters would downplay the cardiovascular risks associated with

M007C851S0

Vioxx, even though the defendants were well aware that the risks existed.

132.    The underlying inducement for both Merck and its sales representatives, including the sales representative defendants, to make repeated misrepresentations to physicians about the safety of Vioxx was money. The more doctors prescribed Vioxx, the more money Merck made. The more doctors the sales representatives, including the sales representative defendants, cajoled into prescribing Vioxx, the more money and non-monetary bonuses the sales representatives received. Thus, sales representatives, such as the sales representative defendants, had a financial interest in disseminating the false and misleading information, while concealing the known risks (i.e., obstacle responses) outlined above to as many prescribing physicians as possible, including Plaintiffs' prescribing physicians

133.    Plaintiffs and their prescribing physicians reasonably relied, to their detriment, upon the false oral and written misrepresentations of Merck, and the sales representative defendants, concerning the safety of Vioxx and the absence of adverse cardiovascular events in users. Such reasonable reliance induced each Plaintiff's treating physician to prescribe his Vioxx and further induced the Plaintiffs to utilize the dangerous drug Vioxx. As a direct and proximate result of Plaintiff's usage of Vioxx, they were injured as described herein. Such event has caused Plaintiff's great pain and suffering, mental anguish, expense.

134.    On June 23, 2005 conduct of Merck and its sales representatives was summarized in the New England Journal of Medicine as follows:

> "The pharmaceutical industry spends more than $5.5 billion to promote drugs to doctors each year — more than what all U.S. medical schools spend to educate medical students. Major drug companies employ about 90,000

M007C85151

sales representatives — one for every 4.7 doctors in the United States, according to the American Medical Association. Although substantial marketing expenditures are common in many industries, the potential effect of drug marketing on health raises special concerns. For years, the industry has justified these expenditures on the grounds that they fund essential education for doctors. According to the Web site of the Pharmaceutical Manufacturers and Research Association, "many physicians learn about new drugs - indeed, about ongoing research in their areas of specialization - largely through information provided by the companies that market new products." But if the primary goal is sales, not education, and the information provided to physicians is slanted or misleading, the health consequences for patients can be serious.

"Because of the recent events surrounding Rofecoxib, the May 5 hearing of the Government Reform Committee focused on Merck, the manufacturer of Vioxx... Merck cooperated voluntarily with our request for information, providing more than 20,000 pages of internal company documents. Merck also voluntarily sent a senior executive to testify at the hearing and answer the committee's questions. Yet as we learned, even a company like Merck can direct its sales force to provide clinicians with a distorted picture of the relevant scientific evidence.

"On February 7, 2001, the Arthritis Drugs Advisory Committee of the Food and Drug Administration (FDA) met to discuss the VIGOR study. At this meeting, Merck argued that the significant increase in the rate of myocardial infarction (which further analysis had determined to be a fivefold increase) was explained by a protective effect of naproxen, not by any inherent risk posed by its drug. After the FDA's medical reviewer and others expressed concern about

43

M007C85152

this explanation, the advisory committee voted unanimously that physicians should be made aware of VIGOR's cardiovascular results.

"The next day, Merck sent a bulletin to its Rofecoxib sales force of more than 3000 representatives. The bulletin ordered, "DO NOT INITIATE DISCUSSIONS ON THE FDA ARTHRITIS ADVISORY COMMITTEE . . . OR THE RESULTS OF THE . . . VIGOR STUDY." It advised that if a physician inquired about VIGOR, the sales representative should indicate that the study showed a gastrointestinal benefit and then say, "I cannot discuss the study with you."

"Merck further instructed its representatives to show those doctors who asked whether Rofecoxib caused myocardial infarction a pamphlet called "The Cardiovascular Card." This pamphlet, prepared by Merck's marketing department, indicated that Rofecoxib was associated with 1/8 the mortality from cardiovascular causes of that found with other anti-inflammatory drugs. Stroke is caused by Vioxx with the same mechanism as myocardial infarction.

"The Cardiovascular Card provided a misleading picture of the evidence on Rofecoxib. The card did not include any data from the VIGOR study. Instead, it presented a pooled analysis of preapproval studies, in most of which low doses of Rofecoxib were used for a short time. None of these studies were designed to assess cardiovascular safety, and none included adjudication of cardiovascular events. In fact, FDA experts had publicly expressed "serious concerns" to the agency's advisory committee about using the preapproval studies as evidence of the drug's cardiovascular safety.

"Persistent physicians who sought additional information about the

M007085153

cardiovascular effects of Rofecoxib were directed to send inquiries to the company's headquarters. Merck's response to these physicians highlighted the misleading information from the Cardiovascular Card.

"Beyond these specific communications to physicians, our committee also heard evidence of a broad disparity between the evidence-based perspective provided by scientific journals and expert committees, on the one hand, and the sales pitch used by the company's field staff, on the other. Merck instructed its sales representatives, for example, to provide only certain approved study results to doctors. Approved scientific studies were defined as those that provide "solid evidence as to why [doctors] should prescribe Merck products for their appropriate patients." By contrast, those studies that raised safety questions about drugs were considered background studies. Distributing the results of a background study was "a clear violation of Company Policy."

"Merck also trained its representatives to identify speakers for educational events who were "opinion leaders" who could provide "favorable" views of the company's products to other doctors. Underlining the promotional nature of these events, Merck instructed its sales representatives to track whether the physicians who attended them subsequently prescribed more Merck drugs.

"In addition to providing selective evidence and biased presentations, Merck counseled its representatives to use an array of subliminal selling techniques to affect prescribing - potentially undermining the ability of physicians to choose drugs strictly on the basis of the risks, benefits, and costs for a particular patient. For example, in a training course on selling skills,

M007085154

Merck taught representatives to mimic the words and body language of doctors during sales calls. The curriculum explained that 'mirroring is the matching of patterns, verbal and non-verbal, with the intention of helping you enter the customer's world. It is positioning yourself to match the person talking. It subconsciously raises his/her level of trust by building a bridge of similarity.'"

135.    The sales representative defendants personally performed the acts and omissions described herein and participated in the torts alleged herein. The sales representative defendants had knowledge of the cardiovascular risks associated with Vioxx, and misrepresented and/or concealed the nature of these risks to the opinion leaders in the local medical community, to the public, Plaintiffs, and to Plaintiff's physicians. The sales representative defendants were not acting as mere conduits, because they had knowledge that the information conveyed to each opinion leader, consumer, the public and to each of Plaintiffs' physicians, was false.

136.    Accordingly, the sales representative defendants are liable to Plaintiffs for the claims stated herein, and are fully responsible for their own personal acts and omissions whether performed for Merck or as a "frolic of their own" or otherwise. They acted for their own personal profit and "following orders" is not a defense where they acted personally in a negligent, wanton and deceitful manner.

137.    As a result of the misrepresentations, deceit, and suppression by the defendants as set forth previously in this Complaint and as set forth below, these parties, and Plaintiffs were deceived and defrauded, and as a direct and proximate result of the said deceit, fraud, misrepresentation, and fraudulent suppression the Plaintiffs suffered the harm and injury as set forth in this Complaint. The conduct of the defendants described in

M007085155

all counts of this civil action is gross, oppressive, burdensome, willful, intentional, wanton and otherwise such as to justify the imposition of punitive damages under Alabama law.

WHEREFORE, Plaintiffs demand judgment against Merck & Co., Inc., Merck Corporation, Merck Pharmaceutical Division, David Sparkman, Natasha Walker-McGlothan, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Natasha Walker-McGlothan, Randy Walls, Melissa Bauer and defendants A, B, C, D, E, F, X and Z, whose true names are unknown to the Plaintiffs but will be added by amendment when correctly ascertained, jointly and severally in such sums of compensatory and punitive damages as the jury determines to be fair, just, and lawful plus costs of Court.


_____
James S. Hubbard
Attorney for Plaintiffs


_____
Thomas J. Knight
Attorney for Plaintiffs


HUBBARD & KNIGHT
Post Office Drawer 1850
Anniston, Alabama 36202
(256) 237-9586

M007C85156

| State of Alabama Unified Judicial System<br><br>Form C-34    Rev 6/88 | SUMMONS<br>-CIVIL- | Case Number<br><br>CV06-145 |
|---|---|---|

IN THE _____ CIRCUIT _____ COURT OF _____ RANDOLPH _____ COUNTY

Plaintiff ___ CLIFFORD BAILEY, et als. ___ v. Defendant ___ MERCK & CO. Inc. et als. ___

NOTICE TO __ MERCK & CO. Inc., c/o The Corporation Company, 2000 Interstate ParkDr. Ste.204, Montgomery, AL 36109

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADDMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY _____ THOMAS J. KNIGHT _____ WHOSE ADDRESS IS _____ 1125 Noble Street, Post Office Box 1850, Anniston, Alabama 36202 _____.

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN ___ 30 ___ DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

---

**TO ANY SHERIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:**

[X] You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant.

[ ] Service by certified mail of this summons is initiated upon the written request of _____ pursuant to the Alabama Rules of Civil Procedure.

Date ___ 9/21/06 ___      _Kim S. Benefield_ Clerk/Register    By: _____

---

[ ] Certified Mail is hereby requested.

_____
Plaintiff's/Attorney's Signature

---

RETURN ON SERVICE:

[ ] Return receipt of certified mail received in this office on _____.
                                                                      (Date)
[ ] I certify that I personally delivered a copy of the Summons and Complaint to _____
_____ in _____ County,
Alabama on _____.
                (Date)

_____          _____
Date                             Server's Signature

_____          _____
Address of Server                Type of Process Server

M007C85157

**CT** CORPORATION
A WoltersKluwer Company

**Service of Process
Transmittal**
10/05/2006
Log Number 511535501

**TO:**     Ellen Gregg
Womble Carlyle Sandridge & Rice, PLLC
301 North Main Street, Suite 300
Winston-Salem, NC, 27101

**RE:**     **Process Served in Alabama**

**FOR:**    Merck & Co., Inc. (Domestic State: NJ)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Clifford Bailey, et al. Pltfs. vs. Merck & Co., Inc., et al. Dfts. |
| **DOCUMENT(S) SERVED:** | Summons, Complaint |
| **COURT/AGENCY:** | Clay County Circuit Court, AL<br>Case # CV 06145 |
| **NATURE OF ACTION:** | Product Liability Litigation - Drug Litigation - Negligence in manufacturing the defective & unsafe product-personal injuries |
| **ON WHOM PROCESS WAS SERVED:** | The Corporation Company, Montgomery, AL |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 10/05/2006 at 10:00 |
| **APPEARANCE OR ANSWER DUE:** | 30 days |
| **ATTORNEY(S) / SENDER(S):** | James S. Hubbard<br>Hubbard & Knight<br>PO Drawer 1850<br>Anniston, AL, 36202<br>2562379586 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  Fed Ex Priority Overnight, 790086624257<br>Email Notification, Debra A Bollwage DEBRA_BOLLWAGE@MERCK.COM<br>Email Notification, Kristin L. Sunderman kristin_sunderman@merck.com |
| **SIGNED:**<br>**ADDRESS:** | The Corporation Company<br>2000 Interstate Park Drive<br>Suite 204<br>Montgomery, AL, 36109 |
| **TELEPHONE:** | 334-387-7680 |

**WCS&R**

**OCT 0 6 2006**

**RECEIVED**

Page 1 of  1 / CT

Information displayed on this transmittal is for CT Corporation's
record keeping purposes only and is provided to the recipient for
quick reference. This information does not constitute a legal opinion
as to the nature of action, the amount of damages, the answer date,
or any information contained in the documents themselves.
Recipient is responsible for interpreting said documents and for
taking appropriate action. Signatures on certified mail receipts
confirm receipt of the package only, not of its contents.

M007C85158



<u>PLAINTIFF PROFILE FORM FOR CLIFFORD BAILEY</u>

I. CASE INFORMATION

A.    Name of person completing this form: Clifford Bailey

B.    If you are completing this questionnaire in a representative capacity (e.g., on behalf of the estate of a deceased person or a minor), please complete the following:

   1. Social Security number

   2. Maiden Or Other Names Used or By Which You Have Been Known:

   3. Address:

   4. State which individual or estate you are representing, and in what capacity you are representing the individual or estate?

   5. If you were appointed as a representative by a court, state the:

   6. What is your relationship to deceased or represented person or person claimed to be injured?

   7. If you represent a decedent's estate, state the date of death of the decedent and the address of the place where the decedent died:

C.    Claim Information

     1. Are you claiming that you have or may develop bodily injury as a result of taking VIOXX?    Yes _X____    No _____

*If "yes,"*
     a. What is your understanding of the bodily injury you claim resulted from your use of VIOXX?  I have had two heart catheterizations.

     b. When do you claim this injury occurred?   March 21, 2003

     c. Who diagnosed the condition?  Dr. William Rogers

     d. Did you ever suffer this type of injury prior to the date set forth in answer to the prior question? Yes _____      No _X____

*If "yes,"* when and who diagnosed the condition at that time?

**Exhibit B**

e. Do you claim that that your use of VIOXX® worsened a condition that you already had or had in the past? Yes _____    No _X____

*If "yes,"* set forth the injury or condition; whether or not you had already recovered from that injury or condition before you took VIOXX; and the date of recovery, if any.

D.    Are you claiming mental and/or emotional damages as a consequence of VIOXX? Yes __X___    No _____

*If "yes,"* for each provider (including but not limited to primary care physician, psychiatrist, psychologist, counselor) from whom have sought treatment for psychological, psychiatric or emotional problems during the last ten (10) years, state:
a. Name and address of each person who treated you:
b. To your understanding, condition for which treated:
c. When treated:
d. Medications prescribed or recommended by provider:

## II. PERSONAL INFORMATION OF THE PERSON WHO USED VIOXX

A.    Name: Clifford C. Bailey

B.    Maiden or other names used or by which you have been known: None.

C.    Social Security Number: 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

D.    Address: 1393 County Road 52, Woodland, AL 36288.

E.    Identify each address at which you have resided during the last ten (10) years, and list when you started and stopped living at each one: Same as above.

F.    Driver's License Number and State Issuing License: AL 1951426

G.    Date of Place and Birth: 11-29-1942

H.    Sex: Male _X___    Female_____

I.    Identify the highest level of education (high school, college, university or other educational institution) you have attended (even if not completed), the dates of attendance, courses of study pursued, and diplomas or degrees awarded:

J.    Employment Information.

    1. Current employer: Disabled for 4 years.

    2. List the following for each employer you have had in the last ten (10) years:
       I was a self employed farmer.

    3. Are you making a wage loss claim for either your present or previous
    employment? Yes _____     No __X___
    *If "yes,"* state your annual income at the time of the injury alleged in
    Section I©):

K.    Military Service Information: Have you ever served in the military, including the
    military reserve or national guard? Yes _____     No __X___

    *If "yes,"* were you ever rejected or discharged from military service for any
    reason relating to your physical, psychiatric or emotional condition?
    Yes _____     No _____

L.    Insurance / Claim Information:

    1. Have you ever filed a worker's compensation and/or social security disability
    (SSI or SSD) claim? Yes __X___     No _____

    *If "yes,"* to the best of your knowledge please state:
       a. Year claim was filed: I filed around 2002.  (This is an estimate.)
       b. Nature of disability: Legally blind and back problems.
       c. Approximate period of disability: 4 years

    2. Have you ever been out of work for more than thirty (30) days for reasons
    related to your health (other than pregnancy)? Yes _____     No __X___

    *If "yes,"* set forth when and the reason.  Four years for disabilities stated above.

    3. Have you ever filed a lawsuit or made a claim, other than in the present suit,
    relating to any bodily injury? Yes _____     No __X___

    *If "yes,"* state to the best of your knowledge the court in which such action was
    filed, case name and/or names of adverse parties, and a brief description for the
    claims asserted.

M.    As an adult, have you been convicted of, or plead guilty to, a felony and/or crime
    of fraud or dishonesty? Yes _____     No _X_____

*If "yes,"* set forth where, when and the felony and/or crime.

### III.  FAMILY INFORMATION

A.    List for each marriage the name of your spouse; spouse's date of birth (for your current spouse only); spouse's occupation; date of marriage; date the marriage ended, if applicable; and how the marriage ended (e.g., divorce, annulment, death):

   Name: Not Currently Married
   Married:
   Occupation:

B.    Has your spouse filed a loss of consortium claim in this action?
   Yes _____    No __X___

C.    To the best of your knowledge did any child, parent, sibling, or grandparent of yours suffer from any type of cardiovascular disease including but not limited to: heart attack, abnormal rhythm, arteriosclerosis (hardening or the arteries), murmur, coronary artery disease, congestive heart failure, enlarged heart, leaking valves or prolapse, heart block, congenital heart abnormality, Scarlet Fever, Rheumatic Fever, atrial fibrillation, stroke?
   Yes _____    No _____    Don't Know __X___

   *If "yes,"* identify each such person below and provide the information requested.

   Name:
   Current Age (or Age at Death):
   Type of Problem:
   If Applicable, Cause of Death:.

D.    If applicable, for each of your children, list his/her name, age and address:
   Michael Bailey, age 43, Woodland, AL
   Pamela Bailey, age 42, Woodland, AL

E.    If you are claiming the wrongful death of a family member, list any and all heirs of the decedent. None.

## IV. VIOXX PRESCRIPTION INFORMATION

A.    Who prescribed VIOXX for you?  Dr. William Berard

B.    On which dates did you begin to take, and stop taking, VIOXX?
Started: 7-23-2002
Stopped: September, 2004

C.    Did you take VIOXX continuously during that period?
Yes _X____      No _____      Don't Recall _____

D.    To your understanding, for what condition were you prescribed VIOXX?
I had Osteoarthritis in my knee.

E.    Did you renew your prescription for VIOXX?
Yes __X___      No _____      Don't Recall____

F.    If you received any samples of VIOXX, state who provided them, what dosage,
how much and when they were provided: I don't think so.

G.    Which form of VIOXX did you take (check all that apply)?
_____ 12.5 mg Tablet (round, cream, MRK 74)
_____ 12.5 mg Oral Suspension
__X__ 25 mg Tablet (round, yellow, MRK 110)
_____ 25 mg Oral Suspension
_____ 50 mg Tablet (round, orange, MRK 114)

H.    How many times per day did you take VIOXX?  Twice.

I.    Did you request that any doctor or clinic provide you with VIOXX or a
prescription for VIOXX? Yes _____      No _X____      Don't Recall _____

J.    Instructions or Warnings:

1. Did you receive any written or oral information about VIOXX before you took
it?  Yes _____      No __X___      Don't Recall _____

2. Did you receive any written or oral information about VIOXX while you took
it? Yes _____      No __X___      Don't Recall _____

3. If "yes,"
a. When did you receive that information?
b. From whom did you receive it?
c. What information did you receive?

K.     What over-the-counter pain relief medications, if any, were you taking at the same time you were taking VIOXX?  I don't remember.

<div align="center">V. MEDICAL BACKGROUND</div>

A.     Height: 6 foot

B.     Current Weight: 205 pounds.

Weight at the time of the injury, illness, or disability described in Section I©): Unknown.

C.     Smoking/Tobacco Use History: *Check the answer and fill in the blanks applicable to your history of smoking and/or tobacco use.*

\_\_\_\_\_ Never smoked cigarettes/cigars/pipe tobacco or used chewing tobacco/snuff.
\_\_X\_\_\_ Past smoker of cigarettes/cigars/pipe tobacco or used chewing tobacco/snuff.
    a. Date on which smoking/tobacco use ceased: 4 years ago.
    b. Amount smoked or used: on average 2 cigars per day for 10 years.
\_\_\_\_\_Current smoker of cigarettes/cigars/pipe tobacco or user of chewing tobacco/snuff.
Amount smoked or used: on average 1 pack per day for 10 years.
\_\_\_ Smoked different amounts at different times.

D.     Drinking History. Do you now drink or have you in the past drank alcohol (beer, wine, whiskey, etc.)? Yes \_\_X\_\_\_    No \_\_\_\_\_

*If "yes," fill in the appropriate blank* with the number of drinks that represents your average alcohol consumption during the period you were taking VIOXXÒ up to the time that you sustained the injuries alleged in the complaint:
_____ drinks per week,
_____ drinks per month,
\_\_\_\_\_3\_\_\_\_\_ drinks per year, *or*
Other (describe):

E.     Illicit Drugs. Have you ever used (even one time) any illicit drugs of any kind within one (1) year before, or any time after, you first experienced your alleged VIOXX- related injury?" Yes \_\_\_\_\_    No \_\_X\_\_\_    Don't Recall \_\_\_\_\_

*If "yes",* identify each substance and state when you first and last used it.

F.    Please indicate to the best of your knowledge whether you have ever received any of the following treatments or diagnostic procedures:

1. Cardiovascular surgeries, including, but not limited to, the following, and specify or what condition the surgery was performed: open heart/bypass surgery, pacemaker implantation, vascular surgery, IVC filter placement, carotid (neck artery) surgery, lung resection, intestinal surgery:
Surgery: open heart surgery and stents.

2. Treatments/interventions for heart attack, angina (chest pain), or lung ailments:
Treatment/Intervention: Doctor found the problems before heart attack.

3. To your knowledge, have you had any of the following tests performed: chest Xray, CT scan, MRI, angiogram, EKG, echocardiogram, TEE (trans-esophageal echo), bleeding scan, endoscopy, lung bronchoscopy, carotid duplex/ultrasound, MRI/MRA of the head/neck, angiogram of the head/neck, CT scan of the head, bubble/microbubble study, or Holter monitor?
Yes __X___     No _____     Don't Recall _____

*If "yes,"* answer the following:
        Diagnostic Test When Treating: See Medical Records
        Physician: Dr. Yule at Tanner Medical Center: Dr. Rogers at Emory University
        Hospital Reason: Chest pain

## VI. DOCUMENTS

Please indicate if any of the following documents and things are currently in your possession, custody, or control, or in the possession, custody, or control of your lawyers by checking *"yes"* or *"no."* Where you have indicated *"yes,"* please attach the documents and things to your responses to this profile form.

A.    Records of physicians, hospitals, pharmacies, and other healthcare providers identified in response to this profile form.        Yes __X___     No _____

B.    Decedent's death certificate (if applicable).     Yes _____     No __X___

C.    Report of autopsy of decedent (if applicable).   Yes _____     No __X___

## VII. LIST OF MEDICAL PROVIDERS AND OTHER SOURCES OF INFORMATION

*List the name and address of each of the following:*

A.    Your current family and/or primary care physician:

Dr. Gregory Floyd
Personal Park Medical Service
100 Park Ste 202
Carrolton, Georgia 30117

Dr. William Rogers
101 Doctors Drive
Carrollton, Ga 30117

B.    To the best of your ability, identify each of your primary care physicians for the last ten (10) years.

Dr. William Berard
101 Doctors Drive
Carrollton, Ga 30117

Dr. Gregory Floyd
Personal Park Medical Service
100 Park Ste 202
Carrolton, Georgia 30117

Dr. William Rogers
101 Doctors Drive
Carrollton, Ga 30117

C.    Each hospital, clinic, or healthcare facility where you have received inpatient treatment or been admitted as a patient during the last ten (10) years.

Tanner Medical Center
705 Dixie Street
Carrolton, GA 30117

Emory University Hospital
1364 Clifton Road Northeast, RMC 228
Atlanta, GA 30322

D.   Each hospital, clinic, or healthcare facility where you have received outpatient treatment (including treatment in an emergency room) during the last ten (10) years.

Tanner Medical Center
705 Dixie Street
Carrolton, GA 30117

Emory University Hospital
1364 Clifton Road Northeast, RMC 228
Atlanta, GA 30322

E.   Each physician or healthcare provider from whom you have received treatment in the last ten (10) years.

Tanner Medical Center
705 Dixie Street
Carrolton, GA 30117

Dr. William Berard
101 Doctors Drive
Carrollton, Ga 30117

F.   Each pharmacy that has dispensed medication to you in the last ten (10) years.

H and M Drugs
Wedowee, Alabama 36278

C and S Pharmacy
Roanoke, AL

G.   If you have submitted a claim for social security disability benefits in the last ten (10) years, state the name and address of the office that is most likely to have records concerning your claim.

Social Security Office
301 13th Street
Anniston, AL 36202

H.   If you have submitted a claim for worker's compensation, state the name and address of the entity that is most likely to have records concerning your claim.

## CERTIFICATION

I declare under penalty of perjury subject to 28 U.S.C. § 1746 that all of the information provided in this Profile Form is true and correct to the best of my knowledge, that I have completed the List of Medical Providers and Other Sources of Information appended hereto, which is true and correct to the best of my knowledge, that I have supplied all the documents requested in part VI of this declaration, to the extent that such documents are in my possession, custody, or control, or in the possession, custody, or control of my lawyers, and that I have supplied the authorizations attached to this declaration.

_____　　　　　　2-28-07
Signature　　　　　　　　　　　　　　　　　　Date

CLiFFord J. BAiley
Print Name

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA
BAILEY, et als., v MERCK & CO. INC., et als.
Case Number: 3:06 cv 00979

AUTHORIZATION FOR RELEASE OF RECORDS (To be signed by plaintiffs *not*
making a claim for lost wages or earnings or earning capacity.)

Name: Clifford Bailey
Date of Birth: 11-29-1942
Social Security Number: 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

I hereby authorize _____ to release all
existing records and information in its possession regarding the above-named person's
employment and education (with the exception of W-4 and W-2 forms) to the law firm of
**HUGHES HUBBARD & REED LLP, 101 Hudson Street, Suite 3601, Jersey City, New
Jersey 07302, and/or to the law firm of RUSHTON, STAKLEY, JOHNSTON &
GARRETT, P.A., Post Office Box 270, Montgomery, Alabama 36101-0270,**
and/or to the law firm of _____
_____and/or their designated agents ("Receiving Parties").
These records shall be used or disclosed solely in connection with the currently pending
VIOXX® litigation involving the person named above. This authorization shall cease to be
effective as of the date on which the above-named person's VIOXX® litigation concludes.
I understand that this authorization includes the above-named person's complete
employment personnel file with the exception of W-4 and W-2 forms (including attendance
reports, performance reports, medical reports, workers' compensation claims), and also includes
all other records relating to employment, past and present, all records related to claims for
disability, and all educational records (including those relating to courses taken, degrees
obtained, and attendance records). This listing is not meant to be exclusive.
Any photostatic copy of this document shall have the same authority as the original, and
may be substituted in its place.

Copies of these materials are to be provided at the expense of Hughes Hubbard & Reed LLP or
_____.

Dated this __ day of 2-28, 2007.

_Clifford Bailey_
Clifford Bailey

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA
BAILEY, et als., v MERCK & CO. INC., et als.
Case Number: 3:06 cv 00979

AUTHORIZATION FOR RELEASE OF MEDICAL RECORDS PURSUANT TO
45 C.F.R. § 164.508 (HIPAA)

Name: Clifford Bailey
Date of Birth: 11-29-1942
Social Security Number: 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

I hereby authorize _____ to release all existing medical records regarding the above-named person's medical care, treatment, physical condition, and/or medical expenses to the law firm of **HUGHES HUBBARD & REED LLP, 101 Hudson Street, Suite 3601, Jersey City, New Jersey 07302, and/or to the law firm of RUSHTON, STAKLEY, JOHNSTON & GARRETT, P.A., Post Office Box 270, Montgomery, Alabama 36101-0270,** and/or to the law firm of _____ _____and/or their designated agents ("Receiving Parties"). These records shall be used or disclosed solely in connection with the currently pending VIOXX® litigation involving the person named above. This authorization shall cease to be effective as of the date on which the above-named person's VIOXX® litigation concludes. The Receiving Parties shall return or destroy the protected health information (including all copies made) at the end of the above-named person's litigation or proceeding.

I understand that the health information being used/disclosed may include information relating to the diagnosis and treatment of Human Immunodeficiency Virus (HIV), Acquired Immune Deficiency Syndrome (AIDS), sexually transmitted disease and drug and alcohol disorders.

This authorization also may include x-ray reports, CT scan reports, MRI scans, EEGs, EKGs, sonograms, arteriograms, discharge summaries, photographs, surgery consent forms, admission and discharge records, operation records, doctor and nurses notes (excluding psychotherapy notes maintained separately from the individual's medical record that document or analyze the contents of conversation during a private counseling session or a group, joint, or family counseling session by referring to something other than medication prescription and monitoring, counseling session start and stop times, the modalities and frequencies of treatment furnished, results of clinical tests, and any summary of the following items: diagnosis, functional status, the treatment plan, symptoms, prognosis and progress), prescriptions, medical bills, invoices, histories, diagnoses, narratives, and any correspondence/memoranda and billing information. It also includes, to the extent such records currently exist and are in your possession, insurance records, including Medicare/Medicaid and other public assistance claims, applications, statements, eligibility material, claims or claim disputes, resolutions and payments,

medical records provided as evidence of services provided, and any other documents or things pertaining to services furnished under Title XVII of the Social Security Act or other forms of public assistance (federal, state, local, etc.). This listing is not meant to be exclusive. This will further authorize you to provide updated medical records, x-rays, reports or copies thereof to the above attorney until the conclusion of the litigation. I understand that I have the right to revoke in writing my consent to this disclosure at any time, except to the extent that the above-named facility or provider already has taken action in reliance upon this authorization, or if this authorization was obtained as a condition of obtaining insurance coverage. I further understand that the above-named facility or provider cannot condition the provision of treatment, payment, enrollment in a health plan or eligibility for benefits on my provision of this authorization. I further understand that information disclosed pursuant to this authorization may be subject to redisclosure by the recipient to its clients, agents, employees, consultants, experts, the court, and others deemed necessary by the recipient to assist in this litigation and may no longer be protected by HIPAA. I further reserve the right to request the return or redaction of sensitive or embarrassing information, not germane to the litigation, that is disclosed to the Receiving Parties.

Any photostatic copy of this document shall have the same authority as the original, and may be substituted in its place. Copies of these materials are to be provided at the expense of Hughes Hubbard & Reed LLP or _____.

Dated this __ day of 2-20, 2007.

_Clifford Bailey_
Clifford Bailey



## PLAINTIFF PROFILE FORM FOR CLIFFORD O. BLACK, JR.

### I. CASE INFORMATION

A.    Name of person completing this form: Clifford O. Black Jr.

B.    If you are completing this questionnaire in a representative capacity (e.g., on behalf of the estate of a deceased person or a minor), please complete the following:

1. Social Security number

2. Maiden Or Other Names Used or By Which You Have Been Known:

3. Address:

4. State which individual or estate you are representing, and in what capacity you are representing the individual or estate?

5. If you were appointed as a representative by a court, state the:

6. What is your relationship to deceased or represented person or person claimed to be injured?

7. If you represent a decedent's estate, state the date of death of the decedent and the address of the place where the decedent died:

C.    Claim Information

1. Are you claiming that you have or may develop bodily injury as a result of taking VIOXX?    Yes __X__    No _____

*If "yes,"*
a. What is your understanding of the bodily injury you claim resulted from your use of VIOXX?   Stroke on left side.

b. When do you claim this injury occurred? August 2003

c. Who diagnosed the condition? Dr. Brian Foley and Dr. Michael Vaphaides

d. Did you ever suffer this type of injury prior to the date set forth in

# Exhibit C

answer to the prior question? Yes _____          No _X___

*If "yes,"* when and who diagnosed the condition at that time?

      e. Do you claim that that your use of VIOXX® worsened a condition that you already had or had in the past? Yes _____          No __X___

*If "yes,"* set forth the injury or condition; whether or not you had already recovered from that injury or condition before you took VIOXX; and the date of recovery, if any.

D.    Are you claiming mental and/or emotional damages as a consequence of VIOXX? Yes _____          No __X___

*If "yes,"* for each provider (including but not limited to primary care physician, psychiatrist, psychologist, counselor) from whom have sought treatment for psychological, psychiatric or emotional problems during the last ten (10) years, state:
a. Name and address of each person who treated you:
b. To your understanding, condition for which treated:
c. When treated:
d. Medications prescribed or recommended by provider:

## II.PERSONAL INFORMATION OF THE PERSON WHO USED VIOXX

A.    Name: Clifford Black

B.    Maiden or other names used or by which you have been known: None.

C.    Social Security Number: 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

D.    Address: 7247 County Road 79, Post Office Box 6, Daviston, Alabama 36256

E.    Identify each address at which you have resided during the last ten (10) years, and list when you started and stopped living at each one: Same as above.

F.    Driver's License Number and State Issuing License: 2324874, Alabama

G.    Date of Place and Birth: Russell Hospital, Alex City, Alabama, December 15, 1946

H.    Sex: Male __X__          Female_____

I.    Identify the highest level of education (high school, college, university or other

educational institution) you have attended (even if not completed), the dates of attendance, courses of study pursued, and diplomas or degrees awarded: High School, Twelve (12) years

J.    Employment Information.

1. Current employer (if not currently employed, last employer):
Name: Thompson Tractor Company
Address: 2401 Pinson Highway Box 10367, Birmingham, Alabama 35202
Dates of Employment: 1973-1998
Occupation/Job Duties: Service Manager, Store Manager

2. List the following for each employer you have had in the last ten (10) years: See Above.

3. Are you making a wage loss claim for either your present or previous employment? Yes _____    No __X___
If "yes," state your annual income at the time of the injury alleged in Section I©):

K.    Military Service Information: Have you ever served in the military, including the military reserve or national guard? Yes _____    No __X___

If "yes," were you ever rejected or discharged from military service for any reason relating to your physical, psychiatric or emotional condition?
Yes _____    No _____

L.    Insurance / Claim Information:

1. Have you ever filed a worker's compensation and/or social security disability (SSI or SSD) claim? Yes __X___    No _____

If "yes," to the best of your knowledge please state:
    a. Year claim was filed: 1998
    b. Nature of disability: Heart Problems, Stroke, Rheumatoid Arthritis, High Blood Pressure
    c. Approximate period of disability: 10 years

2. Have you ever been out of work for more than thirty (30) days for reasons related to your health (other than pregnancy)? Yes __X___    No _____

If "yes," set forth when and the reason.
Four years for disabilities stated above.
1998 For reasons stated above.

3. Have you ever filed a lawsuit or made a claim, other than in the present suit, relating to any bodily injury? Yes _____ No __X__

*If "yes,"* state to the best of your knowledge the court in which such action was filed, case name and/or names of adverse parties, and a brief description for the claims asserted.

M.    As an adult, have you been convicted of, or plead guilty to, a felony and/or crime of fraud or dishonesty? Yes _____ No __X__

*If "yes,"* set forth where, when and the felony and/or crime.

## III. FAMILY INFORMATION

A.    List for each marriage the name of your spouse; spouse's date of birth (for your current spouse only); spouse's occupation; date of marriage; date the marriage ended, if applicable; and how the marriage ended (e.g., divorce, annulment, death):

Name: Bobbie M. Black
Married: January 26, 1968
Occupation: Retired, February 27, 1998

B.    Has your spouse filed a loss of consortium claim in this action?
Yes _____ No __X__

C.    To the best of your knowledge did any child, parent, sibling, or grandparent of yours suffer from any type of cardiovascular disease including but not limited to: heart attack, abnormal rhythm, arteriosclerosis (hardening or the arteries), murmur, coronary artery disease, congestive heart failure, enlarged heart, leaking valves or prolapse, heart block, congenital heart abnormality, Scarlet Fever, Rheumatic Fever, atrial fibrillation, stroke?
Yes _____ No _____ Don't Know ___X__

*If "yes,"* identify each such person below and provide the information requested.

D.    If applicable, for each of your children, list his/her name, age and address:
No children.

E.    If you are claiming the wrongful death of a family member, list any and all heirs of the decedent. No wrongful death claim.

## V. VIOXX PRESCRIPTION INFORMATION

A.    Who prescribed VIOXX for you? Dr. Alan Paul

B.    On which dates did you begin to take, and stop taking, VIOXX?
      Started:  February 24, 2000
      Stopped: September 25, 2003

C.    Did you take VIOXX continuously during that period?
      Yes _X___        No _____        Don't Recall _____

D.    To your understanding, for what condition were you prescribed VIOXX?
      Rheumatoid Arthritis

E.    Did you renew your prescription for VIOXX?
      Yes __X__    No _____    Don't Recall____

F.    If you received any samples of VIOXX, state who provided them, what dosage,
      how much and when they were provided:

G.    Which form of VIOXX did you take (check all that apply)?
      _____ 12.5 mg Tablet (round, cream, MRK 74)
      _____ 12.5 mg Oral Suspension
      __X__ 25 mg Tablet (round, yellow, MRK 110) 2 years
      _____ 25 mg Oral Suspension
      _____ 50 mg Tablet (round, orange, MRK 114)

H.    How many times per day did you take VIOXX? Once daily

I.    Did you request that any doctor or clinic provide you with VIOXX or a
      prescription for VIOXX? Yes _____    No _X____    Don't Recall _____

J.    Instructions or Warnings:

      1. Did you receive any written or oral information about VIOXX before you took
      it?  Yes _____    No _____    Don't Recall ___x__

      2. Did you receive any written or oral information about VIOXX while you took
      it? Yes _____    No _____    Don't Recall __x___

      3. If "yes,"
              a. When did you receive that information?
              b. From whom did you receive it?
              c. What information did you receive?

K.      What over-the-counter pain relief medications, if any, were you taking at the same time you were taking VIOXX?  None

## V. MEDICAL BACKGROUND

A.      Height: 5"11

B.      Current Weight : 250 pounds
Weight at the time of the injury, illness, or disability described in Section I©):
220 pounds

C.      Smoking/Tobacco Use History: *Check the answer and fill in the blanks applicable to your history of smoking and/or tobacco use.*

___X___   Never smoked cigarettes/cigars/pipe tobacco or used chewing tobacco/snuff.
_____ Past smoker of cigarettes/cigars/pipe tobacco or used chewing tobacco/snuff.
      a. Date on which smoking/tobacco use ceased:
      b. Amount smoked or used: on average_____ per day for _____
      years.
_____Current smoker of cigarettes/cigars/pipe tobacco or user of chewing
        tobacco/snuff.
Amount smoked or used: on average 1 pack per day for 10 years.
____ Smoked different amounts at different times.

D.      Drinking History. Do you now drink or have you in the past drank alcohol (beer, wine, whiskey, etc.)? Yes _____   No __X___

If "yes," fill in the appropriate blank with the number of drinks that represents your average alcohol consumption during the period you were taking VIOXX up to the time that you sustained the injuries alleged in the complaint:
        _____ drinks per week,
        _____ drinks per month,
        _____ drinks per year, or
        Other (describe):

E.      Illicit Drugs. Have you ever used (even one time) any illicit drugs of any kind within one (1) year before, or any time after, you first experienced your alleged VIOXX- related injury?" Yes _____     No __X___     Don't Recall _____

If "yes", identify each substance and state when you first and last used it.

F.   Please indicate to the best of your knowledge whether you have ever received any of the following treatments or diagnostic procedures:

1. Cardiovascular surgeries, including, but not limited to, the following, and specify or what condition the surgery was performed: open heart/bypass surgery, pacemaker implantation, vascular surgery, IVC filter placement, carotid (neck artery) surgery, lung resection, intestinal surgery:
Surgery: None.

2. Treatments/interventions for heart attack, angina (chest pain), or lung ailments:
Treatment/Intervention: None.

3. To your knowledge, have you had any of the following tests performed: chest Xray, CT scan, MRI, angiogram, EKG, echocardiogram, TEE (trans-esophageal echo), bleeding scan, endoscopy, lung bronchoscopy, carotid duplex/ultrasound, MRI/MRA of the head/neck, angiogram of the head/neck, CT scan of the head, bubble/microbubble study, or Holter monitor?
Yes __X___     No _____     Don't Recall _____

*If "yes,"* answer the following:
   Diagnostic Test When Treating: Several listed above. See Medical Records.
   Physician: Dr. Brian Foley
   Hospital Reason: Stroke.

## VI. DOCUMENTS

Please indicate if any of the following documents and things are currently in your possession, custody, or control, or in the possession, custody, or control of your lawyers by checking *"yes"* or *"no."* Where you have indicated *"yes,"* please attach the documents and things to your responses to this profile form.

A.   Records of physicians, hospitals, pharmacies, and other healthcare providers identified in response to this profile form.     Yes __X___     No _____

B.   Decedent's death certificate (if applicable).     Yes _____     No _X___

C.   Report of autopsy of decedent (if applicable).     Yes _____     No __X__

## VII. LIST OF MEDICAL PROVIDERS AND OTHER SOURCES OF INFORMATION

*List the name and address of each of the following:*

A.     Your current family and/or primary care physician:

    Dr. Alan Paul
    2145 Highland Avenue Suite 200
    Birmingham, Alabama 35202

B.     To the best of your ability, identify each of your primary care physicians for the last ten (10) years.

    Dr. Alan Paul
    2145 Highland Avenue Suite 200
    Birmingham, Alabama 35202

    Dr. Brian Foley
    East Alabama Cardiovascular Association P.C.
    2123 Executive Park Drive
    Opelika, AL 36801

    Dr. Michael Vaphaides
    700 South 18th Street, Suite 601
    Birmingham, Alabama 35233

C.     Each hospital, clinic, or healthcare facility where you have received inpatient treatment or been admitted as a patient during the last ten (10) years.

    East Alabama Medical Center
    2000 Pepperell Parkway
    Opelika, AL 36801-5452

D.     Each hospital, clinic, or healthcare facility where you have received outpatient treatment (including treatment in an emergency room) during the last ten (10) years.

    East Alabama Medical Center
    2000 Pepperell Parkway
    Opelika, AL 36801-5452

E.  Each physician or healthcare provider from whom you have received treatment in the last ten (10) years.

Dr. Alan Paul
2145 Highland Avenue Suite 200
Birmingham, Alabama 35202

Dr. Brian Foley
East Alabama Cardiovascular Association P.C.
2123 Executive Park Drive
Opelika, AL 36801

Dr. Michael Vaphaides
700 South 18th Street, Suite 601
Birmingham, Alabama 35233

F.  Each pharmacy that has dispensed medication to you in the last ten (10) years.

Rite Aid Pharmacy
459 North Brnax Street
Dadeville, AL 36853

G.  If you have submitted a claim for social security disability benefits in the last ten (10) years, state the name and address of the office that is most likely to have records concerning your claim.

Social Security Office
301 13th Street
Anniston, AL 36202

H.  If you have submitted a claim for worker's compensation, state the name and address of the entity that is most likely to have records concerning your claim. None.

## CERTIFICATION

I declare under penalty of perjury subject to 28 U.S.C. § 1746 that all of the information provided in this Profile Form is true and correct to the best of my knowledge, that I have completed the List of Medical Providers and Other Sources of Information appended hereto, which is true and correct to the best of my knowledge, that I have supplied all the documents requested in part VI of this declaration, to the extent that such documents are in my possession, custody, or control, or in the possession, custody, or control of my lawyers, and that I have supplied the authorizations attached to this declaration.

_____
Signature

2/16/07
Date

Clifford O. Black
Print Name

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA
BAILEY, et als., v MERCK & CO, INC., et als.
Case Number: 3:06 cv 00979
AUTHORIZATION FOR RELEASE OF RECORDS (To be signed by plaintiffs *not*
making a claim for lost wages or earnings or earning capacity.)

Name: Clifford Black
Date of Birth: 12-15-1946
Social Security Number: 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

I hereby authorize _____ to release all
existing records and information in its possession regarding the above-named person's
employment and education (with the exception of W-4 and W-2 forms) to the law firm of
HUGHES HUBBARD & REED LLP, 101 Hudson Street, Suite 3601, Jersey City, New
Jersey 07302, and/or to the law firm of RUSHTON, STAKLEY, JOHNSTON &
GARRETT, P.A., Post Office Box 270, Montgomery, Alabama 36101-0270,
and/or to the law firm of _____
_____ and/or their designated agents ("Receiving Parties").
These records shall be used or disclosed solely in connection with the currently pending
VIOXX® litigation involving the person named above. This authorization shall cease to be
effective as of the date on which the above-named person's VIOXX® litigation concludes.
I understand that this authorization includes the above-named person's complete
employment personnel file with the exception of W-4 and W-2 forms (including attendance
reports, performance reports, medical reports, workers' compensation claims), and also includes
all other records relating to employment, past and present, all records related to claims for
disability, and all educational records (including those relating to courses taken, degrees
obtained, and attendance records). This listing is not meant to be exclusive.
Any photostatic copy of this document shall have the same authority as the original, and
may be substituted in its place.

Copies of these materials are to be provided at the expense of Hughes Hubbard & Reed LLP or

Dated this 28th day of _february_ 2007.

_Clifford Black_
Clifford Black

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA
BAILEY, et als., v MERCK & CO. INC., et als.
Case Number: 3:06 cv 00979

AUTHORIZATION FOR RELEASE OF MEDICAL RECORDS PURSUANT TO
45 C.F.R. § 164.508 (HIPAA)

Name: Clifford Bailey
Date of Birth: 11-29-1942
Social Security Number: 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

I hereby authorize _____ to release all existing medical records regarding the above-named person's medical care, treatment, physical condition, and/or medical expenses to the law firm of **HUGHES HUBBARD & REED LLP, 101 Hudson Street, Suite 3601, Jersey City, New Jersey 07302**, and/or to the law firm of **RUSHTON, STAKLEY, JOHNSTON & GARRETT, P.A., Post Office Box 270, Montgomery, Alabama 36101-0270**, and/or to the law firm of _____ and/or their designated agents ("Receiving Parties"). These records shall be used or disclosed solely in connection with the currently pending VIOXX® litigation involving the person named above. This authorization shall cease to be effective as of the date on which the above-named person's VIOXX® litigation concludes. The Receiving Parties shall return or destroy the protected health information (including all copies made) at the end of the above-named person's litigation or proceeding.

I understand that the health information being used/disclosed may include information relating to the diagnosis and treatment of Human Immunodeficiency Virus (HIV), Acquired Immune Deficiency Syndrome (AIDS), sexually transmitted disease and drug and alcohol disorders.

This authorization also may include x-ray reports, CT scan reports, MRI scans, EEGs, EKGs, sonograms, arteriograms, discharge summaries, photographs, surgery consent forms, admission and discharge records, operation records, doctor and nurses notes (excluding psychotherapy notes maintained separately from the individual's medical record that document or analyze the contents of conversation during a private counseling session or a group, joint, or family counseling session by referring to something other than medication prescription and monitoring, counseling session start and stop times, the modalities and frequencies of treatment furnished, results of clinical tests, and any summary of the following items: diagnosis, functional status, the treatment plan, symptoms, prognosis and progress), prescriptions, medical bills, invoices, histories, diagnoses, narratives, and any correspondence/memoranda and billing information. It also includes, to the extent such records currently exist and are in your possession, insurance records, including Medicare/Medicaid and other public assistance claims, applications, statements, eligibility material, claims or claim disputes, resolutions and payments,

medical records provided as evidence of services provided, and any other documents or things pertaining to services furnished under Title XVII of the Social Security Act or other forms of public assistance (federal, state, local, etc.). This listing is not meant to be exclusive. This will further authorize you to provide updated medical records, x-rays, reports or copies thereof to the above attorney until the conclusion of the litigation. I understand that I have the right to revoke in writing my consent to this disclosure at any time, except to the extent that the above-named facility or provider already has taken action in reliance upon this authorization, or if this authorization was obtained as a condition of obtaining insurance coverage. I further understand that the above-named facility or provider cannot condition the provision of treatment, payment, enrollment in a health plan or eligibility for benefits on my provision of this authorization. I further understand that information disclosed pursuant to this authorization may be subject to redisclosure by the recipient to its clients, agents, employees, consultants, experts, the court, and others deemed necessary by the recipient to assist in this litigation and may no longer be protected by HIPAA. I further reserve the right to request the return or redaction of sensitive or embarrassing information, not germane to the litigation, that is disclosed to the Receiving Parties.

Any photostatic copy of this document shall have the same authority as the original, and may be substituted in its place. Copies of these materials are to be provided at the expense of Hughes Hubbard & Reed LLP or _____.

Dated this ___ day of _2 - 28_, 2007.

_Clifford Bailey_
Clifford Bailey



<u>**PLAINTIFF PROFILE FORM FOR CLIFFORD O. BLACK, JR.**</u>

I. CASE INFORMATION

A.      Name of person completing this form: Clifford O. Black Jr.

B.      If you are completing this questionnaire in a representative capacity (e.g., on behalf of the estate of a deceased person or a minor), please complete the following:

1. Social Security number

2. Maiden Or Other Names Used or By Which You Have Been Known:

3. Address:

4. State which individual or estate you are representing, and in what capacity you are representing the individual or estate?

5. If you were appointed as a representative by a court, state the:

6. What is your relationship to deceased or represented person or person claimed to be injured?

7. If you represent a decedent's estate, state the date of death of the decedent and the address of the place where the decedent died:

C.      Claim Information

1. Are you claiming that you have or may develop bodily injury as a result of taking VIOXX?      Yes __X__      No _____

*If "yes,"*

a. What is your understanding of the bodily injury you claim resulted from your use of VIOXX?   Stroke on left side.

b. When do you claim this injury occurred? August 2003

c. Who diagnosed the condition? Dr. Brian Foley and Dr. Michael Vaphaides

d. Did you ever suffer this type of injury prior to the date set forth in

**Exhibit C**

answer to the prior question? Yes _____     No _X___

*If "yes,"* when and who diagnosed the condition at that time?

  e. Do you claim that: that your use of VIOXX® worsened a condition that you already had or had in the past? Yes _____     No __X___

*If "yes,"* set forth the injury or condition; whether or not you had already recovered from that injury or condition before you took VIOXX; and the date of recovery, if any.

D. Are you claiming mental and/or emotional damages as a consequence of VIOXX? Yes _____     No __X___

*If "yes,"* for each provider (including but not limited to primary care physician, psychiatrist, psychologist, counselor) from whom have sought treatment for psychological, psychiatric or emotional problems during the last ten (10) years, state:
 a. Name and address of each person who treated you:
 b. To your understanding, condition for which treated:
 c. When treated:
 d. Medications prescribed or recommended by provider:

## II. PERSONAL INFORMATION OF THE PERSON WHO USED VIOXX

A. Name: Clifford Black

B. Maiden or other names used or by which you have been known: None.

C. Social Security Number: 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

D. Address: 7247 County Road 79, Post Office Box 6, Daviston, Alabama 36256

E. Identify each address at which you have resided during the last ten (10) years, and list when you started and stopped living at each one: Same as above.

F. Driver's License Number and State Issuing License: 2324874, Alabama

G. Date of Place and Birth: Russell Hospital, Alex City, Alabama, December 15, 1946

H. Sex: Male __X__     Female_____

I. Identify the highest level of education (high school, college, university or other

educational institution) you have attended (even if not completed), the dates of attendance, courses of study pursued, and diplomas or degrees awarded: High School, Twelve (12) years

J.    Employment Information.

1. Current employer (if not currently employed, last employer):
Name: Thompson Tractor Company
Address: 2401 Pinson Highway Box 10367, Birmingham, Alabama 35202
Dates of Employment: 1973-1998
Occupation/Job Duties: Service Manager, Store Manager

2. List the following for each employer you have had in the last ten (10) years: See Above.

3. Are you making a wage loss claim for either your present or previous employment? Yes _____    No __X___
If "yes," state your annual income at the time of the injury alleged in Section I©):

K.    Military Service Information: Have you ever served in the military, including the military reserve or national guard? Yes _____    No __X___

If "yes," were you ever rejected or discharged from military service for any reason relating to your physical, psychiatric or emotional condition?
Yes _____    No _____

L.    Insurance / Claim Information:

1. Have you ever filed a worker's compensation and/or social security disability (SSI or SSD) claim? Yes __X___    No _____

If "yes," to the best of your knowledge please state:
    a. Year claim was filed: 1998
    b. Nature of disability: Heart Problems, Stroke, Rheumatoid Arthritis, High Blood Pressure
    c. Approximate period of disability: 10 years

2. Have you ever been out of work for more than thirty (30) days for reasons related to your health (other than pregnancy)? Yes __X___    No _____

If "yes," set forth when and the reason.
Four years for disabilities stated above.
1998 For reasons stated above.

3. Have you ever filed a lawsuit or made a claim, other than in the present suit, relating to any bodily injury? Yes \_\_\_\_\_    No \_\_X\_\_

*If "yes,"* state to the best of your knowledge the court in which such action was filed, case name and/or names of adverse parties, and a brief description for the claims asserted.

M.    As an adult, have you been convicted of, or plead guilty to, a felony and/or crime of fraud or dishonesty? Yes \_\_\_\_\_    No \_\_X\_\_\_

*If "yes,"* set forth where, when and the felony and/or crime.

## III. FAMILY INFORMATION

A.    List for each marriage the name of your spouse; spouse's date of birth (for your current spouse only); spouse's occupation; date of marriage; date the marriage ended, if applicable; and how the marriage ended (e.g., divorce, annulment, death):

Name: Bobbie M. Black
Married: January 26, 1968
Occupation: Retired, February 27, 1998

B.    Has your spouse filed a loss of consortium claim in this action?
Yes \_\_\_\_\_    No \_\_X\_\_

C.    To the best of your knowledge did any child, parent, sibling, or grandparent of yours suffer from any type of cardiovascular disease including but not limited to: heart attack, abnormal rhythm, arteriosclerosis (hardening or the arteries), murmur, coronary artery disease, congestive heart failure, enlarged heart, leaking valves or prolapse, heart block, congenital heart abnormality, Scarlet Fever, Rheumatic Fever, atrial fibrillation, stroke?
Yes \_\_\_\_\_    No \_\_\_\_\_    Don't Know \_\_\_X\_\_

*If "yes,"* identify each such person below and provide the information requested.

D.    If applicable, for each of your children, list his/her name, age and address:
No children.

E.    If you are claiming the wrongful death of a family member, list any and all heirs of the decedent. No wrongful death claim.

## V. VIOXX PRESCRIPTION INFORMATION

A.    Who prescribed VIOXX for you? Dr. Alan Paul

B.    On which dates did you begin to take, and stop taking, VIOXX?
      Started: February 24, 2000
      Stopped: September 25, 2003

C.    Did you take VIOXX continuously during that period?
      Yes _X___    No _____    Don't Recall _____

D.    To your understanding, for what condition were you prescribed VIOXX?
      Rheumatoid Arthritis

E.    Did you renew your prescription for VIOXX?
      Yes __X__    No _____    Don't Recall____

F.    If you received any samples of VIOXX, state who provided them, what dosage,
      how much and when they were provided:

G.    Which form of VIOXX did you take (check all that apply)?
      _____ 12.5 mg Tablet (round, cream, MRK 74)
      _____ 12.5 mg Oral Suspension
      __X__ 25 mg Tablet (round, yellow, MRK 110) 2 years
      _____ 25 mg Oral Suspension
      _____ 50 mg Tablet (round, orange, MRK 114)

H.    How many times per day did you take VIOXX? Once daily

I.    Did you request that any doctor or clinic provide you with VIOXX or a
      prescription for VIOXX? Yes _____    No _X____    Don't Recall _____

J.    Instructions or Warnings:

      1. Did you receive any written or oral information about VIOXX before you took
      it?  Yes _____    No _____    Don't Recall ____x__

      2. Did you receive any written or oral information about VIOXX while you took
      it? Yes _____    No _____    Don't Recall __x___

      3. If "yes,"
              a. When did you receive that information?
              b. From whom did you receive it?
              c. What information did you receive?

K.      What over-the-counter pain relief medications, if any, were you taking at the
same time you were taking VIOXX?  None

## V. MEDICAL BACKGROUND

A.      Height: 5"11

B.      Current Weight : 250 pounds
Weight at the time of the injury, illness, or disability described in Section I©):
220 pounds

C.      Smoking/Tobacco Use History: *Check the answer and fill in the blanks applicable
to your history of smoking and/or tobacco use.*

___X__   Never smoked cigarettes/cigars/pipe tobacco or used chewing
tobacco/snuff.
_____   Past smoker of cigarettes/cigars/pipe tobacco or used chewing
tobacco/snuff.
a. Date on which smoking/tobacco use ceased:
b. Amount smoked or used: on average_____ per day for _____
years.
_____Current smoker of cigarettes/cigars/pipe tobacco or user of chewing
tobacco/snuff.
Amount smoked or used: on average 1 pack per day for 10 years.
____ Smoked different amounts at different times.

D.      Drinking History. Do you now drink or have you in the past drank alcohol (beer,
wine, whiskey, etc.)? Yes _____    No __X___

*If "yes," fill in the appropriate blank* with the number of drinks that represents
your average alcohol consumption during the period you were taking VIOXX up
to the time that you sustained the injuries alleged in the complaint:
_____ drinks per week,
_____ drinks per month,
_____ drinks per year, *or*
Other (describe):

E.      Illicit Drugs. Have you ever used (even one time) any illicit drugs of any kind
within one (1) year before, or any time after, you first experienced your alleged
VIOXX- related injury?" Yes _____    No __X___    Don't Recall _____

*If "yes",* identify each substance and state when you first and last used it.

F.     Please indicate to the best of your knowledge whether you have ever received any of the following treatments or diagnostic procedures:

    1. Cardiovascular surgeries, including, but not limited to, the following, and specify or what condition the surgery was performed: open heart/bypass surgery, pacemaker implantation, vascular surgery, IVC filter placement, carotid (neck artery) surgery, lung resection, intestinal surgery:
Surgery: None.

    2. Treatments/interventions for heart attack, angina (chest pain), or lung ailments:
Treatment/Intervention: None.

    3. To your knowledge, have you had any of the following tests performed: chest Xray, CT scan, MRI, angiogram, EKG, echocardiogram, TEE (trans-esophageal echo), bleeding scan, endoscopy, lung bronchoscopy, carotid duplex/ultrasound, MRI/MRA of the head/neck, angiogram of the head/neck, CT scan of the head, bubble/microbubble study, or Holter monitor?
Yes __X___    No _____    Don't Recall _____

*If "yes,"* answer the following:
    Diagnostic Test When Treating: Several listed above.  See Medical Records.
    Physician: Dr. Brian Foley
    Hospital Reason: Stroke.

## VI. DOCUMENTS

Please indicate if any of the following documents and things are currently in your possession, custody, or control, or in the possession, custody, or control of your lawyers by checking *"yes"* or *"no."* Where you have indicated *"yes,"* please attach the documents and things to your responses to this profile form.

A.    Records of physicians, hospitals, pharmacies, and other healthcare providers identified in response to this profile form.    Yes __X___    No _____

B.    Decedent's death certificate (if applicable).    Yes _____    No _X___

C.    Report of autopsy of decedent (if applicable).    Yes _____    No __X__

VII. LIST OF MEDICAL PROVIDERS AND OTHER SOURCES OF
INFORMATION

*List the name and address of each of the following:*

A.    Your current family and/or primary care physician:

      Dr. Alan Paul
      2145 Highland Avenue Suite 200
      Birmingham, Alabama 35202

B.    To the best of your ability, identify each of your primary care physicians for the
last ten (10) years.

      Dr. Alan Paul
      2145 Highland Avenue Suite 200
      Birmingham, Alabama 35202

      Dr. Brian Foley
      East Alabama Cardiovascular Association P.C.
      2123 Executive Park Drive
      Opelika, AL 36801

      Dr. Michael Vaphaides
      700 South 18th Street, Suite 601
      Birmingham, Alabama 35233

C.    Each hospital, clinic, or healthcare facility where you have received inpatient
treatment or been admitted as a patient during the last ten (10) years.

      East Alabama Medical Center
      2000 Pepperell Parkway
      Opelika, AL 36801-5452

D.    Each hospital, clinic, or healthcare facility where you have received outpatient
treatment (including treatment in an emergency room) during the last ten (10)
years.

      East Alabama Medical Center
      2000 Pepperell Parkway
      Opelika, AL 36801-5452

E.    Each physician or healthcare provider from whom you have received treatment in the last ten (10) years.

Dr. Alan Paul
2145 Highland Avenue Suite 200
Birmingham, Alabama 35202

Dr. Brian Foley
East Alabama Cardiovascular Association P.C.
2123 Executive Park Drive
Opelika, AL 36801

Dr. Michael Vaphaides
700 South 18th Street, Suite 601
Birmingham, Alabama 35233

F.    Each pharmacy that has dispensed medication to you in the last ten (10) years.

Rite Aid Pharmacy
459 North Brnax Street
Dadeville, AL 36853

G.    If you have submitted a claim for social security disability benefits in the last ten (10) years, state the name and address of the office that is most likely to have records concerning your claim.

Social Security Office
301 13th Street
Anniston, AL 36202

H.    If you have submitted a claim for worker's compensation, state the name and address of the entity that is most likely to have records concerning your claim. None.

CERTIFICATION

I declare under penalty of perjury subject to 28 U.S.C. § 1746 that all of the information provided in this Profile Form is true and correct to the best of my knowledge, that I have completed the List of Medical Providers and Other Sources of Information appended hereto, which is true and correct to the best of my knowledge, that I have supplied all the documents requested in part VI of this declaration, to the extent that such documents are in my possession, custody, or control, or in the possession, custody, or control of my lawyers, and that I have supplied the authorizations attached to this declaration.

_____
Signature

_2/16/07_
Date

_Clifford O. Black_
Print Name

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA
BAILEY, et als., v MERCK & CO, INC., et als.
Case Number: 3:06 cv 00979
AUTHORIZATION FOR RELEASE OF RECORDS (To be signed by plaintiffs *not*
making a claim for lost wages or earnings or earning capacity.)

Name: Clifford Black
Date of Birth:12-15-1946
Social Security Number: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

I hereby authorize _____ to release all
existing records and information in its possession regarding the above-named person's
employment and education (with the exception of W-4 and W-2 forms) to the law firm of
**HUGHES HUBBARD & REED LLP, 101 Hudson Street, Suite 3601, Jersey City, New
Jersey 07302, and/or to the law firm of RUSHTON, STAKLEY, JOHNSTON &
GARRETT, P.A., Post Office Box 270, Montgomery, Alabama 36101-0270,
and/or to the law firm of** _____
_____and/or their designated agents ("Receiving Parties").
These records shall be used or disclosed solely in connection with the currently pending
VIOXX® litigation involving the person named above. This authorization shall cease to be
effective as of the date on which the above-named person's VIOXX® litigation concludes.
I understand that this authorization includes the above-named person's complete
employment personnel file with the exception of W-4 and W-2 forms (including attendance
reports, performance reports, medical reports, workers' compensation claims), and also includes
all other records relating to employment, past and present, all records related to claims for
disability, and all educational records (including those relating to courses taken, degrees
obtained, and attendance records). This listing is not meant to be exclusive.
Any photostatic copy of this document shall have the same authority as the original, and
may be substituted in its place.

Copies of these materials are to be provided at the expense of Hughes Hubbard & Reed LLP or

_____.

Dated this 21th day of _February_ 2007.

_Clifford Black_
Clifford Black

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA
BAILEY, et als., v MERCK & CO. INC., et als.
Case Number: 3:06 cv 00979

AUTHORIZATION FOR RELEASE OF MEDICAL RECORDS PURSUANT TO
45 C.F.R. § 164.508 (HIPAA)

Name: Clifford Black
Date of Birth:12-15-1946
Social Security Number: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

I hereby authorize _____ to release all existing medical records regarding the above-named person's medical care, treatment, physical condition, and/or medical expenses to the law firm of **HUGHES HUBBARD & REED LLP, 101 Hudson Street, Suite 3601, Jersey City, New Jersey 07302,** and/or to the law firm of **RUSHTON, STAKLEY, JOHNSTON & GARRETT, P.A., Post Office Box 270, Montgomery, Alabama 36101-0270,** and/or to the law firm of _____ _____and/or their designated agents ("Receiving Parties"). These records shall be used or disclosed solely in connection with the currently pending VIOXX® litigation involving the person named above. This authorization shall cease to be effective as of the date on which the above-named person's VIOXX® litigation concludes. The Receiving Parties shall return or destroy the protected health information (including all copies made) at the end of the above-named person's litigation or proceeding.

     I understand that the health information being used/disclosed may include information relating to the diagnosis and treatment of Human Immunodeficiency Virus (HIV), Acquired Immune Deficiency Syndrome (AIDS), sexually transmitted disease and drug and alcohol disorders.

     This authorization also may include x-ray reports, CT scan reports, MRI scans, EEGs, EKGs, sonograms, arteriograms, discharge summaries, photographs, surgery consent forms, admission and discharge records, operation records, doctor and nurses notes (excluding psychotherapy notes maintained separately from the individual's medical record that document or analyze the contents of conversation during a private counseling session or a group, joint, or family counseling session by referring to something other than medication prescription and monitoring, counseling session start and stop times, the modalities and frequencies of treatment furnished, results of clinical tests, and any summary of the following items: diagnosis, functional status, the treatment plan, symptoms, prognosis and progress), prescriptions, medical bills, invoices, histories, diagnoses, narratives, and any correspondence/memoranda and billing information. It also includes, to the extent such records currently exist and are in your possession, insurance records, including Medicare/Medicaid and other public assistance claims, applications, statements, eligibility material, claims or claim disputes, resolutions and payments,

medical records provided as evidence of services provided, and any other documents or things

pertaining to services furnished under Title XVII of the Social Security Act or other forms of public assistance (federal, state, local, etc.). This listing is not meant to be exclusive. This will further authorize you to provide updated medical records, x-rays, reports or copies thereof to the above attorney until the conclusion of the litigation. I understand that I have the right to revoke in writing my consent to this disclosure at any time, except to the extent that the above-named facility or provider already has taken action in reliance upon this authorization, or if this authorization was obtained as a condition of obtaining insurance coverage. I further understand that the above-named facility or provider cannot condition the provision of treatment, payment, enrollment in a health plan or eligibility for benefits on my provision of this authorization. I further understand that information disclosed pursuant to this authorization may be subject to redisclosure by the recipient to its clients, agents, employees, consultants, experts, the court, and others deemed necessary by the recipient to assist in this litigation and may no longer be protected by HIPAA. I further reserve the right to request the return or redaction of sensitive or embarrassing information, not germane to the litigation, that is disclosed to the Receiving Parties.

Any photostatic copy of this document shall have the same authority as the original, and may be substituted in its place. Copies of these materials are to be provided at the expense of Hughes Hubbard & Reed LLP or _____.

Dated this 28th day of February, 2007.

_Clifford Black_ (signature)

Clifford Black



**PLAINTIFF PROFILE FORM FOR WESLEY CALHOUN**

I. CASE INFORMATION

A.    Name of person completing this form: Wesley Calhoun

B.    If you are completing this questionnaire in a representative capacity (e.g., on behalf of the estate of a deceased person or a minor), please complete the following:

   1. Social Security number:

   2. Maiden Or Other Names Used or By Which You Have Been Known:

   3. Address:

   4. State which individual or estate you are representing, and in what capacity you are representing the individual or estate?

   5. If you were appointed as a representative by a court, state the:

   6. What is your relationship to deceased or represented person or person claimed to be injured?

   7. If you represent a decedent's estate, state the date of death of the decedent and the address of the place where the decedent died:

C.    Claim Information

      1. Are you claiming that you have or may develop bodily injury as a result of taking VIOXX?    Yes _X____    No _____

*If "yes,"*

      a. What is your understanding of the bodily injury you claim resulted from your use of VIOXX?   I believe it caused some problems with my heart.

      b. When do you claim this injury occurred?   A few years ago.

      c. Who diagnosed the condition? He was the doctor in the ER at Randolph County Medical Center.

      d. Did you ever suffer this type of injury prior to the date set forth in answer to the prior question? Yes _____        No __X___

Exhibit D

*If "yes,"* when and who diagnosed the condition at that time?

      e. Do you claim that that your use of VIOXX® worsened a condition that
      you already had or had in the past? Yes _____ No _____
      I don't know if it made any of my conditions worse.  Please see medical
      records.  It made my eye bleed.

*If "yes,"* set forth the injury or condition; whether or not you had already
recovered from that injury or condition before you took VIOXX; and the date of
recovery, if any.

D.    Are you claiming mental and/or emotional damages as a consequence of VIOXX?
      Yes _____ No __X___

*If "yes,"* for each provider (including but not limited to primary care physician,
      psychiatrist, psychologist, counselor) from whom have sought treatment
      for psychological, psychiatric or emotional problems during the last ten
      (10) years, state:
      a. Name and address of each person who treated you:
      b. To your understanding, condition for which treated:
      c. When treated:
      d. Medications prescribed or recommended by provider:


II. PERSONAL INFORMATION OF THE PERSON WHO USED VIOXX

A.    Name: Wesley Calhoun

B.    Maiden or other names used or by which you have been known:

C.    Social Security Number: 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

D.    Address: Post Office Box 342, Roanoke, Alabama 36274

E.    Identify each address at which you have resided during the last ten (10) years,
      and list when you started and stopped living at each one: Same as above.

F.    Driver's License Number and State Issuing License: AL 4624685

G.    Date of Place and Birth: Carrollton, Georgia

H.    Sex: Male __X__      Female_____

I.    Identify the highest level of education (high school, college, university or other educational institution) you have attended (even if not completed), the dates of attendance, courses of study pursued, and diplomas or degrees awarded: 10th grade

J.    Employment Information.

    1. Current employer: Not currently employed.  I have been on disability since 1995.

    2. List the following for each employer you have had in the last ten (10) years: None.

    3. Are you making a wage loss claim for either your present or previous employment? Yes _____   No __X__
    *If "yes,"* state your annual income at the time of the injury alleged in Section I©):

K.    Military Service Information: Have you ever served in the military, including the military reserve or national guard? Yes _____   No __X__

    *If "yes,"* were you ever rejected or discharged from military service for any reason relating to your physical, psychiatric or emotional condition? Yes _____   No _____

L.    Insurance / Claim Information:

    1. Have you ever filed a worker's compensation and/or social security disability (SSI or SSD) claim? Yes __X___   No _____

    *If "yes,"* to the best of your knowledge please state:
        a. Year claim was filed: 1995
        b. Nature of disability: Diabetes
        c. Approximate period of disability: I have had Diabetes for 40 years.

    2. Have you ever been out of work for more than thirty (30) days for reasons related to your health (other than pregnancy)? Yes __X___   No _____

    *If "yes,"* set forth when and the reason.  Four years for disabilities stated above.

    3. Have you ever filed a lawsuit or made a claim, other than in the present suit,

relating to any bodily injury? Yes __X___    No _____

*If "yes,"* state to the best of your knowledge the court in which such action was filed, case name and/or names of adverse parties, and a brief description for the claims asserted.
I filed a Baycol lawsuit, and I had a car wreck that went to court.

M.    As an adult, have you been convicted of, or plead guilty to, a felony and/or crime of fraud or dishonesty? Yes _____    No __X__

*If "yes,"* set forth where, when and the felony and/or crime.

## III.  FAMILY INFORMATION

A.    List for each marriage the name of your spouse; spouse's date of birth (for your current spouse only); spouse's occupation; date of marriage; date the marriage ended, if applicable; and how the marriage ended (e.g., divorce, annulment, death):

Name: Vickie Calhoun
Married: December 31, 1982
Occupation: Lease Hand

B.    Has your spouse filed a loss of consortium claim in this action?
Yes _____    No __X__

C.    To the best of your knowledge did any child, parent, sibling, or grandparent of yours suffer from any type of cardiovascular disease including but not limited to: heart attack, abnormal rhythm, arteriosclerosis (hardening or the arteries), murmur, coronary artery disease, congestive heart failure, enlarged heart, leaking valves or prolapse, heart block, congenital heart abnormality, Scarlet Fever, Rheumatic Fever, atrial fibrillation, stroke?
Yes _____    No _____    Don't Know __X__

*If "yes,"* identify each such person below and provide the information requested.

D.    If applicable, for each of your children, list his/her name, age and address:
Christy Calhoun, age 22, Roanoke, AL

E.    If you are claiming the wrongful death of a family member, list any and all heirs of the decedent. None.

## IV. VIOXX PRESCRIPTION INFORMATION

A.    Who prescribed VIOXX for you? Dr. Gil Maddox

B.    On which dates did you begin to take, and stop taking, VIOXX? 2002-2003

C.    Did you take VIOXX continuously during that period?
Yes __X__    No _____    Don't Recall _____

D.    To your understanding, for what condition were you prescribed VIOXX?
Back Pain from a car wreck.

E.    Did you renew your prescription for VIOXX?
Yes _____    No __X__    Don't Recall _____

F.    If you received any samples of VIOXX, state who provided them, what dosage,
how much and when they were provided:
Dr. Gil Maddox provided the samples for me.

G.    Which form of VIOXX did you take (check all that apply)?
_____ 12.5 mg Tablet (round, cream, MRK 74)
_____ 12.5 mg Oral Suspension
_____ 25 mg Tablet (round, yellow, MRK 110)
_____ 25 mg Oral Suspension
__X__ 50 mg Tablet (round, orange, MRK 114)

H.    How many times per day did you take VIOXX? Once.

I.    Did you request that any doctor or clinic provide you with VIOXX or a
prescription for VIOXX? Yes _____    No __X__  Don't Recall _____

J.    Instructions or Warnings:

1. Did you receive any written or oral information about VIOXX before you took
it?  Yes _____    No _____    Don't Recall _X____

2. Did you receive any written or oral information about VIOXX while you took
it? Yes _____    No _____    Don't Recall __X___

3. If "yes,"
a. When did you receive that information?
b. From whom did you receive it?
c. What information did you receive?

K.    What over-the-counter pain relief medications, if any, were you taking at the same time you were taking VIOXX?  None.


V. MEDICAL BACKGROUND

A.    Height: 5' 9"

B.    Current Weight: 181

Weight at the time of the injury, illness, or disability described in Section I©):

C.    Smoking/Tobacco Use History: *Check the answer and fill in the blanks applicable to your history of smoking and/or tobacco use.*

_____ Never smoked cigarettes/cigars/pipe tobacco or used chewing tobacco/snuff.

_____ Past smoker of cigarettes/cigars/pipe tobacco or used chewing tobacco/snuff.
    a. Date on which smoking/tobacco use ceased:
    b. Amount smoked or used: on average_____ per day for _____ years.
__X__Current smoker of <u>cigarettes</u>/cigars/pipe tobacco or user of chewing tobacco/snuff.
Amount smoked or used: on average 1 pack per day for 10 years.
_____Smoked different amounts at different times.

D.    Drinking History. Do you now drink or have you in the past drank alcohol (beer, wine, whiskey, etc.)? Yes _____    No __X__
If "yes," fill in the appropriate blank with the number of drinks that represents your average alcohol consumption during the period you were taking VIOXXÒ up to the time that you sustained the injuries alleged in the complaint:
    _____ drinks per week,
    _____ drinks per month,
    _____ drinks per year, *or*
    Other (describe):

E.    Illicit Drugs. Have you ever used (even one time) any illicit drugs of any kind within one (1) year before, or any time after, you first experienced your alleged VIOXX- related injury?" Yes _____    No _X_____    Don't Recall _____

*If "yes",* identify each substance and state when you first and last used it.

F.    Please indicate to the best of your knowledge whether you have ever received any of the following treatments or diagnostic procedures:

    1. Cardiovascular surgeries, including, but not limited to, the following, and

specify or what condition the surgery was performed: open heart/bypass surgery, pacemaker implantation, vascular surgery, IVC filter placement, carotid (neck artery) surgery, lung resection, intestinal surgery:
Surgery: None.

2. Treatments/interventions for heart attack, angina (chest pain), or lung ailments:
Treatment/Intervention: Heart monitor for chest pain.

3. To your knowledge, have you had any of the following tests performed: chest Xray, CT scan, MRI, angiogram, EKG, echocardiogram, TEE (trans-esophageal echo), bleeding scan, endoscopy, lung bronchoscopy, carotid duplex/ultrasound, MRI/MRA of the head/neck, angiogram of the head/neck, CT scan of the head, bubble/microbubble study, or Holter monitor?
Yes __X___    No _____    Don't Recall _____

*If "yes,"* answer the following:
Diagnostic Test When Treating: Many of the tests listed above.
Physician: I do not recall his name. Please see medical records.
Hospital Reason:    Chest pain.


## VI. DOCUMENTS

Please indicate if any of the following documents and things are currently in your possession, custody, or control, or in the possession, custody, or control of your lawyers by checking *"yes"* or *"no."* Where you have indicated *"yes,"* please attach the documents and things to your responses to this profile form.

A.    Records of physicians, hospitals, pharmacies, and other healthcare providers identified in response to this profile form.    Yes _X_____    No _____

B.    Decedent's death certificate (if applicable).    Yes _____    No __X___

C.    Report of autopsy of decedent (if applicable).    Yes _____    No __X___


## VII. LIST OF MEDICAL PROVIDERS AND OTHER SOURCES OF INFORMATION

*List the name and address of each of the following:*
A.    Your current family and/or primary care physician:
Dr. Arnold Smalls
LaGrange Internal Medicine
301 Medical Drive
LaGrange, GA 30240

B.    To the best of your ability, identify each of your primary care physicians for the last ten (10) years.

Dr. Arnold Smalls
LaGrange Internal Medicine
301 Medical Drive
LaGrange, GA 30240

Dr. Gill Maddox
Maddox Pain Management
1309 Quintard Avenue
Anniston, AL 36201

Dr. William Capeless
76 County Road 64
Woodland, AL 36280

C.    Each hospital, clinic, or healthcare facility where you have received inpatient treatment or been admitted as a patient during the last ten (10) years.

Randolph Medical Center
59928 Highway 22
Roanoke, AL 36274

West Georgia Medical Center
1514 Vernon Road
LaGrange, GA 30240

D.    Each hospital, clinic, or healthcare facility where you have received outpatient treatment (including treatment in an emergency room) during the last ten (10) years.

Randolph Medical Center
59928 Highway 22
Roanoke, AL 36274

West Georgia Medical Center
1514 Vernon Road
LaGrange, GA 30240

E.    Each physician or healthcare provider from whom you have received treatment in the last ten (10) years.

Dr. Arnold Smalls
LaGrange Internal Medicine
301 Medical Drive
LaGrange, GA 30240

Dr. Gill Maddox
Maddox Pain Management
1309 Quintard Avenue
Anniston, AL 36201

Dr. William Capeless
76 County Road 64
Woodland, AL 36280

F.    Each pharmacy that has dispensed medication to you in the last ten (10) years.
Emerging Home Care Pharmacy
P.O. Box 899
3868 Highway 431
Roanoke, AL 36274

Wal Mart Pharmacy
Roanoke, Alabama 36274

G.    If you have submitted a claim for social security disability benefits in the last ten (10) years, state the name and address of the office that is most likely to have records concerning your claim.

Social Security Office
301 13th Street
Anniston, AL 36202

H.    If you have submitted a claim for worker's compensation, state the name and address of the entity that is most likely to have records concerning your claim. None.

## CERTIFICATION

I declare under penalty of perjury subject to 28 U.S.C. § 1746 that all of the information provided in this Profile Form is true and correct to the best of my knowledge, that I have completed the List of Medical Providers and Other Sources of Information appended hereto, which is true and correct to the best of my knowledge, that I have supplied all the documents requested in part VI of this declaration, to the extent that such documents are in my possession, custody, or control, or in the possession, custody, or control of my lawyers, and that I have supplied the authorizations attached to this declaration.


_Wesley L. Calhoun_
Signature

_2/16/07_
Date

_Wesley Calhoun_
Print Name

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA
BAILEY, et als., v MERCK & CO. INC., et als.
Case Number: 3:06 cv 00979
AUTHORIZATION FOR RELEASE OF RECORDS (To be signed by plaintiffs *not*
making a claim for lost wages or earnings or earning capacity.)

Name: Wesley Calhoun
Date of Birth:7/29/1964
Social Security Number: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

I hereby authorize _____ to release all
existing records and information in its possession regarding the above-named person's
employment and education (with the exception of W-4 and W-2 forms) to the law firm of
HUGHES HUBBARD & REED LLP, 101 Hudson Street, Suite 3601, Jersey City, New
Jersey 07302, and/or to the law firm of RUSHTON, STAKLEY, JOHNSTON &
GARRETT, P.A., Post Office Box 270, Montgomery, Alabama 36101-0270,
and/or to the law firm of_____
_____and/or their designated agents ("Receiving Parties").
These records shall be used or disclosed solely in connection with the currently pending
VIOXX® litigation involving the person named above. This authorization shall cease to be
effective as of the date on which the above-named person's VIOXX® litigation concludes.
I understand that this authorization includes the above-named person's complete
employment personnel file with the exception of W-4 and W-2 forms (including attendance
reports, performance reports, medical reports, workers' compensation claims), and also includes
all other records relating to employment, past and present, all records related to claims for
disability, and all educational records (including those relating to courses taken, degrees
obtained, and attendance records). This listing is not meant to be exclusive.
Any photostatic copy of this document shall have the same authority as the original, and
may be substituted in its place.

Copies of these materials are to be provided at the expense of Hughes Hubbard & Reed LLP or
_____.

Dated this 25 day of *February* 2007.


*Wesley Calhoun*
Wesley Calhoun

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA
BAILEY, et als., v MERCK & CO. INC., et als.
Case Number: 3:06 cv 00979

AUTHORIZATION FOR RELEASE OF MEDICAL RECORDS PURSUANT TO
45 C.F.R. § 164.508 (HIPAA)

Name: Wesley Calhoun
Date of Birth: 7/29/1964 .
Social Security Number: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

I hereby authorize _____ to release all existing medical records regarding the above-named person's medical care, treatment, physical condition, and/or medical expenses to the law firm of HUGHES HUBBARD & REED LLP, 101 Hudson Street, Suite 3601, Jersey City, New Jersey 07302, and/or to the law firm of RUSHTON, STAKLEY, JOHNSTON & GARRETT, P.A., Post Office Box 270, Montgomery, Alabama 36101-0270, and/or to the law firm of _____
_____and/or their designated agents ("Receiving Parties"). These records shall be used or disclosed solely in connection with the currently pending VIOXX® litigation involving the person named above. This authorization shall cease to be effective as of the date on which the above-named person's VIOXX® litigation concludes. The Receiving Parties shall return or destroy the protected health information (including all copies made) at the end of the above-named person's litigation or proceeding.

I understand that the health information being used/disclosed may include information relating to the diagnosis and treatment of Human Immunodeficiency Virus (HIV), Acquired Immune Deficiency Syndrome (AIDS), sexually transmitted disease and drug and alcohol disorders.

This authorization also may include x-ray reports, CT scan reports, MRI scans, EEGs, EKGs, sonograms, arteriograms, discharge summaries, photographs, surgery consent forms, admission and discharge records, operation records, doctor and nurses notes (excluding psychotherapy notes maintained separately from the individual's medical record that document or analyze the contents of conversation during a private counseling session or a group, joint, or family counseling session by referring to something other than medication prescription and monitoring, counseling session start and stop times, the modalities and frequencies of treatment furnished, results of clinical tests, and any summary of the following items: diagnosis, functional status, the treatment plan, symptoms, prognosis and progress), prescriptions, medical bills, invoices, histories, diagnoses, narratives, and any correspondence/memoranda and billing information. It also includes, to the extent such records currently exist and are in your possession, insurance records, including Medicare/Medicaid and other public assistance claims, applications, statements, eligibility material, claims or claim disputes, resolutions and payments,

medical records provided as evidence of services provided, and any other documents or things

pertaining to services furnished under Title XVII of the Social Security Act or other forms of public assistance (federal, state, local, etc.). This listing is not meant to be exclusive. This will further authorize you to provide updated medical records, x-rays, reports or copies thereof to the above attorney until the conclusion of the litigation. I understand that I have the right to revoke in writing my consent to this disclosure at any time, except to the extent that the above-named facility or provider already has taken action in reliance upon this authorization, or if this authorization was obtained as a condition of obtaining insurance coverage. I further understand that the above-named facility or provider cannot condition the provision of treatment, payment, enrollment in a health plan or eligibility for benefits on my provision of this authorization. I further understand that information disclosed pursuant to this authorization may be subject to redisclosure by the recipient to its clients, agents, employees, consultants, experts, the court, and others deemed necessary by the recipient to assist in this litigation and may no longer be protected by HIPAA. I further reserve the right to request the return or redaction of sensitive or embarrassing information, not germane to the litigation, that is disclosed to the Receiving Parties.

Any photostatic copy of this document shall have the same authority as the original, and may be substituted in its place. Copies of these materials are to be provided at the expense of Hughes Hubbard & Reed LLP or _____.

Dated this 28 day of February 2007.

_Wesley Calhoun_
Wesley Calhoun



## PLAINTIFF PROFILE FORM FOR RUTH GRAVES

### I. CASE INFORMATION

A.    Name of person completing this form: Ruth Graves

B.    If you are completing this questionnaire in a representative capacity (e.g., on behalf of the estate of a deceased person or a minor), please complete the following:

   1. Social Security number

   2. Maiden Or Other Names Used or By Which You Have Been Known:

   3. Address:

   4. State which individual or estate you are representing, and in what capacity you are representing the individual or estate?

   5. If you were appointed as a representative by a court, state the:

   6. What is your relationship to deceased or represented person or person claimed to be injured?

   7. If you represent a decedent's estate, state the date of death of the decedent and the address of the place where the decedent died:

C.    Claim Information

   1. Are you claiming that you have or may develop bodily injury as a result of taking VIOXX?     Yes __X__     No _____

   *If "yes,"*
   a. What is your understanding of the bodily injury you claim resulted from your use of VIOXX? Congestive Heart Failure, tacky-brady syndrome

   b. When do you claim this injury occurred?  January, 2002.

   c. Who diagnosed the condition? Dr. Clark Gillett

   d. Did you ever suffer this type of injury prior to the date set forth in answer to the prior question? Yes _____        No __X__

**Exhibit E**

*If "yes,"* when and who diagnosed the condition at that time?

e. Do you claim that that your use of VIOXX® worsened a condition that you already had or had in the past? Yes _X____     No ____

*If "yes,"* set forth the injury or condition; whether or not you had already recovered from that injury or condition before you took VIOXX; and the date of recovery, if any.

I worsened the congestive heart failure because my feet would swell, and when I stopped taking it, my feet stopped swelling completely.

D.    Are you claiming mental and/or emotional damages as a consequence of VIOXX? Yes _____     No __X__

*If "yes,"* for each provider (including but not limited to primary care physician, psychiatrist, psychologist, counselor) from whom have sought treatment for psychological, psychiatric or emotional problems during the last ten (10) years, state:
a. Name and address of each person who treated you:
b. To your understanding, condition for which treated:
c. When treated:
d. Medications prescribed or recommended by provider:

II. PERSONAL INFORMATION OF THE PERSON WHO USED VIOXX

A.    Name: Ruth D. Graves

B.    Maiden or other names used or by which you have been known: Ruth D. Graves

C.    Social Security Number: 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

D.    Address: 29 Creekview Lane, Lincoln, AL 35096

E.    Identify each address at which you have resided during the last ten (10) years, and list when you started and stopped living at each one:

1.) 55308 Hwy 11, Roanoke, AL 36274
2.) 29 Creekview Lane, Lincoln, AL 35096

F.    Driver's License Number and State Issuing License: I do not have one.

G.    Date of Place and Birth: 04-28-30

H.    Sex: Male _____    Female__X__

I.    Identify the highest level of education (high school, college, university or other educational institution) you have attended (even if not completed), the dates of attendance, courses of study pursued, and diplomas or degrees awarded:
High school diploma

J.    Employment Information:

1. Current employer (if not currently employed, last employer): Retired.
Name: Duracell
Address: LaGrange, GA
Dates of Employment: 10 years
Occupation/Job Duties: Operator

2. List the following for each employer you have had in the last ten (10) years:

3. Are you making a wage loss claim for either your present or previous employment? Yes _____    No __X__
If "yes," state your annual income at the time of the injury alleged in Section I©):

K.    Military Service Information: Have you ever served in the military, including the military reserve or national guard? Yes _____    No __X__

If "yes," were you ever rejected or discharged from military service for any reason relating to your physical, psychiatric or emotional condition?
Yes _____    No _____

L.    Insurance / Claim Information:

1. Have you ever filed a worker's compensation and/or social security disability (SSI or SSD) claim? Yes _____    No __X__

If "yes," to the best of your knowledge please state:
a. Year claim was filed:
b. Nature of disability:
c. Approximate period of disability:

2. Have you ever been out of work for more than thirty (30) days for reasons related to your health (other than pregnancy)? Yes _____    No __X__

*If "yes,"* set forth when and the reason.

3. Have you ever filed a lawsuit or made a claim, other than in the present suit, relating to any bodily injury? Yes \_\_\_\_\_    No \_\_X\_\_

*If "yes,"* state to the best of your knowledge the court in which such action was filed, case name and/or names of adverse parties, and a brief description for the claims asserted.

M.    As an adult, have you been convicted of, or plead guilty to, a felony and/or crime of fraud or dishonesty? Yes \_\_\_\_\_    No \_\_X\_\_

*If "yes,"* set forth where, when and the felony and/or crime.

### III.  FAMILY INFORMATION

A.    List for each marriage the name of your spouse; spouse's date of birth (for your current spouse only); spouse's occupation; date of marriage; date the marriage ended, if applicable; and how the marriage ended (e.g., divorce, annulment, death):

Name: John Graves
Married: 6-16-95
Occupation: Retired

B.    Has your spouse filed a loss of consortium claim in this action?
Yes \_\_\_\_\_    No \_\_X\_\_

C.    To the best of your knowledge did any child, parent, sibling, or grandparent of yours suffer from any type of cardiovascular disease including but not limited to: heart attack, abnormal rhythm, arteriosclerosis (hardening or the arteries), murmur, coronary artery disease, congestive heart failure, enlarged heart, leaking valves or prolapse, heart block, congenital heart abnormality, Scarlet Fever, Rheumatic Fever, atrial fibrillation, stroke?
Yes \_\_\_\_\_       No \_\_X\_\_       Don't Know \_\_\_\_\_

*If "yes,"* identify each such person below and provide the information requested.

D.    If applicable, for each of your children, list his/her name, age and address:
Albert Jackson, Jr., age 58, Valley, Alabama

E.    If you are claiming the wrongful death of a family member, list any and all heirs
      of the decedent. None.

## IV. VIOXX PRESCRIPTION INFORMATION

A.    Who prescribed VIOXX for you? Dr. Clark Gillett

B.    On which dates did you begin to take, and stop taking, VIOXX?
      Started: Unclear.
      Stopped: 11/04

C.    Did you take VIOXX continuously during that period?
      Yes _____    No __X___    Don't Recall _____

D.    To your understanding, for what condition were you prescribed VIOXX? Arthritis

E.    Did you renew your prescription for VIOXX?
      Yes __X__    No _____    Don't Recall____

F.    If you received any samples of VIOXX, state who provided them, what dosage,
      how much and when they were provided: None.

G.    Which form of VIOXX did you take (check all that apply)?
      _____ 12.5 mg Tablet (round, cream, MRK 74)
      _____ 12.5 mg Oral Suspension
      __X__ 25 mg Tablet (round, yellow, MRK 110)
      _____ 25 mg Oral Suspension
      _____ 50 mg Tablet (round, orange, MRK 114)

H.    How many times per day did you take VIOXX?  Once.

I.    Did you request that any doctor or clinic provide you with VIOXX or a
      prescription for VIOXX? Yes _____   No __X__   Don't Recall _____

J.    Instructions or Warnings:

      1. Did you receive any written or oral information about VIOXX before you took
      it?  Yes _____   No __X__   Don't Recall _____

      2. Did you receive any written or oral information about VIOXX while you took
      it? Yes _____    No _____   Don't Recall __X__

3. *If "yes,"*
    a. When did you receive that information?
    b. From whom did you receive it?
    c. What information did you receive?

K.    What over-the-counter pain relief medications, if any, were you taking at the same time you were taking VIOXX?   1 aspirin a day

## V. MEDICAL BACKGROUND

A.    Height: 5' 3"

B.    Current Weight: 149

Weight at the time of the injury, illness, or disability described in Section I©): 115

C.    Smoking/Tobacco Use History: *Check the answer and fill in the blanks applicable to your history of smoking and/or tobacco use.*

_____ Never smoked cigarettes/cigars/pipe tobacco or used chewing tobacco/snuff.

\_\_X\_\_ Past smoker of cigarettes/cigars/pipe tobacco or used chewing tobacco/snuff.
    a. Date on which smoking/tobacco use ceased: 1991
    b. Amount smoked or used: on average\_\_½ \_\_ per day for \_15\_ years.
_____Current smoker of cigarettes/cigars/pipe tobacco or user of chewing tobacco/snuff.
Amount smoked or used: on average 1 pack per day for 10 years.
\_\_\_\_ Smoked different amounts at different times.

D.    Drinking History. Do you now drink or have you in the past drank alcohol (beer, wine, whiskey, etc.)? Yes _____    No \_\_X\_\_

*If "yes," fill in the appropriate blank* with the number of drinks that represents your average alcohol consumption during the period you were taking VIOXXÒ up to the time that you sustained the injuries alleged in the complaint:
    _____ drinks per week,
    _____ drinks per month,
    _____ drinks per year, *or*
    Other (describe):

E.    Illicit Drugs. Have you ever used (even one time) any illicit drugs of any kind within one (1) year before, or any time after, you first experienced your alleged VIOXX- related injury?" Yes _____    No \_\_X\_\_    Don't Recall _____

*If "yes",* identify each substance and state when you first and last used it.

F.     Please indicate to the best of your knowledge whether you have ever received any of the following treatments or diagnostic procedures:

1. Cardiovascular surgeries, including, but not limited to, the following, and specify or what condition the surgery was performed: open heart/bypass surgery, pacemaker implantation, vascular surgery, IVC filter placement, carotid (neck artery) surgery, lung resection, intestinal surgery:
Surgery:  No

2. Treatments/interventions for heart attack, angina (chest pain), or lung ailments:
Treatment/Intervention:   Yes, see medical records.

3. To your knowledge, have you had any of the following tests performed: chest Xray, CT scan, MRI, angiogram, EKG, echocardiogram, TEE (trans-esophageal echo), bleeding scan, endoscopy, lung bronchoscopy, carotid duplex/ultrasound, MRI/MRA of the head/neck, angiogram of the head/neck, CT scan of the head, bubble/microbubble study, or Holter monitor?
Yes __X__   No _____   Don't Recall _____

*If "yes,"* answer the following:
        Diagnostic Test When Treating: I had several of the tests
        Physician: Dr. Clark Gillett


## VI. DOCUMENTS

Please indicate if any of the following documents and things are currently in your possession, custody, or control, or in the possession, custody, or control of your lawyers by checking *"yes"* or *"no."* Where you have indicated *"yes,"* please attach the documents and things to your responses to this profile form.

A.     Records of physicians, hospitals, pharmacies, and other healthcare providers
       identified in response to this profile form.        Yes __X___     No _____

B.     Decedent's death certificate (if applicable).      Yes _____     No __X___

C.     Report of autopsy of decedent (if applicable).     Yes _____     No __X___

## VII. LIST OF MEDICAL PROVIDERS AND OTHER SOURCES OF INFORMATION

*List the name and address of each of the following:*

A.     Your current family and/or primary care physician:

Dr.J. Melburn Holmes
4441 Highway 431 North Bypass
P.O. Box 665
Roanoke, AL 36274

Dr. Sebastian Hubbuch
3808 Gentian Blvd.
Columbus, GA 31908

B.     To the best of your ability, identify each of your primary care physicians for the last ten (10) years.  Dr. Gillett

Dr.J. Melburn Holmes
4441 Highway 431 North Bypass
P.O. Box 665
Roanoke, AL 36274

Dr. Clark Gillett
104 14th Street
Columbus, GA 31901

Dr. Sebastian Hubbuch
3808 Gentian Blvd.
Columbus, GA 31908

C.     Each hospital, clinic, or healthcare facility where you have received inpatient treatment or been admitted as a patient during the last ten (10) years. Medical Center, Columbus, Georgia

Randolph Medical Center
59928 Highway 22
Roanoke, AL 36274

D.     Each hospital, clinic, or healthcare facility where you have received outpatient treatment (including treatment in an emergency room) during the last ten (10) years.

Randolph Medical Center
59928 Highway 22
Roanoke, AL 36274

E.     Each physician or healthcare provider from whom you have received treatment in the last ten (10) years.

Dr.J. Melburn Holmes
4441 Highway 431 North Bypass
P.O. Box 665
Roanoke, AL 36274

Dr. Clark Gillett
104 14th Street
Columbus, GA 31901

F.     Each pharmacy that has dispensed medication to you in the last ten (10) years.

Rite Aid Pharmacy
Roanoke, AL 36274

WalMart Pharmacy
Roanoke, AL 36274

Medical Center Pharmacy
104 14th Street
Columbus, GA 31901

G.     If you have submitted a claim for social security disability benefits in the last ten (10) years, state the name and address of the office that is most likely to have records concerning your claim.  None.

H.     If you have submitted a claim for worker's compensation, state the name and address of the entity that is most likely to have records concerning your claim. None.

CERTIFICATION

I declare under penalty of perjury subject to 28 U.S.C. § 1746 that all of the information provided in this Profile Form is true and correct to the best of my knowledge, that I have completed the List of Medical Providers and Other Sources of Information appended hereto, which is true and correct to the best of my knowledge, that I have supplied all the documents requested in part VI of this declaration, to the extent that such documents are in my possession, custody, or control, or in the possession, custody, or control of my lawyers, and that I have supplied the authorizations attached to this declaration.


_____
Signature

3-1-07
Date


_____
Print Name

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA
BAILEY, et als., v MERCK & CO. INC., et als.
Case Number: 3:06 cv 00979
AUTHORIZATION FOR RELEASE OF RECORDS (To be signed by plaintiffs *not* making a claim for lost wages or earnings or earning capacity.)

Name: Ruth Graves
Date of Birth: 04-28-1930
Social Security Number: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

I hereby authorize _____ to release all existing records and information in its possession regarding the above-named person's employment and education (with the exception of W-4 and W-2 forms) to the law firm of **HUGHES HUBBARD & REED LLP, 101 Hudson Street, Suite 3601, Jersey City, New Jersey 07302,** and/or to the law firm of **RUSHTON, STAKLEY, JOHNSTON & GARRETT, P.A., Post Office Box 270, Montgomery, Alabama 36101-0270,** and/or to the law firm of _____
_____and/or their designated agents ("Receiving Parties"). These records shall be used or disclosed solely in connection with the currently pending VIOXX® litigation involving the person named above. This authorization shall cease to be effective as of the date on which the above-named person's VIOXX® litigation concludes. I understand that this authorization includes the above-named person's complete employment personnel file with the exception of W-4 and W-2 forms (including attendance reports, performance reports, medical reports, workers' compensation claims), and also includes all other records relating to employment, past and present, all records related to claims for disability, and all educational records (including those relating to courses taken, degrees obtained, and attendance records). This listing is not meant to be exclusive. Any photostatic copy of this document shall have the same authority as the original, and may be substituted in its place.

Copies of these materials are to be provided at the expense of Hughes Hubbard & Reed LLP or
_____.

Dated this 26 day of *Feb*, 2007.

*Ruth Graves*
Ruth Graves

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA
BAILEY, et als., v MERCK & CO. INC., et als.
Case Number: 3:06 cv 00979

AUTHORIZATION FOR RELEASE OF MEDICAL RECORDS PURSUANT TO
45 C.F.R. § 164.508 (HIPAA)

Name: Ruth Graves
Date of Birth: 04-28-1930
Social Security Number: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

I hereby authorize _____ to release all existing medical records regarding the above-named person's medical care, treatment, physical condition, and/or medical expenses to the law firm of **HUGHES HUBBARD & REED LLP, 101 Hudson Street, Suite 3601, Jersey City, New Jersey 07302, and/or to the law firm of RUSHTON, STAKLEY, JOHNSTON & GARRETT, P.A., Post Office Box 270, Montgomery, Alabama 36101-0270, and/or to the law firm of** _____ and/or their designated agents ("Receiving Parties"). These records shall be used or disclosed solely in connection with the currently pending VIOXX® litigation involving the person named above. This authorization shall cease to be effective as of the date on which the above-named person's VIOXX® litigation concludes. The Receiving Parties shall return or destroy the protected health information (including all copies made) at the end of the above-named person's litigation or proceeding.

I understand that the health information being used/disclosed may include information relating to the diagnosis and treatment of Human Immunodeficiency Virus (HIV), Acquired Immune Deficiency Syndrome (AIDS), sexually transmitted disease and drug and alcohol disorders.

This authorization also may include x-ray reports, CT scan reports, MRI scans, EEGs, EKGs, sonograms, arteriograms, discharge summaries, photographs, surgery consent forms, admission and discharge records, operation records, doctor and nurses notes (excluding psychotherapy notes maintained separately from the individual's medical record that document or analyze the contents of conversation during a private counseling session or a group, joint, or family counseling session by referring to something other than medication prescription and monitoring, counseling session start and stop times, the modalities and frequencies of treatment furnished, results of clinical tests, and any summary of the following items: diagnosis, functional status, the treatment plan, symptoms, prognosis and progress), prescriptions, medical bills, invoices, histories, diagnoses, narratives, and any correspondence/memoranda and billing information. It also includes, to the extent such records currently exist and are in your possession, insurance records, including Medicare/Medicaid and other public assistance claims, applications, statements, eligibility material, claims or claim disputes, resolutions and payments,

medical records provided as evidence of services provided, and any other documents or things

pertaining to services furnished under Title XVII of the Social Security Act or other forms of public assistance (federal, state, local, etc.). This listing is not meant to be exclusive. This will further authorize you to provide updated medical records, x-rays, reports or copies thereof to the above attorney until the conclusion of the litigation. I understand that I have the right to revoke in writing my consent to this disclosure at any time, except to the extent that the above-named facility or provider already has taken action in reliance upon this authorization, or if this authorization was obtained as a condition of obtaining insurance coverage. I further understand that the above-named facility or provider cannot condition the provision of treatment, payment, enrollment in a health plan or eligibility for benefits on my provision of this authorization. I further understand that information disclosed pursuant to this authorization may be subject to redisclosure by the recipient to its clients, agents, employees, consultants, experts, the court, and others deemed necessary by the recipient to assist in this litigation and may no longer be protected by HIPAA. I further reserve the right to request the return or redaction of sensitive or embarrassing information, not germane to the litigation, that is disclosed to the Receiving Parties.

Any photostatic copy of this document shall have the same authority as the original, and may be substituted in its place. Copies of these materials are to be provided at the expense of Hughes Hubbard & Reed LLP or _____.

Dated this 24 day of Feb. , 2007

Ruth Graves



## PLAINTIFF PROFILE FORM FOR MICKEY GRIZZARD

### I. CASE INFORMATION

A.    Name of person completing this form: Mickey Grizzard

B.    If you are completing this questionnaire in a representative capacity (e.g., on behalf of the estate of a deceased person or a minor), please complete the following:

   1. Social Security number

   2. Maiden Or Other Names Used or By Which You Have Been Known:

   3. Address:

   4. State which individual or estate you are representing, and in what capacity you are representing the individual or estate?

   5. If you were appointed as a representative by a court, state the:

   6. What is your relationship to deceased or represented person or person claimed to be injured?

   7. If you represent a decedent's estate, state the date of death of the decedent and the address of the place where the decedent died:


C.    Claim Information

       1. Are you claiming that you have or may develop bodily injury as a result of taking VIOXX?    Yes __X___    No _____

   *If "yes,"*
       a. What is your understanding of the bodily injury you claim resulted from your use of VIOXX?   Heart attack, Angioplasty, Stents

       b. When do you claim this injury occurred?   January 5, 2004

       c. Who diagnosed the condition?  Dr. Tom Gore

       d. Did you ever suffer this type of injury prior to the date set forth in

**Exhibit F**

answer to the prior question? Yes \_\_\_\_\_    No \_\_X\_\_\_

*If "yes,"* when and who diagnosed the condition at that time?

    e. Do you claim that that your use of VIOXX® worsened a condition that you already had or had in the past? Yes \_\_\_\_\_    No \_\_\_\_\_

*If "yes,"* set forth the injury or condition; whether or not you had already recovered from that injury or condition before you took VIOXX; and the date of recovery, if any.

D.    Are you claiming mental and/or emotional damages as a consequence of VIOXX? Yes \_\_\_\_\_    No \_\_X\_\_\_

*If "yes,"* for each provider (including but not limited to primary care physician, psychiatrist, psychologist, counselor) from whom have sought treatment for psychological, psychiatric or emotional problems during the last ten (10) years, state:
a. Name and address of each person who treated you:
b. To your understanding, condition for which treated:
c. When treated:
d. Medications prescribed or recommended by provider:

## II. PERSONAL INFORMATION OF THE PERSON WHO USED VIOXX

A.    Name: Mickey D. Grizzard

B.    Maiden or other names used or by which you have been known: None.

C.    Social Security Number: 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

D.    Address: 798 County Road 660, Roanoke, AL 36274

E.    Identify each address at which you have resided during the last ten (10) years, and list when you started and stopped living at each one:
3416 Rock Mills Road
LaGrange, GA 30240

F.    Driver's License Number and State Issuing License: AL 7656351.

G.    Date of Place and Birth:  5-03-1952

H.    Sex: Male __X___       Female_____

I.    Identify the highest level of education (high school, college, university or other educational institution) you have attended (even if not completed), the dates of attendance, courses of study pursued, and diplomas or degrees awarded:

He graduated high school and has taken several college level courses required by his employer.

J.    Employment Information.

1. Current employer:
Name: City of LaGrange
Address: Post Office Box 430, LaGrange,GA
Dates of Employment: 35 years as of 2/13/07
Occupation/Job Duties: He is superintendent of the street division for the city of LaGrange.

2. List the following for each employer you have had in the last ten (10) years:

3. Are you making a wage loss claim for either your present or previous employment? Yes _____  No __X___
*If "yes,"* state your annual income at the time of the injury alleged in Section I©):

K.    Military Service Information: Have you ever served in the military, including the military reserve or national guard? Yes _____      No ___X__

*If "yes,"* were you ever rejected or discharged from military service for any reason relating to your physical, psychiatric or emotional condition?
Yes _____   No _____

L.    Insurance / Claim Information:

1. Have you ever filed a worker's compensation and/or social security disability (SSI or SSD) claim? Yes _____      No __X___

*If "yes,"* to the best of your knowledge please state:
    a. Year claim was filed:
    b. Nature of disability:
    c. Approximate period of disability:

2. Have you ever been out of work for more than thirty (30) days for reasons related to your health (other than pregnancy)? Yes _X_____    No _____

*If "yes,"* set forth when and the reason.  Four years for disabilities stated above.

January, 2004, he had a heart attack and was out of work for approximately three months.

3. Have you ever filed a lawsuit or made a claim, other than in the present suit, relating to any bodily injury? Yes _____    No __X___

*If "yes,"* state to the best of your knowledge the court in which such action was filed, case name and/or names of adverse parties, and a brief description for the claims asserted.

M.    As an adult, have you been convicted of, or plead guilty to, a felony and/or crime of fraud or dishonesty? Yes _____    No _X_____

*If "yes,"* set forth where, when and the felony and/or crime.

### III.  FAMILY INFORMATION

A.    List for each marriage the name of your spouse; spouse's date of birth (for your current spouse only); spouse's occupation; date of marriage; date the marriage ended, if applicable; and how the marriage ended (e.g., divorce, annulment, death):

Name: Carol Sue Driver Grizzard
Married: December 20, 1971
Occupation: Disabled.

B.    Has your spouse filed a loss of consortium claim in this action?
Yes _____    No _X___

C.    To the best of your knowledge did any child, parent, sibling, or grandparent of yours suffer from any type of cardiovascular disease including but not limited to: heart attack, abnormal rhythm, arteriosclerosis (hardening or the arteries), murmur, coronary artery disease, congestive heart failure, enlarged heart, leaking valves or prolapse, heart block, congenital heart abnormality, Scarlet Fever, Rheumatic Fever, atrial fibrillation, stroke?
Yes __X___    No _____    Don't Know _____

*If "yes,"* identify each such person below and provide the information requested.

Name: Father, Franklin Grizzard
Current Age (or Age at Death): Deceased, 67
Type of Problem: Heart problems
If Applicable, Cause of Death:. Heart attack

Name: Brother, William Grizzard
Current Age (or Age at Death): 48
Type of Problem: Heart related
If Applicable, Cause of Death:

D.    If applicable, for each of your children, list his/her name, age and address:
Kippi Daniel
33 years of age
Wadley, Alabama

E.    If you are claiming the wrongful death of a family member, list any and all heirs
of the decedent. Not applicable.

## IV. VIOXX PRESCRIPTION INFORMATION

A.    Who prescribed VIOXX for you?  Dr. Arnold Smalls

B.    On which dates did you begin to take, and stop taking, VIOXX?
Started: March 6, 2003
Stopped in January 5, 2004

C.    Did you take VIOXX continuously during that period?
Yes __X___        No _____        Don't Recall _____

D.    To your understanding, for what condition were you prescribed VIOXX?
Arthritis

E.    Did you renew your prescription for VIOXX?
Yes __X___        No _____        Don't Recall____

F.    If you received any samples of VIOXX, state who provided them, what dosage,
how much and when they were provided: Patient received samples from the
prescribing physician when they had it in stock.

G.    Which form of VIOXX did you take (check all that apply)?
_____ 12.5 mg Tablet (round, cream, MRK 74)
_____ 12.5 mg Oral Suspension
_____ 25 mg Tablet (round, yellow, MRK 110)
_____ 25 mg Oral Suspension
___X__ 50 mg Tablet (round, orange, MRK 114)

H.    How many times per day did you take VIOXX?  50 mg one time a day.

I.    Did you request that any doctor or clinic provide you with VIOXX or a
      prescription for VIOXX? Yes _____    No __X___   Don't Recall _____

J.    Instructions or Warnings:

      1. Did you receive any written or oral information about VIOXX before you took
      it? Yes __X___ No _____    Don't Recall _____

      2. Did you receive any written or oral information about VIOXX while you took
      it? Yes __X___ No _____   Don't Recall _____

      3. If "yes,"
            a. When did you receive that information? With the prescription.
            b. From whom did you receive it?  Pharmacy
            c. What information did you receive?  Print out from pharmacy and
            information in box of samples.

K.    What over-the-counter pain relief medications, if any, were you taking at the
      same time you were taking VIOXX?  None.


                            V. MEDICAL BACKGROUND

A.    Height: 5'11"

B.    Current Weight: 240 pounds

      Weight at the time of the injury, illness, or disability described in Section I©):

C.    Smoking/Tobacco Use History: *Check the answer and fill in the blanks applicable
      to your history of smoking and/or tobacco use.*

            _____    Never smoked cigarettes/cigars/pipe tobacco or used chewing
      tobacco/snuff.
            ___X__ Past smoker of cigarettes/cigars/pipe tobacco or used chewing
      tobacco/snuff.
                  a. Date on which smoking/tobacco use ceased: 10 years ago
                  b. Amount smoked or used: on average 1 pack of chewing tobacco per
            day for 20 years.
            _____Current smoker of cigarettes/cigars/pipe tobacco or user of chewing
                  tobacco/snuff.
      Amount smoked or used: on average 1 pack per day for 10 years.
            ____ Smoked different amounts at different times.

D.    Drinking History. Do you now drink or have you in the past drank alcohol (beer, wine, whiskey, etc.)? Yes _____    No __X___

*If "yes," fill in the appropriate blank* with the number of drinks that represents your average alcohol consumption during the period you were taking VIOXX® up to the time that you sustained the injuries alleged in the complaint:

_____0_____ drinks per week,
_____0_____ drinks per month,
_____0_____ drinks per year, *or*
Other (describe):

E.    Illicit Drugs. Have you ever used (even one time) any illicit drugs of any kind within one (1) year before, or any time after, you first experienced your alleged VIOXX- related injury?" Yes _____    No _X_____    Don't Recall _____

*If "yes",* identify each substance and state when you first and last used it.

F.    Please indicate to the best of your knowledge whether you have ever received any of the following treatments or diagnostic procedures:

1. Cardiovascular surgeries, including, but not limited to, the following, and specify or what condition the surgery was performed: open heart/bypass surgery, pacemaker implantation, vascular surgery, IVC filter placement, carotid (neck artery) surgery, lung resection, intestinal surgery:
Surgery: He had stents implanted three times.

2. Treatments/interventions for heart attack, angina (chest pain), or lung ailments:
Treatment/Intervention: Heart attack: He went to the hospital.

3. To your knowledge, have you had any of the following tests performed: chest Xray, CT scan, MRI, angiogram, EKG, echocardiogram, TEE (trans-esophageal echo), bleeding scan, endoscopy, lung bronchoscopy, carotid duplex/ultrasound, MRI/MRA of the head/neck, angiogram of the head/neck, CT scan of the head, bubble/microbubble study, or Holter monitor?
Yes __X___    No _____    Don't Recall _____

*If "yes,"* answer the following:
Diagnostic Test When Treating:
Physician: Dr. Douglas and Dr. Gore
Hospital Reason:    LaGrange Medical Center and Emory University for heart catheterizations and stents.

## VI. DOCUMENTS

Please indicate if any of the following documents and things are currently in your possession, custody, or control, or in the possession, custody, or control of your lawyers by checking *"yes"* or *"no."* Where you have indicated *"yes,"* please attach the documents and things to your responses to this profile form.

A.     Records of physicians, hospitals, pharmacies, and other healthcare providers identified in response to this profile form.     Yes _X_____     No _____

B.     Decedent's death certificate (if applicable).     Yes _____     No _X____

C.     Report of autopsy of decedent (if applicable).     Yes _____     No __X___

## VII. LIST OF MEDICAL PROVIDERS AND OTHER SOURCES OF INFORMATION

*List the name and address of each of the following:*

A.     Your current family and/or primary care physician:
       Dr. Arnold Smalls
       LaGrange Internal Medicine
       301 Medical Drive
       LaGrange, GA 30240

B.     To the best of your ability, identify each of your primary care physicians for the last ten (10) years.

       Dr. Arnold Smalls
       LaGrange Internal Medicine
       301 Medical Drive
       LaGrange, GA 30240

C.     Each hospital, clinic, or healthcare facility where you have received inpatient treatment or been admitted as a patient during the last ten (10) years.

       West Georgia Medical Center
       Emory University Hospital
       Columbus Regional Medical Center

D.     Each hospital, clinic, or healthcare facility where you have received outpatient treatment (including treatment in an emergency room) during the last ten (10) years.

       West Georgia Medical Center
       Emory University Hospital
       Columbus Regional Medical Center

E.    Each physician or healthcare provider from whom you have received treatment in the last ten (10) years.

   Dr. Joseph Miller, Cardiologist, Atlanta, Georgia
   Dr. Steven Hunter, Orthopaedic surgeon, Columbus, Georgia
   Dr. William Steven Douglas, Emory University
   Dr. Tom Gore, LaGrange, Georgia

F.    Each pharmacy that has dispensed medication to you in the last ten (10) years.

   Corley Drugs
   Airport Road
   LaGrange, Georgia

G.    If you have submitted a claim for social security disability benefits in the last ten (10) years, state the name and address of the office that is most likely to have records concerning your claim.
   None.

H.    If you have submitted a claim for worker's compensation, state the name and address of the entity that is most likely to have records concerning your claim.
   None.

## CERTIFICATION

   I declare under penalty of perjury subject to 28 U.S.C. § 1746 that all of the information provided in this Profile Form is true and correct to the best of my knowledge, that I have completed the List of Medical Providers and Other Sources of Information appended hereto, which is true and correct to the best of my knowledge, that I have supplied all the documents requested in part VI of this declaration, to the extent that such documents are in my possession, custody, or control, or in the possession, custody, or control of my lawyers, and that I have supplied the authorizations attached to this declaration.


_____          _____
Signature                                              Date

_____
Print Name

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA
BAILEY, et als., v MERCK & CO. INC., et als.
Case Number: 3:06 cv 00979
AUTHORIZATION FOR RELEASE OF RECORDS (To be signed by plaintiffs *not*
making a claim for lost wages or earnings or earning capacity.)

Name: Mickey Grizzard
Date of Birth: 05-03-1952
Social Security Number: 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

I hereby authorize _____ to release all
existing records and information in its possession regarding the above-named person's
employment and education (with the exception of W-4 and W-2 forms) to the law firm of
HUGHES HUBBARD & REED LLP, 101 Hudson Street, Suite 3601, Jersey City, New
Jersey 07302, and/or to the law firm of RUSHTON, STAKLEY, JOHNSTON &
GARRETT, P.A., Post Office Box 270, Montgomery, Alabama 36101-0270,
and/or to the law firm of _____
_____ and/or their designated agents ("Receiving Parties").
These records shall be used or disclosed solely in connection with the currently pending
VIOXX® litigation involving the person named above. This authorization shall cease to be
effective as of the date on which the above-named person's VIOXX® litigation concludes.
I understand that this authorization includes the above-named person's complete
employment personnel file with the exception of W-4 and W-2 forms (including attendance
reports, performance reports, medical reports, workers' compensation claims), and also includes
all other records relating to employment, past and present, all records related to claims for
disability, and all educational records (including those relating to courses taken, degrees
obtained, and attendance records). This listing is not meant to be exclusive.
Any photostatic copy of this document shall have the same authority as the original, and
may be substituted in its place.

Copies of these materials are to be provided at the expense of Hughes Hubbard & Reed LLP or
_____

Dated this 28th day of February 2007.

Mickey Grizzard
Mickey Grizzard

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA
BAILEY, et als., v MERCK & CO. INC., et als.
Case Number: 3:06 cv 00979

AUTHORIZATION FOR RELEASE OF MEDICAL RECORDS PURSUANT TO
45 C.F.R. § 164.508 (HIPAA)

Name: Mickey Grizzard
Date of Birth: 05-03-1952
Social Security Number: 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

I hereby authorize _____ to release all existing medical records regarding the above-named person's medical care, treatment, physical condition, and/or medical expenses to the law firm of **HUGHES HUBBARD & REED LLP, 101 Hudson Street, Suite 3601, Jersey City, New Jersey 07302, and/or to the law firm of RUSHTON, STAKLEY, JOHNSTON & GARRETT, P.A., Post Office Box 270, Montgomery, Alabama 36101-0270,** and/or to the law firm of _____ _____and/or their designated agents ("Receiving Parties"). These records shall be used or disclosed solely in connection with the currently pending VIOXX® litigation involving the person named above. This authorization shall cease to be effective as of the date on which the above-named person's VIOXX® litigation concludes. The Receiving Parties shall return or destroy the protected health information (including all copies made) at the end of the above-named person's litigation or proceeding.

I understand that the health information being used/disclosed may include information relating to the diagnosis and treatment of Human Immunodeficiency Virus (HIV), Acquired Immune Deficiency Syndrome (AIDS), sexually transmitted disease and drug and alcohol disorders.

This authorization also may include x-ray reports, CT scan reports, MRI scans, EEGs, EKGs, sonograms, arteriograms, discharge summaries, photographs, surgery consent forms, admission and discharge records, operation records, doctor and nurses notes (excluding psychotherapy notes maintained separately from the individual's medical record that document or analyze the contents of conversation during a private counseling session or a group, joint, or family counseling session by referring to something other than medication prescription and monitoring, counseling session start and stop times, the modalities and frequencies of treatment furnished, results of clinical tests, and any summary of the following items: diagnosis, functional status, the treatment plan, symptoms, prognosis and progress), prescriptions, medical bills, invoices, histories, diagnoses, narratives, and any correspondence/memoranda and billing information. It also includes, to the extent such records currently exist and are in your possession, insurance records, including Medicare/Medicaid and other public assistance claims, applications, statements, eligibility material, claims or claim disputes, resolutions and payments,

medical records provided as evidence of services provided, and any other documents or things

pertaining to services furnished under Title XVII of the Social Security Act or other forms of public assistance (federal, state, local, etc.). This listing is not meant to be exclusive. This will further authorize you to provide updated medical records, x-rays, reports or copies thereof to the above attorney until the conclusion of the litigation. I understand that I have the right to revoke in writing my consent to this disclosure at any time, except to the extent that the above-named facility or provider already has taken action in reliance upon this authorization, or if this authorization was obtained as a condition of obtaining insurance coverage. I further understand that the above-named facility or provider cannot condition the provision of treatment, payment, enrollment in a health plan or eligibility for benefits on my provision of this authorization. I further understand that information disclosed pursuant to this authorization may be subject to redisclosure by the recipient to its clients, agents, employees, consultants, experts, the court, and others deemed necessary by the recipient to assist in this litigation and may no longer be protected by HIPAA. I further reserve the right to request the return or redaction of sensitive or embarrassing information, not germane to the litigation, that is disclosed to the Receiving Parties.

Any photostatic copy of this document shall have the same authority as the original, and may be substituted in its place. Copies of these materials are to be provided at the expense of Hughes Hubbard & Reed LLP or _____.

Dated this 28th day of February, 2007.

_Mickey Grizzard_

Mickey Grizzard



**PLAINTIFF PROFILE FORM FOR JAMES T. PERRY**

I. CASE INFORMATION

A.    Name of person completing this form:    James T. Perry

B.    If you are completing this questionnaire in a representative capacity (e.g., on behalf of the estate of a deceased person or a minor), please complete the following:

   1. Social Security number

   2. Maiden Or Other Names Used or By Which You Have Been Known:

   3. Address:

   4. State which individual or estate you are representing, and in what capacity you are representing the individual or estate?

   5. If you were appointed as a representative by a court, state the:

   6. What is your relationship to deceased or represented person or person claimed to be injured?

   7. If you represent a decedent's estate, state the date of death of the decedent and the address of the place where the decedent died:

C.    Claim Information

   1. Are you claiming that you have or may develop bodily injury as a result of taking VIOXX?        Yes __X__      No _____

   *If "yes,"*
          a. What is your understanding of the bodily injury you claim resulted from your use of VIOXX? Heart attack

          b. When do you claim this injury occurred?        March 25, 2004

          c. Who diagnosed the condition?  Dr. Shirah

          d. Did you ever suffer this type of injury prior to the date set forth in answer to the prior question? Yes _____        No __X__

# Exhibit G

*If "yes,"* when and who diagnosed the condition at that time?

    e. Do you claim that that your use of VIOXX® worsened a condition that you already had or had in the past? Yes _____    No __X___
*If "yes,"* set forth the
injury or condition; whether or not you had already recovered from that injury or condition before you took VIOXX̀; and the date of recovery, if any.

D.    Are you claiming mental and/or emotional damages as a consequence of VIOXX?    Yes _____    No __**X**___

*If "yes,"* for each provider (including but not limited to primary care physician, psychiatrist, psychologist, counselor) from whom have sought treatment for psychological, psychiatric or emotional problems during the last ten (10) years, state:
a. Name and address of each person who treated you:
b. To your understanding, condition for which treated:
c. When treated:
d. Medications prescribed or recommended by provider:

## II. PERSONAL INFORMATION OF THE PERSON WHO USED VIOXX̀

A.    Name: James S. Perry

B.    Maiden or other names used or by which you have been known:

C.    Social Security Number: 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

D.    Address: 2179 Drake Road, Daviston, Alabama 36256

E.    Identify each address at which you have resided during the last ten (10) years, and list when you started and stopped living at each one: Same

F.    Driver's License Number and State Issuing License: Alabama- 1804155

G.    Date of Place and Birth: 06-03-41, Knight Sanotomarn, Roanoke, Alabama

H.    Sex: Male __X__    Female_____

I.    Identify the highest level of education (high school, college, university or other educational institution) you have attended (even if not completed), the dates of attendance, courses of study pursued, and diplomas or degrees awarded:
12th Grade: 1948-1960

J.    Employment Information.

    1. Current employer (if not currently employed, last employer):
        Name: Barber Sales
        Address: Talladega, Alabama
        Dates of Employment: 18 years
        Occupation/Job Duties: Route Sales

    2. List the following for each employer you have had in the last ten (10) years:
        Same as above.

    3. Are you making a wage loss claim for either your present or previous
    employment? Yes _____ No __X___
        *If "yes,"* state your annual income at the time of the injury alleged in
        Section I©):

K.    Military Service Information: Have you ever served in the military, including the
    military reserve or national guard? Yes _____    No __X__

    *If "yes,"* were you ever rejected or discharged from military service for any
    reason relating to your physical, psychiatric or emotional condition?
    Yes _____    No _____

L.    Insurance / Claim Information:

    1. Have you ever filed a worker's compensation and/or social security disability
    (SSI or SSD) claim? Yes __X__    No _____

    *If "yes,"* to the best of your knowledge please state:

        a. Year claim was filed: 04-13-04

        b. Nature of disability: Congestive Heart Failure

        c. Approximate period of disability: 2004-Present

    2. Have you ever been out of work for more than thirty (30) days for reasons
    related to your health (other than pregnancy)? Yes _____    No __X__

    *If "yes,"* set forth when and the reason.  Four years for disabilities stated above.

    3. Have you ever filed a lawsuit or made a claim, other than in the present suit,
    relating to any bodily injury? Yes _____    No __X__

*If "yes,"* state to the best of your knowledge the court in which such action was filed, case name and/or names of adverse parties, and a brief description for the claims asserted.

M.   As an adult, have you been convicted of, or plead guilty to, a felony and/or crime of fraud or dishonesty? Yes _____ No __X__
     *If "yes,"* set forth where, when and the felony and/or crime.

## III. FAMILY INFORMATION

A.   List for each marriage the name of your spouse; spouse's date of birth (for your current spouse only); spouse's occupation; date of marriage; date the marriage ended, if applicable; and how the marriage ended (e.g., divorce, annulment, death):

     Name: Johnnie Sue Perry
     Married: 08-26-1962
     Occupation: Disabled

B.   Has your spouse filed a loss of consortium claim in this action?
     Yes _____ No __X__

C.   To the best of your knowledge did any child, parent, sibling, or grandparent of yours suffer from any type of cardiovascular disease including but not limited to: heart attack, abnormal rhythm, arteriosclerosis (hardening or the arteries), murmur, coronary artery disease, congestive heart failure, enlarged heart, leaking valves or prolapse, heart block, congenital heart abnormality, Scarlet Fever, Rheumatic Fever, atrial fibrillation, stroke?
     Yes __X__      No _____      Don't Know _____

     *If "yes,"* identify each such person below and provide the information requested.

     Name:       Mildred L. Perry
     Current Age (or Age at Death): 89 years old at death
     Type of Problem: Congestive Heart Failure
     If Applicable, Cause of Death: **?**

D.   If applicable, for each of your children, list his/her name, age and address:
     Cynthia Kaye Whaley, age 45, Roanoke, AL
     James Bradley Perry, age 39, Daviston, AL

E.   If you are claiming the wrongful death of a family member, list any and all heirs of the decedent. **None.**

## IV. VIOXX PRESCRIPTION INFORMATION

A. Who prescribed VIOXX for you? Dr. George Smith Jr.

B. On which dates did you begin to take, and stop taking, VIOXX?
     Date started: 02-04-00
     Date ended: 10-18-01

C.   Did you take VIOXX continuously during that period?
    Yes __X__     No _____    Don't Recall _____

D.   To your understanding, for what condition were you prescribed VIOXX? Arthritis

E.   Did you renew your prescription for VIOXX?
    Yes __X__     No _____   Don't Recall____

F.   If you received any samples of VIOXX, state who provided them, what dosage, how much and when they were provided: No Samples

G.   Which form of VIOXX did you take (check all that apply)?
    _____ 12.5 mg Tablet (round, cream, MRK 74)
    _____ 12.5 mg Oral Suspension
    __X__ 25 mg Tablet (round, yellow, MRK 110)
    _____ 25 mg Oral Suspension
    _____ 50 mg Tablet (round, orange, MRK 114)

H.   How many times per day did you take VIOXX? Twice

I.   Did you request that any doctor or clinic provide you with VIOXX or a prescription for VIOXX? Yes _____   No __X__ Don't Recall _____

J.   Instructions or Warnings:

    1. Did you receive any written or oral information about VIOXX before you took it?  Yes _____   No __X__   Don't Recall _____

    2. Did you receive any written or oral information about VIOXX while you took it? Yes _____   No __X__   Don't Recall _____

    3. *If "yes,"*
        a. When did you receive that information?
        b. From whom did you receive it?
        c. What information did you receive?

K.  What over-the-counter pain relief medications, if any, were you taking at the same time you were taking VIOXX?  None

### V. MEDICAL BACKGROUND

A.  Height: 6' 1"

B.  Current Weight: 193

Weight at the time of the injury, illness, or disability described in Section I©): Same

C.  Smoking/Tobacco Use History: ***Check the answer and fill in the blanks applicable to your history of smoking and/or tobacco use.***

__X__  Never smoked cigarettes/cigars/pipe tobacco or used chewing tobacco/snuff.
_____ Past smoker of cigarettes/cigars/pipe tobacco or used chewing tobacco/snuff.
    a. Date on which smoking/tobacco use ceased:
    b. Amount smoked or used: on average_____ per day for _____ years.
_____Current smoker of cigarettes/cigars/pipe tobacco or user of chewing tobacco/snuff.
Amount smoked or used: on average 1 pack per day for 10 years.
____ Smoked different amounts at different times.

D.  Drinking History. Do you now drink or have you in the past drank alcohol (beer, wine, whiskey, etc.)? Yes __X__  No _____
    ***If "yes," fill in the appropriate blank*** with the number of drinks that represents your average alcohol consumption during the period you were taking VIOXX up to the time that you sustained the injuries alleged in the complaint:
    _____ drinks per week,
    __4 or 5__ drinks per month,
    _____ drinks per year, ***or***
    Other (describe):

E.  Illicit Drugs. Have you ever used (even one time) any illicit drugs of any kind within  one (1) year before, or any time after, you first experienced your alleged VIOXX-related injury?" Yes _____    No __X__    Don't Recall _____

***If "yes",*** identify each substance and state when you first and last used it.

F.    Please indicate to the best of your knowledge whether you have ever received any of the following treatments or diagnostic procedures:

1. Cardiovascular surgeries, including, but not limited to, the following, and specify for what condition the surgery was performed: open heart/bypass surgery, (pacemaker implantation), vascular surgery, IVC filter placement, carotid (neck artery) surgery, lung resection, intestinal surgery: **Surgery: I have a pacemaker.**

2. Treatments/interventions for heart attack, angina (chest pain), or lung ailments:
**Treatment/Intervention: I went to the hospital for my heart attack.**

3. To your knowledge, have you had any of the following tests performed: chest Xray, CT scan, MRI, angiogram, EKG, echocardiogram, TEE (trans-esophageal echo), bleeding scan, endoscopy, lung bronchoscopy, carotid duplex/ultrasound, MRI/MRA of the head/neck, angiogram of the head/neck, CT scan of the head, bubble/microbubble study, or Holter monitor?
Yes __X__    No _____    Don't Recall _____
*If "yes,"* answer the following:
          Diagnostic Test When Treating:  **See medical records.**
          **Physician:**
          **Hospital Reason:**

## VI. DOCUMENTS

Please indicate if any of the following documents and things are currently in your possession, custody, or control, or in the possession, custody, or control of your lawyers by checking **"yes"** or **"(no)."** Where you have indicated **"yes,"** please attach the documents and things to your responses to this profile form.

A.    Records of physicians, hospitals, pharmacies, and other healthcare providers identified in response to this profile form.    Yes __X__    No _____

B.    Decedent's death certificate (if applicable).    Yes _____    No __X___

C.    Report of autopsy of decedent (if applicable).    Yes _____    No __X___

## VII. LIST OF MEDICAL PROVIDERS AND OTHER SOURCES OF INFORMATION

*List the name and address of each of the following:*

A.     Your current family and/or primary care physician: Dr. DeWayne Rush


B.     To the best of your ability, identify each of your primary care physicians for the last ten (10) years.
Dr. George Smith Sr.
P.O. Box 98
Lineville, AL 36266

Dr. Ross Davis, Dr. Brian Foley, Cardiologists
2123 Executive Park Drive
Opelika, AL 36801


C.     Each hospital, clinic, or healthcare facility where you have received inpatient treatment or been admitted as a patient during the last ten (10) years.
Clay County Hospital
83825 Highway 9
Ashland, AL 36251

East Alabama Medical Center
2000 Pepperell Parkway
Opelika, AL 36801-5452


D.     Each hospital, clinic, or healthcare facility where you have received outpatient treatment (including treatment in an emergency room) during the last ten (10) years.
Clay County Hospital
83825 Highway 9
Ashland, AL 36251

East Alabama Medical Center
2000 Pepperell Parkway
Opelika, AL 36801-5452

E.    Each physician or healthcare provider from whom you have received treatment in the last ten (10) years. Listed above

F.    Each pharmacy that has dispensed medication to you in the last ten (10) years.
Lineville Clinic Pharmacy
60000 Highway 49
Lineville, AL 36266

G.    If you have submitted a claim for social security disability benefits in the last ten (10) years, state the name and address of the office that is most likely to have records concerning your claim.
Alexander City Alabama
Social Security Administration
63Aliant Parkway
Alexander City, Alabama 35010

H.    If you have submitted a claim for worker's compensation, state the name and address of the entity that is most likely to have records concerning your claim.
None submitted.

## CERTIFICATION

I declare under penalty of perjury subject to 28 U.S.C. § 1746 that all of the information provided in this Profile Form is true and correct to the best of my knowledge, that I have completed the List of Medical Providers and Other Sources of Information appended hereto, which is true and correct to the best of my knowledge, that I have supplied all the documents requested in part VI of this declaration, to the extent that such documents are in my possession, custody, or control, or in the possession, custody, or control of my lawyers, and that I have supplied the authorizations attached to this declaration.

_____
Signature

_____2/16/07_____
Date

James T. Perry
Print Name

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA
BAILEY, et als., v MERCK & CO. INC., et als.
Case Number: 3:06 cv 00979
AUTHORIZATION FOR RELEASE OF RECORDS (To be signed by plaintiffs *not*
making a claim for lost wages or earnings or earning capacity.)

Name: James T. Perry
Date of Birth: 06-03-1941
Social Security Number: 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

I hereby authorize _____ to release all
existing records and information in its possession regarding the above-named person's
employment and education (with the exception of W-4 and W-2 forms) to the law firm of
HUGHES HUBBARD & REED LLP, 101 Hudson Street, Suite 3601, Jersey City, New
Jersey 07302, and/or to the law firm of RUSHTON, STAKLEY, JOHNSTON &
GARRETT, P.A., Post Office Box 270, Montgomery, Alabama 36101-0270,
and/or to the law firm of _____
_____ and/or their designated agents ("Receiving Parties").
These records shall be used or disclosed solely in connection with the currently pending
VIOXX® litigation involving the person named above. This authorization shall cease to be
effective as of the date on which the above-named person's VIOXX® litigation concludes.
I understand that this authorization includes the above-named person's complete
employment personnel file with the exception of W-4 and W-2 forms (including attendance
reports, performance reports, medical reports, workers' compensation claims); and also includes
all other records relating to employment, past and present, all records related to claims for
disability, and all educational records (including those relating to courses taken, degrees
obtained, and attendance records). This listing is not meant to be exclusive.
Any photostatic copy of this document shall have the same authority as the original, and
may be substituted in its place.

Copies of these materials are to be provided at the expense of Hughes Hubbard & Reed LLP or
_____

Dated this 28th day of February, 2007.

_____
James T. Perry

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA
BAILEY, et als., v MERCK & CO. INC., et als.
Case Number: 3:06 cv 00979

AUTHORIZATION FOR RELEASE OF MEDICAL RECORDS PURSUANT TO
45 C.F.R. § 164.508 (HIPAA)

Name: James T. Perry
Date of Birth: 06-03-1941
Social Security Number: 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

I hereby authorize _____ to release all existing medical records regarding the
above-named person's medical care, treatment, physical condition, and/or medical expenses to
the law firm of HUGHES HUBBARD & REED LLP, 101 Hudson Street, Suite 3601, Jersey
City, New Jersey 07302, and/or to the law firm of RUSHTON, STAKLEY,
JOHNSTON & GARRETT, P.A., Post Office Box 270, Montgomery, Alabama
36101-0270, and/or to the law firm of _____
_____and/or their designated agents ("Receiving
Parties"). These records shall be used or disclosed solely in
connection with the currently pending VIOXX® litigation involving the person named above.
This authorization shall cease to be effective as of the date on which the above-named person's
VIOXX® litigation concludes. The Receiving Parties shall return or destroy the protected health
information (including all copies made) at the end of the above-named person's litigation or
proceeding.

I understand that the health information being used/disclosed may include information
relating to the diagnosis and treatment of Human Immunodeficiency Virus (HIV), Acquired
Immune Deficiency Syndrome (AIDS), sexually transmitted disease and drug and alcohol
disorders.

This authorization also may include x-ray reports, CT scan reports, MRI scans, EEGs,
EKGs, sonograms, arteriograms, discharge summaries, photographs, surgery consent forms,
admission and discharge records, operation records, doctor and nurses notes (excluding
psychotherapy notes maintained separately from the individual's medical record that document or
analyze the contents of conversation during a private counseling session or a group, joint, or
family counseling session by referring to something other than medication prescription and
monitoring, counseling session start and stop times, the modalities and frequencies of treatment
furnished, results of clinical tests, and any summary of the following items: diagnosis, functional
status, the treatment plan, symptoms, prognosis and progress), prescriptions, medical bills,
invoices, histories, diagnoses, narratives, and any correspondence/memoranda and billing
information. It also includes, to the extent such records currently exist and are in your
possession, insurance records, including Medicare/Medicaid and other public assistance claims,
applications, statements, eligibility material, claims or claim disputes, resolutions and payments,

medical records provided as evidence of services provided, and any other documents or things

pertaining to services furnished under Title XVII of the Social Security Act or other forms of public assistance (federal, state, local, etc.). This listing is not meant to be exclusive. This will further authorize you to provide updated medical records, x-rays, reports or copies thereof to the above attorney until the conclusion of the litigation. I understand that I have the right to revoke in writing my consent to this disclosure at any time, except to the extent that the above-named facility or provider already has taken action in reliance upon this authorization, or if this authorization was obtained as a condition of obtaining insurance coverage. I further understand that the above-named facility or provider cannot condition the provision of treatment, payment, enrollment in a health plan or eligibility for benefits on my provision of this authorization. I further understand that information disclosed pursuant to this authorization may be subject to redisclosure by the recipient to its clients, agents, employees, consultants, experts, the court, and others deemed necessary by the recipient to assist in this litigation and may no longer be protected by HIPAA. I further reserve the right to request the return or redaction of sensitive or embarrassing information, not germane to the litigation, that is disclosed to the Receiving Parties.

Any photostatic copy of this document shall have the same authority as the original, and may be substituted in its place. Copies of these materials are to be provided at the expense of Hughes Hubbard & Reed LLP or _____.

Dated this 28th day of February 2007.

James T. Perry



## PLAINTIFF PROFILE FORM FOR HERBERT SIKES

### I. CASE INFORMATION

A.    Name of person completing this form: Herbert Sikes

B.    If you are completing this questionnaire in a representative capacity (e.g., on behalf of the estate of a deceased person or a minor), please complete the following:

    1. Social Security number:

    2. Maiden Or Other Names Used or By Which You Have Been Known:

    3. Address:

    4. State which individual or estate you are representing, and in what capacity you are representing the individual or estate?

    5. If you were appointed as a representative by a court, state the:

    6. What is your relationship to deceased or represented person or person claimed to be injured?

    7. If you represent a decedent's estate, state the date of death of the decedent and the address of the place where the decedent died:

C.    Claim Information

    1. Are you claiming that you have or may develop bodily injury as a result of taking VIOXX?    Yes _X__    No _____

*If "yes,"*

    a. What is your understanding of the bodily injury you claim resulted from your use of VIOXX?  Heart Attack

    b. When do you claim this injury occurred?   March and April of 2000

    c. Who diagnosed the condition? Dr. John Mitchell MD, EAMC Opelika

    d. Did you ever suffer this type of injury prior to the date set forth in answer to the prior question? Yes _____        No _X_

## Exhibit H

*If "yes,"* when and who diagnosed the condition at that time? Dr. Robinson. April 17, 2000

    e. Do you claim that that your use of VIOXX® worsened a condition that you already had or had in the past? Yes \_\_\_\_\_   No \_\_X\_\_\_

*If "yes,"* set forth the injury or condition; whether or not you had already recovered from that injury or condition before you took VIOXX; and the date of recovery, if any. Heart attack after taking Vioxx

D.    Are you claiming mental and/or emotional damages as a consequence of VIOXX? Yes \_\_\_\_\_   No \_\_X\_\_

*If "yes,"* for each provider (including but not limited to primary care physician, psychiatrist, psychologist, counselor) from whom have sought treatment for psychological, psychiatric or emotional problems during the last ten (10) years, state:
    a. Name and address of each person who treated you:
    b. To your understanding, condition for which treated:
    c. When treated:
    d. Medications prescribed or recommended by provider:

## II. PERSONAL INFORMATION OF THE PERSON WHO USED VIOXX

A.    Name: Herbert S. Sikes

B.    Maiden or other names used or by which you have been known: Stanley

C.    Social Security Number: 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

D.    Address: 515 County Road 190
        Wedowee, Alabama 36278

E.    Identify each address at which you have resided during the last ten (10) years, and list when you started and stopped living at each one:

    515 County Road 140
    Wedowee, Alabama 36278

    Route 1
    Wedowee, Alabama 36278

F.    Driver's License Number and State Issuing License: AL 3075770

G.    Date of Place and Birth: 04/06/1928, Randolph County, Wedowee

H.    Sex: Male _X__        Female_____

I.    Identify the highest level of education (high school, college, university or other educational institution) you have attended (even if not completed), the dates of attendance, courses of study pursued, and diplomas or degrees awarded: Southern Union Junior College 1970's

J.    Employment Information.

   1. Current employer (if not currently employed, last employer): Retired
   Name: Sikes Auto Repair
   Address: Wedowee, Alabama
   Dates of Employment: Self- employed since 1968
   Occupation/Job Duties: Owner of Car Repair Shop

   2. List the following for each employer you have had in the last ten (10) years: not applicable.

   3. Are you making a wage loss claim for either your present or previous employment? Yes _____    No _X_

   If "yes," state your annual income at the time of the injury alleged in Section I©):

K.    Military Service Information: Have you ever served in the military, including the military reserve or national guard? Yes __X__    No _____

   If "yes," were you ever rejected or discharged from military service for any reason relating to your physical, psychiatric or emotional condition? Yes _____    No __X__

L.    Insurance / Claim Information: No insurance

   1. Have you ever filed a worker's compensation and/or social security disability (SSI or SSD) claim? Yes _____    No __X__

   If "yes," to the best of your knowledge please state:
        a. Year claim was filed:
        b. Nature of disability:
        c. Approximate period of disability:

2. Have you ever been out of work for more than thirty (30) days for reasons related to your health (other than pregnancy)? Yes _____     No __X__

*If "yes,"* set forth when and the reason.  Four years for disabilities stated above.

3. Have you ever filed a lawsuit or made a claim, other than in the present suit, relating to any bodily injury? Yes _____     No __X__

*If "yes,"* state to the best of your knowledge the court in which such action was filed, case name and/or names of adverse parties, and a brief description for the claims asserted.

M.     As an adult, have you been convicted of, or plead guilty to, a felony and/or crime of fraud or dishonesty? Yes _____     No __X__

*If "yes,"* set forth where, when and the felony and/or crime.

## III.  FAMILY INFORMATION

A.     List for each marriage the name of your spouse; spouse's date of birth (for your current spouse only); spouse's occupation; date of marriage; date the marriage ended, if applicable; and how the marriage ended (e.g., divorce, annulment, death):

Name: Wyoleen K. Sikes
Married: 1950
Occupation: Retired Administrator, Randolph County Board of Education

B.     Has your spouse filed a loss of consortium claim in this action?
Yes _____     No __X__

C.     To the best of your knowledge did any child, parent, sibling, or grandparent of yours suffer from any type of cardiovascular disease including but not limited to: heart attack, abnormal rhythm, arteriosclerosis (hardening or the arteries), murmur, coronary artery disease, congestive heart failure, enlarged heart, leaking valves or prolapse, heart block, congenital heart abnormality, Scarlet Fever, Rheumatic Fever, atrial fibrillation, stroke?
Yes __X__     No _____     Don't Know _____

*If "yes,"* identify each such person below and provide the information requested.

Name: Barvis Sikes
Current Age (or Age at Death): 72
Type of Problem: Congestive Heart Failure
If Applicable, Cause of Death:.

Name: Aline Sikes Smith
Current Age (or Age at Death): 73
Type of Problem: Congestive Heart Failure
If Applicable, Cause of Death:

Name: Quinton Sikes
Current Age (or Age at Death):58
Type of Problem: Heart Attack
If Applicable, Cause of Death:

Name: Frank Sikes
Current Age (or Age at Death): 81
Type of Problem: Cancer of Stomach
If Applicable, Cause of Death:

D.    If applicable, for each of your children, list his/her name, age and address:
Joe Sikes, 48 years, 571 Wylie Road, Wedowee, Alabama 36278
Sherry Sikes, 54 years, 1529 County Road 649, Roanoke, Alabama 36274
Mike Sikes, 54 years, 205 Jordan Street, Tull Hill, Georgia 30755

E.    If you are claiming the wrongful death of a family member, list any and all heirs of the decedent. Not applicable.

## IV. VIOXX PRESCRIPTION INFORMATION

A.    Who prescribed VIOXX for you?  Dr. Lawrence Rosen. Nurse gave me five (5) boxes of Vioxx for pain.

B.    On which dates did you begin to take, and stop taking, VIOXX?
March 8, 2000-April 17, 2000

C.    Did you take VIOXX continuously during that period?
Yes __X__    No _____    Don't Recall _____

D.    To your understanding, for what condition were you prescribed VIOXX?
Severe pain.

E.    Did you renew your prescription for VIOXX?
      Yes _____   No __X__   Don't Recall_____

F.    If you received any samples of VIOXX, state who provided them, what dosage, how much and when they were provided: Dr. Lawrence Rosen's Nurse, 25mg tablets.

G.    Which form of VIOXX did you take (check all that apply)?
      _____ 12.5 mg Tablet (round, cream, MRK 74)
      _____ 12.5 mg Oral Suspension
      __X__ 25 mg Tablet (round, yellow, MRK 110)
      _____ 25 mg Oral Suspension
      _____ 50 mg Tablet (round, orange, MRK 114)

H.    How many times per day did you take VIOXX? Once a day.

I.    Did you request that any doctor or clinic provide you with VIOXX or a prescription for VIOXX? Yes _____   No __X__   Don't Recall _____

J.    Instructions or Warnings:

      1. Did you receive any written or oral information about VIOXX before you took it? Yes _____   No __X__   Don't Recall _____

      2. Did you receive any written or oral information about VIOXX while you took it? Yes _____   No __X__   Don't Recall _____

      3. If "yes,"
            a. When did you receive that information?
            b. From whom did you receive it?
            c. What information did you receive?

K.    What over-the-counter pain relief medications, if any, were you taking at the same time you were taking VIOXX? None

V. MEDICAL BACKGROUND

A.    Height: 5"11

B.    Current Weight: 200 pounds

      Weight at the time of the injury, illness, or disability described in Section I©):
      170 pounds

C.    Smoking/Tobacco Use History: *Check the answer and fill in the blanks applicable to your history of smoking and/or tobacco use.*

_____ Never smoked cigarettes/cigars/pipe tobacco or used chewing tobacco/snuff.
___X__ Past smoker of cigarettes/cigars/pipe tobacco or used chewing tobacco/snuff.

a. Date on which smoking/tobacco use ceased:

b. Amount smoked or used: on average__1__ per day for __45_ years.
_____Current smoker of cigarettes/cigars/pipe tobacco or user of chewing tobacco/snuff.
Amount smoked or used: on average 1 pack per day for 10 years.
____ Smoked different amounts at different times.

D.    Drinking History. Do you now drink or have you in the past drank alcohol (beer, wine, whiskey, etc.)? Yes _____    No __X__

*If "yes," fill in the appropriate blank* with the number of drinks that represents your average alcohol consumption during the period you were taking VIOXXÒ up to the time that you sustained the injuries alleged in the complaint:
_____ drinks per week,
_____ drinks per month,
_____ drinks per year, *or*
Other (describe):

E.    Illicit Drugs. Have you ever used (even one time) any illicit drugs of any kind within one (1) year before, or any time after, you first experienced your alleged VIOXX- related injury?" Yes _____    No __X__    Don't Recall _____

*If "yes",* identify each substance and state when you first and last used it.

F.    Please indicate to the best of your knowledge whether you have ever received any of the following treatments or diagnostic procedures:

1. Cardiovascular surgeries, including, but not limited to, the following, and specify or what condition the surgery was performed: open heart/bypass surgery, pacemaker implantation, vascular surgery, IVC filter placement, carotid (neck artery) surgery, lung resection, intestinal surgery:
Surgery: Open Heart Surgery, April 22, 2000

2. Treatments/interventions for heart attack, angina (chest pain), or lung ailments:
Treatment/Intervention: See Medical Records

3. To your knowledge, have you had any of the following tests performed: chest Xray, CT scan, MRI, angiogram, EKG, echocardiogram, TEE (trans-esophageal echo), bleeding scan, endoscopy, lung bronchoscopy, carotid duplex/ultrasound, MRI/MRA of the head/neck, angiogram of the head/neck, CT scan of the head, bubble/microbubble study, or Holter monitor?
Yes _____    No _____    Don't Recall __X__

*If "yes,"* answer the following:
        Diagnostic Test When Treating:
        Physician:
        Hospital Reason:

## VI. DOCUMENTS

Please indicate if any of the following documents and things are currently in your possession, custody, or control, or in the possession, custody, or control of your lawyers by checking *"yes"* or *"no."* Where you have indicated *"yes,"* please attach the documents and things to your responses to this profile form.

A.    Records of physicians, hospitals, pharmacies, and other healthcare providers identified in response to this profile form.    Yes __X__    No _____

B.    Decedent's death certificate (if applicable).    Yes _____    No _X__

C.    Report of autopsy of decedent (if applicable).    Yes _____    No _X__

## VII. LIST OF MEDICAL PROVIDERS AND OTHER SOURCES OF INFORMATION

*List the name and address of each of the following:*
A.    Your current family and/or primary care physician:

        Dr. Mike Robinson
        209 Main Street
        Wedowee, Alabama

B.    To the best of your ability, identify each of your primary care physicians for the last ten (10) years.

Dr. Lawrence Rosen
Rosen Urology Center
201 Henry Road
Jacksonville, AL 36265

Dr. Mitchell
East Alabama Cardiovascular Association P.C.
2123 Executive Park Drive
Opelika, AL 36801

C.    Each hospital, clinic, or healthcare facility where you have received inpatient treatment or been admitted as a patient during the last ten (10) years.

East Alabama Medical Center
2000 Pepperell Parkway
Opelika, AL 36801-5452

D.    Each hospital, clinic, or healthcare facility where you have received outpatient treatment (including treatment in an emergency room) during the last ten (10) years.

Dr. Mike Robinson
Wedowee Clinic
209 Main Street
Wedowee, Alabama 36278

Wedowee Hospital
Highway 431
Wedowee, AL 36278

Jacksonville Medical Center
1701 Pelham Road South
Jacksonville, AL 36265

Northeast Alabama Regional Medical Center
P.O. Box 2208
400 East 10th Street
Anniston, AL 36202

East Alabama Medical Center
2000 Pepperell Parkway
Opelika, AL 36801-5452

E.   Each physician or healthcare provider from whom you have received treatment in
the last ten (10) years.

Dr. Mike Robinson
209 Main Street
Wedowee, Alabama

Dr. Lawrence Rosen
Rosen Urology Center
201 Henry Road
Jacksonville, AL 36265

Dr. David McKenzie
2000 Pepperell Parkway
Opelika, AL 36801-5452

Dr. Mason Reginald, V.A.
Anniston, AL

F.   Each pharmacy that has dispensed medication to you in the last ten (10) years.

Martin Army Community Hospital Pharmacy Service,  Fort Benning, GA 31905
Birmingham VAMC, Birmingham, AL
Food Max Pharmacy # 240, Anniston, AL
Rite Aid Pharmacy 07084, Roanoke, AL
Wal-Mart Pharmacy 100863, Roanoke, AL
CVS/Pharmacy,Anniston, AL

G.   If you have submitted a claim for social security disability benefits in the last ten
(10) years, state the name and address of the office that is most likely to have
records concerning your claim.
None.

H.   If you have submitted a claim for worker's compensation, state the name and
address of the entity that is most likely to have records concerning your claim.
None.

CERTIFICATION

I declare under penalty of perjury subject to 28 U.S.C. § 1746 that all of the information provided in this Profile Form is true and correct to the best of my knowledge, that I have completed the List of Medical Providers and Other Sources of Information appended hereto, which is true and correct to the best of my knowledge, that I have supplied all the documents requested in part VI of this declaration, to the extent that such documents are in my possession, custody, or control, or in the possession, custody, or control of my lawyers, and that I have supplied the authorizations attached to this declaration.

_____
Signature

2|1|07
_____
Date

Stanley Sikes
_____
Print Name

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA
BAILEY, et als., v MERCK & CO. INC., et als.
Case Number: 3:06 cv 00979
AUTHORIZATION FOR RELEASE OF RECORDS (To be signed by plaintiffs *not*
making a claim for lost wages or earnings or earning capacity.)

Name: Herbert Sikes
Date of Birth: 4-6-1928
Social Security Number: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

I hereby authorize _____ to release all
existing records and information in its possession regarding the above-named person's
employment and education (with the exception of W-4 and W-2 forms) to the law firm of
HUGHES HUBBARD & REED LLP, 101 Hudson Street, Suite 3601, Jersey City, New
Jersey 07302, and/or to the law firm of RUSHTON, STAKLEY, JOHNSTON &
GARRETT, P.A., Post Office Box 270, Montgomery, Alabama 36101-0270,
and/or to the law firm of _____
_____and/or their designated agents ("Receiving Parties").
These records shall be used or disclosed solely in connection with the currently pending
VIOXX® litigation involving the person named above. This authorization shall cease to be
effective as of the date on which the above-named person's VIOXX® litigation concludes.
I understand that this authorization includes the above-named person's complete
employment personnel file with the exception of W-4 and W-2 forms (including attendance
reports, performance reports, medical reports, workers' compensation claims), and also includes
all other records relating to employment, past and present, all records related to claims for
disability, and all educational records (including those relating to courses taken, degrees
obtained, and attendance records). This listing is not meant to be exclusive.
Any photostatic copy of this document shall have the same authority as the original, and
may be substituted in its place.

Copies of these materials are to be provided at the expense of Hughes Hubbard & Reed LLP or
_____

Dated this 28th day of February 2007.

*H Stanley Sikes*
Herbert Sikes

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA
BAILEY, et als., v MERCK & CO. INC., et als.
Case Number: 3:06 cv 00979

AUTHORIZATION FOR RELEASE OF MEDICAL RECORDS PURSUANT TO
45 C.F.R. § 164.508 (HIPAA)

Name: Herbert Sikes
Date of Birth: 4-6-1928
Social Security Number: 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

I hereby authorize _____ to release all existing medical records regarding the
above-named person's medical care, treatment, physical condition, and/or medical expenses to
the law firm of **HUGHES HUBBARD & REED LLP, 101 Hudson Street, Suite 3601, Jersey
City, New Jersey 07302,** and/or to the law firm of **RUSHTON, STAKLEY,
JOHNSTON & GARRETT, P.A.,** Post Office Box 270, Montgomery, Alabama
**36101-0270,** and/or to the law firm of _____
_____ and/or their designated agents ("Receiving
Parties"). These records shall be used or disclosed solely in
connection with the currently pending VIOXX® litigation involving the person named above.
This authorization shall cease to be effective as of the date on which the above-named person's
VIOXX® litigation concludes. The Receiving Parties shall return or destroy the protected health
information (including all copies made) at the end of the above-named person's litigation or
proceeding.

I understand that the health information being used/disclosed may include information
relating to the diagnosis and treatment of Human Immunodeficiency Virus (HIV), Acquired
Immune Deficiency Syndrome (AIDS), sexually transmitted disease and drug and alcohol
disorders.

This authorization also may include x-ray reports, CT scan reports, MRI scans, EEGs,
EKGs, sonograms, arteriograms, discharge summaries, photographs, surgery consent forms,
admission and discharge records, operation records, doctor and nurses notes (excluding
psychotherapy notes maintained separately from the individual's medical record that document or
analyze the contents of conversation during a private counseling session or a group, joint, or
family counseling session by referring to something other than medication prescription and
monitoring, counseling session start and stop times, the modalities and frequencies of treatment
furnished, results of clinical tests, and any summary of the following items: diagnosis, functional
status, the treatment plan, symptoms, prognosis and progress), prescriptions, medical bills,
invoices, histories, diagnoses, narratives, and any correspondence/memoranda and billing
information. It also includes, to the extent such records currently exist and are in your
possession, insurance records, including Medicare/Medicaid and other public assistance claims,
applications, statements, eligibility material, claims or claim disputes, resolutions and payments,

medical records provided as evidence of services provided, and any other documents or things

pertaining to services furnished under Title XVII of the Social Security Act or other forms of public assistance (federal, state, local, etc.). This listing is not meant to be exclusive. This will further authorize you to provide updated medical records, x-rays, reports or copies thereof to the above attorney until the conclusion of the litigation. I understand that I have the right to revoke in writing my consent to this disclosure at any time, except to the extent that the above-named facility or provider already has taken action in reliance upon this authorization. or if this authorization was obtained as a condition of obtaining insurance coverage. I further understand that the above-named facility or provider cannot condition the provision of treatment, payment, enrollment in a health plan or eligibility for benefits on my provision of this authorization. I further understand that information disclosed pursuant to this authorization may be subject to redisclosure by the recipient to its clients, agents, employees, consultants, experts, the court, and others deemed necessary by the recipient to assist in this litigation and may no longer be protected by HIPAA. I further reserve the right to request the return or redaction of sensitive or embarrassing information, not germane to the litigation, that is disclosed to the Receiving Parties.

Any photostatic copy of this document shall have the same authority as the original, and may be substituted in its place. Copies of these materials are to be provided at the expense of Hughes Hubbard & Reed LLP or _____.

Dated this 28th day of February, 2007.

_H. Stanley Sikes_

Herbert Sikes



## PLAINTIFF PROFILE FORM FOR PHILLIP THOMPSON

### I. CASE INFORMATION

A.    Name of person completing this form: Phillip Charles Thompson

B.    If you are completing this questionnaire in a representative capacity (e.g., on behalf of the estate of a deceased person or a minor), please complete the following:

   1. Social Security number:

   2. Maiden Or Other Names Used or By Which You Have Been Known:

   3. Address:

   4. State which individual or estate you are representing, and in what capacity you are representing the individual or estate?

   5. If you were appointed as a representative by a court, state the:

   6. What is your relationship to deceased or represented person or person claimed to be injured?

   7. If you represent a decedent's estate, state the date of death of the decedent and the address of the place where the decedent died:

C.    Claim Information

      1. Are you claiming that you have or may develop bodily injury as a result of taking VIOXX?    Yes __X__    No _____

*If "yes,"*

      a. What is your understanding of the bodily injury you claim resulted from your use of VIOXX?  Myocardial Infarction

      b. When do you claim this injury occurred?  July 12, 2004

      c. Who diagnosed the condition? Dr. Shakil Ahmed

      d. Did you ever suffer this type of injury prior to the date set forth in answer to the prior question? Yes _____        No __X__

## Exhibit I

*If "yes,"* when and who diagnosed the condition at that time?

e. Do you claim that that your use of VIOXX® worsened a condition that you already had or had in the past? Yes _____    No _____

*If "yes,"* set forth the injury or condition; whether or not you had already recovered from that injury or condition before you took VIOXX; and the date of recovery, if any.

D.    Are you claiming mental and/or emotional damages as a consequence of VIOXX?
      Yes _____    No __X___

*If "yes,"* for each provider (including but not limited to primary care physician, psychiatrist, psychologist, counselor) from whom have sought treatment for psychological, psychiatric or emotional problems during the last ten (10) years, state:
      a. Name and address of each person who treated you:
      b. To your understanding, condition for which treated:
      c. When treated:
      d. Medications prescribed or recommended by provider:

## II. PERSONAL INFORMATION OF THE PERSON WHO USED VIOXX

A.    Name: Phillip Charles Thompason

B.    Maiden or other names used or by which you have been known:

C.    Social Security Number: 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

D.    Address: 79 County Road 58, Wedowee, Alabama 36278

E.    Identify each address at which you have resided during the last ten (10) years, and list when you started and stopped living at each one: Same as above.

F.    Driver's License Number and State Issuing License: AL 3480079

G.    Date of Place and Birth: October 11, 1956

H.    Sex: Male __X__    Female_____

I.    Identify the highest level of education (high school, college, university or other educational institution) you have attended (even if not completed), the dates of attendance, courses of study pursued, and diplomas or degrees awarded:
      High school diploma

J.    Employment Information.

1. Current employer:
Name: Wedowee Utilities Board
Address: Wedowee, AL
Dates of Employment: 31 years in March
Occupation/Job Duties: Gas Superintendent

2. List the following for each employer you have had in the last ten (10) years:
None.

3. Are you making a wage loss claim for either your present or previous
employment? Yes _____    No __X___
If "yes," state your annual income at the time of the injury alleged in
Section I©):

K.    Military Service Information: Have you ever served in the military, including the
military reserve or national guard? Yes _____    No __X___

If "yes," were you ever rejected or discharged from military service for any
reason relating to your physical, psychiatric or emotional condition?
Yes _____    No _____

L.    Insurance / Claim Information:

1. Have you ever filed a worker's compensation and/or social security disability
(SSI or SSD) claim? Yes _____    No __X___

If "yes," to the best of your knowledge please state:
    a. Year claim was filed:
    b. Nature of disability:
    c. Approximate period of disability:

2. Have you ever been out of work for more than thirty (30) days for reasons
related to your health (other than pregnancy)? Yes _____    No _____

If "yes," set forth when and the reason.

3. Have you ever filed a lawsuit or made a claim, other than in the present suit,
relating to any bodily injury? Yes __X___    No _____

If "yes," state to the best of your knowledge the court in which such action was
filed, case name and/or names of adverse parties, and a brief description for the
claims asserted.
I was in an auto accident in 1980.  I was a passenger in a vehicle.

M.    As an adult, have you been convicted of, or plead guilty to, a felony and/or crime of fraud or dishonesty? Yes _____    No __X___

   *If "yes,"* set forth where, when and the felony and/or crime.

## III.  FAMILY INFORMATION

A.    List for each marriage the name of your spouse; spouse's date of birth (for your current spouse only); spouse's occupation; date of marriage; date the marriage ended, if applicable; and how the marriage ended (e.g., divorce, annulment, death):

   Name: Debra Denise Thompson
   Married: October, 1997
   Occupation: Clerk at Wedowee Citgo

B.    Has your spouse filed a loss of consortium claim in this action?
   Yes _____    No __X___

C.    To the best of your knowledge did any child, parent, sibling, or grandparent of yours suffer from any type of cardiovascular disease including but not limited to: heart attack, abnormal rhythm, arteriosclerosis (hardening or the arteries), murmur, coronary artery disease, congestive heart failure, enlarged heart, leaking valves or prolapse, heart block, congenital heart abnormality, Scarlet Fever, Rheumatic Fever, atrial fibrillation, stroke?
   Yes ___X__    No _____    Don't Know _____

   *If "yes,"* identify each such person below and provide the information requested.

   Name: Mother, Hazel Thompson
   Current Age (or Age at Death): 84
   Type of Problem: Heart attack
   If Applicable, Cause of Death:.

D.    If applicable, for each of your children, list his/her name, age and address:
   No Children.

E.    If you are claiming the wrongful death of a family member, list any and all heirs of the decedent. No.

## IV. VIOXX PRESCRIPTION INFORMATION

A.    Who prescribed VIOXX for you?  Dr. Michael Robinson, Wedowee, Alabama

B.    On which dates did you begin to take, and stop taking, VIOXX?
      Started: 5-27-04
      Stopped: 9-21-04

C.    Did you take VIOXX continuously during that period?
      Yes __X___      No _____·      Don't Recall _____

D.    To your understanding, for what condition were you prescribed VIOXX?
      Problems with leg and hip pain and inflammation from wreck in 1980.

E.    Did you renew your prescription for VIOXX?
      Yes __X___      No _____      Don't Recall____

F.    If you received any samples of VIOXX, state who provided them, what dosage,
      how much and when they were provided: None.

G.    Which form of VIOXXÒ did you take (check all that apply)?
      _____ 12.5 mg Tablet (round, cream, MRK 74)
      _____ 12.5 mg Oral Suspension
      ___X__ 25 mg Tablet (round, yellow, MRK 110)
      _____ 25 mg Oral Suspension
      _____ 50 mg Tablet (round, orange, MRK 114)

H.    How many times per day did you take VIOXX?  Once.

I.    Did you request that any doctor or clinic provide you with VIOXX or a
      prescription for VIOXX? Yes _____   No __X___   Don't Recall _____

J.    Instructions or Warnings:

      1. Did you receive any written or oral information about VIOXX before you took
      it?  Yes _____   No _____   Don't Recall __X___


      2. Did you receive any written or oral information about VIOXX while you took
      it? Yes _____   No _____   Don't Recall __X___

      3. *If "yes,"*
            a. When did you receive that information?
            b. From whom did you receive it?
            c. What information did you receive?

K.      What over-the-counter pain relief medications, if any, were you taking at the same time you were taking VIOXX?  Advil, occasionally.


## V. MEDICAL BACKGROUND

A.      Height: 5'11'

B.      Current Weight: 220

Weight at the time of the injury, illness, or disability described in Section I©): Not available.

C.      Smoking/Tobacco Use History: *Check the answer and fill in the blanks applicable to your history of smoking and/or tobacco use.*

_____   Never smoked cigarettes/cigars/pipe tobacco or used chewing tobacco/snuff.
_____ Past smoker of cigarettes/cigars/pipe tobacco or used chewing tobacco/snuff.
        a. Date on which smoking/tobacco use ceased:
        b. Amount smoked or used: on average_____ per day for _____ years.
\_\_X\_\_\_Current smoker of cigarettes/cigars/pipe tobacco or user of chewing
        tobacco/snuff.
Amount smoked or used: on average 1 pack per day for 10 years.
\_\_\_ Smoked different amounts at different times.

D.      Drinking History. Do you now drink or have you in the past drank alcohol (beer, wine, whiskey, etc.)? Yes \_\_X\_\_\_     No _____

*If "yes," fill in the appropriate blank* with the number of drinks that represents your average alcohol consumption during the period you were taking VIOXX up to the time that you sustained the injuries alleged in the complaint:
        _____ drinks per week,
        \_\_\_\_\_1\_\_\_\_ drinks per month,
        _____ drinks per year, *or*
        Other (describe):

E.      Illicit Drugs. Have you ever used (even one time) any illicit drugs of any kind within one (1) year before, or any time after, you first experienced your alleged VIOXX- related injury?" Yes _____     No \_\_X\_\_\_     Don't Recall \_\_\_\_\_

*If "yes",* identify each substance and state when you first and last used it.

F.      Please indicate to the best of your knowledge whether you have ever received any of the following treatments or diagnostic procedures:

1. Cardiovascular surgeries, including, but not limited to, the following, and specify or what condition the surgery was performed: open heart/bypass surgery, pacemaker implantation, vascular surgery, IVC filter placement, carotid (neck artery) surgery, lung resection, intestinal surgery:
Surgery: Stint placement, July 2004,

2. Treatments/interventions for heart attack, angina (chest pain), or lung ailments:
Treatment/Intervention: Normal hospital course.

3. To your knowledge, have you had any of the following tests performed: chest Xray, CT scan, MRI, angiogram, EKG, echocardiogram, TEE (trans-esophageal echo), bleeding scan, endoscopy, lung bronchoscopy, carotid duplex/ultrasound, MRI/MRA of the head/neck, angiogram of the head/neck, CT scan of the head, bubble/microbubble study, or Holter monitor?
Yes __X___    No _____    Don't Recall _____

*If "yes,"* answer the following:
    Diagnostic Test When Treating: Chest X-Ray, EKG, Cardiac Catherization, Coronary arteiograms, left ventriculogram, cardiac fluoroscopy, 3 diagnostic catheters, Coronary Angiography, 10-19-04, 7-10-04, 9-07-05, 7-13-04, 10-21-04, 9-08-04
    Physician: Dr. R. Daniel
    Hospital Reason: Myocardial Infarction

## VI. DOCUMENTS

Please indicate if any of the following documents and things are currently in your possession, custody, or control, or in the possession, custody, or control of your lawyers by checking *"yes"* or *"no."* Where you have indicated *"yes,"* please attach the documents and things to your responses to this profile form.

A.    Records of physicians, hospitals, pharmacies, and other healthcare providers identified in response to this profile form.    Yes __X___    No _____

B.    Decedent's death certificate (if applicable).    Yes _____    No __X___

C.    Report of autopsy of decedent (if applicable).    Yes _____    No __X___

## VII. LIST OF MEDICAL PROVIDERS AND OTHER SOURCES OF INFORMATION

*List the name and address of each of the following:*

A.    Your current family and/or primary care physician:

Dr. Mike Robinson
209 Main Street
Wedowee, Alabama

B.    To the best of your ability, identify each of your primary care physicians for the last ten (10) years:

Dr. Mike Robinson
209 Main Street
Wedowee, Alabama

C.    Each hospital, clinic, or healthcare facility where you have received inpatient treatment or been admitted as a patient during the last ten (10) years.

Wedowee Hospital
Highway 431
Wedowee, AL 36278

East Alabama Medical Center
2000 Pepperell Parkway
Opelika, AL 36801-5452

D.    Each hospital, clinic, or healthcare facility where you have received outpatient treatment (including treatment in an emergency room) during the last ten (10) years.
None.

E.    Each physician or healthcare provider from whom you have received treatment in the last ten (10) years.

Dr. Tony Bolton
401 Hillyer Robinson
Anniston, Alabama 36207

Dr. Robert Grubbe
912 Snow Street
Oxford, Alabama 36203

F.    Each pharmacy that has dispensed medication to you in the last ten (10) years.

H&M Drugs
105 North Main Street
Wedowee, AL 36278

G.    If you have submitted a claim for social security disability benefits in the last ten (10) years, state the name and address of the office that is most likely to have records concerning your claim.  None.


H.    If you have submitted a claim for worker's compensation, state the name and address of the entity that is most likely to have records concerning your claim. None.

## CERTIFICATION

I declare under penalty of perjury subject to 28 U.S.C. § 1746 that all of the information provided in this Profile Form is true and correct to the best of my knowledge, that I have completed the List of Medical Providers and Other Sources of Information appended hereto, which is true and correct to the best of my knowledge, that I have supplied all the documents requested in part VI of this declaration, to the extent that such documents are in my possession, custody, or control, or in the possession, custody, or control of my lawyers, and that I have supplied the authorizations attached to this declaration.


_____
Signature

2/19/07
Date

Phillip CHARLES Thompson
Print Name

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA
BAILEY, et als., v MERCK & CO. INC., et als.
Case Number: 3:06 cv 00979
AUTHORIZATION FOR RELEASE OF RECORDS (To be signed by plaintiffs *not* making a claim for lost wages or earnings or earning capacity.)

Name: Phillip Thompson
Date of Birth: 10-11-1956
Social Security Number: 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

I hereby authorize _____ to release all existing records and information in its possession regarding the above-named person's employment and education (with the exception of W-4 and W-2 forms) to the law firm of HUGHES HUBBARD & REED LLP, 101 Hudson Street, Suite 3601, Jersey City, New Jersey 07302, and/or to the law firm of RUSHTON, STAKLEY, JOHNSTON & GARRETT, P.A., Post Office Box 270, Montgomery, Alabama 36101-0270, and/or to the law firm of _____ and/or their designated agents ("Receiving Parties"). These records shall be used or disclosed solely in connection with the currently pending VIOXX® litigation involving the person named above. This authorization shall cease to be effective as of the date on which the above-named person's VIOXX® litigation concludes. I understand that this authorization includes the above-named person's complete employment personnel file with the exception of W-4 and W-2 forms (including attendance reports, performance reports, medical reports, workers' compensation claims), and also includes all other records relating to employment, past and present, all records related to claims for disability, and all educational records (including those relating to courses taken, degrees obtained, and attendance records). This listing is not meant to be exclusive. Any photostatic copy of this document shall have the same authority as the original, and may be substituted in its place.

Copies of these materials are to be provided at the expense of Hughes Hubbard & Reed LLP or

_____

Dated this 28th day of February, 2007.


*Phillip Thompson*
Phillip Thompson

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA
BAILEY, et als., v MERCK & CO. INC., et als.
Case Number: 3:06 cv 00979

AUTHORIZATION FOR RELEASE OF MEDICAL RECORDS PURSUANT TO
45 C.F.R. § 164.508 (HIPAA)

Name: Phillip Thompson
Date of Birth: 10-11-1956
Social Security Number: 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

I hereby authorize _____ to release all existing medical records regarding the
above-named person's medical care, treatment, physical condition, and/or medical expenses to
the law firm of HUGHES HUBBARD & REED LLP, 101 Hudson Street, Suite 3601, Jersey
City, New Jersey 07302, and/or to the law firm of RUSHTON, STAKLEY,
JOHNSTON & GARRETT, P.A., Post Office Box 270, Montgomery, Alabama
36101-0270, and/or to the law firm of _____
_____ and/or their designated agents ("Receiving
Parties"). These records shall be used or disclosed solely in
connection with the currently pending VIOXX® litigation involving the person named above.
This authorization shall cease to be effective as of the date on which the above-named person's
VIOXX® litigation concludes. The Receiving Parties shall return or destroy the protected health
information (including all copies made) at the end of the above-named person's litigation or
proceeding.

I understand that the health information being used/disclosed may include information
relating to the diagnosis and treatment of Human Immunodeficiency Virus (HIV), Acquired
Immune Deficiency Syndrome (AIDS), sexually transmitted disease and drug and alcohol
disorders.

This authorization also may include x-ray reports, CT scan reports, MRI scans, EEGs,
EKGs, sonograms, arteriograms, discharge summaries, photographs, surgery consent forms,
admission and discharge records, operation records, doctor and nurses notes (excluding
psychotherapy notes maintained separately from the individual's medical record that document or
analyze the contents of conversation during a private counseling session or a group, joint, or
family counseling session by referring to something other than medication prescription and
monitoring, counseling session start and stop times, the modalities and frequencies of treatment
furnished, results of clinical tests, and any summary of the following items: diagnosis, functional
status, the treatment plan, symptoms, prognosis and progress), prescriptions, medical bills,
invoices, histories, diagnoses, narratives, and any correspondence/memoranda and billing
information. It also includes, to the extent such records currently exist and are in your
possession, insurance records, including Medicare/Medicaid and other public assistance claims,
applications, statements, eligibility material, claims or claim disputes, resolutions and payments,

medical records provided as evidence of services provided, and any other documents or things

pertaining to services furnished under Title XVII of the Social Security Act or other forms of public assistance (federal, state, local, etc.). This listing is not meant to be exclusive. This will further authorize you to provide updated medical records, x-rays, reports or copies thereof to the above attorney until the conclusion of the litigation. I understand that I have the right to revoke in writing my consent to this disclosure at any time, except to the extent that the above-named facility or provider already has taken action in reliance upon this authorization, or if this authorization was obtained as a condition of obtaining insurance coverage. I further understand that the above-named facility or provider cannot condition the provision of treatment, payment, enrollment in a health plan or eligibility for benefits on my provision of this authorization. I further understand that information disclosed pursuant to this authorization may be subject to redisclosure by the recipient to its clients, agents, employees, consultants, experts, the court, and others deemed necessary by the recipient to assist in this litigation and may no longer be protected by HIPAA. I further reserve the right to request the return or redaction of sensitive or embarrassing information, not germane to the litigation, that is disclosed to the Receiving Parties.

Any photostatic copy of this document shall have the same authority as the original, and may be substituted in its place. Copies of these materials are to be provided at the expense of Hughes Hubbard & Reed LLP or _____.

Dated this 28th day of February 2007.

Phillip Thompson

ELECTRONICALLY FILED
5/18/2007 9:34 AM
CV-2006-000145.00
CIRCUIT COURT OF
RANDOLPH COUNTY, ALABAMA
CHRIS MAY, CLERK

## IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

| | |
|---|---|
| CLIFFORD BAILEY, et al.      ) | |
|         ) | |
|      Plaintiff,       ) | |
|         ) | |
| vs.          ) | CASE NUMBER: CV-06-145 |
|         ) | |
| MERCK & CO., INC., et al.    ) | |
|         ) | |
|      Defendants.    ) | |

## WITHDRAWAL OF MOTION FOR PROTECTIVE ORDER

Now comes the Plaintiff and withdraws the motion for protective order filed as to

the deposition of James Bolognese previously set for May 24 and shows the court that by

the attached notice of cancellation, Defendant Merck has cancelled the said deposition

and it is no longer an issue.  The motion is therefore withdrawn as moot.


---/S/---Thomas J. Knight----
Attorney for Plaintiff


## CERTIFICATE OF SERVICE

I do hereby certify that I have this the 17 day of May , 2007, served a copy of the
above and foregoing on all counsel of record as listed below by United States Mail,
postage prepaid, and properly addressed.

     Mr. Ben C. Wilson
     Mr. Richard B. Garrett
     Mr. Robert C. Brock
     RUSHTON, STAKELY, JOHNSTON & GARRETT, P.A.
     184 Commerce Street
     Post Office Box 270
     Montgomery, Alabama 36104


---/S/---Thomas J. Knight----
Attorney for Plaintiff

Theodore V.H. Mayer, Esq.
Wilfred P. Coronato, Esq.
HUGHES HUBBARD & REED LLP
101 Hudson Street
Suite 3601
Jersey City, NJ 07302

Doug R. Marvin, Esq.
Laurie S. Fulton, Esq.
WILLIAMS & CONNOLLY LLP
725 12th Street, N.W.
Washington, D.C. 20005-5901
(202) 434-5000

*Attorneys for Defendant Merck & Co., Inc.*

-2-

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Notice of Cancellation of Merck & Co., Inc.'s Cross-Notice of Plaintiffs' Deposition of James Bolognese has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 17th day of May, 2007.

/s/ Dorothy H. Wimberly
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Phone:  504-581-3200
Fax:      504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel

-3-

873033v.1

IN THE CIRCUIT COURT OF
RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, CLIFFORD BLACK,  )
WESLEY CALHOUN, CURTIS DEASON,    )
RUTH GRAVES, MICKEY GRIZZARD,     )
JIMMY PERRY, HERBERT STANLEY      )
SIKES, and PHILLIP THOMPSON,      )
                                  )
    Plaintiffs,                   )
                                  )
v.                                )    CASE NUMBER: CV-2006-145
                                  )
MERCK & CO., INC., a foreign or   )
Domestic Corporation, et al.,     )
                                  )
    Defendants.                   )

**Filed in Office**

MAY 18 2007

CHRIS MAY
Clerk of Circuit Court

## MERCK & CO., INC.,'S NOTICE OF CANCELLATION OF CROSS-NOTICE DEPOSITION OF JAMES BOLOGNESE

PLEASE TAKE NOTICE that the deposition of **James Bolognese**, previously noticed for

**May 24, 2007**, has been cancelled.  No new date has been set yet.  Accordingly, Plaintiffs'

Motion for Protective Order, which was founded upon an apparent conflict with the deposition

date, is now moot.

                  One of the Attorneys for Defendant,
                  Merck & Co., Inc.

OF COUNSEL:

RUSHTON, STAKELY,
       JOHNSTON, & GARRETT, P.A.
Post Office Box 270
Montgomery, Alabama 36101-0270
Telephone:  (334) 206-3100
Facsimile: (334) 262-6277

## CERTIFICATE OF SERVICE

I hereby certify that I have served the above and foregoing document upon all interested parties by placing a copy of same in the United States Mail, postage prepaid and properly addressed on this the 17th day of May 2007, as follows:

James S. Hubbard
Thomas J. Knight
HUBBARD & KNIGHT
1125 Noble Street
Anniston, Alabama 36201

OF COUNSEL

IN THE CIRCUIT COURT OF
RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, CLIFFORD BLACK,           )
WESLEY CALHOUN, CURTIS DEASON,             )
RUTH GRAVES, MICKEY GRIZZARD,              )
JIMMY PERRY, HERBERT STANLEY               )
SIKES, and PHILLIP THOMPSON,               )
                                           )
    Plaintiffs,                          )
                                           )
v.                                         )     CASE NUMBER: CV-2006-145
                                           )
MERCK & CO., INC., a foreign or            )
Domestic Corporation, DAVID SPARKMAN,      )
KATHERINE HOLMES, LORI LOVETT,             )
SCOTT BARTLETT, CORAL HARPER,              )
MELISSA SANTIAGO, HENRY MITCHAM,           )
JERRY PHARR, JASON DELK, CHARLES           )
HENDERSON, JAMES HOUSTON, JULIE            )
MELTON, JULIE HODGES, MELISSA              )
BAUER, NATASHA WALKER-                     )
MCGLOTHAM, RANDY WELLS, and                )
the Defendants A, B, C, D, E, X & Z        )
whether singular or  plural, being those   )
persons, firms or entities who or which    )
proximately caused or contributed to the   )
Plaintiff's and Plaintiff's decedent's     )
other harm and the other damages as        )
complained of herein whose true names are  )
unknown to the Plaintiff but will be       )
added by amendment when correctly          )
ascertained,                               )
                                           )
    Defendants.                          )

**Filed in Office**

MAY 1 1 2007

CHRIS MAY
Clerk of Circuit Court

**MERCK & CO., INC.'S CROSS-NOTICE OF**
**VIDEO DEPOSITION OF DR. DAVID CELEMAJER**

PLEASE TAKE NOTICE that the videotaped deposition (Exhibit A hereto) of **Dr. David**

**Celemajer** will be held on **May 20 and 21, 2007, beginning at 9:00 a.m. Pacific Time** at

**REED SMITH LLP, Two Embarcadero Center, Suite 2000, San Francisco, CA 94111,**

pursuant to Pretrial Order No. 9 in *In re VIOXX Products Liability Litigation,* MDL Docket No. 1657 (United States District Court for the Eastern District of Louisiana). The call-in number is 866-261-4013, and the participant passcode is 2728103. The video deposition will be taken before a notary public, certified court reporter, or other officer authorized by law to administer oaths for the purpose of discovery or for use as evidence, or for both purposes in connection with this action, and may be used at trial. You are invited to attend and participate.

Pursuant to Pretrial Order No. 9, Defendant requests that Plaintiff identify three (3) days before the deposition, the attorney(s) who may examine the deponent.

Dated: May 9, 2007.

One of the Attorneys for Defendant,
Merck & Co., Inc.

OF COUNSEL:

RUSHTON, STAKELY,
    JOHNSTON, & GARRETT, P.A.
Post Office Box 270
Montgomery, Alabama 36101-0270
Telephone: (334) 206-3100
Facsimile: (334) 262-6277

## CERTIFICATE OF SERVICE

I hereby certify that I have served the above and foregoing document upon all interested parties by placing a copy of same in the United States Mail, postage prepaid and properly addressed on this the 9th day of May 2007, as follows:

James S. Hubbard
Thomas J. Knight
HUBBARD & KNIGHT
1125 Noble Street
Anniston, Alabama 36201

OF COUNSEL

- 2 -

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: VIOXX | : | MDL NO. 1657 |
| PRODUCTS LIABILITY LITIGATION: | : | |
| | : | SECTION: L |
| | : | |
| THIS DOCUMENT RELATES TO ALL CASES: | : | JUDGE FALLON |
| | : | MAG. JUDGE KNOWLES |

## NOTICE OF DEPOSITION DUCES TECUM (ORAL AND VIDEOTAPED) OF DR. DAVID CELEMAJER

TO:  **Merck & Co, Inc.**
     **Through**
     **Phillip A. Wittmann, Esq.**
     STONE, PIGMAN
     **546 Carondelet Street**
     **New Orleans, Louisiana 70130-3588**
     **LIAISON COUNSEL FOR DEFENDANTS**

PLEASE TAKE NOTICE that pursuant to Rule 26 of the Federal Rules of Civil Procedure, plaintiffs, by and through their undersigned attorneys, the Plaintiffs Steering Committee in the MDL, will take the deposition of the following individuals on the dates and times indicated below at **Reed Smith, LLP, Two Embarcadero Center, Suite 2000, San Francisco, CA 94111,** or at another location mutually agreed upon by the parties.

Statement of Deposition Procedures - The deposition shall be taken pursuant to Pre-Trial Order No. 9 (Deposition Guidelines) entered April 15, 2005. The terms of such order are incorporated into this Notice.

Videotaped Deposition:              Yes

The deposition will be taken before a person authorized by law to administer oaths, pursuant to Fed. R. Civ. P. 28, and will continue from day-to-day, excluding Sundays and court-recognized holidays, until the examination is completed.

1. Deponent: **Dr. David Celemajer**
   Date:  **May 20 and 21, 2007**
   Time: **9:00 a.m.  Pacific Time**
   Primary Examiner: **A Member of the PSC or its designee**
   Call-In Number:  **866-261-4013; ID Number 2728103**

The deponent is directed to produce at or before the deposition, all documents which are called for in the Schedule of Documents requested which is attached hereto as Attachment "A."

Respectfully submitted,

/s/ Leonard A. Davis

**Russ M. Herman (Bar No. 6819)**
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
*Herman, Herman, Katz & Cotlar, LLP*
820 O'Keefe Avenue
New Orleans, LA  70113
PH:     (504) 581-4892
FAX:   (504) 561-6024
**Plaintiffs' Liaison Counsel**

| | |
|---|---|
| Richard J. Arsenault, Esq.<br>P.O.Box 1190<br>2220 Bonaventure Court<br>Alexandria, LA  71309-1190<br>PH: (318) 487-9874<br>FAX: (318) 561-2591 | Gerald E. Meunier, Esq.<br>Energy Centre<br>1100 Poydras Street, Suite 2800<br>New Orleans, LA  70163-2800<br>PH: (504) 522-2304<br>FAX: (504) 528-9973 |
| Andy D. Birchfield, Esq. (Co-Lead Counsel)<br>P.O. Box 4160<br>234 Commerce Street<br>Montgomery, AL  36103-4160<br>PH: (800) 898-2034<br>FAX: (334) 954-7555 | Troy Rafferty, Esq.<br>316 S. Baylen Street, Suite 400<br>Pensacola, FL  32502<br>PH: (850) 435-7000<br>FAX: (850) 497-7059 |

W:\25000-29999\27115\000\PLD\Notice of Depo of Dr. David Celemajer  2007-5-7.doc

2

| | |
|---|---|
| Elizabeth Cabraser, Atty.<br>Embarcadero Center West<br>275 Battery Street, 30th Floor<br>San Franciso, CA  94111-3339<br>PH: (415) 956-1000<br>FAX: (415-956-1008 | Drew Ranier, Esq.<br>1419 Ryan Street<br>Lake Charles, LA  70601<br>PH: (337) 494-7171<br>FAX: (337) 494-7218 |
| Thomas Kline, Esq.<br>1525 Locust St.<br>19th Floor<br>Philadelphia, PA  19102<br>PH: (215) 772-1000<br>FAX: (215) 772-1371 | Mark Robinson, Esq.<br>620 Newport Center Drive<br>7th Floor<br>Newport Beach, CA  92660<br>PH: (949) 720-1288<br>FAX: (949) 720-1292 |
| Arnold Levin, Esq.<br>510 Walnut Street<br>Suite 500<br>Philadelphia, PA  19106-3875<br>PH: (215) 592-1500<br>FAX: (215) 592-4663 | Christopher Seeger, Esq. (Co-Lead Counsel)<br>One William Street<br>New York, NY  10004<br>PH: (212) 584-0700<br>FAX: (212) 584-0799 |
| Shelly Sanford, Atty.<br>2200 Texaco Heritage Plaza<br>1111 Bagby<br>Houston, TX  77002<br>PH: (713) 650-0022<br>FAX: (713-650-1669 | Christopher Vincent Tisi, Esq.<br>2000 L Street, NW<br>Suite 400<br>Washington, DC  20036-4914<br>PH: (202) 783-6400<br>FAX: (307) 733-0028 |

## PLAINTIFFS' STEERING COMMITTEE

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on Liaison Counsel, Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 7th day of May, 2007.

/s/ Leonard A. Davis

**Leonard A. Davis** (Bar No. 14190)
*Herman, Herman, Katz & Cotlar, L.L.P.*
820 O'Keefe Ave.
New Orleans, Louisiana 70113
Telephone: (504) 581-4892
Facsimile: (504) 561-6024
ldavis@hhkc.com

W:\25000-29999\27115\000\PLD\Notice of Depo of Dr. David Celemajer  2007-5-7.doc

3

**Schedule Of Documents to be Produced**

**ATTACHMENT A**

In connection with the Notice of Deposition for the Deposition of David Celemajer, MD, the witness is directed to produce the following documents prior t the deposition.

1.   All materials Dr. Celemajer has reviewed prior to or since he was retained as an expert in this litigation that relate to Vioxx.

2.   All materials on which Dr. Celemajer relies as support for his opinions in the Vioxx litigation.

3.   All work product (other than draft reports) that Dr. Celemajer has prepared in the Vioxx litigation.

4.   All statements reflecting time Dr. Celemajer has spent on Vioxx-related work, including invoices/bills he has submitted for payment.

5.   All publications, abstracts, notes, documents, correspondence, presentations, speeches, PowerPoint's, programs, slides, or other memoranda or materials prepared by and/or reviewed by Dr. Celemajer relating to Vioxx , COX 2 Inhibitors or NSAIDS.

6.   All documents relating to any speeches or presentations given by Dr. Celemajer relating to Vioxx at any meeting, conference or symposium, including but not limited to, PowerPoint presentations, slides, handouts or materials used or distributed prior to, during, and/or after any speeches or presentations.

7.   All communications Dr. Celemajer has had with any defendants' counsel in the Vioxx litigation, including e-mails.

8.   All documents reflecting or containing communications with Merck or other experts retained by defendants' lawyers in the Vioxx litigation

9.   All personal notes made by you concerning or relation to the report that you drafted in connection with the Vioxx litigation.

IN THE CIRCUIT COURT OF
RANDOLPH COUNTY, ALABAMA

**Filed in Office**

MAY 1 0 2007

CHRIS MAY
Clerk of Circuit Court

CLIFFORD BAILEY, CLIFFORD BLACK,    )
WESLEY CALHOUN, CURTIS DEASON,    )
RUTH GRAVES, MICKEY GRIZZARD,    )
JIMMY PERRY, HERBERT STANLEY    )
SIKES, and PHILLIP THOMPSON,    )
    ).
    Plaintiffs,    )
    )
v.    )    CASE NUMBER: CV-2006-145
    )
MERCK & CO., INC., a foreign or    )
Domestic Corporation, DAVID SPARKMAN,    )
KATHERINE HOLMES, LORI LOVETT,    )
SCOTT BARTLETT, CORAL HARPER,    )
MELISSA SANTIAGO, HENRY MITCHAM,    )
JERRY PHARR, JASON DELK, CHARLES    )
HENDERSON, JAMES HOUSTON, JULIE    )
MELTON, JULIE HODGES, MELISSA    )
BAUER, NATASHA WALKER-    )
MCGLOTHAM, RANDY WELLS, and    )
the Defendants A, B, C, D, E, X & Z    )
whether singular or plural, being those    )
persons, firms or entities who or which    )
proximately caused or contributed to the    )
Plaintiff's and Plaintiff's decedent's    )
other harm and the other damages as    )
complained of herein whose true names are    )
unknown to the Plaintiff but will be    )
added by amendment when correctly    )
ascertained,    )
    )
    ~~Defendants.~~    )

## MERCK & CO., INC.'S CROSS-NOTICE OF
## DEPOSITION OF JAMES BOLOGNESE

PLEASE TAKE NOTICE that the deposition of **James Bolognese** will be held on **May

24, 2007,** beginning at **9:00 a.m. Eastern Time**, at the offices of **Hughes, Hubbard & Reed, 1**

**Battery Park Plaza, Suite 12, New York, NY 10004.** The deposition (Exhibit A hereto) will be

taken before a notary public, certified court reporter, or other officer authorized by law to administer oaths for the purpose of discovery or for use as evidence, or for both purposes in connection with this action, and may be used at trial. You are invited to attend and participate.

Defendant requests that Plaintiff identify three (3) days before the deposition, the attorney(s) who may examine the deponent. The call-in number for participation by telephone is 1-719-955-2414, and the participant passcode is 202 434 5400.

One of the Attorneys for Defendant,
Merck & Co., Inc.

OF COUNSEL:

RUSHTON, STAKELY,
     JOHNSTON, & GARRETT, P.A.
Post Office Box 270
Montgomery, Alabama 36101-0270
Telephone: (334) 206-3100
Facsimile: (334) 262-6277

## CERTIFICATE OF SERVICE

I hereby certify that I have served the above and foregoing document upon all interested parties by placing a copy of same in the United States Mail, postage prepaid and properly addressed on this the 2nd day of May 2007, as follows:

James S. Hubbard
Thomas J. Knight
HUBBARD & KNIGHT
1125 Noble Street
Anniston, Alabama 36201

OF COUNSEL

- 2 -

IN THE CIRCUIT COURT OF MINGO COUNTY, WEST VIRGINIA

RONDA LEE SMITH, Administratrix
Of the Estate of Thomas Michael
Smith, Deceased

       Plaintiff,

v.                             Civil Action No. 06-C-251

HEALTH MANAGEMENT ASSOCIATES OF
WEST VIRGINIA, INC., d/b/a
WILLIAMSON MEMORIAL HOSPITAL;
THOMAS E. HAMILTON, M.D.; and
MERCK & CO., INC.,

       Defendants.

## NOTICE OF DEPOSITION
## OF JAMES BOLOGNESE

PLEASE TAKE NOTICE that the undersigned will take the testimony on oral examination of JAMES BOLOGNESE, before a Notary Public authorized by law to administer oath, beginning at 9:00 a.m. on Thursday, May 24, 2007, at Hughes, Hubbard & Reed, 1 Battery Park Plaza, Suite 12, New York, NY 10004. You are advised that such deposition shall be for use as discovery and/or evidence as permitted by the West Virginia Rules of Civil Procedure and Rules of Evidence.

PLEASE TAKE NOTICE that, in connection with the taking of the deposition, Deponent shall produce the documents and tangible things listed on Exhibit "A" to counsel for the Plaintiffs at the time of the deposition.

If you fail to attend or to produce the documents or things required by this Notice of Deposition, you may be subject to sanctions authorized by the West Virginia Rules of Civil Procedure.

RHONDA LEE SMITH, Administratrix
Of the Estate of Thomas Michael Smith,
Deceased

THE LANIER LAW FIRM, P.C.

By:_____

W. MARK LANIER
Texas Bar No.  11934600
6810 F.M. 1960 West
Houston, Texas 77069

H. Truman Chafin
H. Truman Chafin Law Firm, PLLC
P. O. Box 1799
Williamson, WV  25661
(304) 235-2221
(304) 235-2777 (fax)

EXHIBIT A

The witness is instructed to bring with him to the deposition the following documents and other items to the extent not already produced.

1.   All documents considered by Mr. Bolognese in support of the opinions expressed in this matter.

2.   All documents relied upon by Mr. Bolognese in support of the opinions expressed in this matter.

3.   All articles, studies, treatises, publications, books, papers, or other materials relied upon by Mr. Bolognese for his opinions in this matter.

4.   Mr. Bolognese's current and complete resume or curriculum vitae, including a complete list of publications for the last 10 years.

5.   A list of expert depositions or other testimony given by Mr. Bolognese for the last five years.

6.   All documents relating to fee arrangements, fee payments, fee statements, and agreements concerning the relationship between Mr. Bolognese, or any person working for or with Mr. Bolonese, concerning Vioxx-related work and counsel.

7.   Any articles, letters or documents submitted for publication or published by Mr. Bolognese relating to the pharmaceutical industry, COX-2 inhibitors, or NSAIDs.

8.   All papers, calculations, material, data, or analysis received, reviewed or generated by Mr. Bolognese used in the preparation of his opinions in this case.

9.   Your personal file(s) pertaining to, relating to, or in any way concerning Rofecoxib, NSAIDs, and/or COX-2 inhibitors.

10.  Your e-mail file(s) pertaining to, relating to or in in any way concerning Rofecoxib, NSAIDs, and/or COX-2 inhibitors.

11.  All documents reflecting communications between you and Merck's senior management relating to, pertaining to, or in any way concerning VIGOR.

12.  All documents reflecting adverse events and/or serious adverse events in VIGOR.

13.  Your COX-2 inhibitor correspondence file(s).

14.  Your COX-2 inhibitor e-mail file(s).

15. All documents, minutes, memoranda, or papers relating to any committees or subcommittees involved in the VIGOR clinical trials, including, but not limited to, Merck's Steering Committee, Steering Subcommittee (e.g. [a]) Executive Committee, [b] Publications Committee, and [c] Advisory Committee), End Point Classification Committee, and/or Data and Safety Monitoring Board/Institutional Review Board/Independent Ethics Committee.

IN THE CIRCUIT COURT OF MINGO COUNTY, WEST VIRGINIA

RONDA LEE SMITH, Administratrix
Of the Estate of Thomas Michael
Smith, Deceased

        Plaintiff,

v.                            Civil Action No. 06-C-251

HEALTH MANAGEMENT ASSOCIATES OF
WEST VIRGINIA, INC., d/b/a
WILLIAMSON MEMORIAL HOSPITAL;
THOMAS E. HAMILTON, M.D.; and
MERCK & CO., INC.,

        Defendants.

## CERTIFICATE OF SERVICE

I, Mark Lanier, counsel for Plaintiff, Ronda Lee Smith, Administratrix of the Estate of

Thomas Michael Smith, Deceased, do hereby certify that a true and correct copy of the foregoing

NOTICE OF DEPOSITION OF JAMES BOLOGNESE was served upon the following counsel

of record by placing true copies thereof in properly addressed envelopes and depositing same in

the United States Mail, postage prepaid, first class, and by facsimile on this the 26th day of

April, 2007:

Debra A. Nelson
Mundy & Nelson
P. O. Box 2986
Huntington, WV 25728

      Counsel for Defendant Health Management Associates of West Virginia d/b/a
      Williamson Memorial Hospital

Jeffrey A. Holmstrand
McDermott & Bonenberger, PLLC
53 Washington Avenue
Wheeling, WV 26003

Brian A. Glasser
Jennifer S. Fahey
Bailey & Glasser, LLP
227 Capitol Street
Charleston, WV 25301

Donald E. Scott                                    Brian C. Swanson
Lester C. Houtz                                    Bartlit Beck Herman Palenchar & Scott
Bartlit Beck Herman Palenchar & Scott, LLP         54 West Hubbard Street, Suite 300
1899 Wynkoop Street, 8th Floor                     Chicago, IL 60610
Denver, CO 80202

Ted Mayer
Hughes Hubbard & Reed
1 Battery Park Plaza, Suite 12
New York, NY 10004

      Counsel for Defendant Merck & Co., Inc.


             THE LANIER LAW FIRM, P.C.

By: _____
          W. MARK LANIER
          Texas Bar No. 11934600
          6810 F.M. 1960 West
          Houston, Texas 77069

          H. Truman Chafin
          H. Truman Chafin Law Firm, PLLC
          P. O. Box 1799
          Williamson, WV 25661
          (304) 235-2221
          (304) 235-2777 (fax)

LAW OFFICES

# RUSHTON, STAKELY, JOHNSTON & GARRETT, P.A.

A PROFESSIONAL ASSOCIATION

BENJAMIN C. WILSON
EMAIL: BCW@RSJG.COM
DIRECT TELEPHONE:
(334) 206-3194
DIRECT FACSIMILE:
(334) 481-0831

184 COMMERCE STREET
MONTGOMERY, ALABAMA  36104

MAILING ADDRESS:
POST OFFICE BOX 270
MONTGOMERY, ALABAMA  36101-0270

WWW.RSJG.COM

**Filed In Office**

MAY 10 2007

CHRIS MAY
Clerk of Circuit Court

**May 2, 2007**

Honorable Kim Benefield
**Randolph County Circuit Court Clerk**
P.O. Box 328
1 Main Street
Wedowee, Alabama  36278-0328

> Re:  *Clifford Bailey, et al. v. Merck & Co., Inc., et al.*
> *Circuit Court of Randolph County, AL/CV-06-145*

Dear Ms. Benefield:

I have enclosed an original and a copy of a *Cross-Notice of Deposition of James Bolognese.* Please file the original with the court and return a date-stamped to me.

Thank you for your assistance in this matter.

Sincerely yours,

BEN C. WILSON

BCW/dcr
Enclosures

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

**Filed in Office**

APR 27 2007

CHRIS MAY
Clerk of Circuit Court

| | | |
|---|---|---|
| CLIFFORD BAILEY, et al., | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | Case No. CV-06-145 |
| | ) | |
| MERICK & CO., INC., et al., | ) | |
| Defendants. | ) | |

## O R D E R

This matter came before the Court on a MOTION OF ONE OF THE PLAINTIFFS, CURTIS DEASON TO DISMISS HIS CLAIM filed by the Attorney for the Plaintiff and after considering the same, said motion is Granted. This matter is hereby dismissed, without prejudice, with costs to be taxed as paid.

The Clerk of the Court is to mail a copy of this Order to counsel of record and any party appearing pro se.

DONE this the 25th day of April, 2007.

Thomas J. Knight
Steve Morris
Richard B. Garrett
Scott Bartlett
Melissa Bauer
Jason Delk
Coral Harper
Charles Henderson
Julie Hodges
Katherine Holmes
James Houston
Lori Lovett
Julie Melton
Henry Mitcham
Jerry Pharr
Melissa Santiago
David Sparkman
Natasha Walker-McGlothan
Randy Walls

STEVE R. PERRYMAN
Circuit Judge

**Filed in Office**

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

APR 1 7 2007

CHRIS MAY
Clerk of Circuit Court

| | | |
|---|---|---|
| CLIFFORD BAILEY, et al. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CASE NUMBER: CV-06-145 |
| | ) | |
| MERCK & CO., INC., et al. | ) | |
| | ) | |
| Defendants. | ) | |

### MOTION OF ONE OF THE PLAINTIFFS, CURTIS DEASON, TO DISMISS HIS CLAIMS

Now comes the Plaintiff, Curtis Deason, one of the Plaintiffs in this civil action, and moves that the Court dismiss his claims in this civil action, without prejudice, with the claims of the other Plaintiffs to remain pending. The other Plaintiffs intend to continue to pursue their claims. Only Plaintiff Curtis Deason seeks to dismiss his claims.

Wherefore the Plaintiff Curtis Deason only, moves to dismiss his claims, without prejudice, with all other claims of all other Plaintiffs to remain in full force and effect.

_____
James S. Hubbard

_____
Thomas J. Knight

## CERTIFICATE OF SERVICE

I do hereby certify that I have this the __13_ day of _April_ , 2007, served a copy of the above and foregoing on all counsel of record as listed below by United States Mail, postage prepaid, and properly addressed.

Mr. Ben C. Wilson
Mr. Richard B. Garrett
Mr. Robert C. Brock
RUSHTON, STAKELY, JOHNSTON & GARRETT, P.A.
184 Commerce Street
Post Office Box 270
Montgomery, Alabama 36104

Thomas J. Knight
Attorney for Plaintiffs

**Filed in Office**

LAW OFFICES
**HUBBARD AND KNIGHT**
POST OFFICE DRAWER 1850
1125 NOBLE STREET
ANNISTON, ALABAMA 36202

APR 1 7 2007

CHRIS MAY
Clerk of Circuit Court

THOMAS J. KNIGHT

TELEPHONE  (256) 237-9586
FACSIMILE  (256) 237-9594

April 13, 2007

Mr. Ben C. Wilson
RUSHTON, STAKLEY, JOHNSTON & GARRETT, PA
Post Office Box 270
Montgomery, Alabama 36101-0270

Re:   *Bailey, et al.  v.  Merck, et al.*
CV06-145

Dear Ben:

Curtis Deason has indicated that he is willing to simply dismiss his case and proceed no further.

To that end I am enclosing the attached motion. I would assume that there are no further hold ups with regard to our going forward with the discovery we need. I look forward to hearing from you on this at your first opportunity.

Very truly yours,

Thomas J. Knight

TJK/ac

Very truly yours,

Thomas J. Knight

ELECTRONICALLY FILED
3/30/2007 5:00 PM
CV-2006-000145.00
CIRCUIT COURT OF
RANDOLPH COUNTY, ALABAMA
CHRIS MAY, CLERK

## IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

| | |
|---|---|
| CLIFFORD BAILEY, et al. | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CASE NUMBER: <u>CV-06-145</u> |
| | ) |
| MERCK & CO., INC., et al. | ) |
| Defendants. | ) |

## <u>AFFIDAVIT IN SUPPORT OF MOTION TO COMPEL DISCOVERY</u>

————Now comes the undersigned, Thomas J. Knight, one of the attorneys for the Plaintiffs in this civil action and having been first duly sworn, shows to the Court the following facts and circumstances in support of the motion to compel discovery:

1.    The present motion was filed only after an extensive effort to obtain the needed information from the Defendant Merck by means of discovery procedures and repeated efforts to resolve the matter with opposing counsel. The undersigned believes that, while defense counsel is acting in good faith, that Defendant Merck has a conscious and deliberate program of avoiding discovery on the issues presently sought. The information sought should not be controversial, and certainly in no way protected or privileged, but rather Merck probably sees the information as simply harmful to its position, or tactically disadvantageous. The material is clearly discoverable and should be produced and the depositions given.

2.    On the 28th of December, 2006 the Plaintiff served the 30(b)(6) Notice of Deposition, attached as Exhibit A, containing a request for production of documents. No documents have been produced, no representatives have been designated for deposition, and no one has been put up by Merck for deposition. After efforts to resolve the issue failed, Plaintiffs filed the present Motion To Compel, attached as Exhibit B.

3.      Extensive correspondence has gone back and forth between counsel for the parties, in addition to a number of telephone calls.  During most of these it appeared that defense counsel would produce the material and the witnesses.  However even after this Court set this subject Motion for hearing, still no documents have been produced, and no witnesses have been produced, and no dates or arrangements have been made and no persons have been designated as required by Rule 30 (b)(6).  The correspondence is attached hereto and made a part hereof as Exhibit C.

4.      Despite the fact the Plaintiffs had served their discovery requests first, Plaintiffs tried to appease the defendants: the Plaintiffs went ahead and produced extensive information in the form chosen by Merck, known as the Plaintiff Profile Form.  These were all produced for Merck on eight of the nine Plaintiffs on the 16th and 19th of February, 2007.  Nevertheless, and despite having had that information since that time, Merck still fails to make the necessary discovery.  Accordingly, Defendant Merck should be ordered to produce and designate persons to testify on its behalf as required by law and the Alabama Rules of Civil Procedure, and to produce the requested documents and materials.

_____/S/_ Thomas J.  Knight
Attorney for Plaintiff
Hubbard & Knight
1125 Noble Street
Post Office Box 1850
Anniston, Alabama 36202
(256) 237-9586

Sworn to and subscribed before me
on this the 30th day of March, 2007

__/S/_ Cara Glover
Notary Public
Commission Expiration: 2-22-2010

## CERTIFICATE OF SERVICE

I do hereby certify that I have this the 30th day of March, 2007, served a copy of the above and foregoing on all counsel of record as listed below by using the Alacourt Filing System which will send Notice of Electronic Filing to all parties.

Mr. Ben C. Wilson
Mr. Richard B. Garrett
Mr. Robert C. Brock
RUSHTON, STAKELY, JOHNSTON & GARRETT, P.A.
184 Commerce Street
Post Office Box 270
Montgomery, Alabama 36104


____/S/_ Thomas J. Knight
Attorney for Plaintiff

ELECTRONICALLY FILED
3/30/2007 5:00 PM
CV-2006-000145.00
CIRCUIT COURT OF
RANDOLPH COUNTY, ALABAMA
CHRIS MAY, CLERK

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, et al.,           )
                                   )
        Plaintiff,                 )
                                   )
vs.                                )        CASE NUMBER: CV-06-145
                                   )
MERCK & CO., INC., et al.,         )
                                   )
        Defendants,                )



PLAINTIFF'S
EXHIBIT
A

## NOTICE OF DEPOSITION OF DEFENDANT
## MERCK & COMPANY INC. UNDER RULE 30(b)(6)

Now come the Plaintiffs and give notice that the Plaintiffs will take the deposition of

Defendant Merck & Co., Inc. under and pursuant to Rule 30(b)(6) of the Alabama Rules of Civil

Procedure for the purposes of discovery and identification of records of its Alabama activities,

with the deposition to take place and occur on January 17, 2007, beginning at 10:00 a.m. at the

offices of the undersigned or at such other time and place as are mutually agreed upon by

counsel for the parties for said date, with the subject matters of the said deposition to be as

follows:

1.      Record keeping as to all records of Alabama Vioxx sales representatives which

        records are available to the Defendants, which would in any way reveal, lead to

        or show:

a.      attendance by sales representative at any Vioxx-related meeting, function, or

        event.

b.      expense accounts, travel records, and similar records for such sales

        representatives during the times when the sales representatives were detailing

        Vioxx.

c.      records concerning program materials or other such items utilized at any time in

        connection with Vioxx promotion, detailing, or information providing.

d. call notes or reports of activity;

e. other records including handwritten notes, memos, email, faxes, or other preserved matter of any kind or description which in anyway shows, reveals, discloses, relates to communications to and in connection with Alabama Vioxx detailmen or sales representative, or between them and any physician or physicians group or representatives doing business in Alabama. The location, address, and service information as to each of the sales representative Defendants named in this civil action.

2. Record keeping as to all records of or pertaining to such sales representative including all W2, 1099, and other tax-related records which may or might show any address or location for said parties, all employee records of or pertaining to said employees, former employees, or sales representative, especially those showing any contact information, relatives' names, addresses, telephone numbers, or other contact information, last know addresses of all sales representative Defendants, meeting lists, sites, locations, whereat any such sales representative Defendants have or are in the future to attend any meetings, events, locations, sales calls, or other similar matters which show where said sales representatives have been at work, or will be in the future, and any other record, document, or other item containing information concerning the whereabouts at anytime, or any said sales representative Defendants.

3. Any other matter pertaining to such Merck Alabama sales representatives Defendants, mentioning or naming them, or showing any such place or location for said sales representative Defendants at any time.

Pursuant to Rule 30(b)(6), the Defendant Merck & Co., Inc., is required to designate such person or persons as are to testify on its behalf at or in connection with the deposition and

is required to designate such persons as are to testify as to each of the above subject matters, as the designated representative of said Defendant.

Pursuant to Rule 30(b)(5) of the Alabama Rules of Civil Procedure, the Defendant Merck & Co., Inc., is requested to produce at and in connection with the said deposition (and pursuant to Rule 34 of the Alabama Rules of Civil Procedure, the said Defendant is further and additionally requested to produce each and every said item at the offices of the undersigned thirty (30) days after service hereof) as to the following listed documents or any document, record, or preserved information of any kind or type whatsoever whether electronic, paper, or otherwise, which in anyway contains or relates to information included in the following description:

1.   All records of Alabama Vioxx sales representatives which records are available to the said witness and/or to the Defendants, which would show:

   a.   attendance by sales representative at any Vioxx related meeting, function, or event;

   b.   expense accounts, travel records, and similar records for such sales representative during the times when the sales representatives were detailing Vioxx;

   c.   records concerning program materials or other such items utilized at any time in connection with Vioxx promotion, detailing, or information providing;

   d.   call notes;

   e.   other records including handwritten notes, memos, email, faxes, or other preserved matter of any kind or description which in anyway shows, reveals, discloses, relates to communications to and in connection with Alabama Vioxx detailmen or sales representative, or between them and any physician or physicians group or representatives doing business in Alabama.

2.   All records of persons who would have any of the above records if the Defendants do not produce the same and all records showing the custodian of the above described records.

3.     The location, address, and service information as to each of the sales representative Defendants named in this civil action.

4.     All records pertaining to such sales representative Defendants including all W2, W1099, and other tax-related records which may or might show any address or location for said parties, all employee records of or pertaining to said employees, former employees, or sales representative, especially those showing any contact information, relatives' names, addresses, telephone numbers, or other contact information, last know addresses of all sales representative Defendants, meeting lists, sites, locations, whereat any such sales representative Defendants have or are in the future to attend any meetings, events, locations, sales calls, or other similar matters which show where said sales representatives have been at work, or will be in the future, and any other record, document, or other item containing information concerning the whereabouts, at anytime, or any said sales representative Defendants.

5.     Any other matter pertaining to such sales representative Defendants, mentioning or naming them, or showing any such place or location for said sales representative Defendants at any time.

All parties are invited to attend and cross examine.

Thomas J. Knight
Attorney for Plaintiff

Hubbard & Knight
1125 Noble Street
Post Office Box 1850
Anniston, Alabama 36202
(256) 237-9586

Of Counsel:
Steve Morris
Post Office Box 814
Wedowee, Alabama 36278
(256) 357-9211

## CERTIFICATE OF SERVICE

I do hereby certify that I have this the __28th__ day of December, 2007, served a copy of the above and foregoing on all counsel of record as listed below by United States Mail, postage prepaid, and property addressed.

Mr. Richard B. Garrett
Mr. Robert C. Brock
RUSHTON, STAKELY, JOHNSTON & GARRETT, P.A.
184 Commerce Street
Post Office Box 270
Montgomery, Alabama 36101

Thomas J. Knight
Attorney for Plaintiff

have now emerged. The defendants knew the salient facts concerning their drug long before the discovery of dangers by outside researchers, but ignored or concealed risks and dangers and continued to misrepresent the safety (or lack of safety) of Vioxx. In June 2000, a research team led by A. Whelton noted in a presentation to the European United League Against Rheumatism (EULAR), of which Merck is a member and corporate sponsor, that Vioxx use resulted in a statistically significant increase in hypertension, myocardial infarction, and stroke. Not only did Merck do nothing to further accurately publish these studies, or warn consumers, but in August 2000, it denied the results with respect to hypertension in the official publication of the American Pharmaceutical Association, "Pharmacy Today." The medical journal,"The Lancet," published a study associating Vioxx with kidney failure, and other studies have associated both Vioxx and Celebrex with heart problems, kidney damage, aseptic meningitis and slow healing of bone fractures.

28.     A metastudy by the Cleveland Clinic published in the Journal of the American Medical Association analyzed data from two major studies funded by the drug companies and two smaller ones, all for cardiovascular risks. (Debabrata Mukherjee et al., Risk of Cardiovascular Events Associated with Selective Cox-2 Inhibitors, 286 JAMA 954 (2001).) It found that neither Pharmacia/Pfizer nor Merck had identified and studied cardiovascular risks for their products. The annualized heart attack rates for patients taking Vioxx or Celebrex, the researchers found, were "significantly higher" than those in a group taking placebos. "The available data raise a cautionary flag about the risk of cardiovascular events with Cox-2 inhibitors," they concluded. Defendants set about to discredit and deny these studies.

11

Exhibit A

29.    The FDA, which lists Vioxx and Celebrex information on the "Hot Topics" section of its Web site, required both drugs to carry the same stomach-upset and bleeding warnings ibuprofen and Naproxen had when the agency approved them in 1999.

30.    After the CLASS results, the FDA found that Celebrex is just as likely to cause ulcers as older NSAIDs and is no better at reducing pain or inflammation than ibuprofen. In June 2002, it mandated a new label for the drug, one without any claim that it is safer for the stomach than other NSAIDs.

31.    Because of information provided by Merck, the agency did allow Merck to change its Vioxx label to claim it has a lower risk than older NSAIDs of causing ulcers, gastrointestinal bleeding and other digestive-tract complications.

32.    As early as November 1999, an FDA memo stated that the board monitoring the VIGOR study was concerned about "excess deaths and cardiovascular events experienced in Group A [Vioxx group] compared to Group B [Naproxen]." In March 2002, the FDA reported that five people taking Vioxx had aseptic meningitis, an inflammation of membranes on the brain and spine. In April 2002, after the agency warned Merck that it had misrepresented the drug's safety and minimized potentially serious cardiovascular complications found in VIGOR, it required the company to include a warning of cardiovascular risks on the Vioxx label.

33.    The new warnings contained information long held by Merck, but consistent with later pattern and practice, concealed from consumers and their physicians. The new warnings included:

34.    "In VIGOR, a study in 8076 patients (mean age 58; VIOXX n=4047, Naproxen n=4029) with a median duration of exposure of 9 months, the risk of developing a serious

12

Exhibit A

cardiovascular thrombotic event was significantly higher in patients treated with VIOXX 50 mg once daily (n=45) as compared to patients treated with Naproxen 500 mg twice daily (n=19)." ...

35.    "In a placebo-controlled database derived from 2 studies with a total 2142 elderly patients (mean age 75; VIOXX n=1067, placebo n=1075 with a median duration of exposure of approximately 14 months, the number of patients with serious cardiovascular thrombotic events was 21 vs. 35 for patients treated with VIOXX (Rofecoxib tablets and oral suspension) 25 mg once daily versus placebo, respectively. In these same 2 placebo-controlled studies, mortality due to cardiovascular thrombotic events was 8 vs. 3 for VIOXX versus placebo, respectively."

36.    Merck has repeatedly blamed its customers' cardiovascular events on underlying conditions, to avoid blaming Vioxx. The prestigious New England Journal of Medicine later stated in regard to "the implications of these observations with respect to selective cyclooxygenase-2 inhibitors": "...thrombosis would be expected to occur in patients who are already at increased risk because of other underlying conditions" and "In the VIGOR trial... The rates of nonfatal myocardial infarction, nonfatal stroke, and death from any vascular event were higher in the Rofecoxib group than in the naproxen group (0.8 percent vs. 0.4 percent, P<0.05). This difference was largely due to a difference in the incidence of myocardial infarction (0.4 percent in the Rofecoxib group vs. 0.1 percent in the naproxen group, P<0.01). In contrast, in the CLASS trial, in which 21 percent of the patients took aspirin, there was no significant difference the treatment groups in the incidence of major cardiovascular events." NEJM Volume 345:433-442 August 9, 2001 Number 6.

13

Exhibit A

37.    In 2002 and 2003, unknown to Plaintiffs and their doctors, Merck refused requests from the American Heart Association the National Stroke Association and the Arthritis Foundation that it conduct additional safety studies, claiming that Vioxx was safe and that it did not plan to conduct any such study.

38.    On October 30, 2003, an article in The Wall Street Journal, unknown to Plaintiffs or their doctors, reported that another study sponsored by Merck, and presented at the annual meeting of the American College of Rheumatology, confirmed an increased risk of heart attacks in patients taking Vioxx. According to the Wall Street Journal, within the first 30 days of taking Vioxx, the risk of a heart attack was increased by 30% as compared to Celebrex. This study looked at the records of 54,475 Medicare patients, all of whom were over 65, and was described by the eminent Dr. Eric Topol as "the best study to date."

39.    In 2003, unknown to Plaintiffs and their doctors, Dr. Jerry Avorn, a Divisional Director at Brigham and Women's Hospital in Boston and colleague Dr. Daniel H. Solomon reported in a Merck-financed study based on a survey of patient records, that Vioxx, even at some moderate dosages, increased cardiovascular risks.

40.    Merck disputed the findings of the Avorn-Solomon study, and the name of the Merck epidemiologist who had contributed to the study was removed from the report before it was published in a medical journal.

41.    From January through June, 2004, Merck spent an estimated $45 million on Vioxx advertising.

42.    In May 2004, the results of a study funded by the Canadian government were published in "The Lancet." The study reviewed data from 1.3 million elderly patients

14

Exhibit A

(66 and older) taking Vioxx, Celebrex, a common arthritis pain pill (NSAID) or no medication. The records from approximately 130,000 persons randomly reviewed from the population base found that persons taking Vioxx had an 80% increase in hospital admissions for congestive heart failure within one year of taking Vioxx when compared to persons taking NSAIDS.

43.    On August 25, 2004, still unknown to Plaintiffs and thier doctors, Dr. David Graham, Associate Director for Science in the FDA's Office of Drug Safety, presented results of a database analysis of 1.4 million patients that showed Vioxx users are more likely to suffer a heart attack or sudden cardiac death than those taking Celebrex or an older NSAID.

44.    Despite the foregoing, on August 26, 2004, Merck continued to represent to physicians and consumers that Vioxx was safe, and that any cardiovascular and/or cardiothrombotic side effects were not associated with the drug. Merck stated in a press release that "Merck stands behind the efficacy, overall safety and cardiovascular safety of Vioxx."

45.    On September 30, 2004, Merck finally withdrew Vioxx from the market after basically admitting to additional information from its own studies that study participants taking Vioxx after 18 months had twice as high a risk of cardiovascular events as the placebo group.

46.    Defendants, David Sparkman, Natasha Walker-McGlothan, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Natasha Walker-McGlothan, Randy Walls,  and Melissa Bauer,  being the professional

15

Exhibit A

staff of Merck for the sales of Merck's products in the state of Alabama were aware of all of the facts, points and details relevant to the dangers of Vioxx. Knowing these facts, the defendants had a duty to inform, immediately, the doctors to whom they had given samples or otherwise sold Vioxx or promoted Vioxx to such doctors and other persons, of the important facts described in this complaint. This duty was fully applicable to the said defendants, David Sparkman, Natasha Walker-McGlothan, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Natasha Walker-McGlothan, Randy Walls, and Melissa Bauer, and their employer, Merck, prior to the time that the Plaintiffs' use of Vioxx. The said defendants David Sparkman, Natasha Walker-McGlothan, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Natasha Walker-McGlothan, Randy Walls, and Melissa Bauer, and defendant Merck, had a full duty, obligation, and responsibility, to advise and warn, and to disclose that the facts that they had previously provided were no longer true or correct.

47.     The said defendants, David Sparkman, Natasha Walker-McGlothan, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Natasha Walker-McGlothan, Randy Walls, and Melissa Bauer, and their employer, Merck, were both negligent and wanton in their failure to perform their duties and obligations under applicable law to advise all customers of Merck taking Vioxx directly or through their physicians of the dangers now known and disclosed, but said defendants and each and every one of them failed in his said duty imposed by law. The said defendants,

16

Exhibit A

David Sparkman, Natasha Walker-McGlothan, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Natasha Walker-McGlothan, Randy Walls, and Melissa Bauer, and their employer, Merck, failed to exercise ordinary and reasonable care in the performance of their job functions and duties.

48.    The said defendants David Sparkman, Natasha Walker-McGlothan, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Natasha Walker-McGlothan, Randy Walls, and Melissa Bauer,  and their employer, Merck, knew the foregoing true facts concerning Vioxx, prior to their representations concerning the safety and efficacy of Vioxx, but nevertheless, continued to represent that the product was safe and effective. The true facts, as indicated above, were that the said drug, Vioxx, was unreasonably unsafe and unreasonably dangerous, but the said individual defendants and their employer, Merck, willfully misrepresented the facts to physicians and others in the state of Alabama with the plan, design and intent to market the dangerous and defective drug notwithstanding the knowledge of the dangers and defects, this conduct constitutes actionable fraud and deceit, and these misrepresentations were relied upon by the medical community, physicians, the public and the Plaintiffs to the detriment of the Plaintiffs in particular, and the customers of Merck, receiving Vioxx in general. The actions of defendants and others combined and concurred to constitute a conspiracy for which they are civilly liable.

49.    The acts and omissions of the defendants as described in this Complaint constitute fraudulent suppression of material facts sufficient to toll the running of any and all statutes of limitation, notice provisions, or other similar laws or requirements.  Further,

17

Exhibit A

the pendency of class actions describing and designating persons in the class including

and occupied by the Plaintiffs herein, constitutes sufficient commencement of an action to

toll the statutes of limitations and other notice provisions under applicable law.

50.    The defendants, David Sparkman, Natasha Walker-McGlothan, Katherine

Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry

Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges,

Natasha Walker-McGlothan, Randy Walls, and Melissa Bauer, and their employer, Merck,

misrepresented material facts, and fraudulently suppressed material facts, including but

not limited to those detailed in this complaint, to the medical community in general, the

Alabama physicians, and the Plaintiffs' treating physicians in particular, with regard to the

safety and effectiveness of the drug, Vioxx, which material misrepresentations and

fraudulent suppressions, proximately caused the injuries, losses, and damages specified

elsewhere in this complaint.    The defendants, David Sparkman, Natasha Walker-

McGlothan, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago,

Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie

Melton, Julie Hodges, Natasha Walker-McGlothan, Randy Walls, and Melissa Bauer, and

their employer, Merck, , personally visited and otherwise called on Plaintiffs' prescribing

physicians, and conspired and combined among themselves and with others, to cause the

Plaintiffs' prescribing physicians to believe that Vioxx was safe and effective, when in fact

it was not safe or effective to sufficiently outweigh the unreasonable risks of harm posed

by Vioxx and the said defendants otherwise committed actionable fraud,

misrepresentation, and fraudulent suppression which proximately caused the injuries to the

Plaintiffs described elsewhere herein.  Plaintiffs did not know, and could not have known,

that Vioxx was unsafe or that it had caused their injuries and damages, until after not

Exhibit A

earlier than September 30, 2004. Then data was released November 13, 2005, at the *American Heart Association* conference in Dallas, Texas, that was a study of 58,000 patients, which showed that heart disease patients taking 25 mg of Vioxx per day were five times as likely to die as patients not taking the drug. Defendants continued to conceal, suppress and secrete, important, relevant and crucial material information held by them and not by others.

51.    While today Merck warns of "heart attacks and similar serious events have been reported in patients taking Vioxx" at the time this information was hidden and concealed, and representations were made by the defendants that indicated that the product was, instead, safe and effective.

52.    As a result of the reliance by Plaintiffs, the medical community, and the public generally on the representations and statements of the defendants, including the individual defendants herein and Merck, the Plaintiffs took and consumed Vioxx. As a proximate result and consequence of his ingestion of Vioxx and as a direct and proximate consequence and result of the acts and omissions of the defendants including the individual defendants as described herein, Plaintiffs were injured.

53.    Merck was well aware of the Pharmacia-sponsored Celebrex Long-Acting Safety Study (CLASS), also involving about 8,000 arthritis sufferers, compared that drug to the older NSAIDs ibuprofen and diclofenac to determine whether it was less harmful to the stomach. In a JAMA article in 2000, the researchers published data accumulated over six months and concluded that Celebrex caused fewer ulcers than the older drugs. (Fred E. Silverstein et al., Gastrointestinal Toxicity with Celecoxib vs. Nonsteroidal Anti-inflammatory Drugs for Osteoarthritis and Rheumatoid Arthritis: The CLASS Study: A Randomized Controlled Trial, 284 JAMA 1247 (2000). However, researchers at that point

19

Exhibit A

had 12 months of data that, when analyzed as a whole, showed no significant difference.

54.    The FDA said the CLASS study "did not show a safety advantage in upper gastrointestinal events for Celebrex compared to either ibuprofen or diclofenac." Because some of the study participants were also taking aspirin, which does affect the stomach, some analysts say the results may have been skewed. The company maintained that among those not taking aspirin, the rate of ulcers was lower in Celebrex takers. Again, Celebrex is relevant to this case because of the knowledge and notice provided to Merck and its defendant-employees.

55.    In a June 2002 editorial, the British Medical Journal said the Celebrex study misled consumers with "overoptimistic" data. It said the study was "seriously biased" because the complete results "clearly contradict[ed] the published conclusions" and showed a similar number of stomach complications in all patients, whether they took Celebrex or the older pain relievers.

56.    It has been reported that a substantial number of deaths worldwide have been associated with Vioxx.

57.    Plaintiffs seek, in addition to damages for personal injury, refunds of and restitution for monies paid as a result of their purchase of Vioxx, as well as all other ascertainable economic loss that occurred as a result of defendants' wrongful and improper conduct in connection with the manufacture, marketing, distribution, testing, promotion, labeling and/or selling of Vioxx. Plaintiffs therefore seek to have the defendants return the monies unlawfully and inappropriately acquired by them as a result of their sale of Vioxx.

58.    Plaintiffs seek to have defendants fully disclose and account for, and effect the accumulation and analysis of relevant medical information on Vioxx, including, but not

Exhibit A

limited to, the results of all appropriate diagnostic tests performed  as part of a medical

research and for  medical information concerning all persons as gathered, maintained and

analyzed, and for medical research concerning the incidence, prevalence, natural course

and history, diagnosis and treatment of Vioxx-induced personal injuries, and all this should

be disclosed to Plaintiffs in this litigation.

## PLAINTIFFS' CLAIMS FOR RELIEF
## COUNT I

## PRODUCTS LIABILITY UNDER AEMLD AND STRICT LIABILITY PURSUANT TO §402A OF THE RESTATEMENT (SECOND) OF TORTS

59.    Plaintiffs incorporate by reference and re-alleges, as if fully set forth herein,

each and every allegation contained in the other paragraphs of this Complaint, wherever

contained.

60.    Defendants are manufacturers and/or suppliers of Vioxx and each had an

opportunity to inspect the product which was superior to the knowledge or opportunity of

the consumer's herein. The defendants were engaged in the business of manufacturing,

creating, designing, testing, labeling, sterilizing, packaging, supplying, marketing, selling,

advertising, warning and otherwise distributing Vioxx in interstate commerce, which they

sold and distributed throughout the world, including the State of Alabama, to Plaintiffs.

61.    The Vioxx product supplied, distributed and manufactured by Merck, and A,

Exhibit A

B, C, D and E and placed in the stream of commerce by defendants, and others were defective and unreasonably dangerous in design, manufacture and/or formulation in that, when it left the hands of the defendants as manufacturer and/or suppliers, the foreseeable risks exceeded the benefits associated with the design or formulation and they were unreasonably dangerous and defective. Plaintiffs show that they suffered injuries and damages as a result of the sale by defendants who sold the product in defective condition unreasonably dangerous to the ultimate consumer, and all the sellers were engaged in the business of selling such product and product was expected to and did reach the user or consumer without substantial change in the condition in which it is sold. The Plaintiffs were using Vioxx in a manner for which it was intended or in a reasonably foreseeable manner.

62.    Vioxx was expected to and did reach the Plaintiffs without substantial change in its condition as manufactured, created, designed, tested, labeled, sterilized, packaged, supplied, marketed, sold, advertised, undertook to warn, and otherwise distributed.

63.    The Vioxx manufactured by Merck, and/or A, B, C, D and E and supplied by them was defective in manufacture, design or formulation, in that, when it left the hands of the manufacturer and/or suppliers, it was unreasonably dangerous, in that it not meet the reasonable expectations of the ordinary consumer as to safety, and was more dangerous than an ordinary consumer would expect and more dangerous than other pain relievers. The Plaintiffs show that the product was unreasonably dangerous when it left the defendants' control, that it was substantially unaltered when the Plaintiffs used it, and that it proximately caused the Plaintiffs' injuries. The Plaintiffs were not aware of, and in the exercise of reasonable caution could not have discovered, the dangerous nature of Vioxx.

64.    The Vioxx manufactured and/or supplied by defendants was also defective

22                          Exhibit A

due to inadequate warning or instruction because the manufacturers and suppliers knew or should have known that the products created an unreasonable risk of harm to consumers and the defendants failed to adequately warn of said risks. The defendants' Vioxx caused increased risks of excess deaths and cardiovascular events, as well as kidney damage, aseptic meningitis, and slow healing of bone fractures upon consumption, and therefore constitute a product unreasonably dangerous for normal use due to their defective design, defective manufacture, and the defendants misrepresentations and inadequate facts disclosed to the Plaintiffs and their doctors. The Vioxx manufactured and/or supplied by defendants was defective due to inadequate care in marketing and post-marketing warnings or instruction because, after the defendants knew or should have known of the risk of injury from Vioxx and/or combination use of these drugs, they failed to provide adequate warnings to users or consumers of the product and continued to promote the product.

65.    As a direct and proximate result of defendants' manufacturing, creating, designing, testing, labeling, sterilizing, packaging, supplying, marketing, selling, advertising, warning, and otherwise distributing Vioxx in interstate commerce, Plaintiffs have suffered the injuries described elsewhere in this Complaint and was at an increased risk of and did in fact suffer by developing and suffering a cardiovascular event and has suffered damages and Plaintiffs are entitled to compensatory and punitive damages in an amount just and proper under law for personal injuries and other recoverable damages.

66.    The defendants, therefore, are liable to the Plaintiffs. The conduct of Merck and A, B, C, D and E was gross, willful, wanton, oppressive, intentional, burdensome, and otherwise such as to justify the imposition of punitive damages under Alabama law. Additionally, defendants' conduct was so outrageous as to constitute ill will, bad motive and

Exhibit A

reckless indifference to the interests of the consumers. The Plaintiffs, therefore, are entitled to punitive damages. All of the defendants are liable to Plaintiffs jointly and severally for all general, special and other relief to which the Plaintiffs are entitled by law. As a consequence of the producing cause and as a legal result of the dangerous and defective condition of Vioxx as sold, developed, designed, marketed, manufactured and/or supplied by defendants, and as a direct and legal result of the tort, AEMLD violation, negligence and wantonness, carelessness, other wrongdoing and action(s) of defendants described herein:

67.     Plaintiffs were injured in their health, strength and activity and suffered injuries to body and mind;

68.     Plaintiffs have sustained economic loss, loss of earnings and diminution or loss of earning capacity, the exact amount of which is presently unknown;

69.     Plaintiffs required reasonable and necessary health care, attention and services and did incur medical, health, incidental and related expenses. As a direct and proximate result of defendants' manufacturing, creating, designing, testing, labeling, sterilizing, packaging, supplying, marketing, selling, advertising, warning, and otherwise distributing Vioxx in interstate commerce, Plaintiffs have suffered the injuries described elsewhere in this Complaint and Plaintiffs have suffered damages and are entitled to recover compensatory and punitive damages in an amount just and proper under law for personal injuries and other recoverable damages.

## COUNT II

### NEGLIGENCE AND WANTONNESS

70.     Plaintiffs incorporate by reference and reallege, as if fully set forth herein, each and every allegation contained in the other paragraphs of this Complaint, wherever

Exhibit A

contained.

71.    It was the duty of the defendants to use reasonable care in the manufacturing, creating, designing, testing, labeling, sterilizing, packaging, supplying, marketing, selling, advertising, warning and otherwise distributing Vioxx.

72.    Contrary to their duty, the said defendants were guilty of one or more of the following careless, negligent and wanton acts and/or omissions:

Said defendants failed adequately and properly to test, study and inspect Vioxx so as to ascertain whether or not it was safe and proper for the purpose for which it was designed, manufactured and sold;

Failed to utilize and/or implement a reasonably safe design in the manufacture of Vioxx;

Failed to manufacture Vioxx in a reasonably safe condition for which it was intended;

Failed to adequately and properly warn Plaintiffs purchasing Vioxx of the risks of complications when used in a manner for which it was intended;

Failed to adequately and properly warn Plaintiffs purchasing Vioxx of the risks of diseases when used in a manner for which it was intended;

Failed to adequately and properly label Vioxx so as to warn the Plaintiffs of the risks of complications;

Failed to adequately and properly label Vioxx so as to fairly and sufficiently warn the Plaintiffs of the risks of excess deaths and cardiovascular events as well as kidney damage, aseptic meningitis, and slow healing of bone fractures;

Manufactured Vioxx which constituted a hazard to health;

Manufactured Vioxx which caused adverse side effects;

Exhibit A

25

Sold and pushed Vioxx and handed out samples thereof while misrepresenting through word, deed, actions, distributing printed and other materials, all of the most important information concerning the dangers of Vioxx including especially the danger posed of sudden cardiovascular death; and were otherwise careless, negligent and wanton.

73.    As a direct and proximate result of defendants' manufacturing, creating, designing, testing, labeling, sterilizing, packaging, supplying, marketing, selling, advertising, warning, and otherwise distributing Vioxx in interstate commerce, Plaintiffs have suffered the injuries described elsewhere in this Complaint and Plaintiffs have suffered damages and are entitled to recover compensatory and punitive damages in an amount just and proper under law for personal injury and other recoverable damages.

## COUNT III

### NEGLIGENCE PER SE

74.    Plaintiffs incorporate by reference and reallege, as if fully set forth herein, each and every allegation contained in the other paragraphs of this Complaint, wherever contained.

75.    Defendants Merck, David Sparkman, Natasha Walker-McGlothan, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Natasha Walker-McGlothan, Randy Walls, and Melissa Bauer, and the fictitious defendants, had an obligation not to violate the law in the manufacture, design, formulation, compounding, testing, production, processing, assembly, inspection, research, distribution, marketing, labeling, packaging, preparation for use, sale and warning of the risks and dangers of Vioxx.

Exhibit A

26

76.     Defendants, Merck, David Sparkman, Natasha Walker-McGlothan, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Natasha Walker-McGlothan, Randy Walls, and Melissa Bauer, and the fictitious defendants, violated Alabama Code §20-1-26, §20-1-27, and §8-19-5, et seq., related amendments and codes and regulations provided there under, and other applicable laws, statutes and regulations. No action is brought herein for violation of federal statutes, but claim is made for violation of the foregoing and any other state's applicable laws.

77.     Plaintiffs, as purchaser and consumer of Vioxx, are within the class of persons the state statutes and regulations described above are designed to protect and Plaintiffs' injuries are the type of harm these statutes are designed to prevent.

78.     The defendants, Merck, David Sparkman, Natasha Walker-McGlothan, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Natasha Walker-McGlothan, Randy Walls, and Melissa Bauer, and the fictitious defendants made false and fraudulent misrepresentations to physicians, Plaintiffs, and the general public that Vioxx is or was safe, effective, fit for its use as designated, and that it's components are not hazardous to the health of users all in violation of Alabama Code § 20-1-26 and 20-1-27 and other applicable law. defendants' acts constitute a breach of duty subjecting defendants to civil liability for all damages arising therefrom, under theories of negligence per se. Alabama Code §20-1-27 states that "No person shall engage in any of the following activities within this state:(1) Manufacture for sale herein, have in his or his possession with intent to sell, offer or expose for sale, sell, or deliver any article of food or drugs which is adulterated or misbranded within the meaning of this division."

Exhibit A

27

79.     Said defendants failed to meet the standard of care set by the following statutes and regulations, which were intended for benefit of individuals such as Plaintiffs, making defendants negligent per se:

80.     The defendants made false and fraudulent misrepresentations to physicians, Plaintiffs, and the general public that Vioxx is or was safe, effective, fit for its use as designated, and that it's components are not hazardous to the health of users all in violation of Alabama Code § 20-1-26 and 20-1-27 and other applicable law;

81.     The labeling did bear or contain statements, designs or devices regarding the curative or therapeutic effect of Vioxx which were false or fraudulent and which concealed, in that they failed to provide adequate warnings of, severe and disabling medical side effects and conditions including, without limitations, cardiovascular events, hypertension and edema, as well as kidney damage, aseptic meningitis, and slow healing of bone fractures, excess deaths and adverse events and other adverse medical conditions as soon as there was reasonable evidence of their association with the drug;

82.     There was misleading and inadequate information for patients for the safe and effective use of defendants' drug in that a drug shall be deemed misbranded "if its package or label shall bear or contain any statement, design or device regarding the curative or therapeutic effect of such article or of any of the ingredients or substances contained therein which is false or fraudulent"; and

83.     There was misleading and inadequate information regarding special care to be exercised by the doctor for safe and effective use of defendants' drug, and the drug was therefore, misbranded.

84.     As a proximate result of the defendants' violations of the statutes described

**Exhibit A**

28

above, Plaintiffs suffered injuries and personal injuries and damages as alleged herein.

## COUNT IV

### UNJUST ENRICHMENT

85.    Plaintiffs incorporate by reference and reallege, as if fully set forth herein, each and every allegation contained in the other paragraphs of this Complaint, wherever contained.

86.    As the intended and expected result of their conscious wrongdoing, defendants have profited and benefitted from the purchase of Vioxx by the Plaintiffs, to wit: (a) defendants have voluntarily accepted and retained these profits and benefits, derived from the Plaintiffs, with full knowledge and awareness that, as a result of defendants' fraud and other conscious and intentional wrongdoing, Plaintiffs were not receiving a product of the quality, nature, or fitness that had been represented by defendants or that Plaintiffs, as a reasonable consumer, expected.  (b) By virtue of the conscious wrongdoing alleged in this Complaint, defendants have been unjustly enriched at the expense of the Plaintiffs, who are entitled to in equity, and hereby seeks, the restitution of defendants' wrongful profits, revenue, and benefits, to the extent, and in the amount, deemed appropriate by the jury; and such other relief as the jury deems just and proper to remedy the defendants' unjust enrichment.

## COUNT V

### BREACH OF EXPRESS WARRANTY

87.    Plaintiffs incorporate by reference and re-allege, as if fully set forth herein, each and every allegation contained in the other paragraphs of this Complaint, wherever contained.

88.    Defendants expressly warranted to Plaintiffs, by and through statements

Exhibit A

29

made by defendants or their authorized agents or sales representative, orally and in publications, package inserts and other written materials intended for physicians, medical patients and the general public, that Vioxx was safe, effective, fit and proper for its intended use.

89.     In using Vioxx, Plaintiffs relied on the skill, judgment, representations and foregoing express warranties of the defendants. Said warranties and representations were false in that the aforementioned product was not safe and was unfit for the uses for which it was intended.

90.     As a direct and proximate result of defendants breaches of warranties, Plaintiffs have suffered the injuries described elsewhere in this Complaint and Plaintiffs were at an increased risk of and did, in fact, suffer by developing cardiovascular events and has suffered damages for which Plaintiffs are entitled to recover from defendants in an amount just and proper under law for personal injury and other recoverable damages.

## COUNT VI

### BREACH OF IMPLIED WARRANTY

91.     Plaintiffs incorporate by reference and re-allege, as if fully set forth herein, each and every allegation contained in the other paragraphs of this Complaint, wherever contained.

92.     Prior to the time that Vioxx was used by Plaintiffs, defendants impliedly warranted to Plaintiffs that Vioxx was of merchantable quality and safe and fit for the use for which it was intended.

93.     Plaintiffs were unskilled in the subject of pharmacology or the research, design and manufacture of Vioxx and reasonably relied entirely on the skill, judgment and implied warranty of the defendants in using Vioxx.

Exhibit A

94.    Vioxx was neither safe for its intended use nor of merchantable quality, as warranted by defendants, in that it had dangerous propensities when put to its intended use and would cause severe injuries and death to the user.

95.    As a direct and proximate result of defendants' breaches of warranties, Plaintiffs have suffered the injuries described elsewhere in this Complaint and Plaintiffs were at an increased risk of and did, in fact, suffer by developing cardiovascular events and have suffered damages for which Plaintiffs are entitled to recover from defendants in an amount just and proper under law for personal injuries and other recoverable damages.

## COUNT VII

### CORPORATE RESPONSIBILITY:

### JOINT VENTURES, PARENT/SUBSIDIARIES,

### AND/OR SUCCESSOR CORPORATION

96.    Plaintiffs incorporate by reference and re-allege, as if fully set forth herein, each and every allegation contained in the other paragraphs of this Complaint, wherever contained.

97.    As a result of their control or participation in various joint ventures, parent/subsidiary relationships and/or successor corporations, defendants are liable to the Plaintiffs.

98.    As a result of their negligent and wanton supervision and actual supervision of various joint ventures, parent/subsidiary relationships and/or successor corporations, defendants are liable to Plaintiffs.

99.    As a result of the existence or invalidity of various indemnification agreements, defendants are liable to Plaintiffs.

Exhibit A

31

100.    Defendants are liable to Plaintiffs, as alter egos of their joint ventures, parent/subsidiary relationships and/or successor corporations.

## COUNT VIII

### CIVIL CONSPIRACY

101.    Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth here and further allege as follows:

102.    Defendants, Merck, David Sparkman, Natasha Walker-McGlothan, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Natasha Walker-McGlothan, Randy Walls, and Melissa Bauer, and fictitious defendants combined and conspired to do those acts complained of in Count I through Count IX, as a result of which the Plaintiffs have suffered harm, damages and injuries as previously described.

## COUNT IX

### FRAUD AND DECEIT

103.    Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth here and further allege as follows:

104.    Merck and the sales representative defendants made material misrepresentations of fact to the medical community, the Plaintiffs, the public generally, the governmental entities charged with the protection of the public from unsafe drugs, and to opinion leaders in the medical profession, intentionally in some cases and often with the specific intention of deceiving all these for monetary gain to the defendants, and in some cases negligently and wantonly, and even in rare cases, innocently, in all instances, with the intent and purpose to advance the sales of the dangerous drug Vioxx. The defendants

Exhibit A

32

further suppressed material facts as to which they were under a duty to communicate to all of the above persons and entities. The misrepresentation and suppression was, in each case, of material and important facts essential for the health and safety of the public and of Plaintiffs in particular. As a result of the misrepresentations, deceit, and suppression by the defendants as set forth previously in this Complaint and as set forth below, these parties, and Plaintiffs were deceived and defrauded, and as a direct and proximate result of the said deceit, fraud, misrepresentation, and fraudulent suppression the Plaintiffs suffered the harm and injury as set forth in this Complaint.

105.    By the time Merck voluntarily withdrew the anti-inflammatory drug Vioxx from the market in September 2004, more than 100 million prescriptions had been dispensed in the United States. Yet the vast majority of these prescriptions were written by physicians after Merck and the Sales Representative defendants knew that evidence of Vioxx's risks had already surfaced. Even as evidence mounted in defendants' hands that use of Vioxx was associated with heart attacks and strokes, physicians continued to prescribe Vioxx to millions of patients. The reason is the fraudulent scheme perpetrated by the defendants. A major part of the explanation may be found by examining the strategies that Merck and its sales representatives used to market Vioxx to physicians. Based on Merck documents, Merck sent over 3,000 highly trained representatives, including the individual defendants herein, into doctors' offices and hospitals armed with misleading information about Vioxx's health risks. The documents indicate that Merck instructed these representatives to show physicians a pamphlet indicating that Vioxx might be 8 to 11 times safer than other anti-inflammatory drugs, prohibited the representatives from discussing contrary studies (including those financed by Merck) that showed increased risks from Vioxx, and launched special marketing programs — named "Project XXceleration" and "Project Offense" and

Exhibit A

33

"Dodgeball"— to overcome the cardiovascular "obstacle" to increased sales.

106.    On information and belief, Plaintiffs aver that while some sales representatives eventually refused to continue with this course of conduct, other representatives, including the individual defendants herein, continued with the misrepresentations and fraudulent concealment, notwithstanding knowledge of the falsity and of the dangers to patients. The Sales Representative defendants were provided two types of materials relevant to drug safety and effectiveness: "approved" and "background" materials. The "approved" items were to be aggressively used in pushing Vioxx because they were things like medical journal articles favorable to Merck. On the other hand, the "background" materials also contained things unfavorable to Vioxx, and the Sales Representative defendants suppressed this information from the prescribing doctors as Merck requested.

107.    The documents reveal that Merck exhaustively trained its representatives on how to persuade doctors to prescribe Vioxx and other Merck products. No interaction with physicians appears to have been too insignificant for instruction. Merck representatives were taught how long to shake physicians' hands (three seconds), how to eat their bread when dining with physicians ("one small bite size piece at a time"), and how to use "verbal and non-verbal" cues when addressing a physician to "subconsciously raise... his/her level of trust." Merck instructed its representatives on the various personality types of doctors (including "technical," "supportive and expressive") and recommended targeted sales techniques for each type. And Merck rewarded its sales force with thousands of dollars in cash bonuses for meeting sales goals.

108.    The company assigned individual doctors a "Merck potential" and graded them on how often they prescribed Merck products. The Sales Representative defendants

Exhibit A

34

were also involved in the Merck scheme to communicate misinformation about Vioxx to what defendants called "thought leaders" in the medical community. By this device, defendants could sell more Vioxx even to those doctors to whom they did not or could not speak directly or in detail. The "thought leaders" were to influence the medical community to push more Vioxx, despite the dangers, since they could "influence colleagues through peer-to-peer relationships." To help them do this, the Sales Representative defendants used Merck-paid honoraria (money) to these "thought leaders" to influence the medical community to favor Vioxx and to prescribe it notwithstanding the dangers.

109.    The documents describe in detail how Merck used this highly trained sales force to respond to reports of Vioxx's safety risks. The first public indication that Vioxx posed a heightened risk of heart attack and stroke came in March 2000, when Merck's VIGOR study showed a five-fold increase in the risks of heart attacks in patients on Vioxx compared to patients on Naproxen. This study was followed by cautionary discussions of the cardiovascular risks of Vioxx at a meeting of an advisory committee to the Food and Drug Administration in February 2001, in a New York Times article in May 2001, and in a paper in the Journal of the American Medical Association in August 2001.

110.    After each of these developments, Merck sent bulletins or special messages to its sales force, directing them to use highly questionable information to assuage any physician concerns.

111.    For example, the Merck documents show:

After Merck's VIGOR study reported increased heart attack risks, Merck directed its sales force to show physicians a "Cardiovascular Card" that made it appear that Vioxx could be 8 to 11 times safer than other anti-inflammatory drugs. This card omitted any reference to the VIGOR findings

Exhibit A

35

and was based on data FDA considered to be inappropriate for a safety analysis.

After the FDA advisory committee voted that physicians should be informed about the risks found in the VIGOR study, Merck sent a bulletin to its sales force that advised: "DO NOT INITIATE DISCUSSIONS ON THE FDA ARTHRITIS COMMITTEE ... OR THE RESULTS OF THE ... VIGOR STUDY." If physicians asked about the VIGOR study, Merck representatives were directed to respond, "I cannot discuss the study with you." After the New York Times reported on the cardiovascular dangers of Vioxx, Merck instructed its field staff to tell physicians that patients on other anti-inflammatory medications were eight times more likely to die from cardiovascular causes than patients on Vioxx. The Merck bulletin told its sales force to show physicians the Cardiovascular Card and state: "Doctor, as you can see, Cardiovascular Mortality as reported in over 6,000 patients was Vioxx .1 vs. NSAIDS .8 vs. Placebo 0."

112.    After extensive negotiations, FDA and Merck agreed on a label change for Vioxx in April 2002, that mentioned the cardiovascular findings from the VIGOR study. The final label included the statement that the significance of these findings were "unknown." According to the documents, Merck instructed its representatives to emphasize this statement on new labels to counter physician safety concerns. Merck documents show that in fact the cardiovascular risks were actually well-known, but suppressed, by defendants.

113.    Merck and other drug companies maintain publicly that their representatives play a vital role in the health care system by educating physicians about new drugs and ongoing research. But the Merck documents reveal another side to company marketing

Exhibit A

efforts. The documents show that Merck trained its representatives to capitalize subtly on every interaction with physicians to promote Merck products. When concerns about Vioxx's safety arose, Merck used this highly trained force to present a misleading picture to physicians about the drug's cardiovascular risks. Merck's and the Sales Representatives' promotional efforts explain in large part why Vioxx sales remained strong even as the evidence of the drug's dangers mounted. Prescribing doctors were massively misled.

114.    The Sales Representative defendants represented to the Plaintiffs' prescribing physicians false and misleading information concerning the drug Vioxx. The defendants, pursuant to the defendants' "Dodgeball" program and other plans to misrepresent the safety of Vioxx, communicated that the drug was safe for the cardiovascular system, and did not increase the risk stroke or heart attack. The Plaintiffs' physicians did prescribe the subject drug to the Plaintiffs, as a result of, and in reliance upon, the misrepresentations by the defendants' including the Sales Representative defendants who made direct communications to the physician. The physicians made determinations concerning the use of this medication based on false and fraudulent information provided by the defendants including the Sales Representative defendants, and did not act in their proper role as a learned professional in that physicians were given wrongful, false, incomplete, misleading and wrong information by the defendants, including the Sales Representative defendant.

115.    The negligence and wantonness of the defendants, including the Sales Representative defendants, was the proximate cause of the injuries and death suffered by Plaintiffs. Because the Plaintiffs' physicians were prevented from exercising and operating in their full role as learned professionals, because of missed information given to them by defendants, they were deprived of the full and adequate information needed to act in a

Exhibit A

learned manner in deciding and determining how to prescribe pain relieving medication to the Plaintiffs, with the proximate result and consequence that the physicians did in fact prescribe the dangerous and deadly drug, Vioxx, to Plaintiffs, causing their injuries.

116.    The Plaintiffs suffered personal injuries as a direct and proximate result and consequence of the wrongful acts and omissions of each of the defendants. The Plaintiffs would not have been prescribed the subject drug, Vioxx, by his physician, if the physician had not been given wrongful and incorrect information by the defendants including the Sales Representative defendants.

117.    If defendants had not engaged in this conduct, consumers, such as the Plaintiffs, would have switched from Vioxx to safer products or refrained wholly from its efficacy.

118.    From approximately 1999 through the date of Plaintiffs injuries defendants engaged in a scheme of marketing, distributing and/or selling Vioxx under the guise that it was safe and efficacious for persons such as the Plaintiffs.

119.    Plaintiffs allege that the marketing strategies, including without limitation the detail and sampling programs and direct-to-consumer advertising, used by Merck, targeted consumers like the Plaintiffs to induce them to purchase and use Vioxx. defendants distributed, manufactured and marketed Vioxx, in a manner designed to convince and their physicians to rely on the marketing, advertisements and product information propounded by defendant.

120.    On September 30, 2004, Merck voluntarily removed Vioxx from all markets in the United States.

121.    The sales representative defendants negligently, recklessly, intentionally and fraudulently made material representations that Vioxx was safe and effective. The sales

**Exhibit A**

38

representative defendants represented Vioxx as safe so that the general consuming public, including Plaintiffs and their physicians, would rely upon said representations when purchasing the product. The sales representative defendants also suppressed the cardiovascular risks from prescribing physicians, and consumers such as the Plaintiffs, even though they had knowledge of the risks.

122.    Merck trained its sales representatives, through programs such as the "Vioxx Obstacle Dodge Ball Program," the "Obstacle Response Guide for Vioxx," and "Top Ten Obstacle Handlers" to misstate, conceal, and misrepresent the truly dangerous nature of Vioxx to prescribing physicians. The sales representative defendants applied, utilized and put into practice each of these programs with the doctors in question.

123.    These programs were specifically designed and promulgated by Merck to mislead prescribing physicians about the safety of Vioxx.

124.    These programs were specifically designed and promulgated by Merck to mislead prescribing physicians about the life threatening side effects, including myocardial infarction and stroke, of Vioxx.

125.    Merck trained its sales representative force, including the sales representative defendants, to utilize its "Dodge Ball" and "Obstacle Avoidance" programs during the sales representatives' interactions with or "calls" upon prescribing physicians, and defendants put them into full effect with the subject doctors.

126.    These programs were utilized by sales representatives, including the sales representative defendants to "dodge" relevant safety questions by physicians to who promoted and or sold Vioxx. Indeed, these programs provide specific responses and representations that are to be made by Merck sales representatives to physicians during the sales calls or in response to physician questions. These Merck mandated responses

Exhibit A

39

misrepresented the safety of Vioxx.

127.    The Vioxx Obstacle Dodge Ball Program identifies and categorizes physician safety questions as "obstacles" to Merck's sales force. The "Dodge Ball" program specifically instructs sales representatives, including the sales representative defendants, to "dodge" these physicians' safety related questions/obstacles. Indeed, the last few pages of the "Dodge Ball" instruction manual simply state "DODGE," "DODGE," and "DODGE." The safety questions to be "dodged" by sales representatives, including the sales representative defendants, include, inter alia, questions such as, "I am concerned about the cardiovascular effects of Vioxx," and "The competition has been in my office telling me that the incidence of heart attacks is greater with Vioxx than with Celebrex."

128.    Additional sales representative guidelines provide specific answers to physician questions/obstacles (such as those noted above) that were to be recited by sales representatives, including the sales representative defendants. The top three "obstacles" listed on the sales guidelines are physician safety questions involving Vioxx related "Cardiovascular Events." Sales representative, including the sales representative defendants, are thereafter provided with specific misrepresentations to make to the concerned physicians about the safety of Vioxx. For example, bulletins from Merck to its sales representatives state, "in response to recent published reports about Vioxx on May 1, 2000, we provided you with an approved verbal response to use to address customers' questions around the incidence rate of MI's [myocardial infarctions] on patients taking Vioxx..." (Bulletin for Vioxx: New PIRs Relative to Vioxx GI Outcomes Research Study). Sales representatives, including the sales representative defendants, were therefore required to misrepresent that Vioxx does not increase the rate of myocardial infarctions when compared with NSAID's. This misrepresentation is false and inaccurate, yet was

Exhibit A

intentionally, knowingly, recklessly, wantonly and/or negligently made to treating physicians, including each Plaintiffs' prescribing physicians, by the individually named sales representatives. In an instructional video used to train sales representatives, an actress playing "an obstacle" to Vioxx sales says, "I'm afraid Vioxx causes M.I.'s" - a reference to myocardial infarctions, or heart attacks. In response, an actress playing a Merck sales representative says, "That's not true." This was wrong, Vioxx causes M.I.'s. The mechanism of Vioxx-induced heart attack and stroke is the same -- vasoconstriction and blood-clot creation.

129.    Merck's sales representatives, specifically the sales representative defendants, utilized the misrepresentations contained in the obstacle avoidance programs to mislead each Plaintiffs' treating physicians concerning the safety of Vioxx and the occurrence of life threatening side effects, such as strokes and myocardial infarctions, from the usage of Vioxx.

130.    Merck and the individually named sales representatives further misrepresented the safety of Vioxx to prescribing physicians by providing written literature to the doctors that contained false statements about Vioxx's safety. Such literature would be forwarded to the physician who posed questions/obstacles to the sales representatives after the sales representatives had concluded their meeting with the physician, entitled "In Response To Your Questions" (follow-up literature that misrepresents Vioxx's cardiovascular safety) and "In Response To Your Questions: Cardiovascular System", which also misrepresents the risks associated with Vioxx.

131.    Sales representatives, including the sales representative defendants, were also ordered to send follow-up letters to physicians with whom they met who had posed questions/obstacles. These letters would downplay the cardiovascular risks associated with

Exhibit A

Vioxx, even though the defendants were well aware that the risks existed.

132.    The underlying inducement for both Merck and its sales representatives, including the sales representative defendants, to make repeated misrepresentations to physicians about the safety of Vioxx was money. The more doctors prescribed Vioxx, the more money Merck made. The more doctors the sales representatives, including the sales representative defendants, cajoled into prescribing Vioxx, the more money and non-monetary bonuses the sales representatives received. Thus, sales representatives, such as the sales representative defendants, had a financial interest in disseminating the false and misleading information, while concealing the known risks (i.e., obstacle responses) outlined above to as many prescribing physicians as possible, including Plaintiffs' prescribing physicians

133.    Plaintiffs and their prescribing physicians reasonably relied, to their detriment, upon the false oral and written misrepresentations of Merck, and the sales representative defendants, concerning the safety of Vioxx and the absence of adverse cardiovascular events in users. Such reasonable reliance induced each Plaintiff's treating physician to prescribe his Vioxx and further induced the Plaintiffs to utilize the dangerous drug Vioxx. As a direct and proximate result of Plaintiff's usage of Vioxx, they were injured as described herein. Such event has caused Plaintiff's great pain and suffering, mental anguish, expense.

134.    On June 23, 2005 conduct of Merck and its sales representatives was summarized in the New England Journal of Medicine as follows:

"The pharmaceutical industry spends more than $5.5 billion to promote drugs to doctors each year — more than what all U.S. medical schools spend to educate medical students. Major drug companies employ about 90,000

Exhibit A

sales representatives — one for every 4.7 doctors in the United States, according to the American Medical Association. Although substantial marketing expenditures are common in many industries, the potential effect of drug marketing on health raises special concerns. For years, the industry has justified these expenditures on the grounds that they fund essential education for doctors. According to the Web site of the Pharmaceutical Manufacturers and Research Association, "many physicians learn about new drugs - indeed, about ongoing research in their areas of specialization - largely through information provided by the companies that market new products." But if the primary goal is sales, not education, and the information provided to physicians is slanted or misleading, the health consequences for patients can be serious.

"Because of the recent events surrounding Rofecoxib, the May 5 hearing of the Government Reform Committee focused on Merck, the manufacturer of Vioxx... Merck cooperated voluntarily with our request for information, providing more than 20,000 pages of internal company documents. Merck also voluntarily sent a senior executive to testify at the hearing and answer the committee's questions. Yet as we learned, even a company like Merck can direct its sales force to provide clinicians with a distorted picture of the relevant scientific evidence.

"On February 7, 2001, the Arthritis Drugs Advisory Committee of the Food and Drug Administration (FDA) met to discuss the VIGOR study. At this meeting, Merck argued that the significant increase in the rate of myocardial infarction (which further analysis had determined to be a fivefold increase) was explained by a protective effect of naproxen, not by any inherent risk posed by its drug. After the FDA's medical reviewer and others expressed concern about

Exhibit A

43

this explanation, the advisory committee voted unanimously that physicians should be made aware of VIGOR's cardiovascular results.

"The next day, Merck sent a bulletin to its Rofecoxib sales force of more than 3000 representatives. The bulletin ordered, "DO NOT INITIATE DISCUSSIONS ON THE FDA ARTHRITIS ADVISORY COMMITTEE . . . OR THE RESULTS OF THE . . . VIGOR STUDY." It advised that if a physician inquired about VIGOR, the sales representative should indicate that the study showed a gastrointestinal benefit and then say, "I cannot discuss the study with you."

"Merck further instructed its representatives to show those doctors who asked whether Rofecoxib caused myocardial infarction a pamphlet called "The Cardiovascular Card." This pamphlet, prepared by Merck's marketing department, indicated that Rofecoxib was associated with 1/8 the mortality from cardiovascular causes of that found with other anti-inflammatory drugs. Stroke is caused by Vioxx with the same mechanism as myocardial infarction.

"The Cardiovascular Card provided a misleading picture of the evidence on Rofecoxib. The card did not include any data from the VIGOR study. Instead, it presented a pooled analysis of preapproval studies, in most of which low doses of Rofecoxib were used for a short time. None of these studies were designed to assess cardiovascular safety, and none included adjudication of cardiovascular events. In fact, FDA experts had publicly expressed "serious concerns" to the agency's advisory committee about using the preapproval studies as evidence of the drug's cardiovascular safety.

"Persistent physicians who sought additional information about the

Exhibit A

44

cardiovascular effects of Rofecoxib were directed to send inquiries to the company's headquarters. Merck's response to these physicians highlighted the misleading information from the Cardiovascular Card.

"Beyond these specific communications to physicians, our committee also heard evidence of a broad disparity between the evidence-based perspective provided by scientific journals and expert committees, on the one hand, and the sales pitch used by the company's field staff, on the other. Merck instructed its sales representatives, for example, to provide only certain approved study results to doctors. Approved scientific studies were defined as those that provide "solid evidence as to why [doctors] should prescribe Merck products for their appropriate patients." By contrast, those studies that raised safety questions about drugs were considered background studies. Distributing the results of a background study was "a clear violation of Company Policy."

"Merck also trained its representatives to identify speakers for educational events who were "opinion leaders" who could provide "favorable" views of the company's products to other doctors. Underlining the promotional nature of these events, Merck instructed its sales representatives to track whether the physicians who attended them subsequently prescribed more Merck drugs.

"In addition to providing selective evidence and biased presentations, Merck counseled its representatives to use an array of subliminal selling techniques to affect prescribing - potentially undermining the ability of physicians to choose drugs strictly on the basis of the risks, benefits, and costs for a particular patient. For example, in a training course on selling skills, Exhibit A

45

Merck taught representatives to mimic the words and body language of doctors during sales calls. The curriculum explained that 'mirroring is the matching of patterns, verbal and non-verbal, with the intention of helping you enter the customer's world. It is positioning yourself to match the person talking. It subconsciously raises his/her level of trust by building a bridge of similarity.'"

135.    The sales representative defendants personally performed the acts and omissions described herein and participated in the torts alleged herein. The sales representative defendants had knowledge of the cardiovascular risks associated with Vioxx, and misrepresented and/or concealed the nature of these risks to the opinion leaders in the local medical community, to the public, Plaintiffs, and to Plaintiff's physicians. The sales representative defendants were not acting as mere conduits, because they had knowledge that the information conveyed to each opinion leader, consumer, the public and to each of Plaintiffs' physicians, was false.

136.    Accordingly, the sales representative defendants are liable to Plaintiffs for the claims stated herein, and are fully responsible for their own personal acts and omissions whether performed for Merck or as a "frolic of their own" or otherwise. They acted for their own personal profit and "following orders" is not a defense where they acted personally in a negligent, wanton and deceitful manner.

137.    As a result of the misrepresentations, deceit, and suppression by the defendants as set forth previously in this Complaint and as set forth below, these parties, and Plaintiffs were deceived and defrauded, and as a direct and proximate result of the said deceit, fraud, misrepresentation, and fraudulent suppression the Plaintiffs suffered the harm and injury as set forth in this Complaint. The conduct of the defendants described in

Exhibit A

46

all counts of this civil action is gross, oppressive, burdensome, willful, intentional, wanton and otherwise such as to justify the imposition of punitive damages under Alabama law.

WHEREFORE, Plaintiffs demand judgment against Merck & Co., Inc., Merck Corporation, Merck Pharmaceutical Division, David Sparkman, Natasha Walker-McGlothan, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Natasha Walker-McGlothan, Randy Walls, Melissa Bauer and defendants A, B, C, D, E, F, X and Z, whose true names are unknown to the Plaintiffs but will be added by amendment when correctly ascertained, jointly and severally in such sums of compensatory and punitive damages as the jury determines to be fair, just, and lawful plus costs of Court.


James S. Hubbard
Attorney for Plaintiffs


Thomas J. Knight
Attorney for Plaintiffs


HUBBARD & KNIGHT
Post Office Drawer 1850
Anniston, Alabama 36202
(256) 237-9586


Exhibit A

| State of Alabama<br>Unified Judicial System | **SUMMONS**<br>**-CIVIL-** | Case Number |
|---|---|---|
| Form C-34    Rev 6/88 | | CV06-145 |

IN THE _____ CIRCUIT _____ COURT OF _____ RANDOLPH _____ COUNTY

Plaintiff _____ CLIFFORD BAILEY, et als. _____ v. Defendant _____ MERCK & CO. Inc. et als. _____

NOTICE TO _____ Scott Bartlett- 3255 County Road 747, Cullman, Al 35058 _____

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADDMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY _____ THOMAS J. KNIGHT _____ WHOSE ADDRESS IS _____ 1125 Noble Street, Post Office Box 1850, Anniston, Alabama 36202 _____.

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN _ 30 _ DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

**TO ANY SHERIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:**

☐ You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant.

☐ Service by certified mail of this summons is initiated upon the written request of _____ pursuant to the Alabama Rules of Civil Procedure.

Date __9/21/06__    Kim S. Benefield    By: _____
                    Clerk/Register

☐ Certified Mail is hereby requested.    _____
                                          Plaintiff's/Attorney's Signature

RETURN ON SERVICE:

☐ Return receipt of certified mail received in this office on _____.

☐ I certify that I personally delivered a copy of the Summons and Complaint to _____
_____ in _____ County,
Alabama on _____.
              (Date)                              (Date)

_____              Filed in Office
Date                         SEP 21 2006
_____              KIM S. BENEFIELD
Address of Server            Clerk of Circuit Court

                             _____              _____
                             Server's Signature
                             Type of Process Server

Exhibit A

| State of Alabama<br>Unified Judicial System<br><br>Form C-34      Rev 6/88 | SUMMONS<br>-CIVIL- | Case Number<br><br>CV 06-145 |
|---|---|---|

IN THE _____ CIRCUIT _____ COURT OF _____ RANDOLPH _____ COUNTY

Plaintiff ____ CLIFFORD BAILEY, et als. ____ v. Defendant ____ MERCK & CO. Inc. et als. ____

NOTICE TO _____ Melissa Bauer- 512 Clay Street, Albertville, Alabama 35950 _____

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY ____ THOMAS J. KNIGHT ____ WHOSE ADDRESS IS _____ 1125 Noble Street, Post Office Box 1850, Anniston, Alabama 36202 _____

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN ___ 30 ___ DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

TO ANY SHERRIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:

[X]  You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant.

[ ]  Service by certified mail of this summons is initiated upon the written request of _____
pursuant to the Alabama Rules of Civil Procedure.

Date  9-21-06                    Kim S. Benefield          By: CW
                                Clerk/Register

[ ]  Certified Mail is hereby requested.        _____
                                                Plaintiff's/Attorney's Signature

RETURN ON SERVICE:

[ ]  Return receipt of certified mail received in this office on _____

[ ]  I certify that I personally delivered a copy of the Summons and Complaint to _____
_____ in _____ County,
Alabama on _____ .
              (Date)

Date _____

Address of Server _____

**Filed in Office**

Server's Signature  SEP 2 1 2006

Type of Process Server  KIM S. BENEFIELD
                        Clerk of Circuit Court

Exhibit A

| State of Alabama<br>Unified Judicial System<br><br>Form C-34    Rev 6/88 | SUMMONS<br>-CIVIL- | Case Number<br><br>CV06-145 |
|---|---|---|

IN THE _____ CIRCUIT _____ COURT OF _____ RANDOLPH _____ COUNTY

Plaintiff _____ Clifford BAILEY, et als. _____ v. Defendant _____ MERCK & CO. Inc. et als. _____

_____    _____

NOTICE TO _____ Jason Delk- 1609 Bent River Circle, Vestavia Hills, Alabama 35216 _____

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADDMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY _____ THOMAS J. KNIGHT _____ WHOSE ADDRESS IS _____ 1125 Noble Street, Post Office Box 1850, Anniston, Alabama 36202 _____

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN __30__ DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

---

TO ANY SHERRIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:

☐ You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant.

☐ Service by certified mail of this summons is initiated upon the written request of _____ pursuant to the Alabama Rules of Civil Procedure.

Date _____ 9/21/06 _____    _Kim S. Benefield_ By: _cw_

Clerk/Register

---

☐ Certified Mail is hereby requested.

_____
Plaintiff's/Attorney's Signature

**Filed in Office**

RETURN ON SERVICE:

SEP 2 1 2006

☐ Return receipt of certified mail received in this office on _____

KIM S. BENEFIELD
Clerk of Circuit Court

(Date)

☐ I certify that I personally delivered a copy of the Summons and Complaint to _____
_____ in _____ County,
Alabama on _____.
    (Date)

_____    _____
Date                        Server's Signature

_____    _____
Address of Server           Type of Process Server

Exhibit A

| State of Alabama<br>Unified Judicial System<br><br>Form C-34    Rev 6/88 | SUMMONS<br>-CIVIL- | Case Number<br><br>CV06-145 |
|---|---|---|

IN THE _____ CIRCUIT _____ COURT OF _____ RANDOLPH _____ COUNTY

Plaintiff _____ CLIFFORD BAILEY, et als. _____ v. Defendant _____ MERCK & CO. Inc. et als. _____

NOTICE TO _____ Coral Harper- 220 63 Street South, Birmingham, Al 35212 _____

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADDMITING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY _____ THOMAS J. KNIGHT _____ WHOSE ADDRESS IS _____ 1125 Noble Street, Post Office Box 1850, Anniston, Alabama 36202 _____ .

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN ___ 30 ___ DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

**TO ANY SHERIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:**

[X]   You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant.

[ ]   Service by certified mail of this summons is initiated upon the written request of _____ pursuant to the Alabama Rules of Civil Procedure.

Date _9-21-06_                    _Kim S. Benofield_   By: _CW_
                                 Clerk/Register

---

[ ]  Certified Mail is hereby requested.       _____
                                               Plaintiff's/Attorney's Signature

---

RETURN ON SERVICE:

[ ] Return receipt of certified mail received in this office on _____
                                                              (Date)

[ ] I certify that I personally delivered a copy of the Summons and Complaint to _____
_____ in _____ **Filed in Office** County,
Alabama on _____
            (Date)                            SEP 2 1 2006

_____                       _____
Date                                          Server's Signature **KIM S. BENEFIELD**
                                                                    **Clerk of Circuit Court**
_____                       _____
Address of Server                             Type of Process Server

Exhibit A

| State of Alabama Unified Judicial System | **SUMMONS** **-CIVIL-** | Case Number |
|---|---|---|
| Form C-34    Rev 6/88 | | CV06-145 |

IN THE _____ CIRCUIT _____ COURT OF _____ RANDOLPH _____ COUNTY

Plaintiff _____ Clifford BAILEY, et als. _____ v. Defendant _____ MERCK & CO. Inc. et als. _____

NOTICE TO _____ Charles Henderson- 2101 31 Avenue North, Birmingham, Al 35207 _____

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADDMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY _____ THOMAS J. KNIGHT _____ WHOSE ADDRESS IS _____ 1125 Noble Street, Post Office Box 1850, Anniston, Alabama 36202 _____.

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN ___ 30 ___ DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

**TO ANY SHERRIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:**

[X] You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant.

[ ] Service by certified mail of this summons is initiated upon the written request of _____ pursuant to the Alabama Rules of Civil Procedure.

Date _9-21-06_    Kim S. Benefield    By: _cw_

Clerk/Register

[ ] Certified Mail is hereby requested.

_____
Plaintiff's/Attorney's Signature

---

RETURN ON SERVICE:

[ ] Return receipt of certified mail received in this office on _____
(Date)

[ ] I certify that I personally delivered a copy of the Summons and Complaint to _____
_____ in _____ County,
Alabama on _____.
(Date)

**Filed in Office**

SEP 2 1 2006

_____
Date

_____
Address of Server

_____
Server's Signature    KIM S. BENEFIELD

Type of Process Server    Clerk of Circuit Court

Exhibit A

| State of Alabama Unified Judicial System | SUMMONS -CIVIL- | Case Number |
|---|---|---|
| Form C-34      Rev 6/88 | | CV00-145 |

IN THE _____ CIRCUIT _____ COURT OF _____ RANDOLPH _____ COUNTY

Plaintiff ___ CLIFFORD BAILEY, et als. ___ v. Defendant ___ MERCK & CO. Inc. et als. ___

NOTICE TO _____ Julie Hodges- 14019 Mariellen Road SW, Huntsville, Alabama 35803 _____

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADDMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY _____ THOMAS J. KNIGHT _____ WHOSE ADDRESS IS _____ 1125 Noble Street, Post Office Box 1850, Anniston, Alabama 36202 _____.

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN ___ 30 ___ DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

---

**TO ANY SHERRIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:**

[✓] You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant.

[ ] Service by certified mail of this summons is initiated upon the written request of _____ pursuant to the Alabama Rules of Civil Procedure.

Date _9/21/06_ _____ Kim S. Burgfield By: _____
                                          Clerk/Register

---

[ ] Certified Mail is hereby requested. _____
                                        Plaintiff's/Attorney's Signature

---

RETURN ON SERVICE:

[ ] Return receipt of certified mail received in this office on _____.

[ ] I certify that I personally delivered a copy of the Summons and Complaint to _____ in _____ County, Alabama on _____
                                                                                        (Date)

_____
Date

_____
Address of Server

Filed in Office

_____
Server's Signature    SEP 2 1 2006

Type of Process Server  S. BENEFIELD
                        KIM S. BENEFIELD
                        Clerk of Circuit Court

Exhibit A

| State of Alabama<br>Unified Judicial System<br><br>Form C-34    Rev 6/88 | SUMMONS<br>-CIVIL- | Case Number<br><br>CV06-145 |

IN THE _____ CIRCUIT _____ COURT OF _____ RANDOLPH _____ COUNTY

Plaintiff ____ CLIFFORD BAILEY, et als. ____ v. Defendant ____ MERCK & CO. Inc. et als. ____

NOTICE TO _____ JamesHouston- 286 Wesley Drive, Ozark, Alabama 36360 _____

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADDMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY _____ THOMAS J. KNIGHT _____ WHOSE ADDRESS IS _____ 1125 Noble Street, Post Office Box 1850, Anniston, Alabama 36202 _____.

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN ___ 30 ___ DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

---

**TO ANY SHERIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:**

[X] You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant.

[ ] Service by certified mail of this summons is initiated upon the written request of _____ pursuant to the Alabama Rules of Civil Procedure.

Date __ 9/21/06 __         Kim S. Benefield __ By: __ CW __
                              Clerk/Register

[ ] Certified Mail is hereby requested.         _____
                                                Plaintiff's/Attorney's Signature

---

RETURN ON SERVICE:

[ ] Return receipt of certified mail received in this office on _____
                                                                        (Date)
[ ] I certify that I personally delivered a copy of the Summons and Complaint to _____
_____ in _____ County,
Alabama on _____.
                 (Date)

_____                    **Filed in Office**
Date                                         SEP 2 1 2006
_____                    Server's Signature
Address of Server                            KIM S. BENEFIELD
                                             Type of Process Server  Clerk of Circuit Court

Exhibit A

| State of Alabama<br>Unified Judicial System<br><br>Form C-34　　Rev 6/88 | SUMMONS<br>-CIVIL- | Case Number<br>CV06-145 |
| --- | --- | --- |

IN THE _____CIRCUIT_____ COURT OF _____RANDOLPH_____ COUNTY

Plaintiff ____CLIFFORD BAILEY, et als.____ v. Defendant ____MERCK & CO. Inc. et als.____

NOTICE TO _____ Julie Melton- 5309 Avenue S, Birmingham, Alabama 35212 _____

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADDMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY _____THOMAS J. KNIGHT_____ WHOSE ADDRESS IS _____ 1125 Noble Street, Post Office Box 1850, Anniston, Alabama 36202 _____.

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN ___30___ DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

**TO ANY SHERIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:**

[X]　You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant.

[ ]　Service by certified mail of this summons is initiated upon the written request of _____ pursuant to the Alabama Rules of Civil Procedure.

Date ___9-21-06___　　　_Kim S Benefield_　　By: _CW_

Clerk/Register

[ ] Certified Mail is hereby requested.　　_____

Plaintiff's/Attorney's Signature

RETURN ON SERVICE:

[ ] Return receipt of certified mail received in this office on _____

(Date)

[ ] I certify that I personally delivered a copy of the Summons and Complaint to _____

_____ in _____. County,

Alabama on _____.

(Date)

**Filed in Office**

SEP 2 1 2006

_____

Date　　　　　　　　　　　　Server's Signature

KIM S. BENEFIELD

_____

Address of Server　　　　　　Type of Process Server

Clerk of Circuit Court

Exhibit A

| State of Alabama<br>Unified Judicial System<br><br>Form C-34    Rev 6/88 | SUMMONS<br>-CIVIL- | Case Number<br><br>CV06-145 |
|---|---|---|

IN THE _____ CIRCUIT _____ COURT OF _____ RANDOLPH _____ COUNTY

Plaintiff ___ CLIFFORD BAILEY, et als. ___ v. Defendant ___ MERCK & CO. Inc. et als. ___

NOTICE TO ___ MERCK & CO. Inc., c/o The Corporation Company, 2000 Interstate Park Dr. Ste.204, ___
___ Montgomery, AL  36109
THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE
ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF
YOUR WRITTEN ANSWER, EITHER ADDMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH
THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR
YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY ___ THOMAS J. KNIGHT ___ WHOSE
ADDRESS IS ___ 1125 Noble Street, Post Office Box 1850, Anniston, Alabama 36202 ___.

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN ___ 30 ___ DAYS AFTER THIS SUMMONS AND
COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR
THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

---

TO ANY SHERRIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:

[✓] You are hereby commanded to serve this summons and a copy of the complaint in this action upon the
defendant.

[ ] Service by certified mail of this summons is initiated upon the written request of _____
pursuant to the Alabama Rules of Civil Procedure.

Date ___ 9-21-06 ___          _Kim S. Benefield_ By: _CW_

Clerk/Register

---

[ ] Certified Mail is hereby requested.          _____

Plaintiff's/Attorney's Signature

---

RETURN ON SERVICE:

[ ] Return receipt of certified mail received in this office on _____

(Date)

[ ] I certify that I personally delivered a copy of the Summons and Complaint to _____
_____ in _____ County

Alabama on _____.

(Date)

**Filed in Office**

SEP 2 1 2006

_____          Server's Signature **KIM S. BENEFIELD**
Date                                      **Clerk of Circuit Court**

_____          _____
Address of Server          Type of Process Server

Exhibit A

| State of Alabama Unified Judicial System<br><br>Form C-34    Rev 6/88 | SUMMONS<br>-CIVIL- | Case Number<br><br>CV010-145 |

**IN THE** _____ CURCUIT _____ **COURT OF** __ RANDOLPH COUNTY __ **COUNTY**

**Plaintiff** __ CLIFFORD BAILEY, et. als __ v. **Defendant** __ MERCK & CO., INC., et. als. __

**NOTICE TO** __ HENRY MITCHAM, 1919 MCDOWLING DR. SE, HUNTSVILLE, AL 35803 __

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADDMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY ___ Thomas J. Knight ___ WHOSE ADDRESS IS __ HUBBARD & KNIGHT, 1125 NOBLE STREET, P.O. BOX 1850, ANNISTON, AL. 36202 __ .

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN __ 30 __ DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

**TO ANY SHERRIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:**

[✓] You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant.

[ ] Service by certified mail of this summons is initiated upon the written request of _____ pursuant to the Alabama Rules of Civil Procedure.

Date __ 9-21-06 __          Kim S. Benefield  By: _____
                          Clerk/Register

[ ] Certified Mail is hereby requested.          _____
                                          Plaintiff's/Attorney's Signature

**RETURN ON SERVICE:**

[ ] Return receipt of certified mail received in this office on _____.
                                                        (Date)

[ ] I certify that I personally delivered a copy of the Summons and Complaint to _____
_____ in _____ County,
Alabama on _____.
          (Date)

_____          Filed in Office
Date                    SEP 2 1 2006
                        KIM S. BENEFIELD
_____          Clerk of Circuit Court
Address of Server       Server's Signature

                        Type of Process Server

                                          Exhibit A

| State of Alabama<br>Unified Judicial System<br><br>Form C-34    Rev 6/88 | **SUMMONS**<br>**-CIVIL-** | Case Number<br><br>CV06-145 |
|---|---|---|

IN THE _____ CIRCUIT _____ COURT OF _____ RANDOLPH _____ COUNTY

Plaintiff ___ CLIFFORD BAILEY, et als. ___ v. Defendant ___ MERCK & CO. Inc. et als. ___

NOTICE TO _____ Lori Lovett~ 5612 5 Terry Street, Birmingham, AL 35212 _____

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADDMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY _____ THOMAS J. KNIGHT _____ WHOSE ADDRESS IS _____ 1125 Noble Street, Post Office Box 1850, Anniston, Alabama 36202 _____

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN ___ 30 ___ DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

**TO ANY SHERRIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:**

[X]    You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant.

[ ]    Service by certified mail of this summons is initiated upon the written request of _____ pursuant to the Alabama Rules of Civil Procedure.

Date ___ 9/21/06 ___        _Kim S. Benefield_        By: ___ cu ___
                           Clerk/Register

[ ]    Certified Mail is hereby requested.        _____
                                                 Plaintiff's/Attorney's Signature

RETURN ON SERVICE:

[ ]    Return receipt of certified mail received in this office on _____
                                                                    (Date)

[ ]    I certify that I personally delivered a copy of the Summons and Complaint to _____
       _____ in _____ County,
       Alabama on _____.
                    (Date)

~~Filed in Office~~

SEP 21 2006

Kim S. ~~Nancy~~ BENEFIELD
Clerk of Circuit Court

_____        Server ~~Kim Surg~~ BENEFIELD
Date

_____        Type of Process Server
Address of Server

Exhibit A

| State of Alabama<br>Unified Judicial System<br><br>Form C-34    Rev 6/88 | **SUMMONS**<br>**-CIVIL-** | Case Number<br><br>CV06-145 |
| --- | --- | --- |

IN THE _____ CURCUIT _____ COURT OF _____ RANDOLPH COUNTY _____ COUNTY

Plaintiff ____ CLIFFORD BAILEY, et. als ____ v. Defendant ____ MERCK & CO., INC., et. als. ____

NOTICE TO _____ KATHERINE HOLMES, 2481 SAVOY STREET, HOOVER, AL. 35226 _____

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADDMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY _____ Thomas J. Knight _____ WHOSE ADDRESS IS _ HUBBARD & KNIGHT, 1125 NOBLE STREET, P.O. BOX 1850, ANNISTON, AL. 36202 _.

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN ___ 30 ___ DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

**TO ANY SHERRIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:**

☑️  You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant.

☐  Service by certified mail of this summons is initiated upon the written request of _____ pursuant to the Alabama Rules of Civil Procedure.

Date _9/21/06_     Kim S. Benefield By: _cw_

     Clerk/Register

---

☐  Certified Mail is hereby requested. _____

     Plaintiff's/Attorney's Signature

---

RETURN ON SERVICE:

☐  Return receipt of certified mail received in this office on _____.

☐  I certify that I personally delivered a copy of the Summons and Complaint to _____

_____ in _____ County,

Alabama on _____.

     (Date)

**Filed in Office**

SEP 2 1 2006

_____     Server's Signature **KIM S. BENEFIELD**

Date          ~~Clerk of Circuit Court~~

_____     Type of Process Server

Address of Server

Exhibit A

| State of Alabama<br>Unified Judicial System<br><br>Form C-34    Rev 6/88 | **SUMMONS**<br>**-CIVIL-** | Case Number<br><br>CV06-145 |
|---|---|---|

IN THE _____ CIRCUIT _____ COURT OF _____ RANDOLPH _____ COUNTY

Plaintiff ___ CLIFFORD BAILEY, et als. ___ v. Defendant ___ MERCK & CO. Inc. et als. ___

NOTICE TO _____ Jerry Pharr- 4705 Augusta Drive, Eight Mile, Alabama 36613 _____

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADDMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY _____ THOMAS J. KNIGHT _____ WHOSE ADDRESS IS _____ 1125 Noble Street, Post Office Box 1850, Anniston, Alabama 36202 _____.

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN ___ 30 ___ DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

**TO ANY SHERIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:**

[X] You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant.

[ ] Service by certified mail of this summons is initiated upon the written request of _____ pursuant to the Alabama Rules of Civil Procedure.

Date ___ 9-21-06 ___        Kim S. Benefield By: ___
                                     Clerk/Register

[ ] Certified Mail is hereby requested.        _____
                                             Plaintiff's/Attorney's Signature

RETURN ON SERVICE:

[ ] Return receipt of certified mail received in this office on _____.
                                                              (Date)
[ ] I certify that I personally delivered a copy of the Summons and Complaint to _____ in _____ County,
Alabama on _____
            (Date)

_____        _____
Date                           Server's Signature

_____        _____
Address of Server              Type of Process Server

*Filed in Office*
*SEP 21 2006*
*KIM S. BENEFIELD*
*Clerk of Circuit Court*

Exhibit A

| State of Alabama<br>Unified Judicial System<br><br>Form C-34    Rev 6/88 | **SUMMONS**<br>**-CIVIL-** | Case Number<br><br>CV06-145 |
|---|---|---|

IN THE _____ CURCUIT _____ COURT OF ___ RANDOLPH COUNTY ___ COUNTY

Plaintiff ___ CLIFFORD BAILEY, et. als ___ v. Defendant ___ MERCK & CO., INC., et. als. ___

NOTICE TO ___ MELISSA SANTIAGO, 223 VINEYARD LANE, BIRMINGHAM, AL 35242 ___

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADDMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY ___ Thomas J. Knight ___ WHOSE ADDRESS IS ___ HUBBARD & KNIGHT, 1125 NOBLE STREET, P.O. BOX 1850, ANNISTON, AL. 36202 ___.

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN __ 30 __ DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

**TO ANY SHERRIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:**

[X] You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant.

[ ] Service by certified mail of this summons is initiated upon the written request of _____ pursuant to the Alabama Rules of Civil Procedure.

Date __ 9-21-06 __        _Ruth S. Benefield_        By: __ CW __
                          Clerk/Register

[ ] Certified Mail is hereby requested.        _____
                                                Plaintiff's/Attorney's Signature

RETURN ON SERVICE:

[ ] Return receipt of certified mail received in this office on _____ .
                                                                    (Date)
[ ] I certify that I personally delivered a copy of the Summons and Complaint to _____
_____ in _____ County,
Alabama on _____ .
            (Date)

Filed in Office

SEP 2 1 2006

KIM S. BENEFIELD
Clerk of Circuit Court

Date _____        Server's Signature _____

Address of Server _____        Type of Process Server _____

Exhibit A

| State of Alabama Unified Judicial System | **SUMMONS** | Case Number |
|---|---|---|
| Form C-34      Rev 6/88 | **-CIVIL-** | CV06-145 |

IN THE _____ CURCUIT _____ COURT OF _____ RANDOLPH COUNTY _____ COUNTY

Plaintiff ___ CLIFFORD BAILEY, et. als ___ v. Defendant ___ MERCK & CO., INC., et. als. ___

NOTICE TO ___ DAVID SPARKMAN, 545 ROCKY FORD ROAD, HARTSELLE, AL 35640 ___

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADDMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY ___ Thomas J. Knight ___ WHOSE ADDRESS IS ___ HUBBARD & KNIGHT, 1125 NOBLE STREET, P.O. BOX 1850, ANNISTON, AL. 36202 ___.

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN ___ 30 ___ DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

**TO ANY SHERIFF OR ANY PERSON AUTHORIZED** by the Alabama Rules of Civil Procedure:

[X] You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant.

[ ] Service by certified mail of this summons is initiated upon the written request of _____ pursuant to the Alabama Rules of Civil Procedure.

Date ___ 9/21/06 ___         _Kim S. Benefield cw_
                              Clerk/Register

[ ] Certified Mail is hereby requested.         _____
                                                Plaintiff's/Attorney's Signature

RETURN ON SERVICE:

[ ] Return receipt of certified mail received in this office on _____.
                                                                    (Date)

[ ] I certify that I personally delivered a copy of the Summons and Complaint to _____
    _____ in _____ **Filed in Office** County,
    Alabama on _____
                  (Date)
                                                        SEP 21 2006

_____                              ___ KIM S. BENEFIELD ___
Date                                             Server's Signature  Clerk of Circuit Court

_____                              _____
Address of Server                                Type of Process Server

Exhibit A

| State of Alabama<br>Unified Judicial System<br><br>Form C-34      Rev 6/88 | **SUMMONS**<br>**- CIVIL -** | Case Number<br><br>CV 06-145 |
|---|---|---|

IN THE _____ CIRCUIT _____ COURT OF _____ RANDOLPH _____ COUNTY

**Plaintiff**     CLIFFORD BAILEY, et. als.     **v. Defendant**     MERCK & CO., INC., et. als.

**NOTICE TO** _____ NATASHA WALKER-MCGLOTHAN, 3122 HIGHLAND LAKES ROAD, BIRMINGHAM, AL 35242

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY _____ THOMAS J KNIGHT _____ WHOSE

ADDRESS IS _____ HUBBARD & KNIGHT, 1125 NOBLE STREET, P.O. BOX 1850, ANNISTON, AL 36202 _____.

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN _____ 30 _____ DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

**TO ANY SHERIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:**

☐ You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant.

☐ Service by certified mail of this summons is initiated upon the written request of _____ pursuant to the Alabama Rules of Civil Procedure.

Date _____ 9/21/06 _____     Kim S. Benefield By: CW

Clerk/Register

☐ Certified Mail is hereby requested.     _____

Plaintiff's/Attorney's Signature

RETURN ON SERVICE:

☐ Return receipt of certified mail received in this office on _____
     (Date)

☐ I certify that I personally delivered a copy of the Summons and Complaint to _____
     in _____ County,
     Alabama on _____
                    (Date)

Filed in Office

SEP 21 2006

_____     KIM S. BENEFIELD
Date                                   Clerk of Circuit Court

_____     Server's Signature

_____
Address of Server

_____
Type of Process Server

Exhibit A

| State of Alabama<br>Unified Judicial System<br><br>Form C-34     Rev 6/88 | **SUMMONS**<br>**- CIVIL -** | Case Number<br><br>CV06-145 |
|---|---|---|

IN THE _____CIRCUIT_____ COURT OF _____RANDOLPH_____ COUNTY

**Plaintiff**     CLIFFORD BAILEY, et. als.     **v. Defendant**     MERCK & CO., INC., et. als.

**NOTICE TO** _____ Randy Walls, 7620 Mack Hicks Road, Clay, AL  35048 _____

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY _____THOMAS J KNIGHT_____ WHOSE

ADDRESS IS _____ HUBBARD & KNIGHT, 1125 NOBLE STREET, P.O. BOX 1850, ANNISTON, AL  36202 _____

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN     30     DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

**TO ANY SHERIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:**

☐ You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant.

☐ Service by certified mail of this summons is initiated upon the written request of _____ pursuant to the Alabama Rules of Civil Procedure.

Date _____9-21-06_____     _Kim S. Benefield_     By: _CLL_

Clerk/Register

☐ Certified Mail is hereby requested.     _____

**Plaintiff's/Attorney's Signature**

**RETURN ON SERVICE:**

☐ Return receipt of certified mail received in this office on _____
(Date)

☐ I certify that I personally delivered a copy of the Summons and Complaint to _____
_____ in _____ County,
Alabama on _____
(Date)

_____     **Filed in Office**
Date     Server's Signature     SEP 2 1 2006

_____     KIM S. BENEFIELD
Address of Server     Type of Process Server     Clerk of Circuit Court

Exhibit A

| State of Alabama<br>Unified Judicial System<br><br>Form ARCiv-93    Rev.5/99 | **COVER SHEET**<br>**CIRCUIT COURT – CIVIL CASE**<br>(Not For Domestic Relations Cases) | Case Number<br>C V 2006 145 - <br>Date of Filing:<br>09 21 2006<br>Month  Day  Year | Judge Code: |
|---|---|---|

**GENERAL INFORMATION**

IN THE CIRCUIT COURT OF _____ RANDOLPH COUNTY _____ , ALABAMA
(Name of County)

CLIFFORD BAILEY, et., als.           v.           MERCK & CO., INC., et. als.

| | Plaintiff | | | Defendant | |
|---|---|---|---|---|---|
| First Plaintiff | ☐ Business<br>☐ Government | ☑ Individual<br>☐ Other | First Defendant | ☑ Business<br>☐ Government | ☐ Individual<br>☐ Other |

**NATURE OF SUIT:**   Select primary cause of action, by checking box (check only one) the best characterizes your action:

**TORTS: PERSONAL INJURY**
☐ WDEA  - Wrongful Death
☐ TONG  - Negligence: General
☐ TOMV  - Negligence: Motor Vehicle
☐ TOWA  - Wantonness
☐ TOPL  - Product Liability/AEMLD
☐ TOMM  - Malpractice-Medical
☐ TOLM  - Malpractice-Legal
☐ TOOM  - Malpractice-Other
☑ TBFM  - Fraud/Bad Faith/Misrepresentation
☐ TOXX  - Other: _____

**TORTS: PERSONAL INJURY**
☐ TOPE  - Personal Property
☐ TORE  - Real Property

**OTHER CIVIL FILINGS**
☐ ABAN  - Abandoned Automobile
☐ ACCT  - Account & Nonmortgage
☐ APAA  - Administrative Agency Appeal
☐ ADPA  - Administrative Procedure Act
☐ ANPS  - Adults in Need of Protective Services

**OTHER CIVIL FILINGS (cont'd)**
☐ MSXX  - Birth/Death Certificate Modification/Bond Forfeiture Appeal/<br>   Enforcement of Agency Subpoena/Petition to Preserve
☐ CVRT  - Civil Rights
☐ COND  - Condemnation/Eminent Domain/Right-of-Way
☐ CTMP  - Contempt of Court
☐ CONT  - Contract/Ejectment/Writ of Seizure
☐ TOCN  - Conversion
☐ EQND  - Equity Non-Damages Actions/Declaratory Judgment/Injunction<br>   Election Contest/Quiet Title/Sale For Division
☐ CVUD  - Eviction Appeal/Unlawful Detainer
☐ FORJ  - Foreign Judgment
☐ FORF  - Fruits of Crime Forfeiture
☐ MSHC  - Habeas Corpus/Extraordinary Writ/Mandamus/Prohibition
☐ PFAB  - Protection From Abuse
☐ FELA  - Railroad/Seaman (FELA)
☐ RPRO  - Real Property
☐ WTEG  - Will/Trust/Estate/Guardianship/Conservatorship
☐ COMP  - Workers' Compensation
☐ CVXX  - Miscellaneous Circuit Civil Case

**ORIGIN**  (check one):     F ☑ INITIAL FILING        A ☐ APPEAL FROM          O ☐ OTHER: _____
                                                    DISTRICT COURT
                         R ☐ REMANDED        T ☐ TRANSFERRED FROM
                                                    OTHER CIRCUIT COURT

**HAS JURY TRIAL BEEN DEMANDED?**   ☑ YES ☑ NO    Note: Checking "Yes" does not constitute a demand for a<br>jury trial. (See Rules 38 and 39, Ala R.Civ.P, for procedure)

**RELIEF REQUESTED:**     ☑ MONETARY AWARD REQUESTED        ☐ NO MONETARY AWARD REQUESTED

**ATTORNEY CODE:**
| K N I 0 0 9 |    9/21/06    | _____ |
|---|---|---|
| | Date | Signature of Attorney/Party filing this form |

**MEDIATION REQUESTED:**    ☐ YES  ☐ NO  ☑ UNDECIDED

**Filed in Office**

SEP 21 2006

KIM S. BENEFIELD
Clerk of Circuit Court

Exhibit A

IN THE CIRCUIT COURT OF
RANDOLPH COUNTY, ALABAMA

| | |
|---|---|
| CLIFFORD BAILY, CLIFFORD BLACK, WESLEY CALHOUN, CURTIS DEASON, RUTH GRAVES, MICKEY GRIZZARD, JIMMY PERRY, HERBERT STANLEY SIKES, And PHILLIP THOMPSON, | )<br>)<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| vs. | )<br>) CASE NUMBER: CV-06-145<br>) |
| MERCK & CO., INC., a foreign or Domestic Corporation, DAVID SPARKMAN, KATHERINE HOLMES, LORI LOVETT, SCOTT BARTLETT, CORAL HARPER, MELISSA SANTIAGO, HENRY MITCHAM, JERRY PHARR, JASON DELK, CHARLES HENDERSON, JAMES HOUSTON, JULIE MELTON, JULIE HODGES, MELISSA BAUER, NATASHA WALKER-MCGLOTHAM RANDY WELLS, and the Defendants A, B, C, D, E, X & Z whether singular or plural, being those persons, firms or entities who or which proximately caused or contributed to the Plaintiff's and Plaintiff's decedent's other harm and the other damages as complained of herein whose true names are unknown to the Plaintiff but will be added by amendment when correctly ascertained, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | |

## NOTICE OF FILING NOTICE OF REMOVAL

PLEASE TAKE NOTICE that Merck & Co., Inc. has this date filed its Notice of Removal in the Office of the Clerk of the United States District Court for the Middle District of Alabama a copy of which is attached hereto as **Exhibit A.**

Richard B. Garrett
One of the Attorneys for Defendant,
Merck & Co., Inc.

OF COUNSEL:
Robert C. "Mike" Brock
F. Chadwick Morriss
Ben C. Wilson
Richard B. Garrett
RUSHTON, STAKELY, JOHNSTON, & GARRETT, P.A.
Post Office Box 270
Montgomery, Alabama 36101-0270
Telephone: (334) 206-3100
Facsimile: (334) 262-6277

## CERTIFICATE OF SERVICE

I hereby certify that I have served the above and foregoing document upon all interested parties by placing a copy of same in the United States Mail, postage prepaid and properly addressed on this the **30th** day of October 2006, as follows:

James S. Hubbard
Thomas J. Knight
HUBBARD & KNIGHT
1125 Noble Street
Anniston, Alabama 36201

OF COUNSEL

## JURY AWARDS IN AEMLD CASES

| | |
|---|---|
| $950,000 | Castleberry v. Cantrell Mach. Co., 2004 WL 3201180 (Ala. Cir. Ct., Blount County, Sept. 2, 2004) (products liability action by a woman whose hand was injured by a chicken heart and liver harvesting machine) |
| $50,000,000 (Original Verdict) | Mack Trucks, Inc. v. Witherspoon, 867 So. 2d 307 (Ala. 2003) (products liability case arising out of a tractor-trailer rollover) |
| $12,000,000 ($6,000,000 Compensatory, $6,000,000 Punitive) | Morgan v. ProTech Industries, 2003 WL 23111870 (Ala. Cir. Ct., Lamar County, Aug. 29, 2003) (wrongful death case based on products liability claim against truck manufacturer arising out of rollover and absence of cab guard on logging truck) |
| $7,000,000 | Daniel v. Snap Products, 2003 WL 23111815 (Ala. Cir. Ct., Baldwin County, May 23, 2003) (wrongful death case based on products liability claim against manufacture of tire repair product after treated tire exploded) |
| $4,165,500 ($1,065,500 Compensatory, $3,100,000 Punitive) | McClain, et al. v. Metabolife Int'l., Inc., 259 F. Supp. 2d 1225 (N.D., Ala. 2002) (products liability action by four plaintiffs who suffered cardiac symptoms after using ephedra-based diet drug) (reversed on appeal, 401 F.3d 1233 (11th Cir. 2005), and remanded for a new trail) |
| $960,000 ($25,000 over and above $935,000 in pro tanto settlements) | Hannah v. Gregg Bland & Berry, 2002 WL 32169253 (Ala. Cir. Ct., Colbert County, Oct. 23, 2002) (wrongful death case arising out of fatal crush injury in industrial belt equipment) |
| $122,000,000 ($22,000,000 Compensatory, $100,000,000 Punitive) | Jernigan v. General Motors Corp., Bullock County (May 3, 2002) (products liability case arising out of collapse of Oldsmobile passenger compartment) (reversed on appeal, 883 So.2d 646 (Ala. 2003), and remanded for new trial) |
| $510,000 (Compensatory) $10,000,000 (Punitive) | Hobart Corporation v. Scottie W. Scoggins, 776 So.2d 56 (Ala. 2000) (products liability action by a man who was injured while using a meat saw manufactured by Hobart) |
| $3,000,000 ($2,500,000 Compensatory $500,000 Punitive) | Cessna Aircraft Company v. Robert Trzcinski, 682 So. 2d 17 (Ala. 1996) (products liability action by a man who was injured in an airplane crash due to a defective shoulder harness) |
| $1,000,000 (Original verdict $825,000) | Uniroyal Goodrich Tire Company v. Jackie Darryl Hall, 681 So. 2d 126 (Ala. 1996) (products liability action by a man who was injured when wheel rim exploded) |
| $1,225,000 | Ford Motor Company v. Jane Burdeshaw, 661 So. 2d 236 (Ala. 1995) (wrongful death case brought against truck manufacturer after decedent was killed by a truck's transmission slipping out of neutral and crushing him) |

EXHIBIT
C.

1/8328121                                    1

| | |
|---|---|
| $13,000,000 | General Motors Corporation v. Pamela L. Saint, 646 So. 2d 564 (Ala. 1994) (products liability action by a woman who was injured due to a defective seat belt) |
| $250,000 ($100,000 Compensatory, $150,000 Punitive) | Flagstar Enterprises, Inc. v. Maureen Davis, 709 So. 2d 1132 (Ala. 1998) (products liability action by a woman who found human blood in styrofoam package containing biscuit gravy) |
| $250,000 | Caterpillar, Inc. v. Hightower, 605 So. 2d 1193 (Ala. 1992) (product liability action brought by a man who was injured by a broken tree trunk while handling machinery during logging operation) |
| $115,000 | Besner Welders, Inc. v. Knighton, 425 So. 2d 441 (Ala. 1982) (product liability claim against manufacturer for personal injuries received on shuttle welder) |
| $6,500,000 | Sears, Roebuck & Co. v. Harris, 630 So. 2d 1018 (Ala. 1993) (wrongful death case based on product liability claims against manufacturer and retailer of gas water heater that caused carbon monoxide poisoning) |
| $7,500,000 | General Motors Corp. v. Johnson, 592 So. 2d 1054 (Ala. 1992) (wrongful death case based on product liability claim where child was killed in automobile accident) |
| $5,000,000 | Industrial Chem. & Fiberglass Corp. v. Chandler, 547 So. 2d 812 (Ala. 1989) (widows of two workers killed in industrial accident brought wrongful death action against distributor of cleaning substances that ignited and caused death of workers) |
| $2,800,000 | General Motors Corp. v. Edwards, 428 So. 2d 1175 (Ala. 1985) (wrongful death case based on products liability claim where two boys were killed in automobile accident) |
| $200,000 | Interstate Engineering, Inc. v. Burnett, 474 So. 2d 624 (Ala. 1985) (wrongful death case brought against manufacturer of heat detectors after decedent was killed in a fire) |
| $800,000 | Piper Aircraft Corp. v. Evans, 424 So. 2d 586 (Ala. 1982) (damages in wrongful death case based on product liability claims against airplane manufacturer where decedent was killed in plane crash) |
| $500,000 | Caterpillar Tractor Co. v. Ford, 406 So. 2d 854 (Ala. 1981) (wrongful death case based on product liability claims where decedent was killed in an accident on a tractor manufactured by defendant) |



## UNITED STATES DISTRICT COURT
### DISTRICT OF MINNESOTA

In re: BAYCOL PRODUCTS LITIGATION                    MDL No. 1431
                                                     (MJD)

This Document also relates to:

| | |
|---|---|
| Annie Andrews et al. v. Bayer Corp. et al., | Case No. 03-4932 |
| Maney Anglin et al. v. Bayer Corp. et al., | Case No. 03-4942 |
| Judy Baldwin et al. v. Bayer Corp. et al., | Case No. 03-4930 |
| Dorothy Bennett v. Bayer Corp. et al, | Case No. 03-4938 |
| Alice Dowling et al. v. Bayer Corp. et al., | Case No. 03-4931 |
| Mary Ellis et al. v. Bayer Corp. et al., | Case No. 03-4933 |
| Sis Grubbs et al. v. Bayer Corp. et al, | Case No 03-4934 |
| George Jenkins et al. v. Bayer Corp et al., | Case No 03-4943 |
| Mary Richardson et al. v. Bayer Corp. et al., | Case No. 03-4935 |
| Charles Rogers et al. v. Bayer Corp. et al, | Case No. 03-4936 |
| Clarence Wheeler et al v. Bayer Corp. et al, | Case No. 03-4941 |
| Albert Williams et al. v. Bayer Corp. et al, | Case No. 03-4937 |
| Willie Womack et al v. Bayer Corp. et al, | Case No 03-4939 |
| Jeffrey Woods et al. v. Bayer Corp et al., | Case No 03-4940 |

Andy D. Birchfield, Jr., E. Frank Woodson, and Melissa A. Prickett, Beasley,
Allen, Crow, Methvin, Portis & Miles, P.C. for and on behalf of Plaintiffs.

Peter W. Sipkins, Dorsey & Whitney LLP for and on behalf of Bayer
Corporation

Scott A. Smith and Tracy J. Van Steenburgh for and on behalf of
SmithKline Beecham Corporation d/b/a GlaxoSmithKline.

This matter is before the Court upon Plaintiffs' motions for remand. Bayer

Corporation ("Bayer") and SmithKline Beecham Corporation d/b/a


EXHIBIT
D

1



GlaxoSmithKline ("GSK") oppose the motions, arguing that this Court has diversity jurisdiction over Plaintiffs' claims.

<u>Background</u>

The above-referenced cases were originally filed in Alabama state court and involve a number of plaintiffs that are citizens of Alabama. Plaintiffs each allege that they were prescribed Baycol and that as a direct and proximate result of taking Baycol, each Plaintiff was caused to suffer physical injury.[1] In their Complaints, the Plaintiffs assert the following claims against Bayer A.G., Bayer Corporation, GSK, as well as against Monica Reid and Jerry Totty, district managers for GSK and Todd Trawick and Donald Heller, sales representatives for GSK: the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD"); negligence; breach of warranty; and, fraud/suppression.

Bayer and GSK removed the above actions to federal court on the basis that the non-diverse defendants, the individual district managers and sales representatives, were fraudulently joined. Plaintiffs now seek remand, arguing that they have stated a claim against these individual defendants.

<u>Standard</u>

Remand to state court is proper if the district court lacks subject matter

---

[1] With the exception of those paragraphs describing the claims of the individual plaintiffs, the allegations against the defendants in all of the above referenced complaints are identical. For ease of reference, the Court will refer only to the <u>Baldwin</u> Complaint.

2



jurisdiction over the asserted claims. 28 U.S.C. § 1447(c). In reviewing a motion to remand, the court must resolve all doubts in favor of remand to state court, and the party opposing remand has the burden of establishing federal jurisdiction by a preponderance of the evidence. In re Business Men's Assurance Co. of America, 992 F.2d 181, 183 (8th Cir. 1993)(citing Steel Valley Auth. v. Union Switch & Signal Div., 809 F.2d 1006, 1010 (3rd Cir. 1987) cert. dismissed 484 U.S. 1021 (1988))

Fraudulently joined defendants will not defeat diversity jurisdiction. Filla v. Norfolk Southern Railway Company, 336 F.3d 806, 809 (8th Cir. 2003) "Joinder is fraudulent and removal is proper when there exists no reasonable basis in fact and law supporting a claim against the resident defendants." Wiles v. Capitol Indemnity Corporation, 280 F.3d 868, 870 (8th Cir. 2001) The burden is on the removing party to show that a non-diverse party has been fraudulently joined. Id., at 871. In deciding this issue, the Court may consider the pleadings and supporting affidavits. Parnas v. General Motors Corporation, 879 F. Supp. 91, 92 (E.D. Mo. 1995)

1. AEMLD Claim

Plaintiffs have alleged AEMLD claims against all defendants. To establish liability under AEMLD, the plaintiffs must show they were injured by one who sold a product in a defective condition unreasonably dangerous to the plaintiffs as

3



the ultimate user or consumer; the seller was engaged in the business of selling such a product; the product was expected to and did reach the users without substantial change in the condition in which it was sold. Carter v. Cantrell Machine Company, Inc., 662 So. 2d 891, 892 (Ala. 1995).

Defendants argue that the district managers and sales representatives are not "sellers" of Baycol, as contemplated by the AEMLD. The Court agrees. The purpose of the AEMLD, a judicially created doctrine, is to "plac[e] the burden to compensate for loss incurred by defective products on the one best able to prevent the distribution of those products." Atkins v. American Motors Corp. et al., 335 So.2d 134, 139 (Ala. 1976). Although no Alabama state court decision specifically addresses whether a district manager or sales manager could be held liable under the AEMLD, other courts have found that Alabama would not impose such liability. For example, in an unpublished opinion from the Southern District of Alabama, the district court specifically held that a sales manager cannot be held liable under the AEMLD. Bowman v. Coleman Company, Inc., Civil Action No. 96-0448-P-C (S.D. Ala. 1996), Attached as Ex. B, to Removal Petition. The court recognized that the defendant sales manager "had no authority to compel or prevent the distribution of particular products . . . for such product distribution decisions are vested in the [] home office, rather than in its individual store managers." Id. at *7. The court also noted that it is the corporation that reaps the

4



profits from the distribution from products, and has the participatory market connection with the manufacturer through which the corporation can recoup costs as a result of seller liability, not the sales manager. Id. "In short the policy goals underlying the AEMLD would not be advanced in any way by holding persons such as Mr. Elkins liable in their role as store managers or sales representatives."

In another MDL proceeding, the district court similarly held that Alabama courts would not hold a sales representative liable under AEMLD In re Rezulin Products Liability Litigation, 133 F.Supp. 2d 272, 287-288 (S.D.N.Y. 2001).

The sales representative joined in the Alabama case neither manufactured, sold nor supplied Rezulin Rather, he was an agent of the manufacturer and seller As a corporate employee, he was not 'the one best able' to prevent sales of defective drugs. In light of the Alabama Supreme Court's clear explanation of the AEMLD's scope and purpose, there is no reasonable basis for supposing that it would impose liability on the sales representatives in this case.

Id. See also, Wakeland v. Brown & Williamson Tobacco Corporation, 996 F.Supp. 1213 (S.D. Ala 1998) (finding that retailer of cigarettes was fraudulently joined as plaintiffs had failed to state a claim under AEMLD, in part, because Alabama rejects the no-fault precept and plaintiff failed to demonstrate a causal connection between the retailer's activities in connection with the handling of the product and the product's defective condition).

Plaintiffs do not allege, and nothing in the records supports a finding, that

5



the individual defendants are "sellers" as that term is used to impose liability for a defective product. In fact, the individual defendants submitted declarations in which they attest that they are not sellers, manufacturers, developers or testers of Baycol. Declarations of Monica Reid, Jerry Totty, Todd Trawick and Donald Heller, Ex. C. to Joint Notice of Removal. Accordingly, the Court finds that Alabama would not recognize an AEMLD claim against the individual defendants in these cases.

2. Negligence/Warranty Claim

Plaintiffs also assert negligence and warranty claims against the individual defendants, alleging they were negligent in the design, manufacture, development, packaging, labeling, marketing, promoting, advertising and sale and/or distribution of Baycol and provided express and implied warranties concerning Baycol's safety and efficacy. Compl. ¶¶ 28-32. Defendants argue that these claims fail as well, as such claims can only be brought against a manufacturer or seller of an allegedly defective product.

In support of remand in these cases, Plaintiffs argue that the negligence and warranty claims stand, as such claims are not subsumed by AEMLD. Defendants do not argue to the contrary, and the Alabama Supreme Court has found that negligence claims are not subsumed by AEMLD. Tillman v. R.J. Reynolds Tobacco Co., 2003 WL 21489707 (Ala. 2003). However, none of the

6



cases cited in their briefs addresses the propriety of such claims against individuals that were not manufacturers or sellers of the product at issue.

Alabama law provides that claims of negligent manufacture or sale may only be asserted against the manufacturer or seller. Norton Co. v. Harrelson, 176 So 2d 18, 20 (Ala. 1965). Similarly, claims of breach of express or implied warranties may only be asserted against the seller of the product at issue. See eg. Rutledge v. Arrow Aluminum Industries, Inc., 733 So 2d 412, 417 (Ala. Civ. App. 1998) (plaintiff cannot recover against construction company under AEMLD or breach of warranty when no evidence presented that construction company sold the alleged defective product at issue). See also, Ala. Code § 7-2-313(1) ("Express warranties by the seller are created as follows    "); id. § 7-2-314(1) (implied warranty of merchantability applies to a seller that is a "merchant with respect to goods of that kind"); id. § 7-2-315(1) (implied warranty; fitness for a particular purpose applies to sellers).

As the individual defendants are not sellers or manufacturers of Baycol, rather they are only agents of the seller of Baycol, Plaintiffs negligence and warranties claims against the individual defendants would fail.

3. Fraud/Suppression

Finally, Plaintiffs allege that the individual sales manager and sales representative defendants made knowing fraudulent misrepresentations that

7

Baycol was safe with the intent to induce physicians to prescribe Baycol and that plaintiffs were injured as a result. Compl. ¶¶ 43 and 44. Defendants argue these allegations do not meet the specificity requirements of Rule 9(b) of the Federal Rules of Civil Procedure and the Alabama Rules of Civil Procedure, and that such claims should therefore be dismissed.

Alabama law clearly provides that a claim for fraud must be plead with particularity.

> Rule 9(b), A.R.Civ.P. provides that when fraud is alleged, the circumstances constituting the fraud must be stated with particularity. This does not mean that every element must be pleaded with particularity. The pleader, however, must use more than generalized or conclusory statements when setting out the allegations of fraud. The pleader must state the place, the time, the contents of the false misrepresentations, the fact misrepresented, and an identification of what has been obtained. Robinson v. Allstate Ins. Co., 399 So.2d 288 (Ala 1981). The purpose of Rule 9(b) is to provide adequate notice to the opposing party of any claim for fraud so that he may properly prepare his case. Caron v. Teagle, 345 So.2d 1331 (Ala 1977).

Lyrie v. United Ins. Co. of America, 628 So.2d 665, 670 (Ala. Civ. App. 1993)

In reviewing the Complaints at issue here, the Court finds that Plaintiffs have failed to plead, with the requisite particularity, the "place, the time, the contents of the false misrepresentations, the fact misrepresented, and the identification of what has been obtained." Id. Rather, the allegations supporting the fraud/suppression claim are general and conclusory. For example, one such allegation reads "the District Managers and Sales Representatives advertised,

8



marketed, and/or promoted Baycol to prescribing physicians utilizing information known to fraudulently represent the safety and efficacy of Baycol, and the District Managers and Sales Representatives failed to warn of the known dangers and adverse events associated with the use of Baycol." Baldwin Compl. ¶ 17. Another reads "the District Managers and Sales Representatives called on physicians . . . at which times they presented fraudulent information . . . " Id. ¶ 14. No allegation specifies the specific misrepresentation the individual defendants made, to whom and under what circumstances

    4  Amount in Controversy

    In the Baldwin Complaint, Plaintiff Ruby Johnson alleges she suffered physical and/or mental injuries in the aggregate amount of $74,000. Baldwin Comp. ¶ 6  Plaintiffs in the Baldwin action thus argue that the remand is appropriate as the amount in controversy is not met  Defendants respond that plaintiff Johnson has failed to limit her damages below the jurisdictional amount

    The Court begins its analysis with the principle that the amount claimed by Plaintiffs ordinarily controls in determining whether jurisdiction lies in federal court. Zunamon v. Brown, 418 F.2d 883, 885 (8th Cir. 1969) (citing St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 288-289 (1938)). Nonetheless, "the plaintiffs allegations of requisite jurisdictional amount are not necessarily dispositive of the issue" Id. That is because an allegation in a



pleading is not binding. The applicable rules of civil procedure liberally allow the amendment of pleadings. Thus, to prevent removal, a plaintiff must submit a binding stipulation or affidavit, separate from the pleadings, and signed by the plaintiffs agreeing to be so bound. See e.g. De Aguilar. 47 F.3d at 1412; In re Shell Oil Co., 970 F.2d 355, 356 (7th Cir. 1992); White v. Bank of America, 2001 WL 804517 (N.D. Tex. 2001) (to prevent removal, plaintiff must file with the complaint a binding stipulation or affidavit that limits the scope of their recovery).

The Court finds that based on all claims included in the Complaint, the amount in controversy exceeds $75,000. Specifically, all of the Baldwin plaintiffs have asserted a number of claims arising in tort, contract and statute. Plaintiffs also seek compensatory and punitive damages. Given the breadth of their requests, the amount in controversy easily exceeds $75,000 per plaintiff, including plaintiff Johnson.

Accordingly, IT IS HEREBY ORDERED that Plaintiffs motions for remand are DENIED.

Date: March 25, 2004

/s/ Michael J. Davis
Michael J. Davis
United States District Court

18

FILED

IN THE UNITED STATE DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

04 JUN 24  PH 3: 06

U.S. DISTRICT COURT
N.D. OF ALABAMA

MARGIE REAVES FOWLER, et al,       )
                                   )
     Plaintiffs,                   )
                                   )
v.                                 )     Civil Action No.: CV-04-PT-712-M
                                   )
PHARMACIA and UPJOHN COMPANY,      )     ENTERED
MCKESSON CORPORATION,              )
CHARLIE WATSON, et al,             )     JUN 24 2004

## MEMORANDUM OPINION

This cause comes on to be heard upon defendant Charlie Watson's ("Watson") motion to

dismiss, filed on April 7, 2004, and plaintiffs Margie Reaves Fowler's ("Mrs. Fowler") and Mark

Fowler's ("Mr. Fowler") motion to remand, filed on May 7, 2004.

### FACTS[1] AND PROCEDURAL HISTORY

Plaintiff Margie Reaves Fowler ("Fowler") is an adult resident of St. Clair County, Alabama.

Plaintiff Mark Fowler is her husband. Defendants Pharmacia & Upjohn Company ("P&U Co.") and

McKesson Corporation ("McKesson") are corporations doing business in Alabama. Defendant

Watson, an employee of McKesson,[2] allegedly "sold and/or distributed" the drug at issue.

---

[1] The "facts" are as alleged in the complaint.

[2] The complaint, this court notes, does not allege McKesson Corporation's specific role
regarding Depo Provera (also known as medroxyprogesterone). However, defendant Watson's
affidavit attached to the notice of removal stated: "My employer, McKesson Medical-Surgical,
did not manufacture Depo-Provera Contraceptive Injection. McKesson Medical Surgical was
only a distributor of Depo-Provera . . . ."

1


EXHIBIT
E
3/

Mrs. Fowler was prescribed and received injections of Depo Provera[3] from June 1999 through December 2001. The injections were given by a licensed health care provider in a clinical setting. Depo Provera was allegedly "manufactured, created, designed, tested, labeled, sterilized, packaged, supplied, marketed, sold, advertised, prescribed, administered and otherwise distributed by the Defendants herein." *See* Compl. ¶ 7. On February 28, 2002, Mrs. Fowler suffered a stroke, which according to plaintiffs, was proximately caused by Depo Provera. *Id.* at ¶ 9.

On February 27, 2004, plaintiffs filed a complaint in the Circuit Court of St. Clair County, Alabama. The complaint contained the following counts against all defendants: Count One (AEMLD); Count Two (Negligence);[4] Count III (Breach of Express Warranty); Count IV (Breach

---

[3] Depo Provera is a medication commonly prescribed to women as a contraceptive alternative to "the pill." Depo Provera, taken as an injection, contains a synthetic hormone similar to the natural hormone progesterone and is offered to protect women from pregnancy for three months per injection. *See* Compl. ¶ 6.

[4] Count Two claims that defendants failed to exercise due care by committing the following acts and omissions:

    a.    Failed to adequately and properly test and inspect Depo Provera so as to ascertain whether or not it was safe and proper for the purpose for which it was designed, manufactured or sold.

    b.    Failed to utilize and/or implement a reasonably safe design in the manufacture of Depo Provera.

    c.    Failed to manufacture Depo Provera in a reasonably safe condition for which it was intended;

    d.    Failed to adequately and properly warn the Plaintiff purchasing Depo Provera of the risks of complications when used in a manner for which it was intended;

    e.    Failed to adequately and properly warn the Plaintiff purchasing Depo Provera of the risks of diseases when used in a manner for which it was intended;

    f.    Failed to adequately and properly labeled (*sic*) Depo Provera so as to warn the Plaintiff of the risks of complications;

    g.    Failed to adequately and properly label Depo Provera so as to warn the Plaintiff of the risks of complications;

2

of Implied Warranty); Count V (Damages); Count VI (Unjust Enrichment)[5]; and Count VII (Loss

of Consortium by Mr. Fowler)  On April 7, 2004, defendants filed a notice of removal, alleging the

existence of complete diversity of citizenship between the parties and fraudulent joinder of the non-

diverse defendant, Watson. On April 7, 2004, defendant Watson filed the motion to dismiss at issue

here.[6]  Plaintiffs responded with a motion to remand.  The court considers both motions here.

## RULE 12(b)(6) STANDARD

Rule 12(b)(6) tests the legal sufficiency of a complaint.  When considering a Rule 12(b)(6)

motion, the court assumes that all factual allegations pled in the complaint are true.  *United States*

---

> h.    Manufactured which (sic) constituted a hazard to health;
> i.    Manufactured Depo Provera which caused adverse side effects; and
> j.    Were otherwise careless and negligent.

See Compl. ¶ 20.

[5] Specifically, Count VI alleges that defendants have profited and benefitted from plaintiff's use of Depo Provera.  Additionally, Count VI alleges:

> Defendants . . . have voluntarily accepted and retained these profits and benefits, derived from the Plaintiff, with full knowledge and awareness that, as a result of Defendants' . . . fraud and other conscious and intentional wrongdoing, Plaintiff did not receive a product of the quality, nature or fitness that had been represented by Defendants . . . or that Plaintiff, as a reasonable consumer, expected.
>
> By virtue of the conscious wrongdoing alleged in this Complaint, Defendants ... have been unjustly enriched at the expense of the Plaintiffs, who are entitled to in equity, and hereby seek the disgorgement and restitution of Defendants . . . wrongful profits, revenue, and benefits, to the extent, and in the amount, deemed appropriate by the Court . . . .;

*Id.* ¶¶ 35-36.

[6] The court notes that Watson is the only defendant filing the motion to dismiss at issue here.  Defendant P&U Co. submitted the response in opposition to plaintiffs' motion to remand.  *See infra.*

3

*v. Gaubert*, 499 U.S. 315, 327, 111 S. Ct. 1267, 113 L. Ed. 2d 335 (1991). All factual allegations are to be construed in the light most favorable to the plaintiff. *Brower v. County of Inyo*, 489 U.S. 593, 598, 109 S. Ct. 1378, 103 L. Ed. 2d 628 (1989). Dismissal under Rule 12(b)(6) is appropriate "'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations' of the complaint." *Rendon v. Valleycrest Prods., Ltd.*, 294 F.3d 1279, 1282 (11th Cir. 2002) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

## MOTION TO REMAND STANDARD

Federal courts are courts of limited jurisdiction. *See Russell Corp. v. American Home Assurance Co.*, 264 F.3d 1040, 1050 (11th Cir. 2001). Therefore, federal courts have power to hear only those cases that they have been authorized to hear by the Constitution or by Congress. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). The limited nature of federal court jurisdiction has caused the Eleventh Circuit to favor remand of removed cases where federal jurisdiction is not absolutely clear. *Russell Corp.*, 264 F.3d at 1050. The removal statute is to be construed narrowly with doubt construed against removal. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 107-09 (1941).

A case may be removed to federal court only if the case could have been brought originally in federal court pursuant to the court's diversity or federal question jurisdiction. *See* 28 U.S.C. § 1441(a). However, diversity will not support removal jurisdiction if any properly joined defendants are citizens of the state in which the suit was originally filed. *See* 28 U.S.C. § 1441(b). The determination of whether federal jurisdiction exists must be made on the face of the plaintiff's well-pleaded complaint. *Pacheco De Perez v. AT & T Co.*, 139 F.3d 1368, 1373 (11th Cir. 1998). An anticipated or even inevitable federal defense generally will not support removal. *Id.* at 1373 (citing

4

*Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392-93 (1987)).  The burden of establishing federal jurisdiction is placed on the defendant, with all doubts resolved in favor of remand, *Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996).  When multiple defendants are involved, all defendants must consent to removal. *Russell Corp.*, 264 F.3d at 1050.

<div align="center">

**ARGUMENTS**

**MOTION TO DISMISS**

</div>

I.      Defendant Watson's Motion

Watson submits that no cause has been stated against him under Alabama law.  Relying on *In re Rezulin Products Liability Litigation*, 133 F. Supp. 2d 272, 287-88 (S.D.N.Y. 2001)(predicting Alabama law), Watson argues, a plaintiff patient cannot state a cause of action against a sales representative (or account manager like defendant) of a distributor of a prescription drug.  Watson further relies on the Alabama Supreme Court's decision in *Walls v. Alpharma USPD, Inc.*, 2004 WL 406759 (Ala. March 5, 2004).

In support of dismissal, Watson relies on his own affidavit, which avers that he was not a manufacturer of Depo-Provera and that he was never involved in the manufacture, development, or testing of the drug.  Watson alleges that he has not had dealings with either of the plaintiffs.

Watson's affidavit further provides: Watson has "not made any statements to the general public or participated in any advertising or promotion to the general public concerning Depo Provera . . ."; Watson was not a physician or pharmacist and thus never prescribed or filled a prescription for Depo Provera; As an employee of a distributor, Watson's role was taking orders from physicians' offices; "If their order included a request for Depo-Provera . . . this product, with the information as packaged by the manufacturer, was shipped with the order to their [the physicians"] offices"; and

<div align="center">5</div>

Watson was not a "seller" of Depo Provera.

    A.    Counts One and Two – AEMLD and Negligence

A threshold element of recovery for an AEMLD claim, Watson contends, is showing that defendants "manufactured and/or sold the allegedly defective product." *See Turner v. Azalea Box*, 508 So. 2d 535, 254 (Ala. 1987); *Atkins v. Am. Motors Corp.*, 335 So. 2d 134 (Ala. 1976). Courts from other jurisdictions interpreting Alabama product liability tort theories, Watson claims, have held that no cause of action is stated against sales representatives since they are not "sellers." *See In Re Rezulin, supra,* at 287-88 (S.D.N.Y. 2001). *See also Andrews, et al, v. Bayer Corp, et al; In re Baycol Products Litigation*, MDL No. 1431, slip op. 4 (D. Minn. March 26, 2004)(attached as Exhibit B).

These courts considered the purpose of the AEMLD in analyzing the potential liability of sales representatives of drug manufacturers. *In Re Rezulin* stated: "The AEMLD is founded on 'broader moral notions of consumer protection and on economic and social grounds, placing the burden to compensate for loss incurred by defective products on the one best able to prevent the distribution of these products.'" 133 F. Supp. 2d at 287 (quoting *Atkins* at 139). Furthermore, the *Rezulin* court found: "The sales representative joined in the Alabama case neither manufactured, sold nor supplied Rezulin (the prescription drug at issue in the case). Rather, he was an 'agent of the manufacturer and seller.'" *Id.* at 287-288. Here, Watson repeats, he was neither the manufacturer nor seller of Rezulin. Furthermore, Watson asserts, he is even further removed from liability than the sales representative in *Rezulin* since he was only the distributor's agent.[7]

---

[7] Watson again quotes *Rezulin*: "As a corporate employee, he [the representative] was 'not the one best able' to prevent the sale of defective drugs. In light of the Alabama Supreme Court's clear explanation of the AEMLD's scope and purpose, there is no reasonable basis for

Regarding the negligence claims, Watson asserts, they should be dismissed for the same reason, i.e., he was neither the "manufacturer" nor "seller" of Depo Provera. *See Norton Co. v. Harrelson*, 176 So. 2d 18, 20 (Ala. 1965).[8] Additionally, Watson argues, since the negligence count contains the language of the AEMLD, i.e., "It could have been reasonably anticipated by the Defendants . . . that said product would become inherently or imminently dangerous to human life or health when put to its intended, ordinary and customary use," it is redundant with the AEMLD count. Alabama courts have found that when two counts are redundant, the negligence claim is not considered to constitute a separate cause of action. *See Veal v. Teleflex, Inc.*, 586 So. 2d 188, 191 (Ala. 1991).[9]

Watson relies on the *Walls* decision as supporting his position. *See* Exhibit C. In *Walls*, the plaintiff sued her pharmacist for failure to warn of foreseeable injuries from the use of the prescription drug he dispensed to her. The Northern District of Alabama certified the following question to the Alabama Supreme Court: "Does a pharmacist have a duty to warn of foreseeable supposing that it would impose liability on the sales representatives in this case."

[8] The *Norton* court stated:

> This doctrine [of manufacturer's liability] is applicable in a limited number of situations. The defendant must be either the manufacturer or seller of the injury-producing article. There is no privity of contract between the defendant and the injured plaintiff. At the time complained of the article must have been applied to the use for which it was manufactured and sold and that use must be in the usual and customary manner. Where these circumstances exist the manufacturer or seller will be liable for an injury proximately resulting from the use of the article but only where the article is inherently or imminently dangerous to human life or health, or becomes so when put to its intended use in the proper manner. This liability arises from either the negligent manufacture of the article or negligence in selling it.

[9] This court notes that *Veal* does so suggest.

7

injuries from the use of a prescription drug he/she is dispensing under AEMLD, common-law negligence or other Alabama law?"

In *Walls*, the pharmacist had direct contact with the plaintiff and had directly sold the prescription drug to the plaintiff. Even in that situation, Watson contends, the court applied the learned intermediary doctrine and held that the pharmacist had no duty to warn a customer or any other ultimate customer of the risk or potential side effects of the prescription drug. The Supreme Court observed that

> where prescription drugs are concerned the manufacturer's duty to warn is limited to an obligation to advise the prescribing physician of any potential dangers that may result from the drug's use. This special standard for prescription drugs is an understandable exception to the Restatement's general rule that one who markets goods must warn foreseeable ultimate users of dangers inherent in his products. *See* Restatement (Second) of Torts, Section 388 (1965).

*Walls* at *3 (citing *Reyes v. Wyeth Laboratories*, 498 F.2d 1264 at 1276)(citations omitted). The *Walls* court further noted language from other cases that to impose a duty to warn on a pharmacist would "intrude on the doctor-patient relationship and would force the pharmacist to practice medicine without a license." *Id.* at *4.[10]

Defendant concludes: "The rationale which the Alabama Supreme Court followed in holding that prescription drugs are an exception to the Restatement's general rule certainly is even more applicable in the case at bar. If the manufacturer's duty to warn flows only to the physician and if other parties would be liable for interfering in the physician-patient relationship should advice be given to the patient, then it is abundantly clear that Charles Watson cannot be subject to potential liability under Alabama law."

---

[10] This court does not find *Walls* to be significantly apt here.

8

B.    Counts Three and Four – Breach of Express and Implied Warranties[11]

According to Watson, a breach of warranty claim (whether express or implied) arises

exclusively against a product's "seller." See Ala. Code §§ 7-2-313(1), 7-2-314(1), and 7-2-315. The

Alabama courts, Watson argues, have affirmed this principle. See, e.g., Rutledge v. Arrow

Aluminum Indust., 733 So. 2d 412, 417 (Ala. Civ. App. 1998). The Rutledge court found:

> With regard to Rutledge's AEMLD and breach of implied warranty of fitness
> claims against Foshee Builders, it is undisputed that Foshee Builders bought
> the sliding glass door and that a subcontractor installed the door. Rutledge failed
> to present any evidence that Foshee Builders is in the business of selling sliding
> glass doors. Therefore, we conclude that Foshee is not a seller within the meaning
> of the AEMLD or § 7-2-103 and that the trial court properly entered a summary
> judgment in favor of Foshee Builders on Rutledge's AEMLD and breach of implied
> warranty of fitness claims.

---

[11] To the extent the warranty claims are redundant with AEMLD claims and based on the
allegation that the drug was unreasonably dangerous, defendant argues, these claims are due to
be dismissed due to the distinction between tort and UCC causes of action. According to
defendant, whether Depo-Provera is unreasonably dangerous is not properly addressed in a
warranty claim, only in an AEMLD claim. See Yarbrough v. Sears, Roebuck & Co., 628 So. 2d
478 (Ala. 1993), which found:

> The Yarbroughs' claim of a breach of the implied warranty of merchantability is
> to the effect that the kerosene heater was unreasonably dangerous and therefore could not
> be merchantable. "Such an argument ignores the clear distinction between causes of
> action arising under tort law and those arising under the U.C.C. as adopted in Alabama."
> Shell v. Union Oil Co., 489 So.2d 569, 571 (Ala.1986). Whether the kerosene heater was
> unreasonably dangerous is not a question properly addressed in a claim alleging breach
> of warranty under the U.C.C., but it could be, and was, properly raised in a claim under
> the AEMLD.

Compare Spain v. Brown & Williamson Tobacco Corp., 2003 WL 21489727 (Ala.
2003)(distinguishing Yarbrough). In addressing the certified question from the Eleventh Circuit
about the implied warranty of merchantability, the court distinguished Yarbrough based on the
failure to allege that the product was not fit for the ordinary purpose. The Spain court then held:
"[A] claim alleging breach of an implied warranty of merchantability is separate and distinct
from an AEMLD claim and is viable to redress an injury caused by an unreasonably dangerous
product."

9

Watson reiterates that his position is an account manager of McKesson, a corporation which distributes pharmaceutical products ordered by physicians. As such, Watson asserts, he is not a "seller" for purposes of the U.C.C.

Moreover, Watson argues, an additional reason to dismiss the warranty claim is that Watson had no contact with plaintiffs. Under Alabama law, Watson contends, express warranties arise from affirmative statements of fact. *See* Ala. Code § 7-2-313 (1975). Similarly, Watson argues, an implied warranty cannot arise unless the plaintiff relies on the seller's skill or judgment during the purchase. *See Ex Parte General Motors Corp.*, 769 So. 2d 903, 911 (1999). Since Watson had no contact with plaintiffs, he could not have made affirmative statements or express warranties to them. Additionally, plaintiffs could not have relied on his skill or judgment during their purchase. As a final reason to dismiss plaintiffs' implied warranty claim, Watson asserts, he is not a "merchant with respect to goods of that kind" as required by § 7-2-314. *See Loeb & Co. v. Schreiner*, 321 So. 2d 199 (Ala. 1975); *Huprich v. Bitto*, 667 So. 2d 685 (Ala. 1995).

**C.    Count Five - Unjust Enrichment**

Defendant Watson quotes the Alabama Supreme Court in *Mitchell v. H&R Block, Inc.*, 783 So.2d 12, 817 (Ala. 2000): "[T]he essence of the theories of unjust enrichment ... is that a Plaintiff can prove facts showing that Defendant holds money, which in equity and good conscience, belongs to the Plaintiff or holds money which was improperly paid to Defendant because of mistake or fraud." *See also Ammons v. Coffee County*, 716 So. 2d 1227 (Ala. Civ. App. 1998).

First, Watson argues, since plaintiffs have not stated a valid, independent claim against him, they cannot prevail on their unjust enrichment claim. Second, Watson contends, plaintiffs have not alleged in the complaint that Watson benefitted personally from the sale of Depo-Provera or

10

collected money from plaintiffs in exchange for this product. Watson repeats his contention that he

is not a "seller" of the product.

## II.    Plaintiffs' Response[12]

### A.    Standard of Review

This court must first determine if it has jurisdiction over the complaint. *See Cabalceta v.*

*Standard Fruit Co.*, 883 F.2d 1553, 1557 (11th Cir. 1989); *Univ. of South Alabama v. Am. Tobacco*

*Co.*, 168 F.3d 405, 410 (11th Cir. 1999). Strict construction of the removal statutes, plaintiffs argue,

is required. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 109 (1941); *Clay v. Brown &*

*Williamson Tobacco Corp.*, 77 F. Supp. 2d 1220 (M.D. Ala. 1999).

Further, plaintiffs argue, this court must construe all disputed questions of fact and

controlling substantive law in favor of plaintiffs on removal. *Coker v. Amoco Oil Co.*, 709 F.2d

1433, 1440-41 (11th Cir. 1983)("In determining whether joinder of a resident party has been

fraudulent, a district court evaluates the factual allegations in the light most favorable to the

plaintiff.").

The removing party, plaintiffs assert, bears a heavy burden in establishing fraudulent joinder.

The test for determining whether joinder of a defendant has been fraudulent is as follows:

> (1) [L]ook to see whether there is no possibility that plaintiff can establish any cause
> of action against the resident defendant; and

---

[12] Plaintiffs note their contemporaneous filing of a motion to remand for lack of jurisdiction. According to plaintiffs, the arguments in support of remand are identical to their response to dismissal. The motion to dismiss and motion to remand, plaintiffs contend, are "really just both sides of the same coin." By plaintiffs' account, if this court grants the motion to remand, the case will be due to be remanded without this court's consideration of the motion to dismiss. On the other hand, plaintiffs contend, if the court denies remand, the court must necessarily have determined plaintiffs had no possibility of establishing any cause of action against the resident defendant, thus requiring the granting of defendant's motion to dismiss.

11

(2) [L]ook to see whether plaintiff has fraudulently pled jurisdictional facts in order to bring the resident defendant into state court.

*See Cabalceta* at 1561. (Emphasis added). "When considering a motion for remand, federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law." *Fowler v. Provident Life & Accident Ins. Co.*, 256 F. Supp. 2d 1243, 1247 (N.D. Ala. 2003)(citation omitted). Further, *Fowler* provided: "The plaintiff need not have a winning case against the allegedly fraudulent defendant; she need only have a possibility of stating a valid cause of action in order for the joinder to be legitimate." *Id.* (citation omitted).

B.     Argument

1.     Plaintiffs Have Sufficient Evidence to Support an AEMLD Claim and a Common Law Negligence Claim Against Defendant, Charlie Watson.

Plaintiffs tout *Clay v. Brown & Williamson Tobacco Corp.*, 77 F. Supp. 2d 1220 (M.D. Ala. 1999) as analogous. In *Clay*, plaintiffs argue, the court held that plaintiff had an arguable claim against an account manager for defendant pursuant to the AEMLD because the account manager "had superior knowledge to that of the average consumer." *Id.* at 1224. Additionally, the *Clay* court found, additional discovery provided an arguable showing that the account manager "actively participated in the sale and distribution of Brown & Williamson tobacco products," which further bolstered plaintiff's AEMLD claim. In part, the *Clay* court relied on the following rationale from *Seaborn v. R.J. Reynolds Tobacco Co.*, No. 96-T-1540-N (M.D. Ala. 1996):[13]

> [Plaintiff] seeks to hold not only R.J. Reynolds liable under the AEMLD, he seeks to hold some of the company's individual employees—Tate, Huffman, McDermott, Hightower, and Hinson—liable as well. "In Alabama, the general rule is that officers or employees of a corporation are liable for torts in which they have personally participated, irrespective

---

[13] No copy of *Seaborn* has apparently been provided to this court.

12

of whether they were acting in a corporate capacity." *Ex parte Charles Bell Pontiac-Buick-Cadillac-GMC, Inc.*, 496 So.2d 774, 775 (Ala.1986) (citing *Candy H. v. Redemption Ranch, Inc.*, 563 F.Supp. 505, 513 (M.D.Ala. 1983)); see also *Chandler v. Hunter*, 340 So.2d 818, 822 (Ala.Civ.App. 1976). Obviously, to the extent R.J. Reynolds allegedly violated the AEMLD, it acted through its employees; the company does not employ ghosts. [Plaintiff] should be allowed to pursue these individual defendants, and, if, after discovery, it should turn out that he has named the wrong persons, he should be allowed to make substitutions.

In this case and its companion case, *Jenkins v. R.J. Reynolds Tobacco Co. No. 96-T-1489-N* (M.D. Ala. 1996), plaintiffs note, the court found no evidence of fraudulent joinder. Additionally, plaintiffs rely on the *Clay* court's statement: "Rule 11 recognizes that a Plaintiff may need additional discovery to establish an evidentiary basis for an allegation." *Id.* at 1224 (citing *Sellers v. Foremost Ins. Co.*, 924 F. Supp. 1116 (M.D. Ala. 1996)). The court found that plaintiff had met her burden pursuant to Rule 11 and believed that additional discovery could show that the account manager participated in the tort against the plaintiff due to his position with defendant tobacco company.

Here, plaintiffs assert, Watson is an account manager at McKesson, and Birmingham is part of his sales territory. In this capacity, plaintiffs argue, Watson sold, distributed and supplied medical and surgical equipment, i.e., Depo-Provera, to Mrs. Fowler. *See* Watson Decl.

Plaintiffs rely on "The Job Description of an Account Manager at McKesson Medical-Surgical" posted on McKesson's website, Pl. Ex. B. The job description, plaintiffs argue, lists the following responsibilities for McKesson Account Manager[14]:

- Selling products or services;
- Performing field promotion work and developing new accounts;
- Demonstrating products and/or services and providing assistance in the

---

[14] The McKesson website, plaintiffs note, lists openings for account managers in cities including LaCrosse and Madison, Wisconsin; Jacksonville, Florida; Portland, Oregon; etc. Plaintiffs contend that all the job descriptions for the locations listed are identical.

13

- best application of products or services;
- Answering all questions concerning products or services and referring questions as necessary;
- Investigating product/service warranty claims to ensure resolution within marketing policies;
- Contacting prospects and explaining features and merits of products or services offered, utilizing persuasive sales techniques.

*See* Pl. Ex. B.

According to plaintiffs, Watson has superior knowledge of Depo-Provera compared to the average consumer, since his job duties include demonstrating the products/services, providing assistance in the best application of the products/services, and explaining the features and merits of the products/services offered. Moreover, plaintiffs argue, in this case they have stronger support for their claims against Watson than the *Clay* plaintiff since they already have proof of Watson's superior knowledge to that of the average consumer regarding Depo-Provera (as evidenced by the foregoing job description).

The AEMLD claim against Watson, plaintiffs contend, is "particularly strong considering that part of Mr. Watson's job description provides for him to 'demonstrate products and/or services and provide assistance in the best application of product or services.'" Plaintiffs further argue:

> In this case, the product Depo-Provera, was used for a purpose or application other than the purpose or application for which it had been approved by the Food and Drug Administration (hereinafter FDA). Therefore, through Mr. Watson's assistance with the best application of Depo-Provera, the plaintiff, Margie Fowler was given Depo-Provera for a purpose other than the purpose for which it had been approved by the FDA.[15]

In the complaint, plaintiffs assert, they clearly alleged that Watson was engaged in the business of marketing, selling, advertising, supplying, and distributing Depo-Provera, that the

---

[15] This allegation, the court notes, does not appear to be contained in the complaint.

14

product was defective and unreasonably dangerous, and that as a result Fowler was injured. Plaintiffs repeat the general content of their AEMLD and negligence claims.[16]

Lastly, plaintiffs argue, a corporation's employees are liable for torts in which they personally participated, even if they were acting in a corporate capacity. *See Ex Part Charles Bell Pontiac-Buick-Cadillac-GMC, Inc.*, 496 So. 2d 774, 775 (Ala. 1986). According to plaintiffs, McKesson could not violate the AEMLD on its own; rather, it had to act through its employees. Moreover, plaintiffs add, Watson committed negligence beyond the bounds of the AEMLD.

2.    The Defendant's Argument for Removal Lacks Legal Support.

Plaintiffs attempt to distinguish *In re Baycol* and *In re Rezulin*. According to plaintiffs, these cases represent the opinions of the Minnesota and New York federal district courts, respectively, interpreting Alabama law and thus should not be treated as controlling or given weight in this case. Further, plaintiffs contend, *In re Baycol* involved affidavits from the non-diverse defendants that they were not sellers, manufacturers, developers, or testers of the drug Baycol, and the reported opinion indicates that the *In re Baycol* plaintiffs had no evidentiary support to contradict these affidavits. On the other hand, plaintiffs argue, they possess evidence to contradict Watson's affidavit. Although in *In re Rezulin*, plaintiffs assert, the sales representatives were held to be fraudulently joined, here Watson is not a sales representative but rather an account manager with superior knowledge. Again, plaintiffs rely on *Clay, supra*.

Moreover, plaintiffs contend, defendant mistakenly relies on *Walls v. Alpharma USPD, Inc.*. According to plaintiffs, *Walls* held that a pharmacist does not have a duty to warn a customer or ultimate customer of risks or side effects pursuant to the learned-intermediary doctrine. However,

---

[16] The court has summarized the complaint *supra*.

15

plaintiffs argue, *Walls* neither limits an account manager's duty to warn nor forecloses

AEMLD/common law negligence claims against an account manager with superior knowledge and

active involvement in the sale/distribution of a product. Furthermore, plaintiffs contend, the

pharmacist in *Walls* did not work directly for the manufacturer, distributor, supplier, advertiser, or

seller of the drug made the basis of the lawsuit, unlike Watson, who works directly for McKesson

(which allegedly distributed, supplied, advertised and sold Depo-Provera.)

III.    **Defendant Watson's Reply**

First, Watson argues, plaintiffs' reliance on *Clay v. Brown & Williamson Tobacco Corp.* is

misplaced. While *Clay* involved cigarettes and a defendant who worked for the actual manufacturer,

the Fowler case involves a prescription medication and a defendant who worked for a distributor.

Further, Watson reminds the court, the Alabama Supreme Court recently applied the learned-

intermediary doctrine to pharmacists in *Walls, see supra*. According to Watson, *Walls* expanded

and reinforced the exception to AEMLD liability in cases arising from the use of prescription

medications where the only duty to warn runs from the manufacturer to the patient's doctor.[17] *Walls*,

Watson argues, clarified that the learned intermediary doctrine forecloses the existence of a duty to

_____

[17] In *Stone v. Smith, Kline & French Laboratories*, 731 F.2d at 1575 (11th Cir. 1984), Watson notes, the Eleventh Circuit certified to the Alabama Supreme Court the question of whether an adequate warning to the prescribing physician but not to the ultimate consumer was sufficient as a matter of law. The Alabama Supreme Court in *Stone v. Smith, Kline & French Laboratories*, 447 So. 2d 1301 (Ala. 1984) adopted the Fifth Circuit's learned-intermediary doctrine, which held that pharmaceutical companies who were selling prescription drugs only had a duty to warn the prescribing doctor. According to Watson, the *Walls* court cited with approval language from the *Stone* opinion that imposing a duty to warn on a pharmacist would intrude on the doctor/patient relationship and force the pharmacist to practice medicine without a license, and such reasoning should apply with equal force to Watson. Furthermore, Watson notes, *Walls* also cited language from other courts to the effect that it would be illogical to impose a greater duty on the pharmacist than on the manufacturer. By defendants' account, this same argument should apply to the account manager of a distributor.

16

warn, and thereby any AEMLD and negligence claim, against someone other than the manufacturer.

As in the instant case, *Walls* involved injuries resulting from a prescription drug. According to Watson, the fact that the product could only be obtained by prescription from a licensed physician led the Supreme Court to apply the learned-intermediary doctrine. Watson again quotes *Walls* and criticizes plaintiffs' position that *Walls* is inapplicable.[18]

In the instant case, Watson argues, the complaint alleges that Depo-Provera was commonly prescribed and that plaintiff was given injections by a licensed health care provider in a clinical setting. Plaintiffs' representation to the court that Watson sold Depo-Provera "to the plaintiff in this case," Watson contends, is false, since his affidavit confirms that he never had contact or dealings with the Fowlers, that he is not a physician or pharmacist, and that he never prescribed or filled a prescription for Depo-Provera. As an employee of the distributor, Watson alleged, his role was limited to taking orders from physicians' offices then shipping any orders for Depo-Provera. According to Watson, he was not involved in the doctor's decision to administer or prescribe Depo-Provera to Mrs. Fowler or in the sale of the product to the plaintiffs. Moreover, Watson points out, Watson has confirmed that he has "not made any statements to the general public or participated in any advertising or promotion to the general public concerning Depo-Provera."

Watson again asserts that the *Walls* rationale regarding prescription drugs as an exception to the Restatement's general rule "is even more applicable in the case at bar" and reasons as follows: "If the manufacturer's duty to warn flows only to the learned-intermediary physician and if other parties, without the medical education or knowledge of the medical history of the patient, would be liable for interfering in the physician-patient relationship should advice be given to the patient, then

---

[18] As indicated, this court feels that defendant over-emphasizes the significance of *Walls*.

17

it is abundantly clear that ...Watson, as an account manager of a *distributor*, owed no duty to the Plaintiffs and cannot be subject to potential liability under Alabama law."

This court, Watson argues, should not hold that he owed a duty to consumers he had never met and had no way to meet simply because his employer's website states that he is to demonstrate products and provide assistance. Any such holding, Watson contends, would be contrary to the AEMLD's purpose stated in *Atkins v. American Motors Corporation*, 335 So. 2d 134, 139 (Alabama 1976): "[The AEMLD is founded on] broader moral notions of consumer protection and on economic and social grounds, placing the burden to compensate for loss incurred by defective products on the one best able to prevent the distribution of these products." As neither the manufacturer nor seller of Depo-Provera, Watson argues, he is not the "one best able to prevent the distribution of the product." *See In Re Rezulin* at 287-88 (S.D.N.Y. 2001).[19]

Despite plaintiffs' argument to the contrary, Watson asserts, *In re Rezulin* and *In re Baycol*, *see supra*, should be given weight, as both federal courts were applying Alabama law. Watson reminds this court of the *Erie* rule, i.e., federal courts exercising diversity jurisdiction must apply the law of the state as interpreted by the state's highest court, and in the absence of state court precedent, the federal court must ascertain and apply state law as the court would if faced with a similar case. Unlike *Clay* (plaintiffs' supporting case), Watson argues, *In re Rezulin* and *In re Baycol* directly address AEMLD and negligence claims against sales representatives in cases involving prescription drugs. Notably, Watson asserts, plaintiffs have offered nothing to contradict the holdings of these cases except Watson's position as an account manager rather than a sales

---

[19] A threshold element of recovery under AEMLD, Watson repeats, is that plaintiff must prove that the defendant "manufactured and/or sold the allegedly defective product." *See Turner v. Azalea Box Co.*, 508 So. 2d 253, 254 (Ala. 1987).

18

representative. While plaintiffs suggest that Watson's title as an account manager somehow elevates him in the distribution chain, Watson argues, it is clear that he merely takes orders from physicians' offices.

In interpreting Alabama law, Watson contends, *In re Rezulin* and *In re Baycol* held that no cause of action was stated against sales representatives sued with respect to prescription drugs. *Rezulin* found the sales representative in that case had not manufactured, sold, or supplied the drug but was rather "an agent of the manufacturer and seller." Citing *Atkins*, the *Rezulin* court explained: "As a corporate employee, he [the sales representative] was 'not the one best able' to prevent the sale of defective drugs. In light of the Alabama Supreme Court's clear explanation of the AEMLD's scope and purpose, there is no reasonable basis for supposing that it would impose liability on the sales representatives in this case."

Since he did not manufacture or sell Depo-Provera, Watson argues, plaintiffs can state no possible negligence claim against him. Watson reiterates his position that the negligence claim embodied in Count II is redundant. Furthermore, Watson concludes, *Walls* confirmed that a negligence count cannot lie against Watson. In answering the certified questions, Watson argues, the Alabama Supreme Court held that, pursuant to the learned-intermediary doctrine, only the prescribing physician had a duty under a common law negligence theory.[20]

---

[20] This court quotes the specific holding in *Walls*:

> On the basis of the foregoing authority and persuasive authority, we hold as follows. The learned-intermediary doctrine forecloses any duty upon a pharmacist filling a physician's prescription, valid and regular on its face, to warn the physician's patient, the pharmacist's customer, or any other ultimate consumer of the risks or potential side effects of the prescribed medication except insofar as the prescription orders, or an applicable statute or regulation expressly requires, that an instruction or warning be included on the label of the dispensed

19

Since plaintiffs' opposition only addressed Counts I and II (AEMLD and negligence) and

made no attempt to oppose dismissal of Counts III, IV, or V (breaches of warranty and damages),

Watson argues, Counts III, IV, and V are due to be dismissed for the reasons set forth above.[21]

## MOTION TO REMAND

I.    Plaintiffs' Motion

    Plaintiffs' arguments in favor of remand appear to be identical to those set forth in their

response to the motion to dismiss. *See supra.*

II.    Defendant P&U Co.'s Response[22]

    A.    Summary of Argument

    Since plaintiffs' motion to remand only addresses AEMLD and negligence, P&U Co. argues,

---

medication or be otherwise delivered. To the extent that the learned-intermediary
doctrine applies, foreseeability of injury is eliminated as a basis for liability upon
the pharmacist. To the extent that the learned-intermediary doctrine applies, the
duty to determine whether the medication as prescribed is dangerously defective
is owed by the prescribing physician and not by the pharmacist filling the
prescription. Any question of what persons are due the duty owed by the
prescribing physician is not before us. Accordingly, both questions certified to us
are answered in the negative.

[21] Incidentally, this court notes, plaintiffs also have not addressed Count VI (unjust
enrichment) and Count VII (loss of consortium). Defendant Watson addressed Count VI, *supra*,
but not Count VII.

[22] Defendant P&U Co. filed the opposition to plaintiffs' motion to remand. P&U Co.
refers generally to arguments in its Notice of Removal. The court has considered fully but does
not set forth here the contents of the Notice of Removal.

Additionally, this court notes, P&U Co. has filed a supplemental opposition to remand on
June 4, 2004. In its supplemental submission, P&U Co. contends that the right to remove is
determined by the plaintiffs' pleading at the time of the petition for removal. *See Cabalceta v.
Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989). As such, P&U Co. argues, this court
cannot rely on the Fowlers' post-removal amendment to their complaint in determining subject
matter jurisdiction.

only those claims have been addressed here. P&U Co. argues that Watson was fraudulently joined. The complaint, P&U Co. points out, contains a single specific reference to Watson in paragraph four, wherein it alleges that he "sold or distributed" Depo Provera on behalf of McKesson. Therefore, P&U Co. contends, there is not even an allegation that Watson sold or distributed the Depo Provera received by plaintiffs.

Watson worked for McKesson Medical-Surgical, P&U Co. alleges, which did not manufacture the product but merely distributed it. According to P&U Co., Watson had no dealings with patients or knowledge/information about patients' medical histories, symptoms, prognoses, or courses of treatment. Significantly, P&U Co. argues, Watson had no interaction with the Fowlers.

P&U Co. criticizes plaintiffs' reliance on tobacco-related cases. Under the law, P&U Co. contends, tobacco is not treated in the same manner as prescription medications, and that distinction proves fatal to plaintiffs' argument.

Under Alabama law, P&U Co. argues, prescription medications are treated as "unavoidably unsafe products" as described in Comment k to Section 402 of the Restatement of Torts (Second). According to P&U Co., prescription medications are "neither defective nor unreasonably dangerous if such a product is properly prepared and is accompanied by proper directions and warnings." See Stone at 1302. P&U Co. repeats the substance of the learned intermediary doctrine as applicable to prescription drugs. See Walls at *2. Only prescription medications, P&U Co. contends, are governed by the learned intermediary doctrine. P&U Co. quotes the Stone case as follows: "[W]e cannot quarrel with the general proposition that where prescription drugs are concerned, the manufacturer's duty to warn is limited to an obligation to advise the prescribing physician of any potential dangers that may result from the drug's use. This special standard for prescription drugs

21

is an *understandable exception to the Restatement's general rule* that one who markets the goods must warn foreseeable ultimate users of dangers inherent in his products." (Emphasis added). P&U Co. argues that the collective authority of *Walls*, *In re: Baycol*, and *In re Rezulin* should govern the fraudulent joinder issue rather than the *Clay* case (involving tobacco).

When faced with a fraudulent joinder issue, P&U Co. argues, this court should "pierc[e] the pleadings and consider[] summary judgment-type evidence such as affidavits and deposition testimony." *See Sellers v. Foremost Ins. Co.*, 924 F. Supp. 1116, 1118 (M.D. Ala. 1996)(citation omitted). *Sellers* further provided: "Tolerance of factual contentions . . . when specifically identified as made on information and belief does not relieve litigants from the obligation to conduct an appropriate investigation into the facts that is reasonable under the circumstances; it is not a license to join parties [or] make claims . . . without any factual basis or justification."(quoting F.R.C.P. 11, Comm. Notes).

B.    **Responsive Argument**

The *Rezulin* and *Baycol* courts, P&U Co argues, considered Alabama law. According to P&U Co., plaintiffs have not attempted to distinguish those cases. Both cases involved individual employees of prescription drug manufacturers, P&U Co. points out, making those individual employees substantially closer to the manufacture of the product at issue than Watson (who was the employee of a commercial distributor of the product). P&U Co. again highlights *Rezulin*'s assessment of the sales representative: "As a corporate employee, he was not 'the one best able' to prevent sales of defective drugs. In light of the Alabama Supreme Court's clear explanation of the AEMLD's scope and purpose, there is no reasonable basis for supposing that it would impose liability on the sales representative in this case."

22

Furthermore, P&U Co. argues, plaintiffs have not acknowledged the *Bowman v. Coleman* decision (No. 96-0448-P-C)(S.D. Ala. 1996), which held that a salesperson was fraudulently joined under AEMLD and negligence theories because (1) "the policy goals underlying the AEMLD would not be advanced in any way by holding persons . . . liable in their role as . . . sales representatives" and (2) the salesperson was "neither a seller nor a manufacturer." Finally, P&U Co. argues, the Fowlers have not adequately distinguished *Walls*.

According to P&U Co., plaintiffs have failed to show Watson's involvement in Mrs. Fowler's prescription and failed to present evidence of Watson personally participating in any tort against them. Instead, P&U Co. argues: "[P]laintiffs coyly try to avoid this considerable problem in their pleadings by citing to generic information describing similar employees' job responsibilities downloaded from the internet. Further, by taking bits and pieces of information from this website, they make the incredible suggestion that Mr. Watson was responsible for the plaintiffs' receipt of the product at issue for a purpose *other* than that provided in the FDA-approved labeling accompanying the product—an allegation completely absent from the complaint." In this vein, P&U Co. repeats information from Watson's affidavit. *See supra*.

Moreover, P&U Co. argues, the *Clay* court's finding of "superior knowledge" of a tobacco account manager is irrelevant to this case, since Depo Provera is a prescription drug. In *Clay*, P&U Co. contends, the court concluded that tobacco managers were not fraudulently joined in a cigarette products liability action since they were "likely to hold some superior knowledge regarding the nature of cigarettes." *See* 77 F. Supp. 2d at 1224. In the pharmaceutical context, P&U Co. asserts, the element of "superior knowledge" of a sales representative, or even a pharmacist, is irrelevant. P&U Co. argues: "Anyone of legal age may walk into numerous retail establishments and purchase

23

cigarettes if they so choose. This stands in stark contrast to the manner in which one obtains a prescription medications, ..., [i.e.,] only ... from licensed physicians. These physicians' decisions on whether or not to prescribe a given medication depend upon a host of factors based upon their training, experience, and a patient's unique needs."[23]

Defendant P&U Co. repeats the reasoning and holding of *Walls* and argues: "If a pharmacist, who has actual contact with the patient, has not duty to warn a consumer under Alabama tort law, how could any such duty exist for a distributor who has no contact with the ultimate consumer?"[24] This court, P&U Co. argues, should disregard plaintiffs' attempts to circumscribe the *Walls* holding. According to P&U Co., it is the type of product at issue in *Walls* that drove the court to conclude that the learned intermediary doctrine exempts from the duty to warn non-physicians in the chain of distribution. In fact, defendant argues, *Walls* undermines every aspect of plaintiffs' argument that they may be able to make a case against Watson for allegedly possessing superior knowledge and

---

[23] P&U Co. quotes *Walls* as follows:

> [F]or it is only the physician who can relate the propensities of the drug to the physical idiosyncracies of the patient. 'It is the physician who is in the best position to decide when to use and how and when to inform his patient regarding risks and benefits pertaining to drug therapy.'

> Neither the manufacturer nor pharmacist has the medical education or knowledge of the medical history of the patient which would justify a judicial imposition of a duty to intrude into the physician-patient relationship. In deciding whether to use the prescription drug, the patient relies primarily on the expertise and judgment of the physician. Proper weighing of the risks and benefits of the proposed drug treatment and determining what facts to tell the patient about the drug requires an individualized medical judgment based on knowledge of the patient and his or her medical condition.

[24] This court is of the opinion that the issue here is contact with the pharmacist and/or the physician, not the consumer.

24

participating in the sale and distribution. These precise arguments, P&U Co. asserts, were rejected by *Walls*. Although the pharmacist in *Walls* had superior knowledge and participated in the sale and distribution of the drug, P&U Co. argues, the *Walls* court still refused to impose liability. Thus, P&U Co. concludes, Watson cannot be liable even if he proved that he did have superior knowledge and participated in the sale and distribution of the Depo-Provera allegedly administered to Mrs. Fowler.

III.    Plaintiffs' Reply[25]

    A.    <u>Plaintiffs Have Shown That Watson Was Involved in Fowler Receiving Depo-Provera</u>

Relying on an amended complaint served on May 28, 2004,[26] plaintiffs argue, they have specifically alleged that Watson is liable pursuant to Alabama common law theories of negligence/wantonness for promoting Depo Provera for an off-label use not approved by the FDA.[27]

---

[25] The Fowlers highlight the holding in *Triggs v. John Crump Toyota*, 154 F.3d 1284 (11th Cir. 1998): "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." *Triggs* further stated: "The plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a possibility of stating a valid cause of action in order for the joinder to be legitimate."

[26] *See* Pl. Reply, Ex. A.

[27] The amended complaint alleges:

    At the time of the time of the incident made the basis of this lawsuit, Watson negligently, wantonly, and intentionally, promoted the use of the drug Depo Provera to a group of doctors who practiced under the name Henderson Walton Women's Center (Hereinafter Henderson Walton) for use by the physicians at Henderson Walton for administration to their patients, including ... Margie Fowler, for the management of the condition known as endometriosis.

    Watson communicated with the physicians and staff at Henderson Walton on a direct one-to-one basis and promoted the sale of Depo Provera. In the course of this promotion Defendant Watson advised the physicians as to the applications and uses of

According to plaintiffs, Henderson Walton is still Watson's client, and Watson used the following means to promote Depo Provera to the physicians at Henderson Walton: direct one-to-one communication with those physicians; field promotion work and aggressive development of new accounts and growing existing accounts; assistance in the best application of Depo-Provera to Henderson Walton physicians; explanation of the features/merits of Depo Provera to such physicians; and use of persuasive sales techniques. As an account manager for Depo Provera, the

the product utilizing product promotional literature, "personal persuasive sales techniques," and provided other incentives to promote sales of the subject drug the treatment and management of endometriosis.

Watson engaged in these promotional efforts on a personal and individual basis and served to gain financially from such promotion. At the time these promotional efforts were undertaken, Watson knew or had reason to know that the Drug Depo Provera was not (nor is the drug currently) approved by the FDA for the management of endometriosis but was only approved by the FDA and, as per the drug warning label published by the drug manufacturer, indicated only for the prevention of pregnancy. The promotion of the drug for a purpose not approved by the FDA was in direct violation of the Food, Drug, and Cosmetic Act.

Said negligently, wanton, reckless and intentional promotion of this drug caused and/or contributed to the administration of Depo Provera of Plaintiff, Margie Fowler, which proximately caused the plaintiff to suffer a stroke.

Plaintiffs, this court notes, rely upon the affidavit of one of their attorneys in the case, Ms. Harrington. Ms. Harrington's affidavit provided:

Prior to filing this action, I called the office of the physician who administered the drug, Depo Provera (the drug which is the subject of the above case) to Margie Fowler. I asked the individual in charge of purchasing this medication, for the name of the company from which Ms. Fowler's physician obtained the Depo-Provera. I was told the drug was purchased for all the doctors at Henderson Walton Women's Clinic from the McKesson Corporation. I asked if that was where they would have purchased the drug from in 2001 and 2002 and was told yes. I contacted McKesson Corporation and asked the name of the person who was responsible for the sale of Depo-Provera to the Henderson Walton Women's Clinic in Birmingham, Alabama. I was told Charlie Watson.

26

Fowlers argue, Watson knew or had reason to know that Depo Provera was not FDA-approved for the treatment of endometriosis. Plaintiffs contend that Watson should not have promoted this use of Depo Provera and/or should have informed the physicians at Henderson Walton that Depo Provera was not approved for this use.

**B.    Defendants' Caselaw Is Neither Applicable Nor Relevant**

First, the Fowlers argue, *In re Rezulin* is distinguishable because it involved a sales representative. In the instant case, plaintiffs emphasize, Watson is an account manager rather than a sales representative.[28] Furthermore, the Fowlers argue, *In re Rezulin* did not state that liability could not be imposed on a pharmaceutical sales representative pursuant to the AEMLD; instead, the *Rezulin* court concluded that the Alabama Supreme Court would not impose liability pursuant to the AEMLD on the particular sales representative in that case. Additionally, plaintiffs argue, the *Rezulin* court did not address whether plaintiff had a negligence claim against the defendant sales representative. Most importantly, the Fowlers contend, the *Rezulin* court based its finding of fraudulent joinder on the facts that the plaintiff did not respond the affidavit filed by defendant sales representative, that the plaintiff had not shown that the sales representative sold the defective product to the decedent or decedent's doctor, that the plaintiff had not established the connection needed between the decedent and the sales representative to support a claim for fraud or fraudulent suppression, and that the sales representative at issue was not "the one best able" to prevent sales of defective drugs. Here, plaintiffs argue, those factors are not present, since plaintiffs (1) have responded to and contradicted Watson's affidavit by using McKesson's own website and (2) did not

---

[28] According to plaintiff, the McKesson website describes account managers and sales representatives as two separate positions. *See* Pl. Reply, Ex. C.

plead a fraud count in their complaint against Watson. Finally, plaintiffs assert, as an account manager (and pursuant to his job description) "Watson's superior knowledge would have made him highly capable of preventing the sale of defective drugs and/or the improper use of a drug." In reliance on the posted job description, plaintiff contend that Watson had one to one contact with the Henderson Walton physicians and therefore would have received first hand knowledge of reports from those physician's patients if there had been problems with Depo Provera. Plaintiffs ask: "Who better for the company to rely on but their own account manager for information as to whether a product is useful and effective or defective?"

According to plaintiff, *In re Baycol* represents a decision of a foreign court which has admitted that "no Alabama state court decision specifically addresses whether a district manager of sales manager could be held liable under the AEMLD." Notably, plaintiffs argue, the *Baycol* court found the district manager and sales manager not liable while admitting the absence of an Alabama state court decision upon which to base its finding.

Furthermore, the Fowlers argue, *Bowman v. Coleman* (relied upon in *Baycol*) is distinguishable. In that case, the plaintiff sued the store manager of Lowe's along with Lowe's Home Centers, Inc. and Coleman Company, Inc. because a Coleman heater purchased at Lowe's malfunctioned. According to the Fowlers, an account manager at McKesson and a store manager at Lowe's are not comparable "due to the difference in each one's educational background and knowledge of their products." In this vein, plaintiffs contend:

> A store manager at Lowe's may or may not have a college degree. A four year college degree is required of an account manager at McKesson. A store manager at Lowe's sells a greater number as well as a wider variety of products than an account manager at McKesson. Therefore, there is no way that a store manager at Lowe's could have the superior knowledge to be able to demonstrate every produce or service that his store offers nor could he provide assistance in the best application of

28

every product which Lowe's carries. However, being able to demonstrate products and/or services as well as provide assistance in the best application of those products and services is part of Defendant Watson's job. He is able to accomplish those tasks because he only sells, supplies, and distributes medical and surgical products.

Additionally, plaintiffs note, the *Baycol* court also relied on the affidavits which the defendant district manager and sales manager supplied in that case and in *In re Rezulin*. The Fowlers reiterate that they have responded to Watson's affidavit and shown, via his employer's website, that the affidavit is not accurate with respect to Watson's job description and duties.

Finally, plaintiffs assert, *Walls* is inapposite based on the same reasons asserted *supra*. Fowler also disputes P&U Co.'s statement that "Only prescription medications—not other products, including tobacco—are governed by the learned intermediary doctrine"; instead, Fowler argues, the learned intermediary doctrine would involve complex products, which include tobacco and tobacco litigation. Plaintiffs reiterate that the *Walls* court specifically answered a very limited question regarding pharmacists and thus only applies to pharmacists and not to account managers or sales representatives of drug companies.

### CONCLUSIONS OF THE COURT

This case represents the usual tension between what has been called this court's "unflagging" duty to exercise its jurisdiction when present[29] and the admonishments against accepting diversity jurisdiction when there are "possible" claims against non-diverse defendants. The difficulty of resolving such tension is exacerbated by the effort of each side to stretch every possible nuance from every possible case. One would think that the difference might be whether a party will remain on death row or freed to return to the idyllic confines of a country home.

---

[29] *See Moorer v. Demopolis Waterworks and Sewer Bd.*, 2004 WL 1300156 (11th Cir. 2004)(quoting *Colorado River Water Conservation Dist. v. U.S.*, 96 S. Ct. 1236 (1976)).

A further feature of this dilemma is the fact that the issue is supposed to be decided based upon objective standards but is usually influenced by the deciding courts' subjective leanings. It is tempting to quickly dispose of a case on a non-appealable basis.

Surely, as always, this court must look for some solution which does not lend itself to either arbitrariness or capriciousness. The court assumes that in this context, "possible" means more than such a possibility that a designated residence can be hit by a meteor tonight. It is possible. Surely, as in other instances, reason and common sense have some role. Surely, in the absence of total hostility toward diversity jurisdiction, the mere naming of purely adjunct parties is not sufficient to defeat it. With these thoughts and the admonitions of controlling courts in mind, this court will attempt to resolve the issues here.

The parties have not cited any directly applicable Alabama or controlling federal court cases. This court is satisfied, based upon the cases which have been cited, that there is no possibility of recovery on the claims asserted here against Watson unless there is evidence that he personally and actively sold or promoted the alleged product to applicable pharmacies or physicians after he had knowledge that the product was dangerous or defective or after he had knowledge that warnings had not been otherwise appropriately given. Here, there is no such allegation and certainly no substantial evidence to rebut evidence to the contrary.

This court is not persuaded, to any extent, by *Walls*. On the other hand, this court is at least partially persuaded by the *Rezulin* and *Baycol* cases. Those courts perhaps go further than this court would go in that they may exclude claims against even active, knowledgeable sales representatives (or account managers). While those are likely correctly holdings with regard to AEMLD claims, they may not be appropriate for failure to warn or suppression claims. Here, however, there is no

30

sufficient allegation or evidence to support the latter type claims.[30]

The motion to dismiss will be granted. The motion to remand will be denied.[31]

This _____ of June, 2004.

ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE

---

[30] This case is to be decided based on the allegations in the complaint at the time of removal, not as later amended.

[31] Plaintiffs have agreed that an adverse ruling on one calls for an adverse ruling on the other.

31

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| CLIFFORD BAILEY, CLIFFORD BLACK, | * | |
| WESLEY CALHOUN, CURTIS DEASON, | * | |
| RUTH GRAVES, MICKEY GRIZZARD, | * | |
| JIMMY PERRY, HERBERT STANLEY | * | |
| SIKES, and PHILLIP THOMPSON, | * | |
| | * | |
| Plaintiffs, | * | CASE NUMBER: CV- |
| v. | * | |
| | * | |
| MERCK & CO., INC., a foreign or | * | |
| domestic Corporation, DAVID | * | |
| SPARKMAN, KATHERINE HOLMES, | * | |
| LORI LOVETT, SCOTT BARTLETT, | * | |
| CORAL HARPER, MELISSA SANTIAGO, | * | |
| HENRY MITCHAM, JERRY PHARR, | * | |
| JASON DELK, CHARLES HENDERSON, | * | |
| JAMES HOUSTON, JULIE MELTON, | * | |
| JULIE HODGES, and MELISSA | * | |
| BAUER, NATASHA WALKER- | * | Removed from the |
| MCGLOTHAN, RANDY WALLS, and the | * | Circuit Court of |
| Defendants A, B, C, D, E, X & Z whether | * | Randolph County, Alabama |
| singular or plural, being those persons, | * | (CV-06-145) |
| firms or entities who or which | * | |
| proximately caused or contributed to the | * | |
| Plaintiff's personal injury and Plaintiff's | * | |
| other harm and the other | * | |
| damages as complained of herein whose | * | |
| true names are unknown to the Plaintiffs | * | |
| but will be added by amendment when | * | |
| correctly ascertained, | * | |
| | | |
| Defendants. | | |

## DECLARATION OF SCOTT BARTLETT

1.      My name is Scott Bartlett.  I am over twenty-one years of age, am

of sound mind, and am competent to make this Declaration.  This Declaration is based

upon my personal knowledge.



2.    I currently reside in Newnan, Georgia and have resided in the State of Georgia for approximately eleven years.

3.    At no time did I ever provide Vioxx® ("Vioxx") or information concerning Vioxx directly to Clifford Bailey, Clifford Black, Wesley Calhoun, Curtis Deason, Ruth Graves, Mickey Grizzard, Jimmy Perry, Herbert Stanley Sikes, or Phillip Thompson.

4.    I am not a physician, and have therefore never prescribed Vioxx. I am also not a pharmacist and I have therefore never written or filled a prescription for Vioxx as a pharmacist. The information that I used during the course of my employment was provided to me by my employer.   Specifically, Merck provided me with the FDA-approved prescribing information and the other information I used in speaking with physicians about Vioxx. I had no involvement in the development or preparation of prescribing information for Vioxx, and did not have responsibility for the content or other written warnings concerning Vioxx contained in other information provided to me by my employer. I was not expected, as a Professional Representative, to conduct independent research regarding drugs I detailed. I was not expected to review independent scientific studies published in journals unless Merck supplied them to me.

5.    At no time did I have any involvement at all with the manufacture, development, or testing of Vioxx. The physicians with whom I dealt and on whom I called in my job were highly skilled professionals. They were, in my judgment and to the best of my knowledge, in a better position than I to make determinations concerning prescribing Vioxx. I had no discussions at all at any time with any patients of any of the physicians on whom I called regarding Vioxx.

2

6.     At no time did I ever sell, offer to sell or take orders for the sale of Vioxx to patients.  Physicians upon whom I would call would write their prescriptions for Vioxx based upon their own independent medical knowledge and judgment and I would not have direct knowledge of any specific prescriptions these physicians may have written for individual patients including, but not limited to, Clifford Bailey, Clifford Black, Wesley Calhoun, Curtis Deason, Ruth Graves, Mickey Grizzard, Jimmy Perry, Herbert Stanley Sikes, and Phillip Thompson.

7.     I made no knowing misrepresentations concerning the safety or efficacy of Vioxx and acted in good faith at all times in my dealings with physicians who may have prescribed Vioxx.

8.     I have never participated in, nor was I ever instructed or trained, nor did I ever receive any materials relating to any "Dodgeball program."

9.     I have never met nor spoken with Clifford Bailey, Clifford Black, Wesley Calhoun, Curtis Deason, Ruth Graves, Mickey Grizzard, Jimmy Perry, Herbert Stanley Sikes, or Phillip Thompson.

10.     I have never made any presentations to the general public regarding Vioxx.


Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 24, 2006.

_____
Scott Bartlett

3

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| CLIFFORD BAILEY, CLIFFORD BLACK, WESLEY CALHOUN, CURTIS DEASON, RUTH GRAVES, MICKEY GRIZZARD, JIMMY PERRY, HERBERT STANLEY SIKES, and PHILLIP THOMPSON, | * * * * * * | |
| Plaintiffs, | * * | CASE NUMBER: CV- |
| v. | * * | |
| MERCK & CO., INC., a foreign or domestic Corporation, DAVID SPARKMAN, KATHERINE HOLMES, LORI LOVETT, SCOTT BARTLETT, CORAL HARPER, MELISSA SANTIAGO, HENRY MITCHAM, JERRY PHARR, JASON DELK, CHARLES HENDERSON, JAMES HOUSTON, JULIE MELTON, JULIE HODGES, and MELISSA BAUER, NATASHA WALKER-MCGLOTHAN, RANDY WALLS, and the Defendants A, B, C, D, E, X & Z whether singular or plural, being those persons, firms or entities who or which proximately caused or contributed to the Plaintiff's personal injury and Plaintiff's other harm and the other damages as complained of herein whose true names are unknown to the Plaintiffs but will be added by amendment when correctly ascertained, | * * * * * * * * * * * * * * * * * * * | Removed from the Circuit Court of Randolph County, Alabama (CV-06-145) |
| Defendants. | | |

## DECLARATION OF HENRY MITCHAM

1.    My name is Henry Mitcham.  I am over twenty-one years of age, am of sound mind, and am competent to make this Declaration.  This Declaration is based upon my personal knowledge.

2.    I currently reside in Warm Springs, Georgia and have resided in the State of Georgia for approximately thirty-nine years.

3.    At no time did I ever provide Vioxx® ("Vioxx") or information concerning Vioxx directly to Clifford Bailey, Clifford Black, Wesley Calhoun, Curtis Deason, Ruth Graves, Mickey Grizzard, Jimmy Perry, Herbert Stanley Sikes, or Phillip Thompson.

4.    I am not a physician, and have therefore never prescribed Vioxx. I am also not a pharmacist and I have therefore never written or filled a prescription for Vioxx as a pharmacist. The information that I used during the course of my employment was provided to me by my employer. Specifically, Merck provided me with the FDA-approved prescribing information and the other information I used in speaking with physicians about Vioxx. I had no involvement in the development or preparation of prescribing information for Vioxx, and did not have responsibility for the content or other written warnings concerning Vioxx contained in other information provided to me by my employer. I was not expected, as a Professional Representative, to conduct independent research regarding drugs I detailed. I was not expected to review independent scientific studies published in journals unless Merck supplied them to me.

5.    At no time did I have any involvement at all with the manufacture, development, or testing of Vioxx. The physicians with whom I dealt and on whom I called in my job were highly skilled professionals. They were, in my judgment and to the best of my knowledge, in a better position than I to make determinations concerning prescribing Vioxx. I had no discussions at all at any time with any patients of any of the physicians on whom I called regarding Vioxx.

2

6.    At no time did I ever sell, offer to sell or take orders for the sale of Vioxx to patients. Physicians upon whom I would call would write their prescriptions for Vioxx based upon their own independent medical knowledge and judgment and I would not have direct knowledge of any specific prescriptions these physicians may have written for individual patients including, but not limited to, Clifford Bailey, Clifford Black, Wesley Calhoun, Curtis Deason, Ruth Graves, Mickey Grizzard, Jimmy Perry, Herbert Stanley Sikes, and Phillip Thompson.

7.    I made no knowing misrepresentations concerning the safety or efficacy of Vioxx and acted in good faith at all times in my dealings with physicians who may have prescribed Vioxx.

8.    I have never participated in, nor was I ever instructed or trained, nor did I ever receive any materials relating to any "Dodgeball program."

9.    I have never met nor spoken with Clifford Bailey, Clifford Black, Wesley Calhoun, Curtis Deason, Ruth Graves, Mickey Grizzard, Jimmy Perry, Herbert Stanley Sikes, or Phillip Thompson.

10.    I have never made any presentations to the general public regarding Vioxx.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 23, 2006.

Henry Mitcham

3

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| CLIFFORD BAILEY, CLIFFORD BLACK, | * | |
| WESLEY CALHOUN, CURTIS DEASON, | * | |
| RUTH GRAVES, MICKEY GRIZZARD, | * | |
| JIMMY PERRY, HERBERT STANLEY | * | |
| SIKES, and PHILLIP THOMPSON, | * | |
| | * | |
| Plaintiffs, | * | CASE NUMBER: CV- |
| v. | * | |
| | * | |
| MERCK & CO., INC., a foreign or | * | |
| domestic Corporation, DAVID | * | |
| SPARKMAN, KATHERINE HOLMES, | * | |
| LORI LOVETT, SCOTT BARTLETT, | * | |
| CORAL HARPER, MELISSA SANTIAGO, | * | |
| HENRY MITCHAM, JERRY PHARR, | * | |
| JASON DELK, CHARLES HENDERSON, | * | |
| JAMES HOUSTON, JULIE MELTON, | * | |
| JULIE HODGES, and MELISSA | * | |
| BAUER, NATASHA WALKER- | * | Removed from the |
| MCGLOTHAN, RANDY WALLS, and the | * | Circuit Court of |
| Defendants A, B, C, D, E, X & Z whether | * | Randolph County, Alabama |
| singular or plural, being those persons, | * | (CV-06-145) |
| firms or entities who or which | * | |
| proximately caused or contributed to the | * | |
| Plaintiff's personal injury and Plaintiff's | * | |
| other harm and the other | * | |
| damages as complained of herein whose | * | |
| true names are unknown to the Plaintiffs | * | |
| but will be added by amendment when | * | |
| correctly ascertained, | * | |
| | | |
| Defendants. | | |

## DECLARATION OF LORI LOVETT

1.      My name is Lori Lovett.  I am over twenty-one years of age, am of

sound mind, and am competent to make this Declaration.  This Declaration is based upon

my personal knowledge.

2.     I currently reside in Newnan, Georgia and have resided in the State of Georgia for approximately nine years.

3.     At no time did I ever provide Vioxx® ("Vioxx") or information concerning Vioxx directly to Clifford Bailey, Clifford Black, Wesley Calhoun, Curtis Deason, Ruth Graves, Mickey Grizzard, Jimmy Perry, Herbert Stanley Sikes, or Phillip Thompson.

4.     I am not a physician, and have therefore never prescribed Vioxx. I am also not a pharmacist and I have therefore never written or filled a prescription for Vioxx as a pharmacist. The information that I used during the course of my employment was provided to me by my employer. Specifically, Merck provided me with the FDA-approved prescribing information and the other information I used in speaking with physicians about Vioxx. I had no involvement in the development or preparation of prescribing information for Vioxx, and did not have responsibility for the content or other written warnings concerning Vioxx contained in other information provided to me by my employer. I was not expected, as a Professional Representative, to conduct independent research regarding drugs I detailed. I was not expected to review independent scientific studies published in journals unless Merck supplied them to me.

5.     At no time did I have any involvement at all with the manufacture, development, or testing of Vioxx. The physicians with whom I dealt and on whom I called in my job were highly skilled professionals. They were, in my judgment and to the best of my knowledge, in a better position than I to make determinations concerning prescribing Vioxx. I had no discussions at all at any time with any patients of any of the physicians on whom I called regarding Vioxx.

2

6.    At no time did I ever sell, offer to sell or take orders for the sale of Vioxx to patients. Physicians upon whom I would call would write their prescriptions for Vioxx based upon their own independent medical knowledge and judgment and I would not have direct knowledge of any specific prescriptions these physicians may have written for individual patients including, but not limited to, Clifford Bailey, Clifford Black, Wesley Calhoun, Curtis Deason, Ruth Graves, Mickey Grizzard, Jimmy Perry, Herbert Stanley Sikes, and Phillip Thompson.

7.    I made no knowing misrepresentations concerning the safety or efficacy of Vioxx and acted in good faith at all times in my dealings with physicians who may have prescribed Vioxx.

8.    I have never participated in, nor was I ever instructed or trained, nor did I ever receive any materials relating to any "Dodgeball program."

9.    I have never met nor spoken with Clifford Bailey, Clifford Black, Wesley Calhoun, Curtis Deason, Ruth Graves, Mickey Grizzard, Jimmy Perry, Herbert Stanley Sikes, or Phillip Thompson.

10.    I have never made any presentations to the general public regarding Vioxx.


Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 23, 2006.

Lori Lovett

3

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

CLIFFORD BAILEY, CLIFFORD BLACK,    *
WESLEY CALHOUN, CURTIS DEASON,    *
RUTH GRAVES, MICKEY GRIZZARD,    *
JIMMY PERRY, HERBERT STANLEY    *
SIKES, and PHILLIP THOMPSON,    *
    *
    Plaintiffs,    *  CASE NUMBER: CV-
    *
v.    *
    *
MERCK & CO., INC., a foreign or    *
domestic Corporation, DAVID    *
SPARKMAN, KATHERINE HOLMES,    *
LORI LOVETT, SCOTT BARTLETT,    *
CORAL HARPER, MELISSA SANTIAGO,    *
HENRY MITCHAM, JERRY PHARR,    *
JASON DELK, CHARLES HENDERSON,    *
JAMES HOUSTON, JULIE MELTON,    *
JULIE HODGES, and MELISSA    *
BAUER, NATASHA WALKER-    *  Removed from the
MCGLOTHAN, RANDY WALLS, and the    *  Circuit Court of
Defendants A, B, C, D, E, X & Z whether    *  Randolph County, Alabama
singular or plural, being those persons,    *  (CV-06-145)
firms or entities who or which    *
proximately caused or contributed to the    *
Plaintiff's personal injury and Plaintiff's    *
other harm and the other    *
damages as complained of herein whose    *
true names are unknown to the Plaintiffs    *
but will be added by amendment when    *
correctly ascertained,    *

    Defendants.

## DECLARATION OF MELISSA SANTIAGO BAUER

1.    My name is Melissa Santiago Bauer, named above as both Melissa Santiago and Melissa Bauer. I am over twenty-one years of age, am of sound mind, and am competent to make this Declaration. This Declaration is based upon my personal knowledge.

2.     I currently reside in Sharpsburg, Georgia and have resided in the State of Georgia for approximately thirty-three years.

3.     At no time did I ever provide Vioxx® ("Vioxx") or information concerning Vioxx directly to Clifford Bailey, Clifford Black, Wesley Calhoun, Curtis Deason, Ruth Graves, Mickey Grizzard, Jimmy Perry, Herbert Stanley Sikes, or Phillip Thompson.

4.     I am not a physician, and have therefore never prescribed Vioxx. I am also not a pharmacist and I have therefore never written or filled a prescription for Vioxx as a pharmacist. The information that I used during the course of my employment was provided to me by my employer. Specifically, Merck provided me with the FDA-approved prescribing information and the other information I used in speaking with physicians about Vioxx. I had no involvement in the development or preparation of prescribing information for Vioxx, and did not have responsibility for the content or other written warnings concerning Vioxx contained in other information provided to me by my employer. I was not expected, as a Professional Representative, to conduct independent research regarding drugs I detailed. I was not expected to review independent scientific studies published in journals unless Merck supplied them to me.

5.     At no time did I have any involvement at all with the manufacture, development, or testing of Vioxx. The physicians with whom I dealt and on whom I called in my job were highly skilled professionals. They were, in my judgment and to the best of my knowledge, in a better position than I to make determinations concerning prescribing Vioxx. I had no discussions at all at any time with any patients of any of the physicians on whom I called regarding Vioxx.

2

6.      At no time did I ever sell, offer to sell or take orders for the sale of Vioxx to patients.  Physicians upon whom I would call would write their prescriptions for Vioxx based upon their own independent medical knowledge and judgment and I would not have direct knowledge of any specific prescriptions these physicians may have written for individual patients including, but not limited to, Clifford Bailey, Clifford Black, Wesley Calhoun, Curtis Deason, Ruth Graves, Mickey Grizzard, Jimmy Perry, Herbert Stanley Sikes, and Phillip Thompson.

7.      I made no knowing misrepresentations concerning the safety or efficacy of Vioxx and acted in good faith at all times in my dealings with physicians who may have prescribed Vioxx.

8.      I have never participated in, nor was I ever instructed or trained, nor did I ever receive any materials relating to any "Dodgeball program."

9.      I have never met nor spoken with Clifford Bailey, Clifford Black, Wesley Calhoun, Curtis Deason, Ruth Graves, Mickey Grizzard, Jimmy Perry, Herbert Stanley Sikes, or Phillip Thompson.

10.      I have never made any presentations to the general public regarding Vioxx.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 22, 2006.

Melissa Santiago Bauer

3

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

CLIFFORD BAILEY, CLIFFORD BLACK,  *
WESLEY CALHOUN, CURTIS DEASON,   *
RUTH GRAVES, MICKEY GRIZZARD,    *
JIMMY PERRY, HERBERT STANLEY     *
SIKES, and PHILLIP THOMPSON,     *
                                 *
        Plaintiffs,              *
                                 *
v.                               *
                                 *
MERCK & CO., INC., a foreign or  *
domestic Corporation, DAVID      *
SPARKMAN, KATHERINE HOLMES,      *
LORI LOVETT, SCOTT BARTLETT,     *  Case No.: _____
CORAL HARPER, MELISSA SANTIAGO,  *  Removed from Circuit Court
HENRY MITCHAM, JERRY PHARR,      *  of Randolph County, AL
JASON DELK, CHARLES HENDERSON,   *
JAMES HOUSTON, JULIE MELTON,     *
JULIE HODGES, and MELISSA        *
BAUER, NATASHA WALKER-           *
MCGLOTHAN, RANDY WALLS, and the  *
Defendants A, B, C, D, E, X & Z whether *
singular or plural, being those persons, *
firms or entities who or which   *
proximately caused or contributed to the *
Plaintiff's personal injury and Plaintiff's *
other harm and the other         *
damages as complained of herein whose *
true names are unknown to the Plaintiffs *
but will be added by amendment when *
correctly ascertained,           *

        Defendants.

**DECLARATION OF JASON DELK**

1.      My name is Jason Delk.  I am over twenty-one years of age, am of sound mind, and am competent to make this Declaration.  This Declaration is based upon my personal knowledge.

2.      At no time did I ever provide Vioxx® ("Vioxx") or information concerning Vioxx directly to Clifford Bailey, Clifford Black, Wesley Calhoun, Curtis Deason, Ruth Graves, Mickey Grizzard, Jimmy Perry, Herbert Stanley Sikes, or Phillip Thompson.

3.      I am not a physician, and have therefore never prescribed Vioxx. I am also not a pharmacist and I have therefore never written or filled a prescription for Vioxx as a pharmacist. The information that I used during the course of my employment was provided to me by my employer.  Specifically, Merck provided me with the FDA-approved prescribing information and the other information I used in speaking with physicians about Vioxx. I had no involvement in the development or preparation of prescribing information for Vioxx, and did not have responsibility for the content or other written warnings concerning Vioxx contained in other information provided to me by my employer. I was not expected, as a Professional Representative, to conduct independent research regarding drugs I detailed. I was not expected to review independent scientific studies published in journals unless Merck supplied them to me.

4.      At no time did I have any involvement at all with the manufacture, development, or testing of Vioxx. The physicians with whom I dealt and on whom I called in my job were highly skilled professionals. They were, in my judgment and to the best of my knowledge, in a better position than I to make determinations concerning prescribing Vioxx. I had no dealings at all at any time with any patients of any of the physicians on whom I called regarding Vioxx, and had no knowledge or information of any of those patients' medical histories, symptoms, prognoses, or courses of treatment.

2

5.    At no time did I ever sell, offer to sell or take orders for the sale of Vioxx to patients. Physicians upon whom I would call would write their prescriptions for Vioxx based upon their own independent medical knowledge and judgment and I would not have direct knowledge of any specific prescriptions these physicians may have written for individual patients including, but not limited to, Clifford Bailey, Clifford Black, Wesley Calhoun, Curtis Deason, Ruth Graves, Mickey Grizzard, Jimmy Perry, Herbert Stanley Sikes, and Phillip Thompson.

6.    I made no knowing misrepresentations concerning the safety or efficacy of Vioxx and acted in good faith at all times in my dealings with physicians who may have prescribed Vioxx.

7.    I have never participated in, nor was I ever instructed or trained, nor did I ever receive any materials relating to any "Dodgeball program."

8.    I have never met nor spoken with Clifford Bailey, Clifford Black, Wesley Calhoun, Curtis Deason, Ruth Graves, Mickey Grizzard, Jimmy Perry, Herbert Stanley Sikes, or Phillip Thompson.

9.    I have never made any presentations to the general public regarding Vioxx.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 23, 2006.

Jason Delk

3

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

CLIFFORD BAILEY, CLIFFORD BLACK,  *
WESLEY CALHOUN, CURTIS DEASON,  *
RUTH GRAVES, MICKEY GRIZZARD,  *
JIMMY PERRY, HERBERT STANLEY  *
SIKES, and PHILLIP THOMPSON,  *
　　　　　　　　　　　　　　　　　*
　　　　Plaintiffs,  *　　CASE NUMBER: CV-
　　　　　　　　　　　　　　　　　*
v.  *
　　　　　　　　　　　　　　　　　*
MERCK & CO., INC., a foreign or  *
domestic Corporation, DAVID  *
SPARKMAN, KATHERINE HOLMES,  *
LORI LOVETT, SCOTT BARTLETT,  *
CORAL HARPER, MELISSA SANTIAGO,  *
HENRY MITCHAM, JERRY PHARR,  *
JASON DELK, CHARLES HENDERSON,  *
JAMES HOUSTON, JULIE MELTON,  *
JULIE HODGES, and MELISSA  *
BAUER, NATASHA WALKER-  *　　Removed from the
MCGLOTHAN, RANDY WALLS, and the  *　　Circuit Court of
Defendants A, B, C, D, E, X & Z whether  *　　Randolph County, Alabama
singular or plural, being those persons,  *　　(CV-06-145)
firms or entities who or which  *
proximately caused or contributed to the  *
Plaintiff's personal injury and Plaintiff's  *
other harm and the other  *
damages as complained of herein whose  *
true names are unknown to the Plaintiffs  *
but will be added by amendment when  *
correctly ascertained,  *

　　　　Defendants.

## DECLARATION OF DAVID SPARKMAN

　　　　1.　　　My name is David Sparkman. I am over twenty-one years of age, am of sound mind, and am competent to make this Declaration. This Declaration is based upon my personal knowledge.

2.      I currently reside in Peachtree City, Georgia and have resided in the State of Georgia for approximately thirty-eight years.

3.      At no time did I ever provide Vioxx® ("Vioxx") or information concerning Vioxx directly to Clifford Bailey, Clifford Black, Wesley Calhoun, Curtis Deason, Ruth Graves, Mickey Grizzard, Jimmy Perry, Herbert Stanley Sikes, or Phillip Thompson.

4.      I am not a physician, and have therefore never prescribed Vioxx. I am also not a pharmacist and I have therefore never written or filled a prescription for Vioxx as a pharmacist. The information that I used during the course of my employment was provided to me by my employer.  Specifically, Merck provided me with the FDA-approved prescribing information and the other information I used in speaking with physicians about Vioxx. I had no involvement in the development or preparation of prescribing information for Vioxx, and did not have responsibility for the content or other written warnings concerning Vioxx contained in other information provided to me by my employer. I was not expected, as a Professional Representative, to conduct independent research regarding drugs I detailed. I was not expected to review independent scientific studies published in journals unless Merck supplied them to me.

5.      At no time did I have any involvement at all with the manufacture, development, or testing of Vioxx. The physicians with whom I dealt and on whom I called in my job were highly skilled professionals. They were, in my judgment and to the best of my knowledge, in a better position than I to make determinations concerning prescribing Vioxx. I had no discussions at all at any time with any patients of any of the physicians on whom I called regarding Vioxx.

2

6.    At no time did I ever sell, offer to sell or take orders for the sale of Vioxx to patients. Physicians upon whom I would call would write their prescriptions for Vioxx based upon their own independent medical knowledge and judgment and I would not have direct knowledge of any specific prescriptions these physicians may have written for individual patients including, but not limited to, Clifford Bailey, Clifford Black, Wesley Calhoun, Curtis Deason, Ruth Graves, Mickey Grizzard, Jimmy Perry, Herbert Stanley Sikes, and Phillip Thompson.

7.    I made no knowing misrepresentations concerning the safety or efficacy of Vioxx and acted in good faith at all times in my dealings with physicians who may have prescribed Vioxx.

8.    I have never participated in, nor was I ever instructed or trained, nor did I ever receive any materials relating to any "Dodgeball program."

9.    I have never met nor spoken with Clifford Bailey, Clifford Black, Wesley Calhoun, Curtis Deason, Ruth Graves, Mickey Grizzard, Jimmy Perry, Herbert Stanley Sikes, or Phillip Thompson.

10.    I have never made any presentations to the general public regarding Vioxx.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 21 , 2006.

David Sparkman

3

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

CLIFFORD BAILEY, CLIFFORD BLACK,    *
WESLEY CALHOUN, CURTIS DEASON,    *
RUTH GRAVES, MICKEY GRIZZARD,    *
JIMMY PERRY, HERBERT STANLEY    *
SIKES, and PHILLIP THOMPSON,    *
  *
     Plaintiffs,    *    CASE NUMBER: CV -
v.    *
  *
MERCK & CO., INC., a foreign or    *
domestic Corporation, DAVID    *
SPARKMAN, KATHERINE HOLMES,    *
LORI LOVETT, SCOTT BARTLETT,    *
CORAL HARPER, MELISSA SANTIAGO,    *
HENRY MITCHAM, JERRY PHARR,    *
JASON DELK, CHARLES HENDERSON,    *
JAMES HOUSTON, JULIE MELTON,    *
JULIE HODGES, and MELISSA    *
BAUER, NATASHA WALKER-    *    Removed from the
MCGLOTHAN, RANDY WALLS, and the    *    Circuit Court of
Defendants A, B, C, D, E, X & Z whether    *    Randolph County, Alabama
singular or plural, being those persons,    *    (CV-06-145)
firms or entities who or which    *
proximately caused or contributed to the    *
Plaintiff's personal injury and Plaintiff's    *
other harm and the other    *
damages as complained of herein whose    *
true names are unknown to the Plaintiffs    *
but will be added by amendment when    *
correctly ascertained,    *

     Defendants.

## DECLARATION OF NATASHA McGLOTHAN-WALKER

    1.    My name is Natasha McGlothan-Walker.  I am over twenty-one

years of age, am of sound mind, and am competent to make this Declaration.  This

Declaration is based upon my personal knowledge.

2.     At no time did I ever provide Vioxx® ("Vioxx") or information concerning Vioxx directly to Clifford Bailey, Clifford Black, Wesley Calhoun, Curtis Deason, Ruth Graves, Mickey Grizzard, Jimmy Perry, Herbert Stanley Sikes, or Phillip Thompson.

3.     I am not a physician, and have therefore never prescribed Vioxx. I am also not a pharmacist and I have therefore never written or filled a prescription for Vioxx as a pharmacist. The information that I used during the course of my employment was provided to me by my employer. Specifically, Merck provided me with the FDA-approved prescribing information and the other information I used in speaking with physicians about Vioxx. I had no involvement in the development or preparation of prescribing information for Vioxx, and did not have responsibility for the content or other written warnings concerning Vioxx contained in other information provided to me by my employer. I was not expected, as a Professional Representative, to conduct independent research regarding drugs I detailed. I was not expected to review independent scientific studies published in journals unless Merck supplied them to me.

4.     At no time did I have any involvement at all with the manufacture, development, or testing of Vioxx. The physicians with whom I dealt and on whom I called in my job were highly skilled professionals. They were, in my judgment and to the best of my knowledge, in a better position than I to make determinations concerning prescribing Vioxx. I had no discussions at all at any time with any patients of any of the physicians on whom I called regarding Vioxx.

5.     At no time did I ever sell, offer to sell or take orders for the sale of Vioxx to patients. Physicians upon whom I would call would write their prescriptions for

Vioxx based upon their own independent medical knowledge and judgment and I would not have direct knowledge of any specific prescriptions these physicians may have written for individual patients including, but not limited to, Clifford Bailey, Clifford Black, Wesley Calhoun, Curtis Deason, Ruth Graves, Mickey Grizzard, Jimmy Perry, Herbert Stanley Sikes, and Phillip Thompson.

6.     I made no knowing misrepresentations concerning the safety or efficacy of Vioxx and acted in good faith at all times in my dealings with physicians who may have prescribed Vioxx.

7.     I have never participated in, nor was I ever instructed or trained, nor did I ever receive any materials relating to any "Dodgeball program."

8.     I have never met nor spoken with Clifford Bailey, Clifford Black, Wesley Calhoun, Curtis Deason, Ruth Graves, Mickey Grizzard, Jimmy Perry, Herbert Stanley Sikes, or Phillip Thompson.

9.     I have never made any presentations to the general public regarding Vioxx.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 25 , 2006.


_Natasha McGlothan-Walker_
Natasha McGlothan-Walker

3

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| CLIFFORD BAILEY, CLIFFORD BLACK, WESLEY CALHOUN, CURTIS DEASON, RUTH GRAVES, MICKEY GRIZZARD, JIMMY PERRY, HERBERT STANLEY SIKES, and PHILLIP THOMPSON, <br><br> Plaintiffs, <br><br> v. <br><br> MERCK & CO., INC., a foreign or domestic Corporation, DAVID SPARKMAN, KATHERINE HOLMES, LORI LOVETT, SCOTT BARTLETT, CORAL HARPER, MELISSA SANTIAGO, HENRY MITCHAM, JERRY PHARR, JASON DELK, CHARLES HENDERSON, JAMES HOUSTON, JULIE MELTON, JULIE HODGES, and MELISSA BAUER, NATASHA WALKER-MCGLOTHAN, RANDY WALLS, and the Defendants A, B, C, D, E, X & Z whether singular or plural, being those persons, firms or entities who or which proximately caused or contributed to the Plaintiff's personal injury and Plaintiff's other harm and the other damages as complained of herein whose true names are unknown to the Plaintiffs but will be added by amendment when correctly ascertained, <br><br> Defendants. | * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *  CASE NUMBER: CV- <br><br><br><br><br><br><br><br><br><br> Removed from the Circuit Court of Randolph County, Alabama (CV-06-145) |

## DECLARATION OF CHARLES HENDERSON

1.    My name is Charles Henderson.  I am over twenty-one years of age, am of sound mind, and am competent to make this Declaration.  This Declaration is based upon my personal knowledge.

2.    I currently reside in Sharpsburg, Georgia and have resided in the State of Georgia for approximately five years.

3.    At no time did I ever provide Vioxx® ("Vioxx") or information concerning Vioxx directly to Clifford Bailey, Clifford Black, Wesley Calhoun, Curtis Deason, Ruth Graves, Mickey Grizzard, Jimmy Perry, Herbert Stanley Sikes, or Phillip Thompson.

4.    I am not a physician, and have therefore never prescribed Vioxx. I am also not a pharmacist and I have therefore never written or filled a prescription for Vioxx as a pharmacist. The information that I used during the course of my employment was provided to me by my employer.   Specifically, Merck provided me with the FDA-approved prescribing information and the other information I used in speaking with physicians about Vioxx.   I had no involvement in the development or preparation of prescribing information for Vioxx, and did not have responsibility for the content or other written warnings concerning Vioxx contained in other information provided to me by my employer.   I was not expected, as a Professional Representative, to conduct independent research regarding drugs I detailed.   I was not expected to review independent scientific studies published in journals unless Merck supplied them to me.

5.    At no time did I have any involvement at all with the manufacture, development, or testing of Vioxx.   The physicians with whom I dealt and on whom I called in my job were highly skilled professionals.   They were, in my judgment and to the best of my knowledge, in a better position than I to make determinations concerning prescribing Vioxx.   I had no discussions at all at any time with any patients of any of the physicians on whom I called regarding Vioxx.

2

6.    At no time did I ever sell, offer to sell or take orders for the sale of Vioxx to patients. Physicians upon whom I would call would write their prescriptions for Vioxx based upon their own independent medical knowledge and judgment and I would not have direct knowledge of any specific prescriptions these physicians may have written for individual patients including, but not limited to, Clifford Bailey, Clifford Black, Wesley Calhoun, Curtis Deason, Ruth Graves, Mickey Grizzard, Jimmy Perry, Herbert Stanley Sikes, and Phillip Thompson.

7.    I made no knowing misrepresentations concerning the safety or efficacy of Vioxx and acted in good faith at all times in my dealings with physicians who may have prescribed Vioxx.

8.    I have never participated in, nor was I ever instructed or trained, nor did I ever receive any materials relating to any "Dodgeball program."

9.    I have never met nor spoken with Clifford Bailey, Clifford Black, Wesley Calhoun, Curtis Deason, Ruth Graves, Mickey Grizzard, Jimmy Perry, Herbert Stanley Sikes, or Phillip Thompson.

10.    I have never made any presentations to the general public regarding Vioxx.


Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 24, 2006.

Charles Henderson

3

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| CLIFFORD BAILEY, CLIFFORD BLACK, WESLEY CALHOUN, CURTIS DEASON, RUTH GRAVES, MICKEY GRIZZARD, JIMMY PERRY, HERBERT STANLEY SIKES, and PHILLIP THOMPSON, | * <br> * <br> * <br> * <br> * <br> * |
| **Plaintiffs,** | * <br> *    CASE NUMBER: CV- |
| v. | * <br> * |
| MERCK & CO., INC., a foreign or domestic Corporation, DAVID SPARKMAN, KATHERINE HOLMES, LORI LOVETT, SCOTT BARTLETT, CORAL HARPER, MELISSA SANTIAGO, HENRY MITCHAM, JERRY PHARR, JASON DELK, CHARLES HENDERSON, JAMES HOUSTON, JULIE MELTON, JULIE HODGES, and MELISSA BAUER, NATASHA WALKER-MCGLOTHAN, RANDY WALLS, and the Defendants A, B, C, D, E, X & Z whether singular or plural, being those persons, firms or entities who or which proximately caused or contributed to the Plaintiff's personal injury and Plaintiff's other harm and the other damages as complained of herein whose true names are unknown to the Plaintiffs but will be added by amendment when correctly ascertained, | * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> *    Removed from the <br> *    Circuit Court of <br> *    Randolph County, Alabama <br> *    (CV-06-145) <br> * <br> * <br> * <br> * <br> * <br> * <br> * |
| **Defendants.** | * |

## DECLARATION OF KATHERINE HOLMES

1.     My name is Katherine Holmes. I am over twenty-one years of age, am of sound mind, and am competent to make this Declaration. This Declaration is based upon my personal knowledge.

2.    At no time did I ever provide Vioxx® ("Vioxx") or information concerning Vioxx directly to Clifford Bailey, Clifford Black, Wesley Calhoun, Curtis Deason, Ruth Graves, Mickey Grizzard, Jimmy Perry, Herbert Stanley Sikes, or Phillip Thompson.

3.    I am not a physician, and have therefore never prescribed Vioxx. I am also not a pharmacist and I have therefore never written or filled a prescription for Vioxx as a pharmacist. The information that I used during the course of my employment was provided to me by my employer. Specifically, Merck provided me with the FDA-approved prescribing information and the other information I used in speaking with physicians about Vioxx. I had no involvement in the development or preparation of prescribing information for Vioxx, and did not have responsibility for the content or other written warnings concerning Vioxx contained in other information provided to me by my employer. I was not expected, as a Professional Representative, to conduct independent research regarding drugs I detailed. I was not expected to review independent scientific studies published in journals unless Merck supplied them to me.

4.    At no time did I have any involvement at all with the manufacture, development, or testing of Vioxx. The physicians with whom I dealt and on whom I called in my job were highly skilled professionals. They were, in my judgment and to the best of my knowledge, in a better position than I to make determinations concerning prescribing Vioxx. I had no discussions at all at any time with any patients of any of the physicians on whom I called regarding Vioxx.

5.    At no time did I ever sell, offer to sell or take orders for the sale of Vioxx to patients. Physicians upon whom I would call would write their prescriptions for

2

Vioxx based upon their own independent medical knowledge and judgment and I would not have direct knowledge of any specific prescriptions these physicians may have written for individual patients including, but not limited to, Clifford Bailey, Clifford Black, Wesley Calhoun, Curtis Deason, Ruth Graves, Mickey Grizzard, Jimmy Perry, Herbert Stanley Sikes, and Phillip Thompson.

6.    I made no knowing misrepresentations concerning the safety or efficacy of Vioxx and acted in good faith at all times in my dealings with physicians who may have prescribed Vioxx.

7.    I have never participated in, nor was I ever instructed or trained, nor did I ever receive any materials relating to any "Dodgeball program."

8.    I have never met nor spoken with Clifford Bailey, Clifford Black, Wesley Calhoun, Curtis Deason, Ruth Graves, Mickey Grizzard, Jimmy Perry, Herbert Stanley Sikes, or Phillip Thompson.

9.    I have never made any presentations to the general public regarding Vioxx.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 25, 2006.

Katherine Holmes

3

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

CLIFFORD BAILEY, CLIFFORD BLACK,　　*
WESLEY CALHOUN, CURTIS DEASON,　　*
RUTH GRAVES, MICKEY GRIZZARD,　　*
JIMMY PERRY, HERBERT STANLEY　　*
SIKES, and PHILLIP THOMPSON,　　*
　　　　　　　　　　　　　　　　　　*
　　　　Plaintiffs,　　　　　　　　*　　CASE NUMBER: CV-
　　　　　　　　　　　　　　　　　　*
v.　　　　　　　　　　　　　　　　*
　　　　　　　　　　　　　　　　　　*
MERCK & CO., INC., a foreign or　　*
domestic Corporation, DAVID　　　　*
SPARKMAN, KATHERINE HOLMES,　　*
LORI LOVETT, SCOTT BARTLETT,　　*
CORAL HARPER, MELISSA SANTIAGO,　　*
HENRY MITCHAM, JERRY PHARR,　　*
JASON DELK, CHARLES HENDERSON,　　*
JAMES HOUSTON, JULIE MELTON,　　*
JULIE HODGES, and MELISSA　　　　*
BAUER, NATASHA WALKER-　　　　*　　Removed from the
MCGLOTHAN, RANDY WALLS, and the　　*　　Circuit Court of
Defendants A, B, C, D, E, X & Z whether　　*　　Randolph County, Alabama
singular or plural, being those persons,　　*　　(CV-06-145)
firms or entities who or which　　*
proximately caused or contributed to the　　*
Plaintiff's personal injury and Plaintiff's　　*
other harm and the other　　　　*
damages as complained of herein whose　　*
true names are unknown to the Plaintiffs　　*
but will be added by amendment when　　*
correctly ascertained,　　　　　　*

　　　　Defendants.

## DECLARATION OF CORAL HARPER

　　　1.　　My name is Coral Harper.  I am over twenty-one years of age, am

of sound mind, and am competent to make this Declaration.  This Declaration is based

upon my personal knowledge.

2.    I currently reside in Newnan, Georgia and have resided in the State of Georgia fo : approximately eight years.

3.    At no time did I ever provide Vioxx® ("Vioxx") or information concerning Vioxx directly to Clifford Bailey, Clifford Black, Wesley Calhoun, Curtis Deason, Ruth Graves, Mickey Grizzard, Jimmy Perry, Herbert Stanley Sikes, or Phillip Thompson.

4.    I am not a physician, and have therefore never prescribed Vioxx. I am also not a pharmacist and I have therefore never written or filled a prescription for Vioxx as a pharmacist. The information that I used during the course of my employment was provided to me by my employer.    Specifically, Merck provided me with the FDA-approved prescribing information and the other information I used in speaking with physicians about Vioxx.    I had no involvement in the development or preparation of prescribing information for Vioxx, and did not have responsibility for the content or other written warnings concerning Vioxx contained in other information provided to me by my employer.  I was not expected, as a Professional Representative, to conduct independent research regarding drugs I detailed.  I was not expected to review independent scientific studies published in journals unless Merck supplied them to me.

5.    At no time did I have any involvement at all with the manufacture, development, or testing of Vioxx. The physicians with whom I dealt and on whom I called in my job were highly skilled professionals. They were, in my judgment and to the best of my knowledge, in a better position than I to make determinations concerning prescribing Vioxx. I had no discussions at all at any time with any patients of any of the physicians on whom I called regarding Vioxx.

2

6.     At no time did I ever sell, offer to sell or take orders for the sale of Vioxx to patients. Physicians upon whom I would call would write their prescriptions for Vioxx based upon their own independent medical knowledge and judgment and I would not have direct knowledge of any specific prescriptions these physicians may have written for individual patients including, but not limited to, Clifford Bailey, Clifford Black, Wesley Calhoun, Curtis Deason, Ruth Graves, Mickey Grizzard, Jimmy Perry, Herbert Stanley Sikes, and Phillip Thompson.

7.     I made no knowing misrepresentations concerning the safety or efficacy of Vioxx and acted in good faith at all times in my dealings with physicians who may have prescribed Vioxx.

8.     I have never participated in, nor was I ever instructed or trained, nor did I ever receive any materials relating to any "Dodgeball program."

9.     I have never met nor spoken with Clifford Bailey, Clifford Black, Wesley Calhoun, Curtis Deason, Ruth Graves, Mickey Grizzard, Jimmy Perry, Herbert Stanley Sikes, or Phillip Thompson.

10.     I have never made any presentations to the general public regarding Vioxx.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 24, 2006.

_____
Coral Harper

3

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

GLORIA HERNANDEZ,

Plaintiff,

-vs-                                          Case No. 6:05-cv-221-Orl-31KRS

MERCK & CO., INC., GENA ORTEGA
f/k/a Gena Ghazzi & JOHN E. (JACK)
KILKELLY,

Defendants.

## ORDER

This matter comes before the Court on the Plaintiff, Gloria Hernandez's ("Plaintiff")

Motion to Remand (Doc. 7) (the "Motion") and the Defendant, Merck & Co., Inc.'s ("Merck")

Memorandum of Law in Opposition thereto (Doc. 14). The Plaintiff also filed a Notice of

Supplemental Authority (Doc. 17), to which Merck filed a Response (Doc. 18). For the reasons

stated herein, the Plaintiff's Motion is denied.

I.      Background

On January 12, 2005, the Plaintiff filed a Complaint (Doc. 3) against Merck, Gena Ortega

("Ortega"), and John Kilkelly ("Kilkelly") (collectively referred to, where appropriate, as the

"Defendants") in the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida

alleging, *inter alia*, negligence, negligent misrepresentation, and fraud against all of the

Defendants. In essence, the Plaintiff alleges that certain cardiovascular risks were associated with

the use of Vioxx, and that the Defendants knew or should have known of those risks. The Plaintiff



further alleges that despite their knowledge, the Defendants promoted the use of Vioxx, and, in the course of promoting its use, concealed its dangerous qualities, misrepresented the risks associated with its use, and failed to warn prescribing physicians of those risks.

Merck removed the case to this Court on February 14, 2005,[1] alleging that the Plaintiff fraudulently joined Ortega and Kilkelly, that Ortega and Kilkelly are not proper defendants, and thus that this Court has diversity jurisdiction over this case.[2]

On February 15, 2005, the Plaintiff filed her Motion, arguing that the case should be remanded on the basis of offensive collateral estoppel arising from two decisions in this District granting remand in cases with different plaintiffs but the same Defendants, and, in the alternative, that Merck could not show that Ortega and Kilkelly were fraudulently joined.

Merck now asserts that offensive collateral estoppel does not apply to this case, and that it can prove fraudulent joinder, and thus seeks a denial of the Plaintiff's Motion.

II.    Legal Analysis

A. Offensive Collateral Estoppel

A party properly invokes collateral estoppel when "the issue in the subsequent proceeding is identical to the one involved in the prior action, the issue was actually litigated, and the determination of the issue was necessary in the prior action." *Cotton States Mutual Ins. Co. v.*

---

[1] Merck's Notice of Removal appears at Doc. 1.

[2] The Plaintiff is a resident of Orange County, Florida. Merck is a New Jersey corporation that is authorized to conduct business in Florida. At all times material to this case, Merck was engaged in the business of developing, manufacturing, selling and promoting Vioxx for consumer use by prescription. Ortega and Kilkelly are residents of the State of Florida. Ortega and Kilkelly were employed by Merck as sales representatives or managers to promote, and to encourage physicians to prescribe, Vioxx. It is thus clear that if Ortega and Kilkelly are proper defendants, this Court will not have diversity jurisdiction over this case under 28 U.S.C. § 1332.

-2-

*Anderson*, 749 F.2d 663, 666 (11th Cir. 1984) (internal citation and quotation omitted)   The

offensive use of collateral estoppel "occurs when the plaintiff seeks to foreclose the defendant

from litigating an issue the defendant has previously litigated unsuccessfully in an action with

another party." *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 n 4 (1979).   Courts have

broad discretion in determining whether offensive collateral estoppel is appropriate. *Id.* at 331;

*Cotton States*, 749 F.2d at 666.

      The issue here is whether to apply the doctrine of offensive collateral estoppel to orders

issued by courts in this District remanding under 28 U.S.C. section 1447(c) cases, similar to the

Plaintiff's, filed against these same Defendants.[3]  Courts are reluctant to apply doctrines of

preclusion where an issue is not reviewable on appeal. *Warner/Elektra/Atlantic Corp. v. County of

DuPage*, 991 F.2d 1280, 1282 (7th Cir. 1993) ("an unappealable finding does not collaterally

estop"); *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 44 (2nd Cir. 1986) ("inability to obtain

appellate review . . . does prevent preclusion")  It is clear that "[u]nder 28 U.S.C. § 1447(d), an

order remanding an action to state court pursuant to § 1447(c) is not reviewable on appeal or

otherwise, even if the remand order is clearly erroneous."[4]  *Poore v American-Amicable Life Ins.

Co. of Tex.*, 218 F.3d 1287, 1291 (11th Cir. 2000); *see also Republic of Venezuela v. Philip Morris

Inc.*, 287 F.3d 192, 196 (D.C. Cir. 2002).

---

[3] 28 U.S.C. § 1447(c) provides, in relevant part, that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."

[4] 28 U.S.C. § 1447(d) provides, in relevant part, that "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise . . . ."

-3-

The orders upon which the Plaintiff seeks to rely to collaterally estop Merck are orders from courts in this District in the cases of *Kozic v. Merck & Co., Inc., Gena Ghazzi and John E. (Jack) Kilkelly*, Case No. 8:04-CV-324-T-27TBM ("*Kozic*"),[5] and *White v. Merck & Co., Inc., Gena Ortega f/k/a Gena Ghazzi and John E. (Jack) Kilkelly*, Case No. 8:05-CV-243-T-26MSS ("*White*"), which found that the plaintiff in those cases had not fraudulently joined Ortega and Kilkelly as defendants, and thus those courts remanded the cases to state court pursuant to 28 U.S.C. section 1447(c).[6] Therefore, because the Plaintiff seeks to collaterally estop Merck from asserting fraudulent joinder based on non-reviewable remand orders, offensive collateral estoppel is not appropriate, and Merck is entitled to assert its claim of fraudulent joinder before this Court.[7]

B  Fraudulent Joinder

Merck seeks to prevent the remand of this case to state court by alleging that Ortega and Kilkelly were fraudulently joined as defendants and, as such, do not defeat this Court's diversity jurisdiction. When alleging fraudulent joinder, "the removing party has the burden of proving that either: (1) there is no possibility that the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the

---

[5] Gena Ortega was formerly known as Gena Ghazzi.  Doc. 3 at 1.

[6] Although neither order is specific as to the statutory basis for remand, in both cases the plaintiff moved for remand pursuant to 28 U.S.C. § 1447(c), and thus the Court assumes that each case was remanded pursuant to that section.  *See Kozic*, Doc. 6 at 1; *White*, Doc. 9 at 1.

[7] Moreover, in both *Kozic* and *White*, Merck did not raise the issue, contained in the Declarations of Ortega and Kilkelly (Doc. 18 at Ex. A and B), that neither Ortega nor Kilkelly ever communicated with either the plaintiff or the plaintiff's prescribing physician. Therefore, the issue to be addressed here is not identical to the issue in *Kozic* and *White*, nor was that issue previously litigated, and thus collateral estoppel is not appropriate in this case.

-4-

resident defendant into state court." *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997).[8]

The burden on the removing party is a heavy one. *Id.* To determine whether the case should be remanded, the Court evaluates the factual allegations in the light most favorable to the plaintiff, and resolves any uncertainties about state substantive law in the plaintiff's favor. *Id.*; *see also Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989). These determinations are made based on the plaintiff's pleadings at the time of removal. *Crowe*, 113 F.3d at 1538; *Cabalceta*, 883 F.2d at 1561. In addition to the plaintiff's pleadings, the Court may consider evidence such as affidavits and depositions submitted by the parties. *Crowe*, 113 F.3d at 1538; *Cabalceta*, 883 F.2d at 1561.

The Court will not weigh the merits of the Plaintiff's claim, other than to determine whether the Plaintiff has an arguable claim under state law. *Crowe*, 113 F.3d at 1538. "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." *Id.* (internal citation and quotation omitted); *see also Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998) ("The plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a *possibility* of stating a valid cause of action in order for the joinder to be legitimate.") (emphasis in original).

To determine whether the Plaintiff can establish a cause of action against either Ortega or Kilkelly under Florida law, the Court examines the Complaint (Doc. 3). In Count II, the Plaintiff

---

[8] Merck asserts that the Plaintiff cannot establish a cause of action against Ortega and Kilkelly, and does not raise the issue of fraudulently pled jurisdictional facts. Therefore, the second category of fraudulent joinder as outlined in *Crowe* is not at issue here.

asserts a claim for negligence against the Defendants, claiming that the Defendants knew or should have known of the risks associated with Vioxx, and despite that knowledge the Defendants advertised, marketed, sold and distributed Vioxx, failed to adequately and accurately warn prescribing physicians of the risks associated with Vioxx, and concealed the dangerous properties of Vioxx. (Doc. 3 at 8-9). The Plaintiff asserts a claim for negligent misrepresentation against the Defendants in Count III, claiming that the Defendants knew or should have known of the risks associated with Vioxx, and despite that knowledge the Defendants advertised, marketed, sold and distributed Vioxx, the Defendants misrepresented to the Plaintiff and to her prescribing physician the safety and effectiveness of Vioxx, and the Defendants made these representations and concealed adverse information despite their knowledge of the risks associated with Vioxx. (*Id.* at 10-11). In Count IV, the Plaintiff asserts a claim for fraud against the Defendants, claiming that although the Defendants knew of the risks associated with Vioxx, the Defendants fraudulently or intentionally misrepresented to the Plaintiff and to the Plaintiff's prescribing physician the safety and effectiveness of Vioxx, and that the Defendants knew their representations were false. (*Id.* at 12-15).

After filing a Memorandum in Opposition to Remand (Doc. 14), Merck filed a Supplement in Support of Removal (Doc. 18), to which Merck attached sworn Declarations from Ortega and Kilkelly. (Doc. 18, Ex. A and B, respectively). In those declarations, Ortega and Kilkelly swear to several things, including: (1) each worked for Merck as a Professional Representative in the Tampa, Florida District; (2) that district does not include either Orange County or Orlando; (3)

-6-

neither Ortega nor Kilkelly ever had any contact with Dr. Iraj Ghahreman Lou ("Dr. Lou");[9] (4) neither Ortega nor Kilkelly ever supervised any other professional representative for Merck who ever discussed Vioxx with Dr. Lou; and (5) neither Ortega nor Kilkelly ever spoke with the Plaintiff about Vioxx. (*Id.*). The Plaintiff has not offered evidence in opposition to these statements. The Court will therefore examine whether the Plaintiff can state a claim against Ortega and/or Kilkelly in light of the information contained in their Declarations.

### 1. Negligence (Count II)

The elements for a negligence claim in Florida are duty, breach, harm, and proximate cause. *Lisanti v. City of Port Richey*, 787 So. 2d 36, 37 (Fla. 2d DCA 2001). In the context of claims against manufacturers arising from damages allegedly caused by the manufacturer's failure to warn of the risks associated with prescription drugs, Florida follows the "learned intermediary" doctrine, which means that the manufacturer's duty to warn of a drug's dangerous side effects is directed to the prescribing physician rather than the patient. *Felix v. Hoffmann-LaRoche, Inc.*, 540 So. 2d 102, 104 (Fla. 1989); *see also Mitchell v. VLI Corp.*, 786 F. Supp. 966, 970 (M.D. Fla. 1992). In this case, then, any duty to warn of the alleged risks associated with Vioxx would have flowed to Dr. Lou, the Plaintiff's prescribing physician. However, the Declarations of Ortega and Kilkelly clearly show that neither of them, either directly or through representatives under their supervision, communicated with Dr. Lou either in general or specifically about Vioxx. Thus, neither Ortega nor Kilkelly had a duty to warn Dr. Lou, and in the absence of a duty, the Plaintiff

---

[9] Merck identifies Dr. Lou as the Plaintiff's prescribing physician because Dr. Lou is the only medical provider the Plaintiff identifies in her discovery requests. (Doc. 18 at 3, Ex. C). In her pleadings and filings with this Court, the Plaintiff simply refers to a "prescribing physician," without naming that individual.

-7-

cannot prove a claim for negligence.[10]  *See Whitt v. Silverman*, 788 So. 2d 210, 221 (Fla. 2001)

(duty is a threshold requirement).

### 2. Negligent Misrepresentation (Count III)

To prove negligent misrepresentation, a plaintiff must prove four elements: (1) the

existence of a material misrepresentation; (2) that the representation was made under

circumstances in which the representor either knew of the misrepresentation, was without

knowledge as to its truth or falsity, or should have known of its falsity; (3) that the representor

intended to induce reliance; and (4) the plaintiff justifiably relied on the defendant representor's

representation to the plaintiff's detriment. *Souran v. Travelers Ins. Co.*, 982 F.2d 1497, 1503-1505

(11th Cir. 1993); *Atlantic Nat'l Bank of Fla. v. Vest*, 480 So. 2d 1328, 1331-32 (Fla. 2d DCA

1985). Liability is limited to the loss suffered:

> (a) by the person or one of a limited group of persons for whose benefit and
> guidance [the representor] intends to supply the information or knows that the
> recipient intends to supply it; and (b) through reliance upon it in a transaction that
> [the representor] intends the information to influence or knows that the recipient so
> intends or in a substantially similar transaction.

*Gilchrist Timber v. ITT Rayonier, Inc.*, 696 So. 2d 334, 337 (Fla. 1997) (*citing* Restatement

(Second) of Torts § 552 (1977)). Returning to Ortega's and Kilkelly's Declarations, it is clear that

neither of them communicated either directly with the Plaintiff or indirectly with her via

communications to Dr. Lou.  Therefore, Ortega and Kilkelly do not fall within the ambit of

liability as prescribed by the Florida Supreme Court in *Gilchrist*, because neither the Plaintiff nor

---

[10] Even if the "learned intermediary" doctrine did not apply, the Plaintiff would still be unable
to prove that Ortega and Kilkelly owed her a duty, because their Declarations clearly establish that not
only did they not communicate with Dr. Lou, but they never communicated directly with the Plaintiff.

-8-

Dr. Lou falls within the limited category of persons to whom Ortega and Kilkelly would be liable for misrepresentations, namely that "that limited group of persons for whose benefit and guidance [Ortega and Kilkelly] intend[ed] to supply the information or [knew] that the recipient intend[ed] to supply it." *Gilchrist*, 696 So.2d at 337. Thus the Plaintiff cannot prove a claim of negligent misrepresentation against either Ortega or Kilkelly.[11]

### 3. Fraud (Count IV)

To state a claim for fraudulent misrepresentation under Florida law, the plaintiff must allege: "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." *Elders v. United Methodist Church*, 793 So. 2d 1038, 1042 (Fla. 3rd DCA 2001) (internal citation and quotation omitted). This claim must fail for the same reason as the Plaintiff's claim for negligent misrepresentation: Merck has offered undisputed evidence that neither Ortega nor Kilkelly communicated with either the Plaintiff or Dr. Lou, and in the absence of such communication, there can be no fraudulent misrepresentation.[12]

---

[11] The case of *Albertson v. Richardson-Merrell, Inc.*, 441 So. 2d 1146 (Fla. 4th DCA 1983), does not require a different conclusion. As described by that court, the decision in that case is squarely based on the circumstances where "[a] drug manufacturer's detail man makes representations to a physician caring for a pregnant woman." *Id.* at 1149. In *Albertson*, in direct contrast to the facts of the instant case, it was undisputed that the manufacturer's agent made representations to the plaintiff's physician.

[12] Alternatively, the Plaintiff has failed to state a claim for fraud against both Ortega and Kilkelly. Under Florida law, fraud must be pled with particularity. *Morgan v. W.R. Grace & Co.-Conn.*, 779 So. 2d 503, 506 (Fla. 2d DCA 2000); *Robertson v. PHF Life Ins. Co.*, 702 So. 2d 555, 556 (Fla. 1st DCA 1997). A plaintiff must particularly allege specific misrepresentations or omissions of fact, the time, place and manner in which the misrepresentations were made, and how those

-9-

After examining the Plaintiff's claims in light of the undisputed evidence Merck offered in the form of the sworn Declarations of Ortega and Kilkelly, the Court finds that the Plaintiff cannot state a claim for negligence, negligent misrepresentation or fraudulent misrepresentation against either Ortega or Kilkelly under Florida law. Therefore, Ortega and Kilkelly were fraudulently joined as defendants. *Kimmons v. IMC Fertilizer, Inc.*, 844 F. Supp. 738, 739 (M.D. Fla. 1994). Because the joinder of Ortega and Kilkelly was fraudulent, it does not defeat this Court's diversity jurisdiction. *Id.* Therefore, this case should not be remanded to state court. Moreover, because Ortega and Kilkelly were fraudulently joined, they should be dismissed as defendants. *Tillman v. R.J. Reynolds Tobacco*, 253 F.3d 1302, 1305 (11th Cir. 2001) (it is appropriate for a federal court to dismiss . . . a defendant and retain diversity jurisdiction if the complaint shows there is no possibility that the plaintiff can establish any cause of action against that defendant); *Tran v. Waste Mgmt., Inc.*, 290 F. Supp. 2d 1286, 1292 (M.D. Fla. 2003).

**III. Conclusion**

Because an order of remand is not an appealable order, Merck was not precluded from raising the issue of fraudulent joinder before this Court. The Plaintiff will not be able to prove her

---

misrepresentations were false or misleading. *Robertson*, 702 So. 2d at 556. The Plaintiff has failed to allege what specific misrepresentations either Ortega or Kilkelly made to Dr. Lou or to the Plaintiff; the allegation that certain statements referred to in a warning letter to Merck were made to "the plaintiff and/or plaintiff's prescribing physician" is clearly deficient. Nor does the Plaintiff allege who made particular misrepresentations, when and where those misrepresentations were made, or how each misrepresentation was false or misleading. Further, in light of the Ortega and Kilkelly Declarations, the Plaintiff will not be able to prove that such statements were made either to her or to her prescribing physician. Finally, the requirement that fraud be pled with particularity also applies to claims for negligent misrepresentation. *Morgan*, 779 So. 2d at 506. Based on the reasoning discussed above, the Plaintiff will not be able to prove a claim for negligent misrepresentation, and for this reason, in addition to the discussion in Section II(B)(2), *supra*, that claim must fail.

-10-

state law claims of negligence, negligent misrepresentation and fraudulent misrepresentation against either Ortega or Kilkelly, and therefore these individuals were fraudulently joined as defendants. Therefore, Ortega and Kilkelly will be dismissed as defendants, and this case will not be remanded to state court. Accordingly, it is

ORDERED THAT the Plaintiff's Motion for Remand (Doc. 7) is DENIED, and Ortega and Kilkelly are DISMISSED as defendants.

DONE and ORDERED in Chambers, Orlando, Florida on May 3, 2005.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party

-11-

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CONCHITA MERCED-TORRES and CESAR
VIVES,

                      Plaintiffs,

-vs-

MERCK & CO., INC., GENA ORTEGA f/k/a
GENA GHAZZI, an individual, and JOHN E.
(JACK) KILKELLY, an individual

                      Defendants.

Case No. 6:05-cv-449-Orl-19DAB

## ORDER

This case comes before the Court on the following:

1.  Plaintiffs Conchita Merced-Torres' and Cesar Vives' First Motion to Remand and
    Supporting Memorandum of Law. (Doc. No. 12, filed on April 4, 2005).

2.  Defendant Merck & Co., Inc.'s Memorandum in Opposition to Plaintiffs' First Motion
    to Remand. (Doc. No. 23, filed on April 21, 2005).

3.  Defendant Merck & Co, Inc.'s Objections to the Magistrate Judge's Order Granting
    Plaintiffs' Motion to Shorten Time. (Doc. No. 18, filed on April 8, 2005).

4.  Plaintiffs Conchita Merced-Tores' and Cesar Vives' Request that the Court rule on
    Defendant Merck & Co., Inc.'s Objections to the Magistrate Judge's Order Granting
    Plaintiffs' Motion to Shorten Time. (Doc. No. 32, filed on May 6, 2005).

5.  Defendant Merck & Co., Inc.'s Opposition to Plaintiffs' Request that the Court rule on
    Defendants' Merck & Co., Inc.'s Objections to the Magistrate Judge's Order Granting

-1-



Plaintiffs' Motion to Shorten Time. (Doc. No. 33, filed on May 6, 2005).

### Background

On March 24, 2005, Defendant Merck & Co., Inc. ("Merck") filed a notice of removal of Plaintiffs' Conchita Merced-Tores' and Cesar Vives' suit from the Ninth Judicial Circuit in Orange County, Florida to the United States District Court for the Middle District of Florida. (Doc. No. 1, filed on March 24, 2005). In the notice, Merck argued that Plaintiffs had fraudulently joined Gena Ortega and John Kilkelly in their lawsuit in the Ninth Judicial Circuit and that complete diversity of citizenship existed between Plaintiffs and Merck.

In the complaint, Plaintiffs alleged six counts against Defendant Merck & Co., Inc. and four counts against Defendants Gena Ortega and John Kilkelly regarding Plaintiffs' ingestion of Vioxx, including strict liability against Merck, negligence, negligent misrepresentation, and fraud against all Defendants, a violation of the Florida Deceptive and Unfair Trade Practices Act against Merck, and loss of consortium against all Defendants. (Doc. No. 2, filed on March 24, 2005). Plaintiffs also alleged that Merck is a New Jersey corporation that was authorized to conduct business in Florida and that Ortega and Kilkelly are residents of Florida and sales representatives employed by Merck to promote market, sell, distribute, and encourage physicians to prescribe Vioxx. (*Id* at ¶¶ 10, 14, 15).

On April 4, 2005, Plaintiffs filed their First Motion to Remand, arguing that collateral estoppel precludes Merck from removing this case to federal court, that Merck's contention that Plaintiffs' joinder of Ortega and Kilkelly was fraudulent is unsupported by the facts and case law, and that Plaintiffs had alleged sufficient facts to support claims against Ortega and Kilkelly. (Doc. No. 12). Plaintiffs also filed a Motion to Shorten Time requesting the Court to order Defendants to provide the identity of the Merck sales representatives responsible for soliciting Vioxx to Kissimmee, Florida

-2-

and/or Orange County, Florida and to provide the identity of the Merck sales representatives from 2001 to the present who were responsible for soliciting Dr. Olga Penerena and Dr. Cecilio Torres-Ruiz for Vioxx. (Doc. No. 13, filed on April 4, 2005).

In opposing Plaintiffs' First Motion to Remand, Defendants Ortega and Kilkelly filed declarations with the Court.[1] (Doc. No. 23, Ex. A, "Declaration of Gena Ortega") (Doc. No. 23, Ex. B, "Declaration of John Kilkelly"). In her declaration, Ortega testified that she had been employed by Merck as a professional representative, that she was responsible for making contacts with healthcare professionals in the Brandon/Tampa area regarding Vioxx, and that she never had any contact with Dr. Olga Penerena or Dr. Cecioilo Ruiz-Torres. (Doc. No. 23, Ex. A, ¶¶ 3, 5). Ortega further testified that she never supervised any other professional representative for Merck who had any discussions regarding Vioxx with either of these physicians and that she had never had a conversation with Plaintiffs concerning Vioxx. (Id. at ¶¶ 6, 7). In his declaration, Kilkelly similarly testified that he worked for Merck in the Tampa Florida District, that he never called any physician in Kissimmee Florida or supervised any professional representatives who had contact with health care professionals in Orange County, Florida or Kissimmee, Florida, that he never contacted Dr. Olga Penerena or Dr. Cecilio Ruis-Torres, and that he never spoke with Plaintiffs regarding Vioxx. (Doc. No. 23, Ex. B, ¶¶ 2, 5, 6, 9).

Plaintiffs have not countered the sworn declarations of Ortega and Kilkelly with evidence.

---

[1] While the declarations have not been notarized, Ortega's and Kilkelly's declarations are admissible as evidence because they meet the requirements of 28 U.S.C. section 1746. Under 28 U.S.C. section 1746, any matter that is required to be supported by a sworn declaration may, with like force and effect, be supported by an unsworn declaration, subscribed by the party, in writing, dated, and substantially attesting that the party declares under penalty of perjury that the foregoing is true and correct.

-3-

On April 7, 2005, the Magistrate Judge granted Plaintiffs' Motion to Shorten Time and ordered Merck to produce the identities of the Merck sales representatives sought in Plaintiffs' interrogatories as set forth in their motion by 5pm on April 8, 2005. (Doc. No. 16, filed on April 7, 2005).

Merck objected to the Magistrate Judge's Order Granting Plaintiffs' Motion to Shorten Time. (Doc. No. 18, filed on April 8, 2005).

This Order analyzes Plaintiffs' Motion to Remand and Merck's Objections to the Magistrate Judge's Order Granting Plaintiffs' Motion to Shorten Time.

### Standard of Review

The Constitution and Congress limit a federal court's jurisdiction by restricting the types of cases which the courts may hear. *See Kokkonen v. Guardian Life Ins. Co of Am.*, 511 U.S. 375, 377 (1994). Thus, there is a strong presumption that state court jurisdiction is proper, and the statutory right of removal is to be strictly construed. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 109 (1941) ("Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined.") (citations omitted). All doubts about jurisdiction should be resolved in favor of remand to state court. *University of South Alabama v. American Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999) (citations omitted).

### Analysis

Plaintiffs argue that collateral estoppel precludes Merck from removing this case from state court to federal court because Merck has previously attempted and failed to defeat remand by claiming fraudulent joinder in claims involving Ortega, Kilkelly, and Merck. The orders upon which Plaintiffs seek to rely to collaterally estop Merck are orders from courts in this district, the Southern District of

-4-

Florida, and the Southern District of Illinois.

A party properly invokes collateral estoppel when "the issue in the subsequent proceeding is identical to the one involved in the prior action, the issue was actually litigated, and the determination of the issue was necessary in the prior action." *Cotton States Mutual Ins. Co. v. Anderson*, 749 F.2d 663, 666 (11th Cir. 1984) (internal citation and quotation omitted). The offensive use of collateral estoppel occurs when the plaintiff seeks to preclude the defendant from litigating an issue that the defendant previously litigated in an action with another party. *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 n.4 (1979). Courts have broad discretion in determining whether offensive collateral estoppel is appropriate. *Id.* at 331.

Plaintiffs move to remand this case to state court pursuant to 28 U.S.C. section 1447(c).[2] Under 28 U.S.C. section 1447(d),[3] an order remanding an action to state court pursuant to section 1447(c) is not reviewable on appeal, even if the remand order is clearly erroneous. *Poore v. American-Amicable Life Ins. Co. of Tex.*, 218 F.3d 1287, 1291 (11th Cir. 2000). Offensive collateral estoppel is not appropriate in cases where an issue is not reviewable on appeal. *Warner/Elektra/Atlantic Corp. v. County of Dupage*, 991 F.2d 1280, 1282 (7th Cir. 1993) ("an unappealable finding does not collaterally estop"); *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 44 (2nd Cir. 1986) ("inability to obtain appellate review...does prevent preclusion"). Because the orders that Plaintiffs urge the Court to rely on to

---

[2] 28 U.S.C. section 1447(c) provides, in relevant part, that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."

[3] 28 U.S.C. section 1447(d) states: "An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise, except that an order remanding a case to the State court from which it was removed pursuant to section 1443 of this title shall be reviewable by appeal or otherwise."

-5-

collaterally estop Merck are not reviewable on appeal, the Court finds that the doctrine of offensive collateral estoppel is not applicable to this case.

Merck seeks to prevent remand of this case to state court by arguing that Ortega and Kilkelly were fraudulently joined as defendants and, as such, do not defeat this Court's diversity jurisdiction. When alleging fraudulent joinder, "the removing party has the burden of proving that either: (1) there is no possibility that the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court." *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997). The removing party bears a heavy burden in meeting these requirements. *Id.* To determine whether the case should be should be remanded, the Court evaluates the factual allegations in the light most favorable to the plaintiff and resolves any uncertainties about state substantive law in the plaintiff's favor. *Id.; see also Cabalceta v Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989). In addition to the plaintiff's pleadings, the Court may consider evidence such as affidavits and depositions submitted by the parties. *Crowe*, 113 F.3d at 1538; *Cabalceta*, 883 F.2d at 1561.

Plaintiffs alleged several claims against Ortega and Kilkelly which include negligence, negligent misrepresentation, fraud, and loss of consortium. Plaintiffs, however, have failed to counter the declarations of Ortega and Kilkelly with evidence. Because the declarations of Ortega and Kilkelly demonstrate that neither of them, either directly or through representatives under their supervision, communicated with Plaintiffs or Plaintiffs' physicians about Vioxx, Plaintiffs cannot establish a cause of action for negligence, negligent misrepresentation, fraud, or loss of consortium against Ortega or Kilkelly. Thus, Ortega and Kilkelly were fraudulently joined.

As for Plaintiffs' attempt to seek the identities of the representatives from Merck who are

-6-

connected to Plaintiffs' case, the Multi-District Litigation Panel will determine the identities of the representatives, and it is not necessary for Merck to produce this information at this time. Therefore, the Court sustains Merck's Objections to the Magistrate Judge's Order that Merck produce the identities of the sales representatives sought in Plaintiffs' interrogatories as set forth in their motion.

### Conclusion

Based on the foregoing, the Court rules as follows:

1.  Plaintiffs Conchita Merced-Torres' and Cesar Vives' First Motion to Remand is **DENIED.** (Doc. No. 12).

2.  Defendant Merck & Co, Inc.'s Objections to the Magistrate Judge's Order Granting Plaintiffs' Motion to Shorten Time are **SUSTAINED.** (Doc. No. 18).

**DONE** and **ORDERED** in Chambers in Orlando, Florida on May _____17th_____ 2005

PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record

-7-

LAW OFFICES

# RUSHTON, STAKELY, JOHNSTON & GARRETT, P.A.

A PROFESSIONAL ASSOCIATION

184 COMMERCE STREET
MONTGOMERY, ALABAMA 36104

BENJAMIN C. WILSON
EMAIL: BCW@RSJG.COM
DIRECT TELEPHONE:
(334) 206-3194
DIRECT FACSIMILE:
(334) 481-0831

MAILING ADDRESS:
POST OFFICE BOX 270
MONTGOMERY, ALABAMA 36101-0270

WWW.RSJG.COM

October 30, 2006

Honorable Kim Benefield
**Randolph County Circuit Court Clerk**
P.O. Box 328
1 Main Street
Wedowee, Alabama 36278-0328

**Filed in Office**

OCT 3 1 2006

KIM S. BENEFIELD
Clerk of Circuit Court

Re:  *Clifford Bailey, et al. v. Merck & Co., Inc., et al.*
     Circuit Court of Randolph County, AL/CV-06-145

Dear Ms. Benefield:

I have enclosed an original and a copy of a *Notice of Filing Notice of Removal.*  Please file the original with the court and return a date-stamped to me.

Thank you for your assistance in this matter.

Sincerely yours,

BEN C. WILSON

BCW/dcr
Enclosures

AVSO305



ALABAMA JUDICIAL DATA CENTER
RANDOLPH     COUNTY

ORDER FOR SERVICE AND RETURN

CV 2006 000145.00
ASSIGNED JUDGE

----------------------------------------------------------------

IN THE CIRCUIT  COURT OF  RANDOLPH     COUNTY

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL

SERVE ON:  D017

WALLS RANDY      3/5 AZ
7620 MACK HICKS RD

CLAY              ,AL  35048-0000

NOTES:
SUMMONS & COMPLAINT

----------------------------------------------------------------

TO ANY SHERIFF OR ANY AUTHORIZED AGENT:
        YOU ARE HEREBY ORDERED TO DELIVER THE ATTACHED DOCUMENT
        TO THE ABOVE NAMED PERSON AT THE ADDRESS INDICATED.

    09/21/2006  DATE          CLERK:  KIM S. BENEFIELD     BY: CW
                                      P. O. BOX 328
                                      WEDOWEE  AL  36278
                                      (256)357-4551

----------------------------------------------------------------

I HEREBY CERTIFY THAT I PERSONALLY DELIVERED A COPY OF THE ATTACHED
   DOCUMENT IN _____ COUNTY, ALABAMA
   TO:

_____          _____
                                          SIGNATURE OF SERVER

_____

_____          _____
NAME / ADDRESS ABOVE                      DATE

----------------------------------------------------------------

OPERATOR: CYW
PREPARED: 09/21/2006

RCVD-OCT 02 '06 AM11:45

| State of Alabama Unified Judicial System | **SUMMONS** | Case Number |
|---|---|---|
| Form C-34    Rev 6/88 | **- CIVIL -** | CV06-145 |

**IN THE** _____ CIRCUIT _____ **COURT OF** _____ RANDOLPH _____ **COUNTY**

**Plaintiff**    CLIFFORD BAILEY, et. als.    **v. Defendant**    MERCK & CO., INC., et. als.

**NOTICE TO** _____ Randy Walls, 7620 Mack Hicks Road, Clay, AL 35048 _____

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY _____ THOMAS J. KNIGHT _____ WHOSE

ADDRESS IS _____ HUBBARD & KNIGHT, 1125 NOBLE STREET, P.O. BOX 1850, ANNISTON, AL 36202 _____ .

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN _____ 30 _____ DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

**TO ANY SHERIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:**

☒ You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant.

☐ Service by certified mail of this summons is initiated upon the written request of _____ pursuant to the Alabama Rules of Civil Procedure.

Date ____ 9/21/06 ____    Kim S. Benefield    By: ____

Clerk/Register

☐ Certified Mail is hereby requested.    _____

Plaintiff's/Attorney's Signature

**RETURN ON SERVICE:**

☐ Return receipt of certified mail received in this office on _____
                                                              (Date)

☐ I certify that I personally delivered a copy of the Summons and Complaint to _____
_____ in _____ County,
Alabama on _____ .
                        (Date)

_____    _____
Date                         Server's Signature

_____    _____
Address of Server            Type of Process Server

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

| | |
|---|---|
| CLIFFORD BAILEY, CLIFFORD BLACK, WESLEY CALHOUN, CURTIS DEASON, RUTH GRAVES, MICKEY GRIZZARD, JIMMY PERRY, HERBERT STANLEY SIKES and PHILLIP THOMPSON<br><br>     Plaintiffs,<br><br>vs.<br><br>MERCK & CO., INC., a foreign or domestic Corporation, DAVID SPARKMAN, KATHERINE HOLMES, LORI LOVETT, SCOTT BARTLETT, CORAL HARPER, MELISSA SANTIAGO, HENRY MITCHAM, JERRY PHARR, JASON DELK, CHARLES HENDERSON, JAMES HOUSTON, JULIE MELTON, JULIE HODGES, and MELISSA BAUER, NATASHA WALKER-MCGLOTHAN , RANDY WALLS, and the defendants A, B, C, D, E, X & Z whether singular or plural, being those persons, firms or entities who or which proximately caused or contributed to the Plaintiff's personal injury and Plaintiff's other harm and the other damages as complained of herein whose true names are unknown to the Plaintiffs but will be added by amendment when correctly ascertained,<br><br>     Defendants. | CASE NUMBER: CV-06-_145_<br><br><br>**Filed in Office**<br><br>SEP 2 1 2006<br><br>KIM S. BENEFIELD<br>Clerk of Circuit Court |

## <u>COMPLAINT</u>

**NOW COME** the Plaintiffs, Clifford Bailey, Clifford Black, Wesley Calhoun,

Curtis Deason, Ruth Graves, Mickey Grizzard, Jimmy Perry, Herbert Stanley Sikes, and

Phillip Thompson, and state their claims for relief against defendants Merck & Co., Inc., a

Corporation (hereinafter generally referred to as Merck), Merck Corporation, a trade name

1

or division of Merck & Co., Inc. David Sparkman, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Melissa Bauer, Natasha Walker-McGlothan, Randy Walls, and against defendants A, B, C, D, E and F, and X and Z, whether singular or plural, being those persons, firms or entities who or which proximately caused or contributed to the Plaintiff's personal injuries and the other damages as complained of herein whose true names are unknown to the Plaintiffs but will be added by amendment when correctly ascertained, with the claims being as follows:

## GENERAL AND JURISDICTIONAL ALLEGATIONS

1.    Plaintiffs, Clifford Bailey, Clifford Black, Wesley Calhoun, Curtis Deason, Ruth Graves, Mickey Grizzard, Jimmy Perry, Herbert Stanley Sikes, and Phillip Thompson, are resident citizens of the State of Alabama and of Randolph County. Defendants were severally the marketer, promoter, seller, manufacturer, distributor and entity which did manufacture, create, design, test, label, package, distribute, supply, market, sell, advertise, fail to warn, and otherwise handle and distribute the product, Vioxx. Each defendant does business in Alabama and in Randolph County, and at all times relevant each sold in Alabama and in Randolph County, the aforementioned drug, or is otherwise subject to this Court's jurisdiction. The defendants do business by agent in this state and county and have caused tortious injury in this state and county by manufacturing and selling a dangerous and defective product. Each defendant, acting directly or by agent, is legally responsible to Plaintiffs as a consequence of that defendants' (A) transacting any business in this state, (B) contracting to supply services or goods in this state, (C) causing tortious injury or

2

damage by an act or omission in this state, (D) causing tortious injury or damage in this state by an act or omission outside this state and the defendant regularly does or solicits business, or engages in any other persistent course of conduct or derives substantial revenue from goods used or consumed or services rendered in this state, (E) causing injury or damage in this state to a person by breach of warranty expressly or impliedly made in the sale of goods outside this state when the defendant might reasonably have expected such other person to use, consume, or be affected by the goods in this state, and the defendant also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state, and otherwise had or has some minimum contacts with this state and, under the circumstances, it is fair and reasonable to require the defendant to come to this state to defend an action. The amount in controversy in this civil action exceeds the jurisdictional minimum for the Circuit Courts. This Court has jurisdiction hereof both as to the subject matter and in personam.

2.     Plaintiffs brings this action to recover damages for personal injuries, restitution, refunds, and/or for equitable and declaratory relief against defendants Merck & Co., Inc., a Foreign Corporation, Merck Corporation, a trade name or division of Merck & Co., Inc., and Merck Pharmaceutical Division, a Division of Merck Corporation, (collectively referred to herein as, "Merck" or "defendants"), which developed, tested, designed, marketed, distributed, promoted and sold Vioxx. The defendants David Sparkman, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Melissa Bauer, Natasha Walker-McGlothan, and Randy Walls are,

3

or have been employees of defendant, Merck and are persons who are liable to Plaintiffs and whose conduct is described in detail elsewhere in this Complaint. These defendants are resident citizens of Alabama. These defendants, and other persons whose true names are unknown to the Plaintiffs, set about to sell and market Vioxx throughout the state of Alabama and in such a manner that their conduct was a substantial proximate cause of the injuries suffered by Plaintiffs Clifford Bailey, Clifford Black, Wesley Calhoun, Curtis Deason, Ruth Graves, Mickey Grizzard, Jimmy Perry, Herbert Stanley Sikes, and Phillip Thompson. Defendants A, B, C, D, E, F, X and Z, whether singular or plural, are those persons, firms or entities who or which proximately caused or contributed to the Plaintiffs' damages as complained of herein whose true names are unknown to the Plaintiffs but will be added by amendment when correctly ascertained. As used in this Complaint, the general word "defendants" includes, incorporates, and is defined to mean, not only the named defendants, but also defendants A, B, C, D, E, F, X and Z, being those persons, firms or entities who or which proximately caused or contributed to the Plaintiffs' personal injuries and the other damages as complained of herein whose true names are unknown to the Plaintiffs but will be added by amendment when correctly ascertained.

3.    Vioxx has been associated with heart attacks, strokes and deaths, including cases of fatal cardiovascular events. Vioxx was recalled and removed from the market because it was unreasonably dangerous and defective.

4.    Excess deaths and cardiovascular events, hypertension, edema, kidney damage, aseptic meningitis, and slow healing of bone fractures are also associated with Vioxx.

5.    The relief sought in this action are actions by the court to (1) provide

4

damages for Plaintiffs' personal injuries, (2) reimburse monies paid for the recalled product, (3) otherwise compensate Plaintiffs, a consumer of Vioxx who has suffered the injuries described elsewhere in this Complaint, (4) to provide other benefits to which the Plaintiffs are entitled under the laws of the State of Alabama, and (5) the other relief sought in this Complaint.

## PARTIES TO THIS CIVIL ACTION

### PARTY Plaintiffs

6.     Plaintiffs, Clifford Bailey, Clifford Black, Wesley Calhoun, Curtis Deason, Ruth Graves, Mickey Grizzard, Jimmy Perry, Herbert Stanley Sikes, and Phillip Thompson, are resident citizens of the State of Alabama and of Randolph County.   Plaintiffs are residents of this county who prescribed, purchased and used Vioxx.  Plaintiffs, Clifford Bailey, Clifford Black, Wesley Calhoun, Curtis Deason, Ruth Graves, Mickey Grizzard, Jimmy Perry, Herbert Stanley Sikes, and Phillip Thompson, were prescribed and ingested Vioxx regularly after being prescribed the said drug by his physician.   Plaintiffs suffered personal injuries as a proximate result of the effects of his ingestion of Vioxx.   Plaintiffs experienced symptoms of Vioxx-induced cardiovascular events, suffered personal injury from the product defect in Vioxx and were at increased risk for developing further complications from such condition all as a proximate result of his ingestion of Vioxx.

7.     Plaintiffs, Clifford Bailey, Clifford Black, Wesley Calhoun, Curtis Deason, Ruth Graves, Mickey Grizzard, Jimmy Perry, Herbert Stanley Sikes, and Phillip Thompson were prescribed and consumed the product at the direction of their physicians in the State

5

of Alabama and in Randolph County.

**PARTIES DEFENDANT**

8.      Defendant, Merck & Co., Inc., is a corporation headquartered and with its principal place of business in Whitehouse Station, New Jersey. Merck & Co., Inc. manufactures, marketed and distributed Vioxx throughout the world, including Alabama. Defendants, David Sparkman, Natasha Walker-McGlothan, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Melissa Bauer, Natasha Walker-McGlothan, and Randy Walls, are persons employed by or associated with defendant, Merck, who are, with other Merck employees, the persons guilty of the conduct, the acts and omissions, specifically described and set forth in detail in this Complaint.

9.      On information and belief defendants David Sparkman, Natasha Walker-McGlothan, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Natasha Walker-McGlothan, Randy Walls, and Melissa Bauer, are resident citizens of the State of Alabama.

10.      Defendant, X is a corporation or other entity organized under the laws of the state of Alabama and having its principal place of business in the state of Alabama. This entity was or acted in concert with the defendants and is otherwise liable to Plaintiffs as described herein.

11.      Defendant, Z is a corporation or other entity organized under the laws of a state other than Alabama and having its principal place of business in a state other than Alabama. This entity was or acted in concert with the defendants and is otherwise liable

6

to Plaintiffs as described herein.

12.    At all times relevant hereto, defendants, including defendants A, B, C, D, E, F, X and Z whose true names are unknown to the Plaintiffs but will be added by amendment when correctly ascertained, were engaged in the business of developing, designing,  marketing, distributing, promoting, testing, providing warnings concerning, labeling and/or selling the pharmaceutical Vioxx. On information and belief, defendants Merck Pharmaceutical Division and Merck Corporation otherwise were in control of the development, design, assembly, manufacture, warnings concerning, marketing and with others, the sale of Vioxx. As used in this Complaint, the general word "defendants" includes, incorporates, and is defined to mean, not only the named defendants, but also defendants A, B, C, D, E, F, X and Z, being those persons, firms or entities who or which proximately caused or contributed to the Plaintiff's personal injuries and the other damages as complained of herein whose true names are unknown to the Plaintiffs but will be added by amendment when correctly ascertained.

## JURISDICTION AND VENUE

13.    This Court has general subject matter jurisdiction and in personal jurisdiction on grounds as shown above.

14.    Venue is proper in this county in that the substantial relevant facts occurred  in this county.

## FACTUAL ALLEGATIONS

15. Vioxx is the brand name of Rofecoxib, one of the classes of drugs called "Cox-II

7

inhibitors," which are supposed to work to reduce inflammation and pain by providing analgesic and anti-inflammatory benefits to persons with, among other conditions, arthritis, and muscle pain.

16.  Vioxx has effects on prostaglandins at inflammatory sites, and on prostacyclin, vasodilators and inhibitors of platelet aggregation.

17.  Vioxx, manufactured by Merck & Co., has a demonstrated risk that is or was misrepresented by Merck and benefits that were exaggerated and oversold to the public and physicians through an aggressive marketing campaign, while risks were purposefully hidden. Merck has profited tremendously from its misconduct described in this Complaint. Merck has been, with regard to Vioxx, over-promoting drugs that are far more expensive than older versions, but no better at relieving pain, while containing unreasonable risks of harm.

18.  When Vioxx (Rofecoxib) and Celebrex (Celecoxib), a new kind of pain medication known as Cox-2 inhibitors, were introduced in 1999, manufacturers and their supporters hailed them as a kind of "super-aspirin" that lacked the stomach-injuring side effects of the older non steroidal anti-inflammatory drugs (NSAIDs). But valid questions soon arose about the efficacy and safety of Cox-2 drugs. Celebrex is discussed herein because of the chemical similarity, and the notice to Merck provided by Celebrex events. Pharmacia Corporation makes Celebrex, which it describes as "a major advance in the treatment of the debilitating diseases osteoarthritis and rheumatoid arthritis, because of its efficacy and excellent gastrointestinal safety profile."

19.  The drugs, approved to treat arthritis, menstrual pain and "acute" pain in adults, have been heavily marketed to both doctors and consumers: Merck as to Vioxx,

8

which ran ads featuring former Olympic figure skater Dorothy Hamill, and spent over $160 million on consumer advertising in 2000; Celebrex spent almost $80 million, according to AdWatch, the health policy arm of the Henry Kaiser Family Foundation. The campaigns worked: In 2001, Vioxx, the 13th most prescribed drug in the United States, had worldwide sales of $2.6 billion.

20.     Older NSAIDs, such as ibuprofen, Naproxen and Diclofenac, work by inhibiting the two types of cyclooxygenase enzyme, one of which causes inflammation and thus pain. The Cox-1 enzyme, however, helps maintain the muscle surface of the gastrointestinal (GI) tract, so suppressing the enzyme can increase perforations, ulcers and bleeding. Vioxx, Celebrex and Bextra (Valdecoxib, introduced by G.D. Searle & Co. in 2001) suppress only the second enzyme, supposedly leaving the first alone to protect the GI tract.

21.     Merck's Vioxx Gastrointestinal Outcomes Research Study (VIGOR), performed from January 6, 1999 through March 17, 2000, involved about 8,000 participants and assessed only the drug's effects on the stomach; the company ordered no end-point analyses for effects on the cardiovascular system.

22.     The objectives of the VIGOR study were to (1) "determine the relative risk of confirmed PUB (Perforation, Ulcers, Bleeding) in patients taking 50mg of Vioxx daily compared to patients in the group taking Naproxen 1000mg/day," and (2) "study the safety and tolerability of Vioxx in patients with rheumatoid arthritis."

23.     The VIGOR data revealed that: (a) patients on Vioxx were five times more likely to suffer a heart attack as compared to patients on Naproxen; and (b) patients on Vioxx were 2.3 times more likely to suffer serious cardiovascular disease (including heart

9

attacks, ischemic stroke, unstable angina and sudden unexplained death) as compared to patients on Naproxen.

24.     The study concluded that Vioxx takers had a lower rate of GI distress than those taking naproxen. The researchers noted, "the incidence of myocardial infarction was lower among patients in the naproxen group than among those in the Rofecoxib group," but found "the overall mortality rate and the rate of death from cardiovascular causes were similar in the two groups." They drew conclusions only about clinical upper gastrointestinal events, bleeding and ulcers. Stroke is caused by Vioxx with the same mechanism as myocardial infarction.

25.  On March 27, 2000, Merck issued a press release stating that Vioxx caused fewer digestive tract problems than Naproxen.  The press release further stated that the VIGOR results did not show that Vioxx caused cardiovascular problems, but that Naproxen protected against them.

26.     After the VIGOR results were released, the FDA said Merck had minimized the fourfold to fivefold increase in heart attacks among study participants taking Vioxx compared with those taking Naproxen. It found the company's explanation that Vioxx did not increase the risk of heart attacks, but instead, Naproxen protected those taking it from heart attacks because the drug can thin the blood, like aspirin unacceptable. In a September 2001 warning letter to Merck, the FDA wrote, "You fail to disclose that your explanation is hypothetical, has not been demonstrated by substantial evidence, and that there is another reasonable explanation: that Vioxx may have pro-thrombotic properties."

27.     While Vioxx and Celebrex have been marketed as safer than traditional NSAIDs because of their stomach-protecting propensity, reports of serious side effects

10

have now emerged. The defendants knew the salient facts concerning their drug long before the discovery of dangers by outside researchers, but ignored or concealed risks and dangers and continued to misrepresent the safety (or lack of safety) of Vioxx. In June 2000, a research team led by A. Whelton noted in a presentation to the European United League Against Rheumatism (EULAR), of which Merck is a member and corporate sponsor, that Vioxx use resulted in a statistically significant increase in hypertension, myocardial infarction, and stroke. Not only did Merck do nothing to further accurately publish these studies, or warn consumers, but in August 2000, it denied the results with respect to hypertension in the official publication of the American Pharmaceutical Association, "Pharmacy Today." The medical journal,"The Lancet," published a study associating Vioxx with kidney failure, and other studies have associated both Vioxx and Celebrex with heart problems, kidney damage, aseptic meningitis and slow healing of bone fractures.

28.     A metastudy by the Cleveland Clinic published in the Journal of the American Medical Association analyzed data from two major studies funded by the drug companies and two smaller ones, all for cardiovascular risks. (Debabrata Mukherjee et al., Risk of Cardiovascular Events Associated with Selective Cox-2 Inhibitors, 286 JAMA 954 (2001).) It found that neither Pharmacia/Pfizer nor Merck had identified and studied cardiovascular risks for their products. The annualized heart attack rates for patients taking Vioxx or Celebrex, the researchers found, were "significantly higher" than those in a group taking placebos. "The available data raise a cautionary flag about the risk of cardiovascular events with Cox-2 inhibitors," they concluded. Defendants set about to discredit and deny these studies.

11

29.    The FDA, which lists Vioxx and Celebrex information on the "Hot Topics" section of its Web site, required both drugs to carry the same stomach-upset and bleeding warnings ibuprofen and Naproxen had when the agency approved them in 1999.

30.    After the CLASS results, the FDA found that Celebrex is just as likely to cause ulcers as older NSAIDs and is no better at reducing pain or inflammation than ibuprofen. In June 2002, it mandated a new label for the drug, one without any claim that it is safer for the stomach than other NSAIDs.

31.    Because of information provided by Merck, the agency did allow Merck to change its Vioxx label to claim it has a lower risk than older NSAIDs of causing ulcers, gastrointestinal bleeding and other digestive-tract complications.

32.    As early as November 1999, an FDA memo stated that the board monitoring the VIGOR study was concerned about "excess deaths and cardiovascular events experienced in Group A [Vioxx group] compared to Group B [Naproxen]." In March 2002, the FDA reported that five people taking Vioxx had aseptic meningitis, an inflammation of membranes on the brain and spine. In April 2002, after the agency warned Merck that it had misrepresented the drug's safety and minimized potentially serious cardiovascular complications found in VIGOR, it required the company to include a warning of cardiovascular risks on the Vioxx label.

33.    The new warnings contained information long held by Merck, but consistent with later pattern and practice, concealed from consumers and their physicians. The new warnings included:

34.    "In VIGOR, a study in 8076 patients (mean age 58; VIOXX n=4047, Naproxen n=4029) with a median duration of exposure of 9 months, the risk of developing a serious

12

cardiovascular thrombotic event was significantly higher in patients treated with VIOXX 50 mg once daily (n=45) as compared to patients treated with Naproxen 500 mg twice daily (n=19)." ...

35.     "In a placebo-controlled database derived from 2 studies with a total 2142 elderly patients (mean age 75; VIOXX n=1067, placebo n=1075 with a median duration of exposure of approximately 14 months, the number of patients with serious cardiovascular thrombotic events was 21 vs. 35 for patients treated with VIOXX (Rofecoxib tablets and oral suspension) 25 mg once daily versus placebo, respectively. In these same 2 placebo-controlled studies, mortality due to cardiovascular thrombotic events was 8 vs. 3 for VIOXX versus placebo, respectively."

36.     Merck has repeatedly blamed its customers' cardiovascular events on underlying conditions, to avoid blaming Vioxx.  The prestigious New England Journal of Medicine later stated in regard to "the implications of these observations with respect to selective cyclooxygenase-2 inhibitors": "...thrombosis would be expected to occur in patients who are already at increased risk because of other underlying conditions" and "In the VIGOR trial... The rates of nonfatal myocardial infarction, nonfatal stroke, and death from any vascular event were higher in the Rofecoxib group than in the naproxen group (0.8 percent vs. 0.4 percent, P<0.05). This difference was largely due to a difference in the incidence of myocardial infarction (0.4 percent in the Rofecoxib group vs. 0.1 percent in the naproxen group, P<0.01). In contrast, in the CLASS trial, in which 21 percent of the patients took aspirin, there was no significant difference the treatment groups in the incidence of major cardiovascular events."  NEJM Volume 345:433-442 August 9, 2001 Number 6.

13

37.    In 2002 and 2003, unknown to Plaintiffs and their doctors, Merck refused requests from the American Heart Association the National Stroke Association and the Arthritis Foundation that it conduct additional safety studies, claiming that Vioxx was safe and that it did not plan to conduct any such study.

38.    On October 30, 2003, an article in The Wall Street Journal, unknown to Plaintiffs or their doctors, reported that another study sponsored by Merck, and presented at the annual meeting of the American College of Rheumatology, confirmed an increased risk of heart attacks in patients taking Vioxx. According to the Wall Street Journal, within the first 30 days of taking Vioxx, the risk of a heart attack was increased by 30% as compared to Celebrex. This study looked at the records of 54,475 Medicare patients, all of whom were over 65, and was described by the eminent Dr. Eric Topol as "the best study to date."

39.    In 2003, unknown to Plaintiffs and their doctors, Dr. Jerry Avorn, a Divisional Director at Brigham and Women's Hospital in Boston and colleague Dr. Daniel H. Solomon reported in a Merck-financed study based on a survey of patient records, that Vioxx, even at some moderate dosages, increased cardiovascular risks.

40.    Merck disputed the findings of the Avorn-Solomon study, and the name of the Merck epidemiologist who had contributed to the study was removed from the report before it was published in a medical journal.

41.    From January through June, 2004, Merck spent an estimated $45 million on Vioxx advertising.

42.    In May 2004, the results of a study funded by the Canadian government were published in "The Lancet." The study reviewed data from 1.3 million elderly patients

14

(66 and older) taking Vioxx, Celebrex, a common arthritis pain pill (NSAID) or no medication. The records from approximately 130,000 persons randomly reviewed from the population base found that persons taking Vioxx had an 80% increase in hospital admissions for congestive heart failure within one year of taking Vioxx when compared to persons taking NSAIDS.

43.    On August 25, 2004, still unknown to Plaintiffs and thier doctors, Dr. David Graham, Associate Director for Science in the FDA's Office of Drug Safety, presented results of a database analysis of 1.4 million patients that showed Vioxx users are more likely to suffer a heart attack or sudden cardiac death than those taking Celebrex or an older NSAID.

44.    Despite the foregoing, on August 26, 2004, Merck continued to represent to physicians and consumers that Vioxx was safe, and that any cardiovascular and/or cardiothrombotic side effects were not associated with the drug. Merck stated in a press release that "Merck stands behind the efficacy, overall safety and cardiovascular safety of Vioxx."

45.    On September 30, 2004, Merck finally withdrew Vioxx from the market after basically admitting to additional information from its own studies that study participants taking Vioxx after 18 months had twice as high a risk of cardiovascular events as the placebo group.

46.    Defendants, David Sparkman, Natasha Walker-McGlothan, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Natasha Walker-McGlothan, Randy Walls, and Melissa Bauer, being the professional

15

staff of Merck for the sales of Merck's products in the state of Alabama were aware of all of the facts, points and details relevant to the dangers of Vioxx. Knowing these facts, the defendants had a duty to inform, immediately, the doctors to whom they had given samples or otherwise sold Vioxx or promoted Vioxx to such doctors and other persons, of the important facts described in this complaint. This duty was fully applicable to the said defendants, David Sparkman, Natasha Walker-McGlothan, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Natasha Walker-McGlothan, Randy Walls, and Melissa Bauer, and their employer, Merck, prior to the time that the Plaintiffs' use of Vioxx. The said defendants David Sparkman, Natasha Walker-McGlothan, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Natasha Walker-McGlothan, Randy Walls, and Melissa Bauer, and defendant Merck, had a full duty, obligation, and responsibility, to advise and warn, and to disclose that the facts that they had previously provided were no longer true or correct.

47.    The said defendants, David Sparkman, Natasha Walker-McGlothan, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Natasha Walker-McGlothan, Randy Walls, and Melissa Bauer, and their employer, Merck, were both negligent and wanton in their failure to perform their duties and obligations under applicable law to advise all customers of Merck taking Vioxx directly or through their physicians of the dangers now known and disclosed, but said defendants and each and every one of them failed in his said duty imposed by law. The said defendants,

16

David Sparkman, Natasha Walker-McGlothan, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Natasha Walker-McGlothan, Randy Walls, and Melissa Bauer, and their employer, Merck, failed to exercise ordinary and reasonable care in the performance of their job functions and duties.

48.    The said defendants David Sparkman, Natasha Walker-McGlothan, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Natasha Walker-McGlothan, Randy Walls, and Melissa Bauer,  and their employer, Merck, knew the foregoing true facts concerning Vioxx, prior to their representations concerning the safety and efficacy of Vioxx, but nevertheless, continued to represent that the product was safe and effective. The true facts, as indicated above, were that the said drug, Vioxx, was unreasonably unsafe and unreasonably dangerous, but the said individual defendants and their employer, Merck, willfully misrepresented the facts to physicians and others in the state of Alabama with the plan, design and intent to market the dangerous and defective drug notwithstanding the knowledge of the dangers and defects, this conduct constitutes actionable fraud and deceit, and these misrepresentations were relied upon by the medical community, physicians, the public and the Plaintiffs to the detriment of the Plaintiffs in particular, and the customers of Merck, receiving Vioxx in general. The actions of defendants and others combined and concurred to constitute a conspiracy for which they are civilly liable.

49.    The acts and omissions of the defendants as described in this Complaint constitute fraudulent suppression of material facts sufficient to toll the running of any and all statutes of limitation, notice provisions, or other similar laws or requirements. Further,

the pendency of class actions describing and designating persons in the class including and occupied by the Plaintiffs herein, constitutes sufficient commencement of an action to toll the statutes of limitations and other notice provisions under applicable law.

50.    The defendants, David Sparkman, Natasha Walker-McGlothan, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Natasha Walker-McGlothan, Randy Walls, and Melissa Bauer, and their employer, Merck, misrepresented material facts, and fraudulently suppressed material facts, including but not limited to those detailed in this complaint, to the medical community in general, the Alabama physicians, and the Plaintiffs' treating physicians in particular, with regard to the safety and effectiveness of the drug, Vioxx, which material misrepresentations and fraudulent suppressions, proximately caused the injuries, losses, and damages specified elsewhere in this complaint.    The defendants, David Sparkman, Natasha Walker-McGlothan, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Natasha Walker-McGlothan, Randy Walls, and Melissa Bauer, and their employer, Merck, , personally visited and otherwise called on Plaintiffs' prescribing physicians, and conspired and combined among themselves and with others, to cause the Plaintiffs' prescribing physicians to believe that Vioxx was safe and effective, when in fact it was not safe or effective to sufficiently outweigh the unreasonable risks of harm posed by Vioxx and the said defendants otherwise committed actionable fraud, misrepresentation, and fraudulent suppression which proximately caused the injuries to the Plaintiffs described elsewhere herein.  Plaintiffs did not know, and could not have known, that Vioxx was unsafe or that it had caused their injuries and damages, until after not

earlier than September 30, 2004. Then data was released November 13, 2005, at the *American Heart Association* conference in Dallas, Texas, that was a study of 58,000 patients, which showed that heart disease patients taking 25 mg of Vioxx per day were five times as likely to die as patients not taking the drug. Defendants continued to conceal, suppress and secrete, important, relevant and crucial material information held by them and not by others.

51.    While today Merck warns of "heart attacks and similar serious events have been reported in patients taking Vioxx" at the time this information was hidden and concealed, and representations were made by the defendants that indicated that the product was, instead, safe and effective.

52.    As a result of the reliance by Plaintiffs, the medical community, and the public generally on the representations and statements of the defendants, including the individual defendants herein and Merck, the Plaintiffs took and consumed Vioxx. As a proximate result and consequence of his ingestion of Vioxx and as a direct and proximate consequence and result of the acts and omissions of the defendants including the individual defendants as described herein, Plaintiffs were injured.

53.    Merck was well aware of the Pharmacia-sponsored Celebrex Long-Acting Safety Study (CLASS), also involving about 8,000 arthritis sufferers, compared that drug to the older NSAIDs ibuprofen and diclofenac to determine whether it was less harmful to the stomach. In a JAMA article in 2000, the researchers published data accumulated over six months and concluded that Celebrex caused fewer ulcers than the older drugs. (Fred E. Silverstein et al., Gastrointestinal Toxicity with Celecoxib vs. Nonsteroidal Anti-inflammatory Drugs for Osteoarthritis and Rheumatoid Arthritis: The CLASS Study: A Randomized Controlled Trial, 284 JAMA 1247 (2000). However, researchers at that point

had 12 months of data that, when analyzed as a whole, showed no significant difference.

54.    The FDA said the CLASS study "did not show a safety advantage in upper gastrointestinal events for Celebrex compared to either ibuprofen or diclofenac." Because some of the study participants were also taking aspirin, which does affect the stomach, some analysts say the results may have been skewed. The company maintained that among those not taking aspirin, the rate of ulcers was lower in Celebrex takers. Again, Celebrex is relevant to this case because of the knowledge and notice provided to Merck and its defendant-employees.

55.   ' In a June 2002 editorial, the British Medical Journal said the Celebrex study misled consumers with "overoptimistic" data. It said the study was "seriously biased" because the complete results "clearly contradict[ed] the published conclusions" and showed a similar number of stomach complications in all patients, whether they took Celebrex or the older pain relievers.

56.    It has been reported that a substantial number of deaths worldwide have been associated with Vioxx.

57.    Plaintiffs seek, in addition to damages for personal injury, refunds of and restitution for monies paid as a result of their purchase of Vioxx, as well as all other ascertainable economic loss that occurred as a result of defendants' wrongful and improper conduct in connection with the manufacture, marketing, distribution, testing, promotion, labeling and/or selling of Vioxx. Plaintiffs therefore seek to have the defendants return the monies unlawfully and inappropriately acquired by them as a result of their sale of Vioxx.

58.    Plaintiffs seek to have defendants fully disclose and account for, and effect the accumulation and analysis of relevant medical information on Vioxx, including, but not

limited to, the results of all appropriate diagnostic tests performed as part of a medical research and for medical information concerning all persons as gathered, maintained and analyzed, and for medical research concerning the incidence, prevalence, natural course and history, diagnosis and treatment of Vioxx-induced personal injuries, and all this should be disclosed to Plaintiffs in this litigation.

## PLAINTIFFS' CLAIMS FOR RELIEF
## COUNT I

### PRODUCTS LIABILITY UNDER AEMLD AND STRICT LIABILITY PURSUANT TO §402A OF THE RESTATEMENT (SECOND) OF TORTS

59.      Plaintiffs incorporate by reference and re-alleges, as if fully set forth herein, each and every allegation contained in the other paragraphs of this Complaint, wherever contained.

60.      Defendants are manufacturers and/or suppliers of Vioxx and each had an opportunity to inspect the product which was superior to the knowledge or opportunity of the consumer's herein. The defendants were engaged in the business of manufacturing, creating, designing, testing, labeling, sterilizing, packaging, supplying, marketing, selling, advertising, warning and otherwise distributing Vioxx in interstate commerce, which they sold and distributed throughout the world, including the State of Alabama, to Plaintiffs.

61.      The Vioxx product supplied, distributed and manufactured by Merck, and A,

21

B, C, D and E and placed in the stream of commerce by defendants, and others were defective and unreasonably dangerous in design, manufacture and/or formulation in that, when it left the hands of the defendants as manufacturer and/or suppliers, the foreseeable risks exceeded the benefits associated with the design or formulation and they were unreasonably dangerous and defective. Plaintiffs show that they suffered injuries and damages as a result of the sale by defendants who sold the product in defective condition unreasonably dangerous to the ultimate consumer, and all the sellers were engaged in the business of selling such product and product was expected to and did reach the user or consumer without substantial change in the condition in which it is sold. The Plaintiffs were using Vioxx in a manner for which it was intended or in a reasonably foreseeable manner.

62.    Vioxx was expected to and did reach the Plaintiffs without substantial change in its condition as manufactured, created, designed, tested, labeled, sterilized, packaged, supplied, marketed, sold, advertised, undertook to warn, and otherwise distributed.

63.    The Vioxx manufactured by Merck, and/or A, B, C, D and E and supplied by them was defective in manufacture, design or formulation, in that, when it left the hands of the manufacturer and/or suppliers, it was unreasonably dangerous, in that it not meet the reasonable expectations of the ordinary consumer as to safety, and was more dangerous than an ordinary consumer would expect and more dangerous than other pain relievers. The Plaintiffs show that the product was unreasonably dangerous when it left the defendants' control, that it was substantially unaltered when the Plaintiffs used it, and that it proximately caused the Plaintiffs' injuries. The Plaintiffs were not aware of, and in the exercise of reasonable caution could not have discovered, the dangerous nature of Vioxx.

64.    The Vioxx manufactured and/or supplied by defendants was also defective

22

due to inadequate warning or instruction because the manufacturers and suppliers knew or should have known that the products created an unreasonable risk of harm to consumers and the defendants failed to adequately warn of said risks. The defendants' Vioxx caused increased risks of excess deaths and cardiovascular events, as well as kidney damage, aseptic meningitis, and slow healing of bone fractures upon consumption, and therefore constitute a product unreasonably dangerous for normal use due to their defective design, defective manufacture, and the defendants misrepresentations and inadequate facts disclosed to the Plaintiffs and their doctors. The Vioxx manufactured and/or supplied by defendants was defective due to inadequate care in marketing and post-marketing warnings or instruction because, after the defendants knew or should have known of the risk of injury from Vioxx and/or combination use of these drugs, they failed to provide adequate warnings to users or consumers of the product and continued to promote the product.

65.    As a direct and proximate result of defendants' manufacturing, creating, designing, testing, labeling, sterilizing, packaging, supplying, marketing, selling, advertising, warning, and otherwise distributing Vioxx in interstate commerce, Plaintiffs have suffered the injuries described elsewhere in this Complaint and was at an increased risk of and did in fact suffer by developing and suffering a cardiovascular event and has suffered damages and Plaintiffs are entitled to compensatory and punitive damages in an amount just and proper under law for personal injuries and other recoverable damages.

66.    The defendants, therefore, are liable to the Plaintiffs. The conduct of Merck and A, B, C, D and E was gross, willful, wanton, oppressive, intentional, burdensome, and otherwise such as to justify the imposition of punitive damages under Alabama law. Additionally, defendants' conduct was so outrageous as to constitute ill will, bad motive and

23

reckless indifference to the interests of the consumers. The Plaintiffs, therefore, are entitled to punitive damages. All of the defendants are liable to Plaintiffs jointly and severally for all general, special and other relief to which the Plaintiffs are entitled by law. As a consequence of the producing cause and as a legal result of the dangerous and defective condition of Vioxx as sold, developed, designed, marketed, manufactured and/or supplied by defendants, and as a direct and legal result of the tort, AEMLD violation, negligence and wantonness, carelessness, other wrongdoing and action(s) of defendants described herein:

67.     Plaintiffs were injured in their health, strength and activity and suffered injuries to body and mind;

68.     Plaintiffs have sustained economic loss, loss of earnings and diminution or loss of earning capacity, the exact amount of which is presently unknown;

69.     Plaintiffs required reasonable and necessary health care, attention and services and did incur medical, health, incidental and related expenses. As a direct and proximate result of defendants' manufacturing, creating, designing, testing, labeling, sterilizing, packaging, supplying, marketing, selling, advertising, warning, and otherwise distributing Vioxx in interstate commerce, Plaintiffs have suffered the injuries described elsewhere in this Complaint and Plaintiffs have suffered damages and are entitled to recover compensatory and punitive damages in an amount just and proper under law for personal injuries and other recoverable damages.

## COUNT II

### NEGLIGENCE AND WANTONNESS

70.     Plaintiffs incorporate by reference and reallege, as if fully set forth herein, each and every allegation contained in the other paragraphs of this Complaint, wherever

contained.

71.    It was the duty of the defendants to use reasonable care in the manufacturing, creating, designing, testing, labeling, sterilizing, packaging, supplying, marketing, selling, advertising, warning and otherwise distributing Vioxx.

72.    Contrary to their duty, the said defendants were guilty of one or more of the following careless, negligent and wanton acts and/or omissions:

Said defendants failed adequately and properly to test, study and inspect Vioxx so as to ascertain whether or not it was safe and proper for the purpose for which it was designed, manufactured and sold;

Failed to utilize and/or implement a reasonably safe design in the manufacture of Vioxx;

Failed to manufacture Vioxx in a reasonably safe condition for which it was intended;

Failed to adequately and properly warn Plaintiffs purchasing Vioxx of the risks of complications when used in a manner for which it was intended;

Failed to adequately and properly warn Plaintiffs purchasing Vioxx of the risks of diseases when used in a manner for which it was intended;

Failed to adequately and properly label Vioxx so as to warn the Plaintiffs of the risks of complications;

Failed to adequately and properly label Vioxx so as to fairly and sufficiently warn the Plaintiffs of the risks of excess deaths and cardiovascular events as well as kidney damage, aseptic meningitis, and slow healing of bone fractures;

Manufactured Vioxx which constituted a hazard to health;

Manufactured Vioxx which caused adverse side effects;

Sold and pushed Vioxx and handed out samples thereof while misrepresenting through word, deed, actions, distributing printed and other materials, all of the most important information concerning the dangers of Vioxx including especially the danger posed of sudden cardiovascular death; and were otherwise careless, negligent and wanton.

73.    As a direct and proximate result of defendants' manufacturing, creating, designing, testing, labeling, sterilizing, packaging, supplying, marketing, selling, advertising, warning, and otherwise distributing Vioxx in interstate commerce, Plaintiffs have suffered the injuries described elsewhere in this Complaint and Plaintiffs have suffered damages and are entitled to recover compensatory and punitive damages in an amount just and proper under law for personal injury and other recoverable damages.

## COUNT III

### NEGLIGENCE PER SE

74.    Plaintiffs incorporate by reference and reallege, as if fully set forth herein, each and every allegation contained in the other paragraphs of this Complaint, wherever contained.

75.    Defendants Merck, David Sparkman, Natasha Walker-McGlothan, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Natasha Walker-McGlothan, Randy Walls, and Melissa Bauer, and the fictitious defendants, had an obligation not to violate the law in the manufacture, design, formulation, compounding, testing, production, processing, assembly, inspection, research, distribution, marketing, labeling, packaging, preparation for use, sale and warning of the risks and dangers of Vioxx.

26

76.    Defendants, Merck, David Sparkman, Natasha Walker-McGlothan, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Natasha Walker-McGlothan, Randy Walls, and Melissa Bauer, and the fictitious defendants, violated Alabama Code §20-1-26, §20-1-27, and §8-19-5, et seq., related amendments and codes and regulations provided there under, and other applicable laws, statutes and regulations. No action is brought herein for violation of federal statutes, but claim is made for violation of the foregoing and any other state's applicable laws.

77.    Plaintiffs, as purchaser and consumer of Vioxx, are within the class of persons the state statutes and regulations described above are designed to protect and Plaintiffs' injuries are the type of harm these statutes are designed to prevent.

78.    The defendants, Merck, David Sparkman, Natasha Walker-McGlothan, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Natasha Walker-McGlothan, Randy Walls, and Melissa Bauer, and the fictitious defendants made false and fraudulent misrepresentations to physicians, Plaintiffs, and the general public that Vioxx is or was safe, effective, fit for its use as designated, and that it's components are not hazardous to the health of users all in violation of Alabama Code § 20-1-26 and 20-1-27 and other applicable law. defendants' acts constitute a breach of duty subjecting defendants to civil liability for all damages arising therefrom, under theories of negligence per se. Alabama Code §20-1-27 states that "No person shall engage in any of the following activities within this state:(1) Manufacture for sale herein, have in his or his possession with intent to sell, offer or expose for sale, sell, or deliver any article of food or drugs which is adulterated or misbranded within the meaning of this division."

79.    Said defendants failed to meet the standard of care set by the following statutes and regulations, which were intended for benefit of individuals such as Plaintiffs, making defendants negligent per se:

80.    The defendants made false and fraudulent misrepresentations to physicians, Plaintiffs, and the general public that Vioxx is or was safe, effective, fit for its use as designated, and that it's components are not hazardous to the health of users all in violation of Alabama Code § 20-1-26 and 20-1-27 and other applicable law;

81.    The labeling did bear or contain statements, designs or devices regarding the curative or therapeutic effect of Vioxx which were false or fraudulent and which concealed, in that they failed to provide adequate warnings of, severe and disabling medical side effects and conditions including, without limitations, cardiovascular events, hypertension and edema, as well as kidney damage, aseptic meningitis, and slow healing of bone fractures, excess deaths and adverse events and other adverse medical conditions as soon as there was reasonable evidence of their association with the drug;

82.    There was misleading and inadequate information for patients for the safe and effective use of defendants' drug in that a drug shall be deemed misbranded "if its package or label shall bear or contain any statement, design or device regarding the curative or therapeutic effect of such article or of any of the ingredients or substances contained therein which is false or fraudulent"; and

83.    There was misleading and inadequate information regarding special care to be exercised by the doctor for safe and effective use of defendants' drug, and the drug was therefore, misbranded.

84.    As a proximate result of the defendants' violations of the statutes described

28

above, Plaintiffs suffered injuries and personal injuries and damages as alleged herein.

## COUNT IV

### UNJUST ENRICHMENT

85.    Plaintiffs incorporate by reference and reallege, as if fully set forth herein, each and every allegation contained in the other paragraphs of this Complaint, wherever contained.

86.    As the intended and expected result of their conscious wrongdoing, defendants have profited and benefitted from the purchase of Vioxx by the Plaintiffs, to wit: (a) defendants have voluntarily accepted and retained these profits and benefits, derived from the Plaintiffs, with full knowledge and awareness that, as a result of defendants' fraud and other conscious and intentional wrongdoing, Plaintiffs were not receiving a product of the quality, nature, or fitness that had been represented by defendants or that Plaintiffs, as a reasonable consumer, expected.  (b) By virtue of the conscious wrongdoing alleged in this Complaint, defendants have been unjustly enriched at the expense of the Plaintiffs, who are entitled to in equity, and hereby seeks, the restitution of defendants' wrongful profits, revenue, and benefits, to the extent, and in the amount, deemed appropriate by the jury; and such other relief as the jury deems just and proper to remedy the defendants' unjust enrichment.

## COUNT V

### BREACH OF EXPRESS WARRANTY

87.    Plaintiffs incorporate by reference and re-allege, as if fully set forth herein, each and every allegation contained in the other paragraphs of this Complaint, wherever contained.

88.    Defendants expressly warranted to Plaintiffs, by and through statements

29

made by defendants or their authorized agents or sales representative, orally and in publications, package inserts and other written materials intended for physicians, medical patients and the general public, that Vioxx was safe, effective, fit and proper for its intended use.

89.    In using Vioxx, Plaintiffs relied on the skill, judgment, representations and foregoing express warranties of the defendants. Said warranties and representations were false in that the aforementioned product was not safe and was unfit for the uses for which it was intended.

90.    As a direct and proximate result of defendants breaches of warranties, Plaintiffs have suffered the injuries described elsewhere in this Complaint and Plaintiffs were at an increased risk of and did, in fact, suffer by developing cardiovascular events and has suffered damages for which Plaintiffs are entitled to recover from defendants in an amount just and proper under law for personal injury and other recoverable damages.

## COUNT VI

### BREACH OF IMPLIED WARRANTY

91.    Plaintiffs incorporate by reference and re-allege, as if fully set forth herein, each and every allegation contained in the other paragraphs of this Complaint, wherever contained.

92.    Prior to the time that Vioxx was used by Plaintiffs, defendants impliedly warranted to Plaintiffs that Vioxx was of merchantable quality and safe and fit for the use for which it was intended.

93.    Plaintiffs were unskilled in the subject of pharmacology or the research, design and manufacture of Vioxx and reasonably relied entirely on the skill, judgment and implied warranty of the defendants in using Vioxx.

94.    Vioxx was neither safe for its intended use nor of merchantable quality, as warranted by defendants, in that it had dangerous propensities when put to its intended use and would cause severe injuries and death to the user.

95.    As a direct and proximate result of defendants' breaches of warranties, Plaintiffs have suffered the injuries described elsewhere in this Complaint and Plaintiffs were at an increased risk of and did, in fact, suffer by developing cardiovascular events and have suffered damages for which Plaintiffs are entitled to recover from defendants in an amount just and proper under law for personal injuries and other recoverable damages.

## COUNT VII

### CORPORATE RESPONSIBILITY:
### JOINT VENTURES, PARENT/SUBSIDIARIES,
### AND/OR SUCCESSOR CORPORATION

96.    Plaintiffs incorporate by reference and re-allege, as if fully set forth herein, each and every allegation contained in the other paragraphs of this Complaint, wherever contained.

97.    As a result of their control or participation in various joint ventures, parent/subsidiary relationships and/or successor corporations, defendants are liable to the Plaintiffs.

98.    As a result of their negligent and wanton supervision and actual supervision of various joint ventures, parent/subsidiary relationships and/or successor corporations, defendants are liable to Plaintiffs.

99.    As a result of the existence or invalidity of various indemnification agreements, defendants are liable to Plaintiffs.

31

100.   Defendants are liable to Plaintiffs, as alter egos of their joint ventures, parent/subsidiary relationships and/or successor corporations.

## COUNT VIII

### CIVIL CONSPIRACY

101.   Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth here and further allege as follows:

102.   Defendants, Merck, David Sparkman, Natasha Walker-McGlothan, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Natasha Walker-McGlothan, Randy Walls, and Melissa Bauer, and fictitious defendants combined and conspired to do those acts complained of in Count I through Count IX, as a result of which the Plaintiffs have suffered harm, damages and injuries as previously described.

## COUNT IX

### FRAUD AND DECEIT

103.   Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth here and further allege as follows:

104.   Merck and the sales representative defendants made material misrepresentations of fact to the medical community, the Plaintiffs, the public generally, the governmental entities charged with the protection of the public from unsafe drugs, and to opinion leaders in the medical profession, intentionally in some cases and often with the specific intention of deceiving all these for monetary gain to the defendants, and in some cases negligently and wantonly, and even in rare cases, innocently, in all instances, with the intent and purpose to advance the sales of the dangerous drug Vioxx. The defendants

further suppressed material facts as to which they were under a duty to communicate to all of the above persons and entities. The misrepresentation and suppression was, in each case, of material and important facts essential for the health and safety of the public and of Plaintiffs in particular. As a result of the misrepresentations, deceit, and suppression by the defendants as set forth previously in this Complaint and as set forth below, these parties, and Plaintiffs were deceived and defrauded, and as a direct and proximate result of the said deceit, fraud, misrepresentation, and fraudulent suppression the Plaintiffs suffered the harm and injury as set forth in this Complaint.

105.    By the time Merck voluntarily withdrew the anti-inflammatory drug Vioxx from the market in September 2004, more than 100 million prescriptions had been dispensed in the United States. Yet the vast majority of these prescriptions were written by physicians after Merck and the Sales Representative defendants knew that evidence of Vioxx's risks had already surfaced. Even as evidence mounted in defendants' hands that use of Vioxx was associated with heart attacks and strokes, physicians continued to prescribe Vioxx to millions of patients. The reason is the fraudulent scheme perpetrated by the defendants. A major part of the explanation may be found by examining the strategies that Merck and its sales representatives used to market Vioxx to physicians. Based on Merck documents, Merck sent over 3,000 highly trained representatives, including the individual defendants herein, into doctors' offices and hospitals armed with misleading information about Vioxx's health risks. The documents indicate that Merck instructed these representatives to show physicians a pamphlet indicating that Vioxx might be 8 to 11 times safer than other anti-inflammatory drugs, prohibited the representatives from discussing contrary studies (including those financed by Merck) that showed increased risks from Vioxx, and launched special marketing programs — named "Project XXceleration" and "Project Offense" and

"Dodgeball"— to overcome the cardiovascular "obstacle" to increased sales.

106.  On information and belief, Plaintiffs aver that while some sales representatives eventually refused to continue with this course of conduct, other representatives, including the individual defendants herein, continued with the misrepresentations and fraudulent concealment, notwithstanding knowledge of the falsity and of the dangers to patients. The Sales Representative defendants were provided two types of materials relevant to drug safety and effectiveness: "approved" and "background" materials. The "approved" items were to be aggressively used in pushing Vioxx because they were things like medical journal articles favorable to Merck. On the other hand, the "background" materials also contained things unfavorable to Vioxx, and the Sales Representative defendants suppressed this information from the prescribing doctors as Merck requested.

107.  The documents reveal that Merck exhaustively trained its representatives on how to persuade doctors to prescribe Vioxx and other Merck products. No interaction with physicians appears to have been too insignificant for instruction. Merck representatives were taught how long to shake physicians' hands (three seconds), how to eat their bread when dining with physicians ("one small bite size piece at a time"), and how to use "verbal and non-verbal" cues when addressing a physician to "subconsciously raise... his/her level of trust." Merck instructed its representatives on the various personality types of doctors (including "technical," "supportive and expressive") and recommended targeted sales techniques for each type. And Merck rewarded its sales force with thousands of dollars in cash bonuses for meeting sales goals.

108.  The company assigned individual doctors a "Merck potential" and graded them on how often they prescribed Merck products. The Sales Representative defendants

34

were also involved in the Merck scheme to communicate misinformation about Vioxx to what defendants called "thought leaders" in the medical community. By this device, defendants could sell more Vioxx even to those doctors to whom they did not or could not speak directly or in detail. The "thought leaders" were to influence the medical community to push more Vioxx, despite the dangers, since they could "influence colleagues through peer-to-peer relationships." To help them do this, the Sales Representative defendants used Merck-paid honoraria (money) to these "thought leaders" to influence the medical community to favor Vioxx and to prescribe it notwithstanding the dangers.

109.    The documents describe in detail how Merck used this highly trained sales force to respond to reports of Vioxx's safety risks. The first public indication that Vioxx posed a heightened risk of heart attack and stroke came in March 2000, when Merck's VIGOR study showed a five-fold increase in the risks of heart attacks in patients on Vioxx compared to patients on Naproxen. This study was followed by cautionary discussions of the cardiovascular risks of Vioxx at a meeting of an advisory committee to the Food and Drug Administration in February 2001, in a New York Times article in May 2001, and in a paper in the Journal of the American Medical Association in August 2001.

110.    After each of these developments, Merck sent bulletins or special messages to its sales force, directing them to use highly questionable information to assuage any physician concerns.

111.    For example, the Merck documents show:

After Merck's VIGOR study reported increased heart attack risks, Merck directed its sales force to show physicians a "Cardiovascular Card" that made it appear that Vioxx could be 8 to 11 times safer than other anti-inflammatory drugs. This card omitted any reference to the VIGOR findings

35

and was based on data FDA considered to be inappropriate for a safety analysis.

  After the FDA advisory committee voted that physicians should be informed about the risks found in the VIGOR study, Merck sent a bulletin to its sales force that advised: "DO NOT INITIATE DISCUSSIONS ON THE FDA ARTHRITIS COMMITTEE ... OR THE RESULTS OF THE ... VIGOR STUDY." If physicians asked about the VIGOR study, Merck representatives were directed to respond, "I cannot discuss the study with you." After the New York Times reported on the cardiovascular dangers of Vioxx, Merck instructed its field staff to tell physicians that patients on other anti-inflammatory medications were eight times more likely to die from cardiovascular causes than patients on Vioxx. The Merck bulletin told its sales force to show physicians the Cardiovascular Card and state: "Doctor, as you can see, Cardiovascular Mortality as reported in over 6,000 patients was Vioxx .1 vs. NSAIDS .8 vs. Placebo 0."

  112. After extensive negotiations, FDA and Merck agreed on a label change for Vioxx in April 2002, that mentioned the cardiovascular findings from the VIGOR study. The final label included the statement that the significance of these findings were "unknown." According to the documents, Merck instructed its representatives to emphasize this statement on new labels to counter physician safety concerns. Merck documents show that in fact the cardiovascular risks were actually well-known, but suppressed, by defendants.

  113. Merck and other drug companies maintain publicly that their representatives play a vital role in the health care system by educating physicians about new drugs and ongoing research. But the Merck documents reveal another side to company marketing

efforts. The documents show that Merck trained its representatives to capitalize subtly on every interaction with physicians to promote Merck products. When concerns about Vioxx's safety arose, Merck used this highly trained force to present a misleading picture to physicians about the drug's cardiovascular risks. Merck's and the Sales Representatives' promotional efforts explain in large part why Vioxx sales remained strong even as the evidence of the drug's dangers mounted. Prescribing doctors were massively misled.

114.    The Sales Representative defendants represented to the Plaintiffs' prescribing physicians false and misleading information concerning the drug Vioxx. The defendants, pursuant to the defendants' "Dodgeball" program and other plans to misrepresent the safety of Vioxx, communicated that the drug was safe for the cardiovascular system, and did not increase the risk stroke or heart attack. The Plaintiffs' physicians did prescribe the subject drug to the Plaintiffs, as a result of, and in reliance upon, the misrepresentations by the defendants' including the Sales Representative defendants who made direct communications to the physician. The physicians made determinations concerning the use of this medication based on false and fraudulent information provided by the defendants including the Sales Representative defendants, and did not act in their proper role as a learned professional in that physicians were given wrongful, false, incomplete, misleading and wrong information by the defendants, including the Sales Representative defendant.

115.    The negligence and wantonness of the defendants, including the Sales Representative defendants, was the proximate cause of the injuries and death suffered by Plaintiffs. Because the Plaintiffs' physicians were prevented from exercising and operating in their full role as learned professionals, because of missed information given to them by defendants, they were deprived of the full and adequate information needed to act in a

learned manner in deciding and determining how to prescribe pain relieving medication to the Plaintiffs, with the proximate result and consequence that the physicians did in fact prescribe the dangerous and deadly drug, Vioxx, to Plaintiffs, causing their injuries.

116.  The Plaintiffs suffered personal injuries as a direct and proximate result and consequence of the wrongful acts and omissions of each of the defendants. The Plaintiffs would not have been prescribed the subject drug, Vioxx, by his physician, if the physician had not been given wrongful and incorrect information by the defendants including the Sales Representative defendants.

117.  If defendants had not engaged in this conduct, consumers, such as the Plaintiffs, would have switched from Vioxx to safer products or refrained wholly from its efficacy.

118.  From approximately 1999 through the date of Plaintiffs injuries defendants engaged in a scheme of marketing, distributing and/or selling Vioxx under the guise that it was safe and efficacious for persons such as the Plaintiffs.

119.  Plaintiffs allege that the marketing strategies, including without limitation the detail and sampling programs and direct-to-consumer advertising, used by Merck, targeted consumers like the Plaintiffs to induce them to purchase and use Vioxx. defendants distributed, manufactured and marketed Vioxx, in a manner designed to convince and their physicians to rely on the marketing, advertisements and product information propounded by defendant.

120.  On September 30, 2004, Merck voluntarily removed Vioxx from all markets in the United States.

121.  The sales representative defendants negligently, recklessly, intentionally and fraudulently made material representations that Vioxx was safe and effective. The sales

representative defendants represented Vioxx as safe so that the general consuming public, including Plaintiffs and their physicians, would rely upon said representations when purchasing the product. The sales representative defendants also suppressed the cardiovascular risks from prescribing physicians, and consumers such as the Plaintiffs, even though they had knowledge of the risks.

122.    Merck trained its sales representatives, through programs such as the "Vioxx Obstacle Dodge Ball Program," the "Obstacle Response Guide for Vioxx," and "Top Ten Obstacle Handlers" to misstate, conceal, and misrepresent the truly dangerous nature of Vioxx to prescribing physicians. The sales representative defendants applied, utilized and put into practice each of these programs with the doctors in question.

123.    These programs were specifically designed and promulgated by Merck to mislead prescribing physicians about the safety of Vioxx.

124.    These programs were specifically designed and promulgated by Merck to mislead prescribing physicians about the life threatening side effects, including myocardial infarction and stroke, of Vioxx.

125.    Merck trained its sales representative force, including the sales representative defendants, to utilize its "Dodge Ball" and "Obstacle Avoidance" programs during the sales representatives' interactions with or "calls" upon prescribing physicians, and defendants put them into full effect with the subject doctors.

126.    These programs were utilized by sales representatives, including the sales representative defendants to "dodge" relevant safety questions by physicians to who promoted and or sold Vioxx. Indeed, these programs provide specific responses and representations that are to be made by Merck sales representatives to physicians during the sales calls or in response to physician questions. These Merck mandated responses

misrepresented the safety of Vioxx.

127. The Vioxx Obstacle Dodge Ball Program identifies and categorizes physician safety questions as "obstacles" to Merck's sales force. The "Dodge Ball" program specifically instructs sales representatives, including the sales representative defendants, to "dodge" these physicians' safety related questions/obstacles. Indeed, the last few pages of the "Dodge Ball" instruction manual simply state "DODGE," "DODGE," and "DODGE." The safety questions to be "dodged" by sales representatives, including the sales representative defendants, include, inter alia, questions such as, "I am concerned about the cardiovascular effects of Vioxx," and "The competition has been in my office telling me that the incidence of heart attacks is greater with Vioxx than with Celebrex."

128. Additional sales representative guidelines provide specific answers to physician questions/obstacles (such as those noted above) that were to be recited by sales representatives, including the sales representative defendants. The top three "obstacles" listed on the sales guidelines are physician safety questions involving Vioxx related "Cardiovascular Events." Sales representative, including the sales representative defendants, are thereafter provided with specific misrepresentations to make to the concerned physicians about the safety of Vioxx. For example, bulletins from Merck to its sales representatives state, "in response to recent published reports about Vioxx on May 1, 2000, we provided you with an approved verbal response to use to address customers' questions around the incidence rate of MI's [myocardial infarctions] on patients taking Vioxx..." (Bulletin for Vioxx: New PIRs Relative to Vioxx GI Outcomes Research Study). Sales representatives, including the sales representative defendants, were therefore required to misrepresent that Vioxx does not increase the rate of myocardial infarctions when compared with NSAID's. This misrepresentation is false and inaccurate, yet was

intentionally, knowingly, recklessly, wantonly and/or negligently made to treating physicians, including each Plaintiffs' prescribing physicians, by the individually named sales representatives. In an instructional video used to train sales representatives, an actress playing "an obstacle" to Vioxx sales says, "I'm afraid Vioxx causes M.I.'s" - a reference to myocardial infarctions, or heart attacks. In response, an actress playing a Merck sales representative says, "That's not true." This was wrong, Vioxx causes M.I.'s. The mechanism of Vioxx-induced heart attack and stroke is the same – vasoconstriction and blood-clot creation.

129.    Merck's sales representatives, specifically the sales representative defendants, utilized the misrepresentations contained in the obstacle avoidance programs to mislead each Plaintiffs' treating physicians concerning the safety of Vioxx and the occurrence of life threatening side effects, such as strokes and myocardial infarctions, from the usage of Vioxx.

130.    Merck and the individually named sales representatives further misrepresented the safety of Vioxx to prescribing physicians by providing written literature to the doctors that contained false statements about Vioxx's safety. Such literature would be forwarded to the physician who posed questions/obstacles to the sales representatives after the sales representatives had concluded their meeting with the physician, entitled "In Response To Your Questions" (follow-up literature that misrepresents Vioxx's cardiovascular safety) and "In Response To Your Questions: Cardiovascular System", which also misrepresents the risks associated with Vioxx.

131.    Sales representatives, including the sales representative defendants, were also ordered to send follow-up letters to physicians with whom they met who had posed questions/obstacles. These letters would downplay the cardiovascular risks associated with

41

Vioxx, even though the defendants were well aware that the risks existed.

132.    The underlying inducement for both Merck and its sales representatives, including the sales representative defendants, to make repeated misrepresentations to physicians about the safety of Vioxx was money. The more doctors prescribed Vioxx, the more money Merck made. The more doctors the sales representatives, including the sales representative defendants, cajoled into prescribing Vioxx, the more money and non-monetary bonuses the sales representatives received. Thus, sales representatives, such as the sales representative defendants, had a financial interest in disseminating the false and misleading information, while concealing the known risks (i.e., obstacle responses) outlined above to as many prescribing physicians as possible, including Plaintiffs' prescribing physicians

133.    Plaintiffs and their prescribing physicians reasonably relied, to their detriment, upon the false oral and written misrepresentations of Merck, and the sales representative defendants, concerning the safety of Vioxx and the absence of adverse cardiovascular events in users. Such reasonable reliance induced each Plaintiff's treating physician to prescribe his Vioxx and further induced the Plaintiffs to utilize the dangerous drug Vioxx. As a direct and proximate result of Plaintiff's usage of Vioxx, they were injured as described herein. Such event has caused Plaintiff's great pain and suffering, mental anguish, expense.

134.    On June 23, 2005 conduct of Merck and its sales representatives was summarized in the New England Journal of Medicine as follows:

"The pharmaceutical industry spends more than $5.5 billion to promote drugs to doctors each year — more than what all U.S. medical schools spend to educate medical students. Major drug companies employ about 90,000

42

sales representatives — one for every 4.7 doctors in the United States, according to the American Medical Association. Although substantial marketing expenditures are common in many industries, the potential effect of drug marketing on health raises special concerns. For years, the industry has justified these expenditures on the grounds that they fund essential education for doctors. According to the Web site of the Pharmaceutical Manufacturers and Research Association, "many physicians learn about new drugs - indeed, about ongoing research in their areas of specialization - largely through information provided by the companies that market new products." But if the primary goal is sales, not education, and the information provided to physicians is slanted or misleading, the health consequences for patients can be serious.

"Because of the recent events surrounding Rofecoxib, the May 5 hearing of the Government Reform Committee focused on Merck, the manufacturer of Vioxx... Merck cooperated voluntarily with our request for information, providing more than 20,000 pages of internal company documents. Merck also voluntarily sent a senior executive to testify at the hearing and answer the committee's questions. Yet as we learned, even a company like Merck can direct its sales force to provide clinicians with a distorted picture of the relevant scientific evidence.

"On February 7, 2001, the Arthritis Drugs Advisory Committee of the Food and Drug Administration (FDA) met to discuss the VIGOR study. At this meeting, Merck argued that the significant increase in the rate of myocardial infarction (which further analysis had determined to be a fivefold increase) was explained by a protective effect of naproxen, not by any inherent risk posed by its drug. After the FDA's medical reviewer and others expressed concern about

this explanation, the advisory committee voted unanimously that physicians should be made aware of VIGOR's cardiovascular results.

"The next day, Merck sent a bulletin to its Rofecoxib sales force of more than 3000 representatives. The bulletin ordered, "DO NOT INITIATE DISCUSSIONS ON THE FDA ARTHRITIS ADVISORY COMMITTEE . . . OR THE RESULTS OF THE . . . VIGOR STUDY." It advised that if a physician inquired about VIGOR, the sales representative should indicate that the study showed a gastrointestinal benefit and then say, "I cannot discuss the study with you."

"Merck further instructed its representatives to show those doctors who asked whether Rofecoxib caused myocardial infarction a pamphlet called "The Cardiovascular Card." This pamphlet, prepared by Merck's marketing department, indicated that Rofecoxib was associated with 1/8 the mortality from cardiovascular causes of that found with other anti-inflammatory drugs. Stroke is caused by Vioxx with the same mechanism as myocardial infarction.

"The Cardiovascular Card provided a misleading picture of the evidence on Rofecoxib. The card did not include any data from the VIGOR study. Instead, it presented a pooled analysis of preapproval studies, in most of which low doses of Rofecoxib were used for a short time. None of these studies were designed to assess cardiovascular safety, and none included adjudication of cardiovascular events. In fact, FDA experts had publicly expressed "serious concerns" to the agency's advisory committee about using the preapproval studies as evidence of the drug's cardiovascular safety.

"Persistent physicians who sought additional information about the

cardiovascular effects of Rofecoxib were directed to send inquiries to the company's headquarters. Merck's response to these physicians highlighted the misleading information from the Cardiovascular Card.

"Beyond these specific communications to physicians, our committee also heard evidence of a broad disparity between the evidence-based perspective provided by scientific journals and expert committees, on the one hand, and the sales pitch used by the company's field staff, on the other. Merck instructed its sales representatives, for example, to provide only certain approved study results to doctors. Approved scientific studies were defined as those that provide "solid evidence as to why [doctors] should prescribe Merck products for their appropriate patients." By contrast, those studies that raised safety questions about drugs were considered background studies. Distributing the results of a background study was "a clear violation of Company Policy."

"Merck also trained its representatives to identify speakers for educational events who were "opinion leaders" who could provide "favorable" views of the company's products to other doctors. Underlining the promotional nature of these events, Merck instructed its sales representatives to track whether the physicians who attended them subsequently prescribed more Merck drugs.

"In addition to providing selective evidence and biased presentations, Merck counseled its representatives to use an array of subliminal selling techniques to affect prescribing - potentially undermining the ability of physicians to choose drugs strictly on the basis of the risks, benefits, and costs for a particular patient. For example, in a training course on selling skills,

45

Merck taught representatives to mimic the words and body language of doctors during sales calls. The curriculum explained that 'mirroring is the matching of patterns, verbal and non-verbal, with the intention of helping you enter the customer's world. It is positioning yourself to match the person talking. It subconsciously raises his/her level of trust by building a bridge of similarity.'"

135.    The sales representative defendants personally performed the acts and omissions described herein and participated in the torts alleged herein. The sales representative defendants had knowledge of the cardiovascular risks associated with Vioxx, and misrepresented and/or concealed the nature of these risks to the opinion leaders in the local medical community, to the public, Plaintiffs, and to Plaintiff's physicians. The sales representative defendants were not acting as mere conduits, because they had knowledge that the information conveyed to each opinion leader, consumer, the public and to each of Plaintiffs' physicians, was false.

136.    Accordingly, the sales representative defendants are liable to Plaintiffs for the claims stated herein, and are fully responsible for their own personal acts and omissions whether performed for Merck or as a "frolic of their own" or otherwise. They acted for their own personal profit and "following orders" is not a defense where they acted personally in a negligent, wanton and deceitful manner.

137.    As a result of the misrepresentations, deceit, and suppression by the defendants as set forth previously in this Complaint and as set forth below, these parties, and Plaintiffs were deceived and defrauded, and as a direct and proximate result of the said deceit, fraud, misrepresentation, and fraudulent suppression the Plaintiffs suffered the harm and injury as set forth in this Complaint. The conduct of the defendants described in

46

all counts of this civil action is gross, oppressive, burdensome, willful, intentional, wanton and otherwise such as to justify the imposition of punitive damages under Alabama law.

WHEREFORE, Plaintiffs demand judgment against Merck & Co., Inc., Merck Corporation, Merck Pharmaceutical Division, David Sparkman, Natasha Walker-McGlothan, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Natasha Walker-McGlothan, Randy Walls, Melissa Bauer and defendants A, B, C, D, E, F, X and Z, whose true names are unknown to the Plaintiffs but will be added by amendment when correctly ascertained, jointly and severally in such sums of compensatory and punitive damages as the jury determines to be fair, just, and lawful plus costs of Court.


James S. Hubbard
Attorney for Plaintiffs


Thomas J. Knight
Attorney for Plaintiffs


HUBBARD & KNIGHT
Post Office Drawer 1850
Anniston, Alabama 36202
(256) 237-9586


47

AVSO305

**ALABAMA JUDICIAL DATA CENTER**
**RANDOLPH          COUNTY**

ORDER FOR SERVICE AND RETURN

CV 2006 000145.00
ASSIGNED JUDGE

IN THE CIRCUIT COURT OF RANDOLPH          COUNTY

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL

SERVE ON:  D005

HARPER CORAL          *321 AC*
220 63 ST S
BIRMINGHAM          ,AL  35212-0000

NOTES:
  SUMMONS & COMPLAINT

TO ANY SHERIFF OR ANY AUTHORIZED AGENT:
      YOU ARE HEREBY ORDERED TO DELIVER THE ATTACHED DOCUMENT
      TO THE ABOVE NAMED PERSON AT THE ADDRESS INDICATED.

09/21/2006  DATE          CLERK: KIM S. BENEFIELD          BY: _____
                                 P. O. BOX 328
                                 WEDOWEE  AL  36278
                                 (256)357-4551

I HEREBY CERTIFY THAT I PERSONALLY DELIVERED A COPY OF THE ATTACHED
DOCUMENT IN _____ COUNTY, ALABAMA
TO:

_____          _____
                                          SIGNATURE OF SERVER

_____

NAME / ADDRESS ABOVE          DATE

OPERATOR: CYW
PREPARED: 09/21/2006

THIS WRIT RETURNED "NOT FOUND"
IN JEFFERSON COUNTY THIS _____, OCT 17 2006
DAY OF _____, _____
FOR THE FOLLOWING REASONS:
  ☐  2. MOVED
  ☐  8. INSUFFICIENT ADDRESS
  ☐  6. DOES NOT RESIDE AT ADDRESS
  ☐  7. NOT EMPLOYED AT LISTED LOCATION
  ☐  12. NO SUCH ADDRESS
  ☐  9. AVOIDING SERVICE
  ☐  13. RECEIVED TOO LATE FOR SERVICE
  ☐  14. UNABLE TO CONTACT
  ☐  16. OTHER _____, D.S.
MIKE HALE, Sheriff of Jefferson County

| State of Alabama<br>Unified Judicial System<br><br>Form C-34    Rev 6/88 | SUMMONS<br>-CIVIL- | Case Number<br><br>CV0lD-145 |
|---|---|---|

IN THE _____ CIRCUIT _____ COURT OF _____ RANDOLPH _____ COUNTY

Plaintiff _____ CLIFFORD BAILEY, et als. _____ v. Defendant _____ MERCK & CO. Inc. et als. _____

NOTICE TO _____ Coral Harper- 220 63 Street South, Birmingham, Al 35212 _____

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADDMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY _____ THOMAS J. KNIGHT _____ WHOSE ADDRESS IS _____ 1125 Noble Street, Post Office Box 1850, Anniston, Alabama 36202 _____ .

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN ___30___ DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

TO ANY SHERIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:

[X] You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant.

Filed in Office

[ ] Service by certified mail of this summons is initiated upon the written request of _____ SEP 21 2006 pursuant to the Alabama Rules of Civil Procedure.

Date _9/21/06_     _Kim S. Benefield_     KIM S. BENEFIELD

Clerk/Register     By Clerk of Circuit Court

[ ] Certified Mail is hereby requested.     _____

Plaintiff's/Attorney's Signature

RETURN ON SERVICE:

[ ] Return receipt of certified mail received in this office on _____ .

(Date)

[ ] I certify that I personally delivered a copy of the Summons and Complaint to _____

_____ in _____ County,

Alabama on _____ .

(Date)

_____     _____
Date     Server's Signature

_____     _____
Address of Server     Type of Process Server

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, CLIFFORD BLACK,   )
WESLEY CALHOUN, CURTIS DEASON,   )
RUTH GRAVES, MICKEY GRIZZARD,   )
JIMMY PERRY, HERBERT STANLEY   )
SIKES and PHILLIP THOMPSON   )
             )
      Plaintiffs,          )
             )
vs.                  )
             )
MERCK & CO., INC., a foreign or   )
domestic Corporation,  DAVID   )
SPARKMAN, KATHERINE HOLMES,   )
LORI LOVETT, SCOTT BARTLETT,   )
CORAL HARPER, MELISSA SANTIAGO,  )
HENRY MITCHAM, JERRY PHARR,   )
JASON DELK, CHARLES HENDERSON,  )
 JAMES HOUSTON, JULIE MELTON,   )
 JULIE HODGES, and MELISSA   )
 BAUER, NATASHA WALKER-    )
MCGLOTHAN , RANDY WALLS, and the  )
defendants A, B, C, D, E, X & Z whether  )
singular or plural, being those persons,  )
firms or entities who or which    )
proximately caused or contributed to the)
Plaintiff's personal injury and Plaintiff's  )
other harm and the other    )
damages as complained of herein whose)
true names are unknown to the Plaintiffs)
but will be added by amendment when  )
correctly ascertained,     )
             )
      Defendants.       )

CASE NUMBER: CV-06-145

**Filed in Office**

SEP 2 1 2006

KIM S. BENEFIELD
Clerk of Circuit Court

## <u>COMPLAINT</u>

**NOW COME** the Plaintiffs, Clifford Bailey, Clifford Black, Wesley Calhoun,

Curtis Deason, Ruth Graves, Mickey Grizzard, Jimmy Perry, Herbert Stanley Sikes, and

Phillip Thompson, and state their claims for relief against defendants Merck & Co., Inc., a

Corporation (hereinafter generally referred to as Merck), Merck Corporation, a trade name

1

or division of Merck & Co., Inc. David Sparkman, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Melissa Bauer, Natasha Walker-McGlothan, Randy Walls, and against defendants A, B, C, D, E and F, and X and Z, whether singular or plural, being those persons, firms or entities who or which proximately caused or contributed to the Plaintiff's personal injuries and the other damages as complained of herein whose true names are unknown to the Plaintiffs but will be added by amendment when correctly ascertained, with the claims being as follows:

## GENERAL AND JURISDICTIONAL ALLEGATIONS

1.    Plaintiffs, Clifford Bailey, Clifford Black, Wesley Calhoun, Curtis Deason, Ruth Graves, Mickey Grizzard, Jimmy Perry, Herbert Stanley Sikes, and Phillip Thompson, are resident citizens of the State of Alabama and of Randolph County. Defendants were severally the marketer, promoter, seller, manufacturer, distributor and entity which did manufacture, create, design, test, label, package, distribute, supply, market, sell, advertise, fail to warn, and otherwise handle and distribute the product, Vioxx. Each defendant does business in Alabama and in Randolph County, and at all times relevant each sold in Alabama and in Randolph County, the aforementioned drug, or is otherwise subject to this Court's jurisdiction. The defendants do business by agent in this state and county and have caused tortious injury in this state and county by manufacturing and selling a dangerous and defective product. Each defendant, acting directly or by agent, is legally responsible to Plaintiffs as a consequence of that defendants' (A) transacting any business in this state, (B) contracting to supply services or goods in this state, (C) causing tortious injury or

2

damage by an act or omission in this state, (D) causing tortious injury or damage in this state by an act or omission outside this state and the defendant regularly does or solicits business, or engages in any other persistent course of conduct or derives substantial revenue from goods used or consumed or services rendered in this state, (E) causing injury or damage in this state to a person by breach of warranty expressly or impliedly made in the sale of goods outside this state when the defendant might reasonably have expected such other person to use, consume, or be affected by the goods in this state, and the defendant also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state, and otherwise had or has some minimum contacts with this state and, under the circumstances, it is fair and reasonable to require the defendant to come to this state to defend an action. The amount in controversy in this civil action exceeds the jurisdictional minimum for the Circuit Courts. This Court has jurisdiction hereof both as to the subject matter and in personam.

2.    Plaintiffs brings this action to recover damages for personal injuries, restitution, refunds, and/or for equitable and declaratory relief against defendants Merck & Co., Inc., a Foreign Corporation, Merck Corporation, a trade name or division of Merck & Co., Inc., and Merck Pharmaceutical Division, a Division of Merck Corporation, (collectively referred to herein as, "Merck" or "defendants"), which developed, tested, designed, marketed, distributed, promoted and sold Vioxx. The defendants David Sparkman, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Melissa Bauer, Natasha Walker-McGlothan, and Randy Walls are,

3

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, CLIFFORD BLACK, )
WESLEY CALHOUN, CURTIS DEASON, )
RUTH GRAVES, MICKEY GRIZZARD, )
JIMMY PERRY, HERBERT STANLEY )
SIKES and PHILLIP THOMPSON )
)
     Plaintiffs, )
)
vs. )     CASE NUMBER: CV-06-_____
)
MERCK & CO., INC., a foreign or )
domestic Corporation,  DAVID )
SPARKMAN, KATHERINE HOLMES, )
LORI LOVETT, SCOTT BARTLETT, )
CORAL HARPER, MELISSA SANTIAGO, )
HENRY MITCHAM, JERRY PHARR, )
JASON DELK, CHARLES HENDERSON, )
 JAMES HOUSTON, JULIE MELTON, )
 JULIE HODGES, and MELISSA )
 BAUER, NATASHA WALKER- )
MCGLOTHAN , RANDY WALLS, and the )
defendants A, B, C, D, E, X & Z whether )
singular or plural, being those persons, )
firms or entities who or which )
proximately caused or contributed to the)
Plaintiff's personal injury and Plaintiff's )
other harm and the other )
damages as complained of herein whose)
true names are unknown to the Plaintiffs)
but will be added by amendment when )
correctly ascertained, )
)
     Defendants. )

## COMPLAINT

    **NOW COME** the Plaintiffs, Clifford Bailey, Clifford Black, Wesley Calhoun,

Curtis Deason, Ruth Graves, Mickey Grizzard, Jimmy Perry, Herbert Stanley Sikes, and

Phillip Thompson, and state their claims for relief against defendants Merck & Co., Inc., a

Corporation (hereinafter generally referred to as Merck), Merck Corporation, a  trade name

1

or division of Merck & Co., Inc. David Sparkman, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Melissa Bauer, Natasha Walker-McGlothan, Randy Walls, and against defendants A, B, C, D, E and F, and X and Z, whether singular or plural, being those persons, firms or entities who or which proximately caused or contributed to the Plaintiff's personal injuries and the other damages as complained of herein whose true names are unknown to the Plaintiffs but will be added by amendment when correctly ascertained, with the claims being as follows:

## GENERAL AND JURISDICTIONAL ALLEGATIONS

1.     Plaintiffs, Clifford Bailey, Clifford Black, Wesley Calhoun, Curtis Deason, Ruth Graves, Mickey Grizzard, Jimmy Perry, Herbert Stanley Sikes, and Phillip Thompson, are resident citizens of the State of Alabama and of Randolph County. Defendants were severally the marketer, promoter, seller, manufacturer, distributor and entity which did manufacture, create, design, test, label, package, distribute, supply, market, sell, advertise, fail to warn, and otherwise handle and distribute the product, Vioxx. Each defendant does business in Alabama and in Randolph County, and at all times relevant each sold in Alabama and in Randolph County, the aforementioned drug, or is otherwise subject to this Court's jurisdiction. The defendants do business by agent in this state and county and have caused tortious injury in this state and county by manufacturing and selling a dangerous and defective product. Each defendant, acting directly or by agent, is legally responsible to Plaintiffs as a consequence of that defendants' (A) transacting any business in this state, (B) contracting to supply services or goods in this state, (C) causing tortious injury or

2

damage by an act or omission in this state, (D) causing tortious injury or damage in this state by an act or omission outside this state and the defendant regularly does or solicits business, or engages in any other persistent course of conduct or derives substantial revenue from goods used or consumed or services rendered in this state, (E) causing injury or damage in this state to a person by breach of warranty expressly or impliedly made in the sale of goods outside this state when the defendant might reasonably have expected such other person to use, consume, or be affected by the goods in this state, and the defendant also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state, and otherwise had or has some minimum contacts with this state and, under the circumstances, it is fair and reasonable to require the defendant to come to this state to defend an action. The amount in controversy in this civil action exceeds the jurisdictional minimum for the Circuit Courts. This Court has jurisdiction hereof both as to the subject matter and in personam.

2.    Plaintiffs brings this action to recover damages for personal injuries, restitution, refunds, and/or for equitable and declaratory relief against defendants Merck & Co., Inc., a Foreign Corporation, Merck Corporation, a trade name or division of Merck & Co., Inc., and Merck Pharmaceutical Division, a Division of Merck Corporation, (collectively referred to herein as, "Merck" or "defendants"), which developed, tested, designed, marketed, distributed, promoted and sold Vioxx. The defendants David Sparkman, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Melissa Bauer, Natasha Walker-McGlothan, and Randy Walls are,

3

or have been employees of defendant, Merck and are persons who are liable to Plaintiffs and whose conduct is described in detail elsewhere in this Complaint. These defendants are resident citizens of Alabama. These defendants, and other persons whose true names are unknown to the Plaintiffs, set about to sell and market Vioxx throughout the state of Alabama and in such a manner that their conduct was a substantial proximate cause of the injuries suffered by Plaintiffs Clifford Bailey, Clifford Black, Wesley Calhoun, Curtis Deason, Ruth Graves, Mickey Grizzard, Jimmy Perry, Herbert Stanley Sikes, and Phillip Thompson. Defendants A, B, C, D, E, F, X and Z, whether singular or plural, are those persons, firms or entities who or which proximately caused or contributed to the Plaintiffs' damages as complained of herein whose true names are unknown to the Plaintiffs but will be added by amendment when correctly ascertained. As used in this Complaint, the general word "defendants" includes, incorporates, and is defined to mean, not only the named defendants, but also defendants A, B, C, D, E, F, X and Z, being those persons, firms or entities who or which proximately caused or contributed to the Plaintiffs' personal injuries and the other damages as complained of herein whose true names are unknown to the Plaintiffs but will be added by amendment when correctly ascertained.

3.    Vioxx has been associated with heart attacks, strokes and deaths, including cases of fatal cardiovascular events. Vioxx was recalled and removed from the market because it was unreasonably dangerous and defective.

4.    Excess deaths and cardiovascular events, hypertension, edema, kidney damage, aseptic meningitis, and slow healing of bone fractures are also associated with Vioxx.

5.    The relief sought in this action are actions by the court to (1) provide

4

damages for Plaintiffs' personal injuries, (2) reimburse monies paid for the recalled product, (3) otherwise compensate Plaintiffs, a consumer of Vioxx who has suffered the injuries described elsewhere in this Complaint, (4) to provide other benefits to which the Plaintiffs are entitled under the laws of the State of Alabama, and (5) the other relief sought in this Complaint.

## PARTIES TO THIS CIVIL ACTION

### PARTY Plaintiffs

6.     Plaintiffs, Clifford Bailey, Clifford Black, Wesley Calhoun, Curtis Deason, Ruth Graves, Mickey Grizzard, Jimmy Perry, Herbert Stanley Sikes, and Phillip Thompson, are resident citizens of the State of Alabama and of Randolph County.   Plaintiffs are residents of this county who prescribed, purchased and used Vioxx.  Plaintiffs, Clifford Bailey, Clifford Black, Wesley Calhoun, Curtis Deason, Ruth Graves, Mickey Grizzard, Jimmy Perry, Herbert Stanley Sikes, and Phillip Thompson, were prescribed and ingested Vioxx regularly after being prescribed the said drug by his physician.   Plaintiffs suffered personal injuries as a proximate result of the effects of his ingestion of Vioxx.  Plaintiffs experienced symptoms of Vioxx-induced cardiovascular events, suffered personal injury from the product defect in Vioxx and were at increased risk for developing further complications from such condition all as a proximate result of his ingestion of Vioxx.

7.     Plaintiffs, Clifford Bailey, Clifford Black, Wesley Calhoun, Curtis Deason, Ruth Graves, Mickey Grizzard, Jimmy Perry, Herbert Stanley Sikes, and Phillip Thompson were prescribed and consumed the product at the direction of their physicians in the State

5

of Alabama and in Randolph County.

**PARTIES DEFENDANT**

8.      Defendant, Merck & Co., Inc., is a corporation headquartered and with its principal place of business in Whitehouse Station, New Jersey. Merck & Co., Inc. manufactures, marketed and distributed Vioxx throughout the world, including Alabama. Defendants, David Sparkman, Natasha Walker-McGlothan, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Melissa Bauer, Natasha Walker-McGlothan, and Randy Walls, are persons employed by or associated with defendant, Merck, who are, with other Merck employees, the persons guilty of the conduct, the acts and omissions, specifically described and set forth in detail in this Complaint.

9.      On information and belief defendants David Sparkman, Natasha Walker-McGlothan, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Natasha Walker-McGlothan, Randy Walls, and Melissa Bauer, are resident citizens of the State of Alabama.

10.      Defendant, X is a corporation or other entity organized under the laws of the state of Alabama and having its principal place of business in the state of Alabama. This entity was or acted in concert with the defendants and is otherwise liable to Plaintiffs as described herein.

11.      Defendant, Z is a corporation or other entity organized under the laws of a state other than Alabama and having its principal place of business in a state other than Alabama. This entity was or acted in concert with the defendants and is otherwise liable

6

to Plaintiffs as described herein.

     12.    At all times relevant hereto, defendants, including defendants A, B, C, D, E, F, X and Z whose true names are unknown to the Plaintiffs but will be added by amendment when correctly ascertained, were engaged in the business of developing, designing, marketing, distributing, promoting, testing, providing warnings concerning, labeling and/or selling the pharmaceutical Vioxx. On information and belief, defendants Merck Pharmaceutical Division and Merck Corporation otherwise were in control of the development, design, assembly, manufacture, warnings concerning, marketing and with others, the sale of Vioxx. As used in this Complaint, the general word "defendants" includes, incorporates, and is defined to mean, not only the named defendants, but also defendants A, B, C, D, E, F, X and Z, being those persons, firms or entities who or which proximately caused or contributed to the Plaintiff's personal injuries and the other damages as complained of herein whose true names are unknown to the Plaintiffs but will be added by amendment when correctly ascertained.

## JURISDICTION AND VENUE

     13.    This Court has general subject matter jurisdiction and in personal jurisdiction on grounds as shown above.

     14.    Venue is proper in this county in that the substantial relevant facts occurred in this county.

## FACTUAL ALLEGATIONS

     15. Vioxx is the brand name of Rofecoxib, one of the classes of drugs called "Cox-II

inhibitors," which are supposed to work to reduce inflammation and pain by providing analgesic and anti-inflammatory benefits to persons with, among other conditions, arthritis, and muscle pain.

16. Vioxx has effects on prostaglandins at inflammatory sites, and on prostacyclin, vasodilators and inhibitors of platelet aggregation.

17. Vioxx, manufactured by Merck & Co., has a demonstrated risk that is or was misrepresented by Merck and benefits that were exaggerated and oversold to the public and physicians through an aggressive marketing campaign, while risks were purposefully hidden. Merck has profited tremendously from its misconduct described in this Complaint. Merck has been, with regard to Vioxx, over-promoting drugs that are far more expensive than older versions, but no better at relieving pain, while containing unreasonable risks of harm.

18. When Vioxx (Rofecoxib) and Celebrex (Celecoxib), a new kind of pain medication known as Cox-2 inhibitors, were introduced in 1999, manufacturers and their supporters hailed them as a kind of "super-aspirin" that lacked the stomach-injuring side effects of the older non steroidal anti-inflammatory drugs (NSAIDs). But valid questions soon arose about the efficacy and safety of Cox-2 drugs. Celebrex is discussed herein because of the chemical similarity, and the notice to Merck provided by Celebrex events. Pharmacia Corporation makes Celebrex, which it describes as "a major advance in the treatment of the debilitating diseases osteoarthritis and rheumatoid arthritis, because of its efficacy and excellent gastrointestinal safety profile."

19. The drugs, approved to treat arthritis, menstrual pain and "acute" pain in adults, have been heavily marketed to both doctors and consumers: Merck as to Vioxx,

which ran ads featuring former Olympic figure skater Dorothy Hamill, and spent over $160 million on consumer advertising in 2000; Celebrex spent almost $80 million, according to AdWatch, the health policy arm of the Henry Kaiser Family Foundation. The campaigns worked: In 2001, Vioxx, the 13th most prescribed drug in the United States, had worldwide sales of $2.6 billion.

20.    Older NSAIDs, such as ibuprofen, Naproxen and Diclofenac, work by inhibiting the two types of cyclooxygenase enzyme, one of which causes inflammation and thus pain. The Cox-1 enzyme, however, helps maintain the muscle surface of the gastrointestinal (GI) tract, so suppressing the enzyme can increase perforations, ulcers and bleeding. Vioxx, Celebrex and Bextra (Valdecoxib, introduced by G.D. Searle & Co. in 2001) suppress only the second enzyme, supposedly leaving the first alone to protect the GI tract.

21.    Merck's Vioxx Gastrointestinal Outcomes Research Study (VIGOR), performed from January 6, 1999 through March 17, 2000, involved about 8,000 participants and assessed only the drug's effects on the stomach; the company ordered no end-point analyses for effects on the cardiovascular system.

22.    The objectives of the VIGOR study were to (1) "determine the relative risk of confirmed PUB (Perforation, Ulcers, Bleeding) in patients taking 50mg of Vioxx daily compared to patients in the group taking Naproxen 1000mg/day," and (2) "study the safety and tolerability of Vioxx in patients with rheumatoid arthritis."

23.    The VIGOR data revealed that: (a) patients on Vioxx were five times more likely to suffer a heart attack as compared to patients on Naproxen; and (b) patients on Vioxx were 2.3 times more likely to suffer serious cardiovascular disease (including heart

attacks, ischemic stroke, unstable angina and sudden unexplained death) as compared to patients on Naproxen.

24.    The study concluded that Vioxx takers had a lower rate of GI distress than those taking naproxen. The researchers noted, "the incidence of myocardial infarction was lower among patients in the naproxen group than among those in the Rofecoxib group," but found "the overall mortality rate and the rate of death from cardiovascular causes were similar in the two groups." They drew conclusions only about clinical upper gastrointestinal events, bleeding and ulcers. Stroke is caused by Vioxx with the same mechanism as myocardial infarction.

25.  On March 27, 2000, Merck issued a press release stating that Vioxx caused fewer digestive tract problems than Naproxen.  The press release further stated that the VIGOR results did not show that Vioxx caused cardiovascular problems, but that Naproxen protected against them.

26.    After the VIGOR results were released, the FDA said Merck had minimized the fourfold to fivefold increase in heart attacks among study participants taking Vioxx compared with those taking Naproxen. It found the company's explanation that Vioxx did not increase the risk of heart attacks, but instead, Naproxen protected those taking it from heart attacks because the drug can thin the blood, like aspirin unacceptable. In a September 2001 warning letter to Merck, the FDA wrote, "You fail to disclose that your explanation is hypothetical, has not been demonstrated by substantial evidence, and that there is another reasonable explanation: that Vioxx may have pro-thrombotic properties."

27.    While Vioxx and Celebrex have been marketed as safer than traditional NSAIDs because of their stomach-protecting propensity, reports of serious side effects

10

have now emerged. The defendants knew the salient facts concerning their drug long before the discovery of dangers by outside researchers, but ignored or concealed risks and dangers and continued to misrepresent the safety (or lack of safety) of Vioxx. In June 2000, a research team led by A. Whelton noted in a presentation to the European United League Against Rheumatism (EULAR), of which Merck is a member and corporate sponsor, that Vioxx use resulted in a statistically significant increase in hypertension, myocardial infarction, and stroke. Not only did Merck do nothing to further accurately publish these studies, or warn consumers, but in August 2000, it denied the results with respect to hypertension in the official publication of the American Pharmaceutical Association, "Pharmacy Today." The medical journal,"The Lancet," published a study associating Vioxx with kidney failure, and other studies have associated both Vioxx and Celebrex with heart problems, kidney damage, aseptic meningitis and slow healing of bone fractures.

28.    A metastudy by the Cleveland Clinic published in the Journal of the American Medical Association analyzed data from two major studies funded by the drug companies and two smaller ones, all for cardiovascular risks. (Debabrata Mukherjee et al., Risk of Cardiovascular Events Associated with Selective Cox-2 Inhibitors, 286 JAMA 954 (2001).) It found that neither Pharmacia/Pfizer nor Merck had identified and studied cardiovascular risks for their products. The annualized heart attack rates for patients taking Vioxx or Celebrex, the researchers found, were "significantly higher" than those in a group taking placebos. "The available data raise a cautionary flag about the risk of cardiovascular events with Cox-2 inhibitors," they concluded. Defendants set about to discredit and deny these studies.

11

29.   The FDA, which lists Vioxx and Celebrex information on the "Hot Topics" section of its Web site, required both drugs to carry the same stomach-upset and bleeding warnings ibuprofen and Naproxen had when the agency approved them in 1999.

30.   After the CLASS results, the FDA found that Celebrex is just as likely to cause ulcers as older NSAIDs and is no better at reducing pain or inflammation than ibuprofen. In June 2002, it mandated a new label for the drug, one without any claim that it is safer for the stomach than other NSAIDs.

31.   Because of information provided by Merck, the agency did allow Merck to change its Vioxx label to claim it has a lower risk than older NSAIDs of causing ulcers, gastrointestinal bleeding and other digestive-tract complications.

32.   As early as November 1999, an FDA memo stated that the board monitoring the VIGOR study was concerned about "excess deaths and cardiovascular events experienced in Group A [Vioxx group] compared to Group B [Naproxen]." In March 2002, the FDA reported that five people taking Vioxx had aseptic meningitis, an inflammation of membranes on the brain and spine. In April 2002, after the agency warned Merck that it had misrepresented the drug's safety and minimized potentially serious cardiovascular complications found in VIGOR, it required the company to include a warning of cardiovascular risks on the Vioxx label.

33.   The new warnings contained information long held by Merck, but consistent with later pattern and practice, concealed from consumers and their physicians. The new warnings included:

34.   "In VIGOR, a study in 8076 patients (mean age 58; VIOXX n=4047, Naproxen n=4029) with a median duration of exposure of 9 months, the risk of developing a serious

12

cardiovascular thrombotic event was significantly higher in patients treated with VIOXX 50 mg once daily (n=45) as compared to patients treated with Naproxen 500 mg twice daily (n=19)." ...

35.    "In a placebo-controlled database derived from 2 studies with a total 2142 elderly patients (mean age 75; VIOXX n=1067, placebo n=1075 with a median duration of exposure of approximately 14 months, the number of patients with serious cardiovascular thrombotic events was 21 vs. 35 for patients treated with VIOXX (Rofecoxib tablets and oral suspension) 25 mg once daily versus placebo, respectively. In these same 2 placebo-controlled studies, mortality due to cardiovascular thrombotic events was 8 vs. 3 for VIOXX versus placebo, respectively."

36.    Merck has repeatedly blamed its customers' cardiovascular events on underlying conditions, to avoid blaming Vioxx.  The prestigious New England Journal of Medicine later stated in regard to "the implications of these observations with respect to selective cyclooxygenase-2 inhibitors": "...thrombosis would be expected to occur in patients who are already at increased risk because of other underlying conditions" and "In the VIGOR trial... The rates of nonfatal myocardial infarction, nonfatal stroke, and death from any vascular event were higher in the Rofecoxib group than in the naproxen group (0.8 percent vs. 0.4 percent, P<0.05).  This difference was largely due to a difference in the incidence of myocardial infarction (0.4 percent in the Rofecoxib group vs. 0.1 percent in the naproxen group, P<0.01). In contrast, in the CLASS trial, in which 21 percent of the patients took aspirin, there was no significant difference the treatment groups in the incidence of major cardiovascular events."  NEJM Volume 345:433-442 August 9, 2001 Number 6.

37.    In 2002 and 2003, unknown to Plaintiffs and their doctors, Merck refused requests from the American Heart Association the National Stroke Association and the Arthritis Foundation that it conduct additional safety studies, claiming that Vioxx was safe and that it did not plan to conduct any such study.

38.    On October 30, 2003, an article in The Wall Street Journal, unknown to Plaintiffs or their doctors, reported that another study sponsored by Merck, and presented at the annual meeting of the American College of Rheumatology, confirmed an increased risk of heart attacks in patients taking Vioxx. According to the Wall Street Journal, within the first 30 days of taking Vioxx, the risk of a heart attack was increased by 30% as compared to Celebrex. This study looked at the records of 54,475 Medicare patients, all of whom were over 65, and was described by the eminent Dr. Eric Topol as "the best study to date."

39.    In 2003, unknown to Plaintiffs and their doctors, Dr. Jerry Avorn, a Divisional Director at Brigham and Women's Hospital in Boston and colleague Dr. Daniel H. Solomon reported in a Merck-financed study based on a survey of patient records, that Vioxx, even at some moderate dosages, increased cardiovascular risks.

40.    Merck disputed the findings of the Avorn-Solomon study, and the name of the Merck epidemiologist who had contributed to the study was removed from the report before it was published in a medical journal.

41.    From January through June, 2004, Merck spent an estimated $45 million on Vioxx advertising.

42.    In May 2004, the results of a study funded by the Canadian government were published in "The Lancet." The study reviewed data from 1.3 million elderly patients

14

(66 and older) taking Vioxx, Celebrex, a common arthritis pain pill (NSAID) or no medication. The records from approximately 130,000 persons randomly reviewed from the population base found that persons taking Vioxx had an 80% increase in hospital admissions for congestive heart failure within one year of taking Vioxx when compared to persons taking NSAIDS.

43.    On August 25, 2004, still unknown to Plaintiffs and thier doctors, Dr. David Graham, Associate Director for Science in the FDA's Office of Drug Safety, presented results of a database analysis of 1.4 million patients that showed Vioxx users are more likely to suffer a heart attack or sudden cardiac death than those taking Celebrex or an older NSAID.

44.    Despite the foregoing, on August 26, 2004, Merck continued to represent to physicians and consumers that Vioxx was safe, and that any cardiovascular and/or cardiothrombotic side effects were not associated with the drug.  Merck stated in a press release that "Merck stands behind the efficacy, overall safety and cardiovascular safety of Vioxx."

45.    On September 30, 2004, Merck finally withdrew Vioxx from the market after basically admitting to additional information from its own studies that study participants taking Vioxx after 18 months had twice as high a risk of cardiovascular events as the placebo group.

46.    Defendants, David Sparkman, Natasha Walker-McGlothan, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Natasha Walker-McGlothan, Randy Walls,  and Melissa Bauer,  being the professional

15

staff of Merck for the sales of Merck's products in the state of Alabama were aware of all of the facts, points and details relevant to the dangers of Vioxx. Knowing these facts, the defendants had a duty to inform, immediately, the doctors to whom they had given samples or otherwise sold Vioxx or promoted Vioxx to such doctors and other persons, of the important facts described in this complaint. This duty was fully applicable to the said defendants, David Sparkman, Natasha Walker-McGlothan, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Natasha Walker-McGlothan, Randy Walls, and Melissa Bauer, and their employer, Merck, prior to the time that the Plaintiffs' use of Vioxx. The said defendants David Sparkman, Natasha Walker-McGlothan, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Natasha Walker-McGlothan, Randy Walls, and Melissa Bauer, and defendant Merck, had a full duty, obligation, and responsibility, to advise and warn, and to disclose that the facts that they had previously provided were no longer true or correct.

47.    The said defendants, David Sparkman, Natasha Walker-McGlothan, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Natasha Walker-McGlothan, Randy Walls, and Melissa Bauer, and their employer, Merck, were both negligent and wanton in their failure to perform their duties and obligations under applicable law to advise all customers of Merck taking Vioxx directly or through their physicians of the dangers now known and disclosed, but said defendants and each and every one of them failed in his said duty imposed by law. The said defendants,

16

David Sparkman, Natasha Walker-McGlothan, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Natasha Walker-McGlothan, Randy Walls, and Melissa Bauer, and their employer, Merck, failed to exercise ordinary and reasonable care in the performance of their job functions and duties.

48.     The said defendants David Sparkman, Natasha Walker-McGlothan, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Natasha Walker-McGlothan, Randy Walls, and Melissa Bauer, and their employer, Merck, knew the foregoing true facts concerning Vioxx, prior to their representations concerning the safety and efficacy of Vioxx, but nevertheless, continued to represent that the product was safe and effective. The true facts, as indicated above, were that the said drug, Vioxx, was unreasonably unsafe and unreasonably dangerous, but the said individual defendants and their employer, Merck, willfully misrepresented the facts to physicians and others in the state of Alabama with the plan, design and intent to market the dangerous and defective drug notwithstanding the knowledge of the dangers and defects, this conduct constitutes actionable fraud and deceit, and these misrepresentations were relied upon by the medical community, physicians, the public and the Plaintiffs to the detriment of the Plaintiffs in particular, and the customers of Merck, receiving Vioxx in general. The actions of defendants and others combined and concurred to constitute a conspiracy for which they are civilly liable.

49.     The acts and omissions of the defendants as described in this Complaint constitute fraudulent suppression of material facts sufficient to toll the running of any and all statutes of limitation, notice provisions, or other similar laws or requirements.  Further,

17

the pendency of class actions describing and designating persons in the class including
and occupied by the Plaintiffs herein, constitutes sufficient commencement of an action to
toll the statutes of limitations and other notice provisions under applicable law.

50.    The defendants, David Sparkman, Natasha Walker-McGlothan, Katherine
Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry
Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges,
Natasha Walker-McGlothan, Randy Walls, and Melissa Bauer, and their employer, Merck,
misrepresented material facts, and fraudulently suppressed material facts, including but
not limited to those detailed in this complaint, to the medical community in general, the
Alabama physicians, and the Plaintiffs' treating physicians in particular, with regard to the
safety and effectiveness of the drug, Vioxx, which material misrepresentations and
fraudulent suppressions, proximately caused the injuries, losses, and damages specified
elsewhere in this complaint.   The defendants, David Sparkman, Natasha Walker-
McGlothan, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago,
Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie
Melton, Julie Hodges, Natasha Walker-McGlothan, Randy Walls, and Melissa Bauer, and
their employer, Merck, , personally visited and otherwise called on Plaintiffs' prescribing
physicians, and conspired and combined among themselves and with others, to cause the
Plaintiffs' prescribing physicians to believe that Vioxx was safe and effective, when in fact
it was not safe or effective to sufficiently outweigh the unreasonable risks of harm posed
by  Vioxx  and  the  said  defendants  otherwise  committed  actionable  fraud,
misrepresentation, and fraudulent suppression which proximately caused the injuries to the
Plaintiffs described elsewhere herein.  Plaintiffs did not know, and could not have known,
that Vioxx was unsafe or that it had caused their injuries and damages, until after not

18

earlier than September 30, 2004. Then data was released November 13, 2005, at the *American Heart Association* conference in Dallas, Texas, that was a study of 58,000 patients, which showed that heart disease patients taking 25 mg of Vioxx per day were five times as likely to die as patients not taking the drug. Defendants continued to conceal, suppress and secrete, important, relevant and crucial material information held by them and not by others.

51.     While today Merck warns of "heart attacks and similar serious events have been reported in patients taking Vioxx" at the time this information was hidden and concealed, and representations were made by the defendants that indicated that the product was, instead, safe and effective.

52.     As a result of the reliance by Plaintiffs, the medical community, and the public generally on the representations and statements of the defendants, including the individual defendants herein and Merck, the Plaintiffs took and consumed Vioxx. As a proximate result and consequence of his ingestion of Vioxx and as a direct and proximate consequence and result of the acts and omissions of the defendants including the individual defendants as described herein, Plaintiffs were injured.

53.     Merck was well aware of the Pharmacia-sponsored Celebrex Long-Acting Safety Study (CLASS), also involving about 8,000 arthritis sufferers, compared that drug to the older NSAIDs ibuprofen and diclofenac to determine whether it was less harmful to the stomach. In a JAMA article in 2000, the researchers published data accumulated over six months and concluded that Celebrex caused fewer ulcers than the older drugs. (Fred E. Silverstein et al., Gastrointestinal Toxicity with Celecoxib vs. Nonsteroidal Anti-inflammatory Drugs for Osteoarthritis and Rheumatoid Arthritis: The CLASS Study: A Randomized Controlled Trial, 284 JAMA 1247 (2000). However, researchers at that point

had 12 months of data that, when analyzed as a whole, showed no significant difference.

54.    The FDA said the CLASS study "did not show a safety advantage in upper gastrointestinal events for Celebrex compared to either ibuprofen or diclofenac." Because some of the study participants were also taking aspirin, which does affect the stomach, some analysts say the results may have been skewed. The company maintained that among those not taking aspirin, the rate of ulcers was lower in Celebrex takers. Again, Celebrex is relevant to this case because of the knowledge and notice provided to Merck and its defendant-employees.

55.    In a June 2002 editorial, the British Medical Journal said the Celebrex study misled consumers with "overoptimistic" data. It said the study was "seriously biased" because the complete results "clearly contradict[ed] the published conclusions" and showed a similar number of stomach complications in all patients, whether they took Celebrex or the older pain relievers.

56.    It has been reported that a substantial number of deaths worldwide have been associated with Vioxx.

57.    Plaintiffs seek, in addition to damages for personal injury, refunds of and restitution for monies paid as a result of their purchase of Vioxx, as well as all other ascertainable economic loss that occurred as a result of defendants' wrongful and improper conduct in connection with the manufacture, marketing, distribution, testing, promotion, labeling and/or selling of Vioxx. Plaintiffs therefore seek to have the defendants return the monies unlawfully and inappropriately acquired by them as a result of their sale of Vioxx.

58.    Plaintiffs seek to have defendants fully disclose and account for, and effect the accumulation and analysis of relevant medical information on Vioxx, including, but not

limited to, the results of all appropriate diagnostic tests performed as part of a medical research and for medical information concerning all persons as gathered, maintained and analyzed, and for medical research concerning the incidence, prevalence, natural course and history, diagnosis and treatment of Vioxx-induced personal injuries, and all this should be disclosed to Plaintiffs in this litigation.

## PLAINTIFFS' CLAIMS FOR RELIEF
## COUNT I

### PRODUCTS LIABILITY UNDER AEMLD AND STRICT LIABILITY PURSUANT TO §402A OF THE RESTATEMENT (SECOND) OF TORTS

59.    Plaintiffs incorporate by reference and re-alleges, as if fully set forth herein, each and every allegation contained in the other paragraphs of this Complaint, wherever contained.

60.    Defendants are manufacturers and/or suppliers of Vioxx and each had an opportunity to inspect the product which was superior to the knowledge or opportunity of the consumer's herein. The defendants were engaged in the business of manufacturing, creating, designing, testing, labeling, sterilizing, packaging, supplying, marketing, selling, advertising, warning and otherwise distributing Vioxx in interstate commerce, which they sold and distributed throughout the world, including the State of Alabama, to Plaintiffs.

61.    The Vioxx product supplied, distributed and manufactured by Merck, and A,

21

B, C, D and E and placed in the stream of commerce by defendants, and others were defective and unreasonably dangerous in design, manufacture and/or formulation in that, when it left the hands of the defendants as manufacturer and/or suppliers, the foreseeable risks exceeded the benefits associated with the design or formulation and they were unreasonably dangerous and defective. Plaintiffs show that they suffered injuries and damages as a result of the sale by defendants who sold the product in defective condition unreasonably dangerous to the ultimate consumer, and all the sellers were engaged in the business of selling such product and product was expected to and did reach the user or consumer without substantial change in the condition in which it is sold. The Plaintiffs were using Vioxx in a manner for which it was intended or in a reasonably foreseeable manner.

62.    Vioxx was expected to and did reach the Plaintiffs without substantial change in its condition as manufactured, created, designed, tested, labeled, sterilized, packaged, supplied, marketed, sold, advertised, undertook to warn, and otherwise distributed.

63.    The Vioxx manufactured by Merck, and/or A, B, C, D and E and supplied by them was defective in manufacture, design or formulation, in that, when it left the hands of the manufacturer and/or suppliers, it was unreasonably dangerous, in that it not meet the reasonable expectations of the ordinary consumer as to safety, and was more dangerous than an ordinary consumer would expect and more dangerous than other pain relievers. The Plaintiffs show that the product was unreasonably dangerous when it left the defendants' control, that it was substantially unaltered when the Plaintiffs used it, and that it proximately caused the Plaintiffs' injuries. The Plaintiffs were not aware of, and in the exercise of reasonable caution could not have discovered, the dangerous nature of Vioxx.

64.    The Vioxx manufactured and/or supplied by defendants was also defective

22

due to inadequate warning or instruction because the manufacturers and suppliers knew or should have known that the products created an unreasonable risk of harm to consumers and the defendants failed to adequately warn of said risks. The defendants' Vioxx caused increased risks of excess deaths and cardiovascular events, as well as kidney damage, aseptic meningitis, and slow healing of bone fractures upon consumption, and therefore constitute a product unreasonably dangerous for normal use due to their defective design, defective manufacture, and the defendants misrepresentations and inadequate facts disclosed to the Plaintiffs and their doctors. The Vioxx manufactured and/or supplied by defendants was defective due to inadequate care in marketing and post-marketing warnings or instruction because, after the defendants knew or should have known of the risk of injury from Vioxx and/or combination use of these drugs, they failed to provide adequate warnings to users or consumers of the product and continued to promote the product.

65.    As a direct and proximate result of defendants' manufacturing, creating, designing, testing, labeling, sterilizing, packaging, supplying, marketing, selling, advertising, warning, and otherwise distributing Vioxx in interstate commerce, Plaintiffs have suffered the injuries described elsewhere in this Complaint and was at an increased risk of and did in fact suffer by developing and suffering a cardiovascular event and has suffered damages and Plaintiffs are entitled to compensatory and punitive damages in an amount just and proper under law for personal injuries and other recoverable damages.

66.    The defendants, therefore, are liable to the Plaintiffs. The conduct of Merck and A, B, C, D and E was gross, willful, wanton, oppressive, intentional, burdensome, and otherwise such as to justify the imposition of punitive damages under Alabama law. Additionally, defendants' conduct was so outrageous as to constitute ill will, bad motive and

23

reckless indifference to the interests of the consumers. The Plaintiffs, therefore, are entitled to punitive damages. All of the defendants are liable to Plaintiffs jointly and severally for all general, special and other relief to which the Plaintiffs are entitled by law. As a consequence of the producing cause and as a legal result of the dangerous and defective condition of Vioxx as sold, developed, designed, marketed, manufactured and/or supplied by defendants, and as a direct and legal result of the tort, AEMLD violation, negligence and wantonness, carelessness, other wrongdoing and action(s) of defendants described herein:

67.    Plaintiffs were injured in their health, strength and activity and suffered injuries to body and mind;

68.    Plaintiffs have sustained economic loss, loss of earnings and diminution or loss of earning capacity, the exact amount of which is presently unknown;

69.    Plaintiffs required reasonable and necessary health care, attention and services and did incur medical, health, incidental and related expenses. As a direct and proximate result of defendants' manufacturing, creating, designing, testing, labeling, sterilizing, packaging, supplying, marketing, selling, advertising, warning, and otherwise distributing Vioxx in interstate commerce, Plaintiffs have suffered the injuries described elsewhere in this Complaint and Plaintiffs have suffered damages and are entitled to recover compensatory and punitive damages in an amount just and proper under law for personal injuries and other recoverable damages.

## COUNT II

### NEGLIGENCE AND WANTONNESS

70.    Plaintiffs incorporate by reference and reallege, as if fully set forth herein, each and every allegation contained in the other paragraphs of this Complaint, wherever

24

contained.

71.    It was the duty of the defendants to use reasonable care in the manufacturing, creating, designing, testing, labeling, sterilizing, packaging, supplying, marketing, selling, advertising, warning and otherwise distributing Vioxx.

72.    Contrary to their duty, the said defendants were guilty of one or more of the following careless, negligent and wanton acts and/or omissions:

Said defendants failed adequately and properly to test, study and inspect Vioxx so as to ascertain whether or not it was safe and proper for the purpose for which it was designed, manufactured and sold;

Failed to utilize and/or implement a reasonably safe design in the manufacture of Vioxx;

Failed to manufacture Vioxx in a reasonably safe condition for which it was intended;

Failed to adequately and properly warn Plaintiffs purchasing Vioxx of the risks of complications when used in a manner for which it was intended;

Failed to adequately and properly warn Plaintiffs purchasing Vioxx of the risks of diseases when used in a manner for which it was intended;

Failed to adequately and properly label Vioxx so as to warn the Plaintiffs of the risks of complications;

Failed to adequately and properly label Vioxx so as to fairly and sufficiently warn the Plaintiffs of the risks of excess deaths and cardiovascular events as well as kidney damage, aseptic meningitis, and slow healing of bone fractures;

Manufactured Vioxx which constituted a hazard to health;

Manufactured Vioxx which caused adverse side effects;

Sold and pushed Vioxx and handed out samples thereof while misrepresenting through word, deed, actions, distributing printed and other materials, all of the most important information concerning the dangers of Vioxx including especially the danger posed of sudden cardiovascular death; and were otherwise careless, negligent and wanton.

73.    As a direct and proximate result of defendants' manufacturing, creating, designing, testing, labeling, sterilizing, packaging, supplying, marketing, selling, advertising, warning, and otherwise distributing Vioxx in interstate commerce, Plaintiffs have suffered the injuries described elsewhere in this Complaint and Plaintiffs have suffered damages and are entitled to recover compensatory and punitive damages in an amount just and proper under law for personal injury and other recoverable damages.

## COUNT III

### NEGLIGENCE PER SE

74.    Plaintiffs incorporate by reference and reallege, as if fully set forth herein, each and every allegation contained in the other paragraphs of this Complaint, wherever contained.

75.    Defendants Merck, David Sparkman, Natasha Walker-McGlothan, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Natasha Walker-McGlothan, Randy Walls, and Melissa Bauer, and the fictitious defendants, had an obligation not to violate the law in the manufacture, design, formulation, compounding, testing, production, processing, assembly, inspection, research, distribution, marketing, labeling, packaging, preparation for use, sale and warning of the risks and dangers of Vioxx.

26

76.     Defendants, Merck, David Sparkman, Natasha Walker-McGlothan, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Natasha Walker-McGlothan, Randy Walls, and Melissa Bauer, and the fictitious defendants, violated Alabama Code §20-1-26, §20-1-27, and §8-19-5, et seq., related amendments and codes and regulations provided there under, and other applicable laws, statutes and regulations. No action is brought herein for violation of federal statutes, but claim is made for violation of the foregoing and any other state's applicable laws.

77.     Plaintiffs, as purchaser and consumer of Vioxx, are within the class of persons the state statutes and regulations described above are designed to protect and Plaintiffs' injuries are the type of harm these statutes are designed to prevent.

78.     The defendants, Merck, David Sparkman, Natasha Walker-McGlothan, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Natasha Walker-McGlothan, Randy Walls, and Melissa Bauer, and the fictitious defendants made false and fraudulent misrepresentations to physicians, Plaintiffs, and the general public that Vioxx is or was safe, effective, fit for its use as designated, and that it's components are not hazardous to the health of users all in violation of Alabama Code § 20-1-26 and 20-1-27 and other applicable law. defendants' acts constitute a breach of duty subjecting defendants to civil liability for all damages arising therefrom, under theories of negligence per se. Alabama Code §20-1-27 states that "No person shall engage in any of the following activities within this state:(1) Manufacture for sale herein, have in his or his possession with intent to sell, offer or expose for sale, sell, or deliver any article of food or drugs which is adulterated or misbranded within the meaning of this division."

27

79.    Said defendants failed to meet the standard of care set by the following statutes and regulations, which were intended for benefit of individuals such as Plaintiffs, making defendants negligent per se:

80.    The defendants made false and fraudulent misrepresentations to physicians, Plaintiffs, and the general public that Vioxx is or was safe, effective, fit for its use as designated, and that it's components are not hazardous to the health of users all in violation of Alabama Code § 20-1-26 and 20-1-27 and other applicable law;

81.    The labeling did bear or contain statements, designs or devices regarding the curative or therapeutic effect of Vioxx which were false or fraudulent and which concealed, in that they failed to provide adequate warnings of, severe and disabling medical side effects and conditions including, without limitations, cardiovascular events, hypertension and edema, as well as kidney damage, aseptic meningitis, and slow healing of bone fractures, excess deaths and adverse events and other adverse medical conditions as soon as there was reasonable evidence of their association with the drug;

'82.    There was misleading and inadequate information for patients for the safe and effective use of defendants' drug in that a drug shall be deemed misbranded "if its package or label shall bear or contain any statement, design or device regarding the curative or therapeutic effect of such article or of any of the ingredients or substances contained therein which is false or fraudulent"; and

83.    There was misleading and inadequate information regarding special care to be exercised by the doctor for safe and effective use of defendants' drug, and the drug was therefore, misbranded.

84.    As a proximate result of the defendants' violations of the statutes described

above, Plaintiffs suffered injuries and personal injuries and damages as alleged herein.

## COUNT IV

### UNJUST ENRICHMENT

85.    Plaintiffs incorporate by reference and reallege, as if fully set forth herein, each and every allegation contained in the other paragraphs of this Complaint, wherever contained.

86.    As the intended and expected result of their conscious wrongdoing, defendants have profited and benefitted from the purchase of Vioxx by the Plaintiffs, to wit: (a) defendants have voluntarily accepted and retained these profits and benefits, derived from the Plaintiffs, with full knowledge and awareness that, as a result of defendants' fraud and other conscious and intentional wrongdoing, Plaintiffs were not receiving a product of the quality, nature, or fitness that had been represented by defendants or that Plaintiffs, as a reasonable consumer, expected.  (b) By virtue of the conscious wrongdoing alleged in this Complaint, defendants have been unjustly enriched at the expense of the Plaintiffs, who are entitled to in equity, and hereby seeks, the restitution of defendants' wrongful profits, revenue, and benefits, to the extent, and in the amount, deemed appropriate by the jury; and such other relief as the jury deems just and proper to remedy the defendants' unjust enrichment.

## COUNT V

### BREACH OF EXPRESS WARRANTY

87.    Plaintiffs incorporate by reference and re-allege, as if fully set forth herein, each and every allegation contained in the other paragraphs of this Complaint, wherever contained.

88.    Defendants expressly warranted to Plaintiffs, by and through statements

29

made by defendants or their authorized agents or sales representative, orally and in publications, package inserts and other written materials intended for physicians, medical patients and the general public, that Vioxx was safe, effective, fit and proper for its intended use.

89.    In using Vioxx, Plaintiffs relied on the skill, judgment, representations and foregoing express warranties of the defendants. Said warranties and representations were false in that the aforementioned product was not safe and was unfit for the uses for which it was intended.

90.    As a direct and proximate result of defendants breaches of warranties, Plaintiffs have suffered the injuries described elsewhere in this Complaint and Plaintiffs were at an increased risk of and did, in fact, suffer by developing cardiovascular events and has suffered damages for which Plaintiffs are entitled to recover from defendants in an amount just and proper under law for personal injury and other recoverable damages.

## COUNT VI

### BREACH OF IMPLIED WARRANTY

91.    Plaintiffs incorporate by reference and re-allege, as if fully set forth herein, each and every allegation contained in the other paragraphs of this Complaint, wherever contained.

92.    Prior to the time that Vioxx was used by Plaintiffs, defendants impliedly warranted to Plaintiffs that Vioxx was of merchantable quality and safe and fit for the use for which it was intended.

93.    Plaintiffs were unskilled in the subject of pharmacology or the research, design and manufacture of Vioxx and reasonably relied entirely on the skill, judgment and implied warranty of the defendants in using Vioxx.

94.     Vioxx was neither safe for its intended use nor of merchantable quality, as warranted by defendants, in that it had dangerous propensities when put to its intended use and would cause severe injuries and death to the user.

95.     As a direct and proximate result of defendants' breaches of warranties, Plaintiffs have suffered the injuries described elsewhere in this Complaint and Plaintiffs were at an increased risk of and did, in fact, suffer by developing cardiovascular events and have suffered damages for which Plaintiffs are entitled to recover from defendants in an amount just and proper under law for personal injuries and other recoverable damages.

## COUNT VII

### CORPORATE RESPONSIBILITY:

### JOINT VENTURES, PARENT/SUBSIDIARIES,

### AND/OR SUCCESSOR CORPORATION

96.     Plaintiffs incorporate by reference and re-allege, as if fully set forth herein, each and every allegation contained in the other paragraphs of this Complaint, wherever contained.

97.     As a result of their control or participation in various joint ventures, parent/subsidiary relationships and/or successor corporations, defendants are liable to the Plaintiffs.

98.     As a result of their negligent and wanton supervision and actual supervision of various joint ventures, parent/subsidiary relationships and/or successor corporations, defendants are liable to Plaintiffs.

99.     As a result of the existence or invalidity of various indemnification agreements, defendants are liable to Plaintiffs.

100.    Defendants are liable to Plaintiffs, as alter egos of their joint ventures, parent/subsidiary relationships and/or successor corporations.

## COUNT VIII

### CIVIL CONSPIRACY

101.    Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth here and further allege as follows:

102.    Defendants, Merck, David Sparkman, Natasha Walker-McGlothan, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Natasha Walker-McGlothan, Randy Walls, and Melissa Bauer, and fictitious defendants combined and conspired to do those acts complained of in Count I through Count IX, as a result of which the Plaintiffs have suffered harm, damages and injuries as previously described.

## COUNT IX

### FRAUD AND DECEIT

103.    Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth here and further allege as follows:

104.    Merck and the sales representative defendants made material misrepresentations of fact to the medical community, the Plaintiffs, the public generally, the governmental entities charged with the protection of the public from unsafe drugs, and to opinion leaders in the medical profession, intentionally in some cases and often with the specific intention of deceiving all these for monetary gain to the defendants, and in some cases negligently and wantonly, and even in rare cases, innocently, in all instances, with the intent and purpose to advance the sales of the dangerous drug Vioxx. The defendants

32

further suppressed material facts as to which they were under a duty to communicate to all of the above persons and entities. The misrepresentation and suppression was, in each case, of material and important facts essential for the health and safety of the public and of Plaintiffs in particular. As a result of the misrepresentations, deceit, and suppression by the defendants as set forth previously in this Complaint and as set forth below, these parties, and Plaintiffs were deceived and defrauded, and as a direct and proximate result of the said deceit, fraud, misrepresentation, and fraudulent suppression the Plaintiffs suffered the harm and injury as set forth in this Complaint.

105.    By the time Merck voluntarily withdrew the anti-inflammatory drug Vioxx from the market in September 2004, more than 100 million prescriptions had been dispensed in the United States. Yet the vast majority of these prescriptions were written by physicians after Merck and the Sales Representative defendants knew that evidence of Vioxx's risks had already surfaced. Even as evidence mounted in defendants' hands that use of Vioxx was associated with heart attacks and strokes, physicians continued to prescribe Vioxx to millions of patients. The reason is the fraudulent scheme perpetrated by the defendants. A major part of the explanation may be found by examining the strategies that Merck and its sales representatives used to market Vioxx to physicians. Based on Merck documents, Merck sent over 3,000 highly trained representatives, including the individual defendants herein, into doctors' offices and hospitals armed with misleading information about Vioxx's health risks. The documents indicate that Merck instructed these representatives to show physicians a pamphlet indicating that Vioxx might be 8 to 11 times safer than other anti-inflammatory drugs, prohibited the representatives from discussing contrary studies (including those financed by Merck) that showed increased risks from Vioxx, and launched special marketing programs — named "Project XXceleration" and "Project Offense" and

33

"Dodgeball"— to overcome the cardiovascular "obstacle" to increased sales.

106.    On information and belief, Plaintiffs aver that while some sales representatives eventually refused to continue with this course of conduct, other representatives, including the individual defendants herein, continued with the misrepresentations and fraudulent concealment, notwithstanding knowledge of the falsity and of the dangers to patients. The Sales Representative defendants were provided two types of materials relevant to drug safety and effectiveness: "approved" and "background" materials. The "approved" items were to be aggressively used in pushing Vioxx because they were things like medical journal articles favorable to Merck. On the other hand, the "background" materials also contained things unfavorable to Vioxx, and the Sales Representative defendants suppressed this information from the prescribing doctors as Merck requested.

107.    The documents reveal that Merck exhaustively trained its representatives on how to persuade doctors to prescribe Vioxx and other Merck products. No interaction with physicians appears to have been too insignificant for instruction. Merck representatives were taught how long to shake physicians' hands (three seconds), how to eat their bread when dining with physicians ("one small bite size piece at a time"), and how to use "verbal and non-verbal" cues when addressing a physician to "subconsciously raise... his/her level of trust." Merck instructed its representatives on the various personality types of doctors (including "technical," "supportive and expressive") and recommended targeted sales techniques for each type. And Merck rewarded its sales force with thousands of dollars in cash bonuses for meeting sales goals.

108.    The company assigned individual doctors a "Merck potential" and graded them on how often they prescribed Merck products. The Sales Representative defendants

34

were also involved in the Merck scheme to communicate misinformation about Vioxx to what defendants called "thought leaders" in the medical community. By this device, defendants could sell more Vioxx even to those doctors to whom they did not or could not speak directly or in detail. The "thought leaders" were to influence the medical community to push more Vioxx, despite the dangers, since they could "influence colleagues through peer-to-peer relationships." To help them do this, the Sales Representative defendants used Merck-paid honoraria (money) to these "thought leaders" to influence the medical community to favor Vioxx and to prescribe it notwithstanding the dangers.

109.    The documents describe in detail how Merck used this highly trained sales force to respond to reports of Vioxx's safety risks. The first public indication that Vioxx posed a heightened risk of heart attack and stroke came in March 2000, when Merck's VIGOR study showed a five-fold increase in the risks of heart attacks in patients on Vioxx compared to patients on Naproxen. This study was followed by cautionary discussions of the cardiovascular risks of Vioxx at a meeting of an advisory committee to the Food and Drug Administration in February 2001, in a New York Times article in May 2001, and in a paper in the Journal of the American Medical Association in August 2001.

110.    After each of these developments, Merck sent bulletins or special messages to its sales force, directing them to use highly questionable information to assuage any physician concerns.

111.    For example, the Merck documents show:

After Merck's VIGOR study reported increased heart attack risks, Merck directed its sales force to show physicians a "Cardiovascular Card" that made it appear that Vioxx could be 8 to 11 times safer than other anti-inflammatory drugs. This card omitted any reference to the VIGOR findings

35

and was based on data FDA considered to be inappropriate for a safety analysis.

After the FDA advisory committee voted that physicians should be informed about the risks found in the VIGOR study, Merck sent a bulletin to its sales force that advised: "DO NOT INITIATE DISCUSSIONS ON THE FDA ARTHRITIS COMMITTEE ... OR THE RESULTS OF THE ... VIGOR STUDY." If physicians asked about the VIGOR study, Merck representatives were directed to respond, "I cannot discuss the study with you." After the New York Times reported on the cardiovascular dangers of Vioxx, Merck instructed its field staff to tell physicians that patients on other anti-inflammatory medications were eight times more likely to die from cardiovascular causes than patients on Vioxx. The Merck bulletin told its sales force to show physicians the Cardiovascular Card and state: "Doctor, as you can see, Cardiovascular Mortality as reported in over 6,000 patients was Vioxx .1 vs. NSAIDS .8 vs. Placebo 0."

112.    After extensive negotiations, FDA and Merck agreed on a label change for Vioxx in April 2002, that mentioned the cardiovascular findings from the VIGOR study. The final label included the statement that the significance of these findings were "unknown." According to the documents, Merck instructed its representatives to emphasize this statement on new labels to counter physician safety concerns. Merck documents show that in fact the cardiovascular risks were actually well-known, but suppressed, by defendants.

113.    Merck and other drug companies maintain publicly that their representatives play a vital role in the health care system by educating physicians about new drugs and ongoing research. But the Merck documents reveal another side to company marketing

efforts. The documents show that Merck trained its representatives to capitalize subtly on every interaction with physicians to promote Merck products. When concerns about Vioxx's safety arose, Merck used this highly trained force to present a misleading picture to physicians about the drug's cardiovascular risks. Merck's and the Sales Representatives' promotional efforts explain in large part why Vioxx sales remained strong even as the evidence of the drug's dangers mounted. Prescribing doctors were massively misled.

114.    The Sales Representative defendants represented to the Plaintiffs' prescribing physicians false and misleading information concerning the drug Vioxx. The defendants, pursuant to the defendants' "Dodgeball" program and other plans to misrepresent the safety of Vioxx, communicated that the drug was safe for the cardiovascular system, and did not increase the risk stroke or heart attack. The Plaintiffs' physicians did prescribe the subject drug to the Plaintiffs, as a result of, and in reliance upon, the misrepresentations by the defendants' including the Sales Representative defendants who made direct communications to the physician. The physicians made determinations concerning the use of this medication based on false and fraudulent information provided by the defendants including the Sales Representative defendants, and did not act in their proper role as a learned professional in that physicians were given wrongful, false, incomplete, misleading and wrong information by the defendants, including the Sales Representative defendant.

115.    The negligence and wantonness of the defendants, including the Sales Representative defendants, was the proximate cause of the injuries and death suffered by Plaintiffs. Because the Plaintiffs' physicians were prevented from exercising and operating in their full role as learned professionals, because of missed information given to them by defendants, they were deprived of the full and adequate information needed to act in a

learned manner in deciding and determining how to prescribe pain relieving medication to
the Plaintiffs, with the proximate result and consequence that the physicians did in fact
prescribe the dangerous and deadly drug, Vioxx, to Plaintiffs, causing their injuries.

116.    The Plaintiffs suffered personal injuries as a direct and proximate result and
consequence of the wrongful acts and omissions of each of the defendants. The Plaintiffs
would not have been prescribed the subject drug, Vioxx, by his physician, if the physician
had not been given wrongful and incorrect information by the defendants including the
Sales Representative defendants.

117.    If defendants had not engaged in this conduct, consumers, such as the
Plaintiffs, would have switched from Vioxx to safer products or refrained wholly from its
efficacy.

118.    From approximately 1999 through the date of Plaintiffs injuries defendants
engaged in a scheme of marketing, distributing and/or selling Vioxx under the guise that
it was safe and efficacious for persons such as the Plaintiffs.

119.    Plaintiffs allege that the marketing strategies, including without limitation the
detail and sampling programs and direct-to-consumer advertising, used by Merck, targeted
consumers like the Plaintiffs to induce them to purchase and use Vioxx. defendants
distributed, manufactured and marketed Vioxx, in a manner designed to convince and their
physicians to rely on the marketing, advertisements and product information propounded
by defendant.

120.    On September 30, 2004, Merck voluntarily removed Vioxx from all markets
in the United States.

121.    The sales representative defendants negligently, recklessly, intentionally and
fraudulently made material representations that Vioxx was safe and effective. The sales

representative defendants represented Vioxx as safe so that the general consuming public, including Plaintiffs and their physicians, would rely upon said representations when purchasing the product. The sales representative defendants also suppressed the cardiovascular risks from prescribing physicians, and consumers such as the Plaintiffs, even though they had knowledge of the risks.

122.    Merck trained its sales representatives, through programs such as the "Vioxx Obstacle Dodge Ball Program," the "Obstacle Response Guide for Vioxx," and "Top Ten Obstacle Handlers" to misstate, conceal, and misrepresent the truly dangerous nature of Vioxx to prescribing physicians. The sales representative defendants applied, utilized and put into practice each of these programs with the doctors in question.

123.    These programs were specifically designed and promulgated by Merck to mislead prescribing physicians about the safety of Vioxx.

124.    These programs were specifically designed and promulgated by Merck to mislead prescribing physicians about the life threatening side effects, including myocardial infarction and stroke, of Vioxx.

125.    Merck trained its sales representative force, including the sales representative defendants, to utilize its "Dodge Ball" and "Obstacle Avoidance" programs during the sales representatives' interactions with or "calls" upon prescribing physicians, and defendants put them into full effect with the subject doctors.

126.    These programs were utilized by sales representatives, including the sales representative defendants to "dodge" relevant safety questions by physicians to who promoted and or sold Vioxx. Indeed, these programs provide specific responses and representations that are to be made by Merck sales representatives to physicians during the sales calls or in response to physician questions. These Merck mandated responses

misrepresented the safety of Vioxx.

127.    The Vioxx Obstacle Dodge Ball Program identifies and categorizes physician safety questions as "obstacles" to Merck's sales force. The "Dodge Ball" program specifically instructs sales representatives, including the sales representative defendants, to "dodge" these physicians' safety related questions/obstacles. Indeed, the last few pages of the "Dodge Ball" instruction manual simply state "DODGE," "DODGE," and "DODGE." The safety questions to be "dodged" by sales representatives, including the sales representative defendants, include, inter alia, questions such as, "I am concerned about the cardiovascular effects of Vioxx," and "The competition has been in my office telling me that the incidence of heart attacks is greater with Vioxx than with Celebrex."

128.    Additional sales representative guidelines provide specific answers to physician questions/obstacles (such as those noted above) that were to be recited by sales representatives, including the sales representative defendants. The top three "obstacles" listed on the sales guidelines are physician safety questions involving Vioxx related "Cardiovascular Events." Sales representative, including the sales representative defendants, are thereafter provided with specific misrepresentations to make to the concerned physicians about the safety of Vioxx. For example, bulletins from Merck to its sales representatives state, "in response to recent published reports about Vioxx on May 1, 2000, we provided you with an approved verbal response to use to address customers' questions around the incidence rate of MI's [myocardial infarctions] on patients taking Vioxx..." (Bulletin for Vioxx: New PIRs Relative to Vioxx GI Outcomes Research Study). Sales representatives, including the sales representative defendants, were therefore required to misrepresent that Vioxx does not increase the rate of myocardial infarctions when compared with NSAID's. This misrepresentation is false and inaccurate, yet was

intentionally, knowingly, recklessly, wantonly and/or negligently made to treating physicians, including each Plaintiffs' prescribing physicians, by the individually named sales representatives. In an instructional video used to train sales representatives, an actress playing "an obstacle" to Vioxx sales says, "I'm afraid Vioxx causes M.I.'s" - a reference to myocardial infarctions, or heart attacks. In response, an actress playing a Merck sales representative says, "That's not true." This was wrong, Vioxx causes M.I.'s. The mechanism of Vioxx-induced heart attack and stroke is the same – vasoconstriction and blood-clot creation.

129. Merck's sales representatives, specifically the sales representative defendants, utilized the misrepresentations contained in the obstacle avoidance programs to mislead each Plaintiffs' treating physicians concerning the safety of Vioxx and the occurrence of life threatening side effects, such as strokes and myocardial infarctions, from the usage of Vioxx.

130. Merck and the individually named sales representatives further misrepresented the safety of Vioxx to prescribing physicians by providing written literature to the doctors that contained false statements about Vioxx's safety. Such literature would be forwarded to the physician who posed questions/obstacles to the sales representatives after the sales representatives had concluded their meeting with the physician, entitled "In Response To Your Questions" (follow-up literature that misrepresents Vioxx's cardiovascular safety) and "In Response To Your Questions: Cardiovascular System", which also misrepresents the risks associated with Vioxx.

131. Sales representatives, including the sales representative defendants, were also ordered to send follow-up letters to physicians with whom they met who had posed questions/obstacles. These letters would downplay the cardiovascular risks associated with

Vioxx, even though the defendants were well aware that the risks existed.

132.    The underlying inducement for both Merck and its sales representatives, including the sales representative defendants, to make repeated misrepresentations to physicians about the safety of Vioxx was money. The more doctors prescribed Vioxx, the more money Merck made. The more doctors the sales representatives, including the sales representative defendants, cajoled into prescribing Vioxx, the more money and non-monetary bonuses the sales representatives received. Thus, sales representatives, such as the sales representative defendants, had a financial interest in disseminating the false and misleading information, while concealing the known risks (i.e., obstacle responses) outlined above to as many prescribing physicians as possible, including Plaintiffs' prescribing physicians

133.    Plaintiffs and their prescribing physicians reasonably relied, to their detriment, upon the false oral and written misrepresentations of Merck, and the sales representative defendants, concerning the safety of Vioxx and the absence of adverse cardiovascular events in users. Such reasonable reliance induced each Plaintiff's treating physician to prescribe his Vioxx and further induced the Plaintiffs to utilize the dangerous drug Vioxx. As a direct and proximate result of Plaintiff's usage of Vioxx, they were injured as described herein. Such event has caused Plaintiff's great pain and suffering, mental anguish, expense.

134.    On June 23, 2005 conduct of Merck and its sales representatives was summarized in the New England Journal of Medicine as follows:

> "The pharmaceutical industry spends more than $5.5 billion to promote drugs to doctors each year — more than what all U.S. medical schools spend to educate medical students. Major drug companies employ about 90,000

sales representatives — one for every 4.7 doctors in the United States, according to the American Medical Association. Although substantial marketing expenditures are common in many industries, the potential effect of drug marketing on health raises special concerns. For years, the industry has justified these expenditures on the grounds that they fund essential education for doctors. According to the Web site of the Pharmaceutical Manufacturers and Research Association, "many physicians learn about new drugs - indeed, about ongoing research in their areas of specialization - largely through information provided by the companies that market new products." But if the primary goal is sales, not education, and the information provided to physicians is slanted or misleading, the health consequences for patients can be serious.

"Because of the recent events surrounding Rofecoxib, the May 5 hearing of the Government Reform Committee focused on Merck, the manufacturer of Vioxx... Merck cooperated voluntarily with our request for information, providing more than 20,000 pages of internal company documents. Merck also voluntarily sent a senior executive to testify at the hearing and answer the committee's questions. Yet as we learned, even a company like Merck can direct its sales force to provide clinicians with a distorted picture of the relevant scientific evidence.

"On February 7, 2001, the Arthritis Drugs Advisory Committee of the Food and Drug Administration (FDA) met to discuss the VIGOR study. At this meeting, Merck argued that the significant increase in the rate of myocardial infarction (which further analysis had determined to be a fivefold increase) was explained by a protective effect of naproxen, not by any inherent risk posed by its drug. After the FDA's medical reviewer and others expressed concern about

43

this explanation, the advisory committee voted unanimously that physicians should be made aware of VIGOR's cardiovascular results.

"The next day, Merck sent a bulletin to its Rofecoxib sales force of more than 3000 representatives. The bulletin ordered, "DO NOT INITIATE DISCUSSIONS ON THE FDA ARTHRITIS ADVISORY COMMITTEE . . . OR THE RESULTS OF THE . . . VIGOR STUDY." It advised that if a physician inquired about VIGOR, the sales representative should indicate that the study showed a gastrointestinal benefit and then say, "I cannot discuss the study with you."

"Merck further instructed its representatives to show those doctors who asked whether Rofecoxib caused myocardial infarction a pamphlet called "The Cardiovascular Card." This pamphlet, prepared by Merck's marketing department, indicated that Rofecoxib was associated with 1/8 the mortality from cardiovascular causes of that found with other anti-inflammatory drugs. Stroke is caused by Vioxx with the same mechanism as myocardial infarction.

"The Cardiovascular Card provided a misleading picture of the evidence on Rofecoxib. The card did not include any data from the VIGOR study. Instead, it presented a pooled analysis of preapproval studies, in most of which low doses of Rofecoxib were used for a short time. None of these studies were designed to assess cardiovascular safety, and none included adjudication of cardiovascular events. In fact, FDA experts had publicly expressed "serious concerns" to the agency's advisory committee about using the preapproval studies as evidence of the drug's cardiovascular safety.

"Persistent physicians who sought additional information about the

44

cardiovascular effects of Rofecoxib were directed to send inquiries to the company's headquarters. Merck's response to these physicians highlighted the misleading information from the Cardiovascular Card.

"Beyond these specific communications to physicians, our committee also heard evidence of a broad disparity between the evidence-based perspective provided by scientific journals and expert committees, on the one hand, and the sales pitch used by the company's field staff, on the other. Merck instructed its sales representatives, for example, to provide only certain approved study results to doctors. Approved scientific studies were defined as those that provide "solid evidence as to why [doctors] should prescribe Merck products for their appropriate patients." By contrast, those studies that raised safety questions about drugs were considered background studies. Distributing the results of a background study was "a clear violation of Company Policy."

"Merck also trained its representatives to identify speakers for educational events who were "opinion leaders" who could provide "favorable" views of the company's products to other doctors. Underlining the promotional nature of these events, Merck instructed its sales representatives to track whether the physicians who attended them subsequently prescribed more Merck drugs.

"In addition to providing selective evidence and biased presentations, Merck counseled its representatives to use an array of subliminal selling techniques to affect prescribing - potentially undermining the ability of physicians to choose drugs strictly on the basis of the risks, benefits, and costs for a particular patient. For example, in a training course on selling skills,

Merck taught representatives to mimic the words and body language of doctors during sales calls. The curriculum explained that 'mirroring is the matching of patterns, verbal and non-verbal, with the intention of helping you enter the customer's world. It is positioning yourself to match the person talking. It subconsciously raises his/her level of trust by building a bridge of similarity.'"

135.    The sales representative defendants personally performed the acts and omissions described herein and participated in the torts alleged herein. The sales representative defendants had knowledge of the cardiovascular risks associated with Vioxx, and misrepresented and/or concealed the nature of these risks to the opinion leaders in the local medical community, to the public, Plaintiffs, and to Plaintiff's physicians. The sales representative defendants were not acting as mere conduits, because they had knowledge that the information conveyed to each opinion leader, consumer, the public and to each of Plaintiffs' physicians, was false.

136.    Accordingly, the sales representative defendants are liable to Plaintiffs for the claims stated herein, and are fully responsible for their own personal acts and omissions whether performed for Merck or as a "frolic of their own" or otherwise. They acted for their own personal profit and "following orders" is not a defense where they acted personally in a negligent, wanton and deceitful manner.

137.    As a result of the misrepresentations, deceit, and suppression by the defendants as set forth previously in this Complaint and as set forth below, these parties, and Plaintiffs were deceived and defrauded, and as a direct and proximate result of the said deceit, fraud, misrepresentation, and fraudulent suppression the Plaintiffs suffered the harm and injury as set forth in this Complaint. The conduct of the defendants described in

46

all counts of this civil action is gross, oppressive, burdensome, willful, intentional, wanton and otherwise such as to justify the imposition of punitive damages under Alabama law.

**WHEREFORE**, Plaintiffs demand judgment against Merck & Co., Inc., Merck Corporation, Merck Pharmaceutical Division, David Sparkman, Natasha Walker-McGlothan, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Natasha Walker-McGlothan, Randy Walls, Melissa Bauer and defendants A, B, C, D, E, F, X and Z, whose true names are unknown to the Plaintiffs but will be added by amendment when correctly ascertained, jointly and severally in such sums of compensatory and punitive damages as the jury determines to be fair, just, and lawful plus costs of Court.

James S. Hubbard
Attorney for Plaintiffs

Thomas J. Knight
Attorney for Plaintiffs

HUBBARD & KNIGHT
Post Office Drawer 1850
Anniston, Alabama 36202
(256) 237-9586

```
-------------------------------------------------------------------------
| AVSO351                                              CV 2006 000145.00 |
|                                                                         |
|                                              JUDGE: ASSIGNED JUDGE     |
| ----------------------------------------------------------------------- |
|                  ALABAMA JUDICIAL DATA CENTER                           |
|                       CASE ACTION SUMMARY                               |
|                          CIRCUIT CIVIL                                  |
| ----------------------------------------------------------------------- |
|    IN THE CIRCUIT  COURT OF  RANDOLPH    COUNTY                         |
|                                                                         |
|    CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL                  |
| FILED:  09/21/2006 TYPE: BAD FAITH/FRAUD/MISR TYPE TRIAL: NON-JURY  TRACK: |
|                                                                         |
| ********************************************************************** |
| DATE1:  04/04/2007  CA:                         CA DATE:               |
| DATE2:              AMT:          $.00  PAYMENT:                        |
| DATE3:                                                                  |
| ********************************************************************** |
| PLAINTIFF  001: BAILEY CLIFFORD                                         |
|                                    ATTORNEY: KNIGHT THOMAS J            |
|                                    KNI009    P O DRAWER 1850            |
|                  , AL  00000-0000                                       |
|                  PHONE: (256)000-0000           ANNISTON, AL  36202     |
| ENTERED:  09/21/2006 ISSUED:        TYPE:            (205)237-9586      |
| SERVED:              ANSWERED:          JUDGEMENT:  10/31/2006          |
| ----------------------------------------------------------------------- |
| PLAINTIFF  002: BLACK CLIFFORD                                          |
|                                    ATTORNEY: KNIGHT THOMAS J            |
|                                    KNI009    P O DRAWER 1850            |
|                  , AL  00000-0000                                       |
|                  PHONE: (256)000-0000           ANNISTON, AL  36202     |
| ENTERED:  09/21/2006 ISSUED:        TYPE:            (205)237-9586      |
| SERVED:              ANSWERED:          JUDGEMENT:  10/31/2006          |
| ----------------------------------------------------------------------- |
| PLAINTIFF  003: CALHOUN WESLEY                                          |
|                                    ATTORNEY: KNIGHT THOMAS J            |
|                                    KNI009    P O DRAWER 1850            |
|                  , AL  00000-0000                                       |
|                  PHONE: (256)000-0000           ANNISTON, AL  36202     |
| ENTERED:  09/21/2006 ISSUED:        TYPE:            (205)237-9586      |
| SERVED:              ANSWERED:          JUDGEMENT:  10/31/2006          |
| ----------------------------------------------------------------------- |
| PLAINTIFF  004: DEASON CURTIS                                           |
|                                    ATTORNEY: KNIGHT THOMAS J            |
|                                    KNI009    P O DRAWER 1850            |
|                  , AL  00000-0000                                       |
|                  PHONE: (256)000-0000           ANNISTON, AL  36202     |
| ENTERED:  09/21/2006 ISSUED:        TYPE:            (205)237-9586      |
| SERVED:              ANSWERED:          JUDGEMENT:  10/31/2006          |
| ----------------------------------------------------------------------- |
| PLAINTIFF  005: GRAVES RUTH                                             |
|                                    ATTORNEY: KNIGHT THOMAS J            |
|                                    KNI009    P O DRAWER 1850            |
|                  , AL  00000-0000                                       |
|                  PHONE: (256)000-0000           ANNISTON, AL  36202     |
| ENTERED:  09/21/2006 ISSUED:        TYPE:            (205)237-9586      |
| SERVED:              ANSWERED:          JUDGEMENT:  10/31/2006          |
| ----------------------------------------------------------------------- |
| PLAINTIFF  006: GRIZZARD MICKEY                                         |
|                                    ATTORNEY: KNIGHT THOMAS J            |
|                                    KNI009    P O DRAWER 1850            |
|                  , AL  00000-0000                                       |
|                  PHONE: (256)000-0000           ANNISTON, AL  36202     |
| ENTERED:  09/21/2006 ISSUED:        TYPE:            (205)237-9586      |
| SERVED:              ANSWERED:          JUDGEMENT:  10/31/2006          |
| ----------------------------------------------------------------------- |
| PLAINTIFF  007: PERRY JIMMY                                             |
|                                    ATTORNEY: KNIGHT THOMAS J            |
|                                    KNI009    P O DRAWER 1850            |
|                  , AL  00000-0000                                       |
|                  PHONE: (256)000-0000           ANNISTON, AL  36202     |
| ENTERED:  09/21/2006 ISSUED:        TYPE:            (205)237-9586      |
| SERVED:              ANSWERED:          JUDGEMENT:  10/31/2006          |
| YW   03/29/2007                                 CV 2006 000145.00      |
-------------------------------------------------------------------------
```

```
AVSO351                                                       CV 2006 000145.00


                                            JUDGE: ASSIGNED JUDGE
----------------------------------------------------------------------------
                    ALABAMA JUDICIAL DATA CENTER
                        CASE ACTION SUMMARY
                          CIRCUIT CIVIL
----------------------------------------------------------------------------
   IN THE CIRCUIT  COURT OF  RANDOLPH    COUNTY

    CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
  FILED: 09/21/2006 TYPE: BAD FAITH/FRAUD/MISR TYPE TRIAL: NON-JURY  TRACK:

****************************************************************************
DATE1:  04/04/2007  CA:                    CA DATE:
DATE2:              AMT:            $.00 PAYMENT:
DATE3:
****************************************************************************
----------------------------------------------------------------------------
 PLAINTIFF  008: SIKES HERBERT STANLEY
                                     ATTORNEY: KNIGHT THOMAS J
                                     KNI009    P O DRAWER 1850
                  , AL  00000-0000
                  PHONE: (256)000-0000              ANNISTON, AL  36202
ENTERED:  09/21/2006 ISSUED:            TYPE:            (205)237-9586
SERVED:              ANSWERED:            JUDGEMENT: 10/31/2006
----------------------------------------------------------------------------
 PLAINTIFF  009: THOMPSON PHILLIP
                                     ATTORNEY: KNIGHT THOMAS J
                                     KNI009    P O DRAWER 1850
                  , AL  00000-0000
                  PHONE: (256)000-0000              ANNISTON, AL  36202
ENTERED:  09/21/2006 ISSUED:            TYPE:            (205)237-9586
SERVED:              ANSWERED:            JUDGEMENT: 10/31/2006
----------------------------------------------------------------------------
 DEFENDANT  001: MERCK & CO INC
                 C/O THE CORPORATION CO   ATTORNEY: GARRETT RICHARD B
                 2000 INTERSTATE PK DR STE GAR027    P O BOX 270
                 MONTGOMERY, AL  36109-0000
                 PHONE: (256)000-0000              MONTGOMERY, AL  36101
ENTERED:  09/21/2006 ISSUED:  09/21/2006 TYPE:     SHERIFF   (205)834-8480
SERVED:   10/05/2006 ANSWERED:            JUDGEMENT: 10/31/2006
----------------------------------------------------------------------------
 DEFENDANT  002: BARTLETT SCOTT
                 3255 CO RD 747             ATTORNEY:

                 ANNISTON, AL  36202-0000
                 PHONE: (256)000-0000
ENTERED:  09/21/2006 ISSUED:  09/21/2006 TYPE:     SHERIFF
SERVED:              ANSWERED:            JUDGEMENT: 10/31/2006
----------------------------------------------------------------------------
 DEFENDANT  003: BAUER MELISSA
                 512 CLAY STREET            ATTORNEY:

                 ALBERTVILLE, AL  35950-0000
                 PHONE: (256)000-0000
ENTERED:  09/21/2006 ISSUED:  09/21/2006 TYPE:     SHERIFF
SERVED:              ANSWERED:            JUDGEMENT: 10/31/2006
----------------------------------------------------------------------------
 DEFENDANT  004: DELK JASON
                 1609 BENT RIVER CIRCLE     ATTORNEY:

                 VESTAVIA HILLS , AL  35216-000
                 PHONE: (256)000-0000
ENTERED:  09/21/2006 ISSUED:  09/21/2006 TYPE:     SHERIFF
SERVED:   10/11/2006 ANSWERED:            JUDGEMENT: 10/31/2006
----------------------------------------------------------------------------
 DEFENDANT  005: HARPER CORAL
                 220 63 ST S                ATTORNEY:

                 BIRMINGHAM, AL  35212-0000
                 PHONE: (256)000-0000
ENTERED:  09/21/2006 ISSUED:  09/21/2006 TYPE:
SERVED:              ANSWERED:            JUDGEMENT: 10/31/2006
----------------------------------------------------------------------------
:W  03/29/2007                                         CV 2006 000145.00
```

```
| AVSO351                                                    CV 2006 000145.00 |
|                                                                             |
|                                              JUDGE: ASSIGNED JUDGE          |
|-----------------------------------------------------------------------------|
|                   ALABAMA JUDICIAL DATA CENTER                              |
|                      CASE ACTION SUMMARY                                    |
|                        CIRCUIT CIVIL                                        |
|-----------------------------------------------------------------------------|
|   IN THE CIRCUIT  COURT OF  RANDOLPH      COUNTY                            |
|                                                                             |
|    CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL                      |
|  FILED: 09/21/2006 TYPE: BAD FAITH/FRAUD/MISR TYPE TRIAL: NON-JURY  TRACK:  |
|                                                                             |
| ***************************************************************************** |
|  DATE1: 04/04/2007  CA:                       CA DATE:                      |
|  DATE2:             AMT:           $.00  PAYMENT:                           |
|  DATE3:                                                                     |
| ***************************************************************************** |
| --------------------------------------------------------------------------- |
|  DEFENDANT  006: HENDERSON CHARLES                                          |
|                  2101 31 AVE N              ATTORNEY:                        |
|                                                                             |
|                  BIRMINGHAM, AL  35207-0000                                 |
|                  PHONE: (256)000-0000                                       |
|  ENTERED:  09/21/2006 ISSUED:  09/21/2006 TYPE:    SHERIFF                  |
|  SERVED:                 ANSWERED:              JUDGEMENT: 10/31/2006        |
| --------------------------------------------------------------------------- |
|  DEFENDANT  007: HODGES JULIE                                               |
|                  14019 MARIELLEN RD SW      ATTORNEY:                        |
|                                                                             |
|                  HUNTSVILLE, AL  35803-0000                                 |
|                  PHONE: (256)000-0000                                       |
|  ENTERED:  09/21/2006 ISSUED:  09/21/2006 TYPE:    SHERIFF                  |
|  SERVED:                 ANSWERED:              JUDGEMENT: 10/31/2006        |
| --------------------------------------------------------------------------- |
|  DEFENDANT  008: HOLMES KATHERINE                                           |
|                  2481 SAVOY STREET          ATTORNEY:                        |
|                                                                             |
|                  HOOVER, AL  35226-0000                                     |
|                  PHONE: (256)000-0000                                       |
|  ENTERED:  09/21/2006 ISSUED:  09/21/2006 TYPE:    SHERIFF                  |
|  SERVED:                 ANSWERED:              JUDGEMENT: 10/31/2006        |
| --------------------------------------------------------------------------- |
|  DEFENDANT  009: HOUSTON JAMES                                              |
|                  286 WESLEY DR              ATTORNEY:                        |
|                                                                             |
|                  OZARK, AL  36360-0000                                      |
|                  PHONE: (256)000-0000                                       |
|  ENTERED:  09/21/2006 ISSUED:  09/21/2006 TYPE:    SHERIFF                  |
|  SERVED:  10/03/2006 ANSWERED:                  JUDGEMENT: 10/31/2006        |
| --------------------------------------------------------------------------- |
|  DEFENDANT  010: LOVETT LORI                                                |
|                  5612 5 TERRY ST            ATTORNEY:                        |
|                                                                             |
|                  BIRMINGHAM, AL  35212-0000                                 |
|                  PHONE: (256)000-0000                                       |
|  ENTERED:  09/21/2006 ISSUED:  09/21/2006 TYPE:    SHERIFF                  |
|  SERVED:                 ANSWERED:              JUDGEMENT: 10/31/2006        |
| --------------------------------------------------------------------------- |
|  DEFENDANT  011: MELTON JULIE                                               |
|                  5309 AVE S                 ATTORNEY:                        |
|                                                                             |
|                  BIRMINGHAM, AL  35212-0000                                 |
|                  PHONE: (256)000-0000                                       |
|  ENTERED:  09/21/2006 ISSUED:  09/21/2006 TYPE:    SHERIFF                  |
|  SERVED:                 ANSWERED:              JUDGEMENT: 10/31/2006        |
| --------------------------------------------------------------------------- |
|  DEFENDANT  012: MITCHAM HENRY                                              |
|                  1919 MCDOWLING DR SE       ATTORNEY:                        |
|                                                                             |
|                  HUNTSVILLE, AL  35803-0000                                 |
|                  PHONE: (256)000-0000                                       |
|  ENTERED:  09/21/2006 ISSUED:  09/21/2006 TYPE:    SHERIFF                  |
|  SERVED:                 ANSWERED:              JUDGEMENT: 10/31/2006        |
| --------------------------------------------------------------------------- |
| YW   03/29/2007                             CV 2006 000145.00               |
```

```
AVSO351                                              CV 2006 000145.00

                                          JUDGE: ASSIGNED JUDGE
-------------------------------------------------------------------
            ALABAMA JUDICIAL DATA CENTER
                 CASE ACTION SUMMARY
                   CIRCUIT CIVIL
-------------------------------------------------------------------
  IN THE CIRCUIT  COURT OF  RANDOLPH    COUNTY

   CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
 FILED:  09/21/2006 TYPE: BAD FAITH/FRAUD/MISR TYPE TRIAL: NON-JURY   TRACK:

*******************************************************************
DATE1:  04/04/2007  CA:                   CA DATE:
DATE2:            AMT:          $.00  PAYMENT:
DATE3:
*******************************************************************
-------------------------------------------------------------------
DEFENDANT  013: PHARR JERRY
               4705 AUGUSTA DR          ATTORNEY:

               EIGHT MILE, AL  36613-0000
               PHONE: (256)000-0000
 ENTERED:  09/21/2006 ISSUED:  09/21/2006 TYPE:   SHERIFF
 SERVED:           ANSWERED:          JUDGEMENT: 10/31/2006
-------------------------------------------------------------------
DEFENDANT  014: SANTIAGO MELISSA
               223 VINEYARD LANE        ATTORNEY:

               BIRMINGHAM, AL  35242-0000
               PHONE: (256)000-0000
 ENTERED:  09/21/2006 ISSUED:  09/21/2006 TYPE:
 SERVED:           ANSWERED:          JUDGEMENT: 10/31/2006
-------------------------------------------------------------------
DEFENDANT  015: SPARKMAN DAVID
               545 ROCKY FORD ROAD      ATTORNEY:

               HARTSELLE, AL  35640-0000
               PHONE: (256)000-0000
 ENTERED:  09/21/2006 ISSUED:  09/21/2006 TYPE:   SHERIFF
 SERVED:  10/12/2006  ANSWERED:        JUDGEMENT: 10/31/2006
-------------------------------------------------------------------
DEFENDANT  016: WALKER-MCGLOTHAN NATASHA
               3122 HIGHLAND LAKES RD   ATTORNEY:

               BIRMINGHAM, AL  35242-0000
               PHONE: (256)000-0000
 ENTERED:  09/21/2006 ISSUED:  09/21/2006 TYPE:
 SERVED:           ANSWERED:          JUDGEMENT: 10/31/2006
-------------------------------------------------------------------
DEFENDANT  017: WALLS RANDY
               7620 MACK HICKS RD       ATTORNEY:

               CLAY, AL  35048-0000
               PHONE: (256)000-0000
 ENTERED:  09/21/2006 ISSUED:  09/21/2006 TYPE:
 SERVED:           ANSWERED:          JUDGEMENT: 10/31/2006
-------------------------------------------------------------------

  09/21/2006   ASSIGNED TO JUDGE: ASSIGNED JUDGE         (AV01)

  09/21/2006   ORIGIN: INITIAL FILING                    (AV01)

  09/21/2006   BENCH/NON-JURY TRIAL REQUESTED            (AV01)

  09/21/2006   CASE ASSIGNED STATUS OF: ACTIVE           (AV01)

  09/21/2006   BAILEY CLIFFORD ADDED AS C001             (AV02)

  09/21/2006   LISTED AS ATTORNEY FOR C001: KNIGHT THOMAS J(AV02)
-------------------------------------------------------------------
YW   03/29/2007                            CV 2006 000145.00
```

```
AVSO351                                                          CV 2006 000145.00


                                          JUDGE: ASSIGNED JUDGE
----------------------------------------------------------------------------
                      ALABAMA JUDICIAL DATA CENTER
                      CASE ACTION SUMMARY
                      CIRCUIT CIVIL
----------------------------------------------------------------------------
   IN THE CIRCUIT  COURT OF  RANDOLPH       COUNTY

   CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
   FILED:  09/21/2006 TYPE: BAD FAITH/FRAUD/MISR TYPE TRIAL: NON-JURY   TRACK:

************************************************************************
DATE1:  04/04/2007  CA:                  CA DATE:
DATE2:              AMT:          $ .00  PAYMENT:
DATE3:
************************************************************************
   09/21/2006    BLACK CLIFFORD ADDED AS C002                (AV02)

   09/21/2006    LISTED AS ATTORNEY FOR C002: KNIGHT THOMAS J(AV02)

   09/21/2006    CALHOUN WESLEY ADDED AS C003                (AV02)

   09/21/2006    LISTED AS ATTORNEY FOR C003: KNIGHT THOMAS J(AV02)

   09/21/2006    DEASON CURTIS ADDED AS C004                 (AV02)

   09/21/2006    LISTED AS ATTORNEY FOR C004: KNIGHT THOMAS J(AV02)

   09/21/2006    GRAVES RUTH ADDED AS C005                   (AV02)

   09/21/2006    LISTED AS ATTORNEY FOR C005: KNIGHT THOMAS J(AV02)

   09/21/2006    GRIZZARD MICKEY ADDED AS C006               (AV02)

   09/21/2006    LISTED AS ATTORNEY FOR C006: KNIGHT THOMAS J(AV02)

   09/21/2006    PERRY JIMMY ADDED AS C007                   (AV02)

   09/21/2006    LISTED AS ATTORNEY FOR C007: KNIGHT THOMAS J(AV02)

   09/21/2006    SIKES HERBERT STANLEY ADDED AS C008         (AV02)

   09/21/2006    LISTED AS ATTORNEY FOR C008: KNIGHT THOMAS J(AV02)

   09/21/2006    THOMPSON PHILLIP ADDED AS C009              (AV02)

   09/21/2006    LISTED AS ATTORNEY FOR C009: KNIGHT THOMAS J(AV02)

   09/21/2006    MERCK & CO INC ADDED AS D001                (AV02)

   09/21/2006    BARTLETT SCOTT ADDED AS D002                (AV02)

   09/21/2006    BAUER MELISSA ADDED AS D003                 (AV02)

   09/21/2006    DELK JASON ADDED AS D004                    (AV02)

   09/21/2006    HARPER CORAL ADDED AS D005                  (AV02)

   09/21/2006    HENDERSON CHARLES ADDED AS D006             (AV02)

   09/21/2006    HODGES JULIE ADDED AS D007                  (AV02)

   09/21/2006    HOLMES KATHERINE ADDED AS D008              (AV02)

   09/21/2006    HOUSTON JAMES ADDED AS D009                 (AV02)

   09/21/2006    LOVETT LORI ADDED AS D010                   (AV02)

   09/21/2006    MELTON JULIE ADDED AS D011                  (AV02)
----------------------------------------------------------------------------
```

```
AVSO351                                                      CV 2006 000145.00


                                            JUDGE: ASSIGNED JUDGE
----------------------------------------------------------------------
                   ALABAMA JUDICIAL DATA CENTER
                        CASE ACTION SUMMARY
                          CIRCUIT CIVIL
----------------------------------------------------------------------
   IN THE CIRCUIT  COURT OF  RANDOLPH     COUNTY

   CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
 FILED: 09/21/2006 TYPE: BAD FAITH/FRAUD/MISR TYPE TRIAL: NON-JURY   TRACK:
************************************************************************
DATE1: 04/04/2007  CA:                  CA DATE:
DATE2:             AMT:         $.00  PAYMENT:
DATE3:
************************************************************************
   09/21/2006   MITCHAM HENRY ADDED AS D012              (AV02)

   09/21/2006   PHARR JERRY ADDED AS D013                (AV02)

   09/21/2006   SANTIAGO MELISSA ADDED AS D014           (AV02)

   09/21/2006   SPARKMAN DAVID ADDED AS D015             (AV02)

   09/21/2006   WALKER-MCGLOTHAN NATASHA ADDED AS D016   (AV02)

   09/21/2006   WALLS RANDY ADDED AS D017                (AV02)

   09/21/2006   SERVICE ORDER SENT TO D001

   09/21/2006   SERVICE ORDER SENT TO D002

   09/21/2006   SERVICE ORDER SENT TO D003

   09/21/2006   SERVICE ORDER SENT TO D004

   09/21/2006   SERVICE ORDER SENT TO D005

   09/21/2006   SERVICE ORDER SENT TO D006

   09/21/2006   SERVICE ORDER SENT TO D007

   09/21/2006   SERVICE ORDER SENT TO D008

   09/21/2006   SERVICE ORDER SENT TO D009

   09/21/2006   SERVICE ORDER SENT TO D010

   09/21/2006   SERVICE ORDER SENT TO D011

   09/21/2006   SERVICE ORDER SENT TO D012

   09/21/2006   SERVICE ORDER SENT TO D013

   09/21/2006   SERVICE ORDER SENT TO D014

   09/21/2006   SERVICE ORDER SENT TO D015

   09/21/2006   SERVICE ORDER SENT TO D016

   09/21/2006   SERVICE ORDER SENT TO D017

   10/05/2006   SHERIFF ISSUED: 09/21/2006 TO D007       (AV02)

   10/05/2006   RETURN OF NOT FOUND ON 10/04/2006 FOR D007 (AV02)

   10/05/2006   SHERIFF ISSUED: 09/21/2006 TO D012       (AV02)

   10/05/2006   RETURN OF NOT FOUND ON 10/04/2006 FOR D012 (AV02)
----------------------------------------------------------------------
YW   03/29/2007                              CV 2006 000145.00
```

```
AVSO351                                               CV 2006 000145.00


                                        JUDGE: ASSIGNED JUDGE
        -----------------------------------------------------------------
                      ALABAMA JUDICIAL DATA CENTER
                          CASE ACTION SUMMARY
                            CIRCUIT CIVIL
        -----------------------------------------------------------------
    IN THE CIRCUIT  COURT OF  RANDOLPH    COUNTY

      CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
    FILED:  09/21/2006 TYPE: BAD FAITH/FRAUD/MISR TYPE TRIAL: NON-JURY   TRACK:

    ****************************************************************************
    DATE1:  04/04/2007 CA:                  CA DATE:
    DATE2:             AMT:        $.00  PAYMENT:
    DATE3:
    ****************************************************************************
      10/05/2006    SHERIFF ISSUED: 09/21/2006 TO D009       (AV02)

      10/05/2006    SERVICE OF SERVED PERSON ON 10/03/2006 FOR D009

      10/05/2006    SHERIFF ISSUED: 09/21/2006 TO D003       (AV02)

      10/05/2006    RETURNED RETURN NOT FOUN ON 10/05/2006 FOR D001

      10/06/2006    RETURNED INSUFFICIENT   ON 10/06/2006 FOR D001

      10/06/2006    RETURNED RETURN NOT FOUN ON 10/06/2006 FOR D002

      10/06/2006    RETURNED RETURN NOT FOUN ON 10/06/2006 FOR D016

      10/06/2006    RETURNED RETURN NOT FOUN ON 10/06/2006 FOR D014

      10/16/2006    SHERIFF ISSUED: 09/21/2006 TO D011       (AV02)

      10/16/2006    RETURN OF UNDELIVERABLE ON 10/09/2006 FOR D011

      10/16/2006    SHERIFF ISSUED: 09/21/2006 TO D008       (AV02)

      10/16/2006    RETURN OF PARTY MOVED ON 10/04/2006 FOR D008(AV02)

      10/16/2006    SHERIFF ISSUED: 09/21/2006 TO D010       (AV02)

      10/16/2006    RETURN OF INSUFFICIENT  ON 10/04/2006 FOR D010

      10/16/2006    COST BILL PREPARED FOR C001

      10/16/2006    COST BILL PREPARED FOR D001

      10/16/2006    SHERIFF ISSUED: 09/21/2006 TO D015       (AV02)

      10/16/2006    SERVICE OF SERVED PERSON ON 10/12/2006 FOR D015

      10/17/2006    SHERIFF ISSUED: 09/21/2006 TO D013       (AV02)

      10/17/2006    RETURN OF NOT FOUND ON 10/17/2006 FOR D013   (AV02)

      10/17/2006    SHERIFF ISSUED: 09/21/2006 TO D004       (AV02)

      10/17/2006    SERVICE OF SERVED PERSON ON 10/11/2006 FOR D004

      10/20/2006    SHERIFF ISSUED: 09/21/2006 TO D001       (AV02)

      10/20/2006    SERVICE OF SERVED PERSON ON 10/05/2006 FOR D001

      10/25/2006    RETURNED RETURN NOT FOUN ON 10/25/2006 FOR D005

      11/01/2006    CASE ASSIGNED STATUS OF: DISPOSED        (AV01)

      11/01/2006    DISPOSED ON: 10/31/2006 BY (RMVL FED COURT) (AV01)
    -----------------------------------------------------------------
```

```
AVSO351                                                    CV 2006 000145.00

                                          JUDGE: ASSIGNED JUDGE
----------------------------------------------------------------------------
                      ALABAMA JUDICIAL DATA CENTER
                        CASE ACTION SUMMARY
                          CIRCUIT CIVIL
----------------------------------------------------------------------------
   IN THE CIRCUIT  COURT OF  RANDOLPH        COUNTY

    CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
    FILED:  09/21/2006 TYPE: BAD FAITH/FRAUD/MISR TYPE TRIAL: NON-JURY   TRACK:

****************************************************************************
DATE1:  04/04/2007  CA:                   CA DATE:
DATE2:              AMT:        $ .00  PAYMENT:
DATE3:
****************************************************************************
   11/01/2006    COURT ACTION JUDGE: TOM. F. YOUNG JR.        (AVO1)

   11/01/2006    C001 DISPOSED BY (RMVL FED COURT) ON 10/31/2006

   11/01/2006    C002 DISPOSED BY (RMVL FED COURT) ON 10/31/2006

   11/01/2006    C003 DISPOSED BY (RMVL FED COURT) ON 10/31/2006

   11/01/2006    C004 DISPOSED BY (RMVL FED COURT) ON 10/31/2006

   11/01/2006    C005 DISPOSED BY (RMVL FED COURT) ON 10/31/2006

   11/01/2006    C006 DISPOSED BY (RMVL FED COURT) ON 10/31/2006

   11/01/2006    C007 DISPOSED BY (RMVL FED COURT) ON 10/31/2006

   11/01/2006    C008 DISPOSED BY (RMVL FED COURT) ON 10/31/2006

   11/01/2006    C009 DISPOSED BY (RMVL FED COURT) ON 10/31/2006

   11/01/2006    D001 DISPOSED BY (RMVL FED COURT) ON 10/31/2006

   11/01/2006    D002 DISPOSED BY (RMVL FED COURT) ON 10/31/2006

   11/01/2006    D003 DISPOSED BY (RMVL FED COURT) ON 10/31/2006

   11/01/2006    D004 DISPOSED BY (RMVL FED COURT) ON 10/31/2006

   11/01/2006    D005 DISPOSED BY (RMVL FED COURT) ON 10/31/2006

   11/01/2006    D006 DISPOSED BY (RMVL FED COURT) ON 10/31/2006

   11/01/2006    D007 DISPOSED BY (RMVL FED COURT) ON 10/31/2006

   11/01/2006    D008 DISPOSED BY (RMVL FED COURT) ON 10/31/2006

   11/01/2006    D009 DISPOSED BY (RMVL FED COURT) ON 10/31/2006

   11/01/2006    D010 DISPOSED BY (RMVL FED COURT) ON 10/31/2006

   11/01/2006    D011 DISPOSED BY (RMVL FED COURT) ON 10/31/2006

   11/01/2006    D012 DISPOSED BY (RMVL FED COURT) ON 10/31/2006

   11/01/2006    D013 DISPOSED BY (RMVL FED COURT) ON 10/31/2006

   11/01/2006    D014 DISPOSED BY (RMVL FED COURT) ON 10/31/2006

   11/01/2006    D015 DISPOSED BY (RMVL FED COURT) ON 10/31/2006

   11/01/2006    D016 DISPOSED BY (RMVL FED COURT) ON 10/31/2006

   11/01/2006    D017 DISPOSED BY (RMVL FED COURT) ON 10/31/2006
----------------------------------------------------------------------------
YW   03/29/2007                                    CV 2006 000145.00
```

```
  AVSO351                                                  CV 2006 000145.00


                                            JUDGE: ASSIGNED JUDGE
  ----------------------------------------------------------------------------
                       ALABAMA JUDICIAL DATA CENTER
                           CASE ACTION SUMMARY
                             CIRCUIT CIVIL
  ----------------------------------------------------------------------------
    IN THE CIRCUIT  COURT OF  RANDOLPH    COUNTY

    CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
  FILED:  09/21/2006 TYPE: BAD FAITH/FRAUD/MISR TYPE TRIAL: NON-JURY   TRACK:

  ****************************************************************************
  DATE1:  04/04/2007  CA:             CA DATE:
  DATE2:              AMT:        $.00  PAYMENT:
  DATE3:
  ****************************************************************************
    12/21/2006    FEDERAL COURT REMAND CASE BACK ORDER FILED

    12/29/2006    PLA FILED CERTIFICATE OF DISCOVERY

    01/12/2007    DEF ATTY FILED NOTICE OF FILING DISCOVERY RESPONSE

    01/12/2007    & OBJECTIONS TO DOCUMENT REQUEST CONTAINED IN PLA

    01/12/2007    NOT OF DEPOSITION OF DEF, RESPONSE & OBJ TO DOCU

    01/12/2007    REQU CONTAINED IN PLA'S NOT OF DEPO OF SUSAN

    01/12/2007    BRUNSTETTER

    01/19/2007    CASE ASSIGNED STATUS OF: ACTIVE            (AV01)

    01/19/2007    PLA FILED MOTION TO COMPEL

    01/22/2007    DEF FILED A NOT OF FILING DISCOVERY

    02/13/2007    DEF ATTY - MERCK & CO INCS NOT OF CANCELLATION OF

    02/13/2007    CROSS NOTICED VIDEO DEPO OF PAUL HOWES

    02/13/2007    DEF ATTY - MERCK & CO INC NOT OF CANCELLATION OF

    02/13/2007    CROSS NOTICED VIDEO DEPO OF JACQUELINE MCCLARTY

    02/22/2007    D001-OTHER - MERCK & CO., INC.'S RESPONSE TO PLAIN

    02/23/2007    MOTION - TRANSMITTAL

    02/23/2007    D001-OTHER /DOCKETED

    03/02/2007    PLA ATTY FILED CERTIFICATE OF DISCOVERY

    03/06/2007    SET FOR: DISC MOT ON 04/04/2007 AT 0900A     (AV01)

    03/06/2007.   LISTED AS ATTORNEY FOR D001: GARRETT RICHARD B

    03/12/2007    SHERIFF ISSUED: 09/21/2006 TO D006         (AV02)

    03/13/2007    SHERIFF ISSUED: 09/21/2006 TO D002         (AV02)


  -------|------------------------------------------------------------------
  -------|------------------------------------------------------------------
  -------|------------------------------------------------------------------
  -------|------------------------------------------------------------------
  -------|------------------------------------------------------------------
  !YW    03/29/2007                                  CV 2006 000145.00
```

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| CLIFFORD BAILY, CLIFFORD BLACK, WESLEY CALHOUN, CURTIS DEASON, RUTH GRAVES, MICKEY GRIZZARD, JIMMY PERRY, HERBERT STANLEY SIKES, And PHILLIP THOMPSON, | ) ) ) ) ) |
| Plaintiffs, | ) ) ) |
| vs. | ) CASE NUMBER: CV- ) |
| MERCK & CO., INC., a foreign or Domestic Corporation, DAVID SPARKMAN, KATHERINE HOLMES, LORI LOVETT, SCOTT BARTLETT, CORAL HARPER, MELISSA SANTIAGO, HENRY MITCHAM, JERRY PHARR, JASON DELK, CHARLES HENDERSON, JAMES HOUSTON, JULIE MELTON, JULIE HODGES, MELISSA BAUER, NATASHA WALKER-MCGLOTHAM, RANDY WELLS, and the Defendants A, B, C, D, E, X & Z whether singular or plural, being those persons, firms or entities who or which proximately caused or contributed to the Plaintiff's and Plaintiff's decedent's other harm and the other damages as complained of herein whose true names are unknown to the Plaintiff but will be added by amendment when correctly ascertained, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) Removed from the ) Circuit Court of ) Randolph County, Alabama ) (CV-06-145) ) ) ) ) ) ) ) |
| Defendants. | |

## NOTICE OF REMOVAL

TO:    The United States District Court for the Northern District of Alabama:

PLEASE TAKE NOTICE that Merck & Co., Inc. ("Merck") hereby removes this action

pursuant to 28 U.S.C. § 1441 from the Circuit Court of Randolph County, Alabama, to the

United States District Court for the Middle District of Alabama, and respectfully states to this

Court as follows:

1.    This action involves allegations regarding the prescription drug VIOXX®.  On February 16, 2005, the Judicial Panel on Multidistrict Litigation issued an order transferring 148 VIOXX® products liability cases to the United States District Court for the Eastern District of Louisiana (Fallon, J.) for coordinated pretrial proceedings under 28 U.S.C. § 1407.  Merck intends to seek the transfer of this action to that Multidistrict litigation, *In re VIOXX Products Liability Litigation,* MDL No. 1657, and files contemporaneously herewith a motion to stay pending MDL transfer.

2.    On September 21, 2006, Plaintiffs, Clifford Bailey, Clifford Black, Wesley Calhoun, Curtis Deason, Ruth Graves, Mickey Grizzard, Jimmy Perry, Herbert Stanley Sikes, and Phillip Thompson   ("Plaintiffs") commenced a civil action against Merck, current and former Merck employees Natasha Walker-McGlothan, David Sparkman, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Melissa Bauer, and Randy Walls (collectively, the "sales representatives"), and fictitious defendants by filing a complaint (the "Complaint") in the Circuit Court of Randolph County, Alabama, bearing Civil Action No. 06-145.

3.    On or about October 5, 2006, Merck was served with a copy of Plaintiffs' Complaint.  On or about October 3, 2006, Defendant James Houston was served with a copy of the Plaintiffs' Complaint. On or about October 11, 2006, Defendant Jason Delk was served with a copy of the Plaintiffs' Complaint. On or about October 12, 2006, Defendant David Sparkman was served with a copy of the Plaintiffs' Complaint.   Upon information and belief, Defendants Natasha Walker-McGlothan, Katherine Holmes, Lori Lovett, Coral Harper, Melissa Santiago,

2

Henry Mitcham, Jerry Pharr, Scott Bartlett, Charles Henderson, Julie Melton, Julie Hodges, Randy Walls, and Melissa Bauer, have not yet been served. A true and correct copy of the Summons and Complaint served on Merck and the contents of the state court file are collectively attached hereto as **Exhibit A**.

4.    For the reasons described below, this Court has jurisdiction over the state court action pursuant to 28 U.S.C. § 1332 because it is a civil action in which the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest, and it is between citizens of different states.

## I.    MERCK HAS SATISFIED THE PROCEDURAL REQUIREMENTS FOR REMOVAL.

5.    This Notice of Removal is timely filed pursuant to 28 U.S.C. § 1441(b), because it is filed within thirty days of service on all properly served defendants.

6.    The United States District Court for the Middle District of Alabama embraces the county in which the state court action is now pending. Therefore, this Court is a proper venue for this action pursuant to 28 U.S.C. §§ 81 & 1441(a).

7.    Merck need not obtain the consent of the Employee Defendants because, as set out more fully below, the Employee Defendants are fraudulently joined in this action in an attempt to defeat removal. *See Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 815 (5th Cir. 1993); *Polyplastics, Inc. v. Transconex, Inc.*, 713 F.2d 875, 877 (1st Cir. 1983); *Alexander v. UDV N. Am., Inc.*, 78 F. Supp. 2d 614, 617 n. 4 (E.D. Mich. 1999) (citing *Balazik v. County of Dauphin*, 44 F.3d 209, 213 n.4 (3d Cir. 1995)).

8.    Pursuant to 28 U.S.C. § 1446(a), a copy of all process, pleadings, and orders served upon the Defendants is attached as **Exhibit A**. Pursuant to 28 U.S.C. § 1446(d), a copy of

3

the Notice of Removal is being served upon counsel for Plaintiffs and a copy is being filed with

the Clerk of the State Court in which the action is currently pending.  A copy of Merck's filing in

state court is attached hereto as **Exhibit B**.

### III.    REMOVAL IS PROPER BECAUSE THIS COURT HAS SUBJECT MATTER JURISDICTION PURSUANT TO 28 U.S.C. §§ 1332 AND 1441.

####    A.        The Amount in Controversy Requirement Is Satisfied.

9.      It is apparent from the face of the Complaint that the Plaintiffs seek recovery of

an amount in excess of $75,000, exclusive of costs and interest.  Since the Complaint seeks an

unspecified amount of damages, Merck must only show that "the amount in controversy more

likely than not exceeds the jurisdictional requirement." *See Owens v. Life Ins. Co. of Georgia*,

289 F. Supp. 2d 1319, 1327 (M.D. Ala. 2003) (*quoting Tapscott v. MS Dealer Serv. Corp.*, 77

F.3d 1353, 1357 (11th Cir. 1996)).

10.      In this case, Plaintiffs allege that they suffered cardiovascular events as a result of

their ingestion of Vioxx. [Compl., ¶ 6].  Based on this and other allegations, the Complaint seeks

unspecified compensatory and punitive damages for the injuries allegedly caused by Vioxx. [*See,

e.g., id.*, p. 46].

11.      Alabama juries in product liability cases routinely render verdicts in excess of

$75,000 exclusive of interest and costs.  *See* **Exhibit C**.  Further, Alabama appellate courts have

upheld verdicts in excess of $75,000 in such cases.  *Id.*

12.      In circumstances similar to this case, federal courts around the country have ruled

that actions alleging personal injuries caused by Vioxx meet the amount-in-controversy

threshold.  *See, e.g., Morgan v. Merck & Co.*, No. 3:03cv435WS, slip op. at 2 (S.D. Miss. Mar.

29, 2004); *Benavidez v. Merck & Co.*, No. L-03-134, slip op. at 1 (S.D. Tex. Apr. 6, 2004); *Stubblefield v. Merck & Co.*, Civ. No. H-02-3139, slip op. at 1 (S.D. Tex. Oct. 8, 2002); *Zeedyk v. Merck & Co.*, No. 02-C-4203, slip op. at 1 (N.D. Ill. August 30, 2002); *Abrusley v. Merck & Co.*, No. 02-0196, slip op. at 2 n.2 (W.D. La. June 18, 2002); *Jones v. Merck & Co.*, Civ. No. 02-00186, slip op. at 2 (D. Haw. June 5, 2002).  These courts all were presented with complaints seeking damages for injuries caused by Vioxx, and all found that the requirements for federal diversity jurisdiction, including the amount in controversy, were satisfied.    This is especially true in this case where there are seven individual plaintiffs, who, aside from claiming compensatory damages for their own personal injuries, also jointly seek punitive damages and equitable and declaratory relief.

**B.        There is Complete Diversity of Citizenship.**

13.    There is complete diversity as between Plaintiffs and Merck, the only properly joined defendant.

14.    Plaintiffs are citizens of the State of Alabama.  [Compl., ¶ 1].[1]

15.    Merck is, and was at the time this suit was commenced, a corporation organized under the laws of the State of New Jersey with its principal place of business in New Jersey and, therefore, is a citizen of New Jersey for purposes of determining diversity.    28 U.S.C. § 1332(c)(1).

---

[1]    Plaintiffs allege that they are residents of Alabama.  [Compl., ¶ 1].  Plaintiffs do not allege any alternative states of residence.  Accordingly, upon information and belief, Alabama is the state in which Plaintiffs are domiciled and, therefore, the state of which they are citizens for purposes of determining diversity.  28 U.S.C. § 1332(a).

16.    The Complaint includes a number of fictitious defendants, whose citizenship is ignored for removal purposes. 28 U.S.C. § 1441(a).

17.    Plaintiffs name sixteen Employee Defendants as Defendants. [Compl., ¶¶ 2, 8 and 9]. However, these Defendants are fraudulently joined and, therefore, their citizenship must be ignored for removal purposes. *See, e.g., Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996), *abrogated on other grounds, Cohen v. Office Depot*, 204 F.3d 1069 (11th Cir. 2000).

18.    Unfortunately, the fraudulent joinder of pharmaceutical employees has become a common tactic in pharmaceutical litigation to attempt to defeat diversity and thwart defendants' right to defend claims against them in Federal Courts. This is especially true in Alabama (and, in particular, lawsuits concerning Vioxx) where identically drafted complaints are brought against the same pharmaceutical employees. *See Legg v. Wyeth*, 428 F.3d 1317, 1325 (11th Cir. 2005)(noting the common strategy of plaintiffs in pharmaceutical cases to name local sales representatives to thwart removal). Indeed, two separate MDL courts have found, applying Alabama law in the context of claims based on prescription medications, that plaintiffs cannot pursue claims against sales representatives and that their joinder does not defeat diversity. *See, e.g., In re Rezulin Products Liability Litigation*, 133 F. Supp. 2d 272, 287 (S.D. N.Y. 2001) ("*Rezulin I*"); *In re Baycol Products Litigation*, MDL 1431, Order dated March 26, 2004, attached hereto as **Exhibit D**. *See also Fowler v. Pharmacia & Upjohn et al.*, CV-04-PT-712-M, Order dated June 24, 2004, attached hereto as **Exhibit E** (denying motion to remand, citing *In re Rezulin* and *In re Baycol* opinions discussed herein). Even the 11th Circuit has recently recognized the general inability of plaintiffs in pharmaceutical cases to state claims against sales representatives. *See Legg v. Wyeth*, 428 F.3d 1317, 1325 (11th Cir. 2005).

6

19.     A defendant is fraudulently joined when there is no "reasonable basis for predicting" that a state court might impose liability on the resident defendant. *Crowe v. Coleman*, 113 F.3d 1536, 1542 (11th Cir. 1997); *accord Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (recognizing that a "reasonable" basis to predict that plaintiff could prevail on the claims against an in-state defendant requires more than a "theoretical" possibility). Such a "reasonable basis" must be based on facts in evidence and cannot be "merely theoretical." *Legg v. Wyeth*, 428 F.3d 1317, 1325 at n.5 (11th Cir. 2005). *See also Bloodsworth v. Smith & Nephew*, 2005 WL 3470337, at *4 (M.D. Ala. Dec. 19, 2005)(discussing *Legg*). When the defendant presents affidavits that are not disputed by the plaintiff, "the court cannot then resolve the facts in the Plaintiffs' favor based solely on the unsupported allegations in the Plaintiffs' complaint." *Legg*, 428 F.3d at 1321. The Court must not, "*in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts.*" *Id.* at 1323 (quoting *Badon v. RJR Nabisco, Inc.*, 224 F.3d 382, 393-94 (5th Cir. 2000)) (emphasis in original).

20.     Where, as here, summary judgment evidence (*see* Declarations, attached hereto as **Exhibit F**) demonstrates that the Employee Defendants made no representations to the Plaintiffs concerning Vioxx and did not manufacture, design, sale, prescribe, test or warrant Vioxx, there is no reasonable basis on which Plaintiffs could prevail against those individuals.[2] *See Stern v.*

---

[2]     The served Employee Representatives verified under oath in their declarations, among other things: "At no time did I ever provide "Vioxx" or information concerning Vioxx directly to Clifford Bailey, Clifford Black, Wesley Calhoun, Curtis Deason, Ruth Graves, Mickey Grizzard, Jimmy Perry, Herbert Stanley Sikes, or Phillip Thompson ....I am not a physician, and have therefore never prescribed Vioxx. I am also not a pharmacist and I have therefore never written or filled a prescription for Vioxx as a pharmacist. The information that I used during the course of my employment was provided to me by my employer. Specifically, Merck provided me with the FDA approved prescribing information and the other information I used in speaking with physicians about Vioxx. I have no involvement in the development or preparation of prescribing information for Vioxx, and did not have responsibility for the content or other written warnings concerning Vioxx contained in other information provided to me by my employer. I was not expected, as a Professional Representative, to conduct

7

*Wyeth*, Case No. 02-80620-CIV-MARRA (S.D. Fla. Jan. 22, 2003) (denying plaintiff's motion to remand where affidavit of employee defendant demonstrated that there was no factual basis for liability); *In re Rezulin Products Liab. Litig.*, 133 F. Supp. 2d 272, 282 (S.D.N.Y. 2001) (denying motion to remand where affidavit of pharmaceutical representative established that the named employee did not have contact with plaintiff or physicians).

21.     In the face of the evidence put forth in the attached declarations, the allegations in Plaintiffs' Complaint cannot defeat removal. *See Sierminski v. Transouth Financial Corp.*, 216 F. 3d 945, 948 (11th Cir. 2000) (holding that federal court's considering propriety of removal on diversity grounds are not limited to reviewing the allegations of the complaint and affirming denial of motion to remand); *TKI Inc. v. Nichols Research Corp.*, 191 F. Supp. 2d 1307 (M.D. Ala. 2002)(relying on deposition testimony to find in-state defendants fraudulently joined); *Goins v. Merck & Co.*, Case No. 4:03 CV-70-1 (M.D. Ga. Sept. 9, 2003) (relying on affidavits to find in-state pharmaceutical representatives fraudulently joined); *Bloodsworth v. Smith & Nephew*, 2005 WL 3470337, at *5 (M.D. Ala. Dec. 19, 2005).

22.     Aside from the Plaintiffs' inability to present countervailing evidence, there is no reasonable basis for predicting that a state court might impose liability on the Employee Defendants because the Complaint on its face fails to state a claim against the Employee Defendants upon which relief can be granted.     First and foremost, most all of the Complaint

independent research regarding drugs I detailed.  I was not expected to review independent scientific studies published in journals unless Merck supplied them to me....At no time did I have involvement at all with the manufacture, development, or testing of Vioxx....At no time did I ever sell, offer to sell or take orders for the sale of Vioxx to patients....I made no knowing misrepresentations concerning the safety or efficacy of Vioxx and acted in good faith at all times in my dealings with physicians who may have prescribed Vioxx....I have never participated in, nor was I ever instructed or trained, nor did I ever receive any materials relating to any "Dodgeball program."....I have never met nor spoken with Clifford Bailey, Clifford Black, Wesley Calhoun, Curtis Deason, Ruth Graves, Mickey Grizzard, Jimmy Perry, Herbert Stanley Sikes, or Phillip Thompson ....I have never made any presentations to the general public regarding Vioxx ."

allegations are broad, collective, and conclusory claims against "the Defendants" and lump each of the individual Employee Defendants together and with Merck. For example, in Count I, Plaintiffs allege that the "Vioxx manufactured and/or supplied by *defendants* was also defective." [Compl., ¶ 64]. In Count II, Plaintiffs allege that "*defendants* [had a duty] to use reasonable care in the manufacturing, creating, designing, testing, labeling, sterilizing, packaging, supplying, marketing, selling, advertising, warning and otherwise distributing Vioxx." [Compl., ¶ 71]. None of these allegations, or any other allegations in the Complaint, specify any alleged specific, individual misconduct or tortious acts committed by the Employee Defendants. Indeed, Plaintiffs seem uncertain as to whether the Employee Defendants are even responsible for the alleged wrongful conduct as shown by the Plaintiffs' generalized statement in their fraud and misrepresentation claims that "the Defendants" made false representations, without making any attempt to distinguish or specify what one Employee Defendant did or represented compared to another. The fact that no attempt is made to distinguish or separate the alleged conduct between the Employee Defendants in this case or between the seven individual plaintiffs underscores the point that the Employee Defendants are named solely for the purpose of defeating diversity jurisdiction.

23.    Such vague, uncertain and boiler-plate assertions are not sufficient to state a factual basis for any claim against any of the Employee Defendants. *See, e.g., Tillman v. RJ Reynolds Tobacco,* 253 F.3d 1302, 1305 (11th Cir. 2001) (non-diverse employee defendants fraudulently joined "where plaintiff failed to tie these defendants to the underlying allegations of the complaint"); *Banger ex rel. Freeman v. Magnolia Nursing Home, L.P.,* 234 F. Supp. 2d 633, 637-38 (S.D. Miss. 2002) (collective, conclusory and generic allegations of wrongdoing on the part of all defendants are insufficient to show that individual defendant was not fraudulently

joined) (citing *Badon v. RJR Nabisco, Inc.*, 224 F.3d 382, 392-93 (5th Cir. 2000)); *In re Rezulin Prods. Liab. Litig.*, 168 F. Supp. 2d 136, 140 (S.D.N.Y. 2001) ("*Rezulin II*") (pharmaceutical representatives fraudulently joined due to general collective allegations regarding "defendants"); *Lyons v. American Tobacco Co.*, No. Civ. A. 96-0881-BH-S, 1997 WL 809677, at *5 (S.D. Ala. Sept. 30, 1997) (holding that there is "no better admission of fraudulent joinder of [the resident defendants]" than the failure of the plaintiff "to set forth any specific factual allegations" against them).

24.    Furthermore, there is no reasonable basis to predict that Plaintiffs will prevail on any of their claims against the Employee Defendants because Plaintiffs cannot allege that the individual Employee Defendants actually personally participated in any wrongdoing as applicable to the Plaintiffs. *See, e.g., Stern v. Wyeth*, No. 02-80620-CIV-MARRA, at 6 (S.D. Fla. Jan. 22, 2003) (denying plaintiff's motion to remand where plaintiff failed to allege "personal involvement" by an employee defendant in the alleged tortious conduct of the corporate defendant employer); *Kimmons*, 844 F. Supp. at 740 (defendant fraudulently joined were no allegations of personal participation were made); *Bloodsworth v. Smith & Nephew*, 2005 WL 3470337, at *11 (M.D. Ala. Dec. 19, 2005)(discussing *In re Rezulin* and the necessity of showing personal participation by the sales representative in the alleged fraud); *Anderson v. Merck & Co., Inc.*, 417 F.Supp.2d 842 (E.D. Ky. 2006)(denying remand because plaintiffs failed to allege a causal connection between the plaintiffs' injuries and the sales representative).

25.    Plaintiffs' fraud and fraudulent misrepresentation count (Counts IX) is deficient because Plaintiffs have not specifically alleged that the Employee Defendants, independently from Merck, made a misrepresentation directly to the Plaintiffs or their prescribing physicians. A claim for misrepresentation and fraud requires, at a minimum, the identification of a particular

10

misstatement by each Defendant and to whom each misstatement was made. *See, e.g., Bloodsworth v. Smith & Nephew*, 2005 WL 3470337, at *10 to *11 (M.D. Ala. Dec. 19, 2005); *Atlantic Nat. Bank of Florida v. Vest*, 480 So. 2d 1328, 1331 (Fla. 2d DCA 1985) (holding that in order to allege a viable cause of action for negligent misrepresentation, plaintiff must allege, among other things, that there was a misrepresentation of a material fact).

26.     Plaintiffs' fraud and fraudulent misrepresentation claims (Count IX) are also deficient because Plaintiffs have failed to plead the claims with the particularity required by the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 9(b); *see also Wakeland v. Brown & Williamson Tobacco Corp.*, 996 F. Supp. 1213, 1221 (S.D. Ala. 1998) (failure to allege particular facts supporting claims against defendants violated Rule 9(b) and resulted in finding of fraudulent joinder); *Bloodsworth v. Smith & Nephew*, 2005 WL 3470337, at *10 to *11 (M.D. Ala. Dec. 19, 2005); *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001); *Durham v. Bus. Mgmt. Assoc.*, 847 F.2d 1505, 1512 (11th Cir. 1988); *Rezulin I*, 133 F. Supp. 2d at 183-84 (finding in-state defendants fraudulently joined due to plaintiff's failure to plead fraud claims with particularity).   An order denying remand in another Vioxx case explains why Plaintiffs' claims in this case fail. *See Hernandez v. Merck & Co., Inc., et. al*, Case No. 6:05-CV-00221-ORL-31-KRS (Order dated May 3, 2005, denying plaintiffs' motion to remand and dismissing two Merck sales representatives as defendants) (attached as **Exhibit G**).   Judge Presnell of the Middle District of Florida held that the claims against the sales representatives in the *Hernandez* case were totally lacking in merit. According to the Court:

> Plaintiff has failed to allege what specific misrepresentations either Ortega or Kilkelly made to Dr. Lou or to the Plaintiff; the allegation that certain statements referred to in a warning letter to Merck were made to 'the plaintiff and/or plaintiff's prescribing physician' is clearly deficient. Nor does the Plaintiff allege who made particular misrepresentations, when and where those

misrepresentations were made, or how each misrepresentation was false or misleading.

*Id.* at 10 n.12; *see also Merced-Torres v. Merck & Co., Inc.*, Case No. 6:05-CV-449-ORL-19DAB (Judge Fawsett's order denying plaintiffs' motion to remand) (*See* **Exhibit H**). Because Plaintiffs' claims against the Employee Defendants suffer from the same deficiencies as those in *Hernandez* and *Merced-Torres*, these claims must be rejected as meritless by this Court.

27.    Plaintiffs' allegations in Count IX of their Complaint, although at some points naming the Employee Defendants by name, do not meet the specificity requirements of the Federal Rules of Civil Procedure, nor do they even approach the level where they would prevent this from being an obvious case of fraudulent joinder. The allegations in Count IX make reference to literature drafted by and provided by Merck, but do not state any specifics as to whom the Employee Defendants allegedly made misrepresentations, what specifically was stated or passed on, when and where such misrepresentations were allegedly made or any other details. Plaintiffs reference specimen literature and letters in their Complaint, but do not allege that any such literature or letters were provided by the Employee Defendants to the Plaintiffs or any of their physicians.

28.    Further, regardless of the lack of specificity of the claims against these Employee Defendants, Plaintiffs cannot sustain their other alleged claims against the Employee Defendants as a matter of law. Count I (Alabama Extended Manufacturers Liability Doctrine) does not state a viable claim for relief against them because the Employee Defendants are not "sellers" as required under the AEMLD. *Ala. Code* § 6-5-501 (1975) (defining "original seller" as "[a]ny person, firm, corporation . . . or other legal or business entity, which in the course of business or as an incident to business, sells or otherwise distributes a manufactured product (a) prior to or (b) at the time the manufactured product is first put to use by any person or business entity who did

12

not acquire the manufactured product for either resale or other distribution in its unused condition or for incorporation as a component part in a manufactured product which is to be sold or otherwise distributed in its unused condition"); *see also Turner v. Azalea Box Co.*, 508 So. 2d 253, 254 (Ala. 1987) ("the plaintiff must prove that the defendant manufactured and/or sold the allegedly defective product") (citing *Atkins v. Am. Motors Corp.*, 335 So. 2d 134 (Ala. 1976)); *Bloodsworth v. Smith & Nephew*, 2005 WL 3470337, at *17 to *22 (M.D. Ala. Dec. 19, 2005); The Employee Defendants did not participate in the design, manufacture or testing of the product at issue. (*See* Declarations, **Exhibit F**). Pursuant to Alabama law, these employees are not "sellers" of the product at issue. *See Bowman v. Coleman Co.*, No. 96-0448-P-C (S.D. Ala. Sept. 3, 1996). In addition, the AEMLD has not been extended to hold individual employees of sellers or manufacturers personally liable for defective products. *In re Baycol Products Litigation*, MDL 1431, Order dated March 26, 2004); *Galactic Employer Servs. v. McDorman*, 800 So. 2d 434 (Ala. 2003) (noting that a corporate officer or employee must have direct, personal participation in the challenged corporate activity to be held personally liable); *Ex parte Charles Bell Pontiac-Buick-Cadillac-GMC, Inc.,* 496 So. 2d 774 (Ala. 1986) (same). Further, any claim asserting a duty to warn is barred by the learned intermediary doctrine. *See Stone v. Smith, Kline & French Laboratories*, 447 So. 2d 1301 (Ala. 1984); *Morguson v. 3M Company*, 857 So. 2d 796, 801-02, n. 1 (Ala. 2003).

Counts II and III (negligence and wantonness and negligence per se) must also be brought against "sellers" under Alabama law. In products liability actions premised on a negligence or wantonness theory, "[t]he defendant must be either the manufacturer or seller of the injury-producing article." *Norton Co. v. Harrelson,* 176 So. 2d 18, 20 (Ala. 1965). There is no liability under these two causes of action where a defendant is merely the employee of a

13

manufacturer or seller. *See, e.g., Galactic Employer Servs. v. McDorman*, 800 So. 2d 434 (Ala. 2003) (noting that a corporate officer or employee must have direct, personal participation in the challenged corporate activity to be held personally liable); *Ex parte Charles Bell Pontiac-Buick-Cadillac-GMC, Inc.*, 496 So. 2d 774 (Ala. 1986) (same); *Bloodsworth v. Smith & Nephew*, 2005 WL 3470337, at *17 to *22 (M.D. Ala. Dec. 19, 2005).    Further, any claim asserting a duty to warn is barred by the learned intermediary doctrine. *See Stone v. Smith, Kline & French Laboratories*, 447 So. 2d 1301 (Ala. 1984); *Morguson v. 3M Company*, 857 So. 2d 796, 801-02, n. 1 (Ala. 2003).

Count IV (unjust enrichment) fails for the same reasons as Counts I, II and III, namely that the Employee Defendants did not sell, design or market VIOXX to the Plaintiff or his prescribing physician and therefore the Plaintiff cannot show that the Employee Defendants hold money which in equity and good conscious belongs to the Plaintiff. *See Hancock-Hazlett General Constr. Co. v. Trane*, 499 So. 2d 1385, 1387 (Ala. 1986).

Further, regardless of the lack of specificity of the claims against these Employee Defendants, Counts V and VI (breach of express and implied warranty) fail against the Employee Defendants because Alabama's adoption of the U.C.C. requires that the accused party be a "seller" to be liable for breach of warranty. *See Ala. Code* §7-2-103(1)(d) (defining "seller" as "a person who sells or contracts to sell goods"); *see also Ala. Code* §§7-2-313, 7-2-314 & 7-2-315 (both express and implied warranty claims refer to the creation of warranties by the "seller"); *Wellcraft Marine v. Zarzour*, 577 So. 2d 414 (Ala. 1990) (noting that Alabama statutes defining the warranties of merchantability and fitness for a particular purpose both apply to the "seller"); *Bloodsworth v. Smith & Nephew*, 2005 WL 3470337, at *7 (M.D. Ala. Dec. 19,

14

2005)(concluding that there can be no breach of warranty claims against a sales representative because sales representatives are not "sellers" of goods).

Count VII (Corporate Responsibility) does not apply to the Sales Representatives, and Count VIII (Civil Conspiracy) fails to state claim because there are no viable underlying claims against the Employee Defendants that could support a claim for civil conspiracy. *See, e.g., Avis Rent a Car v. Heilman*, 876 So. 2d 1111, 1124 (Ala. 2003).

In short, because there is no reasonable basis for predicting that Plaintiffs can prevail on any of their claims against the Employee Defendants, their citizenship should be ignored for the purpose of determining the propriety of removal, and this Court therefore has diversity jurisdiction over this matter.

WHEREFORE, Defendant Merck respectfully removes this action from the Circuit Court of Randolph County, Alabama, bearing civil action number CV-06-145, to this Court, pursuant to 28 U.S.C. § 1441.


Richard B. Garrett
One of the Attorneys for Defendant,
Merck & Co., Inc.


OF COUNSEL:
Robert C. "Mike" Brock
F. Chadwick Morriss
Ben C. Wilson
Richard B. Garrett
RUSHTON, STAKELY, JOHNSTON, & GARRETT, P.A.
Post Office Box 270
Montgomery, Alabama 36101-0270
Telephone: (334) 206-3100
Facsimile: (334) 262-6277

## CERTIFICATE OF SERVICE

I hereby certify that I have served the above and foregoing document upon all interested parties by placing a copy of same in the United States Mail, postage prepaid and properly addressed on this the 30th day of October 2006, as follows:

James S. Hubbard
Thomas J. Knight
HUBBARD & KNIGHT
1125 Noble Street
Anniston, Alabama  36201


OF COUNSEL

16

# IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, et al.,                )
                                         )
    Plaintiffs,                     )
                                         )
vs.                                      )  CIVIL ACTION NO.: CV-06-~~979~~ *145*
                                         )
MERCK & CO., INC., et al.,               )  **Filed In Office**
                                         )
    Defendants.                     )
                                         )  MAR 0 2 2007

CHRIS MAY
Clerk of Circuit Court

## CERTIFICATE OF DISCOVERY

Please take notice that the following discovery was served on the __1st__ day of March, 2007:

1.  Mickey Grizzard Plaintiff Profile Form and Authorization Forms
2.  Phillip Thompson Plaintiff Profile Form and Authorization Forms
3.  Clifford Bailey Plaintiff Profile Form and Authorization Forms
4.  Clifford Black Plaintiff Profile Form and Authorization Forms
5.  Wesley Calhoun Plaintiff Profile Form and Authorization Forms
6.  Ruth Graves Plaintiff Profile Form and Authorization Forms
7.  Jimmy Perry Plaintiff Profile Form and Authorization Forms
8.  Herbert Sikes Mickey Grizzard Plaintiff Profile Form and Authorization Forms

Thomas J. Knight
Of Counsel for Plaintiffs

**OF COUNSEL:**
Thomas J. Knight, Esq.
1125 Noble Street
Post Office Drawer 1850
Anniston, Alabama 36202

Steve Morris
108 South Main
Wedowee, Alabama 36278

## CERTIFICATE OF SERVICE

I do hereby certify that I have this the _1st__ day of March, 2007, served a copy of the above and foregoing on all counsel of record as listed below by Federal Express, postage prepaid, and properly addressed.

Ben C. Wilson
RUSHTON, STAKLEY, JOHNSTON & GARRETT, PA
Post Office Box 270
Montgomery, Alabama 36101-0270

Thomas J. Knight

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILY, CLIFFORD BLACK   )
WESLEY CALHOUN, CURTIS DEASON, )
RUTH GRAVES, MICKEY GRIZZARD, )
JIMMY PERRY, HERBERY STANLEY )
SIKES, and PHILLIP THOMPSON, )
                              )
     Plaintiff              )
                              )     CASE NO.  CV-06-145
VS.                        )
                              )
MERCK & CO., INC., a foreign or   )
Domestic Corporation, DAVID     )
SPARKMAN, KATHERINE HOLMES, )
LORI LOVETT, SCOTT BARTLETT, )
CORAL HARPER, MELISSA SANTIAGO,)
HENRY MITCHAM, JERRY PHARR, )
JASON DELK, CHARLES HENDERSON, )
JAMES HOUSTON, JULIE MELTON, )
JULIE HODGES, MELISSA BAUER, )
NATASHA WALKER-MCGLOUTHAM, )
RANDY WELLS, and the Defendant A, B, )
C, D, E, X & Z whether singular or plural, )
Being those persons, firms or entities who )
or which proximately caused or contributed )
to the Plaintiff's and Plaintiff's )
decedent's other harm and the other )
damages as complained of herein whose )
true names are unknown to the Plaintiff )
but will be added by amendment when )
correctly ascertained.           )
                              )
     Defendant           )
                              )

**Filed in Office**

MAR 0 5 2007

CHRIS MAY
Clerk of Circuit Court

## <u>ORDER</u>

IT IS HEREBY ORDERED BY THE COURT THAT all pending discovery motions be set for hearing on April 4, 2007 at 9:00 am, at the Randolph County Courthouse, Wedowee, Alabama.

Let a copy of this Order be mailed to the attorneys of record and to any unrepresented party.

DONE AND SIGNED this the 5th day of March, 2007.

STEVE R. PERRYMAN
CIRCUIT JUDGE

Thomas J. Knight
Richard B. Garrett
Scott Bartlett
Melissa Bauer
Jason Delk
Coral Harper
Charles Henderson
Julie Hodges
Katherine Holmes
James Houston
Lori Lovett
Julie Melton
Henry Mitcham
Jerry Pharr
Melissa Santiago
David Sparkman
Natasha Walker-McGlothan
Randy Walls

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA **Filed In Office**

| | |
|---|---|
| CLIFFORD BAILEY, et al. | ) |
| | ) **JAN 1 8 2007** |
| Plaintiff, | ) |
| | ) **CHRIS MAY** |
| vs. | ) **Clerk of Circuit Court** |
| | ) CASE NUMBER: CV-06-145 |
| MERCK & CO., INC., et al. | ) |
| | ) |
| Defendants. | ) |

## MOTION TO COMPEL

Now come the Plaintiffs and move that the Court enter an order compelling discovery from the Defendants and show the Court as follows:

1.      The Plaintiffs several times sought informal discovery from the Defendants by telephone and letter communications to attempt to gain information relevant to the subjects in the civil action.  After those efforts were unsuccessful, the Plaintiffs served the attached Notice of the Deposition of Defendants under Rule 30(b)(6) of the Alabama Rules of Civil Procedure.

2.      The Plaintiffs have attempted to work out dates for the deposition by agreement without success. The Defendants neither appeared nor designated any persons to testify as required by said Rule, nor did Defendants produce the requested documents and other information as required by Rule 30(b)(5).

3.      The attorneys for the Plaintiffs have attempted to resolve this discovery dispute by contacting the attorneys for the Defendants but have not been successful in resolving the discovery dispute. In fact, lengthy objections were served by Defendants as to the requested documents rather than any production of documents or designation of persons to testify on behalf of Defendants as required by the rules.

Wherefore, the Plaintiffs move that the Court enter such orders compelling discovery as are necessary to allow Plaintiffs to obtain the information, take the depositions, receive the documents, and have the Defendants comply with their obligations to designate persons and put such persons up for deposition.

_Thomas J. Knight_
Thomas J. Knight
Attorney for Plaintiffs

Hubbard & Knight
1125 Noble Street
Post Office Box 1850
Anniston, Alabama 36202
(256) 237-9586

_Steve R. Morris_
Steve R. Morris
Attorney for Plaintiffs

Steve R. Morris
Post Office Box 814
Wedowee, Alabama 36278
(256) 357-9211

## CERTIFICATE OF SERVICE

I do hereby certify that I have this the __18__ day of January, 2007, served a copy of the above and foregoing on all counsel of record as listed below by United States Mail, postage prepaid, and properly addressed.

Mr. Richard B. Garrett
Mr. Robert C. Brock
RUSHTON, STAKELY, JOHNSTON & GARRETT, P.A.
184 Commerce Street
Post Office Box 270
Montgomery, Alabama 36104

_Thomas J. Knight_
Thomas J. Knight
Attorney for Plaintiffs

## REQUEST FOR HEARING

Plaintiffs request that this Motion be heard on the Court's Motion Docket on January 25, 2007 at 9:00 a.m.

_Steve R. Morris_

IN THE CIRCUIT COURT OF
RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILY, CLIFFORD BLACK,       )
WESLEY CALHOUN, CURTIS DEASON,        )
RUTH GRAVES, MICKEY GRIZZARD,         )
JIMMY PERRY, HERBERT STANLEY SIKES,)
And PHILLIP THOMPSON,                 )
                                      )
    Plaintiffs,                       )
                                      )
                                      )
vs.                                   )  CASE NUMBER: CV-06-145
                                      )
                                      )
MERCK & CO., INC., a foreign or       )
Domestic Corporation, DAVID SPARKMAN, )
KATHERINE HOLMES, LORI LOVETT,        )
SCOTT BARTLETT, CORAL HARPER,         )
MELISSA SANTIAGO, HENRY MITCHAM,      )
JERRY PHARR, JASON DELK, CHARLES      )
HENDERSON, JAMES HOUSTON, JULIE       )
MELTON, JULIE HODGES, MELISSA         )
BAUER, NATASHA WALKER-MCGLOTHAM)
RANDY WELLS, and the Defendants A,    )
B, C, D, E, X & Z whether singular or )
plural, being those persons, firms or )
entities who or which proximately     )
caused or contributed to the Plaintiff's )
and Plaintiff's decedent's other harm )
and the other damages as complained   )
of herein whose true names are        )
unknown to the Plaintiff but will be  )
added by amendment when correctly     )
ascertained,                          )
                                      )
    Defendants.                       )

**Filed in Office**

OCT 3 1 2006

KIM S. BENEFIELD
Clerk of Circuit Court

## NOTICE OF FILING NOTICE OF REMOVAL

    PLEASE TAKE NOTICE that Merck & Co., Inc. has this date filed its Notice of

Removal in the Office of the Clerk of the United States District Court for the Middle District of

Alabama a copy of which is attached hereto as **Exhibit A**.

Richard B. Garrett
One of the Attorneys for Defendant,
Merck & Co., Inc.

OF COUNSEL:
Robert C. "Mike" Brock
F. Chadwick Morriss
Ben C. Wilson
Richard B. Garrett
RUSHTON, STAKELY, JOHNSTON, & GARRETT, P.A.
Post Office Box 270
Montgomery, Alabama 36101-0270
Telephone:  (334) 206-3100
Facsimile: (334) 262-6277

## CERTIFICATE OF SERVICE

I hereby certify that I have served the above and foregoing document upon all interested parties by placing a copy of same in the United States Mail, postage prepaid and properly addressed on this the **30th** day of October 2006, as follows:

James S. Hubbard
Thomas J. Knight
HUBBARD & KNIGHT
1125 Noble Street
Anniston, Alabama  36201

OF COUNSEL

| **STATE OF ALABAMA**<br>Unified Judicial System | **Revised 2/14/05** | Case |
| --- | --- | --- |
| 56-RANDOLPH | ☐ District Court  ☑ Circuit Court | CV200 |

ELECTRONICALLY FILED<br>2/22/2007 4:15 PM<br>CV-2006-000145.00<br>CIRCUIT COURT OF<br>RANDOLPH COUNTY, ALABAMA<br>CHRIS MAY, CLERK

| CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL | **CIVIL MOTION COVER SHEET**<br>*Name of Filing Party:* D001 - MERCK & CO INC |
| --- | --- |

| *Name, Address, and Telephone No. of Attorney or Party. If Not Represented.*<br>BENJAMIN WILSON<br>184 COMMERCE STREET<br>MONTGOMERY, AL 36104<br>*Attorney Bar No.:* WIL248 | ☐ Oral Arguments Requested |
| --- | --- |

## TYPE OF MOTION

| **Motions Requiring Fee** | **Motions Not Requiring Fee** |
| --- | --- |
| ☐ Default Judgment ($50.00) | ☐ Add Party |
| ☐ Joinder in Other Party's Dispositive Motion (i.e. Summary Judgment, Judgment on the Pleadings, or other Dispositive Motion not pursuant to Rule 12(b)) ($50.00) | ☐ Amend |
| | ☐ Change of Venue/Transfer |
| | ☐ Compel |
| ☐ Judgment on the Pleadings ($50.00) | ☐ Consolidation |
| | ☐ Continue |
| ☐ Motion to Dismiss, or in the Alternative Summary Judgment($50.00) | ☐ Deposition |
| | ☐ Designate a Mediator |
| ☐ Renewed Dispositive Motion(Summary Judgment, Judgment on the Pleadings, or other Dispositive Motion not pursuant to Rule 12(b)) ($50.00) | ☐ Judgment as a Matter of Law (during Trial) |
| | ☐ Disburse Funds |
| | ☐ Extension of Time |
| ☐ Summary Judgment pursuant to Rule 56($50.00) | ☐ In Limine |
| | ☐ Joinder |
| ☐ Other | ☐ More Definite Statement |
| pursuant to Rule _____ ($50.00) | ☐ Motion to Dismiss pursuant to Rule 12(b) |
| | ☐ New Trial |
| *Motion fees are enumerated in §12-19-71(a). Fees pursuant to Local Act are not included. Please contact the Clerk of the Court regarding applicable local fees. | ☐ Objection of Exemptions Claimed |
| | ☐ Pendente Lite |
| | ☐ Plaintiff's Motion to Dismiss |
| ☐ Local Court Costs $ _____ | ☐ Preliminary Injunction |
| | ☐ Protective Order |
| | ☐ Quash |
| | ☐ Release from Stay of Execution |
| | ☐ Sanctions |
| | ☐ Sever |
| | ☐ Special Practice in Alabama |
| | ☐ Stay |
| | ☐ Strike |
| | ☐ Supplement to Pending Motion |
| | ☐ Vacate or Modify |
| | ☐ Withdraw |
| | ☑ Other  Merck & Co., Inc.'s Response to |
| | pursuant to Rule NA  Plaintiffs' Motion to Compel (Subject to Filing Fee) |

| Check here if you have filed or are filing contemporaneously with this motion an Affidavit of Substantial Hardship  ☐ | Date:<br>2/22/2007 4:04:13 PM | Signature of Attorney or Party:<br>/s BENJAMIN WILSON |
| --- | --- | --- |

*This Cover Sheet must be completed and submitted to the Clerk of Court upon the filing of any motion. Each motion should contain a separate Cover Sheet.
**Motions titled 'Motion to Dismiss' that are not pursuant to Rule 12(b) and are in fact Motions for Summary Judgments are subject to filing fee.



ELECTRONICALLY FILED
2/22/2007 4:15 PM
CV-2006-000145.00
CIRCUIT COURT OF
RANDOLPH COUNTY, ALABAMA
CHRIS MAY, CLERK

## IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

| | | |
|---|---|---|
| **CLIFFORD BAILEY, et al.** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| v. | * | **CASE NO. CV-06-145** |
| | * | |
| **MERCK & CO., INC., et al.** | * | |
| | * | |
| **Defendants.** | * | |

### <u>MERCK & CO., INC.'S RESPONSE TO PLAINTIFFS' MOTION TO COMPEL</u>

COMES NOW, Merck & Co., Inc. ("Merck"), by its attorneys, and responds to Plaintiffs' Motion to Compel as follows:

1. On December 28, 2006, Plaintiffs' counsel wrote Merck's counsel and enclosed a notice of deposition directed to Susan Brunstetter, a Merck employee, and a separate Rule 30(b)(6) deposition notice. <u>See</u> Correspondence of 12/28/06, Exhibit A; Deposition notices, Exhibits B and C, respectively.

2. In his correspondence, Plaintiffs' counsel stated that the date for the depositions (January 17, 2007) was selected randomly and that the objective was simply to "get the ball rolling." <u>See</u> Exhibit A.

3. On January 5, 2007, counsel for Merck wrote Plaintiff's counsel and indicated that they were not available to participate in any deposition on the date set forth in the notices. <u>See</u> Correspondence of 1/5/07, Exhibit D. In the letter, counsel for Merck stated an understanding that the correspondence would suffice as a cancellation of the depositions. <u>See</u> <u>id.</u> As a matter of prudence, however, Merck served objections to the deposition notices (and the attached production) on January 11, 2007. <u>See</u> Objections, Exhibits E and F, respectively.

4. Plaintiff's counsel moved to compel the depositions at issue on January 17, 2007. On January 19, 2007, counsel for Merck learned from Plaintiff counsel's staff that the letter of January 5, 2007 canceling the deposition was apparently not received by Plaintiff's counsel. See Correspondence of 1/19/07, Exhibit G. In another letter to Plaintiffs' counsel, Merck's counsel went on to point out that, given the absence of any information as to each plaintiff's claims (including the identity of their prescribing physicians), no Merck representative could possibly possess an adequate knowledge base to testify concerning the matters made the basis of the deposition notices. See id. Moreover, documents and testimony of Merck personnel implicates a number of proprietary and otherwise confidential issues, and thus the parties agree that an appropriate protective order must be put into place before any deposition or production occurs.

5. Since the communications referenced herein, Plaintiffs' counsel has agreed to provide information concerning the specifics of each plaintiff's claim. At no point has Merck indicated an outright refusal to participate in deposition discovery, nor has it to date refused to participate without justification. Consequently, the Plaintiffs' motion to compel is due to be overruled.

Respectfully submitted:

_Ben C. Wilson_
One of the Attorneys for Defendant,
Merck & Co., Inc.

OF COUNSEL:
Robert C. "Mike" Brock
F. Chadwick Morriss
Ben C. Wilson
Richard B. Garrett
RUSHTON, STAKELY, JOHNSTON, & GARRETT, P.A.
Post Office Box 270
Montgomery, Alabama 36101-0270
Telephone: (334) 206-3100
Facsimile: (334) 262-6277

## CERTIFICATE OF SERVICE

I hereby certify that I have served the above and foregoing document upon all interested parties by placing a copy of same in the United States Mail, postage prepaid and properly addressed on this the 22nd day of February 2007, as follows:

James S. Hubbard
Thomas J. Knight
HUBBARD & KNIGHT
1125 Noble Street
Anniston, Alabama  36201

/s/ Ben C. Wilson
OF COUNSEL

- 3 -



ELECTRONICALLY FILED
2/22/2007 4:15 PM
CV-2006-000145.00
CIRCUIT COURT OF
RANDOLPH COUNTY, ALABAMA
CHRIS MAY, CLERK

LAW OFFICES
## HUBBARD AND KNIGHT
POST OFFICE DRAWER 1850
1125 NOBLE STREET
ANNISTON, ALABAMA 36202

THOMAS J. KNIGHT

TELEPHONE  (256) 237-9586
FACSIMILE  (256) 237-9594

December 18, 2006

Mr. Ben C. Wilson
RUSHTON, STAKLEY, JOHNSTON & GARRETT, PA
Post Office Box 270
Montgomery, Alabama 36101-0270

    Re:   *Bailey et al. v. Merck et al.*

Dear Ben:

    We would like to begin discovery in this case as soon as possible. Attached is a letter I sent a few days ago with regard to discovery relating to the sales representatives. We would like to follow up on this discovery in *Bailey v. Merck et al.* as well.

    I would appreciate it if you would let me know what arrangements we can make toward these depositions and document production at your first convenience. I will draft a formal Notice and Request, as soon as we can get an agreed date, time, and place. I look forward to working with you on the discovery process in this case.

Very truly yours,

Thomas J. Knight

TJK/cg

cc: Steve Morris
    Post Office Box 814
    Wedowee, Alabama 36278

Exhibit A

ELECTRONICALLY FILED
2/22/2007 4:15 PM
CV-2006-000145.00
CIRCUIT COURT OF
RANDOLPH COUNTY, ALABAMA
CHRIS MAY, CLERK

## IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

| | |
|---|---|
| CLIFFORD BAILEY, et al. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )    CASE NUMBER: <u>CV-06-145</u> |
| | ) |
| MERCK & CO., INC., et al. | ) |
| | ) |
| Defendants. | ) |

## <u>NOTICE OF DEPOSITION OF SUSAN J. BRUNSTETTER</u>

Now come the Plaintiffs and give notice that the Plaintiffs will take the deposition of

Susan J. Brunstetter, at the offices of the undersigned on the 17th day of January, 2007 beginning

at 10:00 a.m., for the purposes of discovery, and preservation of evidence.

Pursuant to Rule 30 (b)(5) of the Federal Rules of Civil Procedure, the said witness, and

the Defendants, are requested to produce, at and in connection with the said deposition, the

following described documents, papers, and other tangible things:

1.    All records of Alabama Vioxx sales representatives which records are available to

the said witness and/or to the Defendants, which would show:

  a.    attendance by sales representative at any Vioxx related meeting, function, or

      event,

  b.    expense accounts, travel records, and similar records for such sales representative

      during the times when the sales representatives were detailing Vioxx,

  c.    records concerning program materials or other such items utilized at any time in

      connection with Vioxx promotion, detaining, or information providing,

  d.    call notes,

  e.    other records including handwritten notes, memos, email, faxes, or other

      preserved matter of any kind or description which in anyway shows, reveals,

# Exhibit B

discloses, relates to communications to and in connection with Alabama Vioxx

detailmen or sales representative, or between them and any physician or

physicians group or representatives doing business in Alabama.

2.      All records of persons who would have any of the above records if the Defendants

do not produce the same and all records showing the custodian of the above described records.

All parties are invited to attend and cross-examine.


_Thomas J. Knight_
Attorney for Plaintiff

Hubbard & Knight
1125 Noble Street
Post Office Box 1850
Anniston, Alabama 36202
(256) 237-9586


Of Counsel:
Steve Morris
Post Office Box 814
Wedowee, Alabama 36278
(256) 357-9211

## CERTIFICATE OF SERVICE

I do hereby certify that I have this the  28th  day of December, 2007, served a copy of the
above and foregoing on all counsel of record as listed below by United States Mail, postage
prepaid, and properly addressed.

Mr.Richard B. Garrett
Mr. Robert C. Brock
RUSHTON, STAKELY, JOHNSTON & GARRETT, P.A.
184 Commerce Street
Post Office Box 270
Montgomery, Alabama 36104

_Thomas J. Knight_
Attorney for Plaintiff

## Exhibit B

ELECTRONICALLY FILED
2/22/2007 4:15 PM
CV-2006-000145.00
CIRCUIT COURT OF
RANDOLPH COUNTY, ALABAMA
CHRIS MAY, CLERK

## IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, et al.      )
                )
      Plaintiff,        )
                )
vs.                  )     **CASE NUMBER: CV-06-145**
                )
MERCK & CO., INC., et al.      )
                )
      Defendants.     )

### NOTICE OF DEPOSITION OF DEFENDANT
### MERCK & COMPANY INC.  UNDER RULE 30(b)(6)

Now come the Plaintiffs and give notice that the Plaintiffs will take the deposition of

Defendant Merck & Co., Inc.  under and pursuant to Rule 30(b)(6) of the Alabama Rules of Civil

Procedure for the purposes of discovery and identification of records of its Alabama activities,

with the deposition to take place and occur on January 17, 2007, beginning at 10:00 a.m. at the

offices of the undersigned or at such other time and place as are mutually agreed upon by

counsel for the parties for said date, with the subject matters of the said deposition to be as

follows:

    1.     Record keeping as to all records of Alabama Vioxx sales representatives which

         records are available to the Defendants, which would in any way reveal, lead

         to or show:

    a.     attendance by sales representative at any Vioxx-related meeting, function, or

         event,

    b.     expense accounts, travel records, and similar records for such sales

         representatives during the times when the sales representatives were detailing

         Vioxx,

    c.     records concerning program materials or other such items utilized at any time in

         connection with Vioxx promotion, detaining, or information providing,

# Exhibit C

d.  call notes or reports of activity,

e.  other records including handwritten notes, memos, email, faxes, or other preserved matter of any kind or description which in anyway shows, reveals, discloses, relates to communications to and in connection with Alabama Vioxx detailmen or sales representative, or between them and any physician or physicians group or representatives doing business in Alabama. The location, address, and service information as to each of the sales

representative Defendants named in this civil action.

2.  Record keeping as to all records of or pertaining to such sales representative including all W2, 1099, and other tax-related records which may or might show any address or location for said parties, all employee records of or pertaining to said employees, former employees, or sales representative, especially those showing any contact information, relatives' names, addresses, telephone numbers, or other contact information, last know addresses of all sales representative Defendants, meeting lists, sites, locations, whereat any such sales representative Defendants have or are in the future to attend any meetings, events, locations, sales calls, or other similar matters which show where said sales representatives have been at work, or will be in the future, and any other record, document, or other item containing information concerning the whereabouts, at anytime, or any said sales representative Defendants.

3.  Any other matter pertaining to such Merck Alabama sales representatives Defendants, mentioning or naming them, or showing any such place or location for said sales representative Defendants at any time.

Pursuant to Rule 30(b)(6), the Defendant Merck & Co., Inc., is required to designate such person or persons as are to testify on its behalf at or in connection with the deposition and

# Exhibit C

is required to designate such persons as are to testify as to each of the above subject matters, as the designated representative of said Defendant.

Pursuant to Rule 30(b)(5) of the Alabama Rules of Civil Procedure, the Defendant Merck & Co., Inc., is requested to produce at and in connection with the said deposition (and pursuant to Rule 34 of the Alabama Rules of Civil Procedure, the said Defendant is further and additionally requested to produce each and every said item at the offices of the undersigned thirty (30) days after service hereof) as to the following listed documents or any document, record, or preserved information of any kind or type whatsoever whether electronic, paper, or otherwise, which in anyway contains or relates to information included in the following description:

1.  All records of Alabama Vioxx sales representatives which records are available to the said witness and/or to the Defendants, which would show:

a.  attendance by sales representative at any Vioxx related meeting, function, or event,

b.  expense accounts, travel records, and similar records for such sales representative during the times when the sales representatives were detailing Vioxx,

c.  records concerning program materials or other such items utilized at any time in connection with Vioxx promotion, detaining, or information providing,

d.  call notes,

e.  other records including handwritten notes, memos, email, faxes, or other preserved matter of any kind or description which in anyway shows, reveals, discloses, relates to communications to and in connection with Alabama Vioxx detailmen or sales representative, or between them and any physician or physicians group or representatives doing business in Alabama.

2.  All records of persons who would have any of the above records if the Defendants do not produce the same and all records showing the custodian of the above described records.

Exhibit C

3.    The location, address, and service information as to each of the sales representative Defendants named in this civil action.

4.    All records pertaining to such sales representative Defendants including all W2, W1099, and other tax-related records which may or might show any address or location for said parties, all employee records of or pertaining to said employees, former employees, or sales representative, especially those showing any contact information, relatives' names, addresses, telephone numbers, or other contact information, last know addresses of all sales representative Defendants, meeting lists, sites, locations, whereat any such sales representative Defendants have or are in the future to attend any meetings, events, locations, sales calls, or other similar matters which show where said sales representatives have been at work, or will be in the future, and any other record, document, or other item containing information concerning the whereabouts, at anytime, or any said sales representative Defendants.

5.    Any other matter pertaining to such sales representative Defendants, mentioning or naming them, or showing any such place or location for said sales representative Defendants at any time.

All parties are invited to attend and cross examine.

Thomas J. Knight
Attorney for Plaintiff

Hubbard & Knight
1125 Noble Street
Post Office Box 1850
Anniston, Alabama 36202
(256) 237-9586

Of Counsel:
Steve Morris
Post Office Box 814
Wedowee, Alabama 36278
(256) 357-9211

**Exhibit C**

### CERTIFICATE OF SERVICE

I do hereby certify that I have this the  28th  day of December, 2007, served a copy of the above and foregoing on all counsel of record as listed below by United States Mail, postage prepaid, and properly addressed.

Mr.Richard B. Garrett
Mr. Robert C. Brock
RUSHTON, STAKELY, JOHNSTON & GARRETT, P.A.
184 Commerce Street
Post Office Box 270
Montgomery, Alabama 36104


Thomas J. Knight
Attorney for Plaintiff

**Exhibit C**

LAW OFFICES

RUSHTON, STAKELY, JOHNSTON & GARRET

A PROFESSIONAL ASSOCIATION

ELECTRONICALLY FILED
2/22/2007 4:15 PM
CV-2006-000145.00
CIRCUIT COURT OF
RANDOLPH COUNTY, ALABAMA
CHRIS MAY, CLERK

BENJAMIN C. WILSON
EMAIL: BCW@RSJG.COM
DIRECT TELEPHONE:
(334) 206-3194
DIRECT FACSIMILE:
(334) 481-0831

184 COMMERCE STREET
MONTGOMERY, ALABAMA  36104

MAILING ADDRESS:
POST OFFICE BOX 270
MONTGOMERY, ALABAMA  36101-0270

WWW.RSJG.COM

**January 5, 2007**

Thomas J. Knight
**Hubbard & Knight**
P.O. Drawer 1850
1125 Nobles Street
Anniston, Alabama  36202

Re:    *Clifford Bailey, et al. v. Merck & Co., Inc., et al.*
       Circuit Court of Randolph County, AL/CV-06-145

Dear Tim:

Please accept this letter as a response to your letter to Richard Garrett of December 28, 2006. We share your desire to begin discovery in this matter, but we are not available to put these, or any other witnesses, up for deposition on the date set forth in the notices directed to a 30(b)(6) representative and Susan Brunstetter. While I would hope that this letter would be sufficient to cancel those notices, we are going to file objections to them as a matter of prudence.

While the rules of civil procedure allow you to obtain a deposition of a 30(b)(6) representative, we believe it more appropriate to engage in, and complete, necessary paper discovery first. We checked the state court file and saw no evidence that you have propounded any written discovery on Merck or any other named defendant. If that is incorrect, please let me know. For our part, we will be submitting a set of written discovery to your clients right away.

On a related note, we would also like to know whether you and your clients would be willing to produce plaintiff profile forms similar to those that have been issued in the MDL litigation. The material contained in the plaintiff profile form would be an alternative to traditional discovery requests seeking the same information. Please consult with your clients and let me know at your earliest convenience whether it may be more efficient to conduct aspects of paper discovery by way of profile forms.

I look forward to hearing from you on these issues at your earliest convenience.

Sincerely yours,

BEN C. WILSON

BCW/dcr

**Exhibit D**

ELECTRONICALLY FILED
2/22/2007 4:15 PM
CV-2006-000145.00
CIRCUIT COURT OF
RANDOLPH COUNTY, ALABAMA
CHRIS MAY, CLERK

## IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

| | | |
|---|---|---|
| CLIFFORD BAILEY, et al. | * | |
| Plaintiff, | * | |
| v. | * | CASE NO. CV-06-145 |
| MERCK & CO., INC., et al. | * | |
| Defendants. | * | |

### MERCK & CO., INC.'S RESPONSES AND OBJECTIONS TO THE DOCUMENT REQUESTS CONTAINED IN PLAINTIFFS' NOTICE OF DEPOSITION OF SUSAN J. BRUNSTETTER

Merck & Co., Inc. ("Merck"), by and through its attorneys, responds and objects to the document requests contained in Plaintiffs' Notice of Deposition of Susan J. Brunstetter (the "Requests") as follows. These responses and objections are made only to the request for documents; all objections to testimony are reserved.

### GENERAL OBJECTIONS

1.    Merck objects to these Requests to the extent they are vague, ambiguous, argumentative, unreasonably cumulative or duplicative, overly broad, unduly burdensome or oppressive, or seek information or documents that are not relevant to the claims or defenses of any party or to the subject matter involved in this action, nor reasonably calculated to lead to the discovery of admissible evidence. Merck further objects to these Requests to the extent they seek information or documents beyond those permitted by the Alabama Rules of Civil Procedure or any applicable Order of this Court.

2.    Merck objects to these Requests to the extent they seek information or documents protected from discovery by the attorney-client privilege, the work product doctrine, or otherwise

**Exhibit E**

immune or protected from disclosure. Merck does not intend to waive any applicable protections or privileges through the supplying of information or production of documents in response to these Requests. On the contrary, Merck specifically intends to preserve any and all applicable protections or privileges.

3.      Inadvertent production of any document shall not constitute a waiver of any privilege or any other ground for objecting to discovery with respect to such document or any other document, or with respect to the subject matter thereof or the information contained therein; nor shall such inadvertent production waive Merck's right to demand that such documents be returned or to object to the use of the document or the information contained therein during this or any other proceeding.

4.      Merck objects to these Requests to the extent they seek information or documents generated in the course of the defense of this action or any other action regarding Vioxx®. Merck will not produce such information or documents.

5.      Merck objects to these Requests as overly broad and unduly burdensome to the extent they call for the identification of "all" documents or "any and all" documents when all relevant facts can be obtained from fewer than "all" documents or "any and all" documents. Merck objects further to these Requests to the extent they seek documents other than those that can be located upon a search of files where such documents reasonably can be expected to be found. Merck does not consider as Vioxx documents and does not generally produce those documents that primarily relate to another Merck drug, that describe general Merck operating procedures and practices, or that are company-wide or divisional budgets, forecasts,

- 2 -                                              **Exhibit E**

departmental evaluations and documents setting forth departmental goals, human resource allocations, and the like, although the documents may have Vioxx references.

6.     Merck objects to these Requests as overly broad, unduly burdensome and oppressive, and as seeking information or documents that are not relevant to the claims or defenses of any party or to the subject matter involved in this action, nor reasonably calculated to lead to the discovery of admissible evidence, to the extent they seek information or documents:

a.     Pertaining to Merck products other than Vioxx (by whatever name it is known, including L-748,731 and MK-966), the product that any plaintiff or plaintiff's decedent allegedly ingested (however, this objection does not apply to information about another drug that is necessary to understand something about Vioxx, such as where the other drug is being used as a comparator in a Vioxx study or to documents regarding a competing NSAID manufactured by another company or to documents that discuss NSAIDs generally); or

b.     Pertaining to alleged adverse experiences associated with Vioxx other than the adverse experiences any plaintiff claims Vioxx caused; or

c.     Pertaining to promotion or advertising other than what any plaintiff, plaintiff's decedent, and/or plaintiff's prescribing physician claims to have relied upon.

Except where otherwise indicated, Merck will not produce such information or documents.

- 3 -

**Exhibit E**

7.      Merck objects to these Requests to the extent they seek Merck's chemistry and manufacturing control information on the grounds that such information is highly confidential and proprietary, consists of trade secrets and is not relevant to the claims or defenses of any party or to the subject matter involved in this action, nor reasonably calculated to lead to the discovery of admissible evidence. Merck will not produce such information.

8.      Merck objects to the Requests to the extent they seek any other confidential or proprietary information or trade secrets. Merck will only produce such other confidential or proprietary information or trade secrets, if relevant, subject to and in reliance on the protective order in this case, and in some cases, only with additional confidentiality protections. In accordance with this objection, Merck notes that for a limited number of high-level documents, such as Board and certain committee minutes, and for certain members of senior management, Merck redacts as irrelevant any information that is not Vioxx-specific.

9.      Merck objects to these Requests as overly broad and unduly burdensome to the extent they purport to seek information or documents without regard to a specific timeframe or date cut-off. Where not otherwise specified in response to a specific request, Merck will produce information or documents generated up to and including the date set by the Court. The production of such information or documents shall be subject to and without waiver of any of the objections stated herein, and shall not be deemed to be an admission on the part of Merck that such information or documents are either relevant or admissible. Indeed, Merck specifically notes that information or documents generated after any plaintiff last ingested Vioxx are unlikely to be relevant or admissible at the trial of this matter.

- 4 -                                         **Exhibit E**

10.     Merck objects to these Requests as improper to the extent they seek the production of documents and/or data concerning foreign Vioxx information. Specifically Merck objects to any Request that calls for information or documents relating to Merck's business or practices outside of the fifty United States and the District of Columbia, such as the sale, marketing, competitive landscape, or regulation of Vioxx in foreign countries, including regulatory submissions to foreign agencies.     Except where otherwise indicated, Merck's responses will be limited to information and documents about its business or practices in the fifty United States and the District of Columbia. This objection does not include: (1) documents (other than submissions to foreign agencies and correspondence about those submissions) that contain Vioxx science or report on scientific studies, regardless of where in the world the studies were conducted; (2) documents concerning scientific presentations about Vioxx made at medical conferences held outside the United States, such as EULAR; (3) information about adverse experiences reported to have occurred outside the United States; or (4) foreign regulatory documents if Merck also submitted them to the FDA, such as the periodic safety update reports. Additionally, Merck will not redact foreign information relating to Vioxx from the documents it is producing, except where necessary to protect trade secrets or to preserve other objections. Merck states that the purposes of, and standards used by, foreign governments and their respective judicial systems can materially differ from the rules of procedure and evidence, as well as the substantive law, applicable in private products liability actions pending in the United States. Merck objects to producing documents other than as set forth above.

11.     Merck objects to these Requests to the extent they seek personnel files, self-evaluations, evaluations by others, documents regarding promotions, financial disclosures or other information such as social security numbers, computer passwords, home telephone

- 5 -

**Exhibit E**

numbers and other private information, on the grounds that disclosure would invade the privacy

rights of the individuals affected and are not relevant to the claims or defenses of any party or to

the subject matter involved in this action, nor reasonably calculated to lead to the discovery of

admissible evidence. Merck will not produce such documents or information. Merck further

objects to these Requests to the extent they purport to require Merck to disclose the identity of

any individual who allegedly experienced an adverse reaction to Vioxx or who reported such a

reaction on the ground that such disclosure would violate the patient or reporter's right to

confidentiality under federal law. Pursuant to 21 C.F.R. §§ 312.130, 314.430(e) and 20.63(f),

Merck will redact from any document produced in this litigation names and any information that

would identify the person using the product and names and any information that would identify

any third party involved with the report, such as a physician, hospital or other institution.

12.    Merck objects to these Requests to the extent they call for information or

documents regarding adverse experiences allegedly caused by Vioxx. Pursuant to 21 C.F.R. §§

312.32 and 314.80, Merck collects information on adverse experiences that are temporally

associated with a patient's treatment with Vioxx and reports those adverse experiences to the

FDA without regard to whether Vioxx causes such adverse experiences. The reporting of an

adverse experience does not reflect a conclusion by Merck or the FDA that Vioxx caused or

contributed to the experience.

13.    Merck objects to these Requests to the extent they purport to require Merck to

provide a compilation, abstract, audit, and/or other document summary that does not currently

exist.

- 6 -

**Exhibit E**

14.     Merck objects to these Requests to the extent they call for information or documents that are outside of Merck's possession, custody or control, in the possession of third parties, and/or in the public domain or otherwise obtainable from another source that is more convenient, less burdensome or less expensive.

15.     Merck is responding to these Requests without waiving or intending to waive, but on the contrary, preserving and intending to preserve: (a) the right to object, on the grounds of competency, privilege, relevance, or materiality, or any other proper grounds, to the use of such documents or information for any purpose, in whole or in part, in any subsequent proceedings, in this action or in any other action; (b) the right to object on all grounds, at any time, to document requests, interrogatories, or other discovery procedures involving or relating to the subject of the requests to which Merck has responded herein; and (c) the right at any time to revise, correct, add to or clarify any of the answers made herein.

16.     Merck objects to these Requests to the extent they seek documents or information regarding current, planned, or future studies, on the grounds that such discovery could impair Merck's ability to conduct such studies and cause injury to Merck's business interests, particularly where final decisions have yet to be made. Merck objects generally to any request for studies not limited to relevant Vioxx-related clinical or pre-clinical studies.

17.     Because of the overly broad nature of these Requests, it is not possible for Merck to anticipate all possible grounds for objection with respect to the particular requests set forth herein. Merck reserves the right to supplement or correct these responses and to raise any additional objections deemed necessary and appropriate in light of the results of any further review.

- 7 -

**Exhibit E**

**PRODUCTION OF DOCUMENTS**

Subject to and in reliance upon the protective order to be entered in this case, and in some cases, additional confidentiality protections, Merck will produce any responsive, non-objectionable documents on CD-ROMs, portable hard drive or other electronic format as ".tiff" images, together with an associated IPRO "load" file. Merck reserves the right to seek reimbursement for costs associated with the production of documents.

The documents Merck may produce from an individual's files consist of those non-objectionable Vioxx documents located upon a search of that individual's (1) paper files likely to contain Vioxx documents, (2) e-mail, and (3) electronic documents from the individual's desktop computers and network "home" drives, but not other shared drives or databases to which the individual may have access. With respect to categories (2) and (3), Merck has collected electronic documents from the individual's files or folders reasonably believed to contain Vioxx documents and those electronic documents from the individual's other files or folders found in a search designed to select Vioxx documents. Merck collects and converts to .tiff format electronic documents in any of over 490 file types of graphics, PDF, presentation, projects, spreadsheet, text, web page, and word processing documents. These include the most common file types, such as Adobe Acrobat and Microsoft Word, Excel, and PowerPoint files as well as many lesser-known file types. However, Merck cannot convert to .tiff format certain electronic file types, such as database files, including Microsoft Access certain SAS files, Microsoft Outlook calendars, and embedded documents within Microsoft Word files. Merck excludes from production or redacts certain categories of documents as outside the scope of permissible discovery as described in its general and specific objections.

Exhibit E

Merck also redacts information generated by an automatically updating field, such as an auto-date, because the information that would appear on the printed page is unrelated to anything the owner of the document would have ever seen.

## RESPONSE TO INDIVIDUAL REQUESTS

Merck incorporates its General Objections in the responses that follow. Any specific objections set forth in the responses are in addition to those objections and, unless otherwise specified, Merck's responses are limited in accordance with each of its objections. To the extent that Merck offers to produce confidential information or documents, Merck will only do so subject to and in reliance on the Protective Order entered in this case.

## REQUEST FOR PRODUCTION NO. 1:

All records of Alabama Vioxx sales representatives which records are available to the said witness and/or to the Defendants, which would show:

a.    attendance by sales representative at any Vioxx related meeting, function, or event,

b.    expense accounts, travel records, and similar records for such sales representative during the times when the sales representatives were detailing Vioxx,

c.    records concerning program materials or other such items utilized at any time in connection with Vioxx promotion, detaining [*sic*], or information providing,

d.    call notes,

- 9 -

**Exhibit E**

e.    **other records including handwritten notes, memos, email, faxes, or other preserved matter of any kind or description which in anyway shows, reveals, discloses, relates to communication to and in connection with Alabama Vioxx detailmen or sales representative, or between them and any physician or physicians group or representatives doing business in Alabama.**

## RESPONSE TO REQUEST FOR PRODUCTION NO. 1:

Merck objects to this Request on the grounds that it is argumentative, vague and ambiguous, particularly with respect to the terms "sales representatives," "detailing," and "detailmen." Merck objects further to this Request on the grounds that it is overly broad, unduly burdensome, compound, and not relevant to the claims or defenses of any party or to the subject matter involved in this action, nor reasonably calculated to lead to the discovery of admissible evidence, particularly insofar as it is not limited to information or documents related to the professional representative(s) who called on Plaintiffs' prescribing physician(s) with respect to Vioxx during the relevant time period.

## REQUEST FOR PRODUCTION NO. 2:

**All records of persons who would have any of the above records if the Defendants do not produce the same and all records showing the custodian of the above described records.**

## RESPONSE TO REQUEST FOR PRODUCTION NO. 2:

Merck objects to this Request on the grounds that it is vague, ambiguous, and fails to identify the documents sought to be produced with reasonable particularity. Merck objects

**Exhibit E**

further to this Request on the grounds that it is overly broad, unduly burdensome, and not

relevant to the claims or defenses of any party or to the subject matter involved in this action, nor

reasonably calculated to lead to the discovery of admissible evidence, particularly insofar as it is

not limited to information or documents related to the professional representative(s) who called

on Plaintiffs' prescribing physician(s) with respect to Vioxx during the relevant time period.


/s/ Ben C. Wilson
BEN C. WILSON
One of the Attorneys for Defendant,
Merck & Co., Inc.

OF COUNSEL:
Robert C. "Mike" Brock
F. Chadwick Morriss
Ben C. Wilson
Richard B. Garrett
RUSHTON, STAKELY, JOHNSTON, & GARRETT, P.A.
Post Office Box 270
Montgomery, Alabama 36101-0270
Telephone: (334) 206-3100
Facsimile: (334) 262-6277


## CERTIFICATE OF SERVICE

I hereby certify that I have electronically filed and served through Alafile the above and
foregoing document upon all interested parties on this the 11th day of January 2007, as follows:

James S. Hubbard
Thomas J. Knight
HUBBARD & KNIGHT
1125 Noble Street
Anniston, Alabama  36201


/s/ Ben C. Wilson
OF COUNSEL


- 11 -                    **Exhibit E**



ELECTRONICALLY FILED
2/22/2007 4:15 PM
CV-2006-000145.00
CIRCUIT COURT OF
RANDOLPH COUNTY, ALABAMA
CHRIS MAY, CLERK

### IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

| | |
|---|---|
| CLIFFORD BAILEY, et al. | * |
| Plaintiff, | * |
| | * |
| v. | * |
| | * |
| MERCK & CO., INC., et al. | * |
| Defendants. | * |

CASE NO. CV-06-

Filed in Office

JAN 1 2 2007

CHRIS MAY
Clerk of Circuit Court

## MERCK & CO., INC.'S RESPONSES AND OBJECTIONS TO THE DOCUMENT REQUESTS CONTAINED IN PLAINTIFFS' NOTICE OF DEPOSITION OF DEFENDANT MERCK & COMPANY INC. UNDER RULE 30(b)(6)

Merck & Co., Inc. ("Merck"), by its attorneys, responds and objects to the document requests contained in Plaintiffs' Notice of Deposition of Defendant Merck & Company Inc. Under Rule 30(b)(6) (the "Requests") as follows. These responses and objections are made only to the request for documents; all objections to testimony are reserved.

### GENERAL OBJECTIONS

1.      Merck objects to these Requests to the extent they are vague, ambiguous, argumentative, unreasonably cumulative or duplicative, overly broad, unduly burdensome or oppressive, or seek information or documents that are not relevant to the claims or defenses of any party or to the subject matter involved in this action, nor reasonably calculated to lead to the discovery of admissible evidence. Merck further objects to these Requests to the extent they seek information or documents beyond those permitted by the Alabama Rules of Civil Procedure or any applicable Order of this Court.

## Exhibit F

2.    Merck objects to these Requests to the extent they seek information or documents protected from discovery by the attorney-client privilege, the work product doctrine, or otherwise immune or protected from disclosure.  Merck does not intend to waive any applicable protections or privileges through the supplying of information or production of documents in response to these Requests.  On the contrary, Merck specifically intends to preserve any and all applicable protections or privileges.

3.    Inadvertent production of any document shall not constitute a waiver of any privilege or any other ground for objecting to discovery with respect to such document or any other document, or with respect to the subject matter thereof or the information contained therein; nor shall such inadvertent production waive Merck's right to demand that such documents be returned or to object to the use of the document or the information contained therein during this or any other proceeding.

4.    Merck objects to these Requests to the extent they seek information or documents generated in the course of the defense of this action or any other action regarding Vioxx®. Merck will not produce such information or documents.

5.    Merck objects to these Requests as overly broad and unduly burdensome to the extent they call for the identification of "all" documents or "any and all" documents when all relevant facts can be obtained from fewer than "all" documents or "any and all" documents. Merck objects further to these Requests to the extent they seek documents other than those that can be located upon a search of files where such documents reasonably can be expected to be found.  Merck does not consider as Vioxx documents and does not generally produce those documents that primarily relate to another Merck drug, that describe general Merck operating

**Exhibit F**

procedures and practices, or that are company-wide or divisional budgets, forecasts, departmental evaluations and documents setting forth departmental goals, human resource allocations, and the like, although the documents may have Vioxx references.

6.    Merck objects to these Requests as overly broad, unduly burdensome and oppressive, and as seeking information or documents that are not relevant to the claims or defenses of any party or to the subject matter involved in this action, nor reasonably calculated to lead to the discovery of admissible evidence, to the extent they seek information or documents:

a.    Pertaining to Merck products other than Vioxx (by whatever name it is known, including L-748,731 and MK-966), the product that any plaintiff or plaintiff's decedent allegedly ingested (however, this objection does not apply to information about another drug that is necessary to understand something about Vioxx, such as where the other drug is being used as a comparator in a Vioxx study or to documents regarding a competing NSAID manufactured by another company or to documents that discuss NSAIDs generally); or

b.    Pertaining to alleged adverse experiences associated with Vioxx other than the adverse experiences any plaintiff claims Vioxx caused; or

c.    Pertaining to promotion or advertising other than what any plaintiff, plaintiff's decedent, and/or plaintiff's prescribing physician claims to have relied upon.

- 3 -

**Exhibit F**

Except where otherwise indicated, Merck will not produce such information or documents.

7.    Merck objects to these Requests to the extent they seek Merck's chemistry and manufacturing control information on the grounds that such information is highly confidential and proprietary, consists of trade secrets and is not relevant to the claims or defenses of any party or to the subject matter involved in this action, nor reasonably calculated to lead to the discovery of admissible evidence.  Merck will not produce such information.

8.    Merck objects to the Requests to the extent they seek any other confidential or proprietary information or trade secrets.  Merck will only produce such other confidential or proprietary information or trade secrets, if relevant, subject to and in reliance on the protective order in this case, and in some cases, only with additional confidentiality protections.  In accordance with this objection, Merck notes that for a limited number of high-level documents, such as Board and certain committee minutes, and for certain members of senior management, Merck redacts as irrelevant any information that is not Vioxx-specific.

9.    Merck objects to these Requests as overly broad and unduly burdensome to the extent they purport to seek information or documents without regard to a specific timeframe or date cut-off.  Where not otherwise specified in response to a specific request, Merck will produce information or documents generated up to and including the date set by the Court.  The production of such information or documents shall be subject to and without waiver of any of the objections stated herein, and shall not be deemed to be an admission on the part of Merck that such information or documents are either relevant or admissible.  Indeed, Merck specifically

- 4 -

**Exhibit F**

notes that information or documents generated after any plaintiff last ingested Vioxx are unlikely to be relevant or admissible at the trial of this matter.

10.    Merck objects to these Requests as improper to the extent they seek the production of documents and/or data concerning foreign Vioxx information.  Specifically Merck objects to any Request that calls for information or documents relating to Merck's business or practices outside of the fifty United States and the District of Columbia, such as the sale, marketing, competitive landscape, or regulation of Vioxx in foreign countries, including regulatory submissions to foreign agencies.    Except where otherwise indicated, Merck's responses will be limited to information and documents about its business or practices in the fifty United States and the District of Columbia.  This objection does not include: (1) documents (other than submissions to foreign agencies and correspondence about those submissions) that contain Vioxx science or report on scientific studies, regardless of where in the world the studies were conducted; (2) documents concerning scientific presentations about Vioxx made at medical conferences held outside the United States, such as EULAR; (3) information about adverse experiences reported to have occurred outside the United States; or (4) foreign regulatory documents if Merck also submitted them to the FDA, such as the periodic safety update reports. Additionally, Merck will not redact foreign information relating to Vioxx from the documents it is producing, except where necessary to protect trade secrets or to preserve other objections. Merck states that the purposes of, and standards used by, foreign governments and their respective judicial systems can materially differ from the rules of procedure and evidence, as well as the substantive law, applicable in private products liability actions pending in the United States. Merck objects to producing documents other than as set forth above.

**Exhibit F**

11.     Merck objects to these Requests to the extent they seek personnel files, self-evaluations, evaluations by others, documents regarding promotions, financial disclosures or other information such as social security numbers, computer passwords, home telephone numbers and other private information, on the grounds that disclosure would invade the privacy rights of the individuals affected and are not relevant to the claims or defenses of any party or to the subject matter involved in this action, nor reasonably calculated to lead to the discovery of admissible evidence. Merck will not produce such documents or information. Merck further objects to these Requests to the extent they purport to require Merck to disclose the identity of any individual who allegedly experienced an adverse reaction to Vioxx or who reported such a reaction on the ground that such disclosure would violate the patient or reporter's right to confidentiality under federal law. Pursuant to 21 C.F.R. §§ 312.130, 314.430(e) and 20.63(f), Merck will redact from any document produced in this litigation names and any information that would identify the person using the product and names and any information that would identify any third party involved with the report, such as a physician, hospital or other institution.

12.     Merck objects to these Requests to the extent they call for information or documents regarding adverse experiences allegedly caused by Vioxx. Pursuant to 21 C.F.R. §§ 312.32 and 314.80, Merck collects information on adverse experiences that are temporally associated with a patient's treatment with Vioxx and reports those adverse experiences to the FDA without regard to whether Vioxx causes such adverse experiences. The reporting of an adverse experience does not reflect a conclusion by Merck or the FDA that Vioxx caused or contributed to the experience.

**Exhibit F**

13.    Merck objects to these Requests to the extent they purport to require Merck to provide a compilation, abstract, audit, and/or other document summary that does not currently exist.

14.    Merck objects to these Requests to the extent they call for information or documents that are outside of Merck's possession, custody or control, in the possession of third parties, and/or in the public domain or otherwise obtainable from another source that is more convenient, less burdensome or less expensive.

15.    Merck is responding to these Requests without waiving or intending to waive, but on the contrary, preserving and intending to preserve: (a) the right to object, on the grounds of competency, privilege, relevance, or materiality, or any other proper grounds, to the use of such documents or information for any purpose, in whole or in part, in any subsequent proceedings, in this action or in any other action; (b) the right to object on all grounds, at any time, to document requests, interrogatories, or other discovery procedures involving or relating to the subject of the requests to which Merck has responded herein; and (c) the right at any time to revise, correct, add to or clarify any of the answers made herein.

16.    Merck objects to these Requests to the extent they seek documents or information regarding current, planned, or future studies, on the grounds that such discovery could impair Merck's ability to conduct such studies and cause injury to Merck's business interests, particularly where final decisions have yet to be made. Merck objects generally to any request for studies not limited to relevant Vioxx-related clinical or pre-clinical studies.

17.    Because of the overly broad nature of these Requests, it is not possible for Merck to anticipate all possible grounds for objection with respect to the particular requests set forth

- 7 -

**Exhibit F**

herein.  Merck reserves the right to supplement or correct these responses and to raise any additional objections deemed necessary and appropriate in light of the results of any further review.

## PRODUCTION OF DOCUMENTS

Subject to and in reliance upon a protective order to be entered in this case, and in some cases, additional confidentiality protections, Merck will produce any responsive, non-objectionable documents on CD-ROMs, portable hard drive or other electronic format as ".tiff" images, together with an associated IPRO "load" file.  Merck reserves the right to seek reimbursement for costs associated with the production of documents.

The documents Merck may produce from an individual's files consist of those non-objectionable Vioxx documents located upon a search of that individual's (1) paper files likely to contain Vioxx documents, (2) e-mail, and (3) electronic documents from the individual's desktop computers and network "home" drives, but not other shared drives or databases to which the individual may have access.  With respect to categories (2) and (3), Merck has collected electronic documents from the individual's files or folders reasonably believed to contain Vioxx documents and those electronic documents from the individual's other files or folders found in a search designed to select Vioxx documents.  Merck collects and converts to .tiff format electronic documents in any of over 490 file types of graphics, PDF, presentation, projects, spreadsheet, text, web page, and word processing documents.  These include the most common file types, such as Adobe Acrobat and Microsoft Word, Excel, and PowerPoint files as well as many lesser-known file types.  However, Merck cannot convert to .tiff format certain electronic file types, such as database files, including Microsoft Access certain SAS files, Microsoft

- 8 -

**Exhibit F**

Outlook calendars, and embedded documents within Microsoft Word files. Merck excludes from production or redacts certain categories of documents as outside the scope of permissible discovery as described in its general and specific objections.

Merck also redacts information generated by an automatically updating field, such as an auto-date, because the information that would appear on the printed page is unrelated to anything the owner of the document would have ever seen.

## RESPONSE TO INDIVIDUAL REQUESTS

Merck incorporates its General Objections in the responses that follow. Any specific objections set forth in the responses are in addition to those objections and, unless otherwise specified, Merck's responses are limited in accordance with each of its objections. To the extent that Merck offers to produce confidential information or documents, Merck will only do so subject to and in reliance on the Protective Order entered in this case.

## REQUEST FOR PRODUCTION NO. 1:

All records of Alabama Vioxx sales representatives which records are available to the said witness and/or to the Defendants, which would show:

a.    attendance by sales representative at any Vioxx related meeting, function, or event,

b.    expense accounts, travel records, and similar records for such sales representative during the times when the sales representatives were detailing Vioxx,

**Exhibit F**

c.    records concerning program materials or other such items utilized at any time in connection with Vioxx promotion, detaining [*sic*], or information providing,

d.    call notes,

e.    other records including handwritten notes, memos, email, faxes, or other preserved matter of any kind or description which in anyway shows, reveals, discloses, relates to communication to and in connection with Alabama Vioxx detailmen or sales representative, or between them and any physician or physicians group or representatives doing business in Alabama.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 1:

Merck objects to this Request on the grounds that it is argumentative, vague and ambiguous, particularly with respect to the terms "sales representatives," "detailing," and "detailmen." Merck objects further to this Request on the grounds that it is overly broad, unduly burdensome, compound, and not relevant to the claims or defenses of any party or to the subject matter involved in this action, nor reasonably calculated to lead to the discovery of admissible evidence, particularly insofar as it is not limited to documents or information related to the professional representative(s) who called on Plaintiffs' prescribing physician(s) with respect to Vioxx during the relevant time period.

**Exhibit F**

**REQUEST FOR PRODUCTION NO. 2:**

All records of persons who would have any of the above records if the Defendants do not produce the same and all records showing the custodian of the above described records.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

Merck objects to this Request on the grounds that it is vague, ambiguous, and fails to identify the documents sought to be produced with reasonable particularity. Merck objects further to this Request on the grounds that it is overly broad, unduly burdensome, and not relevant to the claims or defenses of any party or to the subject matter involved in this action, nor reasonably calculated to lead to the discovery of admissible evidence, particularly insofar as it is not limited to information or documents related to the professional representative(s) who called on Plaintiffs' prescribing physician(s) with respect to Vioxx during the relevant time period.

**REQUEST FOR PRODUCTION NO. 3:**

The location, address, and service information as to each of the sales representative Defendants named in this civil action.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

Merck objects to this Request on the grounds that it is argumentative, vague and ambiguous, particularly with respect to the term "sales representatives." Merck objects further to this Request on the grounds that it is overly broad, unduly burdensome, compound, and not relevant to the claims or defenses of any party or to the subject matter involved in this action, nor

- 11 -

**Exhibit F**

reasonably calculated to lead to the discovery of admissible evidence, particularly insofar as it is not limited to information or documents related to the professional representative(s) who called on Plaintiffs' prescribing physician(s) with respect to Vioxx during the relevant time period.

## REQUEST FOR PRODUCTION NO. 4:

All records pertaining to such sales representative Defendants including all W2, W1099, and other tax-related records which may or might show any address or location for said parties, all employee records of or pertaining to said employees, former employees, or sales representative, especially those showing any contact information, relatives' names, addresses, telephone numbers, or other contact information, last know addresses of all sales representative Defendants, meeting lists, sites, locations, whereat any such sales representative Defendants have or are in the future to attend any meetings, events, locations, sales calls, or other similar matters which show where said sales representatives have been at work, or will be in the future, and any other record, documents, or other item containing information concerning the whereabouts, at anytime, or any said sales representative Defendants.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 4:

Merck objects to this Request on the grounds that it is argumentative, vague and ambiguous, particularly with respect to the term "sales representatives." Merck objects further to this Request on the grounds that it is overly broad, unduly burdensome, compound, and not relevant to the claims or defenses of any party or to the subject matter involved in this action, nor reasonably calculated to lead to the discovery of admissible evidence, particularly insofar as it is

**Exhibit F**

not limited to information or documents related to the professional representative(s) who called on Plaintiffs' prescribing physician(s) with respect to Vioxx during the relevant time period.

## REQUEST FOR PRODUCTION NO. 5:

**Any other matter pertaining to such sales representative Defendants, mentioning or naming them, or showing any such place or location for said sales representative Defendants at any time.**

## RESPONSE TO REQUEST FOR PRODUCTION NO. 5:

Merck objects to this Request on the grounds that it is argumentative, vague and ambiguous, particularly with respect to the term "sales representatives." Merck objects further to this Request on the grounds that it is overly broad, unduly burdensome, compound, and not relevant to the claims or defenses of any party or to the subject matter involved in this action, nor reasonably calculated to lead to the discovery of admissible evidence, particularly insofar as it is not limited to information or documents related to the professional representative(s) who called on Plaintiffs' prescribing physician(s) with respect to Vioxx during the relevant time period.

_____

BEN C. WILSON
One of the Attorneys for Defendant,
Merck & Co., Inc.

OF COUNSEL:
Robert C. "Mike" Brock
F. Chadwick Morriss
Ben C. Wilson
Richard B. Garrett
RUSHTON, STAKELY, JOHNSTON, & GARRETT, P.A.
Post Office Box 270
Montgomery, Alabama 36101-0270
Telephone: (334) 206-3100
Facsimile: (334) 262-6277

**Exhibit F**

## CERTIFICATE OF SERVICE

I hereby certify that I have served the above and foregoing document upon all interested parties by placing a copy of same in the United States Mail, postage prepaid and properly addressed on this the 11th day of January 2007, as follows:

James S. Hubbard
Thomas J. Knight
HUBBARD & KNIGHT
1125 Noble Street
Anniston, Alabama 36201

_____
OF COUNSEL

**Exhibit F**



ELECTRONICALLY FILED
2/22/2007 4:15 PM
CV-2006-000145.00
CIRCUIT COURT OF
RANDOLPH COUNTY, ALABAMA
CHRIS MAY, CLERK

LAW OFFICES

## RUSHTON, STAKELY, JOHNSTON & GARRETT, P.A.

A PROFESSIONAL ASSOCIATION

BENJAMIN C. WILSON
EMAIL: BCW@RSJG.COM
DIRECT TELEPHONE:
(334) 206-3194
DIRECT FACSIMILE:
(334) 481-0831

184 COMMERCE STREET
MONTGOMERY, ALABAMA 36104

MAILING ADDRESS:
POST OFFICE BOX 270
MONTGOMERY, ALABAMA 36101-0270

WWW.RSJG.COM

January 19, 2007

Thomas J. Knight
**Hubbard & Knight**
P.O. Drawer 1850
1125 Nobles Street
Anniston, Alabama 36202

> Re:   *Clifford Bailey, et al. v. Merck & Co., Inc., et al.*
> Circuit Court of Randolph County, AL/CV-06-145

Dear Tim:

Thank you for your letter of January 17, 2007 regarding the status of discovery in this case. Your letter recounts your observation that no one appeared for the 30(b)(6) deposition that you had unilaterally noticed for January 17. I was confused about this until I learned this morning that your office says it didn't receive my letter to you of January 5, 2007 or the objections we filed to the production notices associated with the 30(b)(6) and Brunstetter notices. Those objections were filed with the court on January 12, 2007. Although we have e-mailed PDF versions of those documents to you this morning, I enclose herein another copy of each.

As you can see, my letter of January 5 was in response to yours to Richard Garrett of December 28, 2006. Your letter suggested that you were simply trying to "get the ball rolling" and that there was no significance to the January 17 date contained in the notice. In response, I indicated that we were unavailable on January 17. I further stated that we would be willing to participate in deposition discovery, but only after the exchange of written discovery as is generally the case.

I also raised the proposition of doing plaintiff profile forms in an effort to streamline written/document discovery. We remain interested in pursuing this option.

I trust that your now having my January 5 letter will clear things up. On the other hand, if you intend to demand depositions of Merck personnel before the conclusion of written discovery, then we are not on the same page. At this point, it is unlikely a Merck deponent could provide any case-specific testimony because of the dearth of knowledge concerning your clients'

**Exhibit G**

Thomas J. Knight
January 19, 2007
Page 2

experiences with Vioxx®. Under the circumstances, I am confident that the court would find our position entirely reasonable.

In summary, we are perfectly ready to initiate discovery in this case. In fact, yesterday we served written discovery requests directed to your clients. We will, however, object to any attempt to depose any employee or other representative of Merck until we derive some information about the claims of the various plaintiffs in this suit.

Please give me a call about this at your earliest convenience as I am happy to discuss these issues with you.

Sincerely yours,

BEN C. WILSON

BCW/dcr
Enclosures

**Exhibit G**

```
AVSO351                                              CV 2006 000145.00

                                    JUDGE: ASSIGNED JUDGE
------------------------------------------------------------------------
                 ALABAMA JUDICIAL DATA CENTER
                    CASE ACTION SUMMARY
                      CIRCUIT CIVIL
------------------------------------------------------------------------
  IN THE CIRCUIT  COURT OF  RANDOLPH      COUNTY

   CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
 FILED:  09/21/2006 TYPE: BAD FAITH/FRAUD/MISR TYPE TRIAL: NON-JURY   TRACK:

**********************************************************************
DATE1:  04/04/2007 CA:              CA DATE:
DATE2:             AMT:      $.00  PAYMENT:
DATE3:
**********************************************************************
------------------------------------------------------------------------
DEFENDANT  013: PHARR JERRY
               4705 AUGUSTA DR             ATTORNEY:

               EIGHT MILE, AL  36613-0000
               PHONE: (256)000-0000
ENTERED:  09/21/2006 ISSUED: 09/21/2006 TYPE:   SHERIFF
SERVED:              ANSWERED:              JUDGEMENT: 10/31/2006
------------------------------------------------------------------------
DEFENDANT  014: SANTIAGO MELISSA
               229 VINEYARD LANE           ATTORNEY:

               BIRMINGHAM, AL  35242-0000
               PHONE: (256)000-0000
ENTERED:  09/21/2006 ISSUED: 09/21/2006 TYPE:
SERVED:              ANSWERED:              JUDGEMENT: 10/31/2006
------------------------------------------------------------------------
DEFENDANT  015: SPARKMAN DAVID
               545 ROCKY FORD ROAD         ATTORNEY:

               HARTSELLE, AL  35640-0000
               PHONE: (256)000-0000
ENTERED:  09/21/2006 ISSUED: 09/21/2006 TYPE:   SHERIFF
SERVED:  10/12/2006 ANSWERED:              JUDGEMENT: 10/31/2006
------------------------------------------------------------------------
DEFENDANT  016: WALKER-MCGLOTHAN NATASHA
               3122 HIGHLAND LAKES RD      ATTORNEY:

               BIRMINGHAM, AL  35242-0000
               PHONE: (256)000-0000
ENTERED:  09/21/2006 ISSUED: 09/21/2006 TYPE:
SERVED:              ANSWERED:              JUDGEMENT: 10/31/2006
------------------------------------------------------------------------
DEFENDANT  017: WALLS RANDY
               7620 MACK HICKS RD          ATTORNEY:

               CLAY, AL  35048-0000
               PHONE: (256)000-0000
ENTERED:  09/21/2006 ISSUED: 09/21/2006 TYPE:
SERVED:              ANSWERED:              JUDGEMENT: 10/31/2006
------------------------------------------------------------------------

  09/21/2006   ASSIGNED TO JUDGE: ASSIGNED JUDGE .        (AV01)

  09/21/2006   ORIGIN: INITIAL FILING                     (AV01)

  09/21/2006   BENCH/NON-JURY TRIAL REQUESTED             (AV01)

  09/21/2006   CASE ASSIGNED STATUS OF: ACTIVE            (AV01)

  09/21/2006   BAILEY CLIFFORD ADDED AS C001              (AV02)

  09/21/2006   LISTED AS ATTORNEY FOR C001: KNIGHT THOMAS J(AV02)
------------------------------------------------------------------------
CYW   03/06/2007                               CV 2006 000145.00
```

Handwritten annotations: "not found" (by Defendant 013), "wrong person" (by Defendant 014), "not found" (by Defendant 016), "wrong person" (by Defendant 017).

```
AVSO351                                                    CV 2006 000145.00

                                              JUDGE: ASSIGNED JUDGE
--------------------------------------------------------------------
                ALABAMA JUDICIAL DATA CENTER
                   CASE ACTION SUMMARY
                      CIRCUIT CIVIL
--------------------------------------------------------------------
   IN THE CIRCUIT  COURT OF  RANDOLPH       COUNTY

   CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
   FILED:  09/21/2006 TYPE: BAD FAITH/FRAUD/MISR TYPE TRIAL: NON-JURY  TRACK:

*****************************************************************
DATE1:  04/04/2007  CA:                   CA DATE:
DATE2:              AMT:          $ .00  PAYMENT:
DATE3:
*****************************************************************
```

DEFENDANT  006: HENDERSON CHARLES
               3101 31 AVE N                    ATTORNEY:

               BIRMINGHAM, AL  35207-0000
                    PHONE: (256)000-0000
ENTERED:  09/21/2006 ISSUED:  09/21/2006 TYPE:
SERVED:            ANSWERED:              JUDGEMENT:  10/31/2006
--------------------------------------------------------------------
DEFENDANT  007: HODGES JULIE
               14019 MARIELLEN RD SW           ATTORNEY:

               HUNTSVILLE, AL  35803-0000
                    PHONE: (256)000-0000
ENTERED:  09/21/2006 ISSUED:  09/21/2006 TYPE:    SHERIFF
SERVED:            ANSWERED:              JUDGEMENT:  10/31/2006
--------------------------------------------------------------------
DEFENDANT  008: HOLMES KATHERINE
               2481 SAVOY STREET               ATTORNEY:

               HOOVER, AL  35226-0000
                    PHONE: (256)000-0000
ENTERED:  09/21/2006 ISSUED:  09/21/2006 TYPE:    SHERIFF
SERVED:            ANSWERED:              JUDGEMENT:  10/31/2006
--------------------------------------------------------------------
DEFENDANT  009: HOUSTON JAMES
               288 WESLEY DR                   ATTORNEY:

               OZARK, AL  36360-0000
                    PHONE: (256)000-0000
ENTERED:  09/21/2006 ISSUED:  09/21/2006 TYPE:    SHERIFF
SERVED:  10/03/2006 ANSWERED:            JUDGEMENT:  10/31/2006
--------------------------------------------------------------------
DEFENDANT  010: LOVETT LORI
               5612 5 TERRY ST                 ATTORNEY:

               BIRMINGHAM, AL  35212-0000
                    PHONE: (256)000-0000
ENTERED:  09/21/2006 ISSUED:  09/21/2006 TYPE:    SHERIFF
SERVED:            ANSWERED:              JUDGEMENT:  10/31/2006
--------------------------------------------------------------------
DEFENDANT  011: MELTON JULIE
               5309 AVE S                      ATTORNEY:

               BIRMINGHAM, AL  35212-0000
                    PHONE: (256)000-0000
ENTERED:  09/21/2006 ISSUED:  09/21/2006 TYPE:    SHERIFF
SERVED:            ANSWERED:              JUDGEMENT:  10/31/2006
--------------------------------------------------------------------
DEFENDANT  012: MITCHAM HENRY
               41919 MCDOWLING DR SE           ATTORNEY:

               HUNTSVILLE, AL  35803-0000
                    PHONE: (256)000-0000
ENTERED:  09/21/2006 ISSUED:  09/21/2006 TYPE:    SHERIFF
SERVED:            ANSWERED:              JUDGEMENT:  10/31/2006
--------------------------------------------------------------------
CYW    03/06/2007                              CV 2006 000145.00

*Handwritten annotations: "Wrong Address" (006), "not @ this address" (007), "Moved" (008), "wrong person" (009), "Insuff." (010), "Insuff address" (011), "not @ this address" (012)*

```
AVSO351                                              CV 2006 000145.00

                                                 JUDGE: ASSIGNED JUDGE
```

ALABAMA JUDICIAL DATA CENTER
CASE ACTION SUMMARY
CIRCUIT CIVIL

IN THE CIRCUIT COURT OF RANDOLPH COUNTY

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
FILED: 09/21/2006 TYPE: BAD FAITH/FRAUD/MISR TYPE TRIAL: NON-JURY   TRACK:

```
*******************************************************************
DATE1: 04/04/2007  CA:              CA DATE:
DATE2:             AMT:       $ .00 PAYMENT:
DATE3:
*******************************************************************
```

PLAINTIFF  008: SIKES HERBERT STANLEY          ATTORNEY: KNIGHT THOMAS J
                                               KNI009    P O DRAWER 1850
              , AL  00000-0000
              PHONE: (256)000-0000                       ANNISTON, AL  36202
ENTERED:  09/21/2006 ISSUED:        TYPE:                 (205)237-9586
SERVED:              ANSWERED:              JUDGEMENT: 10/31/2006

PLAINTIFF  009: THOMPSON PHILLIP               ATTORNEY: KNIGHT THOMAS J
                                               KNI009    P O DRAWER 1850
              , AL  00000-0000
              PHONE: (256)000-0000                       ANNISTON, AL  36202
ENTERED:  09/21/2006 ISSUED:        TYPE:                 (205)237-9586
SERVED:              ANSWERED:              JUDGEMENT: 10/31/2006

DEFENDANT  001: MERCK & CO INC
                C/O THE CORPORATION CO        ATTORNEY: GARRETT RICHARD B
                2000 INTERSTATE PK DR STE     GAR027    P O BOX 270
                MONTGOMERY, AL  36109-0000
                PHONE: (256)000-0000                     MONTGOMERY, AL  36101
ENTERED:  09/21/2006 ISSUED: 09/21/2006 TYPE: SHERIFF    (205)834-8480
SERVED:   10/05/2006 ANSWERED:              JUDGEMENT: 10/31/2006

DEFENDANT  002: BARTLETT SCOTT                 ATTORNEY:
                3255 CO RD 747
                ANNISTON, AL  36202-0000
                PHONE: (256)000-0000
ENTERED:  09/21/2006 ISSUED: 09/21/2006 TYPE:
SERVED:              ANSWERED:              JUDGEMENT: 10/31/2006
```

*no such street*

```
DEFENDANT  003: BAUER MELISSA                  ATTORNEY:
                512 CLAY STREET      wrong
                ALBERTVILLE, AL  35950-0000
                PHONE: (256)000-0000
ENTERED:  09/21/2006 ISSUED: 09/21/2006 TYPE:     SHERIFF
SERVED:              ANSWERED:              JUDGEMENT: 10/31/2006

DEFENDANT  004: DELK JASON
                1609 BENT RIVER CIRCLE         ATTORNEY:
                VESTAVIA HILLS , AL  35216-000
                PHONE: (256)000-0000
ENTERED:  09/21/2006 ISSUED: 09/21/2006 TYPE:     SHERIFF
SERVED:   10/11/2006 ANSWERED:              JUDGEMENT: 10/31/2006

DEFENDANT  005: HARPER CORAL
                220 63 ST S                    ATTORNEY:
                BIRMINGHAM, AL  35212-0000
                PHONE: (256)000-0000
ENTERED:  09/21/2006 ISSUED: 09/21/2006 TYPE:
SERVED:              ANSWERED:              JUDGEMENT: 10/31/2006
```

*doesn't live @ this address*

```
CYW   02/06/2007                                    CV 2006 000145.00
```



CV 2006 000145.00

AVSO351

JUDGE: ASSIGNED JUDGE

--------------------------------------------------------------
ALABAMA JUDICIAL DATA CENTER
CASE ACTION SUMMARY
CIRCUIT CIVIL
--------------------------------------------------------------
IN THE CIRCUIT COURT OF RANDOLPH          COUNTY

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
FILED: 09/21/2006 TYPE: BAD FAITH/FRAUD/MISR TYPE TRIAL: NON-JURY  TRACK:
*************************************************************
                                    CA DATE:
DATE1: 04/04/2007  CA:          $.00 PAYMENT:
DATE2:              AMT:
DATE3:
*************************************************************
PLAINTIFF 001: BAILEY CLIFFORD              ATTORNEY: KNIGHT THOMAS J
                                            KNI009    P O DRAWER 1850
           , AL  00000-0000                          ANNISTON, AL  36202
           PHONE: (256)000-0000                                (205)237-9586
                                            TYPE:
ENTERED: 09/21/2006 ISSUED:                 JUDGEMENT: 10/31/2006
SERVED:             ANSWERED:
--------------------------------------------------------------
PLAINTIFF 002: BLACK CLIFFORD               ATTORNEY: KNIGHT THOMAS J
                                            KNI009    P O DRAWER 1850
           , AL  00000-0000                          ANNISTON, AL  36202
           PHONE: (256)000-0000                                (205)237-9586
                                            TYPE:
ENTERED: 09/21/2006 ISSUED:                 JUDGEMENT: 10/31/2006
SERVED:             ANSWERED:
--------------------------------------------------------------
PLAINTIFF 003: CALHOUN WESLEY               ATTORNEY: KNIGHT THOMAS J
                                            KNI009    P O DRAWER 1850
           , AL  00000-0000                          ANNISTON, AL  36202
           PHONE: (256)000-0000                                (205)237-9586
                                            TYPE:
ENTERED: 09/21/2006 ISSUED:                 JUDGEMENT: 10/31/2006
SERVED:             ANSWERED:
--------------------------------------------------------------
PLAINTIFF 004: DEASON CURTIS                ATTORNEY: KNIGHT THOMAS J
                                            KNI009    P O DRAWER 1850
           , AL  00000-0000                          ANNISTON, AL  36202
           PHONE: (256)000-0000                                (205)237-9586
                                            TYPE:
ENTERED: 09/21/2006 ISSUED:                 JUDGEMENT: 10/31/2006
SERVED:             ANSWERED:
--------------------------------------------------------------
PLAINTIFF 005: GRAVES RUTH                  ATTORNEY: KNIGHT THOMAS J
                                            KNI009    P O DRAWER 1850
           , AL  00000-0000                          ANNISTON, AL  36202
           PHONE: (256)000-0000                                (205)237-9586
                                            TYPE:
ENTERED: 09/21/2006 ISSUED:                 JUDGEMENT: 10/31/2006
SERVED:             ANSWERED:
--------------------------------------------------------------
PLAINTIFF 006: GRIZZARD MICKEY              ATTORNEY: KNIGHT THOMAS J
                                            KNI009    P O DRAWER 1850
           , AL  00000-0000                          ANNISTON, AL  36202
           PHONE: (256)000-0000                                (205)237-9586
                                            TYPE:
ENTERED: 09/21/2006 ISSUED:                 JUDGEMENT: 10/31/2006
SERVED:             ANSWERED:
--------------------------------------------------------------
PLAINTIFF 007: PERRY JIMMY                  ATTORNEY: KNIGHT THOMAS J
                                            KNI009    P O DRAWER 1850
           , AL  00000-0000                          ANNISTON, AL  36202
           PHONE: (256)000-0000                                (205)237-9586
                                            TYPE:
ENTERED: 09/21/2006 ISSUED:                 JUDGEMENT: 10/31/2006
SERVED:             ANSWERED:
                                            CV 2006 000145.00
--------------------------------------------------------------

IN THE CIRCUIT COURT OF
RANDOLPH COUNTY, ALABAMA

| | | |
|---|---|---|
| CLIFFORD BAILEY, CLIFFORD BLACK, WESLEY CALHOUN, CURTIS DEASON, RUTH GRAVES, MICKEY GRIZZARD, JIMMY PERRY, HERBERT STANLEY SIKES, and PHILLIP THOMPSON, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | CASE NUMBER: CV-2006-145 |
| MERCK & CO., INC., a foreign or Domestic Corporation, DAVID SPARKMAN, KATHERINE HOLMES, LORI LOVETT, SCOTT BARTLETT, CORAL HARPER, MELISSA SANTIAGO, HENRY MITCHAM, JERRY PHARR, JASON DELK, CHARLES HENDERSON, JAMES HOUSTON, JULIE MELTON, JULIE HODGES, MELISSA BAUER, NATASHA WALKER-MCGLOTHAM, RANDY WELLS, and the Defendants A, B, C, D, E, X & Z whether singular or plural, being those persons, firms or entities who or which proximately caused or contributed to the Plaintiff's and Plaintiff's decedent's other harm and the other damages as complained of herein whose true names are unknown to the Plaintiff but will be added by amendment when correctly ascertained, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**Filed in Office**

FEB 13 2007

CHRIS MAY
Clerk of Circuit Court

## MERCK & CO., INC.'S NOTICE OF CANCELLATION OF CROSS-NOTICED VIDEO DEPOSITION OF JACQUELINE McCLARTY

PLEASE TAKE NOTICE that the deposition of Jacqueline McCarty, previously noticed for February 23, 2007, has been cancelled. You will be notified of the new date and time as soon as it is rescheduled.

_One of the Attorneys for Defendant,_
Merck & Co., Inc.

OF COUNSEL:

RUSHTON, STAKELY, JOHNSTON, & GARRETT, P.A.
Post Office Box 270
Montgomery, Alabama 36101-0270
Telephone:  (334) 206-3100
Facsimile: (334) 262-6277

## CERTIFICATE OF SERVICE

I hereby certify that I have served the above and foregoing document upon all interested parties by placing a copy of same in the United States Mail, postage prepaid and properly addressed on this the 12th day of February 2007, as follows:

James S. Hubbard
Thomas J. Knight
HUBBARD & KNIGHT
1125 Noble Street
Anniston, Alabama  36201

OF COUNSEL

# IN THE CIRCUIT COURT OF
## RANDOLPH COUNTY, ALABAMA

| | |
|---|---|
| CLIFFORD BAILEY, CLIFFORD BLACK, WESLEY CALHOUN, CURTIS DEASON, RUTH GRAVES, MICKEY GRIZZARD, JIMMY PERRY, HERBERT STANLEY SIKES, and PHILLIP THOMPSON, | ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) CASE NUMBER: CV-2006-145 |
| MERCK & CO., INC., a foreign or Domestic Corporation, DAVID SPARKMAN, KATHERINE HOLMES, LORI LOVETT, SCOTT BARTLETT, CORAL HARPER, MELISSA SANTIAGO, HENRY MITCHAM, JERRY PHARR, JASON DELK, CHARLES HENDERSON, JAMES HOUSTON, JULIE MELTON, JULIE HODGES, MELISSA BAUER, NATASHA WALKER-MCGLOTHAM, RANDY WELLS, and the Defendants A, B, C, D, E, X & Z whether singular or plural, being those persons, firms or entities who or which proximately caused or contributed to the Plaintiff's and Plaintiff's decedent's other harm and the other damages as complained of herein whose true names are unknown to the Plaintiff but will be added by amendment when correctly ascertained, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

**Filed in Office**

FEB 1 3 2007

CHRIS MAY
Clerk of Circuit Court

## MERCK & CO., INC.'S NOTICE OF CANCELLATION OF CROSS-NOTICED VIDEO DEPOSITION OF PAUL HOWES

PLEASE TAKE NOTICE that the deposition of Paul Howes, previously noticed for February 16, 2007, has been cancelled. You will be notified of the new date and time as soon as it is rescheduled.

_____

One of the Attorneys for Defendant,
Merck & Co., Inc.

OF COUNSEL:

RUSHTON, STAKELY, JOHNSTON, & GARRETT, P.A.
Post Office Box 270
Montgomery, Alabama 36101-0270
Telephone:  (334) 206-3100
Facsimile: (334) 262-6277

## CERTIFICATE OF SERVICE

I hereby certify that I have served the above and foregoing document upon all interested parties by placing a copy of same in the United States Mail, postage prepaid and properly addressed on this the 12th day of February 2007, as follows:

James S. Hubbard
Thomas J. Knight
HUBBARD & KNIGHT
1125 Noble Street
Anniston, Alabama  36201

_____

OF COUNSEL

LAW OFFICES

## RUSHTON, STAKELY, JOHNSTON, & GARRETT

A PROFESSIONAL ASSOCIATION
184 COMMERCE STREET
MONTGOMERY, ALABAMA 36104
Mailing Address:
P. O. Box 270
ZIP 36101
Telephone: (334) 206-3100
Writer's Direct Dial Number 206-3126
E-Mail Address: RGD@RSJG.COM

R. Austin Huffaker, Jr., Esq.
Shareholder

February 12, 2007

**Filed in Office**

Honorable Kim Benefield
**Randolph County Circuit Court Clerk**
P.O. Box 328
1 Main Street
Wedowee, Alabama 36278-0328

FEB 13 2007

CHRIS MAY
Clerk of Circuit Court

Re:   *Clifford Bailey, et al. v. Merck & Co., Inc., et al.*
      Circuit Court of Randolph County, AL/CV-06-145

Dear Ms. Benefield:

Please file the enclosed **Merck & Co., Inc.'s Notice of Cancellation of Cross-Noticed Video Deposition of Paul Howes Merck & Co., Inc.'s Notice of Cancellation of Cross-Noticed Video Deposition of Jacqueline McClarty** and  in the above referenced case and return the copies stamped "Filed" to me in the enclosed self-addressed stamped envelope.

Thank you for your cooperation.

Sincerely,

*Austin Huffaker*

R. Austin Huffaker, Jr.

RAHjr:cc
Enclosure

IN THE CIRCUIT COURT OF
RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, CLIFFORD BLACK,   )
WESLEY CALHOUN, CURTIS DEASON,   )
RUTH GRAVES, MICKEY GRIZZARD,   )
JIMMY PERRY, HERBERT STANLEY   )
SIKES, and PHILLIP THOMPSON,   )
   )
      Plaintiffs,   )
   )
v.   )   CASE NUMBER: CV-2006-145
   )
MERCK & CO., INC., a foreign or   )
Domestic Corporation, DAVID SPARKMAN,   )
KATHERINE HOLMES, LORI LOVETT,   )
SCOTT BARTLETT, CORAL HARPER,   )
MELISSA SANTIAGO, HENRY MITCHAM,   )
JERRY PHARR, JASON DELK, CHARLES   )
HENDERSON, JAMES HOUSTON, JULIE   )
MELTON, JULIE HODGES, MELISSA   )
BAUER, NATASHA WALKER-   )
MCGLOTHAM, RANDY WELLS, and   )
the Defendants A, B, C, D, E, X & Z   )
whether singular or plural, being those   )
persons, firms or entities who or which   )
proximately caused or contributed to the   )
Plaintiff's and Plaintiff's decedent's   )
other harm and the other damages as   )
complained of herein whose true names are   )
unknown to the Plaintiff but will be   )
added by amendment when correctly   )
ascertained,   )
   )
      Defendants.   )

**Filed In Office**

JAN 22 2007

CHRIS MAY
Clerk of Circuit Court

## NOTICE OF FILING DISCOVERY

TO:   Hon. Chris May
       Circuit Clerk of Randolph County
       P.O. Box 328
       1 Main Street
       Weedowee, Alabama 36278-0328

Please take notice that Defendant styled as Merck & Co., Inc., in the above-styled case has served the following discovery documents upon counsel for the parties:

1. First Set of Interrogatories to Plaintiff Ruth Graves Propounded by Merck & Co., Inc.

2. First Set of Interrogatories to Plaintiff Clifford Bailey Propounded by Merck & Co., Inc.

3. First Set of Interrogatories to Plaintiff Clifford Black Propounded by Merck & Co., Inc.

4. First Set of Interrogatories to Plaintiff Curtis Deason Propounded by Merck & Co., Inc.

5. First Set of Interrogatories to Plaintiff Herbert Stanley Sikes Propounded by Merck & Co., Inc.

6. First Set of Interrogatories to Plaintiff Jimmy Perry Propounded by Merck & Co., Inc.

7. First Set of Interrogatories to Plaintiff Mickey Grizzard Propounded by Merck & Co., Inc.

8. First Set of Interrogatories to Plaintiff Phillip Thompson Propounded by Merck & Co., Inc.

9. First Set of Interrogatories to Plaintiff Wesley Calhoun Propounded by Merck & Co., Inc.

10. First Set of Request for Production to Plaintiff Ruth Graves Propounded by Merck & Co., Inc.

11.    First Set of Request for Production to Plaintiff Clifford Bailey Propounded by Merck & Co., Inc.

12.    First Set of Request for Production to Plaintiff Clifford Black Propounded by Merck & Co., Inc.

13.    First Set of Request for Production to Plaintiff Curtis Deason Propounded by Merck & Co., Inc.

14.    First Set of Request for Production to Plaintiff Herbert Stanley Sikes Propounded by Merck & Co., Inc.

15.    First Set of Request for Production to Plaintiff Jimmy Perry Propounded by Merck & Co., Inc.

16.    First Set of Request for Production to Plaintiff Mickey Grizzard Propounded by Merck & Co., Inc.

17.    First Set of Request for Production to Plaintiff Phillip Thompson Propounded by Merck & Co., Inc.

18.    First Set of Request for Production to Plaintiff Wesley Calhoun Propounded by Merck & Co., Inc.

BEN C. WILSON
One of the Attorneys for Defendant,
Merck & Co., Inc.

OF COUNSEL:
Robert C. "Mike" Brock
F. Chadwick Morriss
Ben C. Wilson
Richard B. Garrett
RUSHTON, STAKELY, JOHNSTON, & GARRETT, P.A.
Post Office Box 270
Montgomery, Alabama 36101-0270
Telephone: (334) 206-3100
Facsimile: (334) 262-6277

- 3 -

## CERTIFICATE OF SERVICE

I hereby certify that I have served the above and foregoing document upon all interested parties by placing a copy of same in the United States Mail, postage prepaid and properly addressed on this the 18th day of January 2007, as follows:

James S. Hubbard
Thomas J. Knight
HUBBARD & KNIGHT
1125 Noble Street
Anniston, Alabama  36201

OF COUNSEL

- 4 -

LAW OFFICES

# RUSHTON, STAKELY, JOHNSTON & GARRETT, P.A.

A PROFESSIONAL ASSOCIATION

BENJAMIN C. WILSON
EMAIL: BCW@RSJG.COM
DIRECT TELEPHONE:
(334) 206-3194
DIRECT FACSIMILE:
(334) 481-0831

184 COMMERCE STREET
MONTGOMERY, ALABAMA  36104

MAILING ADDRESS:
POST OFFICE BOX 270
MONTGOMERY, ALABAMA  36101-0270

WWW.RSJG.COM

**Filed In Office**

JAN 2 2 2007

CHRIS MAY
Clerk of Circuit Court

January 18, 2007

Honorable Chris May
**Randolph County Circuit Court Clerk**
P.O. Box 328
1 Main Street
Wedowee, Alabama  36278-0328

Re:    *Clifford Bailey, et al. v. Merck & Co., Inc., et al.*
       Circuit Court of Randolph County, AL/CV-06-145

Dear Mr. May:

I have enclosed an original and a copy of a *Notice to the Circuit Court Clerk.*  Please file the original with the court and return a date-stamped to me.

Thank you for your assistance in this matter.

Sincerely yours,

BEN C. WILSON

BCW/dcr
Enclosures

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, et al.                    *

      Plaintiff,                           *

v.                                         *          CASE NO. CV-06-145

MERCK & CO., INC., et al.                  *

      Defendants.                          *

**Filed In Office**

JAN 1 2 2007

CHRIS MAY
Clerk of Circuit Court

## <u>NOTICE OF FILING DISCOVERY</u>

TO:    Hon. Kim S. Benefield
        Circuit Clerk of Randolph County
        P.O. Box 328
        1 Main Street
        Weedowee, Alabama 36278-0328

Please take notice that Defendant styled as Merck & Co., Inc., in the above-styled case has served the following discovery documents upon counsel for the parties:

1.    Merck & Co., Inc.'s Responses and Objections to the Document Requests Contained in Plaintiffs' Notice of Deposition of Defendant Merck & Co., Inc. Under Rule 30(b)(6).

2.    Merck & Co., Inc.'s Responses and Objections to the Document Requests Contained in Plaintiffs' Notice of Deposition of Susan Brunstetter.

_____
BEN C. WILSON
One of the Attorneys for Defendant,
Merck & Co., Inc.

OF COUNSEL:
Robert C. "Mike" Brock
F. Chadwick Morriss
Ben C. Wilson
Richard B. Garrett
RUSHTON, STAKELY, JOHNSTON, & GARRETT, P.A.
Post Office Box 270
Montgomery, Alabama 36101-0270
Telephone: (334) 206-3100
Facsimile: (334) 262-6277

### CERTIFICATE OF SERVICE

I hereby certify that I have served the above and foregoing document upon all interested parties by placing a copy of same in the United States Mail, postage prepaid and properly addressed on this the 11th day of January 2007, as follows:

James S. Hubbard
Thomas J. Knight
HUBBARD & KNIGHT
1125 Noble Street
Anniston, Alabama  36201

OF COUNSEL

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, et al.                    *
                                           *
        Plaintiff,                         *
                                           *
v.                                         *      CASE NO. CV-06-**Filed in Office**
                                           *
MERCK & CO., INC., et al.                  *      JAN 1 2 2007
                                           *
        Defendants.                        *      CHRIS MAY
                                                  Clerk of Circuit Court

**MERCK & CO., INC.'S RESPONSES AND OBJECTIONS TO THE DOCUMENT
REQUESTS CONTAINED IN PLAINTIFFS' NOTICE OF DEPOSITION OF
DEFENDANT MERCK & COMPANY INC. UNDER RULE 30(b)(6)**

Merck & Co., Inc. ("Merck"), by its attorneys, responds and objects to the document

requests contained in Plaintiffs' Notice of Deposition of Defendant Merck & Company Inc.

Under Rule 30(b)(6) (the "Requests") as follows.  These responses and objections are made only

to the request for documents; all objections to testimony are reserved.

## GENERAL OBJECTIONS

1.      Merck objects to these Requests to the extent they are vague, ambiguous,

argumentative, unreasonably cumulative or duplicative, overly broad, unduly burdensome or

oppressive, or seek information or documents that are not relevant to the claims or defenses of

any party or to the subject matter involved in this action, nor reasonably calculated to lead to the

discovery of admissible evidence.  Merck further objects to these Requests to the extent they

seek information or documents beyond those permitted by the Alabama Rules of Civil Procedure

or any applicable Order of this Court.

2.    Merck objects to these Requests to the extent they seek information or documents protected from discovery by the attorney-client privilege, the work product doctrine, or otherwise immune or protected from disclosure. Merck does not intend to waive any applicable protections or privileges through the supplying of information or production of documents in response to these Requests. On the contrary, Merck specifically intends to preserve any and all applicable protections or privileges.

3.    Inadvertent production of any document shall not constitute a waiver of any privilege or any other ground for objecting to discovery with respect to such document or any other document, or with respect to the subject matter thereof or the information contained therein; nor shall such inadvertent production waive Merck's right to demand that such documents be returned or to object to the use of the document or the information contained therein during this or any other proceeding.

4.    Merck objects to these Requests to the extent they seek information or documents generated in the course of the defense of this action or any other action regarding Vioxx®. Merck will not produce such information or documents.

5.    Merck objects to these Requests as overly broad and unduly burdensome to the extent they call for the identification of "all" documents or "any and all" documents when all relevant facts can be obtained from fewer than "all" documents or "any and all" documents. Merck objects further to these Requests to the extent they seek documents other than those that can be located upon a search of files where such documents reasonably can be expected to be found. Merck does not consider as Vioxx documents and does not generally produce those documents that primarily relate to another Merck drug, that describe general Merck operating

procedures and practices, or that are company-wide or divisional budgets, forecasts, departmental evaluations and documents setting forth departmental goals, human resource allocations, and the like, although the documents may have Vioxx references.

6.    Merck objects to these Requests as overly broad, unduly burdensome and oppressive, and as seeking information or documents that are not relevant to the claims or defenses of any party or to the subject matter involved in this action, nor reasonably calculated to lead to the discovery of admissible evidence, to the extent they seek information or documents:

a.    Pertaining to Merck products other than Vioxx (by whatever name it is known, including L-748,731 and MK-966), the product that any plaintiff or plaintiff's decedent allegedly ingested (however, this objection does not apply to information about another drug that is necessary to understand something about Vioxx, such as where the other drug is being used as a comparator in a Vioxx study or to documents regarding a competing NSAID manufactured by another company or to documents that discuss NSAIDs generally); or

b.    Pertaining to alleged adverse experiences associated with Vioxx other than the adverse experiences any plaintiff claims Vioxx caused; or

c.    Pertaining to promotion or advertising other than what any plaintiff, plaintiff's decedent, and/or plaintiff's prescribing physician claims to have relied upon.

Except where otherwise indicated, Merck will not produce such information or documents.

7.    Merck objects to these Requests to the extent they seek Merck's chemistry and manufacturing control information on the grounds that such information is highly confidential and proprietary, consists of trade secrets and is not relevant to the claims or defenses of any party or to the subject matter involved in this action, nor reasonably calculated to lead to the discovery of admissible evidence. Merck will not produce such information.

8.    Merck objects to the Requests to the extent they seek any other confidential or proprietary information or trade secrets. Merck will only produce such other confidential or proprietary information or trade secrets, if relevant, subject to and in reliance on the protective order in this case, and in some cases, only with additional confidentiality protections. In accordance with this objection, Merck notes that for a limited number of high-level documents, such as Board and certain committee minutes, and for certain members of senior management, Merck redacts as irrelevant any information that is not Vioxx-specific.

9.    Merck objects to these Requests as overly broad and unduly burdensome to the extent they purport to seek information or documents without regard to a specific timeframe or date cut-off. Where not otherwise specified in response to a specific request, Merck will produce information or documents generated up to and including the date set by the Court. The production of such information or documents shall be subject to and without waiver of any of the objections stated herein, and shall not be deemed to be an admission on the part of Merck that such information or documents are either relevant or admissible. Indeed, Merck specifically

- 4 -

notes that information or documents generated after any plaintiff last ingested Vioxx are unlikely to be relevant or admissible at the trial of this matter.

10.    Merck objects to these Requests as improper to the extent they seek the production of documents and/or data concerning foreign Vioxx information. Specifically Merck objects to any Request that calls for information or documents relating to Merck's business or practices outside of the fifty United States and the District of Columbia, such as the sale, marketing, competitive landscape, or regulation of Vioxx in foreign countries, including regulatory submissions to foreign agencies.    Except where otherwise indicated, Merck's responses will be limited to information and documents about its business or practices in the fifty United States and the District of Columbia.  This objection does not include: (1) documents (other than submissions to foreign agencies and correspondence about those submissions) that contain Vioxx science or report on scientific studies, regardless of where in the world the studies were conducted; (2) documents concerning scientific presentations about Vioxx made at medical conferences held outside the United States, such as EULAR; (3) information about adverse experiences reported to have occurred outside the United States; or (4) foreign regulatory documents if Merck also submitted them to the FDA, such as the periodic safety update reports. Additionally, Merck will not redact foreign information relating to Vioxx from the documents it is producing, except where necessary to protect trade secrets or to preserve other objections. Merck states that the purposes of, and standards used by, foreign governments and their respective judicial systems can materially differ from the rules of procedure and evidence, as well as the substantive law, applicable in private products liability actions pending in the United States. Merck objects to producing documents other than as set forth above.

- 5 -

11.    Merck objects to these Requests to the extent they seek personnel files, self-evaluations, evaluations by others, documents regarding promotions, financial disclosures or other information such as social security numbers, computer passwords, home telephone numbers and other private information, on the grounds that disclosure would invade the privacy rights of the individuals affected and are not relevant to the claims or defenses of any party or to the subject matter involved in this action, nor reasonably calculated to lead to the discovery of admissible evidence.  Merck will not produce such documents or information.  Merck further objects to these Requests to the extent they purport to require Merck to disclose the identity of any individual who allegedly experienced an adverse reaction to Vioxx or who reported such a reaction on the ground that such disclosure would violate the patient or reporter's right to confidentiality under federal law.  Pursuant to 21 C.F.R. §§ 312.130, 314.430(e) and 20.63(f), Merck will redact from any document produced in this litigation names and any information that would identify the person using the product and names and any information that would identify any third party involved with the report, such as a physician, hospital or other institution.

12.    Merck objects to these Requests to the extent they call for information or documents regarding adverse experiences allegedly caused by Vioxx.  Pursuant to 21 C.F.R. §§ 312.32 and 314.80, Merck collects information on adverse experiences that are temporally associated with a patient's treatment with Vioxx and reports those adverse experiences to the FDA without regard to whether Vioxx causes such adverse experiences.  The reporting of an adverse experience does not reflect a conclusion by Merck or the FDA that Vioxx caused or contributed to the experience.

- 6 -

13.     Merck objects to these Requests to the extent they purport to require Merck to provide a compilation, abstract, audit, and/or other document summary that does not currently exist.

14.     Merck objects to these Requests to the extent they call for information or documents that are outside of Merck's possession, custody or control, in the possession of third parties, and/or in the public domain or otherwise obtainable from another source that is more convenient, less burdensome or less expensive.

15.     Merck is responding to these Requests without waiving or intending to waive, but on the contrary, preserving and intending to preserve: (a) the right to object, on the grounds of competency, privilege, relevance, or materiality, or any other proper grounds, to the use of such documents or information for any purpose, in whole or in part, in any subsequent proceedings, in this action or in any other action; (b) the right to object on all grounds, at any time, to document requests, interrogatories, or other discovery procedures involving or relating to the subject of the requests to which Merck has responded herein; and (c) the right at any time to revise, correct, add to or clarify any of the answers made herein.

16.     Merck objects to these Requests to the extent they seek documents or information regarding current, planned, or future studies, on the grounds that such discovery could impair Merck's ability to conduct such studies and cause injury to Merck's business interests, particularly where final decisions have yet to be made.  Merck objects generally to any request for studies not limited to relevant Vioxx-related clinical or pre-clinical studies.

17.     Because of the overly broad nature of these Requests, it is not possible for Merck to anticipate all possible grounds for objection with respect to the particular requests set forth

herein. Merck reserves the right to supplement or correct these responses and to raise any additional objections deemed necessary and appropriate in light of the results of any further review.

## PRODUCTION OF DOCUMENTS

Subject to and in reliance upon a protective order to be entered in this case, and in some cases, additional confidentiality protections, Merck will produce any responsive, non-objectionable documents on CD-ROMs, portable hard drive or other electronic format as ".tiff" images, together with an associated IPRO "load" file. Merck reserves the right to seek reimbursement for costs associated with the production of documents.

The documents Merck may produce from an individual's files consist of those non-objectionable Vioxx documents located upon a search of that individual's (1) paper files likely to contain Vioxx documents, (2) e-mail, and (3) electronic documents from the individual's desktop computers and network "home" drives, but not other shared drives or databases to which the individual may have access. With respect to categories (2) and (3), Merck has collected electronic documents from the individual's files or folders reasonably believed to contain Vioxx documents and those electronic documents from the individual's other files or folders found in a search designed to select Vioxx documents. Merck collects and converts to .tiff format electronic documents in any of over 490 file types of graphics, PDF, presentation, projects, spreadsheet, text, web page, and word processing documents. These include the most common file types, such as Adobe Acrobat and Microsoft Word, Excel, and PowerPoint files as well as many lesser-known file types. However, Merck cannot convert to .tiff format certain electronic file types, such as database files, including Microsoft Access certain SAS files, Microsoft

- 8 -

Outlook calendars, and embedded documents within Microsoft Word files. Merck excludes from production or redacts certain categories of documents as outside the scope of permissible discovery as described in its general and specific objections.

Merck also redacts information generated by an automatically updating field, such as an auto-date, because the information that would appear on the printed page is unrelated to anything the owner of the document would have ever seen.

## RESPONSE TO INDIVIDUAL REQUESTS

Merck incorporates its General Objections in the responses that follow. Any specific objections set forth in the responses are in addition to those objections and, unless otherwise specified, Merck's responses are limited in accordance with each of its objections. To the extent that Merck offers to produce confidential information or documents, Merck will only do so subject to and in reliance on the Protective Order entered in this case.

## REQUEST FOR PRODUCTION NO. 1:

All records of Alabama Vioxx sales representatives which records are available to the said witness and/or to the Defendants, which would show:

    a.    attendance by sales representative at any Vioxx related meeting, function, or event,

    b.    expense accounts, travel records, and similar records for such sales representative during the times when the sales representatives were detailing Vioxx,

c.   records concerning program materials or other such items utilized at any time in connection with Vioxx promotion, detaining [*sic*], or information providing,

d.   call notes,

e.   other records including handwritten notes, memos, email, faxes, or other preserved matter of any kind or description which in anyway shows, reveals, discloses, relates to communication to and in connection with Alabama Vioxx detailmen or sales representative, or between them and any physician or physicians group or representatives doing business in Alabama.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 1:

Merck objects to this Request on the grounds that it is argumentative, vague and ambiguous, particularly with respect to the terms "sales representatives," "detailing," and "detailmen." Merck objects further to this Request on the grounds that it is overly broad, unduly burdensome, compound, and not relevant to the claims or defenses of any party or to the subject matter involved in this action, nor reasonably calculated to lead to the discovery of admissible evidence, particularly insofar as it is not limited to documents or information related to the professional representative(s) who called on Plaintiffs' prescribing physician(s) with respect to Vioxx during the relevant time period.

## REQUEST FOR PRODUCTION NO. 2:

All records of persons who would have any of the above records if the Defendants do not produce the same and all records showing the custodian of the above described records.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 2:

Merck objects to this Request on the grounds that it is vague, ambiguous, and fails to identify the documents sought to be produced with reasonable particularity. Merck objects further to this Request on the grounds that it is overly broad, unduly burdensome, and not relevant to the claims or defenses of any party or to the subject matter involved in this action, nor reasonably calculated to lead to the discovery of admissible evidence, particularly insofar as it is not limited to information or documents related to the professional representative(s) who called on Plaintiffs' prescribing physician(s) with respect to Vioxx during the relevant time period.

## REQUEST FOR PRODUCTION NO. 3:

The location, address, and service information as to each of the sales representative Defendants named in this civil action.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 3:

Merck objects to this Request on the grounds that it is argumentative, vague and ambiguous, particularly with respect to the term "sales representatives." Merck objects further to this Request on the grounds that it is overly broad, unduly burdensome, compound, and not relevant to the claims or defenses of any party or to the subject matter involved in this action, nor

- 11 -

reasonably calculated to lead to the discovery of admissible evidence, particularly insofar as it is not limited to information or documents related to the professional representative(s) who called on Plaintiffs' prescribing physician(s) with respect to Vioxx during the relevant time period.

## REQUEST FOR PRODUCTION NO. 4:

All records pertaining to such sales representative Defendants including all W2, W1099, and other tax-related records which may or might show any address or location for said parties, all employee records of or pertaining to said employees, former employees, or sales representative, especially those showing any contact information, relatives' names, addresses, telephone numbers, or other contact information, last know addresses of all sales representative Defendants, meeting lists, sites, locations, whereat any such sales representative Defendants have or are in the future to attend any meetings, events, locations, sales calls, or other similar matters which show where said sales representatives have been at work, or will be in the future, and any other record, documents, or other item containing information concerning the whereabouts, at anytime, or any said sales representative Defendants.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 4:

Merck objects to this Request on the grounds that it is argumentative, vague and ambiguous, particularly with respect to the term "sales representatives." Merck objects further to this Request on the grounds that it is overly broad, unduly burdensome, compound, and not relevant to the claims or defenses of any party or to the subject matter involved in this action, nor reasonably calculated to lead to the discovery of admissible evidence, particularly insofar as it is

not limited to information or documents related to the professional representative(s) who called on Plaintiffs' prescribing physician(s) with respect to Vioxx during the relevant time period.

## REQUEST FOR PRODUCTION NO. 5:

Any other matter pertaining to such sales representative Defendants, mentioning or naming them, or showing any such place or location for said sales representative Defendants at any time.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 5:

Merck objects to this Request on the grounds that it is argumentative, vague and ambiguous, particularly with respect to the term "sales representatives." Merck objects further to this Request on the grounds that it is overly broad, unduly burdensome, compound, and not relevant to the claims or defenses of any party or to the subject matter involved in this action, nor reasonably calculated to lead to the discovery of admissible evidence, particularly insofar as it is not limited to information or documents related to the professional representative(s) who called on Plaintiffs' prescribing physician(s) with respect to Vioxx during the relevant time period.

_____

BEN C. WILSON
One of the Attorneys for Defendant,
Merck & Co., Inc.

OF COUNSEL:
Robert C. "Mike" Brock
F. Chadwick Morriss
Ben C. Wilson
Richard B. Garrett
RUSHTON, STAKELY, JOHNSTON, & GARRETT, P.A.
Post Office Box 270
Montgomery, Alabama 36101-0270
Telephone: (334) 206-3100 .
Facsimile: (334) 262-6277

- 13 -

## CERTIFICATE OF SERVICE

I hereby certify that I have served the above and foregoing document upon all interested parties by placing a copy of same in the United States Mail, postage prepaid and properly addressed on this the 11th day of January 2007, as follows:

James S. Hubbard
Thomas J. Knight
HUBBARD & KNIGHT
1125 Noble Street
Anniston, Alabama 36201

OF COUNSEL

- 14 -

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, et al.                    *

    Plaintiff,                         *

v.                                         *     CASE NO. CV-06-145

MERCK & CO., INC., et al.                  *

    Defendants.                        *

**Filed In Office**

JAN 1 2 2007

CHRIS MAY
Clerk of Circuit Court

## MERCK & CO., INC.'S RESPONSES AND OBJECTIONS TO THE DOCUMENT REQUESTS CONTAINED IN PLAINTIFFS' NOTICE OF DEPOSITION OF SUSAN J. BRUNSTETTER

    Merck & Co., Inc. ("Merck"), by and through its attorneys, responds and objects to the document requests contained in Plaintiffs' Notice of Deposition of Susan J. Brunstetter (the "Requests") as follows. These responses and objections are made only to the request for documents; all objections to testimony are reserved.

## GENERAL OBJECTIONS

    1.    Merck objects to these Requests to the extent they are vague, ambiguous, argumentative, unreasonably cumulative or duplicative, overly broad, unduly burdensome or oppressive, or seek information or documents that are not relevant to the claims or defenses of any party or to the subject matter involved in this action, nor reasonably calculated to lead to the discovery of admissible evidence. Merck further objects to these Requests to the extent they seek information or documents beyond those permitted by the Alabama Rules of Civil Procedure or any applicable Order of this Court.

    2.    Merck objects to these Requests to the extent they seek information or documents protected from discovery by the attorney-client privilege, the work product doctrine, or otherwise

immune or protected from disclosure. Merck does not intend to waive any applicable protections or privileges through the supplying of information or production of documents in response to these Requests. On the contrary, Merck specifically intends to preserve any and all applicable protections or privileges.

3.    Inadvertent production of any document shall not constitute a waiver of any privilege or any other ground for objecting to discovery with respect to such document or any other document, or with respect to the subject matter thereof or the information contained therein; nor shall such inadvertent production waive Merck's right to demand that such documents be returned or to object to the use of the document or the information contained therein during this or any other proceeding.

4.    Merck objects to these Requests to the extent they seek information or documents generated in the course of the defense of this action or any other action regarding Vioxx®. Merck will not produce such information or documents.

5.    Merck objects to these Requests as overly broad and unduly burdensome to the extent they call for the identification of "all" documents or "any and all" documents when all relevant facts can be obtained from fewer than "all" documents or "any and all" documents. Merck objects further to these Requests to the extent they seek documents other than those that can be located upon a search of files where such documents reasonably can be expected to be found. Merck does not consider as Vioxx documents and does not generally produce those documents that primarily relate to another Merck drug, that describe general Merck operating procedures and practices, or that are company-wide or divisional budgets, forecasts,

- 2 -

departmental evaluations and documents setting forth departmental goals, human resource allocations, and the like, although the documents may have Vioxx references.

6.    Merck objects to these Requests as overly broad, unduly burdensome and oppressive, and as seeking information or documents that are not relevant to the claims or defenses of any party or to the subject matter involved in this action, nor reasonably calculated to lead to the discovery of admissible evidence, to the extent they seek information or documents:

a.    Pertaining to Merck products other than Vioxx (by whatever name it is known, including L-748,731 and MK-966), the product that any plaintiff or plaintiff's decedent allegedly ingested (however, this objection does not apply to information about another drug that is necessary to understand something about Vioxx, such as where the other drug is being used as a comparator in a Vioxx study or to documents regarding a competing NSAID manufactured by another company or to documents that discuss NSAIDs generally); or

b.    Pertaining to alleged adverse experiences associated with Vioxx other than the adverse experiences any plaintiff claims Vioxx caused; or

c.    Pertaining to promotion or advertising other than what any plaintiff, plaintiff's decedent, and/or plaintiff's prescribing physician claims to have relied upon.

Except where otherwise indicated, Merck will not produce such information or documents.

7.      Merck objects to these Requests to the extent they seek Merck's chemistry and manufacturing control information on the grounds that such information is highly confidential and proprietary, consists of trade secrets and is not relevant to the claims or defenses of any party or to the subject matter involved in this action, nor reasonably calculated to lead to the discovery of admissible evidence. Merck will not produce such information.

8.      Merck objects to the Requests to the extent they seek any other confidential or proprietary information or trade secrets.  Merck will only produce such other confidential or proprietary information or trade secrets, if relevant, subject to and in reliance on the protective order in this case, and in some cases, only with additional confidentiality protections.  In accordance with this objection, Merck notes that for a limited number of high-level documents, such as Board and certain committee minutes, and for certain members of senior management, Merck redacts as irrelevant any information that is not Vioxx-specific.

9.      Merck objects to these Requests as overly broad and unduly burdensome to the extent they purport to seek information or documents without regard to a specific timeframe or date cut-off. Where not otherwise specified in response to a specific request, Merck will produce information or documents generated up to and including the date set by the Court.  The production of such information or documents shall be subject to and without waiver of any of the objections stated herein, and shall not be deemed to be an admission on the part of Merck that such information or documents are either relevant or admissible.  Indeed, Merck specifically notes that information or documents generated after any plaintiff last ingested Vioxx are unlikely to be relevant or admissible at the trial of this matter.

10.    Merck objects to these Requests as improper to the extent they seek the production of documents and/or data concerning foreign Vioxx information. Specifically Merck objects to any Request that calls for information or documents relating to Merck's business or practices outside of the fifty United States and the District of Columbia, such as the sale, marketing, competitive landscape, or regulation of Vioxx in foreign countries, including regulatory submissions to foreign agencies.    Except where otherwise indicated, Merck's responses will be limited to information and documents about its business or practices in the fifty United States and the District of Columbia.    This objection does not include: (1) documents (other than submissions to foreign agencies and correspondence about those submissions) that contain Vioxx science or report on scientific studies, regardless of where in the world the studies were conducted; (2) documents concerning scientific presentations about Vioxx made at medical conferences held outside the United States, such as EULAR; (3) information about adverse experiences reported to have occurred outside the United States; or (4) foreign regulatory documents if Merck also submitted them to the FDA, such as the periodic safety update reports. Additionally, Merck will not redact foreign information relating to Vioxx from the documents it is producing, except where necessary to protect trade secrets or to preserve other objections. Merck states that the purposes of, and standards used by, foreign governments and their respective judicial systems can materially differ from the rules of procedure and evidence, as well as the substantive law, applicable in private products liability actions pending in the United States. Merck objects to producing documents other than as set forth above.

11.    Merck objects to these Requests to the extent they seek personnel files, self-evaluations, evaluations by others, documents regarding promotions, financial disclosures or other information such as social security numbers, computer passwords, home telephone

numbers and other private information, on the grounds that disclosure would invade the privacy rights of the individuals affected and are not relevant to the claims or defenses of any party or to the subject matter involved in this action, nor reasonably calculated to lead to the discovery of admissible evidence. Merck will not produce such documents or information. Merck further objects to these Requests to the extent they purport to require Merck to disclose the identity of any individual who allegedly experienced an adverse reaction to Vioxx or who reported such a reaction on the ground that such disclosure would violate the patient or reporter's right to confidentiality under federal law. Pursuant to 21 C.F.R. §§ 312.130, 314.430(e) and 20.63(f), Merck will redact from any document produced in this litigation names and any information that would identify the person using the product and names and any information that would identify any third party involved with the report, such as a physician, hospital or other institution.

12.     Merck objects to these Requests to the extent they call for information or documents regarding adverse experiences allegedly caused by Vioxx. Pursuant to 21 C.F.R. §§ 312.32 and 314.80, Merck collects information on adverse experiences that are temporally associated with a patient's treatment with Vioxx and reports those adverse experiences to the FDA without regard to whether Vioxx causes such adverse experiences. The reporting of an adverse experience does not reflect a conclusion by Merck or the FDA that Vioxx caused or contributed to the experience.

13.     Merck objects to these Requests to the extent they purport to require Merck to provide a compilation, abstract, audit, and/or other document summary that does not currently exist.

14.    Merck objects to these Requests to the extent they call for information or documents that are outside of Merck's possession, custody or control, in the possession of third parties, and/or in the public domain or otherwise obtainable from another source that is more convenient, less burdensome or less expensive.

15.    Merck is responding to these Requests without waiving or intending to waive, but on the contrary, preserving and intending to preserve: (a) the right to object, on the grounds of competency, privilege, relevance, or materiality, or any other proper grounds, to the use of such documents or information for any purpose, in whole or in part, in any subsequent proceedings, in this action or in any other action; (b) the right to object on all grounds, at any time, to document requests, interrogatories, or other discovery procedures involving or relating to the subject of the requests to which Merck has responded herein; and (c) the right at any time to revise, correct, add to or clarify any of the answers made herein.

16.    Merck objects to these Requests to the extent they seek documents or information regarding current, planned, or future studies, on the grounds that such discovery could impair Merck's ability to conduct such studies and cause injury to Merck's business interests, particularly where final decisions have yet to be made.  Merck objects generally to any request for studies not limited to relevant Vioxx-related clinical or pre-clinical studies.

17.    Because of the overly broad nature of these Requests, it is not possible for Merck to anticipate all possible grounds for objection with respect to the particular requests set forth herein.  Merck reserves the right to supplement or correct these responses and to raise any additional objections deemed necessary and appropriate in light of the results of any further review.

## PRODUCTION OF DOCUMENTS

Subject to and in reliance upon the protective order to be entered in this case, and in some cases, additional confidentiality protections, Merck will produce any responsive, non-objectionable documents on CD-ROMs, portable hard drive or other electronic format as ".tiff" images, together with an associated IPRO "load" file. Merck reserves the right to seek reimbursement for costs associated with the production of documents.

The documents Merck may produce from an individual's files consist of those non-objectionable Vioxx documents located upon a search of that individual's (1) paper files likely to contain Vioxx documents, (2) e-mail, and (3) electronic documents from the individual's desktop computers and network "home" drives, but not other shared drives or databases to which the individual may have access. With respect to categories (2) and (3), Merck has collected electronic documents from the individual's files or folders reasonably believed to contain Vioxx documents and those electronic documents from the individual's other files or folders found in a search designed to select Vioxx documents. Merck collects and converts to .tiff format electronic documents in any of over 490 file types of graphics, PDF, presentation, projects, spreadsheet, text, web page, and word processing documents. These include the most common file types, such as Adobe Acrobat and Microsoft Word, Excel, and PowerPoint files as well as many lesser-known file types. However, Merck cannot convert to .tiff format certain electronic file types, such as database files, including Microsoft Access certain SAS files, Microsoft Outlook calendars, and embedded documents within Microsoft Word files. Merck excludes from production or redacts certain categories of documents as outside the scope of permissible discovery as described in its general and specific objections.

Merck also redacts information generated by an automatically updating field, such as an auto-date, because the information that would appear on the printed page is unrelated to anything the owner of the document would have ever seen.

## RESPONSE TO INDIVIDUAL REQUESTS

Merck incorporates its General Objections in the responses that follow. Any specific objections set forth in the responses are in addition to those objections and, unless otherwise specified, Merck's responses are limited in accordance with each of its objections. To the extent that Merck offers to produce confidential information or documents, Merck will only do so subject to and in reliance on the Protective Order entered in this case.

## REQUEST FOR PRODUCTION NO. 1:

All records of Alabama Vioxx sales representatives which records are available to the said witness and/or to the Defendants, which would show:

a.    attendance by sales representative at any Vioxx related meeting, function, or event,

b.    ~~expense accounts, travel records, and similar records for such sales~~ representative during the times when the sales representatives were detailing Vioxx,

c.    records concerning program materials or other such items utilized at any time in connection with Vioxx promotion, detaining [*sic*], or information providing,

d.    call notes,

e.    other records including handwritten notes, memos, email, faxes, or other

preserved matter of any kind or description which in anyway shows, reveals,

discloses, relates to communication to and in connection with Alabama Vioxx

detailmen or sales representative, or between them and any physician or

physicians group or representatives doing business in Alabama.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 1:

Merck objects to this Request on the grounds that it is argumentative, vague and

ambiguous, particularly with respect to the terms "sales representatives," "detailing," and

"detailmen." Merck objects further to this Request on the grounds that it is overly broad, unduly

burdensome, compound, and not relevant to the claims or defenses of any party or to the subject

matter involved in this action, nor reasonably calculated to lead to the discovery of admissible

evidence, particularly insofar as it is not limited to information or documents related to the

professional representative(s) who called on Plaintiffs' prescribing physician(s) with respect to

Vioxx during the relevant time period.

## REQUEST FOR PRODUCTION NO. 2:

All records of persons who would have any of the above records if the Defendants

do not produce the same and all records showing the custodian of the above described

records.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 2:

Merck objects to this Request on the grounds that it is vague, ambiguous, and fails to

identify the documents sought to be produced with reasonable particularity.  Merck objects

further to this Request on the grounds that it is overly broad, unduly burdensome, and not

relevant to the claims or defenses of any party or to the subject matter involved in this action, nor

reasonably calculated to lead to the discovery of admissible evidence, particularly insofar as it is

not limited to information or documents related to the professional representative(s) who called

on Plaintiffs' prescribing physician(s) with respect to Vioxx during the relevant time period.

_____
BEN C. WILSON
One of the Attorneys for Defendant,
Merck & Co., Inc.

OF COUNSEL:
Robert C. "Mike" Brock
F. Chadwick Morriss
Ben C. Wilson
Richard B. Garrett
RUSHTON, STAKELY, JOHNSTON, & GARRETT, P.A.
Post Office Box 270
Montgomery, Alabama 36101-0270
Telephone: (334) 206-3100
Facsimile: (334) 262-6277

## CERTIFICATE OF SERVICE

I hereby certify that I have served the above and foregoing document upon all interested parties by placing a copy of same in the United States Mail, postage prepaid and properly addressed on this the 11th day of January 2007, as follows:

James S. Hubbard
Thomas J. Knight
HUBBARD & KNIGHT
1125 Noble Street
Anniston, Alabama 36201

_____
OF COUNSEL

- 11 -

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, et al.                    *

      Plaintiff,                          *

v.                                          *        CASE NO. CV-06-145

MERCK & CO., INC., et al.                   *

      Defendants.                        *

**Filed In Office**

JAN 1 2 2007

CHRIS MAY
Clerk of Circuit Court

## MERCK & CO., INC.'S RESPONSES AND OBJECTIONS TO THE DOCUMENT REQUESTS CONTAINED IN PLAINTIFFS' NOTICE OF DEPOSITION OF SUSAN J. BRUNSTETTER

    Merck & Co., Inc. ("Merck"), by and through its attorneys, responds and objects to the document requests contained in Plaintiffs' Notice of Deposition of Susan J. Brunstetter (the "Requests") as follows. These responses and objections are made only to the request for documents; all objections to testimony are reserved.

## GENERAL OBJECTIONS

    1.    Merck objects to these Requests to the extent they are vague, ambiguous, argumentative, unreasonably cumulative or duplicative, overly broad, unduly burdensome or oppressive, or seek information or documents that are not relevant to the claims or defenses of any party or to the subject matter involved in this action, nor reasonably calculated to lead to the discovery of admissible evidence. Merck further objects to these Requests to the extent they seek information or documents beyond those permitted by the Alabama Rules of Civil Procedure or any applicable Order of this Court.

    2.    Merck objects to these Requests to the extent they seek information or documents protected from discovery by the attorney-client privilege, the work product doctrine, or otherwise

immune or protected from disclosure. Merck does not intend to waive any applicable protections or privileges through the supplying of information or production of documents in response to these Requests. On the contrary, Merck specifically intends to preserve any and all applicable protections or privileges.

3.    Inadvertent production of any document shall not constitute a waiver of any privilege or any other ground for objecting to discovery with respect to such document or any other document, or with respect to the subject matter thereof or the information contained therein; nor shall such inadvertent production waive Merck's right to demand that such documents be returned or to object to the use of the document or the information contained therein during this or any other proceeding.

4.    Merck objects to these Requests to the extent they seek information or documents generated in the course of the defense of this action or any other action regarding Vioxx®. Merck will not produce such information or documents.

5.    Merck objects to these Requests as overly broad and unduly burdensome to the extent they call for the identification of "all" documents or "any and all" documents when all relevant facts can be obtained from fewer than "all" documents or "any and all" documents. Merck objects further to these Requests to the extent they seek documents other than those that can be located upon a search of files where such documents reasonably can be expected to be found. Merck does not consider as Vioxx documents and does not generally produce those documents that primarily relate to another Merck drug, that describe general Merck operating procedures and practices, or that are company-wide or divisional budgets, forecasts,

- 2 -

departmental evaluations and documents setting forth departmental goals, human resource allocations, and the like, although the documents may have Vioxx references.

6.     Merck objects to these Requests as overly broad, unduly burdensome and oppressive, and as seeking information or documents that are not relevant to the claims or defenses of any party or to the subject matter involved in this action, nor reasonably calculated to lead to the discovery of admissible evidence, to the extent they seek information or documents:

a.     Pertaining to Merck products other than Vioxx (by whatever name it is known, including L-748,731 and MK-966), the product that any plaintiff or plaintiff's decedent allegedly ingested (however, this objection does not apply to information about another drug that is necessary to understand something about Vioxx, such as where the other drug is being used as a comparator in a Vioxx study or to documents regarding a competing NSAID manufactured by another company or to documents that discuss NSAIDs generally); or

b.     Pertaining to alleged adverse experiences associated with Vioxx other than the adverse experiences any plaintiff claims Vioxx caused; or

c.     Pertaining to promotion or advertising other than what any plaintiff, plaintiff's decedent, and/or plaintiff's prescribing physician claims to have relied upon.

Except where otherwise indicated, Merck will not produce such information or documents.

- 3 -

7.    Merck objects to these Requests to the extent they seek Merck's chemistry and manufacturing control information on the grounds that such information is highly confidential and proprietary, consists of trade secrets and is not relevant to the claims or defenses of any party or to the subject matter involved in this action, nor reasonably calculated to lead to the discovery of admissible evidence. Merck will not produce such information.

8.    Merck objects to the Requests to the extent they seek any other confidential or proprietary information or trade secrets. Merck will only produce such other confidential or proprietary information or trade secrets, if relevant, subject to and in reliance on the protective order in this case, and in some cases, only with additional confidentiality protections. In accordance with this objection, Merck notes that for a limited number of high-level documents, such as Board and certain committee minutes, and for certain members of senior management, Merck redacts as irrelevant any information that is not Vioxx-specific.

9.    Merck objects to these Requests as overly broad and unduly burdensome to the extent they purport to seek information or documents without regard to a specific timeframe or date cut-off. Where not otherwise specified in response to a specific request, Merck will produce information or documents generated up to and including the date set by the Court. The production of such information or documents shall be subject to and without waiver of any of the objections stated herein, and shall not be deemed to be an admission on the part of Merck that such information or documents are either relevant or admissible. Indeed, Merck specifically notes that information or documents generated after any plaintiff last ingested Vioxx are unlikely to be relevant or admissible at the trial of this matter.

10.     Merck objects to these Requests as improper to the extent they seek the production of documents and/or data concerning foreign Vioxx information. Specifically Merck objects to any Request that calls for information or documents relating to Merck's business or practices outside of the fifty United States and the District of Columbia, such as the sale, marketing, competitive landscape, or regulation of Vioxx in foreign countries, including regulatory submissions to foreign agencies. Except where otherwise indicated, Merck's responses will be limited to information and documents about its business or practices in the fifty United States and the District of Columbia. This objection does not include: (1) documents (other than submissions to foreign agencies and correspondence about those submissions) that contain Vioxx science or report on scientific studies, regardless of where in the world the studies were conducted; (2) documents concerning scientific presentations about Vioxx made at medical conferences held outside the United States, such as EULAR; (3) information about adverse experiences reported to have occurred outside the United States; or (4) foreign regulatory documents if Merck also submitted them to the FDA, such as the periodic safety update reports. Additionally, Merck will not redact foreign information relating to Vioxx from the documents it is producing, except where necessary to protect trade secrets or to preserve other objections. Merck states that the purposes of, and standards used by, foreign governments and their respective judicial systems can materially differ from the rules of procedure and evidence, as well as the substantive law, applicable in private products liability actions pending in the United States. Merck objects to producing documents other than as set forth above.

11.     Merck objects to these Requests to the extent they seek personnel files, self-evaluations, evaluations by others, documents regarding promotions, financial disclosures or other information such as social security numbers, computer passwords, home telephone

numbers and other private information, on the grounds that disclosure would invade the privacy rights of the individuals affected and are not relevant to the claims or defenses of any party or to the subject matter involved in this action, nor reasonably calculated to lead to the discovery of admissible evidence. Merck will not produce such documents or information. Merck further objects to these Requests to the extent they purport to require Merck to disclose the identity of any individual who allegedly experienced an adverse reaction to Vioxx or who reported such a reaction on the ground that such disclosure would violate the patient or reporter's right to confidentiality under federal law. Pursuant to 21 C.F.R. §§ 312.130, 314.430(e) and 20.63(f), Merck will redact from any document produced in this litigation names and any information that would identify the person using the product and names and any information that would identify any third party involved with the report, such as a physician, hospital or other institution.

12.     Merck objects to these Requests to the extent they call for information or documents regarding adverse experiences allegedly caused by Vioxx. Pursuant to 21 C.F.R. §§ 312.32 and 314.80, Merck collects information on adverse experiences that are temporally associated with a patient's treatment with Vioxx and reports those adverse experiences to the FDA without regard to whether Vioxx causes such adverse experiences. The reporting of an adverse experience does not reflect a conclusion by Merck or the FDA that Vioxx caused or contributed to the experience.

13.     Merck objects to these Requests to the extent they purport to require Merck to provide a compilation, abstract, audit, and/or other document summary that does not currently exist.

- 6 -

14.    Merck objects to these Requests to the extent they call for information or documents that are outside of Merck's possession, custody or control, in the possession of third parties, and/or in the public domain or otherwise obtainable from another source that is more convenient, less burdensome or less expensive.

15.    Merck is responding to these Requests without waiving or intending to waive, but on the contrary, preserving and intending to preserve: (a) the right to object, on the grounds of competency, privilege, relevance, or materiality, or any other proper grounds, to the use of such documents or information for any purpose, in whole or in part, in any subsequent proceedings, in this action or in any other action; (b) the right to object on all grounds, at any time, to document requests, interrogatories, or other discovery procedures involving or relating to the subject of the requests to which Merck has responded herein; and (c) the right at any time to revise, correct, add to or clarify any of the answers made herein.

16.    Merck objects to these Requests to the extent they seek documents or information regarding current, planned, or future studies, on the grounds that such discovery could impair Merck's ability to conduct such studies and cause injury to Merck's business interests, particularly where final decisions have yet to be made.  Merck objects generally to any request for studies not limited to relevant Vioxx-related clinical or pre-clinical studies.

17.    Because of the overly broad nature of these Requests, it is not possible for Merck to anticipate all possible grounds for objection with respect to the particular requests set forth herein.  Merck reserves the right to supplement or correct these responses and to raise any additional objections deemed necessary and appropriate in light of the results of any further review.

- 7 -

## PRODUCTION OF DOCUMENTS

Subject to and in reliance upon the protective order to be entered in this case, and in some cases, additional confidentiality protections, Merck will produce any responsive, non-objectionable documents on CD-ROMs, portable hard drive or other electronic format as ".tiff" images, together with an associated IPRO "load" file.   Merck reserves the right to seek reimbursement for costs associated with the production of documents.

The documents Merck may produce from an individual's files consist of those non-objectionable Vioxx documents located upon a search of that individual's (1) paper files likely to contain Vioxx documents, (2) e-mail, and (3) electronic documents from the individual's desktop computers and network "home" drives, but not other shared drives or databases to which the individual may have access.   With respect to categories (2) and (3), Merck has collected electronic documents from the individual's files or folders reasonably believed to contain Vioxx documents and those electronic documents from the individual's other files or folders found in a search designed to select Vioxx documents.   Merck collects and converts to .tiff format electronic documents in any of over 490 file types of graphics, PDF, presentation, projects, spreadsheet, text, web page, and word processing documents.   These include the most common file types, such as Adobe Acrobat and Microsoft Word, Excel, and PowerPoint files as well as many lesser-known file types.   However, Merck cannot convert to .tiff format certain electronic file types, such as database files, including Microsoft Access certain SAS files, Microsoft Outlook calendars, and embedded documents within Microsoft Word files.  Merck excludes from production or redacts certain categories of documents as outside the scope of permissible discovery as described in its general and specific objections.

Merck also redacts information generated by an automatically updating field, such as an auto-date, because the information that would appear on the printed page is unrelated to anything the owner of the document would have ever seen.

## RESPONSE TO INDIVIDUAL REQUESTS

Merck incorporates its General Objections in the responses that follow. Any specific objections set forth in the responses are in addition to those objections and, unless otherwise specified, Merck's responses are limited in accordance with each of its objections. To the extent that Merck offers to produce confidential information or documents, Merck will only do so subject to and in reliance on the Protective Order entered in this case.

## REQUEST FOR PRODUCTION NO. 1:

All records of Alabama Vioxx sales representatives which records are available to the said witness and/or to the Defendants, which would show:

a. attendance by sales representative at any Vioxx related meeting, function, or event,

b. expense accounts, travel records, and similar records for such sales representative during the times when the sales representatives were detailing Vioxx,

c. records concerning program materials or other such items utilized at any time in connection with Vioxx promotion, detaining [*sic*], or information providing,

d. call notes,

e.    other records including handwritten notes, memos, email, faxes, or other

preserved matter of any kind or description which in anyway shows, reveals,

discloses, relates to communication to and in connection with Alabama Vioxx

detailmen or sales representative, or between them and any physician or

physicians group or representatives doing business in Alabama.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 1:

Merck objects to this Request on the grounds that it is argumentative, vague and

ambiguous, particularly with respect to the terms "sales representatives," "detailing," and

"detailmen." Merck objects further to this Request on the grounds that it is overly broad, unduly

burdensome, compound, and not relevant to the claims or defenses of any party or to the subject

matter involved in this action, nor reasonably calculated to lead to the discovery of admissible

evidence, particularly insofar as it is not limited to information or documents related to the

professional representative(s) who called on Plaintiffs' prescribing physician(s) with respect to

Vioxx during the relevant time period.

## REQUEST FOR PRODUCTION NO. 2:

All records of persons who would have any of the above records if the Defendants

do not produce the same and all records showing the custodian of the above described

records.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 2:

Merck objects to this Request on the grounds that it is vague, ambiguous, and fails to

identify the documents sought to be produced with reasonable particularity. Merck objects

- 10 -

further to this Request on the grounds that it is overly broad, unduly burdensome, and not

relevant to the claims or defenses of any party or to the subject matter involved in this action, nor

reasonably calculated to lead to the discovery of admissible evidence, particularly insofar as it is

not limited to information or documents related to the professional representative(s) who called

on Plaintiffs' prescribing physician(s) with respect to Vioxx during the relevant time period.

<div style="text-align:right">

_____

BEN C. WILSON
One of the Attorneys for Defendant,
Merck & Co., Inc.

</div>

OF COUNSEL:
Robert C. "Mike" Brock
F. Chadwick Morriss
Ben C. Wilson
Richard B. Garrett
RUSHTON, STAKELY, JOHNSTON, & GARRETT, P.A.
Post Office Box 270
Montgomery, Alabama 36101-0270
Telephone:  (334) 206-3100
Facsimile: (334) 262-6277

<div style="text-align:center">

**CERTIFICATE OF SERVICE**

</div>

I hereby certify that I have served the above and foregoing document upon all interested parties by placing a copy of same in the United States Mail, postage prepaid and properly addressed on this the 11th day of January 2007, as follows:

James S. Hubbard
Thomas J. Knight
HUBBARD & KNIGHT
1125 Noble Street
Anniston, Alabama  36201

<div style="text-align:center">

_____

OF COUNSEL

</div>

<div style="text-align:center">

- 11 -

</div>



LAW OFFICES

# RUSHTON, STAKELY, JOHNSTON & GARRETT, P.A.

A PROFESSIONAL ASSOCIATION

184 COMMERCE STREET
MONTGOMERY, ALABAMA 36104

BENJAMIN C. WILSON
EMAIL: BCW@RSJG.COM
DIRECT TELEPHONE:
(334) 206-3194
DIRECT FACSIMILE:
(334) 481-0831

MAILING ADDRESS:
POST OFFICE BOX 270
MONTGOMERY, ALABAMA 36101-0270

WWW.RSJG.COM

January 11, 2007

Hon. Kim S. Benefield
Circuit Clerk of Randolph County
P.O. Box 328
1 Main Street
Weedowee, Alabama 36278-0328

**Filed in Office**

JAN 12 2007

CHRIS MAY
Clerk of Circuit Court

Re:  *Clifford Bailey, et al. v. Merck & Co., Inc., et al.*
     *Circuit Court of Randolph County, AL/CV-06-145*

Dear Ms. Benefield:

Please find enclosed a copy and an original of a (1) *Notice to the Circuit Court Clerk,* (2) *Merck & Co., Inc.'s Responses and Objections to the Document Requests Contained in Plaintiffs' Notice of Deposition of Defendant Merck & Co., Inc. Under Rule 30(b)(6),* and (3) *Merck & Co., Inc.'s Responses and Objections to the Document Requests Contained in Plaintiffs' Notice of Deposition of Susan Brunstetter.*

Please file the originals with the court and return a date-stamped copy of each to me in the enclosed envelope.

Sincerely yours,

BEN C. WILSON

BCW/dcr
Enclosures

## IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

| | | |
|---|---|---|
| CLIFFORD BAILEY, et al | ) | |
| | ) | |
| PLAINTIFFS, | ) | |
| VS. | ) | CASE NO.: CV-06-145 |
| | ) | |
| MERCK & CO. INC., et al | ) | |
| | ) | |
| DEFENDANTS. | ) | |

**Filed In Office**

DEC 29 2006

CHRIS MAY
Clerk of Circuit Court

### CERTIFICATE OF DISCOVERY

Now come the Plaintiffs and file and serve the following Discovery:

1.  NOTICE OF DEPOSITION OF SUSAN J. BRUNSTETTER,

    & NOTICE OF DEPOSITION OF DEFENDANT MERCK & COMPANY INC.

    UNDER RULE 30 (b)(6).

I do hereby certify that I have this the 28th day of December, 2006, served a copy of same

on counsel of record as listed below by United States Mail, postage prepaid, and properly

addressed:

Mr. Richard B. Garrett
Mr. Robert C. Brock
RUSHTON, STAKELY, JOHNSTON & GARRETT, P.A.
184 Commerce Street
Post Office Box 270
Montgomery, Alabama 36104

Mr. Steve Morris
Attorney at Law
Post Office Box 814
Wedowee, Alabama 36278

James S. Hubbard
Attorney for Plaintiffs

CV06-145

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, EASTERN DIVISION

CLIFFORD BAILEY, et al.,       )
                               )
     Plaintiffs,               )
                               )      CIVIL ACTION NO.
     v.                        )       3:06cv979-MHT
                               )          (WO)
MERCK & CO., INC., a           )
foreign or domestic            )
corporation, et al.,           )
                               )
     Defendants.               )

**Filed in Office**

DEC 2? 2006

CHRIS MAY
Clerk of Circuit Court

ORDER

This lawsuit, which was removed from state to federal
court based on diversity-of-citizenship jurisdiction, 28
U.S.C. §§ 1332, 1441, is now before the court on
plaintiffs' motion to remand. The court agrees with
plaintiffs that this case should be remanded to state
court. First, there has not been fraudulent joinder of
all resident defendants (that is, plaintiffs have
colorable claims against at least one such defendant), see
Coker v. Amoco Oil Co., 709 F.2d 1433, 1440 (11th Cir.
1983); Cabalceta v. Standard Fruit Co., 883 F.2d 1553,
1561 (11th Cir. 1989). Second, there has not been

ATTEST: A True Copy
Certified to _____, 20 06
Clerk, U.S. District Court

<u>fraudulent misjoinder</u> of all resident defendants (that is, plaintiffs have reasonably joined at least one such defendant with other defendants pursuant to Rule 20 of the Federal Rules of Civil Procedure), <u>see</u> <u>Tapscott v. MS Dealer Service Corp.</u>, 77 F.3d 1353, 1360 (11th Cir. 1996).

Accordingly, it is the ORDER, JUDGMENT, and DECREE of the court that plaintiffs' motion to remand (doc. no. 25) is granted and that, pursuant to 28 U.S.C. § 1447(c), this cause is remanded to the Circuit Court of Randolph County, Alabama, for want of subject-matter jurisdiction.

It is further ORDERED that the motion to stay (Doc. No. 21) is denied.

It is further ORDERED that all other outstanding motions are left for disposition by the state court after remand.

The clerk of the court is DIRECTED to take appropriate steps to effect the remand.

DONE, this the 13th day of December, 2006.

____/s/ Myron H. Thompson____
UNITED STATES DISTRICT JUDGE

```
-----------------------------------------------------------------------
| AVSO351                                          CV 2006 000145.00   |
|                                                                      |
|                                        JUDGE: ASSIGNED JUDGE         |
|----------------------------------------------------------------------|
|                    ALABAMA JUDICIAL DATA CENTER                      |
|                     CASE ACTION SUMMARY                              |
|                        CIRCUIT CIVIL                                 |
|----------------------------------------------------------------------|
|  IN THE CIRCUIT  COURT OF  RANDOLPH    COUNTY                        |
|                                                                      |
|   CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL                |
|  FILED:  09/21/2006 TYPE: BAD FAITH/FRAUD/MISR TYPE TRIAL: NON-JURY   TRACK: |
|                                                                      |
| ************************************************************************ |
| DATE1:                CA:   RMVL FED COURT  CA DATE:  10/31/2006      |
| DATE2:                AMT:          $.00  PAYMENT:                    |
| DATE3:                                                               |
| ************************************************************************ |
| PLAINTIFF  001: BAILEY CLIFFORD                                      |
|                                       ATTORNEY: KNIGHT THOMAS J      |
|                                       KNI009    P O DRAWER 1850      |
|                   , AL  00000-0000                                   |
|                   PHONE: (256)000-0000         ANNISTON, AL  36202   |
| ENTERED:  09/21/2006 ISSUED:           TYPE:           (205)237-9586 |
| SERVED:              ANSWERED:         JUDGEMENT: 10/31/2006         |
|----------------------------------------------------------------------|
| PLAINTIFF  002: BLACK CLIFFORD                                       |
|                                       ATTORNEY: KNIGHT THOMAS J      |
|                                       KNI009    P O DRAWER 1850      |
|                   , AL  00000-0000                                   |
|                   PHONE: (256)000-0000         ANNISTON, AL  36202   |
| ENTERED:  09/21/2006 ISSUED:           TYPE:           (205)237-9586 |
| SERVED:              ANSWERED:         JUDGEMENT: 10/31/2006         |
|----------------------------------------------------------------------|
| PLAINTIFF  003: CALHOUN WESLEY                                       |
|                                       ATTORNEY: KNIGHT THOMAS J      |
|                                       KNI009    P O DRAWER 1850      |
|                   , AL  00000-0000                                   |
|                   PHONE: (256)000-0000         ANNISTON, AL  36202   |
| ENTERED:  09/21/2006 ISSUED:           TYPE:           (205)237-9586 |
| SERVED:              ANSWERED:         JUDGEMENT: 10/31/2006         |
|----------------------------------------------------------------------|
| PLAINTIFF  004: DEASON CURTIS                                        |
|                                       ATTORNEY: KNIGHT THOMAS J      |
|                                       KNI009    P O DRAWER 1850      |
|                   , AL  00000-0000                                   |
|                   PHONE: (256)000-0000         ANNISTON, AL  36202   |
| ENTERED:  09/21/2006 ISSUED:           TYPE:           (205)237-9586 |
| SERVED:              ANSWERED:         JUDGEMENT: 10/31/2006         |
|----------------------------------------------------------------------|
| PLAINTIFF  005: GRAVES RUTH                                          |
|                                       ATTORNEY: KNIGHT THOMAS J      |
|                                       KNI009    P O DRAWER 1850      |
|                   , AL  00000-0000                                   |
|                   PHONE: (256)000-0000         ANNISTON, AL  36202   |
| ENTERED:  09/21/2006 ISSUED:           TYPE:           (205)237-9586 |
| SERVED:              ANSWERED:         JUDGEMENT: 10/31/2006         |
|----------------------------------------------------------------------|
| PLAINTIFF  006: GRIZZARD MICKEY                                      |
|                                       ATTORNEY: KNIGHT THOMAS J      |
|                                       KNI009    P O DRAWER 1850      |
|                   , AL  00000-0000                                   |
|                   PHONE: (256)000-0000         ANNISTON, AL  36202   |
| ENTERED:  09/21/2006 ISSUED:           TYPE:           (205)237-9586 |
| SERVED:              ANSWERED:         JUDGEMENT: 10/31/2006         |
|----------------------------------------------------------------------|
| PLAINTIFF  007: PERRY JIMMY                                          |
|                                       ATTORNEY: KNIGHT THOMAS J      |
|                                       KNI009    P O DRAWER 1850      |
|                   , AL  00000-0000                                   |
|                   PHONE: (256)000-0000         ANNISTON, AL  36202   |
| ENTERED:  09/21/2006 ISSUED:           TYPE:           (205)237-9586 |
| SERVED:              ANSWERED:         JUDGEMENT: 10/31/2006         |
|----------------------------------------------------------------------|
| KIB   11/01/2006                            CV 2006 000145.00        |
-----------------------------------------------------------------------
```

```
AVSO351                                                    CV 2006 000145.00

                                                   JUDGE: ASSIGNED JUDGE
-------------------------------------------------------------------------------
                     ALABAMA JUDICIAL DATA CENTER
                        CASE ACTION SUMMARY
                           CIRCUIT CIVIL
-------------------------------------------------------------------------------
  IN THE CIRCUIT  COURT OF  RANDOLPH         COUNTY

   CLIFFORD BAILEY, ET. AL. VS MERCK & CO., INC ET. AL
 FILED:  09/21/2006 TYPE: BAD FAITH/FRAUD/MISR TYPE TRIAL: NON-JURY  TRACK:

*******************************************************************************
 DATE1:          CA:   RMVL FED COURT  CA DATE:  10/31/2006
 DATE2:          AMT:          $.00  PAYMENT:
 DATE3:
*******************************************************************************
-------------------------------------------------------------------------------
 PLAINTIFF  008: SIKES HERBERT STANLEY
                                       ATTORNEY: KNIGHT THOMAS J
                                       KNI009     P O DRAWER 1850
                  , AL  00000-0000
                 PHONE: (256)000-0000              ANNISTON, AL  36202
 ENTERED:  09/21/2006 ISSUED:              TYPE:          (205)237-9586
 SERVED:             ANSWERED:              JUDGEMENT:  10/31/2006
-------------------------------------------------------------------------------
 PLAINTIFF  009: THOMPSON PHILLIP
                                       ATTORNEY: KNIGHT THOMAS J
                                       KNI009     P O DRAWER 1850
                  , AL  00000-0000
                 PHONE: (256)000-0000              ANNISTON, AL  36202
 ENTERED:  09/21/2006 ISSUED:              TYPE:          (205)237-9586
 SERVED:             ANSWERED:              JUDGEMENT:  10/31/2006
-------------------------------------------------------------------------------
 DEFENDANT  001: MERCK & CO INC
                 C/O THE CORPORATION CO     ATTORNEY:
                 2000 INTERSTATE PK DR STE
                 MONTGOMERY, AL  36109-0000
                 PHONE: (256)000-0000
 ENTERED:  09/21/2006 ISSUED:  09/21/2006 TYPE:    SHERIFF
 SERVED:  10/05/2006 ANSWERED:              JUDGEMENT:  10/31/2006
-------------------------------------------------------------------------------
 DEFENDANT  002: BARTLETT SCOTT
                 3255 CO RD 747             ATTORNEY:

                 ANNISTON, AL  36202-0000
                 PHONE: (256)000-0000
 ENTERED:  09/21/2006 ISSUED:  09/21/2006 TYPE:
 SERVED:             ANSWERED:              JUDGEMENT:  10/31/2006
-------------------------------------------------------------------------------
 DEFENDANT  003: BAUER MELISSA
                 512 CLAY STREET            ATTORNEY:

                 ALBERTVILLE, AL  35950-0000
                 PHONE: (256)000-0000
 ENTERED:  09/21/2006 ISSUED:  09/21/2006 TYPE:    SHERIFF
 SERVED:             ANSWERED:              JUDGEMENT:  10/31/2006
-------------------------------------------------------------------------------
 DEFENDANT  004: DELK JASON
                 1609 BENT RIVER CIRCLE     ATTORNEY:

                 VESTAVIA HILLS , AL  35216-000
                 PHONE: (256)000-0000
 ENTERED:  09/21/2006 ISSUED:  09/21/2006 TYPE:    SHERIFF
 SERVED:  10/11/2006 ANSWERED:              JUDGEMENT:  10/31/2006
-------------------------------------------------------------------------------
 DEFENDANT  005: HARPER CORAL
                 220 63 ST S                ATTORNEY:

                 BIRMINGHAM, AL  35212-0000
                 PHONE: (256)000-0000
 ENTERED:  09/21/2006 ISSUED:  09/21/2006 TYPE:
 SERVED:             ANSWERED:              JUDGEMENT:  10/31/2006
-------------------------------------------------------------------------------
XIB   11/01/2006                               CV 2006 000145.00
```

```
AVSO351                          )                              CV 2006 000145.00
                                                          )
                                             JUDGE: ASSIGNED JUDGE
```

## ALABAMA JUDICIAL DATA CENTER
## CASE ACTION SUMMARY
### CIRCUIT CIVIL

IN THE CIRCUIT COURT OF RANDOLPH COUNTY

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
FILED: 09/21/2006 TYPE: BAD FAITH/FRAUD/MISR TYPE TRIAL: NON-JURY   TRACK:

```
*******************************************************************************
DATE1:              CA:   RMVL FED COURT  CA DATE:  10/31/2006
DATE2:              AMT:           $.00  PAYMENT:
DATE3:
*******************************************************************************
```

DEFENDANT 013: PHARR JERRY
               4705 AUGUSTA DR              ATTORNEY:

               EIGHT MILE, AL  36613-0000
               PHONE: (256)000-0000
ENTERED: 09/21/2006 ISSUED: 09/21/2006 TYPE:   SHERIFF
SERVED:            ANSWERED:              JUDGEMENT: 10/31/2006
-------------------------------------------------------------------------------
DEFENDANT 014: SANTIAGO MELISSA
               223 VINEYARD LANE           ATTORNEY:

               BIRMINGHAM, AL  35242-0000
               PHONE: (256)000-0000
ENTERED: 09/21/2006 ISSUED: 09/21/2006 TYPE:
SERVED:            ANSWERED:              JUDGEMENT: 10/31/2006
-------------------------------------------------------------------------------
DEFENDANT 015: SPARKMAN DAVID
               545 ROCKY FORD ROAD         ATTORNEY:

               HARTSELLE, AL  35640-0000
               PHONE: (256)000-0000
ENTERED: 09/21/2006 ISSUED: 09/21/2006 TYPE:   SHERIFF
SERVED: 10/12/2006 ANSWERED:              JUDGEMENT: 10/31/2006
-------------------------------------------------------------------------------
DEFENDANT 016: WALKER-MCGLOTHAN NATASHA
               3122 HIGHLAND LAKES RD      ATTORNEY:

               BIRMINGHAM, AL  35242-0000
               PHONE: (256)000-0000
ENTERED: 09/21/2006 ISSUED: 09/21/2006 TYPE:
SERVED:            ANSWERED:              JUDGEMENT: 10/31/2006
-------------------------------------------------------------------------------
DEFENDANT 017: WALLS RANDY
               7620 MACK HICKS RD          ATTORNEY:

               CLAY, AL  35048-0000
               PHONE: (256)000-0000
ENTERED: 09/21/2006 ISSUED: 09/21/2006 TYPE:
SERVED:            ANSWERED:              JUDGEMENT: 10/31/2006

09/21/2006    ASSIGNED TO JUDGE: ASSIGNED JUDGE        (AV01)

09/21/2006    ORIGIN: INITIAL FILING                   (AV01)

09/21/2006    BENCH/NON-JURY TRIAL REQUESTED           (AV01)

09/21/2006    CASE ASSIGNED STATUS OF: ACTIVE          (AV01)

09/21/2006    BAILEY CLIFFORD ADDED AS C001            (AV02)

09/21/2006    LISTED AS ATTORNEY FOR C001: KNIGHT THOMAS J(AV02)
```

```
-------------------------------------------------------------------------
| AVSO351                          )                    CV 2006 000145.00 |
|                                                    )                    |
|                              JUDGE: ASSIGNED JUDGE                      |
|-----------------------------------------------------------------------|
|                     ALABAMA JUDICIAL DATA CENTER                       |
|                        CASE ACTION SUMMARY                             |
|                          CIRCUIT CIVIL                                 |
|-----------------------------------------------------------------------|
|  IN THE CIRCUIT  COURT OF  RANDOLPH    COUNTY                          |
|                                                                       |
|   CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL                 |
|   FILED:  09/21/2006 TYPE: BAD FAITH/FRAUD/MISR TYPE TRIAL: NON-JURY   TRACK: |
|                                                                       |
| ********************************************************************** |
| DATE1:              CA:   RMVL FED COURT  CA DATE:  10/31/2006         |
| DATE2:              AMT:        $.00  PAYMENT:                         |
| DATE3:                                                                |
| ********************************************************************** |
```

| Date | Action | Code |
|------|--------|------|
| 09/21/2006 | BLACK CLIFFORD ADDED AS C002 | (AV02) |
| 09/21/2006 | LISTED AS ATTORNEY FOR C002: KNIGHT THOMAS J | (AV02) |
| 09/21/2006 | CALHOUN WESLEY ADDED AS C003 | (AV02) |
| 09/21/2006 | LISTED AS ATTORNEY FOR C003: KNIGHT THOMAS J | (AV02) |
| 09/21/2006 | DEASON CURTIS ADDED AS C004 | (AV02) |
| 09/21/2006 | LISTED AS ATTORNEY FOR C004: KNIGHT THOMAS J | (AV02) |
| 09/21/2006 | GRAVES RUTH ADDED AS C005 | (AV02) |
| 09/21/2006 | LISTED AS ATTORNEY FOR C005: KNIGHT THOMAS J | (AV02) |
| 09/21/2006 | GRIZZARD MICKEY ADDED AS C006 | (AV02) |
| 09/21/2006 | LISTED AS ATTORNEY FOR C006: KNIGHT THOMAS J | (AV02) |
| 09/21/2006 | PERRY JIMMY ADDED AS C007 | (AV02) |
| 09/21/2006 | LISTED AS ATTORNEY FOR C007: KNIGHT THOMAS J | (AV02) |
| 09/21/2006 | SIKES HERBERT STANLEY ADDED AS C008 | (AV02) |
| 09/21/2006 | LISTED AS ATTORNEY FOR C008: KNIGHT THOMAS J | (AV02) |
| 09/21/2006 | THOMPSON PHILLIP ADDED AS C009 | (AV02) |
| 09/21/2006 | LISTED AS ATTORNEY FOR C009: KNIGHT THOMAS J | (AV02) |
| 09/21/2006 | MERCK & CO INC ADDED AS D001 | (AV02) |
| 09/21/2006 | BARTLETT SCOTT ADDED AS D002 | (AV02) |
| 09/21/2006 | BAUER MELISSA ADDED AS D003 | (AV02) |
| 09/21/2006 | DELK JASON ADDED AS D004 | (AV02) |
| 09/21/2006 | HARPER CORAL ADDED AS D005 | (AV02) |
| 09/21/2006 | HENDERSON CHARLES ADDED AS D006 | (AV02) |
| 09/21/2006 | HODGES JULIE ADDED AS D007 | (AV02) |
| 09/21/2006 | HOLMES KATHERINE ADDED AS D008 | (AV02) |
| 09/21/2006 | HOUSTON JAMES ADDED AS D009 | (AV02) |
| 09/21/2006 | LOVETT LORI ADDED AS D010 | (AV02) |
| 09/21/2006 | MELTON JULIE ADDED AS D011 | (AV02) |

```
 AVSO351                        )                      )   CV 2006 000145.00
                                                          JUDGE: ASSIGNED JUDGE
-----------------------------------------------------------------------------
                        ALABAMA JUDICIAL DATA CENTER
                           CASE ACTION SUMMARY
                             CIRCUIT CIVIL
-----------------------------------------------------------------------------
   IN THE CIRCUIT COURT OF RANDOLPH       COUNTY

   CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
   FILED:  09/21/2006 TYPE: BAD FAITH/FRAUD/MISR TYPE TRIAL: NON-JURY   TRACK:

*****************************************************************************
 DATE1:              CA:   RMVL FED COURT  CA DATE:  10/31/2006
 DATE2:              AMT:          $.00  PAYMENT:
 DATE3:
*****************************************************************************
   09/21/2006    MITCHAM HENRY ADDED AS D012              (AV02)

   09/21/2006    PHARR JERRY ADDED AS D013                (AV02)

   09/21/2006    SANTIAGO MELISSA ADDED AS D014           (AV02)

   09/21/2006    SPARKMAN DAVID ADDED AS D015             (AV02)

   09/21/2006    WALKER-MCGLOTHAN NATASHA ADDED AS D016   (AV02)

   09/21/2006    WALLS RANDY ADDED AS D017                (AV02)

   09/21/2006    SERVICE ORDER SENT TO D001

   09/21/2006    SERVICE ORDER SENT TO D002

   09/21/2006    SERVICE ORDER SENT TO D003

   09/21/2006    SERVICE ORDER SENT TO D004

   09/21/2006    SERVICE ORDER SENT TO D005

   09/21/2006    SERVICE ORDER SENT TO D006

   09/21/2006    SERVICE ORDER SENT TO D007

   09/21/2006    SERVICE ORDER SENT TO D008

   09/21/2006    SERVICE ORDER SENT TO D009

   09/21/2006    SERVICE ORDER SENT TO D010

   09/21/2006    SERVICE ORDER SENT TO D011

   09/21/2006    SERVICE ORDER SENT TO D012

   09/21/2006    SERVICE ORDER SENT TO D013

   09/21/2006    SERVICE ORDER SENT TO D014

   09/21/2006    SERVICE ORDER SENT TO D015

   09/21/2006    SERVICE ORDER SENT TO D016

   09/21/2006    SERVICE ORDER SENT TO D017

   10/05/2006    SHERIFF ISSUED: 09/21/2006 TO D007       (AV02)

   10/05/2006    RETURN OF NOT FOUND ON 10/04/2006 FOR D007  (AV02)

   10/05/2006    SHERIFF ISSUED: 09/21/2006 TO D012       (AV02)

   10/05/2006    RETURN OF NOT FOUND ON 10/04/2006 FOR D012  (AV02)
-----------------------------------------------------------------------------
KIB   11/01/2006                              CV 2006 000145.00
```

```
  AVSO351                      )                         CV 2006 000145.00
                              )                    )
                                              JUDGE: ASSIGNED JUDGE
  ------------------------------------------------------------------------
                        ALABAMA JUDICIAL DATA CENTER
                           CASE ACTION SUMMARY
                             CIRCUIT CIVIL
  ------------------------------------------------------------------------
    IN THE CIRCUIT  COURT OF  RANDOLPH      COUNTY

     CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL
  FILED:  09/21/2006 TYPE: BAD FAITH/FRAUD/MISR TYPE TRIAL: NON-JURY   TRACK:

  *************************************************************************
  DATE1:              CA:  RMVL FED COURT  CA DATE:  10/31/2006
  DATE2:              AMT:       $.00  PAYMENT:
  DATE3:
  *************************************************************************
    10/05/2006    SHERIFF ISSUED: 09/21/2006 TO D009        (AV02)

    10/05/2006    SERVICE OF SERVED PERSON ON 10/03/2006 FOR D009

    10/05/2006    SHERIFF ISSUED: 09/21/2006 TO D003        (AV02)

    10/05/2006    RETURNED RETURN NOT FOUN ON 10/05/2006 FOR D001

    10/06/2006    RETURNED INSUFFICIENT    ON 10/06/2006 FOR D001

    10/06/2006    RETURNED RETURN NOT FOUN ON 10/06/2006 FOR D002

    10/06/2006    RETURNED RETURN NOT FOUN ON 10/06/2006 FOR D016

    10/06/2006    RETURNED RETURN NOT FOUN ON 10/06/2006 FOR D014

    10/16/2006    SHERIFF ISSUED: 09/21/2006 TO D011        (AV02)

    10/16/2006    RETURN OF UNDELIVERABLE ON 10/09/2006 FOR D011

    10/16/2006    SHERIFF ISSUED: 09/21/2006 TO D008        (AV02)

    10/16/2006    RETURN OF PARTY MOVED ON 10/04/2006 FOR D008(AV02)

    10/16/2006    SHERIFF ISSUED: 09/21/2006 TO D010        (AV02)

    10/16/2006    RETURN OF INSUFFICIENT   ON 10/04/2006 FOR D010

    10/16/2006    COST BILL PREPARED FOR C001

    10/16/2006    COST BILL PREPARED FOR D001

    10/16/2006    SHERIFF ISSUED: 09/21/2006 TO D015        (AV02)

    10/16/2006    SERVICE OF SERVED PERSON ON 10/12/2006 FOR D015

    10/17/2006    SHERIFF ISSUED: 09/21/2006 TO D013        (AV02)

    10/17/2006    RETURN OF NOT FOUND ON 10/17/2006 FOR D013  (AV02)

    10/17/2006    SHERIFF ISSUED: 09/21/2006 TO D004        (AV02)

    10/17/2006    SERVICE OF SERVED PERSON ON 10/11/2006 FOR D004

    10/20/2006    SHERIFF ISSUED: 09/21/2006 TO D001        (AV02)

    10/20/2006    SERVICE OF SERVED PERSON ON 10/05/2006 FOR D001

    10/25/2006    RETURNED RETURN NOT FOUN ON 10/25/2006 FOR D005

    11/01/2006    CASE ASSIGNED STATUS OF: DISPOSED         (AV01)

    11/01/2006    DISPOSED ON: 10/31/2006 BY (RMVL FED COURT) (AV01)
  ------------------------------------------------------------------------
  KIB   11/01/2006                             CV 2006 000145.00
```

```
--------------------------------------------------------------------
| AVSO351                    )                    )  CV 2006 000145.00 |
|                                                                      |
|                                              JUDGE: ASSIGNED JUDGE   |
--------------------------------------------------------------------
               ALABAMA JUDICIAL DATA CENTER
                  CASE ACTION SUMMARY
                    CIRCUIT CIVIL
--------------------------------------------------------------------
| IN THE CIRCUIT COURT OF RANDOLPH        COUNTY                       |
|                                                                      |
|   CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL                |
| FILED:  09/21/2006 TYPE: BAD FAITH/FRAUD/MISR TYPE TRIAL: NON-JURY   TRACK: |
|                                                                      |
|*******************************************************************   |
| DATE1:              CA:  RMVL FED COURT  CA DATE:  10/31/2006        |
| DATE2:              AMT:        $.00  PAYMENT:                       |
| DATE3:                                                               |
|*******************************************************************   |
|   11/01/2006    COURT ACTION JUDGE: TOM. F. YOUNG JR.     (AV01)     |
```

11/01/2006    C001 DISPOSED BY (RMVL FED COURT) ON 10/31/2006

11/01/2006    C002 DISPOSED BY (RMVL FED COURT) ON 10/31/2006

11/01/2006    C003 DISPOSED BY (RMVL FED COURT) ON 10/31/2006

11/01/2006    C004 DISPOSED BY (RMVL FED COURT) ON 10/31/2006

11/01/2006    C005 DISPOSED BY (RMVL FED COURT) ON 10/31/2006

11/01/2006    C006 DISPOSED BY (RMVL FED COURT) ON 10/31/2006

11/01/2006    C007 DISPOSED BY (RMVL FED COURT) ON 10/31/2006

11/01/2006    C008 DISPOSED BY (RMVL FED COURT) ON 10/31/2006

11/01/2006    C009 DISPOSED BY (RMVL FED COURT) ON 10/31/2006

11/01/2006    D001 DISPOSED BY (RMVL FED COURT) ON 10/31/2006

11/01/2006    D002 DISPOSED BY (RMVL FED COURT) ON 10/31/2006

11/01/2006    D003 DISPOSED BY (RMVL FED COURT) ON 10/31/2006

11/01/2006    D004 DISPOSED BY (RMVL FED COURT) ON 10/31/2006

11/01/2006    D005 DISPOSED BY (RMVL FED COURT) ON 10/31/2006

11/01/2006    D006 DISPOSED BY (RMVL FED COURT) ON 10/31/2006

11/01/2006    D007 DISPOSED BY (RMVL FED COURT) ON 10/31/2006

11/01/2006    D008 DISPOSED BY (RMVL FED COURT) ON 10/31/2006

11/01/2006    D009 DISPOSED BY (RMVL FED COURT) ON 10/31/2006

11/01/2006    D010 DISPOSED BY (RMVL FED COURT) ON 10/31/2006

11/01/2006    D011 DISPOSED BY (RMVL FED COURT) ON 10/31/2006

11/01/2006    D012 DISPOSED BY (RMVL FED COURT) ON 10/31/2006

11/01/2006    D013 DISPOSED BY (RMVL FED COURT) ON 10/31/2006

11/01/2006    D014 DISPOSED BY (RMVL FED COURT) ON 10/31/2006

11/01/2006    D015 DISPOSED BY (RMVL FED COURT) ON 10/31/2006

11/01/2006    D016 DISPOSED BY (RMVL FED COURT) ON 10/31/2006

11/01/2006    D017 DISPOSED BY (RMVL FED COURT) ON 10/31/2006

# *Circuit Clerk of Randolph County*



KIM S. BENEFIELD
*Circuit Clerk*

RHONDA C. HILL
*Chief Clerk*
*Domestic Relations*
*District Civil*
*Juvenile*

MARLENE S. LINDLEY
*Criminal Court*

CINDY P. WHALEY
*Small Claims*
*Traffic Court*

October 25, 2006

Hon. Thomas J. Knight
P. O. Drawer 1850
Anniston, AL  36202

RE:  Service on Merck & Co., Inc.

Dear Hon. Knight,

   I in error mailed you a No Service Notice on Merck & Co., Inc.  It was not
Merck & Co., Inc. that was not served it was Melissa Bauer.  Sorry for this error.
Merck & Co., Inc. was served on October 5, 2006.

Sincerely,

Cindy Whaley
Circuit Civil

LAW OFFICES
**HUBBARD & KNIGHT**
POST OFFICE DRAWER 1850
1125 NOBLE STREET
ANNISTON, ALABAMA 36202

THOMAS J. KNIGHT
JAMES S. HUBBARD

TELEPHONE (256) 237-9586
FACSIMILE  (256) 237-9594

October 23, 2006

Kim S. Benefield
Clerk of Randolph County
P.O. Box 328
Wedowee, AL 36278

RE:     *Service to Merck & Co.,  Inc.*

Dear Ms. Benefield:

Enclosed are copies of the summonses that we served on Merck & Co., Inc., in the other two cases we have filed in Clay and Calhoun counties.  As you can see, we used the same address in those two summonses as we used in the one we filed in Randolph County.  In both Clay and Calhoun counties  Merck & Co., Inc. was properly served.

In light of this, we would like for you to re-serve Merck & Co., Inc. at the same address. I have enclosed a new summons with this address listed for your use.

Please feel free to call me if you have any questions.

Very truly yours,

Thomas J. Knight

TJK/ktm

Enclosures

| State of Alabama<br>Unified Judicial System | **SUMMONS** | Case Number |
|---|---|---|
| Form C-34    Rev 6/88 | **- CIVIL -** | CV 2006-000145 |

IN THE _____ Circuit _____ **COURT OF** _____ Randolph _____ **COUNTY**

**Plaintiff**    Clifford Bailey, et. als.    **v. Defendant**    Merck & Co. Inc., et. als.

**NOTICE TO** _____ Merck & Co. Inc., c/o The Corporation Company, 2000 Interstate Park Drive, Ste. 204, Montgomery, AL  36109

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY _____ THOMAS J KNIGHT _____ WHOSE

ADDRESS IS _____ HUBBARD AND KNIGHT, 1125 NOBLE STREET, ANNISTON, ALABAMA .

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN    30    DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

TO ANY SHERIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:

☒ You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant.

☐ Service by certified mail of this summons is initiated upon the written request of _____ pursuant to the Alabama Rules of Civil Procedure.

_____    By: _____

Date _____

**Clerk/Register**

☐  Certified Mail is hereby requested.    _____

**Plaintiff's/Attorney's Signature**

RETURN ON SERVICE:

☐  Return receipt of certified mail received in this office on _____ .
(Date)

☐  I certify that I personally delivered a copy of the Summons and Complaint to _____ in _____ County,

Alabama on _____ .
(Date)

_____    _____

**Date**    **Server's Signature**

_____    _____

**Address of Server**    **Type of Process Server**

| State of Alabama<br>Unified Judicial System<br><br>Form C-34     Rev 6/88 | **SUMMONS**<br>**- CIVIL -** | **Case Number**<br><br>CV 2006-000145 |
|---|---|---|

**IN THE** _____ Circuit _____ **COURT OF** _____ Randolph _____ **COUNTY**

**Plaintiff**      Clifford Bailey, et. als.      **v. Defendant**      Merck & Co. Inc., et. als.

**NOTICE TO** _____ Merck & Co. Inc., c/o The Corporation Company, 2000 Interstate Park Drive, Ste. 204, Montgomery, AL  36109 _____

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT.  A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S  ATTORNEY _____ THOMAS J KNIGHT _____ WHOSE

ADDRESS IS _____ HUBBARD AND KNIGHT, 1125 NOBLE STREET, ANNISTON, ALABAMA _____ .

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN _____ 30 _____ DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

**TO ANY SHERIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:**

☒ You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant.

☐ Service by certified mail of this summons is initiated upon the written request of _____ pursuant to the Alabama Rules of Civil Procedure.

Date _____      By: _____

**Clerk/Register**

☐  Certified Mail is hereby requested.      _____

**Plaintiff's/Attorney's Signature**

RETURN ON SERVICE:

☐  Return receipt of certified mail received in this office on _____ .
(Date)

☐  I certify that I personally delivered a copy of the Summons and Complaint to _____
in _____ County,
Alabama on _____ .
(Date)

_____
**Date**

_____
**Server's Signature**

_____
**Address of Server**

_____
**Type of Process Server**

AVSO701

ALABAMA JUDICIAL DATA CENTER
RANDOLPH    COUNTY
NO SERVICE NOTICE

CV 2006 000145.00
ASSIGNED JUDGE

IN THE CIRCUIT COURT OF RANDOLPH COUNTY

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL

KNIGHT THOMAS J                          CASE NUMBER: CV 2006 000145 00
P O DRAWER 1850                          PARTY NUMBER: C001

ANNISTON  AL  36202

THE SUMMONS AND COMPLAINT                WAS NOT SERVED ON
MERCK & CO INC            AND WAS RETURNED ON 10/05/2006 FOR THE
FOLLOWING REASON: RETURN NOT FOUND.

IF RETURNED, UNDELIVERABLE OR A BAD ADDRESS THEN
YOU MAY RESUBMIT YOUR COMPLAINT WITH A NEW ADDRESS TO THE
COURT AND SERVICE WILL BE ATTEMPTED AGAIN.  IF NO ADDRESS IS
SUBMITTED, THE COURT MAY DISMISS THIS CASE WITHIN 30 DAYS.

    DEFENDANT DOESN'T LIVE AT 512 CLAY STREET

                DATE:10/05/2006   CLERK:KIM S. BENEFIELD
                                  P. O. BOX 328
                                  WEDOWEE  AL  36278
                                  (256)357-4551

OPERATOR: CYW
PREPARED: 10/05/2006

| ~na<br>~cial System<br>~34    Rev 6/88 | SUMMONS<br>-CIVIL- | Case Number<br><br>CV 06-145 |

~HE _____CIRCUIT_____ COURT OF _____RANDOLPH_____ COUNTY

Plaintiff ___CLIFFORD BAILEY, et als.___    v.  Defendant ___MERCK & CO. Inc. et als.___

NOTICE TO ___MERCK & CO. Inc., c/o The Corporation Company, 2000 Interstate ParkDr. Ste.204,___
        Montgomery, AL  36109
THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE
ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF
YOUR WRITTEN ANSWER, EITHER ADDMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH
THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR
YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY _____THOMAS J. KNIGHT_____ WHOSE
ADDRESS IS _____1125 Noble Street, Post Office Box 1850, Anniston, Alabama 36202_____.

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN ___30___ DAYS AFTER THIS SUMMONS AND
COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR
THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

TO ANY SHERIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:

☐  You are hereby commanded to serve this summons and a copy of the complaint in this action upon the
defendant.

☐  Service by certified mail of this summons is initiated upon the written request of _____
pursuant to the Alabama Rules of Civil Procedure.

ate _____        _____ By: _____
                                     Clerk/Register

☐ Certified Mail is hereby requested.    _____
                                         Plaintiff's/Attorney's Signature

RETURN ON SERVICE:

☐ Return receipt of certified mail received in this office on _____.
                                                              (Date)
☐ I certify that I personally delivered a copy of the Summons and Complaint to _____
_____ in _____County,
Alabama on _____.
            (Date)


Date _____        _____
                                  Server's Signature

Address of Server _____        _____
_____           Type of Process Server

VSO702

ALABAMA JUDICIAL DATA CENTER
CLAY          COUNTY
SERVICE NOTICE

CV 2006 000083.00
JOHN E ROCHESTER

------------------------------------------------------------------------

IN THE CIRCUIT  COURT OF    CLAY     COUNTY

WAYNE WATTS, KATHY LYLES, ISMEAL M CARMACK VS MERCK & CO ET ALS          D001

KNIGHT THOMAS J                    CASE NUMBER: CV 2006 000083 00
P O DRAWER 1850                    PARTY NUMBER: D016

ANNISTON  AL  36202

YOUR ATTORNEY CODE IS KNI009

THE SUMMONS AND COMPLAINT           WAS SERVED ON MERCK & CO, INC
ON 10/05/2006 BY: PERSONAL SERVICE.

DATE:10/20/2006   CLERK:JEFF COLBURN
PO BOX 816
ASHLAND  AL  36251
(256)354-7926

------------------------------------------------------------------------

PERATOR: JOB
REPARED: 10/20/2006

| State of Alabama<br>Unified Judicial System<br><br>Form C-34     Rev 6/88 | SUMMONS<br>-CIVIL- | Case Number |
|---|---|---|

IN THE _____ CIRCUIT _____ COURT OF _____ CLAY _____ COUNTY

Plaintiff _____ WAYNE WATTS, et als. _____ v. Defendant _____ MERCK & CO. Inc. et als. _____

NOTICE TO ___ MERCK & CO. Inc., c/o The Corporation Company, 2000 Interstate ParkDr. Ste.204,
Montgomery, AL 36109

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADDMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY _____ THOMAS J. KNIGHT _____ WHOSE ADDRESS IS _____ 1125 Noble Street, Post Office Box 1850, Anniston, Alabama 36202 _____ .

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN ___ 30 ___ DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

---

TO ANY SHERRIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:

☐ You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant.

☐ Service by certified mail of this summons is initiated upon the written request of _____ pursuant to the Alabama Rules of Civil Procedure.

Date _____                    _____ By: _____
                                         Clerk/Register

---

☐ Certified Mail is hereby requested.        _____
                                             Plaintiff's/Attorney's Signature

---

RETURN ON SERVICE:

☐ Return receipt of certified mail received in this office on _____ .
                                                              (Date)

☐ I certify that I personally delivered a copy of the Summons and Complaint to _____
_____ in _____ County,
Alabama on _____ .
              (Date)

_____                          _____
Date                                     Server's Signature

_____                          _____
Address of Server                        Type of Process Server

AVS0702                    ALABAMA JUDICIAL DATA CENTER
                                 CALHOUN       COUNTY
                                 SERVICE NOTICE
                                                        CV 2006 000719.00
                                                      JOHN C THOMASON
|----------------------------------------------------------------------|
|              IN THE CIRCUIT  COURT OF  CALHOUN      COUNTY            |
|                                                                      |
|   JUNIOR ALLDREAGE VS. MERCK & CO., INC., ET AL.              D001    |
|                                                                      |
|      HUBBARD JAMES S                    CASE NUMBER: CV 2006 000719 00|
|      1125 NOBLE STREET                  PARTY NUMBER:C001             |
|                                                                      |
|      ANNISTON  AL  36201                                             |
|                                                                      |
|      YOUR ATTORNEY CODE IS HUB003                                    |
|                                                                      |
|   THE SUMMONS AND COMPLAINT           WAS SERVED ON MERCK & CO., INC. |
|   ON 10/03/2006 BY: CERTIFIED MAIL.                                  |
|                                                                      |
|                                                                      |
|                                                                      |
|                                                                      |
|                                                                      |
|                 DATE:10/05/2006  CLERK:TED WOOKS                     |
|                          300 CALHOUN CO COURTHOUSE                   |
|                          ANNISTON  AL  36201                        |
|                          (256)231-1750                              |
|----------------------------------------------------------------------|
OPERATOR: VIR
PREPARED: 10/05/2006

| ...ma | **SUMMONS** | Case Number |
| ...dicial System | **-CIVIL-** | |
| ...C-34.    Rev 6/88 | | |

...N THE _____ CIRCUIT _____ COURT OF _____ CALHOUN _____ COUNTY

Plaintiff ___ JUNIOR ALLDREAGE, et als. , ___ v. Defendant ___ MERCK & CO. Inc. et als. ___

NOTICE TO __ MERCK & CO. Inc., c/o The Corporation Company, 2000 Interstate ParkDr. Ste.204,
Montgomery, AL 36109
THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE
ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF
YOUR WRITTEN ANSWER, EITHER ADDMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH
THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR
YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY _____ THOMAS J. KNIGHT _____ WHOSE
ADDRESS IS _____ 1125 Noble Street, Post Office Box 1850, Anniston, Alabama 36202 _____

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN ___ 30 ___ DAYS AFTER THIS SUMMONS AND
COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR
THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

---

**TO ANY SHERIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:**

☐ You are hereby commanded to serve this summons and a copy of the complaint in this action upon the
defendant.

☐ Service by certified mail of this summons is initiated upon the written request of _____
pursuant to the Alabama Rules of Civil Procedure.

Date _____     _____ By: _____
                                  Clerk/Register

---

☑ Certified Mail is hereby requested.     _____
                                           Plaintiff's/Attorney's Signature

---

RETURN ON SERVICE:

☐ Return receipt of certified mail received in this office on _____.
                                                              (Date)
☐ I certify that I personally delivered a copy of the Summons and Complaint to _____
_____ in _____ County,
Alabama on _____.
            (Date)


_____              _____
Date                                 Server's Signature

_____              _____
Address of Server                    Type of Process Server

**SENDER: COMPLETE THIS SECTION**

- ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- ■ Print your name and address on the reverse so that we can return the card to you.
- ■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Merck & Company Inc., c/o
The Corporation Company
2000 Interstate Park Drive Ste 204
Montgomery, AL 36109

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _Slauson_    ☐ Agent  ☒ Addressee

B. Received by ( Printed Name)    C. Date of Delivery
S. Slauson    10-3-06

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

3. Service Type
☑ Certified Mail    ☐ Express Mail
☐ Registered    ☑ Return Receipt for Merchandise
☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
   (Transfer from service label)    7005 1160 0001 9295 8327

PS Form 3811, February 2004    Domestic Return Receipt    CV 06-719    102595-02-M-1540

AVSO305

ALABAMA JUDICIAL DATA CENTER
RANDOLPH     COUNTY

ORDER FOR SERVICE AND RETURN

CV 2006 000145.00
ASSIGNED JUDGE

---

IN THE CIRCUIT COURT OF RANDOLPH     COUNTY

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL

SERVE ON:   D001

            MERCK & CO INC
            C/O THE CORPORATION CO
            2000 INTERSTATE PK DR STE
            MONTGOMERY     ,AL  36109-0000

NOTES:
    SUMMONS & COMPLAINT

---

TO ANY SHERIFF OR ANY AUTHORIZED AGENT:
        YOU ARE HEREBY ORDERED TO DELIVER THE ATTACHED DOCUMENT
        TO THE ABOVE NAMED PERSON AT THE ADDRESS INDICATED.

    09/21/2006  DATE          CLERK: KIM S. BENEFIELD        BY:
                                     P. O. BOX 328
                                     WEDOWEE AL   36278
                                     (256)357-4551

---

    I HEREBY CERTIFY THAT I PERSONALLY DELIVERED A COPY OF THE ATTACHED
        DOCUMENT IN _____ COUNTY, ALABAMA
        TO:

    _____        _____
                                            SIGNATURE OF SERVER

    _____

    _____

    NAME / ADDRESS ABOVE                    DATE

---

OPERATOR: CYW
PREPARED: 09/21/2006

Executed by serving_____ copy (ies) of the within on
The Corporation Company as Statutory Agent for:

by leaving with: _____

This the __5__ day of ____Oct____  06
D. T. Marshall, Sheriff
Montgomery County, Alabama

By: _____ D.S.

11:25

AVSO305

ALABAMA JUDICIAL DATA CENTER
RANDOLPH        COUNTY

ORDER FOR SERVICE AND RETURN

CV 2006 000145.00
ASSIGNED JUDGE

--------------------------------------------------------------------

IN THE CIRCUIT  COURT OF  RANDOLPH      COUNTY

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL

SERVE ON:  D004

DELK JASON
1609 BENT RIVER CIRCLE

*319 A2*

VESTAVIA HILLS ,AL  35216-0000

NOTES:
    SUMMONS & COMPLAINT

--------------------------------------------------------------------

TO ANY SHERIFF OR ANY AUTHORIZED AGENT:
            YOU ARE HEREBY ORDERED TO DELIVER THE ATTACHED DOCUMENT
            TO THE ABOVE NAMED PERSON AT THE ADDRESS INDICATED.

  09/21/2006  DATE          CLERK: KIM S. BENEFIELD      BY: *CW*
                                   P. O. BOX 328
                                   WEDOWEE  AL  36278
                                   (256)357-4551

--------------------------------------------------------------------

I HEREBY CERTIFY THAT I PERSONALLY DELIVERED A COPY OF THE ATTACHED
  DOCUMENT IN  ___Jefferson___  COUNTY, ALABAMA
  TO:  *Jason Delk*

  *1609 Bent River circle*                *signature*
                                  SIGNATURE OF SERVER

                                          *10-11-06*
  NAME / ADDRESS ABOVE                  DATE

OPERATOR: CYW
PREPARED: 09/21/2006

RCVD-SEP 30 '06 AM10:13

AVSO305

ALABAMA JUDICIAL DATA CENTER
RANDOLPH      COUNTY

ORDER FOR SERVICE AND RETURN

CV 2006 000145.00
ASSIGNED JUDGE

---

IN THE CIRCUIT COURT OF RANDOLPH      COUNTY

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL

SERVE ON:  D015

SPARKMAN DAVID
545 ROCKY FORD ROAD

HARTSELLE      ,AL  35640-0000

NOTES:
  SUMMONS & COMPLAINT

---

TO ANY SHERIFF OR ANY AUTHORIZED AGENT:
           YOU ARE HEREBY ORDERED TO DELIVER THE ATTACHED DOCUMENT
           TO THE ABOVE NAMED PERSON AT THE ADDRESS INDICATED.

  09/21/2006   DATE            CLERK: KIM S. BENEFIELD      BY: _____
                              P. O. BOX 328
                              WEDOWEE AL  36278
                              (256)357-4551

---

I HEREBY CERTIFY THAT I PERSONALLY DELIVERED A COPY OF THE ATTACHED
   DOCUMENT IN ___MORGAN___ COUNTY, ALABAMA
   TO:

David Sparkman

545 Rocky Ford Rd

Hartselle Al

NAME / ADDRESS ABOVE                    SIGNATURE OF SERVER

                                        DATE  10-12-06

OPERATOR: CYW
PREPARED: 09/21/2006

Mr. Sparkman excepted
Summons + complaint
However he states he Knows
nothing About this
And has spoke to Thomas
Knight the Attorney
Cause this is the third
Summons he has Received

RECEIVED
OCT 12 2006
MORGAN COUNTY
SHERIFF'S DEPARTMENT

AVSO305

*31*

ALABAMA JUDICIAL DATA CENTER
RANDOLPH          COUNTY

ORDER FOR SERVICE AND RETURN

CV 2006 000145.00
ASSIGNED JUDGE

IN THE CIRCUIT COURT OF RANDOLPH          COUNTY

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL

SERVE ON:  D009

HOUSTON JAMES
286 WESLEY DR

OZARK              ,AL  36360-0000

NOTES:
   SUMMONS & COMPLAINT

TO ANY SHERIFF OR ANY AUTHORIZED AGENT:
            YOU ARE HEREBY ORDERED TO DELIVER THE ATTACHED DOCUMENT
            TO THE ABOVE NAMED PERSON AT THE ADDRESS INDICATED.

   09/21/2006  DATE          CLERK: KIM S. BENEFIELD      BY: _____
                                    P. O. BOX 328
                                    WEDOWEE   AL   36278
                                    (256)357-4551

I HEREBY CERTIFY THAT I PERSONALLY DELIVERED A COPY OF THE ATTACHED
DOCUMENT IN _____*DATe*_____ COUNTY, ALABAMA
TO: _____

X _Kristy Houston_                    _____
                                      SIGNATURE OF SERVER

_____                       _10/03/06_
NAME / ADDRESS ABOVE                  DATE

OPERATOR: CYW
PREPARED: 09/21/2006

NIL 234 WC!    NIL 234    )

9-29-06 1205    RECEIVED

AVSO305    NIL 234

ALABAMA JUDICIAL DATA CENTER
RANDOLPH    COUNTY

ORDER FOR SERVICE AND RETURN    (CV) 2006 000145.00
ASSIGNED JUDGE

---

IN THE CIRCUIT COURT OF RANDOLPH    COUNTY

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL

SERVE ON: D012

234 MITCHAM HENRY
1919 MCDOWLING DR SE

HUNTSVILLE    ,AL  35803-0000

NOTES:
    SUMMONS & COMPLAINT

---

TO ANY SHERIFF OR ANY AUTHORIZED AGENT:
        YOU ARE HEREBY ORDERED TO DELIVER THE ATTACHED DOCUMENT
        TO THE ABOVE NAMED PERSON AT THE ADDRESS INDICATED.

  09/21/2006  DATE            CLERK: KIM S. BENEFIELD    BY: CU
                             P. O. BOX 328
                             WEDOWEE   AL   36278
                             (256)357-4551

---

I HEREBY CERTIFY THAT I PERSONALLY DELIVERED A COPY OF THE ATTACHED
    DOCUMENT IN _____ COUNTY, ALABAMA
    TO:

_____        _____
                                             SIGNATURE OF SERVER

_____

_____        _____
NAME / ADDRESS ABOVE                         DATE

OPERATOR: CYW
PREPARED: 09/21/2006

RANDOLPH COUNTY
P.O. BOX 347
WEDOWEE, AL 36278

AVSO305

AL _____ CENTER

73790

ORDER FOR SERVICE AND RETURN

CV 2006 000145.00
ASSIGNED JUDGE

IN THE CIRCUIT COURT OF RANDOLPH COUNTY

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL

SERVE ON:   D013

*N.F. Chanes phar Res-dont Know Dept*

PHARR JERRY
4705 AUGUSTA DR

EIGHT MILE        ,AL  36613-0000

RETURNED 10/5/06
Not found in my County after dili-
gent search and inquiry.
JACK S. TILLMAN, Sheriff
By _____ D.S.

NOTES:
    SUMMONS & COMPLAINT

TO ANY SHERIFF OR ANY AUTHORIZED AGENT:
        YOU ARE HEREBY ORDERED TO DELIVER THE ATTACHED DOCUMENT
        TO THE ABOVE NAMED PERSON AT THE ADDRESS INDICATED.

   09/21/2006   DATE         CLERK: KIM S. BENEFIELD      BY:
                             P. O. BOX 328
                             WEDOWEE  AL   36278
                             (256)357-4551

   I HEREBY CERTIFY THAT I PERSONALLY DELIVERED A COPY OF THE ATTACHED
      DOCUMENT IN _____ COUNTY, ALABAMA
      TO:

   _____        _____
                                             SIGNATURE OF SERVER

   _____        _____
   NAME / ADDRESS ABOVE                      DATE

OPERATOR: CYW
PREPARED: 09/21/2006

)                                    )

AVSO305                    ALABAMA JUDICIAL DATA CENTER
                              RANDOLPH      COUNTY

                        ORDER FOR SERVICE AND RETURN
                                              CV 2006 000145.00
                                          ASSIGNED JUDGE
--------------------------------------------------------------------------
              IN THE CIRCUIT COURT OF RANDOLPH      COUNTY

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL


SERVE ON:  D003



       BAUER MELISSA
       512 CLAY STREET

       ALBERTVILLE      ,AL  35950-0000


NOTES:
    SUMMONS & COMPLAINT



--------------------------------------------------------------------------
TO ANY SHERIFF OR ANY AUTHORIZED AGENT:
            YOU ARE HEREBY ORDERED TO DELIVER THE ATTACHED DOCUMENT
            TO THE ABOVE NAMED PERSON AT THE ADDRESS INDICATED.

  09/21/2006   DATE          CLERK: KIM S. BENEFIELD        BY: Cu
                                    P. O. BOX 328
                                    WEDOWEE  AL  36278
                                    (256)357-4551


--------------------------------------------------------------------------
  I HEREBY CERTIFY THAT I PERSONALLY DELIVERED A COPY OF THE ATTACHED
     DOCUMENT IN _____ COUNTY, ALABAMA
     TO:

  _____        _____
                                          SIGNATURE OF SERVER

  _____

  _____        _____
  NAME / ADDRESS ABOVE                    DATE
--------------------------------------------------------------------------
OPERATOR: CYW
PREPARED: 09/21/2006


THIS WRIT RETURNED NOT FOUND
     ( ) MOVED – NO FORWARDING ADDRESS
     ( ) INSUFFICIENT ADDRESS
     ( ) NOT EMPLOYED          Don'T Live AT  512 CLAS St
     (X) OTHER REASON
     ( ) AFTER REASONABLE SEARCH    10  02  06
     ( ) NO SUCH ADDRESS

              M. E. "MAC" HOLCOMB, SHERIFF
  _____  DEPUTY SHERIFF   Per ResiDenT

AVSO305

ALABAMA JUDICIAL DATA CENTER
RANDOLPH        COUNTY

ORDER FOR SERVICE AND RETURN

CV 2006 000145.00
ASSIGNED JUDGE

IN THE CIRCUIT COURT OF RANDOLPH        COUNTY

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL

SERVE ON:  D006

*Need At #*
*Insuf, Add.*
*316 az*

HENDERSON CHARLES
2101 31 AVE N

BIRMINGHAM       ,AL  35207-0000

NOTES:
SUMMONS & COMPLAINT

----------------------------------------------------------------

TO ANY SHERIFF OR ANY AUTHORIZED AGENT:
        YOU ARE HEREBY ORDERED TO DELIVER THE ATTACHED DOCUMENT
        TO THE ABOVE NAMED PERSON AT THE ADDRESS INDICATED.

09/21/2006  DATE              CLERK: KIM S. BENEFIELD        BY: _____
                             P. O. BOX 328
                             WEDOWEE   AL   36278
                             (256)357-4551

----------------------------------------------------------------

I HEREBY CERTIFY THAT I PERSONALLY DELIVERED A COPY OF THE ATTACHED
        DOCUMENT IN _____ COUNTY, ALABAMA
        TO :

_____          _____
                                          SIGNATURE OF SERVER

_____

_____

NAME / ADDRESS ABOVE                      DATE

*RCVD SEP 30 '06 AM10:14*

OPERATOR: CYW
PREPARED: 09/21/2006

WRIT RETURNED "NOT FOUND"
JEFFERSON COUNTY THIS _____
AY OF _____ Oct _____, 20 06
FOR THE FOLLOWING REASONS:
☐  2. MOVED
☒  8. INSUFFICIENT ADDRESS
☐  6. DOES NOT RESIDE AT ADDRESS
☐  7. NOT EMPLOYED AT LISTED LOCATION
☐ 12. NO SUCH ADDRESS
☐  9. AVOIDING SERVICE
☐ 13. RECEIVED TOO LATE FOR SERVICE
☐ 14. UNABLE TO CONTACT
☐ 16. OTHER
MIKE HALE, Sheriff of Jefferson County
By _____, D.S.

AVSO305

ALABAMA JUDICIAL DATA CENTER
RANDOLPH        COUNTY

ORDER FOR SERVICE AND RETURN

CV 2006 000145.00
ASSIGNED JUDGE

---

IN THE CIRCUIT COURT OF RANDOLPH        COUNTY

CLIFFORD BAILEY, ET. AL. VS MERCK & CO., INC ET. AL

SERVE ON:  D002

BARTLETT SCOTT
3255 CO RD 747

ANNISTON         ,AL  36202-0000

NOTES:
   SUMMONS & COMPLAINT

---

TO ANY SHERIFF OR ANY AUTHORIZED AGENT:
          YOU ARE HEREBY ORDERED TO DELIVER THE ATTACHED DOCUMENT
          TO THE ABOVE NAMED PERSON AT THE ADDRESS INDICATED.

   09/21/2006  DATE            CLERK: KIM S. BENEFIELD       BY:
                                      P. O. BOX 328
                                      WEDOWEE  AL  36278
                                      (256)357-4551

---

   I HEREBY CERTIFY THAT I PERSONALLY DELIVERED A COPY OF THE ATTACHED
      DOCUMENT IN _____ COUNTY, ALABAMA
      TO:

This address is not located within Calhoun County's jurisdiction.

AVSO305

ALABAMA JUDICIAL DATA CENTER
RANDOLPH         COUNTY

ORDER FOR SERVICE AND RETURN

CV 2006 000145.00
ASSIGNED JUDGE

--------------------------------------------------------------------

IN THE CIRCUIT COURT OF   RANDOLPH        COUNTY

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL

SERVE ON:  D016

WALKER-MCGLOTHAN NATASHA     *Not Jefferson*
3122 HIGHLAND LAKES RD

BIRMINGHAM      ,AL   35242-0000

NOTES:
    SUMMONS & COMPLAINT

--------------------------------------------------------------------
TO ANY SHERIFF OR ANY AUTHORIZED AGENT:
         YOU ARE HEREBY ORDERED TO DELIVER THE ATTACHED DOCUMENT
         TO THE ABOVE NAMED PERSON AT THE ADDRESS INDICATED.

    09/21/2006  DATE          CLERK: KIM S. BENEFIELD          BY:
                                     P. O. BOX 328
                                     WEDOWEE   AL   36278
                                     (256)357-4551

--------------------------------------------------------------------

   I HEREBY CERTIFY THAT I PERSONALLY DELIVERED A COPY OF THE ATTACHED
      DOCUMENT IN _____ COUNTY, ALABAMA
      TO:

   _____          _____
                                            SIGNATURE OF SERVER

   _____
   _____          _____
   NAME / ADDRESS ABOVE                      DATE
--------------------------------------------------------------------
OPERATOR: CYW
PREPARED: 09/21/2006

AVSO305

ALABAMA JUDICIAL DATA CENTER
RANDOLPH        COUNTY

ORDER FOR SERVICE AND RETURN

CV 2006 000145.00
ASSIGNED JUDGE

IN THE CIRCUIT COURT OF RANDOLPH        COUNTY

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL

SERVE ON:  D014

SANTIAGO MELISSA                 *NOT* Jeff.
223 VINEYARD LANE

BIRMINGHAM        ,AL   35242-0000

NOTES:
     SUMMONS & COMPLAINT

TO ANY SHERIFF OR ANY AUTHORIZED AGENT:
          YOU ARE HEREBY ORDERED TO DELIVER THE ATTACHED DOCUMENT
          TO THE ABOVE NAMED PERSON AT THE ADDRESS INDICATED.

  09/21/2006  DATE          CLERK: KIM S. BENEFIELD          BY: CW
                                   P. O. BOX 328
                                   WEDOWEE   AL   36278
                                   (256)357-4551

  I HEREBY CERTIFY THAT I PERSONALLY DELIVERED A COPY OF THE ATTACHED
     DOCUMENT IN _____ COUNTY, ALABAMA
     TO:

  _____          _____
                                            SIGNATURE OF SERVER

  _____

  _____          _____
  NAME / ADDRESS ABOVE                       DATE

OPERATOR: CYW
PREPARED: 09/21/2006

*390*

AVSO305

ALABAMA JUDICIAL DATA CENTER
RANDOLPH     COUNTY

ORDER FOR SERVICE AND RETURN

CV 2006 000145.00
ASSIGNED JUDGE

IN THE CIRCUIT COURT OF  RANDOLPH    COUNTY

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL

SERVE ON:  D010

*364 390*
*308 QZ*

*No such Address In Bittam.*

LOVETT LORI
5612 5 TERRY ST

BIRMINGHAM    ,AL  35212-0000

NOTES:
   SUMMONS & COMPLAINT

*JEFFERSON COUNTY*
*SHERIFF'S DEPT.*
*BESSEMER DIV.*
*'06 OCT -4 AM 10:04*

-----------------------------------------------
TO ANY SHERIFF OR ANY AUTHORIZED AGENT:
         YOU ARE HEREBY ORDERED TO DELIVER THE ATTACHED DOCUMENT
         TO THE ABOVE NAMED PERSON AT THE ADDRESS INDICATED.

   09/21/2006  DATE          CLERK: KIM S. BENEFIELD        BY:
                             P. O. BOX 328
                             WEDOWEE  AL  36278
                             (256)357-4551

*RSVD SEP 30 '06 AM10:15*

-----------------------------------------------
   I HEREBY CERTIFY THAT I PERSONALLY DELIVERED A COPY OF THE ATTACHED
      DOCUMENT IN _____ COUNTY, ALABAMA
      TO:

   _____          _____
                                        SIGNATURE OF SERVER
   _____

   _____          _____
   NAME / ADDRESS ABOVE                  DATE

OPERATOR: CYW
PREPARED: 09/21/2006

AVSO305

ALABAMA JUDICIAL DATA CENTER
RANDOLPH          COUNTY

ORDER FOR SERVICE AND RETURN

CV 2006 000145.00
ASSIGNED JUDGE

---

IN THE CIRCUIT COURT OF RANDOLPH          COUNTY

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL

SERVE ON: D008

HOLMES KATHERINE          319 AZ
2481 SAVOY STREET

HOOVER          ,AL   35226-0000

NOTES:
    SUMMONS & COMPLAINT

---

TO ANY SHERIFF OR ANY AUTHORIZED AGENT:
        YOU ARE HEREBY ORDERED TO DELIVER THE ATTACHED DOCUMENT
        TO THE ABOVE NAMED PERSON AT THE ADDRESS INDICATED.

    09/21/2006 DATE          CLERK: KIM S. BENEFIELD          BY: 
                                    P. O. BOX 328
                                    WEDOWEE   AL   36278
                                    (256)357-4551

RCVD SEP 30 '06 AM10:24

---

I HEREBY CERTIFY THAT I PERSONALLY DELIVERED A COPY OF THE ATTACHED
    DOCUMENT IN _____ COUNTY, ALABAMA
    TO:

_____          _____
                                    SIGNATURE OF SERVER

_____

_____

NAME / ADDRESS ABOVE          DATE _____

OPERATOR: CYW
PREPARED: 09/21/2006

THIS WRIT RETURNED "NOT FOUND"
IN JEFFERSON COUNTY THIS _____, 20___
DAY OF 10-4-06
FOR THE FOLLOWING REASONS:
☐ 2. MOVED
☐ 8. INSUFFICIENT ADDRESS
☐ 6. DOES NOT RESIDE AT ADDRESS
☐ 7. NOT EMPLOYED AT LISTED LOCATION
☐ 12. NO SUCH ADDRESS
☐ 9. AVOIDING SERVICE
☐ 13. RECEIVED TOO LATE FOR SERVICE
☐ 14. UNABLE TO CONTACT,
☐ 16. OTHER EMPTY HOUSE
MIKE HALE, Sheriff of Jefferson County

AVSO305

**ALABAMA JUDICIAL DATA CENTER**
**RANDOLPH      COUNTY**

**ORDER FOR SERVICE AND RETURN**

CV 2006 000145.00
ASSIGNED JUDGE

---

IN THE CIRCUIT COURT OF RANDOLPH      COUNTY

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC.

**THIS WRIT RETURNED "NOT FOUND"**

IN JEFFERSON COUNTY THIS _____

SERVE ON:  D011                                    DAY OF _10-9-06_ , 20____

FOR THE FOLLOWING REASONS:

    ☐ 2. MOVED

MELTON JULIE                          ☐ 8. INSUFFICIENT ADDRESS
5309 AVE S                            ☐ 6. DOES NOT RESIDE AT ADDRESS
                                      ☐ 7. NOT EMPLOYED AT LISTED LOCATION
BIRMINGHAM        ,AL  35212-0000     ☒ 12 NO SUCH ADDRESS
                                      ☐ 9. AVOIDING SERVICE
                                      ☐ 13 RECEIVED TOO LATE FOR SERVICE
                                      ☐ 14. UNABLE TO CONTACT
NOTES:                                ☐ 16 OTHER _____
  SUMMONS & COMPLAINT            MIKE HALE, Sheriff of Jefferson County

By _____ . D.S.

---

TO ANY SHERIFF OR ANY AUTHORIZED AGENT:
    YOU ARE HEREBY ORDERED TO DELIVER THE ATTACHED DOCUMENT
    TO THE ABOVE NAMED PERSON AT THE ADDRESS INDICATED.

  09/21/2006  DATE          CLERK: KIM S. BENEFIELD          BY: ____
                                  P. O. BOX 328
                                  WEDOWEE  AL  36278
                                  (256)357-4551

---

I HEREBY CERTIFY THAT I PERSONALLY DELIVERED A COPY OF THE ATTACHED
  DOCUMENT IN _____ COUNTY, ALABAMA
  TO:

_____

_____          SIGNATURE OF SERVER

_____          _____

NAME / ADDRESS ABOVE                        DATE

RCVD SEP 30 '06 AM 10:14

OPERATOR: CYW
PREPARED: 09/21/2006

AVSO305    ALABAMA JUDICIAL DATA CE
RANDOLPH    COUNTY
ORDER FOR SERVICE AND RETURN

IN THE CIRCUIT COURT OF RANDOLPH COUNTY

CLIFFORD BAILEY, ET. AL. VS MERCH & CO., INC ET. AL

SERVE ON:  D007

HODGES JULIE
14019 MARIELLEN RD SW

HUNTSVILLE        ,AL    35803-0000

NOTES:
    SUMMONS & COMPLAINT

---

TO ANY SHERIFF OR ANY AUTHORIZED AGENT:
        YOU ARE HEREBY ORDERED TO DELIVER THE ATTACHED DOCUMENT
        TO THE ABOVE NAMED PERSON AT THE ADDRESS INDICATED.

    09/21/2006   DATE            CLERK: KIM S. BENEFIELD          BY:
                                        P. O. BOX 328
                                        WEDOWEE   AL   36278
                                        (256)357-4551

---

    I HEREBY CERTIFY THAT I PERSONALLY DELIVERED A COPY OF THE ATTACHED
        DOCUMENT IN _____ COUNTY, ALABAMA
        TO:

    _____         _____
                                                SIGNATURE OF SERVER

    _____
    NAME / ADDRESS ABOVE                        _____
                                                DATE

OPERATOR: CYW
PREPARED: 09/21/2006

Macon County Sheriffs Dept

Negative Contact: _____
Negative Contact: _____
Negative Contact: _____

( ) Bad Address     ( ) No such Number
( ) Moved, left no Forwarding Address
( ) POE: _____
( ) Need Apartment Number
( ) Give to 1st/ 2nd/ 3rd Shift
( ) Send to _____ County
( ) Vacant House/Apartment
( ) No longer employed there
Remarks: _No Julie Hodges_
_lives there only a_
_Bettie Hodges_

Return Date: _9-29-06_

_M. Herrera_  _# 261_
Deputy Signature

ALABAMA JUDICIAL DATA CENTER
COURT PAYMENT SYSTEM

RANDOLPH COUNTY RECEIPT NUMBER: 039785
DATE OF RECEIPT: 09/21/2006 TIME: 13:38:57
RECEIPT FOR CASE: CV 2006 000145 00 BATCH: 2006129
RECEIVED FROM: HUBBARD JAMES

CLIFFORD BAILEY. ET. AL. VS MERCH & CO.. INC ET. AL

ACCOUNTS RECEIPTED:

| | |
|---|---|
| CV05 | $329.00 |
| JDMD | $800.00 |
| SERA | $160.00 |

RECEIVED BY: CYW CHECK AMOUNT $1.289.00

ALABAMA JUDICIAL DATA CENTER
COURT PAYMENT SYSTEM

RANDOLPH COUNTY RECEIPT NUMBER: 039785
DATE OF RECEIPT: 09/21/2006 TIME: 13:38:57
RECEIPT FOR CASE: CV 2006 000145 00 BATCH: 2006129
RECEIVED FROM: HUBBARD JAMES

CLIFFORD BAILEY. ET. AL. VS MERCH & CO.. INC ET. AL

ACCOUNTS RECEIPTED:
CV05 $329.00
JDMD $800.00
SERA $160.00

RECEIVED BY: CYW CHECK AMOUNT $1.289.00

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, CLIFFORD BLACK,            )
WESLEY CALHOUN, CURTIS DEASON,              )
RUTH GRAVES, MICKEY GRIZZARD,               )
JIMMY PERRY, HERBERT STANLEY                )
SIKES and PHILLIP THOMPSON                  )
                                            )
        Plaintiffs,                         )
                                            )
vs.                                         )    CASE NUMBER: CV-06- 145
                                            )
MERCK & CO., INC., a foreign or             )
domestic Corporation, DAVID                 )
SPARKMAN, KATHERINE HOLMES,                 )
LORI LOVETT, SCOTT BARTLETT,                )
CORAL HARPER, MELISSA SANTIAGO,             )
HENRY MITCHAM, JERRY PHARR,                 )
JASON DELK, CHARLES HENDERSON,              )
JAMES HOUSTON, JULIE MELTON,                )
JULIE HODGES, and MELISSA                   )
BAUER, NATASHA WALKER-                      )
MCGLOTHAN , RANDY WALLS, and the            )
defendants A, B, C, D, E, X & Z whether     )
singular or plural, being those persons,    )
firms or entities who or which              )
proximately caused or contributed to the)
Plaintiff's personal injury and Plaintiff's )
other harm and the other                    )
damages as complained of herein whose)
true names are unknown to the Plaintiffs)
but will be added by amendment when        )
correctly ascertained,                      )
                                            )
        Defendants.                         )

**Filed in Office**

SEP 2 1 2006

KIM S. BENEFIELD
Clerk of Circuit Court

## COMPLAINT

**NOW COME** the Plaintiffs, Clifford Bailey, Clifford Black, Wesley Calhoun,

Curtis Deason, Ruth Graves, Mickey Grizzard, Jimmy Perry, Herbert Stanley Sikes, and

Phillip Thompson, and state their claims for relief against defendants Merck & Co., Inc., a

Corporation (hereinafter generally referred to as Merck), Merck Corporation, a trade name

1

or division of Merck & Co., Inc. David Sparkman, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Melissa Bauer, Natasha Walker-McGlothan, Randy Walls, and against defendants A, B, C, D, E and F, and X and Z, whether singular or plural, being those persons, firms or entities who or which proximately caused or contributed to the Plaintiff's personal injuries and the other damages as complained of herein whose true names are unknown to the Plaintiffs but will be added by amendment when correctly ascertained, with the claims being as follows:

## GENERAL AND JURISDICTIONAL ALLEGATIONS

1.    Plaintiffs, Clifford Bailey, Clifford Black, Wesley Calhoun, Curtis Deason, Ruth Graves, Mickey Grizzard, Jimmy Perry, Herbert Stanley Sikes, and Phillip Thompson, are resident citizens of the State of Alabama and of Randolph County. Defendants were severally the marketer, promoter, seller, manufacturer, distributor and entity which did manufacture, create, design, test, label, package, distribute, supply, market, sell, advertise, fail to warn, and otherwise handle and distribute the product, Vioxx. Each defendant does business in Alabama and in Randolph County, and at all times relevant each sold in Alabama and in Randolph County, the aforementioned drug, or is otherwise subject to this Court's jurisdiction. The defendants do business by agent in this state and county and have caused tortious injury in this state and county by manufacturing and selling a dangerous and defective product. Each defendant, acting directly or by agent, is legally responsible to Plaintiffs as a consequence of that defendants' (A) transacting any business in this state, (B) contracting to supply services or goods in this state, (C) causing tortious injury or

2

damage by an act or omission in this state, (D) causing tortious injury or damage in this state by an act or omission outside this state and the defendant regularly does or solicits business, or engages in any other persistent course of conduct or derives substantial revenue from goods used or consumed or services rendered in this state, (E) causing injury or damage in this state to a person by breach of warranty expressly or impliedly made in the sale of goods outside this state when the defendant might reasonably have expected such other person to use, consume, or be affected by the goods in this state, and the defendant also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state, and otherwise had or has some minimum contacts with this state and, under the circumstances, it is fair and reasonable to require the defendant to come to this state to defend an action. The amount in controversy in this civil action exceeds the jurisdictional minimum for the Circuit Courts. This Court has jurisdiction hereof both as to the subject matter and in personam.

2.    Plaintiffs brings this action to recover damages for personal injuries, restitution, refunds, and/or for equitable and declaratory relief against defendants Merck & Co., Inc., a Foreign Corporation, Merck Corporation, a trade name or division of Merck & Co., Inc., and Merck Pharmaceutical Division, a Division of Merck Corporation, (collectively referred to herein as, "Merck" or "defendants"), which developed, tested, designed, marketed, distributed, promoted and sold Vioxx. The defendants David Sparkman, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Melissa Bauer, Natasha Walker-McGlothan, and Randy Walls are,

3

or have been employees of defendant, Merck and are persons who are liable to Plaintiffs and whose conduct is described in detail elsewhere in this Complaint. These defendants are resident citizens of Alabama. These defendants, and other persons whose true names are unknown to the Plaintiffs, set about to sell and market Vioxx throughout the state of Alabama and in such a manner that their conduct was a substantial proximate cause of the injuries suffered by Plaintiffs Clifford Bailey, Clifford Black, Wesley Calhoun, Curtis Deason, Ruth Graves, Mickey Grizzard, Jimmy Perry, Herbert Stanley Sikes, and Phillip Thompson. Defendants A, B, C, D, E, F, X and Z, whether singular or plural, are those persons, firms or entities who or which proximately caused or contributed to the Plaintiffs' damages as complained of herein whose true names are unknown to the Plaintiffs but will be added by amendment when correctly ascertained. As used in this Complaint, the general word "defendants" includes, incorporates, and is defined to mean, not only the named defendants, but also defendants A, B, C, D, E, F, X and Z, being those persons, firms or entities who or which proximately caused or contributed to the Plaintiffs' personal injuries and the other damages as complained of herein whose true names are unknown to the Plaintiffs but will be added by amendment when correctly ascertained.

3.      Vioxx has been associated with heart attacks, strokes and deaths, including cases of fatal cardiovascular events. Vioxx was recalled and removed from the market because it was unreasonably dangerous and defective.

4.      Excess deaths and cardiovascular events, hypertension, edema, kidney damage, aseptic meningitis, and slow healing of bone fractures are also associated with Vioxx.

5.      The relief sought in this action are actions by the court to (1) provide

damages for Plaintiffs' personal injuries, (2) reimburse monies paid for the recalled product, (3) otherwise compensate Plaintiffs, a consumer of Vioxx who has suffered the injuries described elsewhere in this Complaint, (4) to provide other benefits to which the Plaintiffs are entitled under the laws of the State of Alabama, and (5) the other relief sought in this Complaint.

## PARTIES TO THIS CIVIL ACTION

### PARTY Plaintiffs

6.      Plaintiffs, Clifford Bailey, Clifford Black, Wesley Calhoun, Curtis Deason, Ruth Graves, Mickey Grizzard, Jimmy Perry, Herbert Stanley Sikes, and Phillip Thompson, are resident citizens of the State of Alabama and of Randolph County.   Plaintiffs are residents of this county who prescribed, purchased and used Vioxx.  Plaintiffs, Clifford Bailey, Clifford Black, Wesley Calhoun, Curtis Deason, Ruth Graves, Mickey Grizzard, Jimmy Perry, Herbert Stanley Sikes, and Phillip Thompson, were prescribed and ingested Vioxx regularly after being prescribed the said drug by his physician.   Plaintiffs suffered personal injuries as a proximate result of the effects of his ingestion of Vioxx.  Plaintiffs experienced symptoms of Vioxx-induced cardiovascular events, suffered personal injury from the product defect in Vioxx and were at increased risk for developing further complications from such condition all as a proximate result of his ingestion of Vioxx.

7.      Plaintiffs, Clifford Bailey, Clifford Black, Wesley Calhoun, Curtis Deason, Ruth Graves, Mickey Grizzard, Jimmy Perry, Herbert Stanley Sikes, and Phillip Thompson were prescribed and consumed the product at the direction of their physicians in the State

of Alabama and in Randolph County.

**PARTIES DEFENDANT**

8.      Defendant, Merck & Co., Inc., is a corporation headquartered and with its principal place of business in Whitehouse Station, New Jersey. Merck & Co., Inc. manufactures, marketed and distributed Vioxx throughout the world, including Alabama. Defendants, David Sparkman, Natasha Walker-McGlothan, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Melissa Bauer, Natasha Walker-McGlothan, and Randy Walls, are persons employed by or associated with defendant, Merck, who are, with other Merck employees, the persons guilty of the conduct, the acts and omissions, specifically described and set forth in detail in this Complaint.

9.      On information and belief defendants David Sparkman, Natasha Walker-McGlothan, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Natasha Walker-McGlothan, Randy Walls, and Melissa Bauer, are resident citizens of the State of Alabama.

10.      Defendant, X is a corporation or other entity organized under the laws of the state of Alabama and having its principal place of business in the state of Alabama. This entity was or acted in concert with the defendants and is otherwise liable to Plaintiffs as described herein.

11.      Defendant, Z is a corporation or other entity organized under the laws of a state other than Alabama and having its principal place of business in a state other than Alabama. This entity was or acted in concert with the defendants and is otherwise liable

to Plaintiffs as described herein.

12.    At all times relevant hereto, defendants, including defendants A, B, C, D, E, F, X and Z whose true names are unknown to the Plaintiffs but will be added by amendment when correctly ascertained, were engaged in the business of developing, designing, marketing, distributing, promoting, testing, providing warnings concerning, labeling and/or selling the pharmaceutical Vioxx. On information and belief, defendants Merck Pharmaceutical Division and Merck Corporation otherwise were in control of the development, design, assembly, manufacture, warnings concerning, marketing and with others, the sale of Vioxx. As used in this Complaint, the general word "defendants" includes, incorporates, and is defined to mean, not only the named defendants, but also defendants A, B, C, D, E, F, X and Z, being those persons, firms or entities who or which proximately caused or contributed to the Plaintiff's personal injuries and the other damages as complained of herein whose true names are unknown to the Plaintiffs but will be added by amendment when correctly ascertained.

## JURISDICTION AND VENUE

13.    This Court has general subject matter jurisdiction and in personal jurisdiction on grounds as shown above.

14.    Venue is proper in this county in that the substantial relevant facts occurred in this county.

## FACTUAL ALLEGATIONS

15.  Vioxx is the brand name of Rofecoxib, one of the classes of drugs called "Cox-II

7

inhibitors," which are supposed to work to reduce inflammation and pain by providing analgesic and anti-inflammatory benefits to persons with, among other conditions, arthritis, and muscle pain.

16.    Vioxx has effects on prostaglandins at inflammatory sites, and on prostacyclin, vasodilators and  inhibitors of platelet aggregation.

17.    Vioxx, manufactured by Merck & Co., has a demonstrated risk that is or was misrepresented by Merck and benefits that were exaggerated and oversold to the public and physicians through an aggressive marketing campaign, while risks were purposefully hidden. Merck has profited tremendously from its misconduct described in this Complaint. Merck has been, with regard to Vioxx, over-promoting drugs that are far more expensive than older versions, but no better at relieving pain, while containing unreasonable risks of harm.

18.    When Vioxx (Rofecoxib) and Celebrex (Celecoxib), a new kind of pain medication known as Cox-2 inhibitors, were introduced in 1999, manufacturers and their supporters hailed them as a kind of "super-aspirin" that lacked the stomach-injuring side effects of the older non steroidal anti-inflammatory drugs (NSAIDs). But valid questions soon arose about the efficacy and safety of Cox-2 drugs. Celebrex is discussed herein because of the chemical similarity, and the notice to Merck provided by Celebrex events. Pharmacia Corporation makes Celebrex, which it describes as "a major advance in the treatment of the debilitating diseases osteoarthritis and rheumatoid arthritis, because of its efficacy and excellent gastrointestinal safety profile."

19.    The drugs, approved to treat arthritis, menstrual pain and "acute" pain in adults, have been heavily marketed to both doctors and consumers: Merck as to Vioxx,

8

which ran ads featuring former Olympic figure skater Dorothy Hamill, and spent over $160 million on consumer advertising in 2000; Celebrex spent almost $80 million, according to AdWatch, the health policy arm of the Henry Kaiser Family Foundation. The campaigns worked: In 2001, Vioxx, the 13th most prescribed drug in the United States, had worldwide sales of $2.6 billion.

20.     Older NSAIDs, such as ibuprofen, Naproxen and Diclofenac, work by inhibiting the two types of cyclooxygenase enzyme, one of which causes inflammation and thus pain. The Cox-1 enzyme, however, helps maintain the muscle surface of the gastrointestinal (GI) tract, so suppressing the enzyme can increase perforations, ulcers and bleeding. Vioxx, Celebrex and Bextra (Valdecoxib, introduced by G.D. Searle & Co. in 2001) suppress only the second enzyme, supposedly leaving the first alone to protect the GI tract.

21.     Merck's Vioxx Gastrointestinal Outcomes Research Study (VIGOR), performed from January 6, 1999 through March 17, 2000, involved about 8,000 participants and assessed only the drug's effects on the stomach; the company ordered no end-point analyses for effects on the cardiovascular system.

22.     The objectives of the VIGOR study were to (1) "determine the relative risk of confirmed PUB (Perforation, Ulcers, Bleeding) in patients taking 50mg of Vioxx daily compared to patients in the group taking Naproxen 1000mg/day," and (2) "study the safety and tolerability of Vioxx in patients with rheumatoid arthritis."

23.     The VIGOR data revealed that: (a) patients on Vioxx were five times more likely to suffer a heart attack as compared to patients on Naproxen; and (b) patients on Vioxx were 2.3 times more likely to suffer serious cardiovascular disease (including heart

9

attacks, ischemic stroke, unstable angina and sudden unexplained death) as compared to patients on Naproxen.

24.     The study concluded that Vioxx takers had a lower rate of GI distress than those taking naproxen. The researchers noted, "the incidence of myocardial infarction was lower among patients in the naproxen group than among those in the Rofecoxib group," but found "the overall mortality rate and the rate of death from cardiovascular causes were similar in the two groups." They drew conclusions only about clinical upper gastrointestinal events, bleeding and ulcers. Stroke is caused by Vioxx with the same mechanism as myocardial infarction.

25.  On March 27, 2000, Merck issued a press release stating that Vioxx caused fewer digestive tract problems than Naproxen.  The press release further stated that the VIGOR results did not show that Vioxx caused cardiovascular problems, but that Naproxen protected against them.

26.     After the VIGOR results were released, the FDA said Merck had minimized the fourfold to fivefold increase in heart attacks among study participants taking Vioxx compared with those taking Naproxen. It found the company's explanation that Vioxx did not increase the risk of heart attacks, but instead, Naproxen protected those taking it from heart attacks because the drug can thin the blood, like aspirin unacceptable. In a September 2001 warning letter to Merck, the FDA wrote, "You fail to disclose that your explanation is hypothetical, has not been demonstrated by substantial evidence, and that there is another reasonable explanation: that Vioxx may have pro-thrombotic properties."

27.     While Vioxx and Celebrex have been marketed as safer than traditional NSAIDs because of their stomach-protecting propensity, reports of serious side effects

10

have now emerged. The defendants knew the salient facts concerning their drug long before the discovery of dangers by outside researchers, but ignored or concealed risks and dangers and continued to misrepresent the safety (or lack of safety) of Vioxx. In June 2000, a research team led by A. Whelton noted in a presentation to the European United League Against Rheumatism (EULAR), of which Merck is a member and corporate sponsor, that Vioxx use resulted in a statistically significant increase in hypertension, myocardial infarction, and stroke. Not only did Merck do nothing to further accurately publish these studies, or warn consumers, but in August 2000, it denied the results with respect to hypertension in the official publication of the American Pharmaceutical Association, "Pharmacy Today." The medical journal, "The Lancet," published a study associating Vioxx with kidney failure, and other studies have associated both Vioxx and Celebrex with heart problems, kidney damage, aseptic meningitis and slow healing of bone fractures.

28. A metastudy by the Cleveland Clinic published in the Journal of the American Medical Association analyzed data from two major studies funded by the drug companies and two smaller ones, all for cardiovascular risks. (Debabrata Mukherjee et al., Risk of Cardiovascular Events Associated with Selective Cox-2 Inhibitors, 286 JAMA 954 (2001).) It found that neither Pharmacia/Pfizer nor Merck had identified and studied cardiovascular risks for their products. The annualized heart attack rates for patients taking Vioxx or Celebrex, the researchers found, were "significantly higher" than those in a group taking placebos. "The available data raise a cautionary flag about the risk of cardiovascular events with Cox-2 inhibitors," they concluded. Defendants set about to discredit and deny these studies.

11

29.     The FDA, which lists Vioxx and Celebrex information on the "Hot Topics" section of its Web site, required both drugs to carry the same stomach-upset and bleeding warnings ibuprofen and Naproxen had when the agency approved them in 1999.

30.     After the CLASS results, the FDA found that Celebrex is just as likely to cause ulcers as older NSAIDs and is no better at reducing pain or inflammation than ibuprofen. In June 2002, it mandated a new label for the drug, one without any claim that it is safer for the stomach than other NSAIDs.

31.     Because of information provided by Merck, the agency did allow Merck to change its Vioxx label to claim it has a lower risk than older NSAIDs of causing ulcers, gastrointestinal bleeding and other digestive-tract complications.

32.     As early as November 1999, an FDA memo stated that the board monitoring the VIGOR study was concerned about "excess deaths and cardiovascular events experienced in Group A [Vioxx group] compared to Group B [Naproxen]." In March 2002, the FDA reported that five people taking Vioxx had aseptic meningitis, an inflammation of membranes on the brain and spine. In April 2002, after the agency warned Merck that it had misrepresented the drug's safety and minimized potentially serious cardiovascular complications found in VIGOR, it required the company to include a warning of cardiovascular risks on the Vioxx label.

33.     The new warnings contained information long held by Merck, but consistent with later pattern and practice, concealed from consumers and their physicians. The new warnings included:

34.     "In VIGOR, a study in 8076 patients (mean age 58; VIOXX n=4047, Naproxen n=4029) with a median duration of exposure of 9 months, the risk of developing a serious

12

cardiovascular thrombotic event was significantly higher in patients treated with VIOXX 50 mg once daily (n=45) as compared to patients treated with Naproxen 500 mg twice daily (n=19)." ...

35.    "In a placebo-controlled database derived from 2 studies with a total 2142 elderly patients (mean age 75; VIOXX n=1067, placebo n=1075 with a median duration of exposure of approximately 14 months, the number of patients with serious cardiovascular thrombotic events was 21 vs. 35 for patients treated with VIOXX (Rofecoxib tablets and oral suspension) 25 mg once daily versus placebo, respectively. In these same 2 placebo-controlled studies, mortality due to cardiovascular thrombotic events was 8 vs. 3 for VIOXX versus placebo, respectively."

36.    Merck has repeatedly blamed its customers' cardiovascular events on underlying conditions, to avoid blaming Vioxx. The prestigious New England Journal of Medicine later stated in regard to "the implications of these observations with respect to selective cyclooxygenase-2 inhibitors": "...thrombosis would be expected to occur in patients who are already at increased risk because of other underlying conditions" and "In the VIGOR trial... The rates of nonfatal myocardial infarction, nonfatal stroke, and death from any vascular event were higher in the Rofecoxib group than in the naproxen group (0.8 percent vs. 0.4 percent, P<0.05). This difference was largely due to a difference in the incidence of myocardial infarction (0.4 percent in the Rofecoxib group vs. 0.1 percent in the naproxen group, P<0.01). In contrast, in the CLASS trial, in which 21 percent of the patients took aspirin, there was no significant difference the treatment groups in the incidence of major cardiovascular events."  NEJM Volume 345:433-442 August 9, 2001 Number 6.

37.    In 2002 and 2003, unknown to Plaintiffs and their doctors, Merck refused requests from the American Heart Association the National Stroke Association and the Arthritis Foundation that it conduct additional safety studies, claiming that Vioxx was safe and that it did not plan to conduct any such study.

38.    On October 30, 2003, an article in The Wall Street Journal, unknown to Plaintiffs or their doctors, reported that another study sponsored by Merck, and presented at the annual meeting of the American College of Rheumatology, confirmed an increased risk of heart attacks in patients taking Vioxx. According to the Wall Street Journal, within the first 30 days of taking Vioxx, the risk of a heart attack was increased by 30% as compared to Celebrex. This study looked at the records of 54,475 Medicare patients, all of whom were over 65, and was described by the eminent Dr. Eric Topol as "the best study to date."

39.    In 2003, unknown to Plaintiffs and their doctors, Dr. Jerry Avorn, a Divisional Director at Brigham and Women's Hospital in Boston and colleague Dr. Daniel H. Solomon reported in a Merck-financed study based on a survey of patient records, that Vioxx, even at some moderate dosages, increased cardiovascular risks.

40.    Merck disputed the findings of the Avorn-Solomon study, and the name of the Merck epidemiologist who had contributed to the study was removed from the report before it was published in a medical journal.

41.    From January through June, 2004, Merck spent an estimated $45 million on Vioxx advertising.

42.    In May 2004, the results of a study funded by the Canadian government were published in "The Lancet." The study reviewed data from 1.3 million elderly patients

14

(66 and older) taking Vioxx, Celebrex, a common arthritis pain pill (NSAID) or no medication. The records from approximately 130,000 persons randomly reviewed from the population base found that persons taking Vioxx had an 80% increase in hospital admissions for congestive heart failure within one year of taking Vioxx when compared to persons taking NSAIDS.

43.    On August 25, 2004, still unknown to Plaintiffs and thier doctors, Dr. David Graham, Associate Director for Science in the FDA's Office of Drug Safety, presented results of a database analysis of 1.4 million patients that showed Vioxx users are more likely to suffer a heart attack or sudden cardiac death than those taking Celebrex or an older NSAID.

44.    Despite the foregoing, on August 26, 2004, Merck continued to represent to physicians and consumers that Vioxx was safe, and that any cardiovascular and/or cardiothrombotic side effects were not associated with the drug. Merck stated in a press release that "Merck stands behind the efficacy, overall safety and cardiovascular safety of Vioxx."

45.    On September 30, 2004, Merck finally withdrew Vioxx from the market after basically admitting to additional information from its own studies that study participants taking Vioxx after 18 months had twice as high a risk of cardiovascular events as the placebo group.

46.    Defendants, David Sparkman, Natasha Walker-McGlothan, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Natasha Walker-McGlothan, Randy Walls,  and Melissa Bauer,  being the professional

15

staff of Merck for the sales of Merck's products in the state of Alabama were aware of all of the facts, points and details relevant to the dangers of Vioxx. Knowing these facts, the defendants had a duty to inform, immediately, the doctors to whom they had given samples or otherwise sold Vioxx or promoted Vioxx to such doctors and other persons, of the important facts described in this complaint. This duty was fully applicable to the said defendants, David Sparkman, Natasha Walker-McGlothan, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Natasha Walker-McGlothan, Randy Walls, and Melissa Bauer, and their employer, Merck, prior to the time that the Plaintiffs' use of Vioxx. The said defendants David Sparkman, Natasha Walker-McGlothan, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Natasha Walker-McGlothan, Randy Walls, and Melissa Bauer, and defendant Merck, had a full duty, obligation, and responsibility, to advise and warn, and to disclose that the facts that they had previously provided were no longer true or correct.

47. The said defendants, David Sparkman, Natasha Walker-McGlothan, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Natasha Walker-McGlothan, Randy Walls, and Melissa Bauer, and their employer, Merck, were both negligent and wanton in their failure to perform their duties and obligations under applicable law to advise all customers of Merck taking Vioxx directly or through their physicians of the dangers now known and disclosed, but said defendants and each and every one of them failed in his said duty imposed by law. The said defendants,

16

David Sparkman, Natasha Walker-McGlothan, Katherine Holmes, Lori Lovett, Scott

Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles

Henderson, James Houston, Julie Melton, Julie Hodges, Natasha Walker-McGlothan,

Randy Walls, and Melissa Bauer, and their employer, Merck, failed to exercise ordinary

and reasonable care in the performance of their job functions and duties.

48.    The said defendants David Sparkman, Natasha Walker-McGlothan,

Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry

Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie

Hodges, Natasha Walker-McGlothan, Randy Walls, and Melissa Bauer,  and their

employer, Merck, knew the foregoing true facts concerning Vioxx, prior to their

representations concerning the safety and efficacy of Vioxx, but nevertheless, continued

to represent that the product was safe and effective. The true facts, as indicated above,

were that the said drug, Vioxx, was unreasonably unsafe and unreasonably dangerous, but

the said individual defendants and their employer, Merck, willfully misrepresented the facts

to physicians and others in the state of Alabama with the plan, design and intent to market

the dangerous and defective drug notwithstanding the knowledge of the dangers and

defects, this conduct constitutes actionable fraud and deceit, and these misrepresentations

were relied upon by the medical community, physicians, the public and the Plaintiffs to the

detriment of the Plaintiffs in particular, and the customers of Merck, receiving Vioxx in

general. The actions of defendants and others combined and concurred to constitute a

conspiracy for which they are civilly liable.

49.    The acts and omissions of the defendants as described in this Complaint

constitute fraudulent suppression of material facts sufficient to toll the running of any and

all statutes of limitation, notice provisions, or other similar laws or requirements.  Further,

17

the pendency of class actions describing and designating persons in the class including and occupied by the Plaintiffs herein, constitutes sufficient commencement of an action to toll the statutes of limitations and other notice provisions under applicable law.

50.    The defendants, David Sparkman, Natasha Walker-McGlothan, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Natasha Walker-McGlothan, Randy Walls, and Melissa Bauer, and their employer, Merck, misrepresented material facts, and fraudulently suppressed material facts, including but not limited to those detailed in this complaint, to the medical community in general, the Alabama physicians, and the Plaintiffs' treating physicians in particular, with regard to the safety and effectiveness of the drug, Vioxx, which material misrepresentations and fraudulent suppressions, proximately caused the injuries, losses, and damages specified elsewhere in this complaint.    The defendants, David Sparkman, Natasha Walker-McGlothan, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Natasha Walker-McGlothan, Randy Walls, and Melissa Bauer, and their employer, Merck, , personally visited and otherwise called on Plaintiffs' prescribing physicians, and conspired and combined among themselves and with others, to cause the Plaintiffs' prescribing physicians to believe that Vioxx was safe and effective, when in fact it was not safe or effective to sufficiently outweigh the unreasonable risks of harm posed by Vioxx and the said defendants otherwise committed actionable fraud, misrepresentation, and fraudulent suppression which proximately caused the injuries to the Plaintiffs described elsewhere herein.  Plaintiffs did not know, and could not have known, that Vioxx was unsafe or that it had caused their injuries and damages, until after not

18

earlier than September 30, 2004. Then data was released November 13, 2005, at the

*American Heart Association* conference in Dallas, Texas, that was a study of 58,000

patients, which showed that heart disease patients taking 25 mg of Vioxx per day were five

times as likely to die as patients not taking the drug. Defendants continued to conceal,

suppress and secrete, important, relevant and crucial material information held by them

and not by others.

51.    While today Merck warns of "heart attacks and similar serious events have

been reported in patients taking Vioxx" at the time this information was hidden and

concealed, and representations were made by the defendants that indicated that the

product was, instead, safe and effective.

52.    As a result of the reliance by Plaintiffs, the medical community, and the public

generally on the representations and statements of the defendants, including the individual

defendants herein and Merck, the Plaintiffs took and consumed Vioxx. As a proximate

result and consequence of his ingestion of Vioxx and as a direct and proximate

consequence and result of the acts and omissions of the defendants including the

individual defendants as described herein, Plaintiffs were injured.

53.    Merck was well aware of the Pharmacia-sponsored Celebrex Long-Acting

Safety Study (CLASS), also involving about 8,000 arthritis sufferers, compared that drug

to the older NSAIDs ibuprofen and diclofenac to determine whether it was less harmful to

the stomach. In a JAMA article in 2000, the researchers published data accumulated over

six months and concluded that Celebrex caused fewer ulcers than the older drugs. (Fred

E. Silverstein et al., *Gastrointestinal Toxicity with Celecoxib vs. Nonsteroidal Anti-*

*inflammatory Drugs for Osteoarthritis and Rheumatoid Arthritis: The CLASS Study: A*

*Randomized Controlled Trial,* 284 JAMA 1247 (2000). However, researchers at that point

had 12 months of data that, when analyzed as a whole, showed no significant difference.

54.    The FDA said the CLASS study "did not show a safety advantage in upper gastrointestinal events for Celebrex compared to either ibuprofen or diclofenac." Because some of the study participants were also taking aspirin, which does affect the stomach, some analysts say the results may have been skewed. The company maintained that among those not taking aspirin, the rate of ulcers was lower in Celebrex takers. Again, Celebrex is relevant to this case because of the knowledge and notice provided to Merck and its defendant-employees.

55.    In a June 2002 editorial, the British Medical Journal said the Celebrex study misled consumers with "overoptimistic" data. It said the study was "seriously biased" because the complete results "clearly contradict[ed] the published conclusions" and showed a similar number of stomach complications in all patients, whether they took Celebrex or the older pain relievers.

56.    It has been reported that a substantial number of deaths worldwide have been associated with Vioxx.

57.    Plaintiffs seek, in addition to damages for personal injury, refunds of and restitution for monies paid as a result of their purchase of Vioxx, as well as all other ascertainable economic loss that occurred as a result of defendants' wrongful and improper conduct in connection with the manufacture, marketing, distribution, testing, promotion, labeling and/or selling of Vioxx. Plaintiffs therefore seek to have the defendants return the monies unlawfully and inappropriately acquired by them as a result of their sale of Vioxx.

58.    Plaintiffs seek to have defendants fully disclose and account for, and effect the accumulation and analysis of relevant medical information on Vioxx, including, but not

20

limited to, the results of all appropriate diagnostic tests performed as part of a medical research and for medical information concerning all persons as gathered, maintained and analyzed, and for medical research concerning the incidence, prevalence, natural course and history, diagnosis and treatment of Vioxx-induced personal injuries, and all this should be disclosed to Plaintiffs in this litigation.

## PLAINTIFFS' CLAIMS FOR RELIEF

## COUNT I

### PRODUCTS LIABILITY UNDER AEMLD AND STRICT LIABILITY PURSUANT TO §402A OF THE RESTATEMENT (SECOND) OF TORTS

59.    Plaintiffs incorporate by reference and re-alleges, as if fully set forth herein, each and every allegation contained in the other paragraphs of this Complaint, wherever contained.

60.    Defendants are manufacturers and/or suppliers of Vioxx and each had an opportunity to inspect the product which was superior to the knowledge or opportunity of the consumer's herein. The defendants were engaged in the business of manufacturing, creating, designing, testing, labeling, sterilizing, packaging, supplying, marketing, selling, advertising, warning and otherwise distributing Vioxx in interstate commerce, which they sold and distributed throughout the world, including the State of Alabama, to Plaintiffs.

61.    The Vioxx product supplied, distributed and manufactured by Merck, and A,

21

B, C, D and E and placed in the stream of commerce by defendants, and others were
defective and unreasonably dangerous in design, manufacture and/or formulation in that,
when it left the hands of the defendants as manufacturer and/or suppliers, the foreseeable
risks exceeded the benefits associated with the design or formulation and they were
unreasonably dangerous and defective. Plaintiffs show that they suffered injuries and
damages as a result of the sale by defendants who sold the product in defective condition
unreasonably dangerous to the ultimate consumer, and all the sellers were engaged in the
business of selling such product and product was expected to and did reach the user or
consumer without substantial change in the condition in which it is sold. The Plaintiffs were
using Vioxx in a manner for which it was intended or in a reasonably foreseeable manner.

62.    Vioxx was expected to and did reach the Plaintiffs without substantial change
in its condition as manufactured, created, designed, tested, labeled, sterilized, packaged,
supplied, marketed, sold, advertised, undertook to warn, and otherwise distributed.

63.    The Vioxx manufactured by Merck, and/or A, B, C, D and E and supplied by
them was defective in manufacture, design or formulation, in that, when it left the hands
of the manufacturer and/or suppliers, it was unreasonably dangerous, in that it not meet
the reasonable expectations of the ordinary consumer as to safety, and was more
dangerous than an ordinary consumer would expect and more dangerous than other pain
relievers. The Plaintiffs show that the product was unreasonably dangerous when it left
the defendants' control, that it was substantially unaltered when the Plaintiffs used it, and
that it proximately caused the Plaintiffs' injuries. The Plaintiffs were not aware of, and in
the exercise of reasonable caution could not have discovered, the dangerous nature of
Vioxx.

64.    The Vioxx manufactured and/or supplied by defendants was also defective

22

due to inadequate warning or instruction because the manufacturers and suppliers knew

or should have known that the products created an unreasonable risk of harm to

consumers and the defendants failed to adequately warn of said risks. The defendants'

Vioxx caused increased risks of excess deaths and cardiovascular events, as well as

kidney damage, aseptic meningitis, and slow healing of bone fractures upon consumption,

and therefore constitute a product unreasonably dangerous for normal use due to their

defective design, defective manufacture, and the defendants misrepresentations and

inadequate facts disclosed to the Plaintiffs and their doctors. The Vioxx manufactured

and/or supplied by defendants was defective due to inadequate care in marketing and

post-marketing warnings or instruction because, after the defendants knew or should have

known of the risk of injury from Vioxx and/or combination use of these drugs, they failed

to provide adequate warnings to users or consumers of the product and continued to

promote the product.

65.    As a direct and proximate result of defendants' manufacturing, creating,

designing, testing, labeling, sterilizing, packaging, supplying, marketing, selling, advertising,

warning, and otherwise distributing Vioxx in interstate commerce, Plaintiffs have suffered

the injuries described elsewhere in this Complaint and was at an increased risk of and did

in fact suffer by developing and suffering a cardiovascular event and has suffered

damages and Plaintiffs are entitled to compensatory and punitive damages in an amount

just and proper under law for personal injuries and other recoverable damages.

66.    The defendants, therefore, are liable to the Plaintiffs. The conduct of Merck

and A, B, C, D and E was gross, willful, wanton, oppressive, intentional, burdensome, and

otherwise such as to justify the imposition of punitive damages under Alabama law.

Additionally, defendants' conduct was so outrageous as to constitute ill will, bad motive and

reckless indifference to the interests of the consumers. The Plaintiffs, therefore, are entitled to punitive damages. All of the defendants are liable to Plaintiffs jointly and severally for all general, special and other relief to which the Plaintiffs are entitled by law. As a consequence of the producing cause and as a legal result of the dangerous and defective condition of Vioxx as sold, developed, designed, marketed, manufactured and/or supplied by defendants, and as a direct and legal result of the tort, AEMLD violation, negligence and wantonness, carelessness, other wrongdoing and action(s) of defendants described herein:

67.    Plaintiffs were injured in their health, strength and activity and suffered injuries to body and mind;

68.    Plaintiffs have sustained economic loss, loss of earnings and diminution or loss of earning capacity, the exact amount of which is presently unknown;

69.    Plaintiffs required reasonable and necessary health care, attention and services and did incur medical, health, incidental and related expenses. As a direct and proximate result of defendants' manufacturing, creating, designing, testing, labeling, sterilizing, packaging, supplying, marketing, selling, advertising, warning, and otherwise distributing Vioxx in interstate commerce, Plaintiffs have suffered the injuries described elsewhere in this Complaint and Plaintiffs have suffered damages and are entitled to recover compensatory and punitive damages in an amount just and proper under law for personal injuries and other recoverable damages.

## COUNT II

### NEGLIGENCE AND WANTONNESS

70.    Plaintiffs incorporate by reference and reallege, as if fully set forth herein, each and every allegation contained in the other paragraphs of this Complaint, wherever

contained.

71.    It was the duty of the defendants to use reasonable care in the manufacturing, creating, designing, testing, labeling, sterilizing, packaging, supplying, marketing, selling, advertising, warning and otherwise distributing Vioxx.

72.    Contrary to their duty, the said defendants were guilty of one or more of the following careless, negligent and wanton acts and/or omissions:

Said defendants failed adequately and properly to test, study and inspect Vioxx so as to ascertain whether or not it was safe and proper for the purpose for which it was designed, manufactured and sold;

Failed to utilize and/or implement a reasonably safe design in the manufacture of Vioxx;

Failed to manufacture Vioxx in a reasonably safe condition for which it was intended;

Failed to adequately and properly warn Plaintiffs purchasing Vioxx of the risks of complications when used in a manner for which it was intended;

Failed to adequately and properly warn Plaintiffs purchasing Vioxx of the risks of diseases when used in a manner for which it was intended;

Failed to adequately and properly label Vioxx so as to warn the Plaintiffs of the risks of complications;

Failed to adequately and properly label Vioxx so as to fairly and sufficiently warn the Plaintiffs of the risks of excess deaths and cardiovascular events as well as kidney damage, aseptic meningitis, and slow healing of bone fractures;

Manufactured Vioxx which constituted a hazard to health;

Manufactured Vioxx which caused adverse side effects;

Sold and pushed Vioxx and handed out samples thereof while _____ misrepresenting through word, deed, actions, distributing printed and other materials, all of the most important information concerning the dangers of Vioxx including especially the danger posed of sudden cardiovascular death; and were otherwise careless, negligent and wanton.

73.    As a direct and proximate result of defendants' manufacturing, creating, designing, testing, labeling, sterilizing, packaging, supplying, marketing, selling, advertising, warning, and otherwise distributing Vioxx in interstate commerce, Plaintiffs have suffered the injuries described elsewhere in this Complaint and Plaintiffs have suffered damages and are entitled to recover compensatory and punitive damages in an amount just and proper under law for personal injury and other recoverable damages.

## COUNT III

### NEGLIGENCE PER SE

74.    Plaintiffs incorporate by reference and reallege, as if fully set forth herein, each and every allegation contained in the other paragraphs of this Complaint, wherever contained.

75.    Defendants Merck, David Sparkman, Natasha Walker-McGlothan, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Natasha Walker-McGlothan, Randy Walls, and Melissa Bauer, and the fictitious defendants, had an obligation not to violate the law in the manufacture, design, formulation, compounding, testing, production, processing, assembly, inspection, research, distribution, marketing, labeling, packaging, preparation for use, sale and warning of the risks and dangers of Vioxx.

26

76.    Defendants, Merck, David Sparkman, Natasha Walker-McGlothan, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Natasha Walker-McGlothan, Randy Walls, and Melissa Bauer, and the fictitious defendants, violated Alabama Code §20-1-26, §20-1-27, and §8-19-5, et seq., related amendments and codes and regulations provided there under, and other applicable laws, statutes and regulations. No action is brought herein for violation of federal statutes, but claim is made for violation of the foregoing and any other state's applicable laws.

77.    Plaintiffs, as purchaser and consumer of Vioxx, are within the class of persons the state statutes and regulations described above are designed to protect and Plaintiffs' injuries are the type of harm these statutes are designed to prevent.

78.    The defendants, Merck, David Sparkman, Natasha Walker-McGlothan, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Natasha Walker-McGlothan, Randy Walls, and Melissa Bauer, and the fictitious defendants made false and fraudulent misrepresentations to physicians, Plaintiffs, and the general public that Vioxx is or was safe, effective, fit for its use as designated, and that it's components are not hazardous to the health of users all in violation of Alabama Code § 20-1-26 and 20-1-27 and other applicable law. defendants' acts constitute a breach of duty subjecting defendants to civil liability for all damages arising therefrom, under theories of negligence per se. Alabama Code §20-1-27 states that "No person shall engage in any of the following activities within this state:(1) Manufacture for sale herein, have in his or his possession with intent to sell, offer or expose for sale, sell, or deliver any article of food or drugs which is adulterated or misbranded within the meaning of this division."

27

79.    Said defendants failed to meet the standard of care set by the following statutes and regulations, which were intended for benefit of individuals such as Plaintiffs, making defendants negligent per se:

80.    The defendants made false and fraudulent misrepresentations to physicians, Plaintiffs, and the general public that Vioxx is or was safe, effective, fit for its use as designated, and that it's components are not hazardous to the health of users all in violation of Alabama Code § 20-1-26 and 20-1-27 and other applicable law;

81.    The labeling did bear or contain statements, designs or devices regarding the curative or therapeutic effect of Vioxx which were false or fraudulent and which concealed, in that they failed to provide adequate warnings of, severe and disabling medical side effects and conditions including, without limitations, cardiovascular events, hypertension and edema, as well as kidney damage, aseptic meningitis, and slow healing of bone fractures, excess deaths and adverse events and other adverse medical conditions as soon as there was reasonable evidence of their association with the drug;

82.    There was misleading and inadequate information for patients for the safe and effective use of defendants' drug in that a drug shall be deemed misbranded "if its package or label shall bear or contain any statement, design or device regarding the curative or therapeutic effect of such article or of any of the ingredients or substances contained therein which is false or fraudulent"; and

83.    There was misleading and inadequate information regarding special care to be exercised by the doctor for safe and effective use of defendants' drug, and the drug was therefore, misbranded.

84.    As a proximate result of the defendants' violations of the statutes described

28

above, Plaintiffs suffered injuries and personal injuries and damages as alleged herein.

## COUNT IV

### UNJUST ENRICHMENT

85.     Plaintiffs incorporate by reference and reallege, as if fully set forth herein, each and every allegation contained in the other paragraphs of this Complaint, wherever contained.

86.     As the intended and expected result of their conscious wrongdoing, defendants have profited and benefitted from the purchase of Vioxx by the Plaintiffs, to wit: (a) defendants have voluntarily accepted and retained these profits and benefits, derived from the Plaintiffs, with full knowledge and awareness that, as a result of defendants' fraud and other conscious and intentional wrongdoing, Plaintiffs were not receiving a product of the quality, nature, or fitness that had been represented by defendants or that Plaintiffs, as a reasonable consumer, expected.  (b) By virtue of the conscious wrongdoing alleged in this Complaint, defendants have been unjustly enriched at the expense of the Plaintiffs, who are entitled to in equity, and hereby seeks, the restitution of defendants' wrongful profits, revenue, and benefits, to the extent, and in the amount, deemed appropriate by the jury; and such other relief as the jury deems just and proper to remedy the defendants' unjust enrichment.

## COUNT V

### BREACH OF EXPRESS WARRANTY

87.     Plaintiffs incorporate by reference and re-allege, as if fully set forth herein, each and every allegation contained in the other paragraphs of this Complaint, wherever contained.

88.     Defendants expressly warranted to Plaintiffs, by and through statements

29

made by defendants or their authorized agents or sales representative, orally and in publications, package inserts and other written materials intended for physicians, medical patients and the general public, that Vioxx was safe, effective, fit and proper for its intended use.

89.    In using Vioxx, Plaintiffs relied on the skill, judgment, representations and foregoing express warranties of the defendants. Said warranties and representations were false in that the aforementioned product was not safe and was unfit for the uses for which it was intended.

90.    As a direct and proximate result of defendants breaches of warranties, Plaintiffs have suffered the injuries described elsewhere in this Complaint and Plaintiffs were at an increased risk of and did, in fact, suffer by developing cardiovascular events and has suffered damages for which Plaintiffs are entitled to recover from defendants in an amount just and proper under law for personal injury and other recoverable damages.

## COUNT VI

### BREACH OF IMPLIED WARRANTY

91.    Plaintiffs incorporate by reference and re-allege, as if fully set forth herein, each and every allegation contained in the other paragraphs of this Complaint, wherever contained.

92.    Prior to the time that Vioxx was used by Plaintiffs, defendants impliedly warranted to Plaintiffs that Vioxx was of merchantable quality and safe and fit for the use for which it was intended.

93.    Plaintiffs were unskilled in the subject of pharmacology or the research, design and manufacture of Vioxx and reasonably relied entirely on the skill, judgment and implied warranty of the defendants in using Vioxx.

30

94.    Vioxx was neither safe for its intended use nor of merchantable quality, as warranted by defendants, in that it had dangerous propensities when put to its intended use and would cause severe injuries and death to the user.

95.    As a direct and proximate result of defendants' breaches of warranties, Plaintiffs have suffered the injuries described elsewhere in this Complaint and Plaintiffs were at an increased risk of and did, in fact, suffer by developing cardiovascular events and have suffered damages for which Plaintiffs are entitled to recover from defendants in an amount just and proper under law for personal injuries and other recoverable damages.

## COUNT VII

### CORPORATE RESPONSIBILITY:

### JOINT VENTURES, PARENT/SUBSIDIARIES,

### AND/OR SUCCESSOR CORPORATION

96.    Plaintiffs incorporate by reference and re-allege, as if fully set forth herein, each and every allegation contained in the other paragraphs of this Complaint, wherever contained.

97.    As a result of their control or participation in various joint ventures, parent/subsidiary relationships and/or successor corporations, defendants are liable to the Plaintiffs.

98.    As a result of their negligent and wanton supervision and actual supervision of various joint ventures, parent/subsidiary relationships and/or successor corporations, defendants are liable to Plaintiffs.

99.    As a result of the existence or invalidity of various indemnification agreements, defendants are liable to Plaintiffs.

31

100.   Defendants are liable to Plaintiffs, as alter egos of their joint ventures, parent/subsidiary relationships and/or successor corporations.

## COUNT VIII

### CIVIL CONSPIRACY

101.   Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth here and further allege as follows:

102.   Defendants, Merck, David Sparkman, Natasha Walker-McGlothan, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Natasha Walker-McGlothan, Randy Walls, and Melissa Bauer, and fictitious defendants combined and conspired to do those acts complained of in Count I through Count IX, as a result of which the Plaintiffs have suffered harm, damages and injuries as previously described.

## COUNT IX

### FRAUD AND DECEIT

103.   Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth here and further allege as follows:

104.   Merck and the sales representative defendants made material misrepresentations of fact to the medical community, the Plaintiffs, the public generally, the governmental entities charged with the protection of the public from unsafe drugs, and to opinion leaders in the medical profession, intentionally in some cases and often with the specific intention of deceiving all these for monetary gain to the defendants, and in some cases negligently and wantonly, and even in rare cases, innocently, in all instances, with the intent and purpose to advance the sales of the dangerous drug Vioxx. The defendants

32

further suppressed material facts as to which they were under a duty to communicate to all of the above persons and entities. The misrepresentation and suppression was, in each case, of material and important facts essential for the health and safety of the public and of Plaintiffs in particular. As a result of the misrepresentations, deceit, and suppression by the defendants as set forth previously in this Complaint and as set forth below, these parties, and Plaintiffs were deceived and defrauded, and as a direct and proximate result of the said deceit, fraud, misrepresentation, and fraudulent suppression the Plaintiffs suffered the harm and injury as set forth in this Complaint.

105.    By the time Merck voluntarily withdrew the anti-inflammatory drug Vioxx from the market in September 2004, more than 100 million prescriptions had been dispensed in the United States. Yet the vast majority of these prescriptions were written by physicians after Merck and the Sales Representative defendants knew that evidence of Vioxx's risks had already surfaced. Even as evidence mounted in defendants' hands that use of Vioxx was associated with heart attacks and strokes, physicians continued to prescribe Vioxx to millions of patients. The reason is the fraudulent scheme perpetrated by the defendants. A major part of the explanation may be found by examining the strategies that Merck and its sales representatives used to market Vioxx to physicians. Based on Merck documents, Merck sent over 3,000 highly trained representatives, including the individual defendants herein, into doctors' offices and hospitals armed with misleading information about Vioxx's health risks. The documents indicate that Merck instructed these representatives to show physicians a pamphlet indicating that Vioxx might be 8 to 11 times safer than other anti-inflammatory drugs, prohibited the representatives from discussing contrary studies (including those financed by Merck) that showed increased risks from Vioxx, and launched special marketing programs — named "Project XXceleration" and "Project Offense" and

"Dodgeball"— to overcome the cardiovascular "obstacle" to increased sales.

106.    On information and belief, Plaintiffs aver that while some sales representatives eventually refused to continue with this course of conduct, other representatives, including the individual defendants herein, continued with the misrepresentations and fraudulent concealment, notwithstanding knowledge of the falsity and of the dangers to patients. The Sales Representative defendants were provided two types of materials relevant to drug safety and effectiveness: "approved" and "background" materials. The "approved" items were to be aggressively used in pushing Vioxx because they were things like medical journal articles favorable to Merck. On the other hand, the "background" materials also contained things unfavorable to Vioxx, and the Sales Representative defendants suppressed this information from the prescribing doctors as Merck requested.

107.    The documents reveal that Merck exhaustively trained its representatives on how to persuade doctors to prescribe Vioxx and other Merck products. No interaction with physicians appears to have been too insignificant for instruction. Merck representatives were taught how long to shake physicians' hands (three seconds), how to eat their bread when dining with physicians ("one small bite size piece at a time"), and how to use "verbal and non-verbal" cues when addressing a physician to "subconsciously raise... his/her level of trust." Merck instructed its representatives on the various personality types of doctors (including "technical," "supportive and expressive") and recommended targeted sales techniques for each type. And Merck rewarded its sales force with thousands of dollars in cash bonuses for meeting sales goals.

108.    The company assigned individual doctors a "Merck potential" and graded them on how often they prescribed Merck products. The Sales Representative defendants

34

were also involved in the Merck scheme to communicate misinformation about Vioxx to what defendants called "thought leaders" in the medical community. By this device, defendants could sell more Vioxx even to those doctors to whom they did not or could not speak directly or in detail. The "thought leaders" were to influence the medical community to push more Vioxx, despite the dangers, since they could "influence colleagues through peer-to-peer relationships." To help them do this, the Sales Representative defendants used Merck-paid honoraria (money) to these "thought leaders" to influence the medical community to favor Vioxx and to prescribe it notwithstanding the dangers.

109.    The documents describe in detail how Merck used this highly trained sales force to respond to reports of Vioxx's safety risks. The first public indication that Vioxx posed a heightened risk of heart attack and stroke came in March 2000, when Merck's VIGOR study showed a five-fold increase in the risks of heart attacks in patients on Vioxx compared to patients on Naproxen. This study was followed by cautionary discussions of the cardiovascular risks of Vioxx at a meeting of an advisory committee to the Food and Drug Administration in February 2001, in a New York Times article in May 2001, and in a paper in the Journal of the American Medical Association in August 2001.

110.    After each of these developments, Merck sent bulletins or special messages to its sales force, directing them to use highly questionable information to assuage any physician concerns.

111.    For example, the Merck documents show:

After Merck's VIGOR study reported increased heart attack risks, Merck directed its sales force to show physicians a "Cardiovascular Card" that made it appear that Vioxx could be 8 to 11 times safer than other anti-inflammatory drugs. This card omitted any reference to the VIGOR findings

35

and was based on data FDA considered to be inappropriate for a safety analysis.

After the FDA advisory committee voted that physicians should be informed about the risks found in the VIGOR study, Merck sent a bulletin to its sales force that advised: "DO NOT INITIATE DISCUSSIONS ON THE FDA ARTHRITIS COMMITTEE ... OR THE RESULTS OF THE ... VIGOR STUDY." If physicians asked about the VIGOR study, Merck representatives were directed to respond, "I cannot discuss the study with you." After the New York Times reported on the cardiovascular dangers of Vioxx, Merck instructed its field staff to tell physicians that patients on other anti-inflammatory medications were eight times more likely to die from cardiovascular causes than patients on Vioxx. The Merck bulletin told its sales force to show physicians the Cardiovascular Card and state: "Doctor, as you can see, Cardiovascular Mortality as reported in over 6,000 patients was Vioxx .1 vs. NSAIDS .8 vs. Placebo 0."

112.    After extensive negotiations, FDA and Merck agreed on a label change for Vioxx in April 2002, that mentioned the cardiovascular findings from the VIGOR study. The final label included the statement that the significance of these findings were "unknown." According to the documents, Merck instructed its representatives to emphasize this statement on new labels to counter physician safety concerns. Merck documents show that in fact the cardiovascular risks were actually well-known, but suppressed, by defendants.

113.    Merck and other drug companies maintain publicly that their representatives play a vital role in the health care system by educating physicians about new drugs and ongoing research. But the Merck documents reveal another side to company marketing

efforts. The documents show that Merck trained its representatives to capitalize subtly on every interaction with physicians to promote Merck products. When concerns about Vioxx's safety arose, Merck used this highly trained force to present a misleading picture to physicians about the drug's cardiovascular risks. Merck's and the Sales Representatives' promotional efforts explain in large part why Vioxx sales remained strong even as the evidence of the drug's dangers mounted. Prescribing doctors were massively misled.

114.   The Sales Representative defendants represented to the Plaintiffs' prescribing physicians false and misleading information concerning the drug Vioxx. The defendants, pursuant to the defendants' "Dodgeball" program and other plans to misrepresent the safety of Vioxx, communicated that the drug was safe for the cardiovascular system, and did not increase the risk stroke or heart attack. The Plaintiffs' physicians did prescribe the subject drug to the Plaintiffs, as a result of, and in reliance upon, the misrepresentations by the defendants' including the Sales Representative defendants who made direct communications to the physician. The physicians made determinations concerning the use of this medication based on false and fraudulent information provided by the defendants including the Sales Representative defendants, and did not act in their proper role as a learned professional in that physicians were given wrongful, false, incomplete, misleading and wrong information by the defendants, including the Sales Representative defendant.

115.   The negligence and wantonness of the defendants, including the Sales Representative defendants, was the proximate cause of the injuries and death suffered by Plaintiffs. Because the Plaintiffs' physicians were prevented from exercising and operating in their full role as learned professionals, because of missed information given to them by defendants, they were deprived of the full and adequate information needed to act in a

learned manner in deciding and determining how to prescribe pain relieving medication to the Plaintiffs, with the proximate result and consequence that the physicians did in fact prescribe the dangerous and deadly drug, Vioxx, to Plaintiffs, causing their injuries.

116.    The Plaintiffs suffered personal injuries as a direct and proximate result and consequence of the wrongful acts and omissions of each of the defendants. The Plaintiffs would not have been prescribed the subject drug, Vioxx, by his physician, if the physician had not been given wrongful and incorrect information by the defendants including the Sales Representative defendants.

117.    If defendants had not engaged in this conduct, consumers, such as the Plaintiffs, would have switched from Vioxx to safer products or refrained wholly from its efficacy.

118.    From approximately 1999 through the date of Plaintiffs injuries defendants engaged in a scheme of marketing, distributing and/or selling Vioxx under the guise that it was safe and efficacious for persons such as the Plaintiffs.

119.    Plaintiffs allege that the marketing strategies, including without limitation the detail and sampling programs and direct-to-consumer advertising, used by Merck, targeted consumers like the Plaintiffs to induce them to purchase and use Vioxx. defendants distributed, manufactured and marketed Vioxx, in a manner designed to convince and their physicians to rely on the marketing, advertisements and product information propounded by defendant.

120.    On September 30, 2004, Merck voluntarily removed Vioxx from all markets in the United States.

121.    The sales representative defendants negligently, recklessly, intentionally and fraudulently made material representations that Vioxx was safe and effective. The sales

38

representative defendants represented Vioxx as safe so that the general consuming public, including Plaintiffs and their physicians, would rely upon said representations when purchasing the product. The sales representative defendants also suppressed the cardiovascular risks from prescribing physicians, and consumers such as the Plaintiffs, even though they had knowledge of the risks.

122.    Merck trained its sales representatives, through programs such as the "Vioxx Obstacle Dodge Ball Program," the "Obstacle Response Guide for Vioxx," and "Top Ten Obstacle Handlers" to misstate, conceal, and misrepresent the truly dangerous nature of Vioxx to prescribing physicians. The sales representative defendants applied, utilized and put into practice each of these programs with the doctors in question.

123.    These programs were specifically designed and promulgated by Merck to mislead prescribing physicians about the safety of Vioxx.

124.    These programs were specifically designed and promulgated by Merck to mislead prescribing physicians about the life threatening side effects, including myocardial infarction and stroke, of Vioxx.

125.    Merck trained its sales representative force, including the sales representative defendants, to utilize its "Dodge Ball" and "Obstacle Avoidance" programs during the sales representatives' interactions with or "calls" upon prescribing physicians, and defendants put them into full effect with the subject doctors.

126.    These programs were utilized by sales representatives, including the sales representative defendants to "dodge" relevant safety questions by physicians to who promoted and or sold Vioxx. Indeed, these programs provide specific responses and representations that are to be made by Merck sales representatives to physicians during the sales calls or in response to physician questions. These Merck mandated responses

misrepresented the safety of Vioxx.

127.    The Vioxx Obstacle Dodge Ball Program identifies and categorizes physician safety questions as "obstacles" to Merck's sales force. The "Dodge Ball" program specifically instructs sales representatives, including the sales representative defendants, to "dodge" these physicians' safety related questions/obstacles. Indeed, the last few pages of the "Dodge Ball" instruction manual simply state "DODGE," "DODGE," and "DODGE." The safety questions to be "dodged" by sales representatives, including the sales representative defendants, include, inter alia, questions such as, "I am concerned about the cardiovascular effects of Vioxx," and "The competition has been in my office telling me that the incidence of heart attacks is greater with Vioxx than with Celebrex."

128.    Additional sales representative guidelines provide specific answers to physician questions/obstacles (such as those noted above) that were to be recited by sales representatives, including the sales representative defendants. The top three "obstacles" listed on the sales guidelines are physician safety questions involving Vioxx related "Cardiovascular Events." Sales representative, including the sales representative defendants, are thereafter provided with specific misrepresentations to make to the concerned physicians about the safety of Vioxx. For example, bulletins from Merck to its sales representatives state, "in response to recent published reports about Vioxx on May 1, 2000, we provided you with an approved verbal response to use to address customers' questions around the incidence rate of MI's [myocardial infarctions] on patients taking Vioxx..." (Bulletin for Vioxx: New PIRs Relative to Vioxx GI Outcomes Research Study). Sales representatives, including the sales representative defendants, were therefore required to misrepresent that Vioxx does not increase the rate of myocardial infarctions when compared with NSAID's. This misrepresentation is false and inaccurate, yet was

intentionally, knowingly, recklessly, wantonly and/or negligently made to treating physicians, including each Plaintiffs' prescribing physicians, by the individually named sales representatives. In an instructional video used to train sales representatives, an actress playing "an obstacle" to Vioxx sales says, "I'm afraid Vioxx causes M.I.'s" - a reference to myocardial infarctions, or heart attacks. In response, an actress playing a Merck sales representative says, "That's not true." This was wrong, Vioxx causes M.I.'s. The mechanism of Vioxx-induced heart attack and stroke is the same – vasoconstriction and blood-clot creation.

129.    Merck's sales representatives, specifically the sales representative defendants, utilized the misrepresentations contained in the obstacle avoidance programs to mislead each Plaintiffs' treating physicians concerning the safety of Vioxx and the occurrence of life threatening side effects, such as strokes and myocardial infarctions, from the usage of Vioxx.

130.    Merck and the individually named sales representatives further misrepresented the safety of Vioxx to prescribing physicians by providing written literature to the doctors that contained false statements about Vioxx's safety. Such literature would be forwarded to the physician who posed questions/obstacles to the sales representatives after the sales representatives had concluded their meeting with the physician, entitled "In Response To Your Questions" (follow-up literature that misrepresents Vioxx's cardiovascular safety) and "In Response To Your Questions: Cardiovascular System", which also misrepresents the risks associated with Vioxx.

131.    Sales representatives, including the sales representative defendants, were also ordered to send follow-up letters to physicians with whom they met who had posed questions/obstacles. These letters would downplay the cardiovascular risks associated with

Vioxx, even though the defendants were well aware that the risks existed.

132.    The underlying inducement for both Merck and its sales representatives, including the sales representative defendants, to make repeated misrepresentations to physicians about the safety of Vioxx was money. The more doctors prescribed Vioxx, the more money Merck made. The more doctors the sales representatives, including the sales representative defendants, cajoled into prescribing Vioxx, the more money and non-monetary bonuses the sales representatives received. Thus, sales representatives, such as the sales representative defendants, had a financial interest in disseminating the false and misleading information, while concealing the known risks (i.e., obstacle responses) outlined above to as many prescribing physicians as possible, including Plaintiffs' prescribing physicians

133.    Plaintiffs and their prescribing physicians reasonably relied, to their detriment, upon the false oral and written misrepresentations of Merck, and the sales representative defendants, concerning the safety of Vioxx and the absence of adverse cardiovascular events in users. Such reasonable reliance induced each Plaintiff's treating physician to prescribe his Vioxx and further induced the Plaintiffs to utilize the dangerous drug Vioxx. As a direct and proximate result of Plaintiff's usage of Vioxx, they were injured as described herein. Such event has caused Plaintiff's great pain and suffering, mental anguish, expense.

134.    On June 23, 2005 conduct of Merck and its sales representatives was summarized in the New England Journal of Medicine as follows:

"The pharmaceutical industry spends more than $5.5 billion to promote drugs to doctors each year — more than what all U.S. medical schools spend to educate medical students. Major drug companies employ about 90,000

sales representatives — one for every 4.7 doctors in the United States, according to the American Medical Association. Although substantial marketing expenditures are common in many industries, the potential effect of drug marketing on health raises special concerns. For years, the industry has justified these expenditures on the grounds that they fund essential education for doctors. According to the Web site of the Pharmaceutical Manufacturers and Research Association, "many physicians learn about new drugs - indeed, about ongoing research in their areas of specialization - largely through information provided by the companies that market new products." But if the primary goal is sales, not education, and the information provided to physicians is slanted or misleading, the health consequences for patients can be serious.

"Because of the recent events surrounding Rofecoxib, the May 5 hearing of the Government Reform Committee focused on Merck, the manufacturer of Vioxx... Merck cooperated voluntarily with our request for information, providing more than 20,000 pages of internal company documents. Merck also voluntarily sent a senior executive to testify at the hearing and answer the committee's questions. Yet as we learned, even a company like Merck can direct its sales force to provide clinicians with a distorted picture of the relevant scientific evidence.

"On February 7, 2001, the Arthritis Drugs Advisory Committee of the Food and Drug Administration (FDA) met to discuss the VIGOR study. At this meeting, Merck argued that the significant increase in the rate of myocardial infarction (which further analysis had determined to be a fivefold increase) was explained by a protective effect of naproxen, not by any inherent risk posed by its drug. After the FDA's medical reviewer and others expressed concern about

43

this explanation, the advisory committee voted unanimously that physicians should be made aware of VIGOR's cardiovascular results.

"The next day, Merck sent a bulletin to its Rofecoxib sales force of more than 3000 representatives. The bulletin ordered, "DO NOT INITIATE DISCUSSIONS ON THE FDA ARTHRITIS ADVISORY COMMITTEE . . . OR THE RESULTS OF THE . . . VIGOR STUDY." It advised that if a physician inquired about VIGOR, the sales representative should indicate that the study showed a gastrointestinal benefit and then say, "I cannot discuss the study with you."

"Merck further instructed its representatives to show those doctors who asked whether Rofecoxib caused myocardial infarction a pamphlet called "The Cardiovascular Card." This pamphlet, prepared by Merck's marketing department, indicated that Rofecoxib was associated with 1/8 the mortality from cardiovascular causes of that found with other anti-inflammatory drugs. Stroke is caused by Vioxx with the same mechanism as myocardial infarction.

"The Cardiovascular Card provided a misleading picture of the evidence on Rofecoxib. The card did not include any data from the VIGOR study. Instead, it presented a pooled analysis of preapproval studies, in most of which low doses of Rofecoxib were used for a short time. None of these studies were designed to assess cardiovascular safety, and none included adjudication of cardiovascular events. In fact, FDA experts had publicly expressed "serious concerns" to the agency's advisory committee about using the preapproval studies as evidence of the drug's cardiovascular safety.

"Persistent physicians who sought additional information about the

44

cardiovascular effects of Rofecoxib were directed to send inquiries to the company's headquarters. Merck's response to these physicians highlighted the misleading information from the Cardiovascular Card.

"Beyond these specific communications to physicians, our committee also heard evidence of a broad disparity between the evidence-based perspective provided by scientific journals and expert committees, on the one hand, and the sales pitch used by the company's field staff, on the other. Merck instructed its sales representatives, for example, to provide only certain approved study results to doctors. Approved scientific studies were defined as those that provide "solid evidence as to why [doctors] should prescribe Merck products for their appropriate patients." By contrast, those studies that raised safety questions about drugs were considered background studies. Distributing the results of a background study was "a clear violation of Company Policy."

"Merck also trained its representatives to identify speakers for educational events who were "opinion leaders" who could provide "favorable" views of the company's products to other doctors. Underlining the promotional nature of these events, Merck instructed its sales representatives to track whether the physicians who attended them subsequently prescribed more Merck drugs.

"In addition to providing selective evidence and biased presentations, Merck counseled its representatives to use an array of subliminal selling techniques to affect prescribing - potentially undermining the ability of physicians to choose drugs strictly on the basis of the risks, benefits, and costs for a particular patient. For example, in a training course on selling skills,

Merck taught representatives to mimic the words and body language of doctors during sales calls. The curriculum explained that 'mirroring is the matching of patterns, verbal and non-verbal, with the intention of helping you enter the customer's world. It is positioning yourself to match the person talking. It subconsciously raises his/her level of trust by building a bridge of similarity.'"

135.   The sales representative defendants personally performed the acts and omissions described herein and participated in the torts alleged herein. The sales representative defendants had knowledge of the cardiovascular risks associated with Vioxx, and misrepresented and/or concealed the nature of these risks to the opinion leaders in the local medical community, to the public, Plaintiffs, and to Plaintiff's physicians. The sales representative defendants were not acting as mere conduits, because they had knowledge that the information conveyed to each opinion leader, consumer, the public and to each of Plaintiffs' physicians, was false.

136.   Accordingly, the sales representative defendants are liable to Plaintiffs for the claims stated herein, and are fully responsible for their own personal acts and omissions whether performed for Merck or as a "frolic of their own" or otherwise. They acted for their own personal profit and "following orders" is not a defense where they acted personally in a negligent, wanton and deceitful manner.

137.   As a result of the misrepresentations, deceit, and suppression by the defendants as set forth previously in this Complaint and as set forth below, these parties, and Plaintiffs were deceived and defrauded, and as a direct and proximate result of the said deceit, fraud, misrepresentation, and fraudulent suppression the Plaintiffs suffered the harm and injury as set forth in this Complaint. The conduct of the defendants described in

all counts of this civil action is gross, oppressive, burdensome, willful, intentional, wanton and otherwise such as to justify the imposition of punitive damages under Alabama law.

**WHEREFORE**, Plaintiffs demand  judgment against Merck & Co., Inc.,  Merck Corporation, Merck Pharmaceutical Division, David Sparkman, Natasha Walker-McGlothan, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Natasha Walker-McGlothan, Randy Walls,  Melissa Bauer and defendants A, B, C, D, E, F, X and Z, whose true names are unknown to the Plaintiffs but will be added by amendment when correctly ascertained, jointly and severally in such sums of compensatory and punitive damages as the jury determines to be fair, just, and lawful plus costs of Court.


James S. Hubbard
Attorney for Plaintiffs


Thomas J. Knight
Attorney for Plaintiffs



HUBBARD & KNIGHT
Post Office Drawer 1850
Anniston, Alabama 36202
(256) 237-9586

| State of Alabama<br>Unified Judicial System<br><br>Form ARCiv-93   Rev.5/99 | **COVER SHEET**<br>**CIRCUIT COURT – CIVIL CASE**<br>(Not For Domestic Relations Cases) | Case Number<br>C V 2006 145 ☐☐ - ☐☐<br>Date of Filing:  06 21 2006   Judge Code: ☐☐☐☐☐<br>Month   Day   Year |
|---|---|---|

## GENERAL INFORMATION

IN THE CIRCUIT COURT OF _____ RANDOLPH COUNTY _____ , ALABAMA
*(Name of County)*

CLIFFORD BAILEY, et., als. _____ v. _____ MERCK & CO., INC., et. als. _____

| **Plaintiff** | | **Defendant** | |
|---|---|---|---|
| First Plaintiff ☐ Business  ☑ Individual | | First Defendant ☑ Business  ☐ Individual | |
| ☐ Government  ☐ Other | | ☐ Government  ☐ Other | |

**NATURE OF SUIT:** Select primary cause of action, by checking box (check only one) the best characterizes your action:

**TORTS: PERSONAL INJURY**
- ☐ WDEA - Wrongful Death
- ☐ TONG - Negligence: General
- ☐ TOMV - Negligence: Motor Vehicle
- ☐ TOWA - Wantonness
- ☐ TOPL - Product Liability/AEMLD
- ☐ TOMM - Malpractice-Medical
- ☐ TOLM - Malpractice-Legal
- ☐ TOOM - Malpractice-Other
- ☑ TBFM - Fraud/Bad Faith/Misrepresentation
- ☐ TOXX - Other: _____

**TORTS: PERSONAL INJURY**
- ☐ TOPE - Personal Property
- ☐ TORE - Real Properly

**OTHER CIVIL FILINGS**
- ☐ ABAN - Abandoned Automobile
- ☐ ACCT - Account & Nonmortgage
- ☐ APAA - Administrative Agency Appeal
- ☐ ADPA - Administrative Procedure Act
- ☐ ANPS - Adults in Need of Protective Services

**OTHER CIVIL FILINGS (cont'd)**
- ☐ MSXX - Birth/Death Certificate Modification/Bond Forfeiture Appeal/ Enforcement of Agency Subpoena/Petition to Preserve
- ☐ CVRT - Civil Rights
- ☐ COND - Condemnation/Eminent Domain/Right-of-Way
- ☐ CTMP - Contempt of Court
- ☐ CONT - Contract/Ejectment/Writ of Seizure
- ☐ TOCN - Conversion
- ☐ EQND - Equity Non-Damages Actions/Declaratory Judgment/Injunction Election Contest/Quiet Title/Sale For Division
- ☐ CVUD - Eviction Appeal/Unlawful Detainer
- ☐ FORJ - Foreign Judgment
- ☐ FORF - Fruits of Crime Forfeiture
- ☐ MSHC - Habeas Corpus/Extraordinary Writ/Mandamus/Prohibition
- ☐ PFAB - Protection From Abuse
- ☐ FELA - Railroad/Seaman (FELA)
- ☐ RPRO - Real Property
- ☐ WTEG - Will/Trust/Estate/Guardianship/Conservatorship
- ☐ COMP - Workers' Compensation
- ☐ CVXX - Miscellaneous Circuit Civil Case

**ORIGIN** *(check one):*  F ☑ INITIAL FILING    A ☐ APPEAL FROM DISTRICT COURT    O ☐ OTHER: _____

R ☐ REMANDED    T ☐ TRANSFERRED FROM OTHER CIRCUIT COURT

**HAS JURY TRIAL BEEN DEMANDED?** ☐ YES ☑ NO    Note: Checking "Yes" does not constitute a demand for a jury trial. (See Rules 38 and 39, Ala.R.Civ.P, for procedure)

**RELIEF REQUESTED:**  ☑ MONETARY AWARD REQUESTED    ☐ NO MONETARY AWARD REQUESTED

| ATTORNEY CODE: K N I 0 0 9 | 9/21/06 Date | *[signature]* Signature of Attorney/Party filing this form |
|---|---|---|

**MEDIATION REQUESTED:**  ☐ YES  ☐ NO  ☑ UNDECIDED

## Filed in Office

SEP 21 2006

KIM S. BENEFIELD
Clerk of Circuit Court

| State of Alabama<br>Unified Judicial System<br><br>Form C-34    Rev 6/88 | SUMMONS<br>-CIVIL- | Case Number<br><br>CV06-145 |
|---|---|---|

IN THE _____ CIRCUIT _____ COURT OF _____ RANDOLPH _____ COUNTY

Plaintiff _____ CLIFFORD BAILEY, et als. _____ v. Defendant _____ MERCK & CO. Inc. et als. _____

NOTICE TO _____ Scott Bartlett- 3255 County Road 747, Cullman, Al 35058 _____

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADDMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY _____ THOMAS J. KNIGHT _____ WHOSE ADDRESS IS _____ 1125 Noble Street, Post Office Box 1850, Anniston, Alabama 36202 _____.

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN ___ 30 ___ DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

**TO ANY SHERIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:**

☐  You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant.

☐  Service by certified mail of this summons is initiated upon the written request of _____ pursuant to the Alabama Rules of Civil Procedure.

Date ___ 9/21/06 ___          Kim S. Benefield By: ___ cu ___
                              Clerk/Register

☐  Certified Mail is hereby requested.          _____
                                                Plaintiff's/Attorney's Signature

RETURN ON SERVICE:

☐ Return receipt of certified mail received in this office on _____.
                                                                      (Date)

☐ I certify that I personally delivered a copy of the Summons and Complaint to _____
_____ in _____ County,
Alabama on _____.
              (Date)

Filed in Office

SEP 2 1 2006

KIM S. BENEFIELD
Clerk of Circuit Court

_____          _____
Date                                    Server's Signature

_____          _____
Address of Server                       Type of Process Server

| State of Alabama Unified Judicial System | SUMMONS -CIVIL- | Case Number |
|---|---|---|
| Form C-34      Rev 6/88 | | CV06-145 |

IN THE _____ CIRCUIT _____ COURT OF _____ RANDOLPH _____ COUNTY

Plaintiff ____ CLIFFORD BAILEY, et als. ____ v. Defendant ____ MERCK & CO. Inc. et als. ____

NOTICE TO _____ Melissa Bauer- 512 Clay Street, Albertville, Alabama 35950 _____

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADDMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY ____ THOMAS J. KNIGHT ____ WHOSE ADDRESS IS _____ 1125 Noble Street, Post Office Box 1850, Anniston, Alabama 36202 _____ .

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN ___ 30 ___ DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

**TO ANY SHERRIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:**

[X] You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant.

[ ] Service by certified mail of this summons is initiated upon the written request of _____ pursuant to the Alabama Rules of Civil Procedure.

Date : 9-21-06                  Kim S. Benefield      By: CW

Clerk/Register

[ ] Certified Mail is hereby requested.      _____

Plaintiff's/Attorney's Signature

RETURN ON SERVICE:

[ ] Return receipt of certified mail received in this office on _____ .

(Date)

[ ] I certify that I personally delivered a copy of the Summons and Complaint to _____
_____ in _____ County,
Alabama on _____ .

(Date)

_____

Date

_____

Address of Server

**Filed in Office**

Server's Signature   SEP 2 1 2006

Type of Process Server   KIM S. BENEFIELD
Clerk of Circuit Court

| State of Alabama<br>Unified Judicial System<br><br>Form C-34    Rev 6/88 | SUMMONS<br>-CIVIL- | Case Number<br><br>CV06-145 |
|---|---|---|

IN THE _____ CIRCUIT _____ COURT OF _____ RANDOLPH _____ COUNTY

Plaintiff _____ Clifford BAILEY, et als. _____ v. Defendant _____ MERCK & CO. Inc. et als. _____

NOTICE TO _____ Jason Delk- 1609 Bent River Circle, Vestavia Hills, Alabama 35216 _____

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADDMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY _____ THOMAS J. KNIGHT _____ WHOSE ADDRESS IS _____ 1125 Noble Street, Post Office Box 1850, Anniston, Alabama 36202 _____.

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN ___ 30 ___ DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

---

**TO ANY SHERIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:**

☐  You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant.

☐  Service by certified mail of this summons is initiated upon the written request of _____ pursuant to the Alabama Rules of Civil Procedure.

Date ___ 9/21/06 ___    _Kim S. Benefield_ By: _cw_

Clerk/Register

---

☐  Certified Mail is hereby requested.    _____

Plaintiff's/Attorney's Signature

**Filed in Office**

---

RETURN ON SERVICE:

SEP 2 1 2006

☐  Return receipt of certified mail received in this office on _____

KIM S. BENEFIELD
Clerk of Circuit Court

☐  I certify that I personally delivered a copy of the Summons and Complaint to _____ (Date)
_____ in _____ County,
Alabama on _____.
      (Date)

_____
Date

_____
Address of Server

_____
Server's Signature

_____
Type of Process Server

| State of Alabama<br>Unified Judicial System<br><br>Form C-34      Rev 6/88 | SUMMONS<br>-CIVIL- | Case Number<br><br>CV06-145 |
|---|---|---|

IN THE _____ CIRCUIT _____ COURT OF _____ RANDOLPH _____ COUNTY

Plaintiff ____ CLIFFORD BAILEY, et als. ____ v. Defendant ____ MERCK & CO. Inc. et als. ____

NOTICE TO _____ Coral Harper- 220 63 Street South, Birmingham, Al 35212 _____

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY ____ THOMAS J. KNIGHT ____ WHOSE ADDRESS IS _____ 1125 Noble Street, Post Office Box 1850, Anniston, Alabama 36202 _____.

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN __ 30 __ DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

**TO ANY SHERIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:**

☒ You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant.

☐ Service by certified mail of this summons is initiated upon the written request of _____ pursuant to the Alabama Rules of Civil Procedure.

Date 9-21-06 _____   Kim S. Benefield   By: CW

Clerk/Register

☐ Certified Mail is hereby requested.   _____

Plaintiff's/Attorney's Signature

RETURN ON SERVICE:

☐ Return receipt of certified mail received in this office on _____.

(Date)

☐ I certify that I personally delivered a copy of the Summons and Complaint to _____ in _____ County, Alabama on _____.

(Date)

**Filed in Office**

SEP 2 1 2006

KIM S. BENEFIELD
Clerk of Circuit Court

_____
Date

Server's Signature _____

_____
Address of Server

Type of Process Server

| State of Alabama<br>Unified Judicial System<br><br>Form C-34    Rev 6/88 | SUMMONS<br>-CIVIL- | Case Number<br><br>CV06-145 |
|---|---|---|

IN THE _____ CIRCUIT _____ COURT OF _____ RANDOLPH _____ COUNTY

Plaintiff _____ Clifford BAILEY, et als. _____ v. Defendant _____ MERCK & CO. Inc. et als. _____

NOTICE TO _____ Charles Henderson- 2101 31 Avenue North, Birmingham, Al 35207 _____

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY _____ THOMAS J. KNIGHT _____ WHOSE ADDRESS IS _____ 1125 Noble Street, Post Office Box 1850, Anniston, Alabama 36202 _____.

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN __ 30 __ DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

**TO ANY SHERIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:**

[X] You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant.

[ ] Service by certified mail of this summons is initiated upon the written request of _____ pursuant to the Alabama Rules of Civil Procedure.

Date _9-21-06_        Kim S. Benefield    By: _CW_

                      Clerk/Register

[ ] Certified Mail is hereby requested.    _____

                      Plaintiff's/Attorney's Signature

RETURN ON SERVICE:

[ ] Return receipt of certified mail received in this office on _____.

[ ] I certify that I personally delivered a copy of the Summons and Complaint to _____
_____ in _____ County,
Alabama on _____.
          (Date)

**Filed in Office**

SEP 2 1 2006

_____        _____
Date                   Server's Signature    KIM S. BENEFIELD

_____        Type of Process Server of Circuit Court
Address of Server

| State of Alabama Unified Judicial System | SUMMONS -CIVIL- | Case Number |
|---|---|---|
| Form C-34      Rev 6/88 | | CV06-145 |

IN THE _____ CIRCUIT _____ COURT OF _____ RANDOLPH _____ COUNTY

Plaintiff ___ CLIFFORD BAILEY, et als. ___  v.  Defendant ___ MERCK & CO. Inc. et als. ___

NOTICE TO _____ Julie Hodges- 14019 Mariellen Road SW, Huntsville, Alabama 35803 _____

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADDMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY _____ THOMAS J. KNIGHT _____ WHOSE ADDRESS IS _____ 1125 Noble Street, Post Office Box 1850, Anniston, Alabama 36202 _____.

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN ___ 30 ___ DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

**TO ANY SHERIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:**

[✓] You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant.

[ ] Service by certified mail of this summons is initiated upon the written request of _____ pursuant to the Alabama Rules of Civil Procedure.

Date __ 9/21/06 __          Kim S. Benefield By: CW

Clerk/Register

[ ] Certified Mail is hereby requested.          _____

Plaintiff's/Attorney's Signature

RETURN ON SERVICE:

[ ] Return receipt of certified mail received in this office on _____.
(Date)

[ ] I certify that I personally delivered a copy of the Summons and Complaint to _____ in _____ County, Alabama on _____.
(Date)

_____
Date

_____
Address of Server

**Filed in Office**

SEP 2 1 2006

_____
Server's Signature

Type of Process Server  KIM S. BENEFIELD
Clerk of Circuit Court

| State of Alabama Unified Judicial System<br><br>Form C-34    Rev 6/88 | SUMMONS<br>-CIVIL- | Case Number<br><br>CV06-145 |
| --- | --- | --- |

IN THE _____ CIRCUIT _____ COURT OF _____ RANDOLPH _____ COUNTY

Plaintiff _____ CLIFFORD BAILEY, et als. _____ v. Defendant _____ MERCK & CO. Inc. et als. _____

NOTICE TO _____ JamesHouston- 286 Wesley Drive, Ozark, Alabama 36360 _____

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY _____ THOMAS J. KNIGHT _____ WHOSE ADDRESS IS _____ 1125 Noble Street, Post Office Box 1850, Anniston, Alabama 36202 _____.

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN __30__ DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

**TO ANY SHERIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:**

[X]  You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant.

[ ]  Service by certified mail of this summons is initiated upon the written request of _____ pursuant to the Alabama Rules of Civil Procedure.

Date ___9/21/06___      _Kim S. Benefield_  By: _cw_

Clerk/Register

[ ]  Certified Mail is hereby requested.      _____

Plaintiff's/Attorney's Signature

RETURN ON SERVICE:

[ ]  Return receipt of certified mail received in this office on _____.
(Date)

[ ]  I certify that I personally delivered a copy of the Summons and Complaint to _____ in _____ County, Alabama on _____.
(Date)

_____
Date

_____
Address of Server

Filed in Office

SEP 2 1 2006

_____
Server's Signature

Type of Process Server

KIM S. BENEFIELD
Clerk of Circuit Court

| State of Alabama<br>Unified Judicial System<br><br>Form C-34    Rev 6/88 | SUMMONS<br>-CIVIL- | Case Number<br><br>CV06-145 |
| --- | --- | --- |

IN THE _____ CIRCUIT _____ COURT OF _____ RANDOLPH _____ COUNTY

Plaintiff ____ CLIFFORD BAILEY, et als. ____ v. Defendant ____ MERCK & CO. Inc. et als. ____

NOTICE TO _____ Julie Melton- 5309 Avenue S, Birmingham, Alabama 35212 _____

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY ____ THOMAS J. KNIGHT ____ WHOSE ADDRESS IS _____ 1125 Noble Street, Post Office Box 1850, Anniston, Alabama 36202 _____.

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN __ 30 __ DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

**TO ANY SHERIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:**

[X] You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant.

[ ] Service by certified mail of this summons is initiated upon the written request of _____ pursuant to the Alabama Rules of Civil Procedure.

Date ____ 9-21-06 ____    *Kim S Benefield*    By: _____
                          Clerk/Register

[ ] Certified Mail is hereby requested.    _____
                                          Plaintiff's/Attorney's Signature

RETURN ON SERVICE:

[ ] Return receipt of certified mail received in this office on _____.
                                                              (Date)

[ ] I certify that I personally delivered a copy of the Summons and Complaint to _____
_____ in _____ County,
Alabama on _____.
           (Date)

**Filed in Office**

SEP 2 1 2006

_____
Date

_____
Address of Server

_____
Server's Signature

KIM S. BENEFIELD
Type of Process Server
Clerk of Circuit Court

| State of Alabama<br>Unified Judicial System<br><br>Form C-34      Rev 6/88 | SUMMONS<br>-CIVIL- | Case Number<br><br>CV06-145 |

IN THE _____ CIRCUIT _____ COURT OF _____ RANDOLPH _____ COUNTY

Plaintiff _____ CLIFFORD BAILEY, et als. _____ v. Defendant _____ MERCK & CO. Inc. et als. _____

NOTICE TO ___ MERCK & CO. Inc., c/o The Corporation Company, 2000 Interstate ParkDr. Ste.204, ___
_____ Montgomery, AL   36109 _____
THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE
ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF
YOUR WRITTEN ANSWER, EITHER ADMMITING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH
THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR
YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY _____ THOMAS J. KNIGHT _____ WHOSE
ADDRESS IS _____ 1125 Noble Street, Post Office Box 1850, Anniston, Alabama 36202 _____.

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN ___ 30 ___ DAYS AFTER THIS SUMMONS AND
COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR
THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

**TO ANY SHERIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:**

[✓] You are hereby commanded to serve this summons and a copy of the complaint in this action upon the
defendant.

[ ] Service by certified mail of this summons is initiated upon the written request of _____
pursuant to the Alabama Rules of Civil Procedure.

Date ___ 9-21-06 ___          *Kim S. Benefield* By: _____
                                    Clerk/Register

[ ] Certified Mail is hereby requested.          _____
                                                  Plaintiff's/Attorney's Signature

RETURN ON SERVICE:

[ ] Return receipt of certified mail received in this office on _____.
                                                                        (Date)
[ ] I certify that I personally delivered a copy of the Summons and Complaint to _____
_____ in _____ County,
Alabama on _____.
              (Date)

**Filed in Office**

SEP 2 1 2006

_____          Server's Signature **KIM S. BENEFIELD**
Date                                         **Clerk of Circuit Court**

_____          _____
Address of Server                           Type of Process Server

| State of Alabama<br>Unified Judicial System<br><br>Form C-34      Rev 6/88 | SUMMONS<br>-CIVIL- | Case Number<br><br>CV06-145 |
|---|---|---|

IN THE _____ CURCUIT _____ COURT OF _____ RANDOLPH COUNTY _____ COUNTY

Plaintiff _____ CLIFFORD BAILEY, et. als _____ v. Defendant _____ MERCK & CO., INC., et. als. _____

NOTICE TO _____ HENRY MITCHAM,1919 MCDOWLING DR. SE, HUNTSVILLE, AL 35803 _____

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADDMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY _____ Thomas J. Knight _____ WHOSE ADDRESS IS _____ HUBBARD & KNIGHT, 1125 NOBLE STREET, P.O. BOX 1850, ANNISTON, AL. 36202 .

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN ___ 30 ___ DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

**TO ANY SHERIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:**

[X] You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant.

[ ] Service by certified mail of this summons is initiated upon the written request of _____ pursuant to the Alabama Rules of Civil Procedure.

Date _____ 9-21-06 _____          *Kim S. Benefield* By: _____

Clerk/Register

[ ] Certified Mail is hereby requested.          _____

Plaintiff's/Attorney's Signature

RETURN ON SERVICE:

[ ] Return receipt of certified mail received in this office on _____.
                                                                                    (Date)

[ ] I certify that I personally delivered a copy of the Summons and Complaint to _____
_____ in _____ County,
Alabama on _____.
                         (Date)

_____          _____

Date                                      Server's Signature

_____          _____

Address of Server                    Type of Process Server

*Filed in Office*
*SEP 21 2006*
*KIM S. BENEFIELD*
*Clerk of Circuit Court*

| State of Alabama<br>Unified Judicial System<br><br>Form C-34    Rev 6/88 | SUMMONS<br>-CIVIL- | Case Number<br><br>CV06-145 |
|---|---|---|

IN THE _____CIRCUIT_____ COURT OF _____RANDOLPH_____ COUNTY

Plaintiff ____CLIFFORD BAILEY, et als.____ v. Defendant ____MERCK & CO. Inc. et als.____

NOTICE TO _____Lori Lovett- 5612 5 Terry Street, Birmingham, AL 35212_____

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY ____THOMAS J. KNIGHT____ WHOSE ADDRESS IS _____1125 Noble Street, Post Office Box 1850, Anniston, Alabama 36202_____.

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN __30__ DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

**TO ANY SHERIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:**

[X] You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant.

[ ] Service by certified mail of this summons is initiated upon the written request of _____ pursuant to the Alabama Rules of Civil Procedure.

Date __9/21/06__    _Kim S. Benefield_ By: __ew__
                    Clerk/Register

[ ] Certified Mail is hereby requested.    _____
                                            Plaintiff's/Attorney's Signature

RETURN ON SERVICE:

[ ] Return receipt of certified mail received in this office on _____.
                                                                (Date)

[ ] I certify that I personally delivered a copy of the Summons and Complaint to _____ _____ in _____ County, Alabama on _____.
                    (Date)

**Filed in Office**

SEP 2 1 2006

KIM S. BENEFIELD
Clerk of Circuit Court

_____    Server Signature
Date

_____    Type of Process Server
Address of Server

| State of Alabama<br>Unified Judicial System<br><br>Form C-34    Rev 6/88 | SUMMONS<br>-CIVIL- | Case Number<br><br>CV06-145 |
|---|---|---|

IN THE _____ CURCUIT _____ COURT OF ___ RANDOLPH COUNTY ___ **COUNTY**

Plaintiff ___ CLIFFORD BAILEY, et. als ___ v. Defendant ___ MERCK & CO., INC., et. als. ___

NOTICE TO ___ KATHERINE HOLMES, 2481 SAVOY STREET, HOOVER, AL. 35226 ___

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADDMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY ___ Thomas J. Knight ___ WHOSE ADDRESS IS ___ HUBBARD & KNIGHT, 1125 NOBLE STREET, P.O. BOX 1850, ANNISTON, AL. 36202 ___.

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN ___ 30 ___ DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

**TO ANY SHERIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:**

[✓] You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant.

[ ] Service by certified mail of this summons is initiated upon the written request of _____ pursuant to the Alabama Rules of Civil Procedure.

Date _9/21/06_    _Kim S. Benefield_ By: _cw_

Clerk/Register

[ ] Certified Mail is hereby requested.    _____

Plaintiff's/Attorney's Signature

---

RETURN ON SERVICE:

[ ] Return receipt of certified mail received in this office on _____.
(Date)

[ ] I certify that I personally delivered a copy of the Summons and Complaint to _____
_____ in _____ County,
Alabama on _____.
(Date)

**Filed in Office**

SEP 2 1 2006

KIM S. BENEFIELD
Clerk of Circuit Court

Date _____

Address of Server _____

Server's Signature _____

Type of Process Server _____

| State of Alabama Unified Judicial System | SUMMONS -CIVIL- | Case Number |
|---|---|---|
| Form C-34    Rev 6/88 | | CV06-145 |

IN THE _____CIRCUIT_____ COURT OF _____RANDOLPH_____ COUNTY

Plaintiff ____CLIFFORD BAILEY, et als.____ v. Defendant ____MERCK & CO. Inc. et als.____

NOTICE TO _____Jerry Pharr- 4705 Augusta Drive, Eight Mile, Alabama 36613_____

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY _____THOMAS J. KNIGHT_____ WHOSE ADDRESS IS _____1125 Noble Street, Post Office Box 1850, Anniston, Alabama 36202_____

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN __30__ DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

**TO ANY SHERIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:**

[X]  You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant.

[ ]  Service by certified mail of this summons is initiated upon the written request of _____ pursuant to the Alabama Rules of Civil Procedure.

Date __9-21-06__          Kim S. Benefield          By: ____
                          Clerk/Register

[ ]  Certified Mail is hereby requested.          _____
                                                 Plaintiff's/Attorney's Signature

RETURN ON SERVICE:

[ ]  Return receipt of certified mail received in this office on _____.
                                                              (Date)

[ ]  I certify that I personally delivered a copy of the Summons and Complaint to _____
_____ in _____ County,
Alabama on _____.
                (Date)

_____          _____
Date                              Server's Signature

_____          _____
Address of Server                 Type of Process Server

Filed in Office
SEP 21 2006
KIM S. BENEFIELD
Clerk of Circuit Court

| State of Alabama<br>Unified Judicial System<br><br>Form C-34    Rev 6/88 | **SUMMONS<br>-CIVIL-** | **Case Number**<br><br>CV06-145 |
|---|---|---|

IN THE _____ CURCUIT _____ COURT OF _____ RANDOLPH COUNTY _____ **COUNTY**

Plaintiff _____ CLIFFORD BAILEY, et. als _____ v. Defendant _____ MERCK & CO., INC., et. als. _____

**NOTICE TO** _____ MELISSA SANTIAGO, 223 VINEYARD LANE, BIRMINGHAM, AL 35242 _____

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADDMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY _____ Thomas J. Knight _____ WHOSE ADDRESS IS _ HUBBARD & KNIGHT, 1125 NOBLE STREET, P.O. BOX 1850, ANNISTON, AL. 36202 _.

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN __ 30 __ DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

**TO ANY SHERRIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:**

[✓] You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant.

[ ] Service by certified mail of this summons is initiated upon the written request of _____ pursuant to the Alabama Rules of Civil Procedure.

Date _ 9-21-06 _          _Kim S. Benefield_ By: _CW_
                          Clerk/Register

[ ] Certified Mail is hereby requested.          _____
                                                 Plaintiff's/Attorney's Signature

**RETURN ON SERVICE:**

[ ] Return receipt of certified mail received in this office on _____.
                                                                (Date)

[ ] I certify that I personally delivered a copy of the Summons and Complaint to _____
_____ in _____ _____ County,
Alabama on _____.
              (Date)

_____          Filed in Office
Date

_____          SEP 21 2006
Address of Server
                                 KIM S. BENEFIELD
                                 Clerk of Circuit Court

                                 Server's Signature _____

                                 Type of Process Server _____

| State of Alabama<br>Unified Judicial System<br><br>Form C-34      Rev 6/88 | SUMMONS<br>-CIVIL- | Case Number<br><br>CV06-145 |
|---|---|---|

**IN THE** _____ CURCUIT _____ **COURT OF** _____ RANDOLPH COUNTY _____ **COUNTY**

**Plaintiff** _____ CLIFFORD BAILEY, et. als _____ v. **Defendant** _____ MERCK & CO., INC., et. als. _____

**NOTICE TO** _____ DAVID SPARKMAN, 545 ROCKY FORD ROAD, HARTSELLE, AL 35640 _____

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADDMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY _____ Thomas J. Knight _____ WHOSE ADDRESS IS _ HUBBARD & KNIGHT, 1125 NOBLE STREET, P.O. BOX 1850, ANNISTON, AL. 36202 .

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN ___ 30 ___ DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

**TO ANY SHERIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:**

[✓] You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant.

[ ] Service by certified mail of this summons is initiated upon the written request of _____ pursuant to the Alabama Rules of Civil Procedure.

Date _____ 9/21/06 _____     _Kim S. Benefield cw_
                                Clerk/Register

[ ] Certified Mail is hereby requested.     _____
                                            Plaintiff's/Attorney's Signature

**RETURN ON SERVICE:**

[ ] Return receipt of certified mail received in this office on _____ .
                                                              (Date)

[ ] I certify that I personally delivered a copy of the Summons and Complaint to _____
_____ in _____ County, Alabama on _____ .
                                (Date)

_Filed in Office_

SEP 2 1 2006

_____      Server's Signature  KIM S. BENEFIELD
Date                                            Clerk of Circuit Court

_____      _____
Address of Server            Type of Process Server

| State of Alabama<br>Unified Judicial System<br><br>Form C-34    Rev 6/88 | **SUMMONS**<br>**- CIVIL -** | Case Number<br><br>CV06-145 |
|---|---|---|

**IN THE** _____ CIRCUIT _____ **COURT OF** _____ RANDOLPH _____ **COUNTY**

**Plaintiff**    CLIFFORD BAILEY, et. als.    **v. Defendant**    MERCK & CO., INC., et. als.

**NOTICE TO** _____ NATASHA WALKER-MCGLOTHAN, 3122 HIGHLAND LAKES ROAD, BIRMINGHAM, AL  35242 _____

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT.  A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY _____ THOMAS J. KNIGHT _____ WHOSE

ADDRESS IS _____ HUBBARD & KNIGHT, 1125 NOBLE STREET, P.O. BOX 1850, ANNISTON, AL  36202 _____ .

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN _____ 30 _____ DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

TO ANY SHERIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:

☐ You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant.

☐ Service by certified mail of this summons is initiated upon the written request of _____ pursuant to the Alabama Rules of Civil Procedure.

Date _____ 9/21/04 _____    _Kim S. Benefield_ By: _CW_

Clerk/Register

☐ Certified Mail is hereby requested.    _____

Plaintiff's/Attorney's Signature

RETURN ON SERVICE:

☐ Return receipt of certified mail received in this office on _____ .
(Date)

☐ I certify that I personally delivered a copy of the Summons and Complaint to _____
_____ in _____ County,
Alabama on _____ .
(Date)

_____
Date

_____
Address of Server

**Filed in Office**

SEP 2 1 2006

_____
Server's Signature

KIM S. BENEFIELD
Clerk of Circuit Court

_____
Type of Process Server

| State of Alabama<br>Unified Judicial System<br><br>Form C-34    Rev 6/88 | SUMMONS<br>- CIVIL - | Case Number<br>CV00-145 |
|---|---|---|

IN THE _____ CIRCUIT _____ COURT OF _____ RANDOLPH _____ COUNTY

**Plaintiff**    CLIFFORD BAILEY, et. als.    **v. Defendant**    MERCK & CO., INC., et. als.

NOTICE TO _____ Randy Walls, 7620 Mack Hicks Road, Clay, AL  35048 _____

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY    THOMAS J. KNIGHT    WHOSE

ADDRESS IS    HUBBARD & KNIGHT, 1125 NOBLE STREET, P.O. BOX 1850, ANNISTON, AL  36202

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN    30    DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

TO ANY SHERIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:

☐ You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant.

☐ Service by certified mail of this summons is initiated upon the written request of _____ pursuant to the Alabama Rules of Civil Procedure.

Date    9-21-06    _Kim S. Benefield_    By: _CM_
                                          Clerk/Register

☐ Certified Mail is hereby requested.    _____
                                          Plaintiff's/Attorney's Signature

RETURN ON SERVICE:

☐ Return receipt of certified mail received in this office on _____ .
                                                                        (Date)

☐ I certify that I personally delivered a copy of the Summons and Complaint to _____
_____ in _____ County,
Alabama on _____ .
                    (Date)

Filed in Office

SEP 2 1 2006

_____
Date

_____
Address of Server

Server's Signature

Type of Process Server    KIM S. BENEFIELD
                          Clerk of Circuit Court

```
Court Name: U S DISTRICT COURT - AL/M
Division: 2
Receipt Number: 4602000439
Cashier ID: cstrecke
Transaction Date: 09/14/2007
Payer Name: RUSHTON STAKELY JOHNSTON
-----------------------------------
CIVIL FILING FEE
 For: RUSHTON STAKELY JOHNSTON
 Case/Party: D-ALM-3-07-CV-000827-001
 Amount:        $350.00
-----------------------------------
CHECK
 Remitter: RUSHTON STAKELY
 Check/Money Order Num: 102699
 Amt Tendered:  $350.00
-----------------------------------
Total Due:     $350.00
Total Tendered: $350.00
Change Amt:    $0.00
```

DALM307CV000827-MEF

THOMPSON V MERCK

RUSHTON STAKELY JOHNSTON

P O BOX 270

MONTGOMERY, AL  36101-0270



## IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, et al,           )
                                  )
    Plaintiffs,              )
                                  )
v.                                )    CASE NUMBER: CV-2006-145
                                  )
MERCK & CO., INC., et al,         )
                                  )
    Defendants.              )

*I, Chris May, Clerk of the Circuit Court of Randolph County, Alabama, do hereby certify that above and foregoing is a true and correct copy of CV07-119 Complete File as the same appears of record and on file in my office*

*Witness my hand and seal, this 10th day Sept Chris May, 200 Clerk of the Circuit Court of Randolph County, Alaba*

## ORDER

    By previous order of August 26, 2007, this Court granted the motion to sever filed by Defendant Merck & Co., Inc. In furtherance of that ruling, this Court hereby orders the Clerk of Court to create seven new case files. The claims of Plaintiff Clifford Bailey only shall remain pending under the case number referenced above (CV-2006-145).

    The respective claims of each of the seven remaining plaintiffs shall each be assigned a new civil action number by the clerk. A copy of the original complaint shall be included in each of the seven newly-created court files, a copy of Defendant's Answer, and a copy of the Court's order of August 26, 2007 and this order shall also be included in each of the case files.

    The clerk is further authorized to issue notices seeking the remittance of applicable filing fees as may be warranted.

    DONE AND ORDERED this 5th day of September, 2007

                                  /s/ Steve Perryman
                                  Circuit Judge

cc:
Thomas J. Knight                    Steven R. Morris
P.O. Drawer 1850                    P.O. Box 814
Anniston, AL 36202                  Wedowee, AL 36278-0814

F. Chadwick Morriss
Ben C. Wilson
Post Office Box 270
Montgomery, Alabama 36101-0270

EXHIBIT
G.



ELECTRONICALLY FILED
9/5/2007 11:22 AM
CV-2006-000145.00
CIRCUIT COURT OF
RANDOLPH COUNTY, ALABAMA
CHRIS MAY, CLERK

## IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

| | | |
|---|---|---|
| **CLIFFORD BAILEY, et al,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CASE NUMBER: CV-2006-145** |
| | ) | |
| **MERCK & CO., INC., et al,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### ORDER

By previous order of August 26, 2007, this Court granted the motion to sever filed by Defendant Merck & Co., Inc. In furtherance of that ruling, this Court hereby orders the Clerk of Court to create seven new case files. The claims of Plaintiff Clifford Bailey only shall remain pending under the case number referenced above (CV-2006-145).

The respective claims of each of the seven remaining plaintiffs shall each be assigned a new civil action number by the clerk. A copy of the original complaint shall be included in each of the seven newly-created court files, a copy of Defendant's Answer, and a copy of the Court's order of August 26, 2007 and this order shall also be included in each of the case files.

The clerk is further authorized to issue notices seeking the remittance of applicable filing fees as may be warranted.

DONE AND ORDERED this 5th day of September, 2007

/s/ Steve Perryman
Circuit Judge

cc:

Thomas J. Knight
P.O. Drawer 1850
Anniston, AL 36202

F. Chadwick Morriss
Ben C. Wilson
Post Office Box 270
Montgomery, Alabama 36101-0270

Steven R. Morris
P.O. Box 814
Wedowee, AL 36278-0814



IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, et al,                *
                                       *
    Plaintiff                       *
                                       *
v.                                     *    CASE NO. CV-06-145
                                       *
MERCK & CO., INC., et al,              *
                                       *
    Defendant                       *

## ORDER

This matter came before the Court on the Defendant, Merck's Motion to Severe. After consideration of the oral arguments, briefs and reading of cases on point, the court makes the following findings of fact and ruling. First, in the litigation at hand, the court is considering whether the joinder of the plaintiffs is proper under Rule 20 of the Rules of Civil Procedure. In order to be proper, Rule 20 requires that the cause of action arise out of the same transaction, occurrence, or series of transactions or occurrences for all plaintiffs. In this case there is no question that the plaintiffs' injuries did not arise out of the same or even similar transactions or occurrences. The court considered the following in making this determination:

1. None of the patients were prescribed Vioxx by the same physician.

2. The plaintiffs took different doses of the medication.

3. The plaintiff's took the medication for different durations.

4. The plaintiff's were in various states of health prior to and during the ingestion of Vioxx.

1

5.  The plaintiff's allegedly suffered widely different affects from the ingestion of Vioxx.

6.  The plaintiff's allege that Vioxx failed to warn the physicians and the consumers of the dangers of taking Vioxx; however, different warnings, oral and written, were given during the time periods covered by the different plaintiffs. The Patient Package Insert was modified during the periods that the different plaintiffs began taking Vioxx.

For these reasons, the court feels that a joinder of these numerous plaintiffs is improper.  The court will look at consolidating some of these plaintiffs pursuant to Rule 42 after further discovery.  However, at this time it is

**ORDERED, ADJUDGED and DECREED** as follows:

That defendant, Merck & Co., Inc.'s motion to severe is granted.  This matter shall proceed as eight different causes of action with each plaintiff proceeding separately.

Done this the 26th day of August, 2007.

*/s/ Steve R. Perryman*
STEVE R. PERRYMAN
Circuit Judge

2

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

CLIFFORD BAILEY, CLIFFORD BLACK,  )
WESLEY CALHOUN, CURTIS DEASON,  )
RUTH GRAVES, MICKEY GRIZZARD,  )
JIMMY PERRY, HERBERT STANLEY  )
SIKES and PHILLIP THOMPSON  )
                                   )
       Plaintiffs,  )
                                     )
vs.  )    CASE NUMBER: CV-06-~~145~~   CV07-119
                                     )
MERCK & CO., INC., a foreign or  )
 domestic Corporation, DAVID  )
SPARKMAN, KATHERINE HOLMES,  )
LORI LOVETT, SCOTT BARTLETT,  )
CORAL HARPER, MELISSA SANTIAGO,  )
HENRY MITCHAM, JERRY PHARR,  )
JASON DELK, CHARLES HENDERSON,  )
JAMES HOUSTON, JULIE MELTON,  )
JULIE HODGES, and MELISSA  )
BAUER, NATASHA WALKER-  )
MCGLOTHAN , RANDY WALLS, and the  )
defendants A, B, C, D, E, X & Z whether  )
singular or plural, being those persons,  )
firms or entities who or which  )
proximately caused or contributed to the)
Plaintiff's personal injury and Plaintiff's  )
other harm and the other  )
damages as complained of herein whose)
true names are unknown to the Plaintiffs)
but will be added by amendment when  )
correctly ascertained,  )
                                     )
       Defendants.  )

**Filed in Office**

SEP 2 1 2006

KIM S. BENEFIELD
Clerk of Circuit Court

---

## <u>COMPLAINT</u>

      **NOW COME** the Plaintiffs, Clifford Bailey, Clifford Black, Wesley Calhoun,

Curtis Deason, Ruth Graves, Mickey Grizzard, Jimmy Perry, Herbert Stanley Sikes, and

Phillip Thompson, and state their claims for relief against defendants Merck & Co., Inc., a

Corporation (hereinafter generally referred to as Merck), Merck Corporation, a trade name

1

or division of Merck & Co., Inc. David Sparkman, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Melissa Bauer, Natasha Walker-McGlothan, Randy Walls, and against defendants A, B, C, D, E and F, and X and Z, whether singular or plural, being those persons, firms or entities who or which proximately caused or contributed to the Plaintiff's personal injuries and the other damages as complained of herein whose true names are unknown to the Plaintiffs but will be added by amendment when correctly ascertained, with the claims being as follows:

## GENERAL AND JURISDICTIONAL ALLEGATIONS

1.    Plaintiffs, Clifford Bailey, Clifford Black, Wesley Calhoun, Curtis Deason, Ruth Graves, Mickey Grizzard, Jimmy Perry, Herbert Stanley Sikes, and Phillip Thompson, are resident citizens of the State of Alabama and of Randolph County. Defendants were severally the marketer, promoter, seller, manufacturer, distributor and entity which did manufacture, create, design, test, label, package, distribute, supply, market, sell, advertise, fail to warn, and otherwise handle and distribute the product, Vioxx. Each defendant does business in Alabama and in Randolph County, and at all times relevant each sold in Alabama and in Randolph County, the aforementioned drug, or is otherwise subject to this Court's jurisdiction. The defendants do business by agent in this state and county and have caused tortious injury in this state and county by manufacturing and selling a dangerous and defective product. Each defendant, acting directly or by agent, is legally responsible to Plaintiffs as a consequence of that defendants' (A) transacting any business in this state, (B) contracting to supply services or goods in this state, (C) causing tortious injury or

2

damage by an act or omission in this state, (D) causing tortious injury or damage in this

state by an act or omission outside this state and the defendant regularly does or solicits

business, or engages in any other persistent course of conduct or derives substantial

revenue from goods used or consumed or services rendered in this state, (E) causing

injury or damage in this state to a person by breach of warranty expressly or impliedly

made in the sale of goods outside this state when the defendant might reasonably have

expected such other person to use, consume, or be affected by the goods in this state, and

the defendant also regularly does or solicits business, or engages in any other persistent

course of conduct, or derives substantial revenue from goods used or consumed or

services rendered in this state, and otherwise had or has some minimum contacts with this

state and, under the circumstances, it is fair and reasonable to require the defendant to

come to this state to defend an action. The amount in controversy in this civil action

exceeds the jurisdictional minimum for the Circuit Courts. This Court has jurisdiction hereof

both as to the subject matter and in personam.

2.     Plaintiffs brings this action to recover damages for personal injuries,

restitution, refunds, and/or for equitable and declaratory relief against defendants Merck

& Co., Inc., a Foreign Corporation, Merck Corporation, a trade name or division of Merck

& Co., Inc., and Merck Pharmaceutical Division, a Division of Merck Corporation,

(collectively referred to herein as, "Merck" or "defendants"), which developed, tested,

designed, marketed, distributed, promoted and sold Vioxx. The defendants David

Sparkman, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago,

Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie

Melton, Julie Hodges, Melissa Bauer, Natasha Walker-McGlothan, and Randy Walls are,

or have been employees of defendant, Merck and are persons who are liable to Plaintiffs and whose conduct is described in detail elsewhere in this Complaint. These defendants are resident citizens of Alabama. These defendants, and other persons whose true names are unknown to the Plaintiffs, set about to sell and market Vioxx throughout the state of Alabama and in such a manner that their conduct was a substantial proximate cause of the injuries suffered by Plaintiffs Clifford Bailey, Clifford Black, Wesley Calhoun, Curtis Deason, Ruth Graves, Mickey Grizzard, Jimmy Perry, Herbert Stanley Sikes, and Phillip Thompson. Defendants A, B, C, D, E, F, X and Z, whether singular or plural, are those persons, firms or entities who or which proximately caused or contributed to the Plaintiffs' damages as complained of herein whose true names are unknown to the Plaintiffs but will be added by amendment when correctly ascertained. As used in this Complaint, the general word "defendants" includes, incorporates, and is defined to mean, not only the named defendants, but also defendants A, B, C, D, E, F, X and Z, being those persons, firms or entities who or which proximately caused or contributed to the Plaintiffs' personal injuries and the other damages as complained of herein whose true names are unknown to the Plaintiffs but will be added by amendment when correctly ascertained.

3.      Vioxx has been associated with heart attacks, strokes and deaths, including cases of fatal cardiovascular events.  Vioxx was recalled and removed from the market because it was unreasonably dangerous and defective.

4.      Excess deaths and cardiovascular events, hypertension, edema, kidney damage, aseptic meningitis, and slow healing of bone fractures are also associated with Vioxx.

5.      The relief sought in this action are actions by the court to (1) provide

4

damages for Plaintiffs' personal injuries, (2) reimburse monies paid for the recalled product, (3) otherwise compensate Plaintiffs, a consumer of Vioxx who has suffered the injuries described elsewhere in this Complaint, (4) to provide other benefits to which the Plaintiffs are entitled under the laws of the State of Alabama, and (5) the other relief sought in this Complaint.

## PARTIES TO THIS CIVIL ACTION

### PARTY Plaintiffs

6.     Plaintiffs, Clifford Bailey, Clifford Black, Wesley Calhoun, Curtis Deason, Ruth Graves, Mickey Grizzard, Jimmy Perry, Herbert Stanley Sikes, and Phillip Thompson, are resident citizens of the State of Alabama and of Randolph County.   Plaintiffs are residents of this county who prescribed, purchased and used Vioxx.  Plaintiffs, Clifford Bailey, Clifford Black, Wesley Calhoun, Curtis Deason, Ruth Graves, Mickey Grizzard, Jimmy Perry, Herbert Stanley Sikes, and Phillip Thompson, were prescribed and ingested Vioxx regularly after being prescribed the said drug by his physician.   Plaintiffs suffered personal injuries as a proximate result of the effects of his ingestion of Vioxx.  Plaintiffs experienced symptoms of Vioxx-induced cardiovascular events, suffered personal injury from the product defect in Vioxx and were at increased risk for developing further complications from such condition all as a proximate result of his ingestion of Vioxx.

7.     Plaintiffs, Clifford Bailey, Clifford Black, Wesley Calhoun, Curtis Deason, Ruth Graves, Mickey Grizzard, Jimmy Perry, Herbert Stanley Sikes, and Phillip Thompson were prescribed and consumed the product at the direction of their physicians in the State

5

of Alabama and in Randolph County.

**PARTIES DEFENDANT**

8.    Defendant, Merck & Co., Inc., is a corporation headquartered and with its principal place of business in Whitehouse Station, New Jersey. Merck & Co., Inc. manufactures, marketed and distributed Vioxx throughout the world, including Alabama. Defendants, David Sparkman, Natasha Walker-McGlothan, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Melissa Bauer, Natasha Walker-McGlothan, and Randy Walls, are persons employed by or associated with defendant, Merck, who are, with other Merck employees, the persons guilty of the conduct, the acts and omissions, specifically described and set forth in detail in this Complaint.

9.    On information and belief defendants David Sparkman, Natasha Walker-McGlothan, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Natasha Walker-McGlothan, Randy Walls, and Melissa Bauer, are resident citizens of the State of Alabama.

10.    Defendant, X is a corporation or other entity organized under the laws of the state of Alabama and having its principal place of business in the state of Alabama. This entity was or acted in concert with the defendants and is otherwise liable to Plaintiffs as described herein.

11.    Defendant, Z is a corporation or other entity organized under the laws of a state other than Alabama and having its principal place of business in a state other than Alabama. This entity was or acted in concert with the defendants and is otherwise liable

to Plaintiffs as described herein.

12.     At all times relevant hereto, defendants, including defendants A, B, C, D, E, F, X and Z whose true names are unknown to the Plaintiffs but will be added by amendment when correctly ascertained, were engaged in the business of developing, designing, marketing, distributing, promoting, testing, providing warnings concerning, labeling and/or selling the pharmaceutical Vioxx. On information and belief, defendants Merck Pharmaceutical Division and Merck Corporation otherwise were in control of the development, design, assembly, manufacture, warnings concerning, marketing and with others, the sale of Vioxx. As used in this Complaint, the general word "defendants" includes, incorporates, and is defined to mean, not only the named defendants, but also defendants A, B, C, D, E, F, X and Z, being those persons, firms or entities who or which proximately caused or contributed to the Plaintiff's personal injuries and the other damages as complained of herein whose true names are unknown to the Plaintiffs but will be added by amendment when correctly ascertained.

## JURISDICTION AND VENUE

13.     This Court has general subject matter jurisdiction and in personal jurisdiction on grounds as shown above.

14.     Venue is proper in this county in that the substantial relevant facts occurred in this county.

## FACTUAL ALLEGATIONS

15. Vioxx is the brand name of Rofecoxib, one of the classes of drugs called "Cox-II

7

inhibitors," which are supposed to work to reduce inflammation and pain by providing analgesic and anti-inflammatory benefits to persons with, among other conditions, arthritis, and muscle pain.

16. Vioxx has effects on prostaglandins at inflammatory sites, and on prostacyclin, vasodilators and inhibitors of platelet aggregation.

17. Vioxx, manufactured by Merck & Co., has a demonstrated risk that is or was misrepresented by Merck and benefits that were exaggerated and oversold to the public and physicians through an aggressive marketing campaign, while risks were purposefully hidden. Merck has profited tremendously from its misconduct described in this Complaint. Merck has been, with regard to Vioxx, over-promoting drugs that are far more expensive than older versions, but no better at relieving pain, while containing unreasonable risks of harm.

18. When Vioxx (Rofecoxib) and Celebrex (Celecoxib), a new kind of pain medication known as Cox-2 inhibitors, were introduced in 1999, manufacturers and their supporters hailed them as a kind of "super-aspirin" that lacked the stomach-injuring side effects of the older non steroidal anti-inflammatory drugs (NSAIDs). But valid questions soon arose about the efficacy and safety of Cox-2 drugs. Celebrex is discussed herein because of the chemical similarity, and the notice to Merck provided by Celebrex events. Pharmacia Corporation makes Celebrex, which it describes as "a major advance in the treatment of the debilitating diseases osteoarthritis and rheumatoid arthritis, because of its efficacy and excellent gastrointestinal safety profile."

19. The drugs, approved to treat arthritis, menstrual pain and "acute" pain in adults, have been heavily marketed to both doctors and consumers: Merck as to Vioxx,

which ran ads featuring former Olympic figure skater Dorothy Hamill, and spent over $160 million on consumer advertising in 2000; Celebrex spent almost $80 million, according to AdWatch, the health policy arm of the Henry Kaiser Family Foundation. The campaigns worked: In 2001, Vioxx, the 13th most prescribed drug in the United States, had worldwide sales of $2.6 billion.

20.    Older NSAIDs, such as ibuprofen, Naproxen and Diclofenac, work by inhibiting the two types of cyclooxygenase enzyme, one of which causes inflammation and thus pain. The Cox-1 enzyme, however, helps maintain the muscle surface of the gastrointestinal (GI) tract, so suppressing the enzyme can increase perforations, ulcers and bleeding. Vioxx, Celebrex and Bextra (Valdecoxib, introduced by G.D. Searle & Co. in 2001) suppress only the second enzyme, supposedly leaving the first alone to protect the GI tract.

21.    Merck's Vioxx Gastrointestinal Outcomes Research Study (VIGOR), performed from January 6, 1999 through March 17, 2000, involved about 8,000 participants and assessed only the drug's effects on the stomach; the company ordered no end-point analyses for effects on the cardiovascular system.

22.    The objectives of the VIGOR study were to (1) "determine the relative risk of confirmed PUB (Perforation, Ulcers, Bleeding) in patients taking 50mg of Vioxx daily compared to patients in the group taking Naproxen 1000mg/day," and (2) "study the safety and tolerability of Vioxx in patients with rheumatoid arthritis."

23.    The VIGOR data revealed that: (a) patients on Vioxx were five times more likely to suffer a heart attack as compared to patients on Naproxen; and (b) patients on Vioxx were 2.3 times more likely to suffer serious cardiovascular disease (including heart

attacks, ischemic stroke, unstable angina and sudden unexplained death) as compared to patients on Naproxen.

24.     The study concluded that Vioxx takers had a lower rate of GI distress than those taking naproxen. The researchers noted, "the incidence of myocardial infarction was lower among patients in the naproxen group than among those in the Rofecoxib group," but found "the overall mortality rate and the rate of death from cardiovascular causes were similar in the two groups." They drew conclusions only about clinical upper gastrointestinal events, bleeding and ulcers. Stroke is caused by Vioxx with the same mechanism as myocardial infarction.

25.  On March 27, 2000, Merck issued a press release stating that Vioxx caused fewer digestive tract problems than Naproxen.  The press release further stated that the VIGOR results did not show that Vioxx caused cardiovascular problems, but that Naproxen protected against them.

26.     After the VIGOR results were released, the FDA said Merck had minimized the fourfold to fivefold increase in heart attacks among study participants taking Vioxx compared with those taking Naproxen. It found the company's explanation that Vioxx did not increase the risk of heart attacks, but instead, Naproxen protected those taking it from heart attacks because the drug can thin the blood, like aspirin unacceptable. In a September 2001 warning letter to Merck, the FDA wrote, "You fail to disclose that your explanation is hypothetical, has not been demonstrated by substantial evidence, and that there is another reasonable explanation: that Vioxx may have pro-thrombotic properties."

27.     While Vioxx and Celebrex have been marketed as safer than traditional NSAIDs because of their stomach-protecting propensity, reports of serious side effects

10

have now emerged. The defendants knew the salient facts concerning their drug long before the discovery of dangers by outside researchers, but ignored or concealed risks and dangers and continued to misrepresent the safety (or lack of safety) of Vioxx. In June 2000, a research team led by A. Whelton noted in a presentation to the European United League Against Rheumatism (EULAR), of which Merck is a member and corporate sponsor, that Vioxx use resulted in a statistically significant increase in hypertension, myocardial infarction, and stroke. Not only did Merck do nothing to further accurately publish these studies, or warn consumers, but in August 2000, it denied the results with respect to hypertension in the official publication of the American Pharmaceutical Association, "Pharmacy Today." The medical journal,"The Lancet," published a study associating Vioxx with kidney failure, and other studies have associated both Vioxx and Celebrex with heart problems, kidney damage, aseptic meningitis and slow healing of bone fractures.

28.    A metastudy by the Cleveland Clinic published in the Journal of the American Medical Association analyzed data from two major studies funded by the drug companies and two smaller ones, all for cardiovascular risks. (Debabrata Mukherjee et al., Risk of Cardiovascular Events Associated with Selective Cox-2 Inhibitors, 286 JAMA 954 (2001).) It found that neither Pharmacia/Pfizer nor Merck had identified and studied cardiovascular risks for their products. The annualized heart attack rates for patients taking Vioxx or Celebrex, the researchers found, were "significantly higher" than those in a group taking placebos. "The available data raise a cautionary flag about the risk of cardiovascular events with Cox-2 inhibitors," they concluded. Defendants set about to discredit and deny these studies.

11

29.   The FDA, which lists Vioxx and Celebrex information on the "Hot Topics" section of its Web site, required both drugs to carry the same stomach-upset and bleeding warnings ibuprofen and Naproxen had when the agency approved them in 1999.

30.   After the CLASS results, the FDA found that Celebrex is just as likely to cause ulcers as older NSAIDs and is no better at reducing pain or inflammation than ibuprofen. In June 2002, it mandated a new label for the drug, one without any claim that it is safer for the stomach than other NSAIDs.

31.   Because of information provided by Merck, the agency did allow Merck to change its Vioxx label to claim it has a lower risk than older NSAIDs of causing ulcers, gastrointestinal bleeding and other digestive-tract complications.

32.   As early as November 1999, an FDA memo stated that the board monitoring the VIGOR study was concerned about "excess deaths and cardiovascular events experienced in Group A [Vioxx group] compared to Group B [Naproxen]." In March 2002, the FDA reported that five people taking Vioxx had aseptic meningitis, an inflammation of membranes on the brain and spine. In April 2002, after the agency warned Merck that it had misrepresented the drug's safety and minimized potentially serious cardiovascular complications found in VIGOR, it required the company to include a warning of cardiovascular risks on the Vioxx label.

33.   The new warnings contained information long held by Merck, but consistent with later pattern and practice, concealed from consumers and their physicians. The new warnings included:

34.   "In VIGOR, a study in 8076 patients (mean age 58; VIOXX n=4047, Naproxen n=4029) with a median duration of exposure of 9 months, the risk of developing a serious

12

cardiovascular thrombotic event was significantly higher in patients treated with VIOXX 50 mg once daily (n=45) as compared to patients treated with Naproxen 500 mg twice daily (n=19)." ...

35.    "In a placebo-controlled database derived from 2 studies with a total 2142 elderly patients (mean age 75; VIOXX n=1067, placebo n=1075 with a median duration of exposure of approximately 14 months, the number of patients with serious cardiovascular thrombotic events was 21 vs. 35 for patients treated with VIOXX (Rofecoxib tablets and oral suspension) 25 mg once daily versus placebo, respectively. In these same 2 placebo-controlled studies, mortality due to cardiovascular thrombotic events was 8 vs. 3 for VIOXX versus placebo, respectively."

36.    Merck has repeatedly blamed its customers' cardiovascular events on underlying conditions, to avoid blaming Vioxx.  The prestigious New England Journal of Medicine later stated in regard to "the implications of these observations with respect to selective cyclooxygenase-2 inhibitors": "...thrombosis would be expected to occur in patients who are already at increased risk because of other underlying conditions" and "In the VIGOR trial... The rates of nonfatal myocardial infarction, nonfatal stroke, and death from any vascular event were higher in the Rofecoxib group than in the naproxen group (0.8 percent vs. 0.4 percent, P<0.05).  This difference was largely due to a difference in the incidence of myocardial infarction (0.4 percent in the Rofecoxib group vs. 0.1 percent in the naproxen group, P<0.01). In contrast, in the CLASS trial, in which 21 percent of the patients took aspirin, there was no significant difference the treatment groups in the incidence of major cardiovascular events."  NEJM Volume 345:433-442 August 9, 2001 Number 6.

37.    In 2002 and 2003, unknown to Plaintiffs and their doctors, Merck refused requests from the American Heart Association the National Stroke Association and the Arthritis Foundation that it conduct additional safety studies, claiming that Vioxx was safe and that it did not plan to conduct any such study.

38.    On October 30, 2003, an article in The Wall Street Journal, unknown to Plaintiffs or their doctors, reported that another study sponsored by Merck, and presented at the annual meeting of the American College of Rheumatology, confirmed an increased risk of heart attacks in patients taking Vioxx. According to the Wall Street Journal, within the first 30 days of taking Vioxx, the risk of a heart attack was increased by 30% as compared to Celebrex. This study looked at the records of 54,475 Medicare patients, all of whom were over 65, and was described by the eminent Dr. Eric Topol as "the best study to date."

39.    In 2003, unknown to Plaintiffs and their doctors, Dr. Jerry Avorn, a Divisional Director at Brigham and Women's Hospital in Boston and colleague Dr. Daniel H. Solomon reported in a Merck-financed study based on a survey of patient records, that Vioxx, even at some moderate dosages, increased cardiovascular risks.

40.    Merck disputed the findings of the Avorn-Solomon study, and the name of the Merck epidemiologist who had contributed to the study was removed from the report before it was published in a medical journal.

41.    From January through June, 2004, Merck spent an estimated $45 million on Vioxx advertising.

42.    In May 2004, the results of a study funded by the Canadian government were published in "The Lancet." The study reviewed data from 1.3 million elderly patients

14

(66 and older) taking Vioxx, Celebrex, a common arthritis pain pill (NSAID) or no medication. The records from approximately 130,000 persons randomly reviewed from the population base found that persons taking Vioxx had an 80% increase in hospital admissions for congestive heart failure within one year of taking Vioxx when compared to persons taking NSAIDS.

43.     On August 25, 2004, still unknown to Plaintiffs and thier doctors, Dr. David Graham, Associate Director for Science in the FDA's Office of Drug Safety, presented results of a database analysis of 1.4 million patients that showed Vioxx users are more likely to suffer a heart attack or sudden cardiac death than those taking Celebrex or an older NSAID.

44.     Despite the foregoing, on August 26, 2004, Merck continued to represent to physicians and consumers that Vioxx was safe, and that any cardiovascular and/or cardiothrombotic side effects were not associated with the drug.  Merck stated in a press release that "Merck stands behind the efficacy, overall safety and cardiovascular safety of Vioxx."

45.     On September 30, 2004, Merck finally withdrew Vioxx from the market after basically admitting to additional information from its own studies that study participants taking Vioxx after 18 months had twice as high a risk of cardiovascular events as the placebo group.

46.     Defendants, David Sparkman, Natasha Walker-McGlothan, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Natasha Walker-McGlothan, Randy Walls,  and Melissa Bauer,  being the professional

15

staff of Merck for the sales of Merck's products in the state of Alabama were aware of all of the facts, points and details relevant to the dangers of Vioxx. Knowing these facts, the defendants had a duty to inform, immediately, the doctors to whom they had given samples or otherwise sold Vioxx or promoted Vioxx to such doctors and other persons, of the important facts described in this complaint. This duty was fully applicable to the said defendants, David Sparkman, Natasha Walker-McGlothan, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Natasha Walker-McGlothan, Randy Walls, and Melissa Bauer, and their employer, Merck, prior to the time that the Plaintiffs' use of Vioxx. The said defendants David Sparkman, Natasha Walker-McGlothan, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Natasha Walker-McGlothan, Randy Walls, and Melissa Bauer, and defendant Merck, had a full duty, obligation, and responsibility, to advise and warn, and to disclose that the facts that they had previously provided were no longer true or correct.

47.    The said defendants, David Sparkman, Natasha Walker-McGlothan, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Natasha Walker-McGlothan, Randy Walls, and Melissa Bauer, and their employer, Merck, were both negligent and wanton in their failure to perform their duties and obligations under applicable law to advise all customers of Merck taking Vioxx directly or through their physicians of the dangers now known and disclosed, but said defendants and each and every one of them failed in his said duty imposed by law. The said defendants,

16

David Sparkman, Natasha Walker-McGlothan, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Natasha Walker-McGlothan, Randy Walls, and Melissa Bauer, and their employer, Merck, failed to exercise ordinary and reasonable care in the performance of their job functions and duties.

48.    The said defendants David Sparkman, Natasha Walker-McGlothan, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Natasha Walker-McGlothan, Randy Walls, and Melissa Bauer,  and their employer, Merck, knew the foregoing true facts concerning Vioxx, prior to their representations concerning the safety and efficacy of Vioxx, but nevertheless, continued to represent that the product was safe and effective. The true facts, as indicated above, were that the said drug, Vioxx, was unreasonably unsafe and unreasonably dangerous, but the said individual defendants and their employer, Merck, willfully misrepresented the facts to physicians and others in the state of Alabama with the plan, design and intent to market the dangerous and defective drug notwithstanding the knowledge of the dangers and defects, this conduct constitutes actionable fraud and deceit, and these misrepresentations were relied upon by the medical community, physicians, the public and the Plaintiffs to the detriment of the Plaintiffs in particular, and the customers of Merck, receiving Vioxx in general. The actions of defendants and others combined and concurred to constitute a conspiracy for which they are civilly liable.

49.    The acts and omissions of the defendants as described in this Complaint constitute fraudulent suppression of material facts sufficient to toll the running of any and all statutes of limitation, notice provisions, or other similar laws or requirements.  Further,

17

the pendency of class actions describing and designating persons in the class including

and occupied by the Plaintiffs herein, constitutes sufficient commencement of an action to

toll the statutes of limitations and other notice provisions under applicable law.

50.    The defendants, David Sparkman, Natasha Walker-McGlothan, Katherine

Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry

Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges,

Natasha Walker-McGlothan, Randy Walls, and Melissa Bauer, and their employer, Merck,

misrepresented material facts, and fraudulently suppressed material facts, including but

not limited to those detailed in this complaint, to the medical community in general, the

Alabama physicians, and the Plaintiffs' treating physicians in particular, with regard to the

safety and effectiveness of the drug, Vioxx, which material misrepresentations and

fraudulent suppressions, proximately caused the injuries, losses, and damages specified

elsewhere in this complaint.   The defendants, David Sparkman, Natasha Walker-

McGlothan, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago,

Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie

Melton, Julie Hodges, Natasha Walker-McGlothan, Randy Walls, and Melissa Bauer, and

their employer, Merck, , personally visited and otherwise called on Plaintiffs' prescribing

physicians, and conspired and combined among themselves and with others, to cause the

Plaintiffs' prescribing physicians to believe that Vioxx was safe and effective, when in fact

it was not safe or effective to sufficiently outweigh the unreasonable risks of harm posed

by Vioxx and the said defendants otherwise committed actionable fraud,

misrepresentation, and fraudulent suppression which proximately caused the injuries to the

Plaintiffs described elsewhere herein.  Plaintiffs did not know, and could not have known,

that Vioxx was unsafe or that it had caused their injuries and damages, until after not

18

earlier than September 30, 2004. Then data was released November 13, 2005, at the *American Heart Association* conference in Dallas, Texas, that was a study of 58,000 patients, which showed that heart disease patients taking 25 mg of Vioxx per day were five times as likely to die as patients not taking the drug. Defendants continued to conceal, suppress and secrete, important, relevant and crucial material information held by them and not by others.

51.    While today Merck warns of "heart attacks and similar serious events have been reported in patients taking Vioxx" at the time this information was hidden and concealed, and representations were made by the defendants that indicated that the product was, instead, safe and effective.

52.    As a result of the reliance by Plaintiffs, the medical community, and the public generally on the representations and statements of the defendants, including the individual defendants herein and Merck, the Plaintiffs took and consumed Vioxx. As a proximate result and consequence of his ingestion of Vioxx and as a direct and proximate consequence and result of the acts and omissions of the defendants including the individual defendants as described herein, Plaintiffs were injured.

53.    Merck was well aware of the Pharmacia-sponsored Celebrex Long-Acting Safety Study (CLASS), also involving about 8,000 arthritis sufferers, compared that drug to the older NSAIDs ibuprofen and diclofenac to determine whether it was less harmful to the stomach. In a JAMA article in 2000, the researchers published data accumulated over six months and concluded that Celebrex caused fewer ulcers than the older drugs. (Fred E. Silverstein et al., Gastrointestinal Toxicity with Celecoxib vs. Nonsteroidal Anti-inflammatory Drugs for Osteoarthritis and Rheumatoid Arthritis: The CLASS Study: A Randomized Controlled Trial, 284 JAMA 1247 (2000). However, researchers at that point

19

had 12 months of data that, when analyzed as a whole, showed no significant difference.

54.     The FDA said the CLASS study "did not show a safety advantage in upper gastrointestinal events for Celebrex compared to either ibuprofen or diclofenac." Because some of the study participants were also taking aspirin, which does affect the stomach, some analysts say the results may have been skewed. The company maintained that among those not taking aspirin, the rate of ulcers was lower in Celebrex takers. Again, Celebrex is relevant to this case because of the knowledge and notice provided to Merck and its defendant-employees.

55.     In a June 2002 editorial, the British Medical Journal said the Celebrex study misled consumers with "overoptimistic" data. It said the study was "seriously biased" because the complete results "clearly contradict[ed] the published conclusions" and showed a similar number of stomach complications in all patients, whether they took Celebrex or the older pain relievers.

56.     It has been reported that a substantial number of deaths worldwide have been associated with Vioxx.

57.     Plaintiffs seek, in addition to damages for personal injury, refunds of and restitution for monies paid as a result of their purchase of Vioxx, as well as all other ascertainable economic loss that occurred as a result of defendants' wrongful and improper conduct in connection with the manufacture, marketing, distribution, testing, promotion, labeling and/or selling of Vioxx. Plaintiffs therefore seek to have the defendants return the monies unlawfully and inappropriately acquired by them as a result of their sale of Vioxx.

58.     Plaintiffs seek to have defendants fully disclose and account for, and effect the accumulation and analysis of relevant medical information on Vioxx, including, but not

limited to, the results of all appropriate diagnostic tests performed as part of a medical research and for medical information concerning all persons as gathered, maintained and analyzed, and for medical research concerning the incidence, prevalence, natural course and history, diagnosis and treatment of Vioxx-induced personal injuries, and all this should be disclosed to Plaintiffs in this litigation.

## PLAINTIFFS' CLAIMS FOR RELIEF
## COUNT I

## PRODUCTS LIABILITY UNDER AEMLD AND STRICT LIABILITY PURSUANT TO §402A OF THE RESTATEMENT (SECOND) OF TORTS

59.     Plaintiffs incorporate by reference and re-alleges, as if fully set forth herein, each and every allegation contained in the other paragraphs of this Complaint, wherever contained.

60.     Defendants are manufacturers and/or suppliers of Vioxx and each had an opportunity to inspect the product which was superior to the knowledge or opportunity of the consumer's herein. The defendants were engaged in the business of manufacturing, creating, designing, testing, labeling, sterilizing, packaging, supplying, marketing, selling, advertising, warning and otherwise distributing Vioxx in interstate commerce, which they sold and distributed throughout the world, including the State of Alabama, to Plaintiffs.

61.     The Vioxx product supplied, distributed and manufactured by Merck, and A,

21

B, C, D and E and placed in the stream of commerce by defendants, and others were defective and unreasonably dangerous in design, manufacture and/or formulation in that, when it left the hands of the defendants as manufacturer and/or suppliers, the foreseeable risks exceeded the benefits associated with the design or formulation and they were unreasonably dangerous and defective. Plaintiffs show that they suffered injuries and damages as a result of the sale by defendants who sold the product in defective condition unreasonably dangerous to the ultimate consumer, and all the sellers were engaged in the business of selling such product and product was expected to and did reach the user or consumer without substantial change in the condition in which it is sold. The Plaintiffs were using Vioxx in a manner for which it was intended or in a reasonably foreseeable manner.

62.    Vioxx was expected to and did reach the Plaintiffs without substantial change in its condition as manufactured, created, designed, tested, labeled, sterilized, packaged, supplied, marketed, sold, advertised, undertook to warn, and otherwise distributed.

63.    The Vioxx manufactured by Merck, and/or A, B, C, D and E and supplied by them was defective in manufacture, design or formulation, in that, when it left the hands of the manufacturer and/or suppliers, it was unreasonably dangerous, in that it not meet the reasonable expectations of the ordinary consumer as to safety, and was more dangerous than an ordinary consumer would expect and more dangerous than other pain relievers. The Plaintiffs show  that the product was unreasonably dangerous when it left the defendants' control, that it was substantially unaltered when the Plaintiffs used it, and that it proximately caused the Plaintiffs' injuries. The Plaintiffs were not aware of, and in the exercise of reasonable caution could not have discovered, the dangerous nature of Vioxx.

64.    The Vioxx manufactured and/or supplied by defendants was also defective

22

due to inadequate warning or instruction because the manufacturers and suppliers knew or should have known that the products created an unreasonable risk of harm to consumers and the defendants failed to adequately warn of said risks. The defendants' Vioxx caused increased risks of excess deaths and cardiovascular events, as well as kidney damage, aseptic meningitis, and slow healing of bone fractures upon consumption, and therefore constitute a product unreasonably dangerous for normal use due to their defective design, defective manufacture, and the defendants misrepresentations and inadequate facts disclosed to the Plaintiffs and their doctors. The Vioxx manufactured and/or supplied by defendants was defective due to inadequate care in marketing and post-marketing warnings or instruction because, after the defendants knew or should have known of the risk of injury from Vioxx and/or combination use of these drugs, they failed to provide adequate warnings to users or consumers of the product and continued to promote the product.

65.    As a direct and proximate result of defendants' manufacturing, creating, designing, testing, labeling, sterilizing, packaging, supplying, marketing, selling, advertising, warning, and otherwise distributing Vioxx in interstate commerce, Plaintiffs have suffered the injuries described elsewhere in this Complaint and was at an increased risk of and did in fact suffer by developing and suffering a cardiovascular event and has suffered damages and Plaintiffs are entitled to compensatory and punitive damages in an amount just and proper under law for personal injuries and other recoverable damages.

66.    The defendants, therefore, are liable to the Plaintiffs. The conduct of Merck and A, B, C, D and E was gross, willful, wanton, oppressive, intentional, burdensome, and otherwise such as to justify the imposition of punitive damages under Alabama law. Additionally, defendants' conduct was so outrageous as to constitute ill will, bad motive and

reckless indifference to the interests of the consumers. The Plaintiffs, therefore, are entitled to punitive damages. All of the defendants are liable to Plaintiffs jointly and severally for all general, special and other relief to which the Plaintiffs are entitled by law. As a consequence of the producing cause and as a legal result of the dangerous and defective condition of Vioxx as sold, developed, designed, marketed, manufactured and/or supplied by defendants, and as a direct and legal result of the tort, AEMLD violation, negligence and wantonness, carelessness, other wrongdoing and action(s) of defendants described herein:

67.    Plaintiffs were injured in their health, strength and activity and suffered injuries to body and mind;

68.    Plaintiffs have sustained economic loss, loss of earnings and diminution or loss of earning capacity, the exact amount of which is presently unknown;

69.    Plaintiffs required reasonable and necessary health care, attention and services and did incur medical, health, incidental and related expenses. As a direct and proximate result of defendants' manufacturing, creating, designing, testing, labeling, sterilizing, packaging, supplying, marketing, selling, advertising, warning, and otherwise distributing Vioxx in interstate commerce, Plaintiffs have suffered the injuries described elsewhere in this Complaint and Plaintiffs have suffered damages and are entitled to recover compensatory and punitive damages in an amount just and proper under law for personal injuries and other recoverable damages.

## COUNT II

## NEGLIGENCE AND WANTONNESS

70.    Plaintiffs incorporate by reference and reallege, as if fully set forth herein, each and every allegation contained in the other paragraphs of this Complaint, wherever

contained.

71.    It was the duty of the defendants to use reasonable care in the manufacturing, creating, designing, testing, labeling, sterilizing, packaging, supplying, marketing, selling, advertising, warning and otherwise distributing Vioxx.

72.    Contrary to their duty, the said defendants were guilty of one or more of the following careless, negligent and wanton acts and/or omissions:

Said defendants failed adequately and properly to test, study and inspect Vioxx so as to ascertain whether or not it was safe and proper for the purpose for which it was designed, manufactured and sold;

Failed to utilize and/or implement a reasonably safe design in the manufacture of Vioxx;

Failed to manufacture Vioxx in a reasonably safe condition for which it was intended;

Failed to adequately and properly warn Plaintiffs purchasing Vioxx of the risks of complications when used in a manner for which it was intended;

Failed to adequately and properly warn Plaintiffs purchasing Vioxx of the risks of diseases when used in a manner for which it was intended;

Failed to adequately and properly label Vioxx so as to warn the Plaintiffs of the risks of complications;

Failed to adequately and properly label Vioxx so as to fairly and sufficiently warn the Plaintiffs of the risks of excess deaths and cardiovascular events as well as kidney damage, aseptic meningitis, and slow healing of bone fractures;

Manufactured Vioxx which constituted a hazard to health;

Manufactured Vioxx which caused adverse side effects;

Sold and pushed Vioxx and handed out samples thereof while misrepresenting through word, deed, actions, distributing printed and other materials, all of the most important information concerning the dangers of Vioxx including especially the danger posed of sudden cardiovascular death; and were otherwise careless, negligent and wanton.

73.    As a direct and proximate result of defendants' manufacturing, creating, designing, testing, labeling, sterilizing, packaging, supplying, marketing, selling, advertising, warning, and otherwise distributing Vioxx in interstate commerce, Plaintiffs have suffered the injuries described elsewhere in this Complaint and Plaintiffs have suffered damages and are entitled to recover compensatory and punitive damages in an amount just and proper under law for personal injury and other recoverable damages.

## COUNT III

### NEGLIGENCE PER SE

74.    Plaintiffs incorporate by reference and reallege, as if fully set forth herein, each and every allegation contained in the other paragraphs of this Complaint, wherever contained.

75.    Defendants Merck, David Sparkman, Natasha Walker-McGlothan, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Natasha Walker-McGlothan, Randy Walls, and Melissa Bauer, and the fictitious defendants, had an obligation not to violate the law in the manufacture, design, formulation, compounding, testing, production, processing, assembly, inspection, research, distribution, marketing, labeling, packaging, preparation for use, sale and warning of the risks and dangers of Vioxx.

76.    Defendants, Merck, David Sparkman, Natasha Walker-McGlothan, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Natasha Walker-McGlothan, Randy Walls, and Melissa Bauer, and the fictitious defendants, violated Alabama Code §20-1-26, §20-1-27, and §8-19-5, et seq., related amendments and codes and regulations provided there under, and other applicable laws, statutes and regulations. No action is brought herein for violation of federal statutes, but claim is made for violation of the foregoing and any other state's applicable laws.

77.    Plaintiffs, as purchaser and consumer of Vioxx, are within the class of persons the state statutes and regulations described above are designed to protect and Plaintiffs' injuries are the type of harm these statutes are designed to prevent.

78.    The defendants, Merck, David Sparkman, Natasha Walker-McGlothan, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Natasha Walker-McGlothan, Randy Walls, and Melissa Bauer, and the fictitious defendants made false and fraudulent misrepresentations to physicians, Plaintiffs, and the general public that Vioxx is or was safe, effective, fit for its use as designated, and that it's components are not hazardous to the health of users all in violation of Alabama Code § 20-1-26 and 20-1-27 and other applicable law. defendants' acts constitute a breach of duty subjecting defendants to civil liability for all damages arising therefrom, under theories of negligence per se. Alabama Code §20-1-27 states that "No person shall engage in any of the following activities within this state:(1) Manufacture for sale herein, have in his or his possession with intent to sell, offer or expose for sale, sell, or deliver any article of food or drugs which is adulterated or misbranded within the meaning of this division."

79.    Said defendants failed to meet the standard of care set by the following statutes and regulations, which were intended for benefit of individuals such as Plaintiffs, making defendants negligent per se:

80.    The defendants made false and fraudulent misrepresentations to physicians, Plaintiffs, and the general public that Vioxx is or was safe, effective, fit for its use as designated, and that it's components are not hazardous to the health of users all in violation of Alabama Code § 20-1-26 and 20-1-27 and other applicable law;

81.    The labeling did bear or contain statements, designs or devices regarding the curative or therapeutic effect of Vioxx which were false or fraudulent and which concealed, in that they failed to provide adequate warnings of, severe and disabling medical side effects and conditions including, without limitations, cardiovascular events, hypertension and edema, as well as kidney damage, aseptic meningitis, and slow healing of bone fractures, excess deaths and adverse events and other adverse medical conditions as soon as there was reasonable evidence of their association with the drug;

82.    There was misleading and inadequate information for patients for the safe and effective use of defendants' drug in that a drug shall be deemed misbranded "if its package or label shall bear or contain any statement, design or device regarding the curative or therapeutic effect of such article or of any of the ingredients or substances contained therein which is false or fraudulent"; and

83.    There was misleading and inadequate information regarding special care to be exercised by the doctor for safe and effective use of defendants' drug, and the drug was therefore, misbranded.

84.    As a proximate result of the defendants' violations of the statutes described

above, Plaintiffs suffered injuries and personal injuries and damages as alleged herein.

## COUNT IV

### UNJUST ENRICHMENT

85.    Plaintiffs incorporate by reference and reallege, as if fully set forth herein, each and every allegation contained in the other paragraphs of this Complaint, wherever contained.

86.    As the intended and expected result of their conscious wrongdoing, defendants have profited and benefitted from the purchase of Vioxx by the Plaintiffs, to wit: (a) defendants have voluntarily accepted and retained these profits and benefits, derived from the Plaintiffs, with full knowledge and awareness that, as a result of defendants' fraud and other conscious and intentional wrongdoing, Plaintiffs were not receiving a product of the quality, nature, or fitness that had been represented by defendants or that Plaintiffs, as a reasonable consumer, expected.  (b) By virtue of the conscious wrongdoing alleged in this Complaint, defendants have been unjustly enriched at the expense of the Plaintiffs, who are entitled to in equity, and hereby seeks, the restitution of defendants' wrongful profits, revenue, and benefits, to the extent, and in the amount, deemed appropriate by the jury; and such other relief as the jury deems just and proper to remedy the defendants' unjust enrichment.

## COUNT V

### BREACH OF EXPRESS WARRANTY

87.    Plaintiffs incorporate by reference and re-allege, as if fully set forth herein, each and every allegation contained in the other paragraphs of this Complaint, wherever contained.

88.    Defendants expressly warranted to Plaintiffs, by and through statements

29

made by defendants or their authorized agents or sales representative, orally and in publications, package inserts and other written materials intended for physicians, medical patients and the general public, that Vioxx was safe, effective, fit and proper for its intended use.

89.    In using Vioxx, Plaintiffs relied on the skill, judgment, representations and foregoing express warranties of the defendants. Said warranties and representations were false in that the aforementioned product was not safe and was unfit for the uses for which it was intended.

90.    As a direct and proximate result of defendants breaches of warranties, Plaintiffs have suffered the injuries described elsewhere in this Complaint and Plaintiffs were at an increased risk of and did, in fact, suffer by developing cardiovascular events and has suffered damages for which Plaintiffs are entitled to recover from defendants in an amount just and proper under law for personal injury and other recoverable damages.

## COUNT VI

### BREACH OF IMPLIED WARRANTY

91.    Plaintiffs incorporate by reference and re-allege, as if fully set forth herein, each and every allegation contained in the other paragraphs of this Complaint, wherever contained.

92.    Prior to the time that Vioxx was used by Plaintiffs, defendants impliedly warranted to Plaintiffs that Vioxx was of merchantable quality and safe and fit for the use for which it was intended.

93.    Plaintiffs were unskilled in the subject of pharmacology or the research, design and manufacture of Vioxx and reasonably relied entirely on the skill, judgment and implied warranty of the defendants in using Vioxx.

94.    Vioxx was neither safe for its intended use nor of merchantable quality, as warranted by defendants, in that it had dangerous propensities when put to its intended use and would cause severe injuries and death to the user.

95.    As a direct and proximate result of defendants' breaches of warranties, Plaintiffs have suffered the injuries described elsewhere in this Complaint and Plaintiffs were at an increased risk of and did, in fact, suffer by developing cardiovascular events and have suffered damages for which Plaintiffs are entitled to recover from defendants in an amount just and proper under law for personal injuries and other recoverable damages.

## COUNT VII

### CORPORATE RESPONSIBILITY:

### JOINT VENTURES, PARENT/SUBSIDIARIES,

### AND/OR SUCCESSOR CORPORATION

96.    Plaintiffs incorporate by reference and re-allege, as if fully set forth herein, each and every allegation contained in the other paragraphs of this Complaint, wherever contained.

97.    As a result of their control or participation in various joint ventures, parent/subsidiary relationships and/or successor corporations, defendants are liable to the Plaintiffs.

98.    As a result of their negligent and wanton supervision and actual supervision of various joint ventures, parent/subsidiary relationships and/or successor corporations, defendants are liable to Plaintiffs.

99.    As a result of the existence or invalidity of various indemnification agreements, defendants are liable to Plaintiffs.

100.    Defendants are liable to Plaintiffs, as alter egos of their joint ventures, parent/subsidiary relationships and/or successor corporations.

## COUNT VIII

### CIVIL CONSPIRACY

101.    Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth here and further allege as follows:

102.    Defendants, Merck, David Sparkman, Natasha Walker-McGlothan, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Natasha Walker-McGlothan, Randy Walls, and Melissa Bauer, and fictitious defendants combined and conspired to do those acts complained of in Count I through Count IX, as a result of which the Plaintiffs have suffered harm, damages and injuries as previously described.

## COUNT IX

### FRAUD AND DECEIT

103.    Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth here and further allege as follows:

104.    Merck and the sales representative defendants made material misrepresentations of fact to the medical community, the Plaintiffs, the public generally, the governmental entities charged with the protection of the public from unsafe drugs, and to opinion leaders in the medical profession, intentionally in some cases and often with the specific intention of deceiving all these for monetary gain to the defendants, and in some cases negligently and wantonly, and even in rare cases, innocently, in all instances, with the intent and purpose to advance the sales of the dangerous drug Vioxx. The defendants

further suppressed material facts as to which they were under a duty to communicate to all of the above persons and entities. The misrepresentation and suppression was, in each case, of material and important facts essential for the health and safety of the public and of Plaintiffs in particular. As a result of the misrepresentations, deceit, and suppression by the defendants as set forth previously in this Complaint and as set forth below, these parties, and Plaintiffs were deceived and defrauded, and as a direct and proximate result of the said deceit, fraud, misrepresentation, and fraudulent suppression the Plaintiffs suffered the harm and injury as set forth in this Complaint.

105.    By the time Merck voluntarily withdrew the anti-inflammatory drug Vioxx from the market in September 2004, more than 100 million prescriptions had been dispensed in the United States. Yet the vast majority of these prescriptions were written by physicians after Merck and the Sales Representative defendants knew that evidence of Vioxx's risks had already surfaced. Even as evidence mounted in defendants' hands that use of Vioxx was associated with heart attacks and strokes, physicians continued to prescribe Vioxx to millions of patients. The reason is the fraudulent scheme perpetrated by the defendants. A major part of the explanation may be found by examining the strategies that Merck and its sales representatives used to market Vioxx to physicians. Based on Merck documents, Merck sent over 3,000 highly trained representatives, including the individual defendants herein, into doctors' offices and hospitals armed with misleading information about Vioxx's health risks. The documents indicate that Merck instructed these representatives to show physicians a pamphlet indicating that Vioxx might be 8 to 11 times safer than other anti-inflammatory drugs, prohibited the representatives from discussing contrary studies (including those financed by Merck) that showed increased risks from Vioxx, and launched special marketing programs — named "Project XXceleration" and "Project Offense" and

"Dodgeball"— to overcome the cardiovascular "obstacle" to increased sales.

106. On information and belief, Plaintiffs aver that while some sales representatives eventually refused to continue with this course of conduct, other representatives, including the individual defendants herein, continued with the misrepresentations and fraudulent concealment, notwithstanding knowledge of the falsity and of the dangers to patients. The Sales Representative defendants were provided two types of materials relevant to drug safety and effectiveness: "approved" and "background" materials. The "approved" items were to be aggressively used in pushing Vioxx because they were things like medical journal articles favorable to Merck. On the other hand, the "background" materials also contained things unfavorable to Vioxx, and the Sales Representative defendants suppressed this information from the prescribing doctors as Merck requested.

107. The documents reveal that Merck exhaustively trained its representatives on how to persuade doctors to prescribe Vioxx and other Merck products. No interaction with physicians appears to have been too insignificant for instruction. Merck representatives were taught how long to shake physicians' hands (three seconds), how to eat their bread when dining with physicians ("one small bite size piece at a time"), and how to use "verbal and non-verbal" cues when addressing a physician to "subconsciously raise... his/her level of trust." Merck instructed its representatives on the various personality types of doctors (including "technical," "supportive and expressive") and recommended targeted sales techniques for each type. And Merck rewarded its sales force with thousands of dollars in cash bonuses for meeting sales goals.

108. The company assigned individual doctors a "Merck potential" and graded them on how often they prescribed Merck products. The Sales Representative defendants

were also involved in the Merck scheme to communicate misinformation about Vioxx to what defendants called "thought leaders" in the medical community. By this device, defendants could sell more Vioxx even to those doctors to whom they did not or could not speak directly or in detail. The "thought leaders" were to influence the medical community to push more Vioxx, despite the dangers, since they could "influence colleagues through peer-to-peer relationships." To help them do this, the Sales Representative defendants used Merck-paid honoraria (money) to these "thought leaders" to influence the medical community to favor Vioxx and to prescribe it notwithstanding the dangers.

109.    The documents describe in detail how Merck used this highly trained sales force to respond to reports of Vioxx's safety risks. The first public indication that Vioxx posed a heightened risk of heart attack and stroke came in March 2000, when Merck's VIGOR study showed a five-fold increase in the risks of heart attacks in patients on Vioxx compared to patients on Naproxen. This study was followed by cautionary discussions of the cardiovascular risks of Vioxx at a meeting of an advisory committee to the Food and Drug Administration in February 2001, in a New York Times article in May 2001, and in a paper in the Journal of the American Medical Association in August 2001.

110.    After each of these developments, Merck sent bulletins or special messages to its sales force, directing them to use highly questionable information to assuage any physician concerns.

111.    For example, the Merck documents show:

After Merck's VIGOR study reported increased heart attack risks, Merck directed its sales force to show physicians a "Cardiovascular Card" that made it appear that Vioxx could be 8 to 11 times safer than other anti-inflammatory drugs. This card omitted any reference to the VIGOR findings

and was based on data FDA considered to be inappropriate for a safety analysis.

After the FDA advisory committee voted that physicians should be informed about the risks found in the VIGOR study, Merck sent a bulletin to its sales force that advised: "DO NOT INITIATE DISCUSSIONS ON THE FDA ARTHRITIS COMMITTEE ... OR THE RESULTS OF THE ... VIGOR STUDY." If physicians asked about the VIGOR study, Merck representatives were directed to respond, "I cannot discuss the study with you." After the New York Times reported on the cardiovascular dangers of Vioxx, Merck instructed its field staff to tell physicians that patients on other anti-inflammatory medications were eight times more likely to die from cardiovascular causes than patients on Vioxx. The Merck bulletin told its sales force to show physicians the Cardiovascular Card and state: "Doctor, as you can see, Cardiovascular Mortality as reported in over 6,000 patients was Vioxx .1 vs. NSAIDS .8 vs. Placebo 0."

112.    After extensive negotiations, FDA and Merck agreed on a label change for Vioxx in April 2002, that mentioned the cardiovascular findings from the VIGOR study. The final label included the statement that the significance of these findings were "unknown." According to the documents, Merck instructed its representatives to emphasize this statement on new labels to counter physician safety concerns. Merck documents show that in fact the cardiovascular risks were actually well-known, but suppressed, by defendants.

113.    Merck and other drug companies maintain publicly that their representatives play a vital role in the health care system by educating physicians about new drugs and ongoing research. But the Merck documents reveal another side to company marketing

efforts. The documents show that Merck trained its representatives to capitalize subtly on every interaction with physicians to promote Merck products. When concerns about Vioxx's safety arose, Merck used this highly trained force to present a misleading picture to physicians about the drug's cardiovascular risks. Merck's and the Sales Representatives' promotional efforts explain in large part why Vioxx sales remained strong even as the evidence of the drug's dangers mounted. Prescribing doctors were massively misled.

114.    The Sales Representative defendants represented to the Plaintiffs' prescribing physicians false and misleading information concerning the drug Vioxx. The defendants, pursuant to the defendants' "Dodgeball" program and other plans to misrepresent the safety of Vioxx, communicated that the drug was safe for the cardiovascular system, and did not increase the risk stroke or heart attack. The Plaintiffs' physicians did prescribe the subject drug to the Plaintiffs, as a result of, and in reliance upon, the misrepresentations by the defendants' including the Sales Representative defendants who made direct communications to the physician. The physicians made determinations concerning the use of this medication based on false and fraudulent information provided by the defendants including the Sales Representative defendants, and did not act in their proper role as a learned professional in that physicians were given wrongful, false, incomplete, misleading and wrong information by the defendants, including the Sales Representative defendant.

115.    The negligence and wantonness of the defendants, including the Sales Representative defendants, was the proximate cause of the injuries and death suffered by Plaintiffs. Because the Plaintiffs' physicians were prevented from exercising and operating in their full role as learned professionals, because of missed information given to them by defendants, they were deprived of the full and adequate information needed to act in a

learned manner in deciding and determining how to prescribe pain relieving medication to the Plaintiffs, with the proximate result and consequence that the physicians did in fact prescribe the dangerous and deadly drug, Vioxx, to Plaintiffs, causing their injuries.

116.    The Plaintiffs suffered personal injuries as a direct and proximate result and consequence of the wrongful acts and omissions of each of the defendants. The Plaintiffs would not have been prescribed the subject drug, Vioxx, by his physician, if the physician had not been given wrongful and incorrect information by the defendants including the Sales Representative defendants.

117.    If defendants had not engaged in this conduct, consumers, such as the Plaintiffs, would have switched from Vioxx to safer products or refrained wholly from its efficacy.

118.    From approximately 1999 through the date of Plaintiffs injuries defendants engaged in a scheme of marketing, distributing and/or selling Vioxx under the guise that it was safe and efficacious for persons such as the Plaintiffs.

119.    Plaintiffs allege that the marketing strategies, including without limitation the detail and sampling programs and direct-to-consumer advertising, used by Merck, targeted consumers like the Plaintiffs to induce them to purchase and use Vioxx, defendants distributed, manufactured and marketed Vioxx, in a manner designed to convince and their physicians to rely on the marketing, advertisements and product information propounded by defendant.

120.    On September 30, 2004, Merck voluntarily removed Vioxx from all markets in the United States.

121.    The sales representative defendants negligently, recklessly, intentionally and fraudulently made material representations that Vioxx was safe and effective. The sales

representative defendants represented Vioxx as safe so that the general consuming public, including Plaintiffs and their physicians, would rely upon said representations when purchasing the product. The sales representative defendants also suppressed the cardiovascular risks from prescribing physicians, and consumers such as the Plaintiffs, even though they had knowledge of the risks.

122.    Merck trained its sales representatives, through programs such as the "Vioxx Obstacle Dodge Ball Program," the "Obstacle Response Guide for Vioxx," and "Top Ten Obstacle Handlers" to misstate, conceal, and misrepresent the truly dangerous nature of Vioxx to prescribing physicians. The sales representative defendants applied, utilized and put into practice each of these programs with the doctors in question.

123.    These programs were specifically designed and promulgated by Merck to mislead prescribing physicians about the safety of Vioxx.

124.    These programs were specifically designed and promulgated by Merck to mislead prescribing physicians about the life threatening side effects, including myocardial infarction and stroke, of Vioxx.

125.    Merck trained its sales representative force, including the sales representative defendants, to utilize its "Dodge Ball" and "Obstacle Avoidance" programs during the sales representatives' interactions with or "calls" upon prescribing physicians, and defendants put them into full effect with the subject doctors.

126.    These programs were utilized by sales representatives, including the sales representative defendants to "dodge" relevant safety questions by physicians to who promoted and or sold Vioxx. Indeed, these programs provide specific responses and representations that are to be made by Merck sales representatives to physicians during the sales calls or in response to physician questions. These Merck mandated responses

misrepresented the safety of Vioxx.

127.    The Vioxx Obstacle Dodge Ball Program identifies and categorizes physician safety questions as "obstacles" to Merck's sales force. The "Dodge Ball" program specifically instructs sales representatives, including the sales representative defendants, to "dodge" these physicians' safety related questions/obstacles. Indeed, the last few pages of the "Dodge Ball" instruction manual simply state "DODGE," "DODGE," and "DODGE." The safety questions to be "dodged" by sales representatives, including the sales representative defendants, include, inter alia, questions such as, "I am concerned about the cardiovascular effects of Vioxx," and "The competition has been in my office telling me that the incidence of heart attacks is greater with Vioxx than with Celebrex."

128.    Additional sales representative guidelines provide specific answers to physician questions/obstacles (such as those noted above) that were to be recited by sales representatives, including the sales representative defendants. The top three "obstacles" listed on the sales guidelines are physician safety questions involving Vioxx related "Cardiovascular Events." Sales representative, including the sales representative defendants, are thereafter provided with specific misrepresentations to make to the concerned physicians about the safety of Vioxx. For example, bulletins from Merck to its sales representatives state, "in response to recent published reports about Vioxx on May 1, 2000, we provided you with an approved verbal response to use to address customers' questions around the incidence rate of MI's [myocardial infarctions] on patients taking Vioxx..." (Bulletin for Vioxx: New PIRs Relative to Vioxx GI Outcomes Research Study). Sales representatives, including the sales representative defendants, were therefore required to misrepresent that Vioxx does not increase the rate of myocardial infarctions when compared with NSAID's. This misrepresentation is false and inaccurate, yet was

40

intentionally, knowingly, recklessly, wantonly and/or negligently made to treating physicians, including each Plaintiffs' prescribing physicians, by the individually named sales representatives. In an instructional video used to train sales representatives, an actress playing "an obstacle" to Vioxx sales says, "I'm afraid Vioxx causes M.I.'s" - a reference to myocardial infarctions, or heart attacks. In response, an actress playing a Merck sales representative says, "That's not true." This was wrong, Vioxx causes M.I.'s. The mechanism of Vioxx-induced heart attack and stroke is the same – vasoconstriction and blood-clot creation.

129. Merck's sales representatives, specifically the sales representative defendants, utilized the misrepresentations contained in the obstacle avoidance programs to mislead each Plaintiffs' treating physicians concerning the safety of Vioxx and the occurrence of life threatening side effects, such as strokes and myocardial infarctions, from the usage of Vioxx.

130. Merck and the individually named sales representatives further misrepresented the safety of Vioxx to prescribing physicians by providing written literature to the doctors that contained false statements about Vioxx's safety. Such literature would be forwarded to the physician who posed questions/obstacles to the sales representatives after the sales representatives had concluded their meeting with the physician, entitled "In Response To Your Questions" (follow-up literature that misrepresents Vioxx's cardiovascular safety) and "In Response To Your Questions: Cardiovascular System", which also misrepresents the risks associated with Vioxx.

131. Sales representatives, including the sales representative defendants, were also ordered to send follow-up letters to physicians with whom they met who had posed questions/obstacles. These letters would downplay the cardiovascular risks associated with

41

Vioxx, even though the defendants were well aware that the risks existed.

132.    The underlying inducement for both Merck and its sales representatives, including the sales representative defendants, to make repeated misrepresentations to physicians about the safety of Vioxx was money. The more doctors prescribed Vioxx, the more money Merck made. The more doctors the sales representatives, including the sales representative defendants, cajoled into prescribing Vioxx, the more money and non-monetary bonuses the sales representatives received. Thus, sales representatives, such as the sales representative defendants, had a financial interest in disseminating the false and misleading information, while concealing the known risks (i.e., obstacle responses) outlined above to as many prescribing physicians as possible, including Plaintiffs' prescribing physicians

133.    Plaintiffs and their prescribing physicians reasonably relied, to their detriment, upon the false oral and written misrepresentations of Merck, and the sales representative defendants, concerning the safety of Vioxx and the absence of adverse cardiovascular events in users. Such reasonable reliance induced each Plaintiff's treating physician to prescribe his Vioxx and further induced the Plaintiffs to utilize the dangerous drug Vioxx. As a direct and proximate result of Plaintiff's usage of Vioxx, they were injured as described herein. Such event has caused Plaintiff's great pain and suffering, mental anguish, expense.

134.    On June 23, 2005 conduct of Merck and its sales representatives was summarized in the New England Journal of Medicine as follows:

"The pharmaceutical industry spends more than $5.5 billion to promote drugs to doctors each year — more than what all U.S. medical schools spend to educate medical students. Major drug companies employ about 90,000

sales representatives — one for every 4.7 doctors in the United States, according to the American Medical Association. Although substantial marketing expenditures are common in many industries, the potential effect of drug marketing on health raises special concerns. For years, the industry has justified these expenditures on the grounds that they fund essential education for doctors. According to the Web site of the Pharmaceutical Manufacturers and Research Association, "many physicians learn about new drugs - indeed, about ongoing research in their areas of specialization - largely through information provided by the companies that market new products." But if the primary goal is sales, not education, and the information provided to physicians is slanted or misleading, the health consequences for patients can be serious.

"Because of the recent events surrounding Rofecoxib, the May 5 hearing of the Government Reform Committee focused on Merck, the manufacturer of Vioxx... Merck cooperated voluntarily with our request for information, providing more than 20,000 pages of internal company documents. Merck also voluntarily sent a senior executive to testify at the hearing and answer the committee's questions. Yet as we learned, even a company like Merck can direct its sales force to provide clinicians with a distorted picture of the relevant scientific evidence.

"On February 7, 2001, the Arthritis Drugs Advisory Committee of the Food and Drug Administration (FDA) met to discuss the VIGOR study. At this meeting, Merck argued that the significant increase in the rate of myocardial infarction (which further analysis had determined to be a fivefold increase) was explained by a protective effect of naproxen, not by any inherent risk posed by its drug. After the FDA's medical reviewer and others expressed concern about

this explanation, the advisory committee voted unanimously that physicians should be made aware of VIGOR's cardiovascular results.

"The next day, Merck sent a bulletin to its Rofecoxib sales force of more than 3000 representatives. The bulletin ordered, "DO NOT INITIATE DISCUSSIONS ON THE FDA ARTHRITIS ADVISORY COMMITTEE . . . OR THE RESULTS OF THE . . . VIGOR STUDY." It advised that if a physician inquired about VIGOR, the sales representative should indicate that the study showed a gastrointestinal benefit and then say, "I cannot discuss the study with you."

"Merck further instructed its representatives to show those doctors who asked whether Rofecoxib caused myocardial infarction a pamphlet called "The Cardiovascular Card." This pamphlet, prepared by Merck's marketing department, indicated that Rofecoxib was associated with 1/8 the mortality from cardiovascular causes of that found with other anti-inflammatory drugs. Stroke is caused by Vioxx with the same mechanism as myocardial infarction.

"The Cardiovascular Card provided a misleading picture of the evidence on Rofecoxib. The card did not include any data from the VIGOR study. Instead, it presented a pooled analysis of preapproval studies, in most of which low doses of Rofecoxib were used for a short time. None of these studies were designed to assess cardiovascular safety, and none included adjudication of cardiovascular events. In fact, FDA experts had publicly expressed "serious concerns" to the agency's advisory committee about using the preapproval studies as evidence of the drug's cardiovascular safety.

"Persistent physicians who sought additional information about the

44

cardiovascular effects of Rofecoxib were directed to send inquiries to the company's headquarters. Merck's response to these physicians highlighted the misleading information from the Cardiovascular Card.

"Beyond these specific communications to physicians, our committee also heard evidence of a broad disparity between the evidence-based perspective provided by scientific journals and expert committees, on the one hand, and the sales pitch used by the company's field staff, on the other. Merck instructed its sales representatives, for example, to provide only certain approved study results to doctors. Approved scientific studies were defined as those that provide "solid evidence as to why [doctors] should prescribe Merck products for their appropriate patients." By contrast, those studies that raised safety questions about drugs were considered background studies. Distributing the results of a background study was "a clear violation of Company Policy."

"Merck also trained its representatives to identify speakers for educational events who were "opinion leaders" who could provide "favorable" views of the company's products to other doctors. Underlining the promotional nature of these events, Merck instructed its sales representatives to track whether the physicians who attended them subsequently prescribed more Merck drugs.

"In addition to providing selective evidence and biased presentations, Merck counseled its representatives to use an array of subliminal selling techniques to affect prescribing - potentially undermining the ability of physicians to choose drugs strictly on the basis of the risks, benefits, and costs for a particular patient. For example, in a training course on selling skills,

45

Merck taught representatives to mimic the words and body language of doctors during sales calls. The curriculum explained that 'mirroring is the matching of patterns, verbal and non-verbal, with the intention of helping you enter the customer's world. It is positioning yourself to match the person talking. It subconsciously raises his/her level of trust by building a bridge of similarity.'"

135.    The sales representative defendants personally performed the acts and omissions described herein and participated in the torts alleged herein. The sales representative defendants had knowledge of the cardiovascular risks associated with Vioxx, and misrepresented and/or concealed the nature of these risks to the opinion leaders in the local medical community, to the public, Plaintiffs, and to Plaintiff's physicians. The sales representative defendants were not acting as mere conduits, because they had knowledge that the information conveyed to each opinion leader, consumer, the public and to each of Plaintiffs' physicians, was false.

136.    Accordingly, the sales representative defendants are liable to Plaintiffs for the claims stated herein, and are fully responsible for their own personal acts and omissions whether performed for Merck or as a "frolic of their own" or otherwise. They acted for their own personal profit and "following orders" is not a defense where they acted personally in a negligent, wanton and deceitful manner.

137.    As a result of the misrepresentations, deceit, and suppression by the defendants as set forth previously in this Complaint and as set forth below, these parties, and Plaintiffs were deceived and defrauded, and as a direct and proximate result of the said deceit, fraud, misrepresentation, and fraudulent suppression the Plaintiffs suffered the harm and injury as set forth in this Complaint. The conduct of the defendants described in

46

all counts of this civil action is gross, oppressive, burdensome, willful, intentional, wanton and otherwise such as to justify the imposition of punitive damages under Alabama law.

WHEREFORE, Plaintiffs demand judgment against Merck & Co., Inc., Merck Corporation, Merck Pharmaceutical Division, David Sparkman, Natasha Walker-McGlothan, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago, Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Melton, Julie Hodges, Natasha Walker-McGlothan, Randy Walls, Melissa Bauer and defendants A, B, C, D, E, F, X and Z, whose true names are unknown to the Plaintiffs but will be added by amendment when correctly ascertained, jointly and severally in such sums of compensatory and punitive damages as the jury determines to be fair, just, and lawful plus costs of Court.


James S. Hubbard
Attorney for Plaintiffs


Thomas J. Knight
Attorney for Plaintiffs


HUBBARD & KNIGHT
Post Office Drawer 1850
Anniston, Alabama 36202
(256) 237-9586

47

| State of Alabama<br>Unified Judicial System | **COVER SHEET**<br>**CIRCUIT COURT – CIVIL CASE**<br>(Not For Domestic Relations Cases) | Case Number<br>C V 2 0 0 6 1 4 5 - |
|---|---|---|
| Form ARCiv-93   Rev.5/99 | | Date of Filing:<br>0 4  2 1  2 0 0 6<br>Month  Day  Year | Judge Code: |

**GENERAL INFORMATION**

IN THE CIRCUIT COURT OF _____ RANDOLPH COUNTY _____, ALABAMA
*(Name of County)*

CLIFFORD BAILEY, et., als.          v.          MERCK & CO., INC., et. als.

| First Plaintiff | **Plaintiff** | | First Defendant | **Defendant** | |
|---|---|---|---|---|---|
| | ☐ Business   ☑ Individual | | | ☑ Business   ☐ Individual | |
| | ☐ Government  ☐ Other | | | ☐ Government  ☐ Other | |

**NATURE OF SUIT:**  Select primary cause of action, by checking box (check only one) the best characterizes your action:

**TORTS: PERSONAL INJURY**
- ☐ WDEA  - Wrongful Death
- ☐ TONG  - Negligence: General
- ☐ TOMV  - Negligence: Motor Vehicle
- ☐ TOWA  - Wantonness
- ☐ TOPL  - Product Liability/AEMLD
- ☐ TOMM  - Malpractice-Medical
- ☐ TOLM  - Malpractice-Legal
- ☐ TOOM  - Malpractice-Other
- ☑ TBFM  - Fraud/Bad Faith/Misrepresentation
- ☐ TOXX  - Other: _____

**TORTS: PERSONAL INJURY**
- ☐ TOPE  - Personal Property
- ☐ TORE  - Real Property

**OTHER CIVIL FILINGS**
- ☐ ABAN  - Abandoned Automobile
- ☐ ACCT  - Account & Nonmortgage
- ☐ APAA  - Administrative Agency Appeal
- ☐ ADPA  - Administrative Procedure Act
- ☐ ANPS  - Adults in Need of Protective Services

**OTHER CIVIL FILINGS (cont'd)**
- ☐ MSXX  - Birth/Death Certificate Modification/Bond Forfeiture Appeal/<br>  Enforcement of Agency Subpoena/Petition to Preserve
- ☐ CVRT  - Civil Rights
- ☐ COND  - Condemnation/Eminent Domain/Right-of-Way
- ☐ CTMP  - Contempt of Court
- ☐ CONT  - Contract/Ejectment/Writ of Seizure
- ☐ TOCN  - Conversion
- ☐ EQND  - Equity Non-Damages Actions/Declaratory Judgment/Injunction<br>  Election Contest/Quiet Title/Sale For Division
- ☐ CVUD  - Eviction Appeal/Unlawful Detainer
- ☐ FORJ  - Foreign Judgment
- ☐ FORF  - Fruits of Crime Forfeiture
- ☐ MSHC  - Habeas Corpus/Extraordinary Writ/Mandamus/Prohibition
- ☐ PFAB  - Protection From Abuse
- ☐ FELA  - Railroad/Seaman (FELA)
- ☐ RPRO  - Real Property
- ☐ WTEG  - Will/Trust/Estate/Guardianship/Conservatorship
- ☐ COMP  - Workers' Compensation
- ☐ CVXX  - Miscellaneous Circuit Civil Case

**ORIGIN** *(check one):*  F ☑ INITIAL FILING      A ☐ APPEAL FROM      O ☐ OTHER: _____
DISTRICT COURT
R ☐ REMANDED      T ☐ TRANSFERRED FROM
OTHER CIRCUIT COURT

**HAS JURY TRIAL BEEN DEMANDED?** ☑ YES ☑ NO    Note: Checking "Yes" does not constitute a demand for a
jury trial. (See Rules 38 and 39, Ala.R.Civ.P., for procedure)

**RELIEF REQUESTED:**  ☑ MONETARY AWARD REQUESTED    ☐ NO MONETARY AWARD REQUESTED

| ATTORNEY CODE: | | | | | | |
|---|---|---|---|---|---|---|
| K | N | I | 0 | 0 | 9 | 4/21/06<br>Date |

Signature of Attorney/Party filing this form

**MEDIATION REQUESTED:**  ☐ YES  ☐ NO  ☑ UNDECIDED

**Filed in Office**

SEP 2 1 2006

KIM S. BENEFIELD
Clerk of Circuit Court

## IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

PHILLIP THOMPSON,            )

      Plaintiff,           )

v.                    )     CASE NUMBER: CV-2007-000119

MERCK & CO., INC., a foreign or
Domestic Corporation, DAVID SPARKMAN,
KATHERINE HOLMES, LORI LOVETT,
SCOTT BARTLETT, CORAL HARPER,
MELISSA SANTIAGO, HENRY MITCHAM,
JERRY PHARR, JASON DELK, CHARLES
HENDERSON, JAMES HOUSTON, JULIE
MELTON, JULIE HODGES, MELISSA
BAUER, NATASHA
WALKER-MCGLOTHAM,
RANDY WELLS, and the Defendants A,
B, C, D, E, X & Z whether singular or
plural, being those persons, firms or
entities who or which proximately
caused or contributed to the Plaintiff's
and Plaintiff's decedent's other harm
and the other damages as complained
of herein whose true names are
unknown to the Plaintiff but will be
added by amendment when correctly
ascertained,

      Defendants.

## NOTICE OF FILING NOTICE OF REMOVAL

PLEASE TAKE NOTICE that Merck & Co., Inc. has this date filed its Notice of

Removal in the Office of the Clerk of the United States District Court for the Middle District of

Alabama a copy of which is attached hereto as **Exhibit A**.

_____
BEN C. WILSON
Bar No.: asb-1649-i54b
One of the Attorneys for Defendant,
Merck & Co., Inc.



EXHIBIT
H.

OF COUNSEL:
Robert C. "Mike" Brock
F. Chadwick Morriss
Ben C. Wilson
RUSHTON, STAKELY, JOHNSTON, & GARRETT, P.A.
Post Office Box 270
Montgomery, Alabama 36101-0270
Telephone: (334) 206-3100
Facsimile: (334) 262-6277
rcb@rsjg.com
fcm@rsjg.com
bcw@rsjg.com

### CERTIFICATE OF SERVICE

I hereby certify that I have served the above and foregoing document upon all interested parties by placing a copy of same in the United States Mail, postage prepaid and properly addressed on this the 13th day of September 2007, as follows:

Thomas J. Knight
HUBBARD & KNIGHT
P.O. Drawer 1850
1125 Noble Street
Anniston, Alabama 36202

Steven R. Morris
P.O. Box 814
Wedowee, Alabama 36278-0814

OF COUNSEL

## JURY AWARDS IN AEMLD CASES

| | |
|---|---|
| $950,000 | Castleberry v. Cantrell Mach. Co., 2004 WL 3201180 (Ala. Cir. Ct., Blount County, Sept. 2, 2004) (products liability action by a woman whose hand was injured by a chicken heart and liver harvesting machine) |
| $50,000,000 (Original Verdict) | Mack Trucks, Inc. v. Witherspoon, 867 So. 2d 397 (Ala. 2003) (products liability case arising out of a tractor-trailer rollover) |
| $12,000,000 ($6,000,000 Compensatory, $6,000,000 Punitive) | Morgan v. ProTech Industries, 2003 WL 23111870 (Ala. Cir. Ct., Lamar County, Aug. 29, 2003) (wrongful death case based on products liability claim against truck manufacturer arising out of rollover and absence of cab guard on logging truck) |
| $7,000,000 | Daniel v. Snap Products, 2003 WL 23111815 (Ala. Cir. Ct., Baldwin County, May 28, 2003) (wrongful death case based on products liability claim against manufacture of tire repair product after treated tire exploded) |
| $4,168,500 ($1,068,500 Compensatory, $3,100,000 Punitive) | McClain, et al. v. Metabolife Int'l., Inc., 259 F. Supp. 2d 1225 (N.D. Ala. 2002) (products liability action by four plaintiffs who suffered cardiac symptoms after using ephedra-based diet drug) (reversed on appeal, 401 F.3d 1233 (11th Cir. 2005), and remanded for a new trail) |
| $960,000 ($25,000 over and above $935,000 in pro tanto settlements) | Hannah v. Gregg Bland & Berry, 2002 WL 32169253 (Ala. Cir. Ct., Colbert County, Oct. 25, 2002) (wrongful death case arising out of fatal crush injury in industrial belt equipment) |
| $122,000,000 ($22,000,000 Compensatory, $100,000,000 Punitive) | Jernigan v. General Motors Corp., Bullock County (May 3, 2002) (products liability case arising out of collapse of Oldsmobile passenger compartment) (reversed on appeal, 883 So.2d 646 (Ala. 2003), and remanded for new trial) |
| $10,510,000 (Compensatory) $10,000,000 (Punitive) | Hobart Corporation v. Scottie W. Scoggins, 776 So.2d 56 (Ala. 2000) (products liability action by a man who was injured while using a meat saw manufactured by Hobart) |
| $3,000,000 ($2,500,000 Compensatory) $500,000 Punitive) | Cessna Aircraft Company v. Robert Trzcinski, 682 So. 2d 17 (Ala. 1996) (products liability action by a man who was injured in an airplane crash due to a defective shoulder harness) |
| $1,000,000 (Original verdict $825,000) | Uniroyal Goodrich Tire Company v. Jackie Darryl Hall, 681 So. 2d 126 (Ala. 1996) (products liability action by a man who was injured when wheel rim exploded) |
| $1,225,000 | Ford Motor Company v. Jane Burdeshaw, 661 So. 2d 236 (Ala. 1995) (wrongful death case brought against truck manufacturer after decedent was killed by a truck's transmission slipping out of neutral and crushing him) |

1A3285121                               1

**EXHIBIT I.**

Blumberg No. 5118

| | |
|---|---|
| $13,000,000 | *General Motors Corporation v. Pamela L. Saint*, 646 So. 2d 564 (Ala. 1994) (products liability action by a woman who was injured due to a defective seat belt) |
| $250,000 ($100,000 Compensatory, $150,000 Punitive) | *Mastic Enterprises, Inc. v. Maureen Davis*, 709 So 2d 1132 (Ala. 1998) (products liability action by a woman who found human blood in styrofoam package containing biscuit gravy) |
| $250,000 | *Caterpillar, Inc. v. Hightower*, 605 So. 2d 1193 (Ala. 1992) (product liability action brought by a man who was injured by a broken tree trunk while handling machinery during logging operation) |
| $115,000 | *Banner Welders, Inc. v. Knighton*, 425 So. 2d 441 (Ala. 1982) (product liability claim against manufacturer for personal injuries received on shuttle welder) |
| $6,500,000 | *Sears, Roebuck & Co. v. Harris*, 630 So. 2d 1018 (Ala. 1993) (wrongful death case based on product liability claims against manufacturer and retailer of gas water heater that caused carbon monoxide poisoning) |
| $7,500,000 | *General Motors Corp. v. Johnson*, 592 So. 2d 1054 (Ala. 1992) (wrongful death case based on product liability claim where child was killed in automobile accident) |
| $5,000,000 | *Industrial Chem. & Fiberglass Corp. v. Chandler*, 547 So. 2d 812 (Ala. 1989) (widows of two workers killed in industrial accident brought wrongful death action against distributor of cleaning substances that ignited and caused death of workers) |
| $2,800,000 | *General Motors Corp. v. Edwards*, 428 So. 2d 1175 (Ala. 1985) (wrongful death case based on products liability claim where two boys were killed in automobile accident) |
| $200,000 | *Interstate Engineering, Inc. v. Burnett*, 474 So. 2d 624 (Ala. 1985) (wrongful death case brought against manufacturer of heat detectors after decedent was killed in a a fire) |
| $800,000 | *Piper Aircraft Corp. v. Evans*, 424 So. 2d 586 (Ala. 1982) (damages in wrongful death case based on product liability claims against airplane manufacturer where decedent was killed in plane crash) |
| $500,000 | *Caterpillar Tractor Co. v. Ford*, 406 So. 2d 854 (Ala. 1981) (wrongful death case based on product liability claim where decedent was killed in an accident on a tractor manufactured by defendant) |

1/1326612.1

2



# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

In re: BAYCOL PRODUCTS LITIGATION

MDL No. 1431
(MJD)

This Document also relates to:

| | |
|---|---|
| Annie Andrews et al. v. Bayer Corp. et al., | Case No. 03-4932 |
| Maney Anglin et al. v. Bayer Corp. et al., | Case No 03-4942 |
| Judy Baldwin et al. v. Bayer Corp. et al., | Case No. 03-4930 |
| Dorothy Bennett et al. v. Bayer Corp. et al., | Case No. 03-4938 |
| Alice Dowling et al. v. Bayer Corp. et al., | Case No. 03-4931 |
| Mary Ellis et al. v. Bayer Corp. et al., | Case No. 03-4933 |
| Sis Grubbs et al. v. Bayer Corp. et al., | Case No 03-4934 |
| George Jenkins et al. v. Bayer Corp. et al., | Case No 03-4943 |
| Mary Richardson et al. v. Bayer Corp. et al., | Case No 03-4935 |
| Charles Rogers et al. v. Bayer Corp. et al., | Case No. 03-4936 |
| Clarence Wheeler et al. v. Bayer Corp. et al., | Case No. 03-4941 |
| Albert Williams et al. v. Bayer Corp. et al., | Case No. 03-4937 |
| Willie Womack et al. v. Bayer Corp. et al., | Case No. 03-4939 |
| Jeffrey Woods et al. v. Bayer Corp. et al., | Case No 03-4940 |

Andy D. Birchfield, Jr., E. Frank Woodson, and Melissa A. Prickett, Beasley, Allen, Crow, Methvin, Portis & Miles, P.C. for and on behalf of Plaintiffs.

Peter W. Sipkins, Dorsey & Whitney LLP for and on behalf of Bayer Corporation

Scott A. Smith and Tracy J. Van Steenburgh for and on behalf of SmithKline Beecham Corporation d/b/a GlaxoSmithKline.

This matter is before the Court upon Plaintiffs' motions for remand. Bayer

Corporation ("Bayer") and SmithKline Beecham Corporation d/b/a

1





GlaxoSmithKline ("GSK") oppose the motions, arguing that this Court has diversity jurisdiction over Plaintiffs' claims.

Background

    The above-referenced cases were originally filed in Alabama state court and involve a number of plaintiffs that are citizens of Alabama.  Plaintiffs each allege that they were prescribed Baycol and that as a direct and proximate result of taking Baycol, each Plaintiff was caused to suffer physical injury.[1]  In their Complaints, the Plaintiffs assert the following claims against Bayer A.G., Bayer Corporation, GSK, as well as against Monica Reid and Jerry Totty, district managers for GSK and Todd Trawick and Donald Heller, sales representatives for GSK: the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD"); negligence; breach of warranty; and; fraud/suppression.

    Bayer and GSK removed the above actions to federal court on the basis that the non-diverse defendants, the individual district managers and sales representatives, were fraudulently joined.  Plaintiffs now seek remand, arguing that they have stated a claim against these individual defendants.

Standard

    Remand to state court is proper if the district court lacks subject matter

---

[1]With the exception of those paragraphs describing the claims of the individual plaintiffs, the allegations against the defendants in all of the above referenced complaints are identical.  For ease of reference, the Court will refer only to the Baldwin Complaint.

2



jurisdiction over the asserted claims. 28 U.S.C. § 1447(c). In reviewing a motion to remand, the court must resolve all doubts in favor of remand to state court, and the party opposing remand has the burden of establishing federal jurisdiction by a preponderance of the evidence. In re Business Men's Assurance Co. of America, 992 F.2d 181, 183 (8th Cir. 1993) (citing Steel Valley Auth. v. Union Switch & Signal Div., 809 F.2d 1006, 1010 (3rd Cir. 1987) cert. dismissed 484 U.S. 1021 (1988))

Fraudulently joined defendants will not defeat diversity jurisdiction. Filla v. Norfolk Southern Railway Company, 336 F.3d 806, 809 (8th Cir. 2003) "Joinder is fraudulent and removal is proper when there exists no reasonable basis in fact and law supporting a claim against the resident defendants." Wiles v. Capitol Indemnity Corporation, 280 F.3d 868, 870 (8th Cir. 2001) The burden is on the removing party to show that a non-diverse party has been fraudulently joined. Id., at 871. In deciding this issue, the Court may consider the pleadings and supporting affidavits. Parnas v. General Motors Corporation, 879 F Supp 91, 92 (E.D. Mo 1995)

1. AEMLD Claim

Plaintiffs have alleged AEMLD claims against all defendants. To establish liability under AEMLD, the plaintiffs must show they were injured by one who sold a product in a defective condition unreasonably dangerous to the plaintiffs as

3



the ultimate user or consumer; the seller was engaged in the business of selling such a product; the product was expected to and did reach the users without substantial change in the condition in which it was sold. <u>Carter v. Cantrell Machine Company, Inc.</u>, 662 So. 2d 891, 892 (Ala. 1995).

Defendants argue that the district managers and sales representatives are not "sellers" of Baycol as contemplated by the AEMLD. The Court agrees. The purpose of the AEMLD, a judicially created doctrine, is to "plac[e] the burden to compensate for loss incurred by defective products on the one best able to prevent the distribution of those products." <u>Atkins v. American Motors Corp. et al.</u>, 335 So.2d 134, 139 (Ala. 1976). Although no Alabama state court decision specifically addresses whether a district manager or sales manager could be held liable under the AEMLD, other courts have found that Alabama would not impose such liability. For example, in an unpublished opinion from the Southern District of Alabama, the district court specifically held that a sales manager cannot be held liable under the AEMLD. <u>Bowman v. Coleman Company, Inc.</u>, Civil Action No. 96-0448-P-C (S.D.Ala. 1996), Attached as Ex. B to Removal Petition. The court recognized that the defendant sales manager "had no authority to compel or prevent the distribution of particular products . . . for such product distribution decisions are vested in the [] home office, rather than in its individual store managers." <u>Id.</u> at *7 The court also noted that it is the corporation that reaps the

4



profits from the distribution from products, and has the participatory market

connection with the manufacturer through which the corporation can recoup

costs as a result of seller liability, not the sales manager. Id. "In short the policy

goals underlying the AEMLD would not be advanced in any way by holding

persons such as Mr. Elkins liable in their role as store managers or sales

representatives."

In another MDL proceeding, the district court similarly held that Alabama

courts would not hold a sales representative liable under AEMLD  In re Rezulin

Products Liability Litigation, 133 F.Supp. 2d 272, 287-288 (S D N Y  2001).

> The sales representative joined in the Alabama case neither manufactured,
> sold nor supplied Rezulin  Rather, he was an agent of the manufacturer
> and seller.  As a corporate employee, he was not 'the one best able' to
> prevent sales of defective drugs.  In light of the Alabama Supreme Court's
> clear explanation of the AEMLD's scope and purpose, there is no reasonable
> basis for supposing that it would impose liability on the sales
> representatives in this case.

Id.  See also, Wakeland v. Brown & Williamson Tobacco Corporation, 996 F Supp

1213 (S.D. Ala  1998) (finding that retailer of cigarettes was fraudulently joined

as plaintiffs had failed to state a claim under AEMLD, in part, because Alabama

rejects the no fault precept and plaintiff failed to demonstrate a causal connection

between the retailer's activities in connection with the handling of the product

and the product's defective condition).

Plaintiffs do not allege, and nothing in the records supports a finding, that

5



the individual defendants are "sellers" as that term is used to impose liability for a defective product. In fact, the individual defendants submitted declarations in which they attest that they are not sellers, manufacturers, developers or testers of Baycol. Declarations of Monica Reid, Jerry Totty, Todd Trawick and Donald Heller, Ex. C to Joint Notice of Removal. Accordingly, the Court finds that Alabama would not recognize an AEMLD claim against the individual defendants in these cases.

2. Negligence/Warranty Claim

Plaintiffs also assert negligence and warranty claims against the individual defendants, alleging they were negligent in the design, manufacture, development, packaging, labeling, marketing, promoting, advertising and sale and/or distribution of Baycol and provided express and implied warranties concerning Baycol's safety and efficacy. Compl. ¶¶ 28-32. Defendants argue that these claims fail as well, as such claims can only be brought against a manufacturer or seller of an allegedly defective product.

In support of remand in these cases, Plaintiffs argue that the negligence and warranty claims stand, as such claims are not subsumed by AEMLD. Defendants do not argue to the contrary, and the Alabama Supreme Court has found that negligence claims are not subsumed by AEMLD. Tillman v. R.J. Reynolds Tobacco Co., 2003 WL 21489707 (Ala. 2003). However, none of the

6



cases cited in their briefs addresses the propriety of such claims against individuals that were not manufacturers or sellers of the product at issue.

Alabama law provides that claims of negligent manufacture or sale may only be asserted against the manufacturer or seller. Norton Co. v. Harrelson, 176 So 2d 18, 20 (Ala. 1965). Similarly, claims of breach of express or implied warranties may only be asserted against the seller of the product at issue. See e.g. Rutledge v. Arrow Aluminum Industries, Inc., 733 So 2d 412, 417 (Ala. Civ. App. 1998) (plaintiff cannot recover against construction company under AEMLD or breach of warranty when no evidence presented that construction company sold the alleged defective product at issue). See also, Ala. Code § 7-2-313 (1) ("Express warranties by the seller are created as follows        "); id.  § 7-2-314 (1) (implied warranty of merchantability applies to a seller that is a "merchant with respect to goods of that kind"); id.  § 7-2-315 (1) (implied warranty; fitness for a particular purpose applies to sellers).

As the individual defendants are not sellers or manufacturers of Baycol, rather they are only agents of the seller of Baycol, Plaintiffs negligence and warranties claims against the individual defendants would fail.

### 3. Fraud/Suppression

Finally, Plaintiffs allege that the individual sales manager and sales representative defendants made knowing fraudulent misrepresentations that

7



Baycol was safe with the intent to induce physicians to prescribe Baycol and that plaintiffs were injured as a result. Compl. ¶¶ 43 and 44. Defendants argue these allegations do not meet the specificity requirements of Rule 9(b) of the Federal Rules of Civil Procedure and the Alabama Rules of Civil Procedure, and that such claims should therefore be dismissed

Alabama law clearly provides that a claim for fraud must be plead with particularity.

> Rule 9(b), A.R.Civ.P. provides that when fraud is alleged, the circumstances constituting the fraud must be stated with particularity. This does not mean that every element must be pleaded with particularity. The pleader, however, must use more than generalized or conclusionary statements when setting out the allegations of fraud. The pleader must state the place, the time, the contents of the false misrepresentations, the fact misrepresented, and an identification of what has been obtained. Robinson v. Allstate Ins. Co., 399 So.2d 288 (Ala 1981). The purpose of Rule 9(b) is to provide adequate notice to the opposing party of any claim for fraud so that he may properly prepare his case. Caron v. Teagle, 345 So.2d 1331 (Ala 1977).

Lyde v. United Ins. Co. of America, 628 So.2d 665, 670 (Ala Civ App 1993)

In reviewing the Complaints at issue here, the Court finds that Plaintiffs have failed to plead, with the requisite particularity, the "place; the time, the contents of the false misrepresentations, the fact misrepresented, and the identification of what has been obtained." Id. Rather, the allegations supporting the fraud/suppression claim are general and conclusory. For example, one such allegation reads "the District Managers and Sales Representatives advertised,

8



marketed, and/or promoted Baycol to prescribing physicians utilizing information known to fraudulently represent the safety and efficacy of Baycol, and the District Managers and Sales Representatives failed to warn of the known dangers and adverse events associated with the use of Baycol." Baldwin Compl. ¶ 17. Another reads "the District Managers and Sales Representatives called on physicians . . . at which times they presented fraudulent information . . ." Id. ¶ 14. No allegation specifies the specific misrepresentation the individual defendants made, to whom and under what circumstances

    4 Amount in Controversy

    In the Baldwin Complaint, Plaintiff Ruby Johnson alleges she suffered physical and/or mental injuries in the aggregate amount of $74,000. Baldwin Comp. ¶ 6  Plaintiffs in the Baldwin action thus argue that the remand is appropriate as the amount in controversy is not met  Defendants respond that plaintiff Johnson has failed to limit her damages below the jurisdictional amount:

    The Court begins its analysis with the principle that the amount claimed by Plaintiffs ordinarily controls in determining whether jurisdiction lies in federal court. Zunamon v. Brown, 418 F.2d 883, 885 (8ᵗʰ Cir. 1969) (citing St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 288-289 (1938)). Nonetheless, "the plaintiffs allegations of requisite jurisdictional amount are not necessarily dispositive of the issue"  Id.  That is because an allegation in a



pleading is not binding. The applicable rules of civil procedure liberally allow the amendment of pleadings. Thus, to prevent removal, a plaintiff must submit a binding stipulation or affidavit, separate from the pleadings, and signed by the plaintiffs agreeing to be so bound. See e.g. De Aguilar, 47 F.3d at 1412; In re Shell Oil Co., 970 F.2d 355, 356 (7th Cir. 1992); White v. Bank of America, 2001 WL 804517 (N.D. Tex. 2001) (to prevent removal, plaintiff must file with the complaint a binding stipulation or affidavit that limits the scope of their recovery).

The Court finds that based on all claims included in the Complaint, the amount in controversy exceeds $75,000. Specifically, all of the Baldwin plaintiffs have asserted a number of claims arising in tort, contract and statute. Plaintiffs also seek compensatory and punitive damages. Given the breadth of their requests, the amount in controversy easily exceeds $75,000 per plaintiff, including plaintiff Johnson.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's motions for remand are DENIED.

Date: March 25, 2004

/s/ Michael J. Davis
Michael J. Davis
United States District Court

10

FILED

**IN THE UNITED STATE DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**MIDDLE DIVISION**

04 JUN 24  PM 3: 06

U.S. DISTRICT COURT
N.D. OF ALABAMA

MARGIE REAVES FOWLER, et al,       )
                                    )
            Plaintiffs,             )
                                    )
                                    )
v.                                  )        Civil Action No.: CV-04-PT-712-M
                                    )
PHARMACIA and UPJOHN COMPANY,       )
MCKESSON CORPORATION,               )        ENTERED
CHARLIE WATSON, et al,              )
                                    )        JUN 24 2004

**MEMORANDUM OPINION**

This cause comes on to be heard upon defendant Charlie Watson's ("Watson") motion to

dismiss, filed on April 7, 2004, and plaintiffs Margie Reaves Fowler's ("Mrs. Fowler") and Mark

Fowler's ("Mr. Fowler") motion to remand, filed on May 7, 2004.

**FACTS[1] AND PROCEDURAL HISTORY**

Plaintiff Margie Reaves Fowler ("Fowler") is an adult resident of St. Clair County, Alabama.

Plaintiff Mark Fowler is her husband. Defendants Pharmacia & Upjohn Company ("P&U Co.") and

McKesson Corporation ("McKesson") are corporations doing business in Alabama. Defendant

Watson, an employee of McKesson,[2] allegedly "sold and/or distributed" the drug at issue.

---

[1] The "facts" are as alleged in the complaint.

[2] The complaint, this court notes, does not allege McKesson Corporation's specific role regarding Depo Provera (also known as medroxyprogesterone). However, defendant Watson's affidavit attached to the notice of removal stated: "My employer, McKesson Medical-Surgical, did not manufacture Depo-Provera Contraceptive Injection. McKesson Medical Surgical was only a distributor of Depo-Provera . . ."

1



EXHIBIT
K.

31

Mrs. Fowler was prescribed and received injections of Depo Provera[3] from June 1999 through December 2001. The injections were given by a licensed health care provider in a clinical setting. Depo Provera was allegedly "manufactured, created, designed, tested, labeled, sterilized, packaged, supplied, marketed, sold, advertised, prescribed, administered and otherwise distributed by the Defendants herein." *See* Compl. ¶ 7. On February 28, 2002, Mrs. Fowler suffered a stroke, which according to plaintiffs, was proximately caused by Depo Provera. *Id.* at ¶ 9.

On February 27, 2004, plaintiffs filed a complaint in the Circuit Court of St. Clair County, Alabama. The complaint contained the following counts against all defendants: Count One (AEMLD); Count Two (Negligence);[4] Count III (Breach of Express Warranty); Count IV (Breach

---

[3] Depo Provera is a medication commonly prescribed to women as a contraceptive alternative to "the pill." Depo Provera, taken as an injection, contains a synthetic hormone similar to the natural hormone progesterone and is offered to protect women from pregnancy for three months per injection. *See* Compl. ¶ 6.

[4] Count Two claims that defendants failed to exercise due care by committing the following acts and omissions:

    a.    Failed to adequately and properly test and inspect Depo Provera so as to ascertain whether or not it was safe and proper for the purpose for which it was designed, manufactured or sold.

    b.    Failed to utilize and/or implement a reasonably safe design in the manufacture of Depo Provera.

    c.    Failed to manufacture Depo Provera in a reasonably safe condition for which it was intended;

    d.    Failed to adequately and properly warn the Plaintiff purchasing Depo Provera of the risks of complications when used in a manner for which it was intended;

    e.    Failed to adequately and properly warn the Plaintiff purchasing Depo Provera of the risks of diseases when used in a manner for which it was intended;

    f.    Failed to adequately and properly labeled (*sic*) Depo Provera so as to warn the Plaintiff of the risks of complications;

    g.    Failed to adequately and properly label Depo Provera so as to warn the Plaintiff of the risks of complications;

2

of Implied Warranty); Count V (Damages); Count VI (Unjust Enrichment)[5]; and Count VII (Loss

of Consortium by Mr. Fowler)  On April 7, 2004, defendants filed a notice of removal, alleging the

existence of complete diversity of citizenship between the parties and fraudulent joinder of the non-

diverse defendant, Watson. On April 7, 2004, defendant Watson filed the motion to dismiss at issue

here.[6]  Plaintiffs responded with a motion to remand.  The court considers both motions here.

### RULE 12(b)(6) STANDARD

Rule 12(b)(6) tests the legal sufficiency of a complaint.  When considering a Rule 12(b)(6)

motion, the court assumes that all factual allegations pled in the complaint are true.  *United States*

---

    h.    Manufactured which (*sic*) constituted a hazard to health;
    i.     Manufactured Depo Provera which caused adverse side effects; and
    j.     Were otherwise careless and negligent.

*See* Compl. ¶ 20.

[5] Specifically, Count VI alleges that defendants have profited and benefitted from
plaintiff's use of Depo Provera.  Additionally, Count VI alleges:

> Defendants . . . have voluntarily accepted and retained these profits and
> benefits, derived from the Plaintiff, with full knowledge and awareness that,
> as a result of Defendants' . . . fraud and other conscious and intentional
> wrongdoing, Plaintiff did not receive a product of the quality, nature or fitness
> that had been represented by Defendants . . . or that Plaintiff, as a reasonable
> consumer, expected.
>
> By virtue of the conscious wrongdoing alleged in this Complaint, Defendants
> . . . have been unjustly enriched at the expense of the Plaintiffs, who are
> entitled to in equity, and hereby seek the disgorgement and restitution of
> Defendants . . . wrongful profits, revenue, and benefits, to the extent, and
> in the amount, deemed appropriate by the Court . . . ;

*Id.* ¶¶ 35-36.

[6] The court notes that Watson is the only defendant filing the motion to dismiss at issue
here.  Defendant P&U Co. submitted the response in opposition to plaintiffs' motion to remand.
*See infra.*

3

*v. Gaubert*, 499 U.S. 315, 327, 111 S. Ct. 1267, 113 L. Ed. 2d 335 (1991). All factual allegations are to be construed in the light most favorable to the plaintiff. *Brower v. County of Inyo*, 489 U.S. 593, 598, 109 S. Ct. 1378, 103 L. Ed. 2d 628 (1989). Dismissal under Rule 12(b)(6) is appropriate "'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations' of the complaint." *Rendon v. Valleycrest Prods., Ltd.*, 294 F.3d 1279, 1282 (11th Cir. 2002) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

## MOTION TO REMAND STANDARD

Federal courts are courts of limited jurisdiction. *See Russell Corp. v. American Home Assurance Co.*, 264 F.3d 1040, 1050 (11th Cir. 2001). Therefore, federal courts have power to hear only those cases that they have been authorized to hear by the Constitution or by Congress. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). The limited nature of federal court jurisdiction has caused the Eleventh Circuit to favor remand of removed cases where federal jurisdiction is not absolutely clear. *Russell Corp.*, 264 F.3d at 1050. The removal statute is to be construed narrowly with doubt construed against removal. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 107-09 (1941).

A case may be removed to federal court only if the case could have been brought originally in federal court pursuant to the court's diversity or federal question jurisdiction. *See* 28 U.S.C. § 1441(a). However, diversity will not support removal jurisdiction if any properly joined defendants are citizens of the state in which the suit was originally filed. *See* 28 U.S.C. § 1441(b). The determination of whether federal jurisdiction exists must be made on the face of the plaintiff's well-pleaded complaint. *Pacheco De Perez v. AT & T Co.*, 139 F.3d 1368, 1373 (11th Cir. 1998). An anticipated or even inevitable federal defense generally will not support removal. *Id.* at 1373 (citing

4

*Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392-93 (1987)). The burden of establishing federal jurisdiction is placed on the defendant, with all doubts resolved in favor of remand, *Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996). When multiple defendants are involved, all defendants must consent to removal. *Russell Corp.*, 264 F.3d at 1050.

## ARGUMENTS

## MOTION TO DISMISS

### I.    Defendant Watson's Motion

Watson submits that no cause has been stated against him under Alabama law. Relying on *In re Rezulin Products Liability Litigation*, 133 F. Supp. 2d 272, 287-88 (S.D.N.Y. 2001)(predicting Alabama law), Watson argues, a plaintiff patient cannot state a cause of action against a sales representative (or account manager like defendant) of a distributor of a prescription drug. Watson further relies on the Alabama Supreme Court's decision in *Walls v. Alpharma USPD, Inc.*, 2004 WL 406759 (Ala. March 5, 2004).

In support of dismissal, Watson relies on his own affidavit, which avers that he was not a manufacturer of Depo-Provera and that he was never involved in the manufacture, development, or testing of the drug. Watson alleges that he has not had dealings with either of the plaintiffs.

Watson's affidavit further provides: Watson has "not made any statements to the general public or participated in any advertising or promotion to the general public concerning Depo Provera . . ."; Watson was not a physician or pharmacist and thus never prescribed or filled a prescription for Depo Provera; As an employee of a distributor, Watson's role was taking orders from physicians' offices; "If their order included a request for Depo-Provera . . . this product, with the information as packaged by the manufacturer, was shipped with the order to their [the physicians'] offices"; and

5

Watson was not a "seller" of Depo Provera.

A.    Counts One and Two – AEMLD and Negligence

A threshold element of recovery for an AEMLD claim, Watson contends, is showing that
defendants "manufactured and/or sold the allegedly defective product." *See Turner v. Azalea Box*,
508 So. 2d 535, 254 (Ala. 1987); *Atkins v. Am. Motors Corp.*, 335 So. 2d 134 (Ala. 1976). Courts
from other jurisdictions interpreting Alabama product liability tort theories, Watson claims, have
held that no cause of action is stated against sales representatives since they are not "sellers." *See
In Re Rezulin, supra*, at 287-88 (S.D.N.Y. 2001). *See also Andrews, et al, v. Bayer Corp, et al; In
re Baycol Products Litigation*, MDL No. 1431, slip op. 4 (D. Minn. March 26, 2004)(attached as
Exhibit B).

These courts considered the purpose of the AEMLD in analyzing the potential liability of
sales representatives of drug manufacturers. *In Re Rezulin* stated: "The AEMLD is founded on
'broader moral notions of consumer protection and on economic and social grounds, placing the
burden to compensate for loss incurred by defective products on the one best able to prevent the
distribution of these products.'" 133 F. Supp. 2d at 287 (quoting *Atkins* at 139). Furthermore, the
*Rezulin* court found: "The sales representative joined in the Alabama case neither manufactured,
sold nor supplied Rezulin (the prescription drug at issue in the case). Rather, he was an 'agent of
the manufacturer and seller.'" *Id.* at 287-288. Here, Watson repeats, he was neither the
manufacturer nor seller of Rezulin. Furthermore, Watson asserts, he is even further removed from
liability than the sales representative in *Rezulin* since he was only the distributor's agent.[7]

_____

[7] Watson again quotes *Rezulin*: " As a corporate employee, he [the representative] was
'not the one best able' to prevent the sale of defective drugs. In light of the Alabama Supreme
Court's clear explanation of the AEMLD's scope and purpose, there is no reasonable basis for

6

Regarding the negligence claims, Watson asserts, they should be dismissed for the same reason, i.e., he was neither the "manufacturer" nor "seller" of Depo Provera. *See Norton Co. v. Harrelson*, 176 So. 2d 18, 20 (Ala. 1965).[8] Additionally, Watson argues, since the negligence count contains the language of the AEMLD, i.e., "It could have been reasonably anticipated by the Defendants . . . that said product would become inherently or imminently dangerous to human life or health when put to its intended, ordinary and customary use," it is redundant with the AEMLD count. Alabama courts have found that when two counts are redundant, the negligence claim is not considered to constitute a separate cause of action. *See Veal v. Teleflex, Inc.*, 586 So. 2d 188, 191 (Ala. 1991).[9]

Watson relies on the *Walls* decision as supporting his position. *See* Exhibit C. In *Walls*, the plaintiff sued her pharmacist for failure to warn of foreseeable injuries from the use of the prescription drug he dispensed to her. The Northern District of Alabama certified the following question to the Alabama Supreme Court: "Does a pharmacist have a duty to warn of foreseeable supposing that it would impose liability on the sales representatives in this case."

---

[8] The *Norton* court stated:

> This doctrine [of manufacturer's liability] is applicable in a limited number of situations. The defendant must be either the manufacturer or seller of the injury-producing article. There is no privity of contract between the defendant and the injured plaintiff. At the time complained of the article must have been applied to the use for which it was manufactured and sold and that use must be in the usual and customary manner. Where these circumstances exist the manufacturer or seller will be liable for an injury proximately resulting from the use of the article but only where the article is inherently or imminently dangerous to human life or health, or becomes so when put to its intended use in the proper manner. This liability arises from either the negligent manufacture of the article or negligence in selling it.

[9] This court notes that *Veal* does so suggest.

7

injuries from the use of a prescription drug he/she is dispensing under AEMLD, common-law negligence or other Alabama law?"

In *Walls*, the pharmacist had direct contact with the plaintiff and had directly sold the prescription drug to the plaintiff. Even in that situation, Watson contends, the court applied the learned intermediary doctrine and held that the pharmacist had no duty to warn a customer or any other ultimate customer of the risk or potential side effects of the prescription drug. The Supreme Court observed that

> where prescription drugs are concerned the manufacturer's duty to warn is limited to an obligation to advise the prescribing physician of any potential dangers that may result from the drug's use. This special standard for prescription drugs is an understandable exception to the Restatement's general rule that one who markets goods must warn foreseeable ultimate users of dangers inherent in his products. *See* Restatement (Second) of Torts, Section 388 (1965).

*Walls* at *3 (citing *Reyes v. Wyeth Laboratories*, 498 F.2d 1264 at 1276)(citations omitted). The *Walls* court further noted language from other cases that to impose a duty to warn on a pharmacist would "intrude on the doctor-patient relationship and would force the pharmacist to practice medicine without a license." *Id.* at *4.[10]

Defendant concludes: "The rationale which the Alabama Supreme Court followed in holding that prescription drugs are an exception to the Restatement's general rule certainly is even more applicable in the case at bar. If the manufacturer's duty to warn flows only to the physician and if other parties would be liable for interfering in the physician-patient relationship should advice be given to the patient, then it is abundantly clear that Charles Watson cannot be subject to potential liability under Alabama law."

---

[10] This court does not find *Walls* to be significantly apt here.

8

**B.**   Counts Three and Four – Breach of Express and Implied Warranties[11]

According to Watson, a breach of warranty claim (whether express or implied) arises exclusively against a product's "seller." *See* Ala. Code §§ 7-2-313(1), 7-2-314(1), and 7-2-315. The Alabama courts, Watson argues, have affirmed this principle. *See, e.g., Rutledge v. Arrow Aluminum Indust.*, 733 So. 2d 412, 417 (Ala. Civ. App. 1998). The *Rutledge* court found:

> With regard to Rutledge's AEMLD and breach of implied warranty of fitness claims against Foshee Builders, it is undisputed that Foshee Builders bought the sliding glass door and that a subcontractor installed the door. Rutledge failed to present any evidence that Foshee Builders is in the business of selling sliding glass doors. Therefore, we conclude that Foshee is not a seller within the meaning of the AEMLD or § 7-2-103 and that the trial court properly entered a summary judgment in favor of Foshee Builders on Rutledge's AEMLD and breach of implied warranty of fitness claims.

---

[11] To the extent the warranty claims are redundant with AEMLD claims and based on the allegation that the drug was unreasonably dangerous, defendant argues, these claims are due to be dismissed due to the distinction between tort and UCC causes of action. According to defendant, whether Depo-Provera is unreasonably dangerous is not properly addressed in a warranty claim, only in an AEMLD claim. *See Yarbrough v. Sears, Roebuck & Co.*, 628 So. 2d 478 (Ala. 1993), which found:

> The Yarbroughs' claim of a breach of the implied warranty of merchantability is to the effect that the kerosene heater was unreasonably dangerous and therefore could not be merchantable. "Such an argument ignores the clear distinction between causes of action arising under tort law and those arising under the U.C.C. as adopted in Alabama." Shell v. Union Oil Co., 489 So.2d 569, 571 (Ala.1986). Whether the kerosene heater was unreasonably dangerous is not a question properly addressed in a claim alleging breach of warranty under the U.C.C., but it could be, and was, properly raised in a claim under the AEMLD.

*Compare Spain v. Brown & Williamson Tobacco Corp.*, 2003 WL 21489727 (Ala. 2003)(distinguishing *Yarbrough*). In addressing the certified question from the Eleventh Circuit about the implied warranty of merchantability, the court distinguished *Yarbrough* based on the failure to allege that the product was not fit for the ordinary purpose. The *Spain* court then held: "[A] claim alleging breach of an implied warranty of merchantability is separate and distinct from an AEMLD claim and is viable to redress an injury caused by an unreasonably dangerous product."

Watson reiterates that his position is an account manager of McKesson, a corporation which distributes pharmaceutical products ordered by physicians. As such, Watson asserts, he is not a "seller" for purposes of the U.C.C.

Moreover, Watson argues, an additional reason to dismiss the warranty claim is that Watson had no contact with plaintiffs. Under Alabama law, Watson contends, express warranties arise from affirmative statements of fact. *See* Ala. Code § 7-2-313 (1975). Similarly, Watson argues, an implied warranty cannot arise unless the plaintiff relies on the seller's skill or judgment during the purchase. *See Ex Parte General Motors Corp.*, 769 So. 2d 903, 911 (1999). Since Watson had no contact with plaintiffs, he could not have made affirmative statements or express warranties to them. Additionally, plaintiffs could not have relied on his skill or judgment during their purchase. As a final reason to dismiss plaintiffs' implied warranty claim, Watson asserts, he is not a "merchant with respect to goods of that kind" as required by § 7-2-314. *See Loeb & Co. v. Schreiner*, 321 So. 2d 199 (Ala. 1975); *Huprich v. Bitto*, 667 So. 2d 685 (Ala. 1995).

## C.    Count Five - Unjust Enrichment

Defendant Watson quotes the Alabama Supreme Court in *Mitchell v . H&R Block, Inc.*, 783 So. 2d 812, 817 (Ala. 2000): "[T]he essence of the theories of unjust enrichment ... is that a Plaintiff can prove facts showing that Defendant holds money, which in equity and good conscience, belongs to the Plaintiff or holds money which was improperly paid to Defendant because of mistake or fraud." *See also Ammons v. Coffee County*, 716 So. 2d 1227 (Ala. Civ. App. 1998).

First, Watson argues, since plaintiffs have not stated a valid, independent claim against him, they cannot prevail on their unjust enrichment claim. Second, Watson contends, plaintiffs have not alleged in the complaint that Watson benefitted personally from the sale of Depo-Provera or

10

collected money from plaintiffs in exchange for this product. Watson repeats his contention that he is not a "seller" of the product.

II.    Plaintiffs' Response[12]

    A.    Standard of Review

    This court must first determine if it has jurisdiction over the complaint. *See Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1557 (11th Cir. 1989); *Univ. of South Alabama v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999). Strict construction of the removal statutes, plaintiffs argue, is required. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 109 (1941); *Clay v. Brown & Williamson Tobacco Corp.*, 77 F. Supp. 2d 1220 (M.D. Ala. 1999).

    Further, plaintiffs argue, this court must construe all disputed questions of fact and controlling substantive law in favor of plaintiffs on removal. *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440-41 (11th Cir. 1983)("In determining whether joinder of a resident party has been fraudulent, a district court evaluates the factual allegations in the light most favorable to the plaintiff.").

    The removing party, plaintiffs assert, bears a heavy burden in establishing fraudulent joinder. The test for determining whether joinder of a defendant has been fraudulent is as follows:

        (1) [L]ook to see whether there is <u>no possibility that plaintiff can establish any cause of action against the resident defendant</u>; and

---

[12] Plaintiffs note their contemporaneous filing of a motion to remand for lack of jurisdiction. According to plaintiffs, the arguments in support of remand are identical to their response to dismissal. The motion to dismiss and motion to remand, plaintiffs contend, are "really just both sides of the same coin." By plaintiffs' account, if this court grants the motion to remand, the case will be due to be remanded without this court's consideration of the motion to dismiss. On the other hand, plaintiffs contend, if the court denies remand, the court must necessarily have determined plaintiffs had no possibility of establishing any cause of action against the resident defendant, thus requiring the granting of defendant's motion to dismiss.

11

(2) [L]ook to see whether plaintiff has fraudulently pled jurisdictional facts in order to bring the resident defendant into state court.

*See Cabalceta* at 1561. (Emphasis added). "When considering a motion for remand, federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law." *Fowler v. Provident Life & Accident Ins. Co.*, 256 F. Supp. 2d 1243, 1247 (N.D. Ala. 2003)(citation omitted). Further, *Fowler* provided: "The plaintiff need not have a winning case against the allegedly fraudulent defendant; she need only have a possibility of stating a valid cause of action in order for the joinder to be legitimate." *Id.* (citation omitted).

B.    **Argument**

1.    Plaintiffs Have Sufficient Evidence to Support an AEMLD Claim and a Common Law Negligence Claim Against Defendant, Charlie Watson.

Plaintiffs tout *Clay v. Brown & Williamson Tobacco Corp.*, 77 F. Supp. 2d 1220 (M.D. Ala. 1999) as analogous.  In *Clay*, plaintiffs argue, the court held that plaintiff had an arguable claim against an account manager for defendant pursuant to the AEMLD because the account manager "had superior knowledge to that of the average consumer." *Id.* at 1224. Additionally, the *Clay* court found, additional discovery provided an arguable showing that the account manager "actively participated in the sale and distribution of Brown & Williamson tobacco products," which further bolstered plaintiff's AEMLD claim.  In part, the *Clay* court relied on the following rationale from *Seaborn v. R.J. Reynolds Tobacco Co.*, No. 96-T-1540-N (M.D. Ala. 1996):[13]

> [Plaintiff] seeks to hold not only R.J. Reynolds liable under the AEMLD, he seeks to hold some of the company's individual employees—Tate, Huffman, McDermott, Hightower, and Hinson—liable as well. "In Alabama, the general rule is that officers or employees of a corporation are liable for torts in which they have personally participated, irrespective

---

[13] No copy of *Seaborn* has apparently been provided to this court.

12

of whether they were acting in a corporate capacity." *Ex parte Charles Bell Pontiac-Buick-Cadillac-GMC, Inc.*, 496 So.2d 774, 775 (Ala.1986) (citing *Candy H. v. Redemption Ranch, Inc.*, 563 F.Supp. 505, 513 (M.D.Ala. 1983)); see also *Chandler v. Hunter*, 340 So.2d 818, 822 (Ala.Civ.App, 1976). Obviously, to the extent R.J. Reynolds allegedly violated the AEMLD, it acted through its employees; the company does not employ ghosts. [Plaintiff] should be allowed to pursue these individual defendants, and, if, after discovery, it should turn out that he has named the wrong persons, he should be allowed to make substitutions.

In this case and its companion case, *Jenkins v. R.J. Reynolds Tobacco Co. No. 96-T-1489-N* (M.D. Ala. 1996), plaintiffs note, the court found no evidence of fraudulent joinder. Additionally, plaintiffs rely on the *Clay* court's statement: "Rule 11 recognizes that a Plaintiff may need additional discovery to establish an evidentiary basis for an allegation." *Id.* at 1224 (citing *Sellers v. Foremost Ins. Co.*, 924 F. Supp. 1116 (M.D. Ala. 1996)). The court found that plaintiff had met her burden pursuant to Rule 11 and believed that additional discovery could show that the account manager participated in the tort against the plaintiff due to his position with defendant tobacco company.

Here, plaintiffs assert, Watson is an account manager at McKesson, and Birmingham is part of his sales territory. In this capacity, plaintiffs argue, Watson sold, distributed and supplied medical and surgical equipment, i.e., Depo-Provera, to Mrs. Fowler. *See* Watson Decl..

Plaintiffs rely on "The Job Description of an Account Manager at McKesson Medical-Surgical" posted on McKesson's website, Pl. Ex. B. The job description, plaintiffs argue, lists the following responsibilities for McKesson Account Manager[14]:

- Selling products or services;
- Performing field promotion work and developing new accounts;
- Demonstrating products and/or services and providing assistance in the

---

[14] The McKesson website, plaintiffs note, lists openings for account managers in cities including LaCrosse and Madison, Wisconsin; Jacksonville, Florida; Portland, Oregon; etc.. Plaintiffs contend that all the job descriptions for the locations listed are identical.

13

- best application of products or services;
- Answering all questions concerning products or services and referring questions as necessary;
- Investigating product/service warranty claims to ensure resolution within marketing policies;
- Contacting prospects and explaining features and merits of products or services offered, utilizing persuasive sales techniques.

*See* Pl. Ex. B.

According to plaintiffs, Watson has superior knowledge of Depo-Provera compared to the average consumer, since his job duties include demonstrating the products/services, providing assistance in the best application of the products/services, and explaining the features and merits of the products/services offered. Moreover, plaintiffs argue, in this case they have stronger support for their claims against Watson than the *Clay* plaintiff since they already have proof of Watson's superior knowledge to that of the average consumer regarding Depo-Provera (as evidenced by the foregoing job description).

The AEMLD claim against Watson, plaintiffs contend, is "particularly strong considering that part of Mr. Watson's job description provides for him to 'demonstrate products and/or services and provide assistance in the best application of product or services.'" Plaintiffs further argue:

> In this case, the product Depo-Provera, was used for a purpose or application other than the purpose or application for which it had been approved by the Food and Drug Administration (hereinafter FDA). Therefore, through Mr. Watson's assistance with the best application of Depo-Provera, the plaintiff, Margie Fowler was given Depo-Provera for a purpose other than the purpose for which it had been approved by the FDA.[15]

In the complaint, plaintiffs assert, they clearly alleged that Watson was engaged in the business of marketing, selling, advertising, supplying, and distributing Depo-Provera, that the

---

[15] This allegation, the court notes, does not appear to be contained in the complaint.

14

product was defective and unreasonably dangerous, and that as a result Fowler was injured. Plaintiffs repeat the general content of their AEMLD and negligence claims.[16]

Lastly, plaintiffs argue, a corporation's employees are liable for torts in which they personally participated, even if they were acting in a corporate capacity. *See Ex Part Charles Bell Pontiac-Buick-Cadillac-GMC, Inc.*, 496 So. 2d 774, 775 (Ala. 1986). According to plaintiffs, McKesson could not violate the AEMLD on its own; rather, it had to act through its employees. Moreover, plaintiffs add, Watson committed negligence beyond the bounds of the AEMLD.

### 2.    The Defendant's Argument for Removal Lacks Legal Support.

Plaintiffs attempt to distinguish *In re Baycol* and *In re Rezulin*. According to plaintiffs, these cases represent the opinions of the Minnesota and New York federal district courts, respectively, interpreting Alabama law and thus should not be treated as controlling or given weight in this case. Further, plaintiffs contend, *In re Baycol* involved affidavits from the non-diverse defendants that they were not sellers, manufacturers, developers, or testers of the drug Baycol, and the reported opinion indicates that the *In re Baycol* plaintiffs had no evidentiary support to contradict these affidavits. On the other hand, plaintiffs argue, they possess evidence to contradict Watson's affidavit. Although in *In re Rezulin*, plaintiffs assert, the sales representatives were held to be fraudulently joined, here Watson is not a sales representative but rather an account manager with superior knowledge. Again, plaintiffs rely on *Clay, supra*.

Moreover, plaintiffs contend, defendant mistakenly relies on *Walls v. Alpharma USPD, Inc...* According to plaintiffs, *Walls* held that a pharmacist does not have a duty to warn a customer or ultimate customer of risks or side effects pursuant to the learned-intermediary doctrine. However,

---

[16] The court has summarized the complaint *supra*.

15

plaintiffs argue, *Walls* neither limits an account manager's duty to warn nor forecloses AEMLD/common law negligence claims against an account manager with superior knowledge and active involvement in the sale/distribution of a product. Furthermore, plaintiffs contend, the pharmacist in *Walls* did not work directly for the manufacturer, distributor, supplier, advertiser, or seller of the drug made the basis of the lawsuit, unlike Watson, who works directly for McKesson (which allegedly distributed, supplied, advertised and sold Depo-Provera.)

III.    Defendant Watson's Reply.

First, Watson argues, plaintiffs' reliance on *Clay v. Brown & Williamson Tobacco Corp.* is misplaced. While *Clay* involved cigarettes and a defendant who worked for the actual manufacturer, the Fowler case involves a prescription medication and a defendant who worked for a distributor. Further, Watson reminds the court, the Alabama Supreme Court recently applied the learned-intermediary doctrine to pharmacists in *Walls, see supra.* According to Watson, *Walls* expanded and reinforced the exception to AEMLD liability in cases arising from the use of prescription medications where the <u>only</u> duty to warn runs from the manufacturer to the patient's doctor.[17] *Walls*, Watson argues, clarified that the learned intermediary doctrine forecloses the existence of a duty to

---

[17] In *Stone v. Smith, Kline & French Laboratories*, 731 F.2d at 1575 (11th Cir. 1984), Watson notes, the Eleventh Circuit certified to the Alabama Supreme Court the question of whether an adequate warning to the prescribing physician but not to the ultimate consumer was sufficient as a matter of law. The Alabama Supreme Court in *Stone v. Smith, Kline & French Laboratories*, 447 So. 2d 1301 (Ala. 1984) adopted the Fifth Circuit's learned-intermediary doctrine , which held that pharmaceutical companies who were selling prescription drugs only had a duty to warn the prescribing doctor. According to Watson, the *Walls* court cited with approval language from the *Stone* opinion that imposing a duty to warn on a pharmacist would intrude on the doctor/patient relationship and force the pharmacist to practice medicine without a license, and such reasoning should apply with equal force to Watson. Furthermore, Watson notes, *Walls* also cited language from other courts to the effect that it would be illogical to impose a greater duty on the pharmacist than on the manufacturer. By defendants' account, this same argument should apply to the account manager of a distributor.

16

warn, and thereby any AEMLD and negligence claim, against someone other than the manufacturer.

As in the instant case, *Walls* involved injuries resulting from a prescription drug. According to Watson, the fact that the product could only be obtained by prescription from a licensed physician led the Supreme Court to apply the learned-intermediary doctrine. Watson again quotes *Walls* and criticizes plaintiffs' position that *Walls* is inapplicable.[15]

In the instant case, Watson argues, the complaint alleges that Depo-Provera was commonly prescribed and that plaintiff was given injections by a licensed health care provider in a clinical setting. Plaintiffs' representation to the court that Watson sold Depo-Provera "to the plaintiff in this case," Watson contends, is false, since his affidavit confirms that he never had contact or dealings with the Fowlers, that he is not a physician or pharmacist, and that he never prescribed or filled a prescription for Depo-Provera. As an employee of the distributor, Watson alleged, his role was limited to taking orders from physicians' offices then shipping any orders for Depo-Provera. According to Watson, he was not involved in the doctor's decision to administer or prescribe Depo-Provera to Mrs. Fowler or in the sale of the product to the plaintiffs. Moreover, Watson points out, Watson has confirmed that he has "not made any statements to the general public or participated in any advertising or promotion to the general public concerning Depo-Provera."

Watson again asserts that the *Walls* rationale regarding prescription drugs as an exception to the Restatement's general rule "is even more applicable in the case at bar" and reasons as follows: "If the manufacturer's duty to warn flows only to the learned-intermediary physician and if other parties, without the medical education or knowledge of the medical history of the patient, would be liable for interfering in the physician-patient relationship should advice be given to the patient, then

---

[15] As indicated, this court feels that defendant over-emphasizes the significance of *Walls*.

17

it is abundantly clear that ...Watson, as an account manager of a *distributor*, owed no duty to the Plaintiffs and cannot be subject to potential liability under Alabama law."

This court, Watson argues, should not hold that he owed a duty to consumers he had never met and had no way to meet simply because his employer's website states that he is to demonstrate products and provide assistance. Any such holding, Watson contends, would be contrary to the AEMLD's purpose stated in *Atkins v. American Motors Corporation*, 335 So. 2d 134, 139 (Alabama 1976): "[The AEMLD is founded on] broader moral notions of consumer protection and on economic and social grounds, placing the burden to compensate for loss incurred by defective products on the one best able to prevent the distribution of these products." As neither the manufacturer nor seller of Depo-Provera, Watson argues, he is not the "one best able to prevent the distribution of the product." *See In Re Rezulin* at 287-88 (S.D.N.Y. 2001).[19]

Despite plaintiffs' argument to the contrary, Watson asserts, *In re Rezulin* and *In re Baycol*, *see supra*, should be given weight, as both federal courts were applying Alabama law. Watson reminds this court of the *Erie* rule, i.e., federal courts exercising diversity jurisdiction must apply the law of the state as interpreted by the state's highest court, and in the absence of state court precedent, the federal court must ascertain and apply state law as the court would if faced with a similar case. Unlike *Clay* (plaintiffs' supporting case), Watson argues, *In re Rezulin* and *In re Baycol* directly address AEMLD and negligence claims against sales representatives in cases involving prescription drugs. Notably, Watson asserts, plaintiffs have offered nothing to contradict the holdings of these cases except Watson's position as an account manager rather than a sales

---

[19] A threshold element of recovery under AEMLD, Watson repeats, is that plaintiff must prove that the defendant "manufactured and/or sold the allegedly defective product." *See Turner v. Azalea Box Co.*, 508 So. 2d 253, 254 (Ala. 1987).

18

representative. While plaintiffs suggest that Watson's title as an account manager somehow elevates him in the distribution chain, Watson argues, it is clear that he merely takes orders from physicians' offices.

In interpreting Alabama law, Watson contends, *In re Rezulin* and *In re Baycol* held that no cause of action was stated against sales representatives sued with respect to prescription drugs. *Rezulin* found the sales representative in that case had not manufactured, sold, or supplied the drug but was rather "an agent of the manufacturer and seller." Citing *Atkins*, the *Rezulin* court explained: "As a corporate employee, he [the sales representative] was 'not the one best able' to prevent the sale of defective drugs. In light of the Alabama Supreme Court's clear explanation of the AEMLD's scope and purpose, there is no reasonable basis for supposing that it would impose liability on the sales representatives in this case."

Since he did not manufacture or sell Depo-Provera, Watson argues, plaintiffs can state no possible negligence claim against him. Watson reiterates his position that the negligence claim embodied in Count II is redundant. Furthermore, Watson concludes, *Walls* confirmed that a negligence count cannot lie against Watson. In answering the certified questions, Watson argues, the Alabama Supreme Court held that, pursuant to the learned-intermediary doctrine, only the prescribing physician had a duty under a common law negligence theory.[20]

---

[20] This court quotes the specific holding in *Walls*:

> On the basis of the foregoing authority and persuasive authority, we hold as follows. The learned-intermediary doctrine forecloses any duty upon a pharmacist filling a physician's prescription, valid and regular on its face, to warn the physician's patient, the pharmacist's customer, or any other ultimate consumer of the risks or potential side effects of the prescribed medication except insofar as the prescription orders, or an applicable statute or regulation expressly requires, that an instruction or warning be included on the label of the dispensed

19

Since plaintiffs' opposition only addressed Counts I and II (AEMLD and negligence) and made no attempt to oppose dismissal of Counts III, IV, or V (breaches of warranty and damages), Watson argues, Counts III, IV, and V are due to be dismissed for the reasons set forth above.[21]

## MOTION TO REMAND

I.    **Plaintiffs' Motion**

Plaintiffs' arguments in favor of remand appear to be identical to those set forth in their response to the motion to dismiss. *See supra.*

II.    **Defendant P&U Co.'s Response**[22]

A.    **Summary of Argument**

Since plaintiffs' motion to remand only addresses AEMLD and negligence, P&U Co. argues,

---

medication or be otherwise delivered. To the extent that the learned-intermediary doctrine applies, foreseeability of injury is eliminated as a basis for liability upon the pharmacist. To the extent that the learned-intermediary doctrine applies, the duty to determine whether the medication as prescribed is dangerously defective is owed by the prescribing physician and not by the pharmacist filling the prescription. Any question of what persons are due the duty owed by the prescribing physician is not before us  Accordingly, both questions certified to us are answered in the negative.

[21] Incidentally, this court notes, plaintiffs also have not addressed Count VI (unjust enrichment) and Count VII (loss of consortium).  Defendant Watson addressed Count VI, *supra*, but not Count VII.

[22] Defendant P&U Co. filed the opposition to plaintiffs' motion to remand.  P&U Co. refers generally to arguments in its Notice of Removal.  The court has considered fully but does not set forth here the contents of the Notice of Removal.

Additionally, this court notes, P&U Co. has filed a supplemental opposition to remand on June 4, 2004.  In its supplemental submission, P&U Co. contends that the right to remove is determined by the plaintiffs' pleading at the time of the petition for removal. *See Cabalceta v. Standard Fruit Co.,* 883 F.2d 1553, 1561 (11th Cir. 1989).  As such, P&U Co. argues, this court cannot rely on the Fowlers' post-removal amendment to their complaint in determining subject matter jurisdiction.

20

only those claims have been addressed here. P&U Co. argues that Watson was fraudulently joined. The complaint, P&U Co. points out, contains a single specific reference to Watson in paragraph four, wherein it alleges that he "sold or distributed" Depo Provera on behalf of McKesson. Therefore, P&U Co. contends, there is not even an allegation that Watson sold or distributed the Depo Provera received by plaintiffs.

Watson worked for McKesson Medical-Surgical, P&U Co. alleges, which did not manufacture the product but merely distributed it. According to P&U Co., Watson had no dealings with patients or knowledge/information about patients' medical histories, symptoms, prognoses, or courses of treatment. Significantly, P&U Co. argues, Watson had no interaction with the Fowlers.

P&U Co. criticizes plaintiffs' reliance on tobacco-related cases. Under the law, P&U Co. contends, tobacco is not treated in the same manner as prescription medications, and that distinction proves fatal to plaintiffs' argument.

Under Alabama law, P&U Co. argues, prescription medications are treated as "unavoidably unsafe products" as described in Comment k to Section 402 of the Restatement of Torts (Second). According to P&U Co., prescription medications are "neither defective nor unreasonably dangerous if such a product is properly prepared and is accompanied by proper directions and warnings." See Stone at 1302. P&U Co. repeats the substance of the learned intermediary doctrine as applicable to prescription drugs. See Walls at *2. Only prescription medications, P&U Co. contends, are governed by the learned intermediary doctrine. P&U Co. quotes the Stone case as follows: "[W]e cannot quarrel with the general proposition that where prescription drugs are concerned, the manufacturer's duty to warn is limited to an obligation to advise the prescribing physician of any potential dangers that may result from the drug's use. This special standard for prescription drugs

21

is an *understandable exception to the Restatement's general rule* that one who markets the goods must warn foreseeable ultimate users of dangers inherent in his products." (Emphasis added). P&U Co. argues that the collective authority of *Walls*, *In re: Baycol*, and *In re Rezulin* should govern the fraudulent joinder issue rather than the *Clay* case (involving tobacco).

When faced with a fraudulent joinder issue, P&U Co. argues, this court should "pierc[e] the pleadings and consider[] summary judgment-type evidence such as affidavits and deposition testimony." *See Sellers v. Foremost Ins. Co.*, 924 F. Supp. 1116, 1118 (M.D. Ala. 1996)(citation omitted). *Sellers* further provided: "Tolerance of factual contentions . . . when specifically identified as made on information and belief does not relieve litigants from the obligation to conduct an appropriate investigation into the facts that is reasonable under the circumstances; it is not a license to join parties [or] make claims . . . without any factual basis or justification."(quoting F.R.C.P. 11, Comm. Notes).

B.    Responsive Argument

The *Rezulin* and *Baycol* courts, P&U Co argues, considered Alabama law. According to P&U Co., plaintiffs have not attempted to distinguish those cases. Both cases involved individual employees of prescription drug manufacturers, P&U Co. points out, making those individual employees substantially closer to the manufacture of the product at issue than Watson (who was the employee of a commercial distributor of the product). P&U Co. again highlights *Rezulin*'s assessment of the sales representative: "As a corporate employee, he was not 'the one best able' to prevent sales of defective drugs. In light of the Alabama Supreme Court's clear explanation of the AEMLD's scope and purpose, there is no reasonable basis for supposing that it would impose liability on the sales representative in this case."

22

Furthermore, P&U Co. argues, plaintiffs have not acknowledged the *Bowman v. Coleman* decision (No. 96-0448-P-C)(S.D. Ala. 1996), which held that a salesperson was fraudulently joined under AEMLD and negligence theories because (1) "the policy goals underlying the AEMLD would not be advanced in any way by holding persons . . liable in their role as . . . sales representatives" and (2) the salesperson was "neither a seller nor a manufacturer." Finally, P&U Co. argues, the Fowlers have not adequately distinguished *Walls*.

According to P&U Co., plaintiffs have failed to show Watson's involvement in Mrs. Fowler's prescription and failed to present evidence of Watson personally participating in any tort against them. Instead, P&U Co. argues: "[P]laintiffs coyly try to avoid this considerable problem in their pleadings by citing to generic information describing similar employees' job responsibilities downloaded from the internet. Further, by taking bits and pieces of information from this website, they make the incredible suggestion that Mr. Watson was responsible for the plaintiffs' receipt of the product at issue for a purpose *other* than that provided in the FDA-approved labeling accompanying the product—an allegation completely absent from the complaint." In this vein, P&U Co. repeats information from Watson's affidavit. *See supra*.

Moreover, P&U Co. argues, the *Clay* court's finding of "superior knowledge" of a tobacco account manager is irrelevant to this case, since Depo Provera is a prescription drug. In *Clay*, P&U Co. contends, the court concluded that tobacco managers were not fraudulently joined in a cigarette products liability action since they were "likely to hold some superior knowledge regarding the nature of cigarettes." *See* 77 F. Supp. 2d at 1224. In the pharmaceutical context, P&U Co. asserts, the element of "superior knowledge" of a sales representative, or even a pharmacist, is irrelevant. P&U Co. argues: "Anyone of legal age may walk into numerous retail establishments and purchase

23

cigarettes if they so choose. This stands in stark contrast to the manner in which one obtains a prescription medications, ..., [i.e.,] only ... from licensed physicians. These physicians' decisions on whether or not to prescribe a given medication depend upon a host of factors based upon their training, experience, and a patient's unique needs."[23]

Defendant P&U Co. repeats the reasoning and holding of *Walls* and argues: "If a pharmacist, who has actual contact with the patient, has not duty to warn a consumer under Alabama tort law, how could any such duty exist for a distributor who has no contact with the ultimate consumer?"[24] This court, P&U Co. argues, should disregard plaintiffs' attempts to circumscribe the *Walls* holding. According to P&U Co., it is the type of product at issue in *Walls* that drove the court to conclude that the learned intermediary doctrine exempts from the duty to warn non-physicians in the chain of distribution. In fact, defendant argues, *Walls* undermines every aspect of plaintiffs' argument that they may be able to make a case against Watson for allegedly possessing superior knowledge and

---

[23] P&U Co. quotes *Walls* as follows:

> [F]or it is only the physician who can relate the propensities of the drug to the physical idiosyncracies of the patient. 'It is the physician who is in the best position to decide when to use and how and when to inform his patient regarding risks and benefits pertaining to drug therapy.'

> Neither the manufacturer nor pharmacist has the medical education or knowledge of the medical history of the patient which would justify a judicial imposition of a duty to intrude into the physician-patient relationship. In deciding whether to use the prescription drug, the patient relies primarily on the expertise and judgment of the physician. Proper weighing of the risks and benefits of the proposed drug treatment and determining what facts to tell the patient about the drug requires an individualized medical judgment based on knowledge of the patient and his or her medical condition.

[24] This court is of the opinion that the issue here is contact with the pharmacist and/or the physician, not the consumer.

24

participating in the sale and distribution. These precise arguments, P&U Co. asserts, were rejected by *Walls*. Although the pharmacist in *Walls* had superior knowledge and participated in the sale and distribution of the drug, P&U Co. argues, the *Walls* court still refused to impose liability. Thus, P&U Co. concludes, Watson cannot be liable even if he proved that he did have superior knowledge and participated in the sale and distribution of the Depo-Provera allegedly administered to Mrs. Fowler.

III.    Plaintiffs' Reply[25]

    A.    <u>Plaintiffs Have Shown That Watson Was Involved in Fowler Receiving Depo-Provera</u>

Relying on an amended complaint served on May 28, 2004,[26] plaintiffs argue, they have specifically alleged that Watson is liable pursuant to Alabama common law theories of negligence/wantonness for promoting Depo Provera for an off-label use not approved by the FDA.[27]

----

[25] The Fowlers highlight the holding in *Triggs v. John Crump Toyota*, 154 F.3d 1284 (11th Cir. 1998): "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." *Triggs* further stated: "The plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a possibility of stating a valid cause of action in order for the joinder to be legitimate."

[26] *See* Pl. Reply, Ex. A.

[27] The amended complaint alleges:

    At the time of the time of the incident made the basis of this lawsuit, Watson negligently, wantonly, and intentionally, promoted the use of the drug Depo Provera to a group of doctors who practiced under the name Henderson Walton Women's Center (Hereinafter Henderson Walton) for use by the physicians at Henderson Walton for administration to their patients, including ... Margie Fowler, for the management of the condition known as endometriosis.

    Watson communicated with the physicians and staff at Henderson Walton on a direct one-to-one basis and promoted the sale of Depo Provera. In the course of this promotion Defendant Watson advised the physicians as to the applications and uses of

According to plaintiffs, Henderson Walton is still Watson's client, and Watson used the following means to promote Depo Provera to the physicians at Henderson Walton: direct one-to-one communication with those physicians; field promotion work and aggressive development of new accounts and growing existing accounts; assistance in the best application of Depo-Provera to Henderson Walton physicians; explanation of the features/merits of Depo Provera to such physicians; and use of persuasive sales techniques. As an account manager for Depo Provera, the

> the product utilizing product promotional literature, "personal persuasive sales techniques," and provided other incentives to promote sales of the subject drug the treatment and management of endometriosis.
>
> Watson engaged in these promotional efforts on a personal and individual basis and served to gain financially from such promotion. At the time these promotional efforts were undertaken, Watson knew or had reason to know that the Drug Depo Provera was not (nor is the drug currently) approved by the FDA for the management of endometriosis but was only approved by the FDA and, as per the drug warning label published by the drug manufacturer, indicated only for the prevention of pregnancy. The promotion of the drug for a purpose not approved by the FDA was in direct violation of the Food, Drug, and Cosmetic Act.
>
> Said negligently, wanton, reckless and intentional promotion of this drug caused and/or contributed to the administration of Depo Provera of Plaintiff, Margie Fowler, which proximately caused the plaintiff to suffer a stroke.

Plaintiffs, this court notes, rely upon the affidavit of one of their attorneys in the case, Ms. Harrington. Ms. Harrington's affidavit provided:

> Prior to filing this action, I called the office of the physician who administered the drug, Depo Provera (the drug which is the subject of the above case) to Margie Fowler. I asked the individual in charge of purchasing this medication, for the name of the company from which Ms. Fowler's physician obtained the Depo-Provera. I was told the drug was purchased for all the doctors at Henderson Walton Women's Clinic from the McKesson Corporation. I asked if that was where they would have purchased the drug from in 2001 and 2002 and was told yes. I contacted McKesson Corporation and asked the name of the person who was responsible for the sale of Depo-Provera to the Henderson Walton Women's Clinic in Birmingham, Alabama. I was told Charlie Watson.

26

Fowlers argue, Watson knew or had reason to know that Depo Provera was not FDA-approved for the treatment of endometriosis. Plaintiffs contend that Watson should not have promoted this use of Depo Provera and/or should have informed the physicians at Henderson Walton that Depo Provera was not approved for this use.

**B.    Defendants' Caselaw Is Neither Applicable Nor Relevant**

First, the Fowlers argue, *In re Rezulin* is distinguishable because it involved a sales representative. In the instant case, plaintiffs emphasize, Watson is an account manager rather than a sales representative.[28] Furthermore, the Fowlers argue, *In re Rezulin* did not state that liability could not be imposed on a pharmaceutical sales representative pursuant to the AEMLD; instead, the *Rezulin* court concluded that the Alabama Supreme Court would not impose liability pursuant to the AEMLD on the particular sales representative in that case. Additionally, plaintiffs argue, the *Rezulin* court did not address whether plaintiff had a negligence claim against the defendant sales representative. Most importantly, the Fowlers contend, the *Rezulin* court based its finding of fraudulent joinder on the facts that the plaintiff did not respond the affidavit filed by defendant sales representative, that the plaintiff had not shown that the sales representative sold the defective product to the decedent or decedent's doctor, that the plaintiff had not established the connection needed between the decedent and the sales representative to support a claim for fraud or fraudulent suppression, and that the sales representative at issue was not "the one best able" to prevent sales of defective drugs. Here, plaintiffs argue, those factors are not present, since plaintiffs (1) have responded to and contradicted Watson's affidavit by using McKesson's own website and (2) did not

---

[28] According to plaintiff, the McKesson website describes account managers and sales representatives as two separate positions. *See* Pl. Reply, Ex. C.

27

plead a fraud count in their complaint against Watson. Finally, plaintiffs assert, as an account manager (and pursuant to his job description) "Watson's superior knowledge would have made him highly capable of preventing the sale of defective drugs and/or the improper use of a drug." In reliance on the posted job description, plaintiff contend that Watson had one to one contact with the Henderson Walton physicians and therefore would have received first hand knowledge of reports from those physician's patients if there had been problems with Depo Provera. Plaintiffs ask: "Who better for the company to rely on but their own account manager for information as to whether a product is useful and effective or defective?"

According to plaintiff, *In re Baycol* represents a decision of a foreign court which has admitted that "no Alabama state court decision specifically addresses whether a district manager of sales manager could be held liable under the AEMLD." Notably, plaintiffs argue, the *Baycol* court found the district manager and sales manager not liable while admitting the absence of an Alabama state court decision upon which to base its finding.

Furthermore, the Fowlers argue, *Bowman v. Coleman* (relied upon in *Baycol*) is distinguishable. In that case, the plaintiff sued the store manager of Lowe's along with Lowe's Home Centers, Inc. and Coleman Company, Inc. because a Coleman heater purchased at Lowe's malfunctioned. According to the Fowlers, an account manager at McKesson and a store manager at Lowe's are not comparable "due to the difference in each one's educational background and knowledge of their products." In this vein, plaintiffs contend:

> A store manager at Lowe's may or may not have a college degree. A four year college degree is required of an account manager at McKesson. A store manager at Lowe's sells a greater number as well as a wider variety of products than an account manager at McKesson. Therefore, there is no way that a store manager at Lowe's could have the superior knowledge to be able to demonstrate every produce or service that his store offers nor could he provide assistance in the best application of

28

every product which Lowe's carries. However, being able to demonstrate products and/or services as well as provide assistance in the best application of those products and services is part of Defendant Watson's job. He is able to accomplish those tasks because he only sells, supplies, and distributes medical and surgical products.

Additionally, plaintiffs note, the *Baycol* court also relied on the affidavits which the defendant district manager and sales manager supplied in that case and in *In re Rezulin*. The Fowlers reiterate that they have responded to Watson's affidavit and shown, via his employer's website, that the affidavit is not accurate with respect to Watson's job description and duties.

Finally, plaintiffs assert, *Walls* is inapposite based on the same reasons asserted *supra*. Fowler also disputes P&U Co.'s statement that "Only prescription medications – not other products, including tobacco – are governed by the learned intermediary doctrine"; instead, Fowler argues, the learned intermediary doctrine would involve complex products, which include tobacco and tobacco litigation. Plaintiffs reiterate that the *Walls* court specifically answered a very limited question regarding pharmacists and thus only applies to pharmacists and not to account managers or sales representatives of drug companies.

## CONCLUSIONS OF THE COURT

This case represents the usual tension between what has been called this court's "unflagging" duty to exercise its jurisdiction when present[29] and the admonishments against accepting diversity jurisdiction when there are "possible" claims against non-diverse defendants. The difficulty of resolving such tension is exacerbated by the effort of each side to stretch every possible nuance from every possible case. One would think that the difference might be whether a party will remain on death row or freed to return to the idyllic confines of a country home.

---

[29] *See Moorer v. Demopolis Waterworks and Sewer Bd.*, 2004 WL 1300156 (11th Cir. 2004)(*quoting Colorado River Water Conservation Dist. v. U.S.*, 965 S. Ct. 1236 (1976)).

29

A further feature of this dilemma is the fact that the issue is supposed to be decided based upon objective standards but is usually influenced by the deciding courts' subjective leanings. It is tempting to quickly dispose of a case on a non-appealable basis.

Surely, as always, this court must look for some solution which does not lend itself to either arbitrariness or capriciousness. The court assumes that in this context, "possible" means more than such a possibility that a designated residence can be hit by a meteor tonight. It is possible. Surely, as in other instances, reason and common sense have some role. Surely, in the absence of total hostility toward diversity jurisdiction, the mere naming of purely adjunct parties is not sufficient to defeat it. With these thoughts and the admonitions of controlling courts in mind, this court will attempt to resolve the issues here.

The parties have not cited any directly applicable Alabama or controlling federal court cases. This court is satisfied, based upon the cases which have been cited, that there is no possibility of recovery on the claims asserted here against Watson unless there is evidence that he personally and actively sold or promoted the alleged product to applicable pharmacies or physicians after he had knowledge that the product was dangerous or defective or after he had knowledge that warnings had not been otherwise appropriately given. Here, there is no such allegation and certainly no substantial evidence to rebut evidence to the contrary.

This court is not persuaded, to any extent, by *Walls*. On the other hand, this court is at least partially persuaded by the *Rezulin* and *Baycol* cases. Those courts perhaps go further than this court would go in that they may exclude claims against even active, knowledgeable sales representatives (or account managers). While those are likely correctly holdings with regard to AEMLD claims, they may not be appropriate for failure to warn or suppression claims. Here, however, there is no

30

sufficient allegation or evidence to support the latter type claims.[30]

The motion to dismiss will be granted. The motion to remand will be denied.[31]

This 2 4th of June, 2004.

ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE

---

[30] This case is to be decided based on the allegations in the complaint at the time of removal, not as later amended.

[31] Plaintiffs have agreed that an adverse ruling on one calls for an adverse ruling on the other.

31

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

GLORIA HERNANDEZ,

           Plaintiff,

-vs-                            Case No.  6:05-cv-221-Orl-31KRS

MERCK & CO., INC., GENA ORTEGA
f/k/a Gena Ghazzi & JOHN E. (JACK)
KILKELLY,

           Defendants.

## ORDER

    This matter comes before the Court on the Plaintiff, Gloria Hernandez's ("Plaintiff")

Motion to Remand (Doc. 7) (the "Motion") and the Defendant, Merck & Co., Inc.'s ("Merck")

Memorandum of Law in Opposition thereto (Doc. 14). The Plaintiff also filed a Notice of

Supplemental Authority (Doc. 17), to which Merck filed a Response (Doc. 18). For the reasons

stated herein, the Plaintiff's Motion is denied.

**I.**    **Background**

    On January 12, 2005, the Plaintiff filed a Complaint (Doc. 3) against Merck, Gena Ortega

("Ortega"), and John Kilkelly ("Kilkelly") (collectively referred to, where appropriate, as the

"Defendants") in the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida

alleging, *inter alia*, negligence, negligent misrepresentation, and fraud against all of the

Defendants. In essence, the Plaintiff alleges that certain cardiovascular risks were associated with

the use of Vioxx, and that the Defendants knew or should have known of those risks. The Plaintiff

Blumberg No. 5118

EXHIBIT

L.

further alleges that despite their knowledge, the Defendants promoted the use of Vioxx, and, in the course of promoting its use, concealed its dangerous qualities, misrepresented the risks associated with its use, and failed to warn prescribing physicians of those risks.

Merck removed the case to this Court on February 14, 2005,[1] alleging that the Plaintiff fraudulently joined Ortega and Kilkelly, that Ortega and Kilkelly are not proper defendants, and thus that this Court has diversity jurisdiction over this case.[2]

On February 15, 2005, the Plaintiff filed her Motion, arguing that the case should be remanded on the basis of offensive collateral estoppel arising from two decisions in this District granting remand in cases with different plaintiffs but the same Defendants, and, in the alternative, that Merck could not show that Ortega and Kilkelly were fraudulently joined.

Merck now asserts that offensive collateral estoppel does not apply to this case, and that it can prove fraudulent joinder, and thus seeks a denial of the Plaintiff's Motion.

**II.     Legal Analysis**

   A. Offensive Collateral Estoppel

   A party properly invokes collateral estoppel when "the issue in the subsequent proceeding is identical to the one involved in the prior action, the issue was actually litigated, and the determination of the issue was necessary in the prior action." *Cotton States Mutual Ins. Co. v.*

---

[1] Merck's Notice of Removal appears at Doc. 1.

[2] The Plaintiff is a resident of Orange County, Florida. Merck is a New Jersey corporation that is authorized to conduct business in Florida. At all times material to this case, Merck was engaged in the business of developing, manufacturing, selling and promoting Vioxx for consumer use by prescription. Ortega and Kilkelly are residents of the State of Florida. Ortega and Kilkelly were employed by Merck as sales representatives or managers to promote, and to encourage physicians to prescribe, Vioxx. It is thus clear that if Ortega and Kilkelly are proper defendants, this Court will not have diversity jurisdiction over this case under 28 U.S.C. § 1332.

*Anderson*, 749 F.2d 663, 666 (11th Cir. 1984) (internal citation and quotation omitted)  The

offensive use of collateral estoppel "occurs when the plaintiff seeks to foreclose the defendant

from litigating an issue the defendant has previously litigated unsuccessfully in an action with

another party." *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 n 4 (1979).  Courts have

broad discretion in determining whether offensive collateral estoppel is appropriate. *Id.* at 331;

*Cotton States*, 749 F.2d at 666.

The issue here is whether to apply the doctrine of offensive collateral estoppel to orders

issued by courts in this District remanding under 28 U.S.C. section 1447(c) cases, similar to the

Plaintiff's, filed against these same Defendants.[3]  Courts are reluctant to apply doctrines of

preclusion where an issue is not reviewable on appeal. *Warner/Elektra/Atlantic Corp. v. County of*

*DuPage*, 991 F.2d 1280, 1282 (7th Cir. 1993) ("an unappealable finding does not collaterally

estop"); *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 44 (2nd Cir. 1986) ("inability to obtain

appellate review . . . does prevent preclusion")  It is clear that "[u]nder 28 U.S.C. § 1447(d), an

order remanding an action to state court pursuant to § 1447(c) is not reviewable on appeal or

otherwise, even if the remand order is clearly erroneous."[4] *Poore v American-Amicable Life Ins.*

*Co. of Tex.*, 218 F.3d 1287, 1291 (11th Cir. 2000); *see also Republic of Venezuela v. Philip Morris*

*Inc.*, 287 F.3d 192, 196 (D.C. Cir. 2002).

---

[3] 28 U.S.C. § 1447(c) provides, in relevant part, that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."

[4] 28 U.S.C. § 1447(d) provides, in relevant part, that "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise . . . ."

The orders upon which the Plaintiff seeks to rely to collaterally estop Merck are orders from courts in this District in the cases of *Kozic v. Merck & Co., Inc., Gena Ghazzi and John E. (Jack) Kilkelly*, Case No. 8:04-CV-324-T-27TBM ("*Kozic*"),[5] and *White v. Merck & Co., Inc., Gena Ortega f/k/a Gena Ghazzi and John E. (Jack) Kilkelly*, Case No. 8:05-CV-243-T-26MSS ("*White*"), which found that the plaintiff in those cases had not fraudulently joined Ortega and Kilkelly as defendants, and thus those courts remanded the cases to state court pursuant to 28 U.S.C. section 1447(c).[6] Therefore, because the Plaintiff seeks to collaterally estop Merck from asserting fraudulent joinder based on non-reviewable remand orders, offensive collateral estoppel is not appropriate, and Merck is entitled to assert its claim of fraudulent joinder before this Court.[7]

B  Fraudulent Joinder

Merck seeks to prevent the remand of this case to state court by alleging that Ortega and Kilkelly were fraudulently joined as defendants and, as such, do not defeat this Court's diversity jurisdiction.  When alleging fraudulent joinder, "the removing party has the burden of proving that either: (1) there is no possibility that the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the

---

[5] Gena Ortega was formerly known as Gena Ghazzi.  Doc. 3 at 1.

[6] Although neither order is specific as to the statutory basis for remand, in both cases the plaintiff moved for remand pursuant to 28 U.S.C. § 1447(c), and thus the Court assumes that each case was remanded pursuant to that section.  *See Kozic*, Doc. 6 at 1; *White*, Doc. 9 at 1.

[7] Moreover, in both *Kozic* and *White*, Merck did not raise the issue, contained in the Declarations of Ortega and Kilkelly (Doc. 18 at Ex. A and B), that neither Ortega nor Kilkelly ever communicated with either the plaintiff or the plaintiff's prescribing physician. Therefore, the issue to be addressed here is not identical to the issue in *Kozic* and *White*, nor was that issue previously litigated, and thus collateral estoppel is not appropriate in this case.

-4-

resident defendant into state court." *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997).[8] The burden on the removing party is a heavy one. *Id.* To determine whether the case should be remanded, the Court evaluates the factual allegations in the light most favorable to the plaintiff, and resolves any uncertainties about state substantive law in the plaintiff's favor. *Id.*; *see also Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989). These determinations are made based on the plaintiff's pleadings at the time of removal. *Crowe*, 113 F.3d at 1538; *Cabalceta*, 883 F.2d at 1561. In addition to the plaintiff's pleadings, the Court may consider evidence such as affidavits and depositions submitted by the parties. *Crowe*, 113 F.3d at 1538; *Cabalceta*, 883 F.2d at 1561.

The Court will not weigh the merits of the Plaintiff's claim, other than to determine whether the Plaintiff has an arguable claim under state law. *Crowe*, 113 F.3d at 1538. "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." *Id.* (internal citation and quotation omitted); *see also Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998) ("The plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a *possibility* of stating a valid cause of action in order for the joinder to be legitimate.") (emphasis in original).

To determine whether the Plaintiff can establish a cause of action against either Ortega or Kilkelly under Florida law, the Court examines the Complaint (Doc. 3). In Count II, the Plaintiff

---

[8] Merck asserts that the Plaintiff cannot establish a cause of action against Ortega and Kilkelly, and does not raise the issue of fraudulently pled jurisdictional facts. Therefore, the second category of fraudulent joinder as outlined in *Crowe* is not at issue here.

asserts a claim for negligence against the Defendants, claiming that the Defendants knew or should have known of the risks associated with Vioxx, and despite that knowledge the Defendants advertised, marketed, sold and distributed Vioxx, failed to adequately and accurately warn prescribing physicians of the risks associated with Vioxx, and concealed the dangerous properties of Vioxx. (Doc. 3 at 8-9). The Plaintiff asserts a claim for negligent misrepresentation against the Defendants in Count III, claiming that the Defendants knew or should have known of the risks associated with Vioxx, and despite that knowledge the Defendants advertised, marketed, sold and distributed Vioxx, the Defendants misrepresented to the Plaintiff and to her prescribing physician the safety and effectiveness of Vioxx, and the Defendants made these representations and concealed adverse information despite their knowledge of the risks associated with Vioxx. (Id. at 10-11). In Count IV, the Plaintiff asserts a claim for fraud against the Defendants, claiming that although the Defendants knew of the risks associated with Vioxx, the Defendants fraudulently or intentionally misrepresented to the Plaintiff and to the Plaintiff's prescribing physician the safety and effectiveness of Vioxx, and that the Defendants knew their representations were false. (Id. at 12-15).

After filing a Memorandum in Opposition to Remand (Doc. 14), Merck filed a Supplement in Support of Removal (Doc. 18), to which Merck attached sworn Declarations from Ortega and Kilkelly. (Doc. 18, Ex. A and B, respectively). In those declarations, Ortega and Kilkelly swear to several things, including: (1) each worked for Merck as a Professional Representative in the Tampa, Florida District; (2) that district does not include either Orange County or Orlando; (3)

-6-

neither Ortega nor Kilkelly ever had any contact with Dr. Iraj Ghahreman Lou ("Dr. Lou");[9] (4) neither Ortega nor Kilkelly ever supervised any other professional representative for Merck who ever discussed Vioxx with Dr. Lou; and (5) neither Ortega nor Kilkelly ever spoke with the Plaintiff about Vioxx. (*Id.*). The Plaintiff has not offered evidence in opposition to these statements. The Court will therefore examine whether the Plaintiff can state a claim against Ortega and/or Kilkelly in light of the information contained in their Declarations.

*1. Negligence (Count II)*

The elements for a negligence claim in Florida are duty, breach, harm, and proximate cause. *Lisanti v. City of Port Richey*, 787 So. 2d 36, 37 (Fla. 2d DCA 2001). In the context of claims against manufacturers arising from damages allegedly caused by the manufacturer's failure to warn of the risks associated with prescription drugs, Florida follows the "learned intermediary" doctrine, which means that the manufacturer's duty to warn of a drug's dangerous side effects is directed to the prescribing physician rather than the patient. *Felix v. Hoffmann-LaRoche, Inc.*, 540 So. 2d 102, 104 (Fla. 1989); *see also Mitchell v. VLI Corp.*, 786 F. Supp. 966, 970 (M.D. Fla. 1992). In this case, then, any duty to warn of the alleged risks associated with Vioxx would have flowed to Dr. Lou, the Plaintiff's prescribing physician. However, the Declarations of Ortega and Kilkelly clearly show that neither of them, either directly or through representatives under their supervision, communicated with Dr. Lou either in general or specifically about Vioxx. Thus, neither Ortega nor Kilkelly had a duty to warn Dr. Lou, and in the absence of a duty, the Plaintiff

---

[9] Merck identifies Dr. Lou as the Plaintiff's prescribing physician because Dr. Lou is the only medical provider the Plaintiff identifies in her discovery requests. (Doc. 18 at 3, Ex. C). In her pleadings and filings with this Court, the Plaintiff simply refers to a "prescribing physician," without naming that individual.

-7-

cannot prove a claim for negligence.[10] *See Whitt v. Silverman*, 788 So. 2d 210, 221 (Fla. 2001) (duty is a threshold requirement).

    *2. Negligent Misrepresentation (Count III)*

    To prove negligent misrepresentation, a plaintiff must prove four elements: (1) the existence of a material misrepresentation; (2) that the representation was made under circumstances in which the representor either knew of the misrepresentation, was without knowledge as to its truth or falsity, or should have known of its falsity; (3) that the representor intended to induce reliance; and (4) the plaintiff justifiably relied on the defendant representor's representation to the plaintiff's detriment. *Souran v. Travelers Ins. Co.*, 982 F.2d 1497, 1503-1505 (11th Cir. 1993); *Atlantic Nat'l Bank of Fla. v. Vest*, 480 So. 2d 1328, 1331-32 (Fla. 2d DCA 1985). Liability is limited to the loss suffered:

> (a) by the person or one of a limited group of persons for whose benefit and guidance [the representor] intends to supply the information or knows that the recipient intends to supply it; and (b) through reliance upon it in a transaction that [the representor] intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

*Gilchrist Timber v. ITT Rayonier, Inc.*, 696 So. 2d 334, 337 (Fla. 1997) (*citing* Restatement (Second) of Torts § 552 (1977)). Returning to Ortega's and Kilkelly's Declarations, it is clear that neither of them communicated either directly with the Plaintiff or indirectly with her via communications to Dr. Lou. Therefore, Ortega and Kilkelly do not fall within the ambit of liability as prescribed by the Florida Supreme Court in *Gilchrist*, because neither the Plaintiff nor

---

[10] Even if the "learned intermediary" doctrine did not apply, the Plaintiff would still be unable to prove that Ortega and Kilkelly owed her a duty, because their Declarations clearly establish that not only did they not communicate with Dr. Lou, but they never communicated directly with the Plaintiff.

Dr. Lou falls within the limited category of persons to whom Ortega and Kilkelly would be liable for misrepresentations, namely that "that limited group of persons for whose benefit and guidance [Ortega and Kilkelly] intend[ed] to supply the information or [knew] that the recipient intend[ed] to supply it." *Gilchrist*, 696 So.2d at 337. Thus the Plaintiff cannot prove a claim of negligent misrepresentation against either Ortega or Kilkelly.[11]

### 3. Fraud (Count IV)

To state a claim for fraudulent misrepresentation under Florida law, the plaintiff must allege: "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." *Elders v. United Methodist Church*, 793 So. 2d 1038, 1042 (Fla. 3rd DCA 2001) (internal citation and quotation omitted). This claim must fail for the same reason as the Plaintiff's claim for negligent misrepresentation: Merck has offered undisputed evidence that neither Ortega nor Kilkelly communicated with either the Plaintiff or Dr. Lou, and in the absence of such communication, there can be no fraudulent misrepresentation.[12]

---

[11] The case of *Albertson v. Richardson-Merrell, Inc.*, 441 So. 2d 1146 (Fla. 4th DCA 1983), does not require a different conclusion. As described by that court, the decision in that case is squarely based on the circumstances where "[a] drug manufacturer's detail man makes representations to a physician caring for a pregnant woman." *Id*. at 1149. In *Albertson*, in direct contrast to the facts of the instant case, it was undisputed that the manufacturer's agent made representations to the plaintiff's physician.

[12] Alternatively, the Plaintiff has failed to state a claim for fraud against both Ortega and Kilkelly. Under Florida law, fraud must be pled with particularity. *Morgan v. W.R. Grace & Co.-Conn.*, 779 So. 2d 503, 506 (Fla. 2d DCA 2000); *Robertson v. PHF Life Ins. Co.*, 702 So. 2d 555, 556 (Fla. 1st DCA 1997). A plaintiff must particularly allege specific misrepresentations or omissions of fact, the time, place and manner in which the misrepresentations were made, and how those

After examining the Plaintiff's claims in light of the undisputed evidence Merck offered in the form of the sworn Declarations of Ortega and Kilkelly, the Court finds that the Plaintiff cannot state a claim for negligence, negligent misrepresentation or fraudulent misrepresentation against either Ortega or Kilkelly under Florida law. Therefore, Ortega and Kilkelly were fraudulently joined as defendants. *Kimmons v. IMC Fertilizer, Inc.*, 844 F. Supp. 738, 739 (M.D. Fla. 1994). Because the joinder of Ortega and Kilkelly was fraudulent, it does not defeat this Court's diversity jurisdiction. *Id.* Therefore, this case should not be remanded to state court. Moreover, because Ortega and Kilkelly were fraudulently joined, they should be dismissed as defendants. *Tillman v. R.J. Reynolds Tobacco*, 253 F.3d 1302, 1305 (11th Cir. 2001) (it is appropriate for a federal court to dismiss . . . a defendant and retain diversity jurisdiction if the complaint shows there is no possibility that the plaintiff can establish any cause of action against that defendant); *Tran v. Waste Mgmt., Inc.*, 290 F. Supp. 2d 1286, 1292 (M.D. Fla. 2003).

## III. Conclusion

Because an order of remand is not an appealable order, Merck was not precluded from raising the issue of fraudulent joinder before this Court. The Plaintiff will not be able to prove her

---

misrepresentations were false or misleading. *Robertson*, 702 So. 2d at 556. The Plaintiff has failed to allege what specific misrepresentations either Ortega or Kilkelly made to Dr. Lou or to the Plaintiff; the allegation that certain statements referred to in a warning letter to Merck were made to "the plaintiff and/or plaintiff's prescribing physician" is clearly deficient. Nor does the Plaintiff allege who made particular misrepresentations, when and where those misrepresentations were made, or how each misrepresentation was false or misleading. Further, in light of the Ortega and Kilkelly Declarations, the Plaintiff will not be able to prove that such statements were made either to her or to her prescribing physician. Finally, the requirement that fraud be pled with particularity also applies to claims for negligent misrepresentation. *Morgan*, 779 So. 2d at 506. Based on the reasoning discussed above, the Plaintiff will not be able to prove a claim for negligent misrepresentation, and for this reason, in addition to the discussion in Section II(B)(2), *supra*, that claim must fail.

state law claims of negligence, negligent misrepresentation and fraudulent misrepresentation against either Ortega or Kilkelly, and therefore these individuals were fraudulently joined as defendants. Therefore, Ortega and Kilkelly will be dismissed as defendants, and this case will not be remanded to state court. Accordingly, it is

**ORDERED THAT** the Plaintiff's Motion for Remand (Doc. 7) is DENIED, and Ortega and Kilkelly are DISMISSED as defendants.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on May 3, 2005.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party

-11-